**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRIDGER LOGISTICS, LLC, JULIO RIOS, JEREMY GAMBOA, FERRELLGAS PARTNERS, L.P., and FERRELLGAS, L.P., <br><br> Defendants. | Civil Action No. 2:17-cv-00495-RK <br><br> **Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF
BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., AND
FERRELLGAS, L.P.'S MOTION TO
STRIKE ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1
STATEMENT OF FACTS ..........................................................................................................2
    A.    The Alleged Breach of the RSA and the Arbitration..............................................2
    B.    Discovery in the Arbitration and the Confidentiality Order ...................................2
    C.    Multiple Allegations in the Complaint Violate the Confidentiality Order ..............4
ARGUMENT .................................................................................................................................6
    I.    ALLEGATIONS BASED ON CONFIDENTIAL INFORMATION USED IN VIOLATION OF THE CONFIDENTIALITY ORDER MUST BE STRICKEN ..................................................................................................................6
CONCLUSION ............................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Pages**

*AT&T Corp. v. Pub. Serv. Enter. of Pa., Inc.*,
    No. CIV A 99-4975, 2000 WL 218347 (E.D. Pa. Feb. 16, 2000) ..........................................10

*DEV Indus., Inc. v. Rockwell Graphic Sys., Inc.*,
    No. 91-C-7197, 1992 WL 100908 (N.D. Ill. May 4, 1992) ................................................7, 9

*Gutierrez v. Santa Rosa Mem'l Hosp.*,
    No. 16-CV-02645-SI, 2016 WL 7212302 (N.D. Cal. Dec. 13, 2016) .....................................7

*Whitehead v. Gateway Chevrolet*,
    No. 03-C-5684, 2004 WL 316413 (N.D. Ill. Feb. 2, 2004).......................................................7

**Other Authorities**

FED. R. CIV. P. 12(f) ..................................................................................................6, 7, 8

Defendants Bridger Logistics, LLC ("Logistics"),[1] Ferrellgas Partners, L.P. ("FGP"), and Ferrellgas, L.P. ("FG" and, together with FGP, the "FG Defendants" and, collectively with FGP and Logistics, the "BL/FG Defendants") respectfully submit this memorandum of law in support of their motion to strike (the "Motion") allegations in the Complaint filed by Plaintiff Eddystone Rail Company, LLC ("ERC").

## PRELIMINARY STATEMENT

Plaintiff ERC is asserting alter ego, fraudulent transfer, and breach of fiduciary duty claims against the BL/FG Defendants, all arising out of and related to an alleged breach of contract by Bridger Transfer Services, LLC ("BTS"), a former subsidiary of the BL/FG Defendants, which alleged breach occurred after BTS had been sold to new owners and renamed Jamex Transfer Services, LLC ("JTS").

When the alleged breach occurred, ERC commenced an arbitration against JTS (the "Arbitration") and allegedly reached a settlement with JTS (the sole counterparty to the agreement), Jamex Marketing (JTS's parent that promised to guarantee performance under the contract at issue), and James Ballengee (a member of the buyer group), which settlement apparently provided for an award against JTS only. The BL/FG Defendants were not parties to the Arbitration. In connection with the Arbitration, ERC sought and obtained discovery—including third-party discovery from FGP—pursuant to the Agreed Confidentiality Order (the "Confidentiality Order" or "CO") that specifically prohibited using such information for purposes other than the Arbitration. It is evident, however, that ERC relied on and used that

---

[1] Capitalized terms not defined herein have the meaning given to them in the *Memorandum of Law in Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Dismiss Plaintiff's Complaint* ("Motion to Dismiss Brief"), filed concurrently herewith in support of *Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Dismiss Plaintiff's Complaint* ("Motion to Dismiss").

1

protected information in the Complaint in this litigation, in clear violation of that Confidentiality Order. Multiple allegations in the Complaint are in violation of the Confidentiality Order and should be stricken.

## STATEMENT OF FACTS

### A. The Alleged Breach of the RSA and the Arbitration[2]

In February 2013, ERC entered into the Eddystone Rail Facilities Agreement (the "RSA") with BTS, pursuant to which ERC agreed to construct/improve and thereafter to operate a rail and barge facility in Eddystone, Pennsylvania, that would transload crude oil. Compl. ¶ 2. The FG Defendants acquired Logistics and its subsidiaries, including BTS, two years later. *Id.* ¶ 37. In February 2016, the membership interests in BTS were sold back to an affiliate of the original owner of Logistics, and, ERC alleges, the new owner breached the agreement. Compl. ¶¶ 48–50.

