**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17–cv–00495 |
| | ) | |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, | ) | |
| JEREMY GAMBOA, FERRELLGAS | ) | |
| PARTNERS, L.P., and FERRELLGAS L.P. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF EDDYSTONE RAIL COMPANY'S OPPOSITION TO**
**DEFENDANTS' MOTION TO STRIKE**
**ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ......................................................................................................................6

I.     EDDYSTONE DID NOT USE ANY DOCUMENTS PRODUCED BY
FERRELLGAS TO DRAFT THE COMPLAINT............................................................6

II.    THE CONFIDENTIALITY ORDER DID NOT PROHIBIT USE OF
FERRELLGAS DOCUMENTS IN THIS LITIGATION ..................................................9

III.   DEFENDANTS' CONFIDENTIALITY CLAIMS DO NOT JUSTIFY A
MOTION TO STRIKE ....................................................................................................11

IV.   DEFENDANTS' "CONFIDENTIALITY" CONCERNS ARE PRETEXTUAL .............12

CONCLUSION...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page(s)**

*Adolph Coors Co. v. American Insurance Co.*,
    164 F.R.D. 507 (D. Colo. 1993) .......................................................................................13

*Barnes v. AT&T Pension Benefit Plan*,
    718 F. Supp. 2d 1167 (N.D. Cal. 2010) ..........................................................................11

*Choice-Intersil Microsystems v. Agere Systems*,
    224 F.R.D. 471 (N.D. Cal. 2004)........................................................................................5

*Davies v. Grossmont Union High School District*,
    930 F.2d 1390 (9th Cir. 1991) .........................................................................................10

*DeLa Cruz v. Piccari Press*,
    521 F. Supp. 2d 424 (E.D. Pa. 2007) ..............................................................................11

*Eddystone Rail Company, LLC v. Ferrellgas Partners, L.P.*,
    No. 1:16-mc-00295-P1 (S.D.N.Y. Aug. 17, 2016) ...........................................................4

*Feeding BV v. Principle Solutions*,
    No. 14-C-1241, 2015 WL 136402 (E.D. Wis. Jan. 8, 2015) ............................................12

*Greenfish II, L.P. ex rel. Purplefish, LLC v. International Portfolio, Inc.*,
    No. CIV.A. 11-7628, 2012 WL 3024759 (E.D. Pa. July 24, 2012)....................................10

*HTC Corp. v. IPCOM GMBH & Co.*,
    No. CIV.A. 08-1897(RMC), 2009 WL 5908010 (D.D.C. Dec. 18, 2009) .............................13

*In re Cendant Corp.*,
    260 F.3d 183 (3d Cir. 2001).............................................................................................12

*Siemens Medical Solutions USA v. Saint-Gobain Ceramics & Plastics*,
    No. CIV. 07-190-SLR, 2008 WL 3862091 (D. Del. Aug. 20, 2008) ....................................13

*Sony Computer Entertainment America v. NASA Electronics Corp.*,
    249 F.R.D. 378 (S.D. Fla. 2008)......................................................................................13

*Stanbury Law Firm v. IRS*,
    221 F.3d 1059 (8th Cir. 2000) .........................................................................................11

*United States v. Gonzales*,
    520 U.S. 1 (1997)............................................................................................................10

*Wattie-Bey v. Stephens & Michaels Associates*,
    No. 1:13-CV-396, 2013 WL 2302117 (M.D. Pa. May 24, 2013)..........................................11

*Weeks v. McLaughlin*,
    No. CV 09-2498-JWL/GLR, 2010 WL 11485532 (D. Kan. Mar. 11, 2010) ........................11

*Yates v. Commercial Index Bureau*,
    861 F. Supp. 2d 546 (E.D. Pa. 2012) .......................................................................................11

**RULES**

Fed. R. Civ. P. 12(f).........................................................................................................11, 13

**BOOKS AND ARTICLES**

Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed.).......................................11

## INTRODUCTION

Defendants Bridger Logistics, Ferrellgas Partners, and Ferrellgas (together "Ferrellgas") seek to strike vast swathes of the Complaint for the supposed violation of a Confidentiality Order. Their Motion to Strike not only fails to tie a single one of the Complaint's allegations to any confidential information but seriously misrepresents the facts, the applicable legal standard, and the Confidentiality Order at issue.