ERC commenced the Arbitration and ultimately entered into a settlement agreement with JTS, Jamex Marketing, and James Ballengee. *Id.* ¶ 51.

### B. Discovery in the Arbitration and the Confidentiality Order

Discovery in the Arbitration was covered by a Confidentiality Order that had been agreed to by the parties to the Arbitration and so-ordered by the arbiters.[3] The Confidentiality Order was signed by Mr. Agusti, counsel to ERC in both the Arbitration and this litigation.[4]

---

[2] The BL/FG Defendants accept the Complaint's well-pled allegations as true for this Motion only.

[3] The Confidentiality Order is attached as Exhibit B to the *Declaration of David M. Zensky in Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Strike Allegations in Plaintiff's Complaint* filed concurrently herewith (the "Zensky MTS Decl.").

[4] *See* Zensky MTS Decl. ¶ 8.

The Confidentiality Order provides that:

> absent a separate order by a court of appropriate jurisdiction, Confidential Information [i.e. all documents produced in the Arbitration] and the substance or contents thereof, including any notes, memoranda or other similar documents relating thereto, ***shall be used solely for the purposes of this Arbitration*** and shall not be disclosed, published, disseminated, or communicated to anyone, either directly or indirectly, ***or used in any other legal, regulatory and/or other proceedings (whether or not involving the same Parties), or for any other purpose, except as expressly allowed by this order***.[5]

In connection with the Arbitration, ERC served a third party subpoena on FGP and, through judicial proceedings initiated in the Southern District of New York in August 2016 under case number 1:16-mc-00295-P1, demanded that FGP produce documents on an expedited basis.[6] ERC's verified petition in support of its motion to compel the production of documents (the "Verified SDNY Petition"[7]), which was signed by ERC's same counsel in the present action, swore that a number of documents and other evidence "remain[ed] in the *sole possession* of JTS's former parent company, Bridger Logistics, and thus within the control of its parent—FGP,"[8] and that "certain rail[,] . . . shipping . . . [and] . . . financial documents in FGP's *exclusive control* are material evidence in the [A]rbitration."[9] In other words, ERC told the court in New York that it had no access to numerous documents concerning BTS, Logistics and the subject of this litigation. As a result, ERC's "subpoena command[ed] FGP to produce documents [in its exclusive control] related to the financing and sale of crude to Monroe, including agreements

---

[5] *See* Zensky MTS Decl. Ex. B at ¶ 4 (emphases added); *see also id.* at ¶ 14 (third parties are protected). "Confidential Information" is defined in the Confidentiality Order as "any and all documents, materials, testimony, transcripts, or other information produced or disclosed by a party or any third-party person or entity . . . for use in this Arbitration, whether such information exists in hard copy, electronic, or other tangible form." *Id.* at ¶ 1.

[6] *See* Zensky MTS Decl. ¶¶ 3, 5.

[7] The Verified SDNY Petition is attached as Exhibit A to the Zensky MTS Decl.

[8] *See* Zensky MTS Decl. Ex. A at ¶ 14 (emphasis added).

[9] *Id.* at ¶¶ 17, 19, 21 (emphasis added).

3

among JTS, Logistics, Jamex Marketing, and Monroe relating to the transportation and sale of the crude, financial and accounting records, as well as the asset purchase agreement for JTS's sale back to the Jamex group."[10]

Pursuant to a stipulation reached between ERC and FGP, FGP agreed to undertake a massive search of its files and to produce pertinent financial records, specified business agreements, and emails pertaining to a wide range of topics, including the negotiation or interpretation of the RSA, the source of payments made to ERC, BTS's financial records, BTS's obligation to provide financial assurances to ERC under the RSA and information about deliveries of crude to the refinery and any slowdown or cessation thereof.[11]  Pursuant to these broad searches, FGP voluntarily provided ERC with four productions totaling more than 28,000 pages of documents within a compressed time frame.[12]  These produced documents, which included contracts referenced in the Complaint and sensitive financial records and information concerning the operation of BTS, were specifically covered by the Confidentiality Order.[13]  The protections of the Confidentiality Order were material to FGP's willingness to voluntarily make these productions to ERC.[14]