This litigation seeks to collect debts owed by Bridger Transfer Services, LLC ("BTS") from its alter egos and control persons, including its former parents Ferrellgas and Bridger Logistics. BTS defaulted on its obligations to Eddystone at the same time that Bridger Logistics sold it to a newly-formed, assetless subsidiary of Logistics' business partner, Jamex Marketing. Because BTS' entire operational life was spent as an empty shell under the complete control of Bridger Logistics and Ferrellgas, after being sold it did not have in its possession any of the documents relating to its business, all of which remained with its former parents. Thus, Eddystone was forced to seek discovery from Ferrellgas when it commenced an arbitration against BTS.

The arbitral panel issued a subpoena compelling Ferrellgas to produce documents. Ferrellgas aggressively resisted compliance with the subpoena, requiring Eddystone to enforce the subpoena in the United States District Court for the Southern District of New York, the site of the arbitration. Eventually, Ferrellgas produced many documents, but they related to issues irrelevant to its own liability. Ferrellgas did not produce any documents that would be relevant to this litigation, with the exception of certain contracts relating to its crude oil supply business with Monroe Energy. However, those contracts were also produced by Jamex Marketing, which was itself a party to the Monroe arrangement.

As a result, Eddystone did not make use of any documents produced by Ferrellgas in the arbitration to draft its Complaint. And even if it had, the Confidentiality Order that is the basis for Ferrellgas's motion expressly permits it to do so. Yet, Ferrellgas, facing a complaint focused on its transparent abuse of the BTS entity, now seeks to use baseless confidentiality claims to immunize itself against properly pled allegations exposing its sham transactions.

While Ferrellgas's motion asserts that large portions of the Complaint incorporate confidential information from documents that Ferrellgas produced in the arbitration, it does not tie a single allegation to a specific, supposedly confidential document supposedly produced by Ferrellgas in the arbitration. Nor, indeed, does Ferrellgas cite any authority or provide any explanation that would support an assertion that any of the allegations in the Complaint are confidential *at all*.

Notwithstanding its supposed confidentiality concerns, Ferrellgas ignored Eddystone's offer to file redacted and sealed versions of the Complaint. And now, in the same set of motions in which it demands that Eddystone's allegations be stricken because they describe certain contracts between Bridger Logistics, Jamex Marketing, and Monroe Energy, Ferrellgas actually has filed one of those contracts in the public record and quotes from it extensively in order to support its Motion to Dismiss. This sword-shield behavior demonstrates that Ferrellgas's purported confidentiality concerns are, like BTS, a sham – designed only to hide its misconduct from the Court and interfere with the workings of justice.

## BACKGROUND

This litigation arises out of the failure by Bridger Transfer Services ("BTS") to pay amounts due under its Rail Facilities Services Agreement ("RSA") with Plaintiff Eddystone Rail Company ("Eddystone"). As described in Eddystone's Opposition to Defendants' Motions to

Dismiss, BTS is a former subsidiary of Defendants Bridger Logistics, Ferrellgas Partners, and Ferrellgas that – acting as a front for Defendants – contracted with Eddystone to transload crude oil from railcars to barges at Eddystone's transloading facility.  BTS was stripped of its assets, sold to Jamex Transfer Holdings, and renamed Jamex Transfer Services, LLC, ("JTS") as part of Defendants' scheme to hinder Eddystone's collection of amounts due under the RSA.

    After BTS defaulted, Eddystone commenced arbitration before the Society of Maritime Arbitrators, as required by the RSA.  In the arbitration, BTS raised three main defenses and counterclaims focused on operational issues.  These were that a granite "pinnacle" in the shipping channel leading to Eddystone's transloading facility interfered with barge operations; that a restriction on the times during which trains could traverse a stretch of public transit-owned trackage upstream of Eddystone's facility prevented BTS from bringing trains to the facility; and that Eddystone refused to consent to a financing arrangement proposed by Jamex Marketing, thereby preventing Jamex Marketing from having the financing to buy and sell crude oil to Jamex Marketing and Defendants' joint refinery client, Monroe Energy.  JTS Statement of Defenses and Counterclaims at 1-2, 12-13 (Theodore Decl. Ex. A).