### C. Multiple Allegations in the Complaint Violate the Confidentiality Order

Although the BL/FG Defendants do not concede the accuracy of ERC's conclusions or representations of fact set forth in the Complaint, it is evident from the face of the Complaint filed here in the Eastern District of Pennsylvania that ERC relied on materials FGP produced to it pursuant to the Confidentiality Order.  ERC has explicitly referenced and used documents in its

---

[10] *Id.* at ¶ 21.
[11] *See* Zensky MTS Decl. ¶ 6.
[12] *Id.* ¶ 7.
[13] *Id.* ¶¶ 6–8.
[14] *Id.* ¶ 9.

Complaint that it claimed, in its Verified SDNY Petition, to have no access to, and which were ultimately produced to it by FGP. This includes, but is not limited to: purported business contracts to which ERC is not a party (and the details and circumstances therof), including specifically the alleged COSAs,[15] the BTS PSA[16] and other agreements, *see* Compl. ¶¶ 3, 7, 25, 35–38, 43, 44, 46–49, 66(c), alleged sensitive and proprietary financial information, including purported transfers of funds from Logistics to BTS, *see id.* ¶¶ 3, 5, 7, 48, and details concerning the manner in which the BL/FG Defendants and BTS were owned and operated, including, purportedly, that "BTS did not maintain separate financial records or accounts from Logistics and Defendants," *id.* ¶ 56; *see also id.* ¶¶ 3, 5, 7, 8, 19, 28, 29–30, 53, 56–59, 63.

Upon reviewing the Complaint, the BL/FG Defendants notified counsel to ERC about its violation of the Confidentiality Order and demanded that ERC withdraw and revise the Complaint.[17] ERC disputed that the Complaint violated the Confidentiality Order and suggested that ERC received the Confidential Information from public sources, documents produced by other parties to the Arbitration and/or through its course of dealing with BTS.[18] Counsel refused, however, to specifically identify these sources and which paragraphs in the Complaint they supported.[19]

Further, counsel for the BL/FG Defendants also requested that ERC comply with its obligation under the Confidentiality Order to return or destroy to FGP, as documented by sworn affidavit, "[a]ny and all originals, compilations, extracts, summaries and copies of Confidential

---

[15] The COSAs are the Crude Oil Supply Agreements referenced in the Complaint.

[16] The BTS PSA is the Purchase and Sale Agreement between Logistics and Jamex Transfer Holdings, LLC referenced in the Complaint.

[17] *See* Zensky MTS Decl. ¶ 10.

[18] *See id.* ¶ 11. Counsel for ERC further maintained that he was permitted to retain and use the Confidential Information for the purposes of the present litigation. *See id.* ¶ 12.

[19] *Id.* ¶ 11.

Information."[20]  Despite the provision of the Confidentiality Order mandating that "[u]pon request of the Producing Party or its counsel, the receiving Party or its counsel shall execute an affidavit certifying the return or destruction of all Confidential Information,"[21] counsel for ERC has failed to return the BL/FG Defendants' Confidential Information and refused to provide an affidavit certifying its destruction, further breaching ERC's unambiguous duties under the CO.

## ARGUMENT

### I.  ALLEGATIONS BASED ON CONFIDENTIAL INFORMATION USED IN VIOLATION OF THE CONFIDENTIALITY ORDER MUST BE STRICKEN

The allegations in the Complaint that copy, reference or rely upon the Confidential Information are scandalous, immaterial, do not equate to well pleaded facts, and must be stricken from the Complaint.  FED. R. CIV. P. 12(f) (court may strike from pleading "any redundant, immaterial, or scandalous matter.").

Where the express terms of a confidentiality order unambiguously prohibit the use of Confidential Information in future legal proceedings, it is proper under Rule 12(f) to strike allegations in a complaint that rely on or disclose such Confidential Information. *See, e.g.*, *Whitehead v. Gateway Chevrolet*, No. 03-C-5684, 2004 WL 316413, at *4 (N.D. Ill. Feb. 2, 2004) ("[a]llegations in a complaint predicated on confidential information in violation of a protective order may be stricken under Rule 12(f)."); *DEV Indus., Inc. v. Rockwell Graphic Sys., Inc.*, No. 91-C-7197, 1992 WL 100908, at *2 (N.D. Ill. May 4, 1992) (Where the "information relied upon [in a complaint] falls squarely within the scope of the protective order," the "allegations in question should be stricken from the complaint."); *see also Gutierrez v. Santa*

---

[20] Zensky MTS Decl. Ex. B at ¶ 13.
[21] *Id.*

6

*Rosa Mem'l Hosp.*, No. 16-CV-02645-SI, 2016 WL 7212302, at *5 (N.D. Cal. Dec. 13, 2016) (allegations in complaint in violation of confidentiality agreement in connection with settlement discussions stricken from complaint).