    However, it soon became clear that, while Jamex Marketing was able to provide some documents it possessed by virtue of its part in the Monroe arrangements, BTS did not have any of the key documents concerning its own operations.  A shell now in the hands of Jamex Marketing, BTS had spent its entire operational life as a façade for the Bridger machine so that, even after its sale to Jamex Marketing, all of its operational documents remained with Bridger Logistics.  BTS objected to Eddystone's document requests on the ground that "all email servers, file management systems, and other document repositories relating to operations prior to that purchase date remained in the possession of Bridger Logistics, LLC or its affiliates."  JTS RFP

Responses at 1-2 (Theodore Decl. Ex. B).  BTS responded to many of Eddystone's specific document requests by stating that the relevant documents were not in its possession and that it would turn over those documents it could obtain from Bridger Logistics.  *Id*. at 2-11.

Unable to obtain the critical documents from BTS, the arbitral panel issued a subpoena to Ferrellgas Partners, L.P., Bridger Logistics' ultimate parent company.  Theodore Decl. ¶¶ 4-5. When Ferrellgas refused to comply with the subpoena, Eddystone petitioned the United States District Court for the Southern District of New York, the district where the arbitration took place, to compel production.  *See* Dkt. 36-3.  The parties reached an agreement, entered as an order of the Court, under which Ferrellgas was to produce certain categories of documents. Stipulation and Order, Dkt. 21, *Eddystone Rail Company, LLC v. Ferrellgas Partners, L.P.*, No. 1:16-mc-00295-P1 (S.D.N.Y. Aug. 17, 2016).

But Ferrellgas and Bridger Logistics did not comply with the Order.  While they produced substantial numbers of railroad- and barge-related documents, they refused to produce key documents concerning the financial and contractual arrangements governing the crude oil transloaded at the facility.  Ferrellgas produced copies of the contracts themselves and a spreadsheet documenting certain very limited BTS financial information, but withheld internal emails and other financial records regarding the contractual and financial aspects of the sale and transport of crude oil to Monroe.  Theodore Decl. ¶ 9.  When challenged on this failure, Ferrellgas asserted that "FGP clearly objected to ERC's request for all documents related to the termination of the COSA, the TLAs, and sale of BTS to Jamex and . . . agreed only to provide the final versions of the agreements in question."  Theodore Decl. Ex. C.[1]

---

[1] After further discussions and shortly before the settlement of the arbitration, Ferrellgas produced a redaction log, two privilege logs, and approximately 200 emails, which were so

In the meantime, Jamex Marketing, BTS' new "grandparent" entity, produced copies of the same contracts, as it had been a party to the sale of crude oil to Monroe.[2]  In addition, Jamex Marketing produced a set of January 2016 letter agreements by which Monroe, Jamex Marketing, and Bridger Logistics suspended the sale and delivery of crude oil.  Finally, Jamex Marketing produced the agreement by which Bridger Logistics sold BTS to Jamex Transfer Holdings, a newly-formed and wholly-owned subsidiary of Jamex Marketing.  Jamex Marketing consented to the use of these documents in subsequent litigation.  Theodore Decl. ¶¶ 12-13.

Ultimately, BTS and Eddystone settled the arbitration, and the Panel issued an award in favor of Eddystone.  Eddystone then filed this suit on February 2, 2017.  In drafting the Complaint, Eddystone did not rely on a single document produced by Ferrellgas in the arbitration.  Theodore Decl. ¶¶ 14-15.  Indeed, the only relevant documents produced by Ferrellgas – the contracts – were also produced by Jamex Marketing.  Theodore Decl. ¶ 12.