Here, it is evident that as many as 30 paragraphs in the Complaint contain, rely on or are derived from Confidential Information provided to ERC pursuant to the Confidentiality Order in the Arbitration.[22]  The Confidentiality Order explicitly prohibits the use of Confidential Information, and the substance or contents thereof, *for any purpose other than the Arbitration*, including any legal, regulatory and/or other proceeding.[23]  Despite the crystal clear limitations of the Confidentiality Order, it is evident that ERC cited to, relied upon, and used Confidential Information in the Complaint, including references to the specific terms and alleged negotiations of private transactions to which ERC was not a party, *see* Compl. ¶¶ 3, 25, 35–38, 43–49, the purported internal funding arrangements between Logistics and its former subsidiary, BTS, *id.* ¶¶ 5, 32, 34, 48, and financial details and detailed descriptions of the purported manner in which BTS and the BL/FG Defendants were owned and operated, *see id.* ¶¶ 8, 9, 19, 28–30, 53, 56–59, 63, 66(c).

It is evident ERC could only have received all or most of these alleged details through Confidential Information disclosed by the FGP and other parties to the Arbitration pursuant to the protections of the Confidentiality Order.  ERC now contends that the information in the Complaint came from other parties to the Arbitration, its course of dealing with BTS or other sources but steadfastly refused to identify such sources.[24]  This blatantly contradicts ERC's sworn statements in its Verified SDNY Petition that business agreements, financial records and

---

[22] Specifically, the offending paragraphs are: Compl. ¶¶ 3, 5, 7–9, 19, 25, 28–30, 32, 34–38, 43–49, 53, 56–59, 63, and 66(c).
[23] *See* Zensky MTS Decl. Ex. B at ¶¶ 4, 14.
[24] *See* Zensky MTS Decl. ¶ 11.

7

other documents, including expressly the COSAs and BTS PSA, were in the "sole possession" and "exclusive control" of the BL/FG Defendants.[25] Pursuant to ERC's *own* sworn representations in the Southern District of New York, it could not have known such specific details on its own. Further, to the extent ERC obtained information and documents from other parties to the Arbitration (which it swore was not),[26] the terms of the Confidentiality Order are clear that no Confidential Information may be used in any other legal proceeding *whether or not involving the same Parties*.[27]

Although the BL/FG Defendants recognize that Rule 12(f) ordinarily imposes a high standard to strike allegations in a typical motion to dismiss, it is questionable whether such a standard should apply here, where the issue is non-compliance with a protective order. Regardless of that standard, however, there are compelling legal and equitable arguments supporting the striking of ERC's allegations in the present case. ERC signed the Confidentiality Order and then used the power of federal law and a federal court to subpoena documents from the BL/FG Defendants.[28] ERC should be held to its promise not to use Confidential Information obtained from third parties in any other legal proceeding. Any other outcome would be a blatant abuse of the judicial process and would eviscerate the protections of the Confidentiality Order pursuant to which the BL/FG Defendants and other parties to the Arbitration produced documents to ERC. ERC's attempt to obtain documents and information under the guise of a Confidentiality Order and then to use that information to concoct a baseless Complaint against the BL/FG Defendants is improper and prejudicial. Permitting ERC to flout the Confidentiality

---

[25] *See id.* Ex. A at ¶¶ 14, 17, 19, 21. Indeed, in the Complaint in this action, ERC continues to maintain that the BL/FG "Defendants did not even transfer all documents to BTS' new owners, making it more difficult for [ERC] to obtain discovery in its arbitration against BTS." Compl. ¶ 66(c).

[26] *See* Zensky MTS Decl. Ex. A at ¶ 14.

[27] Zensky MTS Decl. Ex. B at ¶ 4.