Nonetheless, counsel for Ferrellgas wrote Eddystone to object to the supposed use of its confidential information in light of the Confidentiality Order entered in the arbitration.  Ferrellgas requested that Eddystone withdraw the Complaint and eliminate numerous allegations before re-filing.  *See* Theodore Decl. Ex. D.  Eddystone explained in its response that it had not used any material produced by Ferrellgas and that, in any event, the Confidentiality Order expressly permits use in subsequent litigation of documents filed in the arbitration.  *See* Theodore Decl. Ex. E.  Nevertheless, Eddystone offered to prepare a redacted public version of the Complaint and move to seal the original if Ferrellgas would identify supporting legal

---

heavily redacted as to be useless and largely consisted of Plaintiff's own email exchanges with Bridger Logistics.  Theodore Decl. ¶ 11.

[2] *See Choice-Intersil Microsystems v. Agere Systems*, 224 F.R.D. 471, 473 (N.D. Cal. 2004) (requiring subsidiary to produce parent's documents).

authority.  *Id.*  Rather than respond to Eddystone's offer, Ferrellgas filed this motion to strike substantial portions of the Complaint.  Theodore Decl. ¶ 24.

## ARGUMENT

### I.    EDDYSTONE DID NOT USE ANY DOCUMENTS PRODUCED BY FERRELLGAS TO DRAFT THE COMPLAINT

Contrary to Ferrellgas's assertions, Eddystone did not use any of the information contained in Ferrellgas's productions to draft the Complaint in this action.  Theodore Decl. ¶¶ 14-15.  The Complaint is based on (1) public information, such as Ferrellgas's own SEC filings and news reports; (2) documents produced by Jamex Marketing in the arbitration;[3] and (3) information, knowledge about BTS and Bridger Logistics, and documents that Eddystone obtained in the course of its thirty-month long commercial relationship with BTS and Bridger Logistics.  *Id.*

Ferrellgas's Motion to Strike does absolutely nothing to tie the allegations of Eddystone's Complaint to any particular document that it produced in the arbitration.  Other than copies of the various agreements between Bridger Logistics, Jamex Marketing, and Monroe – all of which were available to Eddystone from other sources – Ferrellgas does not identify a single specific document that it produced in the arbitration and that it believes was the basis for any particular allegation in the Complaint.  That is because Ferrellgas anticipated this lawsuit – the purported sale of BTS to Jamex Marketing was a clear effort to evade Eddystone – and made sure that it produced absolutely nothing that could be of value to Eddystone, in violation of the arbitral subpoena and the Stipulation and Order entered by the Southern District of New York.

---

[3] Jamex Marketing has consented to Eddystone's use of its documents for purposes of this litigation and agrees that this would be permitted by the Confidentiality Order, regardless. Theodore Decl. ¶ 13.

Rather than point to specific documents that it believes were used improperly or particular allegations that supposedly incorporate confidential information, Ferrellgas describes vague categories of information and identifies broad parts of the Complaint. First, Ferrellgas alleges that Eddystone relied on confidential information regarding the "terms and alleged negotiations of transactions to which [it] was not a party." Motion to Strike, Dkt. 36-1 ("MTS") at 7. Ferrellgas cites paragraphs in which the Complaint describes the terms of the arrangement by which Jamex Marketing and Bridger Logistics sold and transported crude oil to Monroe, the wind-up of that arrangement once it became unprofitable, and the subsequent sale of BTS to Jamex Transfer Holdings. Compl. ¶¶ 3, 25, 35-38, 43-49. But Eddystone obtained each of these agreements from Jamex Marketing in the arbitration. Theodore Decl. ¶ 12. Moreover, in an effort to avoid any confidentiality issues, Eddystone did not describe the specific terms or details of these agreements but limited itself to information that could be found in redacted copies of the agreements attached to Ferrellgas's SEC filings and in news reports – of which there were many – about the arrangement with Monroe. In particular, the changing economics of the Monroe relationship are driven by crude oil market prices, all publicly available information.