[28] *See* Zensky MTS Decl. ¶ 4–5, 7–9.

Order in this way would substantially undermine future third-parties' willingness to produce documents cooperatively and result in excessive litigation over simple discovery requests because parties would rationally fear that their Confidential Information would be used against them in separate legal proceedings in the future. "So long as the [Confidential Order] remains in effect the parties must abide by its mandate." *DEV Indus., Inc.*, 1992 WL 100908, at *2. Thus, this Court should strike or decline to consider, at a minimum, the 30 paragraphs that contain, rely on or are derived from Confidential Information received by ERC through discovery in the Arbitration.

ERC has also argued to the BL/FG Defendants that it was entitled to use Confidential Information in its Complaint pursuant to Paragraph 6 of the Confidentiality Order, which provides that should either "Party" appeal to a court for "any matter that is the subject of this Arbitration," then the "Parties" agree to confer in good faith and try to reach agreement on protections for the Confidential Information.[29] ERC's reading of Paragraph 6 is self-serving and untenable. The BL/FG Defendants were not a "Party" to the Arbitration—they were third parties—and ERC's present action against the BL/FG Defendants is neither an appeal nor the "subject of th[e] Arbitration."[30] Further, ERC used the BL/FG Defendants' Confidential Information to negotiate a settlement in the Arbitration that it seeks to impose on the BL/FG Defendants, but not (apparently) on any of the parties to the Arbitration settlement. Paragraph 6 also provides that the Party seeking to use the Confidential Information must "provide written notice to each Producing Party whose Confidential Information is sought to be used in such proceeding" to allow intervention if necessary to protect Confidential Information.[31] Thus, even

---

[29] Zensky MTS Decl. Ex. B at ¶ 6.
[30] *Id.*
[31] *Id.*

9

if Paragraph 6 were to apply here—which it does not—ERC did not satisfy it because it neither attempted to confer in good faith to reach agreement on protections for Confidential Information nor provided the requisite written notice.[32]

## CONCLUSION

For the foregoing reasons, if the Court does not grant the Motion to Dismiss filed concurrently herewith, at a minimum, the allegations contained in paragraphs 3, 5, 7–9, 19, 25, 28–30, 32, 34–38, 43–49, 53, 56–59, 63, and 66(c) of the Complaint should be stricken.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

---

[32] *See id.*; *see also* Zensky MTS Decl. ¶ 13. This case is also readily distinguishable from *AT&T Corp. v. Pub. Serv. Enter. of Pa., Inc.*, No. CIV A 99-4975, 2000 WL 218347, at *2 (E.D. Pa. Feb. 16, 2000) ("*AT&T*"). In *AT&T*, defendants moved to strike plaintiff's entire complaint on the ground that it was premised on purportedly fraudulent conduct engaged in by defendants during and after the parties' arbitration proceedings to avoid paying plaintiff's arbitration award. *Id.* The defendants there argued that because this allegedly fraudulent conduct occurred during the arbitration, it was covered by the confidentiality provision of the parties' arbitration agreement. *Id.* The AT&T Court rejected the defendants' argument, holding that plaintiff would likely be able to prove that the defendants took the allegedly fraudulent actions alleged in their complaint without resorting to confidential information it learned during the arbitration and was barred from disclosing in future proceedings. *Id.* Unlike in AT&T, where the defendants' purportedly fraudulent conduct merely occurred during and after the parties' arbitration proceedings, here, ERC has cited and relied on particular documents and information disclosed to it during the Arbitration pursuant to the protections of the Confidentiality Order in order to attempt to state claims against the BL/FG Defendants. ERC's use of this Confidential Information in the Complaint violates the Confidentiality Order.

Dated: March 16, 2017 	Respectfully submitted,

/s/  *Jeffery A. Dailey*
Jeffery A. Dailey (I.D. No. 85993)
Caroline A. Gardner (I.D. No. 318815)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, PA 19103
T: 215-965-1200
F: 215-965-1210
jdailey@akingump.com
cgardner@akingump.com

David M. Zensky (*pro hac vice*)
Katherine P. Porter (*pro hac vice*)
Kelly A. Eno (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002
dzensky@akingump.com
kporter@akingump.com
keno@akingump.com
*Attorneys for Bridger Logistics, LLC Ferrellgas Partners, L.P., and Ferrellgas L.P.*