Next, Ferrellgas alleges that Eddystone relied on confidential information regarding internal funding arrangements between Bridger Logistics and BTS and the details of the manner in which BTS and Bridger Logistics were owned and operated. MTS at 7. But Ferrellgas does not identify a single document it provided in discovery that disclosed those arrangements. In fact, the funding arrangements are clear from the absence of any written contract between BTS and Bridger Logistics, which was disclosed by Jamex Marketing, from the fact that Eddystone began receiving payments due under the RSA directly from Bridger Logistics and its other subsidiaries rather than from BTS itself, from the fact that Bridger Logistics denies having any

obligations to BTS, and from Ferrellgas's own assertion in its public SEC filings that Bridger

Logistics had "material weaknesses" in its internal financial controls.  And, Eddystone knows

that Bridger Logistics stripped BTS of assets before selling it to Jamex Transfer Holdings

because Defendants gave Eddystone audited financial statements in April 2015 – long before any

litigation – showing assets of nearly $100 million, yet information obtained from Jamex

Marketing shows that BTS had no valuable assets as of January 2016.  Theodore Decl. ¶¶ 16-20.[4]

Ferrellgas asserts that Eddystone's claim to have obtained this information elsewhere

"blatantly contradicts" its assertion that key documents were in the sole possession of Bridger

Logistics.  MTS at 7.  There is, of course, no contradiction.  Many key documents were – and are

– in the sole possession of Bridger Logistics because it retained all of BTS' records when BTS

was sold to Jamex Transfer Holdings.  These include operational documents and Bridger

Logistics' internal financial and accounting records and associated email traffic, which will

reflect more specifics about Defendants' stripping and domination of BTS.  Theodore Decl. ¶ 4

& Ex. B.  The only relevant documents Ferrellgas produced were copies of the Monroe

agreements themselves, which were also available from Jamex.[5]

---

[4] In the arbitration, Ferrellgas produced a spreadsheet summarizing certain accounting
entries for "Bridger Rail Services," which Ferrellgas characterized as the Bridger Logistics
"accounting entity associated with the legal entity BTS."  Eddystone did not incorporate any
information from this spreadsheet into the Complaint.  Theodore Decl. ¶ 21.

[5] Contrary to Ferrellgas's assertion, MTS at 8, the Verified Petition never asserts that the
agreements between Bridger Logistics, Jamex Marketing, and Monroe – copies of which were
obviously available to all three entities – are in the sole possession of Bridger Logistics.  The
paragraphs Ferrellgas cites never make this claim.  *See* Dkt. 56-3 ¶¶ 14, 17, 19, 21.

II.     **THE CONFIDENTIALITY ORDER DID NOT PROHIBIT USE OF FERRELLGAS DOCUMENTS IN THIS LITIGATION**

While Ferrellgas did not produce any documents that were useful for the Complaint, Eddystone was free to use Ferrellgas documents for that purpose.  The Confidentiality Order expressly allows use of confidential information in "subsequent legal proceedings" in which a party "seek[s] the involvement of [] a court or other tribunal for any matter that is the subject of the Arbitration."  Confidentiality Order ¶ 6 (Dkt. 36-4).  Eddystone's Complaint in this action plainly involves "matter that is the subject of the Arbitration" because it seeks to collect the amounts owing under the RSA – the same amounts that Eddystone sought to collect from BTS in the arbitration – from alter egos and transferees of the assets of arbitration defendant BTS.

Defendants rely on Paragraph 4 of the Order to argue that Eddystone may not use information produced in the arbitration in other legal proceedings, but Paragraph 4 has an exception for uses "expressly allowed by this Order."  That includes uses expressly allowed by Paragraph 6.  And Paragraph 13 of the Confidentiality Order – on which Ferrellgas relies to demand that Eddystone destroy discovery material produced in the arbitration now that it has concluded – is expressly "subject to the provisions of Paragraph 6 herein concerning subsequent legal proceedings."

Ferrellgas's only response to the language of Paragraph 6 is to misquote it.  Ferrellgas asserts that Paragraph 6 applies only to "appeal[s]."  MTS at 9.  Instead, it extends to all "subsequent legal proceedings," including not only appeals but instances in which a party "otherwise seek[s] the involvement of [] a court or other tribunal."  Ferrellgas simply ignores this language.

Ferrellgas also argues that this action does not involve matter that is the "subject of th[e] Arbitration."  MTS at 9.  But this lawsuit seeks to collect the same RSA obligations that were at

issue in the arbitration from transferees and alter egos of the arbitral respondent because BTS cannot pay.  That clearly seeks the "involvement of a court for any matter that is the subject of the Arbitration."  The Confidentiality Order's use of the term "any matter" reflects an intention to be "all-encompassing."  *Davies v. Grossmont Union High School District*, 930 F.2d 1390, 1394 (9th Cir. 1991); *see also United States v. Gonzales*, 520 U.S. 1, 1 (1997) ("Read naturally, the . . . word 'any' has an expansive meaning.").  The term "any" as applied to "legal actions" is "broad" and "unconditional" and "appl[ies] to all claims.  *Greenfish II, L.P. ex rel. Purplefish, LLC v. International Portfolio, Inc.*, No. CIV.A. 11-7628, 2012 WL 3024759, at *5 (E.D. Pa. July 24, 2012).

Ferrellgas also argues that Paragraph 6 does not apply because Defendants "were not a 'Party' to the Arbitration."  MTS at 9.  Again, Ferrellgas misreads the plain language of the Order.  By its express language, Paragraph 6 contemplates use in subsequent legal proceedings of confidential information produced by any "Producing Party" – defined as "any third-party person or entity" – not just information produced by parties to the arbitration itself.  Order ¶¶ 1, 6.  Nothing in Paragraph 6 limits the confidential information used in subsequent legal proceedings to information produced by parties to the arbitration.[6]

In short, the Confidentiality Order does not prohibit use in this proceeding of documents Ferrellgas produced in the arbitration.

---

[6] Ferrellgas argues that Eddystone failed to comply with the requirement of Paragraph 6 that it "provide written notice to each Producing Party whose Confidential Information is sought to be used in such proceeding" to allow intervention if necessary to protect Confidential Information.  Eddystone did not provide this notice because it did not use any of Ferrellgas's information.  Nonetheless, it offered to file redacted and sealed versions of the Complaint in response to Ferrellgas's letter.  Ferrellgas ignored this offer and now fails to mention it – while at the same time accusing Eddystone of acting in bad faith.

## III.   DEFENDANTS' CONFIDENTIALITY CLAIMS DO NOT JUSTIFY A MOTION TO STRIKE

Even had Eddystone used information obtained from Ferrellgas' production in violation of the Confidentiality Order – which it did not – that would be no reason to strike allegations from the Complaint.  A motion to strike is not a proper remedy for breach of a confidentiality order, particularly where the moving party provides no authority to support its claim that the information at issue is confidential in the first place.

The "strong policy favoring resolution of the merits" means that Rule 12(f) motions "are viewed with disfavor and are infrequently granted." *Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010); *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000); *see also* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed.) ("[M]otions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted."); *Wattie-Bey v. Stephens & Michaels Associates*, No. 1:13-CV-396, 2013 WL 2302117, at *1 (M.D. Pa. May 24, 2013) (same).  "[S]triking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007).

For this reason, Rule 12(f) permits a district court to strike only "redundant, immaterial, impertinent, or scandalous matter."  A motion to strike "will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Yates v. Commercial Index Bureau*, 861 F. Supp. 2d 546, 552 n.8 (E.D. Pa. 2012).  Conversely, the fact that a complaint discloses confidential information is not grounds to strike under Rule 12(f).  *See Weeks v. McLaughlin*, No. CV 09-2498-JWL/GLR, 2010 WL 11485532, at *5 (D. Kan. Mar. 11, 2010) (holding that "striking the complaints in their entirety, pursuant to Rule 12(f), is not an appropriate remedy" for a complaint

containing confidential information, and granting motion to seal instead); *Feeding BV v. Principle Solutions*, No. 14-C-1241, 2015 WL 136402, at \*3 (E.D. Wis. Jan. 8, 2015) (denying motion to strike because "the protective order was designed to protect the privacy of information, not immunity from suit").

Here, Ferrellgas attempts to strike not irrelevant or scandalous material but highly significant and probative allegations.  The material does not rely on any documents that Ferrellgas has provided and does not violate any confidentiality agreements.  Indeed, Ferrellgas has not even made out a claim that the allegations at issue are confidential.  *See In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (Confidentiality order requires a "showing that . . . disclosure will work a clearly defined and serious injury.  . . . [S]pecificity is essential.  Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient.").  Far from serving the purposes of justice, Ferrellgas's motion would further its effort to avoid a resolution on the merits and hide its fraudulent scheme.

## IV.    DEFENDANTS' "CONFIDENTIALITY" CONCERNS ARE PRETEXTUAL

Striking Eddystone's Complaint is particularly inappropriate because Ferrellgas's purported confidentiality concerns are completely pretextual.  Ferrellgas has not cited any authority or offered any support for the notion that any of the challenged allegations in the Complaint are, in fact, confidential.  And Ferrellgas entirely ignored Eddystone's offer to file confidential portions of the Complaint under seal.

Instead, Ferrellgas has filed in the public record and quoted extensively in its Motion to Dismiss an unredacted copy of one of its supposedly confidential agreements, mere reference to which it argues is grounds for striking entire allegations from Eddystone's Complaint.  *See* Zensky MTD Decl. Ex. C (Dkt. 35-5); BL MTD at 6-8, 14, 23, 24 (Dkt. 35-1).  At the same time

that it accuses Eddystone of making improper reference to contracts between Bridger, Jamex, and Monroe, Ferrellgas seeks to use the Purchase and Sale Agreement by which Bridger Logistics sold BTS to Jamex Transfer Holdings on its own behalf.[7]

Ferrellgas's behavior shows that the supposed confidentiality concerns that underlie this motion are a sham.  This is highly improper – "a party should not be allowed to use confidential information as both a shield and a sword."  *Siemens Medical Solutions USA v. Saint-Gobain Ceramics & Plastics*, No. CIV. 07-190-SLR, 2008 WL 3862091, at *1 (D. Del. Aug. 20, 2008); *see also Sony Computer Entertainment America v. NASA Electronics Corp.*, 249 F.R.D. 378, 383 (S.D. Fla. 2008) ("Defendants should not be permitted to use a protective order as both a sword and a shield."); *Adolph Coors Co. v. American Insurance Co.*, 164 F.R.D. 507, 514 (D. Colo. 1993) (a protective order "is not intended to operate as a sword which the producing party can thereafter wield in other litigation"); *HTC Corp. v. IPCOM GMBH & Co.*, No. CIV.A. 08-1897(RMC), 2009 WL 5908010, at *2 (D.D.C. Dec. 18, 2009) (holding that defendant "may not use the protective order as both a sword and a shield").  The Court should not countenance Defendants' abuse of Rule 12(f) to selectively prevent Eddystone from using information that they use themselves and that they do not even believe to be confidential.

## CONCLUSION

For the foregoing reasons, the Motion to Strike should be denied.

---

[7] Eddystone had obtained a copy of this agreement – and authority to use it in this litigation – from Jamex but refrained from quoting its highly probative language in order to avoid confidentiality concerns and so that it could file its Complaint on the public record.  The relevant passages from the Purchase and Sale Agreement are now discussed in Eddystone's Motion to Dismiss Opposition.

Dated: April 13, 2017                      Respectfully submitted,


                                           /s/ Filiberto Agusti
                                           Filiberto Agusti (*pro hac vice*)
                                           Jeffrey M. Theodore (*pro hac vice*)
                                           Timothy Work (*pro hac vice*)
                                           Nicholas Petts (*pro hac vice*)
                                           STEPTOE & JOHNSON LLP
                                           1330 Connecticut Avenue, NW
                                           Washington, DC 20036
                                           Telephone: (202) 429-3000
                                           Facsimile: (202) 429-3902
                                           fagusti@steptoe.com
                                           jtheodore@steptoe.com
                                           twork@steptoe.com
                                           npetts@steptoe.com

                                           Henry E. Hockeimer, Jr. (I.D. No. 86768)
                                           Terence M. Grugan (I.D. No. 307211)
                                           BALLARD SPAHR LLP
                                           1735 Market Street, 51st Floor
                                           Philadelphia, PA 19103-7599
                                           Telephone: (215) 665-8500
                                           Facsimile: (215) 864-8999
                                           hockeimerh@ballardspahr.com
                                           grugant@ballardspahr.com

                                           *Counsel for Eddystone Rail Company, LLC*

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via the Court's ECF system on April 13, 2017, thereby

serving all counsel of record.

/s/ Jeffrey M. Theodore
Jeffrey M. Theodore
