**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 2:17-cv-00495-RK |
| | ) |
| vs. | ) |
| | ) |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, | )   **Oral Argument Requested** |
| JEREMY GAMBOA, FERRELLGAS | ) |
| PARTNERS, L.P., and FERRELLGAS, L.P., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

**REPLY IN FURTHER SUPPORT OF
BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., AND
FERRELLGAS, L.P.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT..................................................................................1
    I.      ERC'S OPPOSITION IMPROPERLY "AMENDS" ITS
         COMPLAINT ........................................................................1
         A.      ERC Improperly Includes Numerous "Allegations" in Its
                  Opposition That Do Not Appear in the Complaint ........................1
         B.      ERC Concedes That It Does Not Allege Fraud in Its
                  Complaint...........................................................................2
    II.     FRAUDULENT TRANSFER CLAIMS (COUNTS TWO AND
         THREE) ...............................................................................3
         A.      The Complaint Does Not Seek to Avoid (Or Even Identify)
                  Any Transfer of Balance Sheet Assets ..................................3
         B.      ERC's Allegation That an "Implied Contract" to Fund All
                  Deficiency Payments Was Abrogated Is Not Plausible and
                  Based on False Assumptions.............................................4
    III.    FIDUCIARY DUTY (COUNT 4)................................................7
         A.      ERC Incorrectly Relies on Pennsylvania Law..............................8
          B.      Louisiana Bars Direct Claims by Creditors against
                   Members of an LLC..........................................................8
         C.      ERC Lacks Standing to Pursue a Derivative Claim for
                   Breach ..........................................................................10
    IV.    ALTER EGO (COUNT ONE) ....................................................11
         A.      ERC Once Again Skirts Applicable Law and Relies on
                   Allegations Not in the Complaint to Obscure the Defects of
                  the Alter Ego Claim .......................................................11
         B.      No Injustice Results from Denying ERC's Alter Ego Claim.........13
    V.     THE FG DEFENDANTS ARE NOT PROPER DEFENDANTS ............14

CONCLUSION.....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*3 Point Holdings, L.L.C. v. Gulf S. Sols., L.L.C.*,
    No. 06-10902, 2008 WL 695379 (E.D. La. Mar. 13, 2008) ....................................................9

*Abraham v. Lake Forest, Inc.*,
    377 So. 2d 465 (La. App. 1979) ...............................................................................10, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................3, 5

*Banjo Buddies, Inc. v. Renosky*,
    399 F.3d 168 (3d Cir. 2005)...........................................................................................8

*Carrieri v. Jobs.com Inc.*,
    393 F.3d 508 (5th Cir. 2004) ..................................................................................9-10

*Cestra v. Mylan, Inc.*,
    No. 14-825, 2015 WL 2455420 (W.D. Pa. May 22, 2015) ....................................................13

*Chengelis v. Cenco Instruments Corp.*,
    386 F. Supp. 862 (W.D. Pa. 1975)..................................................................................13

*CML V, LLC v. Bax*,
    28 A.3d 1037 (Del. 2011) ...........................................................................................10

*Coachtrans, Inc. v. Uber Techs., Inc.*,
    No. 16-88, 2016 WL 4417261 (E.D. Pa. Aug. 19, 2016) ........................................................2

*Comm. of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988).........................................................................................2

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984)..................................................................................................6

*Engle v. Matrix Golf & Hosp. Phila.*,
    No. 08-5831, 2009 WL 880680 (E.D. Pa. Mar. 31, 2009) ...................................................8, 12

*First United Bank & Trust v. PNC Financial Services Group*,
    667 F. Supp. 2d 443 (M.D. Pa. 2009) ...............................................................................13

*Floyd v. Lykes Bros. S.S. Co.*,
    844 F.2d 1044 (3d Cir. 1988)........................................................................................11

*Hillman Lumber Prod., Inc. v. Webster Mfg., Inc.*,
 No. 06-1204, 2007 WL 1266124 (W.D. La. Apr. 27, 2007), *report and recommendation adopted*, No. 06-1204, 2007 WL 1672199 (W.D. La. June 6, 2007) .................................................................................................................9

*Hirsch v. Schiff Benefits Grp., LLC*,
 No. 10-2574, 2011 WL 1166127 (E.D. Pa. Mar. 28, 2011) ....................................5

*Hodge v. Strong Built Int'l, LLC*,
 2014-1086 (La. App. 3 Cir. 3/4/15); 159 So. 3d 1159 .........................................10

*Hohn v. U.S.*,
 524 U.S. 236 (1998) ..............................................................................................12

*Holber v. Pocius (In re Pocius)*,
 556 B.R. 658 (E.D. Pa. 2016) ...............................................................................15

*Hudson v. Radnor Valley Country Club*,
 No. 95-4777, 1996 WL 172054 (E.D. Pa. Apr. 11, 1996) .......................................5

*Hystro Products, Inc. v. MNP Corp.*,
 18 F.3d 1384 (7th Cir. 1994) .................................................................................11

*Kidd v. Symbion, Inc.*,
 No. 10-3361, 2011 WL 4020814 (E.D. La. Sept. 9, 2011)....................................15

*In re Lobell*,
 390 B.R. 206 (Bankr. M.D. La. 2008) .....................................................................9

*Lum v. Bank of Am.*,
 361 F.3d 217 (3d Cir. 2004).....................................................................................3

*McCrone v. Acme Markets*,
 561 F. App'x 169 (3d Cir. 2014) ..............................................................................4

*McDonough Marine Serv., a Div. of Marmac Corp. v. Doucet*,
 95-2087 (La. App. 1 Cir. 6/28/96); 694 So. 2d 305...............................................9

*Nicholson Mgmt. & Consultants, Inc. v. Bergman*,
 96-0557 (La. App. 4 Cir. Sept. 25, 1996); 681 So. 2d 471 ..................................10

*Pegasus Dev. Corp. v. Hane*,
 314 F. App'x 489 (3d Cir. 2009) ..............................................................................8

*Port of S. La. v. Tri-Par. Indus., Inc.*,
 No. 11-3065, 2013 WL 2394859 (E.D. La. May 28, 2013)....................................11

*QVC, Inc. v. OurHouseWorks, LLC*,
    649 F. App'x 223 (3d Cir. 2016) .........................................................11

*Rapp v. Walt Disney Co., Inc.*,
    No. 98- 3478, 1998 WL 564491 (E.D. Pa. Sept. 3, 1998) .....................13

*Riggins v. Dixie Shoring Co., Inc.*,
    592 So. 2d 1282 (La. 1992) .................................................................13

*In re Rite Way Elec., Inc.*,
    510 B.R. 471 (Bankr. E.D. Pa. 2014) ....................................................4

*Rowan v. Vail Holding, Inc.*,
    31 F. Supp. 2d 889 (D. Colo. 1998)......................................................6

*Rowen Petroleum Properties v. Hollywood Tanning Systems*,
    No. 08-4764, 2011 WL 6755838 (D.N.J. Dec. 23, 2011).......................7

*Secon Service System, Inc. v. St. Joseph Bank and Trust Co.*,
    855 F.2d 406 (7th Cir. 1988) ..............................................................12

*Seitz v. Fretz, Jr. (In re Covenant Partners, L.P.)*,
    No. AP 16-226, 2017 WL 838637 (Bankr. E.D. Pa. Mar. 2, 2017)........15

*Shapira v. United Med. Servs., Inc.*,
    15 N.Y.2d 200 (1965) ...........................................................................5

*Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax*
    *GmbH*,
    360 F. Supp. 2d 665 (E.D. Pa. 2005) ..................................................13

*Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*,
    462 F.3d 666 (6th Cir. 2006) ..............................................................12

*Telecom Intern. America, Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001)................................................................12

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007), *as amended* (Oct. 12, 2007) ....................6

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*,
    561 F.3d 377 (5th Cir. 2009) ..............................................................10

*Thorpe v. Weiss*,
    44 Pa. D. & C.3d 117 (Pa. C.P. 1986) ..................................................5

*Trinity Indus., Inc. v. Greenlease Holding Co.*,
    No. 08-1498, 2014 WL 1766083 (W.D. Pa May 2, 2014) ....................11

iv

*Unimobil 84, Inc. v. Spurney*,
    797 F.2d 214 (5th Cir. 1986) ...................................................................................9

*Wachovia Secs., LLC v. Banco Panamericano, Inc*,
    674 F.3d 743 (7th Cir. 2012) ...............................................................................11

*Young v. Adolph*,
    02-67 (La. App. 5 Cir. 5/15/02); 821 So. 2d 101 ..................................................8

**Statutes**

15 Pa. C.S.A. § 402(a)(1), (2) ......................................................................................8

15 Pa. C.S.A. § 4145(a) ...............................................................................................8

LA. Code Civ. Proc. Art. 611 .....................................................................................10

L.S.A.-R.S. 12:1301(A)(13) ......................................................................................10

**Other Sources**

Fletcher, Cyclopedia of the Law of Corporations §41.85 (2016) ..............................14

## PRELIMINARY STATEMENT[1]

ERC's Opposition spins a tale that has little basis in the Complaint, freely augmenting and wildly distorting the pleading in an effort to respond to the motion to dismiss.  Equally transparent, and no less material, is ERC's blithe disregard for choice-of-law.  Unhappy with the proper respect for the corporate form compelled by federal common law and relevant state law, ERC searches the nation for scattered precedents that purportedly help its case.  Even worse, ERC relies on Pennsylvania law with respect to its breach of fiduciary duty claim, omitting to tell the Court that Pennsylvania law demands application of the law of Louisiana, the place of BTS's incorporation.

## I.     ERC'S OPPOSITION IMPROPERLY "AMENDS" ITS COMPLAINT

### A.   ERC Improperly Includes Numerous "Allegations" in Its Opposition That Do Not Appear in the Complaint

ERC's Opposition is riddled with and entirely dependent on "allegations" that are not in the Complaint.  Indeed, ERC even seeks to add claims for relief in its Opposition that are not asserted in the Complaint.  Such examples include, but are not limited to, the following:

- In the very first paragraph, ERC states it obtained a "contractual commitment that they would transload a minimum volume of crude oil." Opp. 1 (referring to the owners of BTS).  But the Complaint alleges (and the RSA shows) that only BTS was contractually committed.  Compl. ¶¶ 2, 34; RSA 1, §§ 1.1, 3–4.  This is no minor typographical error, as it goes to the heart of this dispute.

- ERC argues that JTH, the entity that purchased BTS before a breach, if any, occurred, was a "newly formed shell company," that JTH was "insolvent," "asset- and revenue-less," and that Defendants "knew[] JTH had no ability to fund the

---

[1] Capitalized terms not defined herein have the meaning given in the *Memorandum of Law in Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Dismiss Plaintiff's Complaint* [ECF No. 35] (the "MTD Brief" or "Mot.").  In accordance with this Court's procedures, the BL/FG Defendants limit their reply to issues in *Plaintiff Eddystone Rail Company's Opposition to Defendants' Motions to Dismiss* [ECF No. 39] (the "Opposition" or "Opp.") that are "absolutely necessary" to correct.  Much more could be said about the numerous ways in which ERC's Opposition misconstrues the allegations in the Complaint and the applicable law and fails to respond to the MTD Brief.  The BL/FG Defendants reserve the right to raise at oral argument the misconstructions and issues not addressed in this reply out of respect for the Court's procedures.

minimum volume payments." Opp. 2; *see also* Opp. 9, 10, 25, 29, 32 (similar). <u>None</u> of these allegations are in the Complaint, which never names JTH, refers to it only as "a newly formed subsidiary of Jamex Marketing," and contains <u>no</u> factual allegations about its solvency, assets, or revenues, or defendants' supposed knowledge thereof.  Compl. ¶¶ 48, 64.[2]

- ERC now states that Logistics and others entered an arrangement to "<u>end</u> crude deliveries on February 1, 2016," Opp. 8, when the Complaint (and the documents) shows only that the delivery of crude oil was <u>suspended</u> on February 1, 2016 (and it was clearly contemplated that the flow of crude might resume).  Compl. ¶ 47.

- ERC now states that "Jamex Marketing had no logistics business at all, so it was not capable of making arrangements." Opp. 10.  This has no basis in the Complaint. *Compare* Compl. ¶¶ 48, 49.

- ERC now states that it seeks to pierce the FG Defendants' corporate veil, and implies it seeks to avoid the "transfer" of unidentified "balance sheet assets," Opp. 23, 27, but no Count in the Complaint seeks that relief.

ERC's attempt to amend its Complaint through briefing is plainly forbidden, and the Court therefore must disregard all such arguments and supposed inferences.  *See Comm. of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *Coachtrans, Inc. v. Uber Techs., Inc.*,  No. 16-88, 2016 WL 4417261 (E.D. Pa. Aug. 19, 2016) (Kelly, J.) (same).[3]

## B.  ERC Concedes That It Does Not Allege Fraud in Its Complaint

ERC concedes that it does <u>not</u> allege a fraud claim here, Opp. 19 n.4, but at the same time vaguely implies it was somehow deceived into contracting with BTS.  Indeed, that sleight of

---

[2] This also contradicts the BTS PSA and guarantee from the Jamex parent, which ERC admits it had in its possession in crafting the Complaint and Opposition. *See ERC's Opposition to Defendants' Motion to Strike Allegations in Plaintiff's Complaint* [ECF No. 40] ("<u>MTS Opp.</u>") 13 n.7.

[3] Despite ERC's improper attempts to amend its implausible and deficient Complaint through briefing (and, as set forth below, the invocation of inapplicable law), the allegations actually made in the Complaint and the uncontested documents properly considered on this motion conclusively show that ERC's claims are fatally flawed:  (1) ERC is a sophisticated party, with its own network of parents and affiliates; (2) in the RSA, ERC contracted with one counter-party, BTS; (3) ERC knew that BTS was its sole counter-party and understood BTS's relationship to its parents and affiliates; (4) ERC negotiated for certain guarantees and protections from BTS's parents and affiliates, but not others; (5) BTS had revenues and assets of close to $100 million as of December 2014; (6) when the BL/FG Defendants sold BTS in 2016, it had made all payments due to ERC; (7) BTS's new owners assumed liability; (8) the breach, if any, of the RSA occurred under the new ownership; (9) ERC has reached a settlement with JTS (formerly BTS) and the owners that control it now and at the time of the alleged breach; (10) ERC has not alleged that it has not or cannot recover the Arbitration Award from JTS and the entities that control it. *See* Compl. ¶¶ 2–4, 19, 22–23, 27, 30–32, 34, 37, 39, 48–51; RSA at 1, §§ 1.1, 2.1, 2.3, 3, 4, 9, 11, 13.2, 15.4, 15.8 & Ex. A at 1, §§ 10(d), 12, 13(a)(i); BTS PSA §§ 2.1(b), 2.3(c) & Ex. B at 1, § 4; ERC's Disclosure Statement Form [ECF No. 2]; SDNY Petition at 3; Zensky MTD Decl. Ex. D.

2

hand is critical to ERC's attempted defense of its alter ego and fiduciary duty claims.   The Complaint asserts no sufficient allegation of fraud or deceit by the BL/FG Defendants, only that BTS was not an "independent bona fide entity."  Compl. ¶¶ 8, 23, 27.[4]  First, such non-specific hints of fraud do not satisfy the heightened pleading standard of Rule 9(b) which (as ERC does not contest) applies to <u>any</u> allegations of fraud in support of <u>any</u> count.  Mot. 9; *see also Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).   Second, as evident from the declaration submitted in support of ERC's Opposition, ERC has the whole paper trail from the inception of the deal.[5]  And ERC asserts that it had a plethora of information available to draft a Complaint, and did not need or use any discovery from the BL/FG Defendants in the Arbitration to support their alter ego claims.[6]  With this quantity of information available, if a fraudulent statement had been made about BTS being a bona fide independent entity (whatever that means), ERC could have alleged it with the requisite specificity.  ERC's attempt to cast aspersions of fraud, without actually alleging it, must be rejected.  This is a contract case, plain and simple, and ERC must live with the deal it made.

## II.   FRAUDULENT TRANSFER CLAIMS (COUNTS TWO AND THREE)

### A.  The Complaint Does Not Seek to Avoid (Or Even Identify) Any Transfer of Balance Sheet Assets

In its Opposition, ERC weakly suggests that it now seeks to avoid the alleged transfers of BTS's unspecified balance sheet assets, not just the supposed implied contract. Opp. 26, 27

---

[4] The contention that BTS was not an "independent bona fide entity" as it was "held out to be," Compl. ¶¶ 8, 23, 27, is nothing more than a legal conclusion about the alleged alter ego status that is not entitled to the presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *See Declaration of Jeffrey M. Theodore in Support of Plaintiff Eddystone Rail Company's Opposition to Defendants' Motions to Dismiss* [ECF No. 39] ¶ 2 (referencing hundreds of emails) & exhibits.

[6] *See ERC's Opposition to Defendants' Motion to Strike Allegations in Plaintiff's Complaint* [ECF No. 40] ("<u>MTS Opp.</u>") 6.

(citing Compl. ¶¶ 27, 48, 49).[7]   But the Complaint does <u>not</u> seek to avoid such alleged transfers.   Rather, Counts Two and Three seek to avoid <u>only</u> the "transfer" of the alleged abrogation of an implied contract with Logistics.   Compl. ¶¶ 62-72.

The Complaint references the purported balance sheet asset transfers as a badge of fraud, if anything.   Compl. ¶¶ 27, 48, 49.   Even that allegation is deficient because the Complaint does not identify any such transfers with the requisite specificity.   Rule 9(b) requires ERC to include specificity as to the "circumstances constituting fraud" such as the "who, what, when, where, and how." *In re Rite Way Elec., Inc*., 510 B.R. 471, 477 (Bankr. E.D. Pa. 2014) (citation omitted). But the Complaint does not come close to meeting this burden: (i) it alleges no transferee, only the unspecific "FGP entities"; (ii) it alleges no assets transferred, their worth, or what was given in exchange, providing only a generic list; (iii) it alleges no transfer date, which could be any time between December 2014 and February 2016; and (iv) it alleges no "where" or "how."  Compl. ¶ 27, 48.[8]

### B. ERC's Allegation That an "Implied Contract" to Fund All Deficiency Payments Was Abrogated Is Not Plausible and Based on False Assumptions

The fraudulent transfer claim ERC actually alleges is limited to the release of the alleged implied contract.   ERC cites *McCrone v. Acme Markets*, 561 F. App'x 169 (3d Cir. 2014) for the proposition that "the existence of an implied contract is a question of fact, not a matter to be resolved on a motion to dismiss."   Opp. 27.[9]   This is incorrect and bizarre.   In *McCrone*, the

---

[7] *See* Compl. ¶ 27 ("as of December 31, 2014, BTS had total assets of $98.1 million"); ¶ 48 ("Prior to the [2016] transfer of BTS to Jamex Marketing, the Defendants transferred all of BTS' real estate, equipment, receivables, and other assets to other FGP entities"); ¶ 49 ("Jamex Marketing paid $10 for now valueless BTS, which twelve months earlier had $98.1 million in assets.").

[8] This is in contrast to the allegation that BTS abrogated the "implied contract," which contains more specificity, although the claim is deficient in other respects.

[9] Contrary to ERC's assertion, Opp. 27, the BL/FG Defendants <u>did</u> deny that any transfer was made with fraudulent intent or for lack of reasonably equivalent value. Mot. 21 n.17.

Third Circuit <u>affirmed</u> a 12(b)(6) dismissal on the grounds that the plaintiff had failed to allege the existence of an implied contract sufficiently.[10]

ERC also asserts that the "implied contract" must have covered "all amounts due under the RSA" because Logistics had historically provided BTS with funds to pay fees for transloading, as well as "all minimum volume commitment payments under the RSA." Opp. 28; *see also id.* 6, 7.  This is yet another attempt by ERC to amend its Complaint, which never actually alleged that Logistics made deficiency payments. Compl. ¶¶ 5, 58, 39.  Moreover, as set forth in the MTD Brief, this supports at most (and the BL/FG Defendants do not concede that it does) that Logistics would have agreed to pay BTS for expenses *while it was utilizing BTS to transload oil.* Mot. 23.[11]  Indeed, that any alleged "implied contract" between BTS and Logistics could not plausibly extend for the term of the RSA, is confirmed by a case ERC itself cites.  In *Hudson v. Radnor Valley Country Club*, the court held that an implied-in-fact contract may "arise from a course of dealing, including the receipt of and payment for services over a period of time," but that "*one would not ordinarily assume that each party intended to bind itself to perform for another year or any specific period.*" No. 95-4777, 1996 WL 172054, at *2 (E.D. Pa. Apr. 11, 1996) (emphasis added) (holding parties had no "[implied] contractual obligation to continue to do business").

---

[10] *Hirsch v. Schiff Benefits Grp., LLC*, No. 10-2574, 2011 WL 1166127 (E.D. Pa. Mar. 28, 2011), cited in the MTD Brief, also involved dismissal of an implied contract claim on a 12(b)(6) motion.  *Id.* at *3.  ERC's remaining two cases are equally unhelpful to their argument. *Shapira v. United Med. Servs., Inc.*, 15 N.Y.2d 200 (1965) (finding of no implied contract was one of fact for purposes of review); *Thorpe v. Weiss*, 44 Pa. D. & C.3d 117 (Pa. C.P. 1986) (context of fiduciary relationship between physician and patient).

[11] ERC's suggestion that this is a "factual matter" is a red herring. Opp. 30. The plausibility of ERC's allegation is the quintessential focus on a 12(b)(6) motion.  *Iqbal*, 556 U.S. at 678 (citations omitted) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''").

ERC's arguments about implied contracts between a parent and subsidiary are equally flawed.[12]  As the Third Circuit has held, "the only interest of a wholly owned subsidiary is in serving its parent." *In re Teleglobe Commc'ns Corp*., 493 F.3d 345, 367 (3d Cir. 2007), *as amended* (Oct. 12, 2007).   ERC's effort to distinguish *Teleglobe* is unavailing.  First, in suggesting *Teleglobe* is the "only case" for the "novel proposition," Opp. 30, ERC appears not to have noticed the multiple citations <u>in</u> *Teleglobe* itself, nor the BL/FG Defendants' citation to *Copperweld Corp. v. Indep. Tube Corp*., 467 U.S. 752, 777 (1984), nor the discussion of "functional relationships" in its own case, *Rowan*, 31 F. Supp. 2d at 907.  Second, the comment about insolvency does nothing to undermine the principle that a parent and subsidiary need not engage in arms' length, "third party" hard bargaining, as ERC proposes (without case law support).[13]  Indeed, it is ERC's incorporeal allegation—that a parent formed an "implied contract" with its subsidiary to fund all its future expenses and then "abrogated" it, which "abrogation" constitutes a fraudulent transfer—that is novel.  ERC cites no case involving even a remotely similar claim.

ERC's assertion that the BTS PSA is an "implicit conce[ssion]" that Logistics had an "implied contract" to fund BTS's expenses, even when it was not using its services, Opp. 29, strains credulity.  That the buyer confirmed that it and BTS would be responsible for performing the RSA going forward does not in any way constitute a transfer of an obligation by Logistics.

---

[12] ERC cites *Rowan v. Vail Holding, Inc*., 31 F. Supp. 2d 889 (D. Colo. 1998), for the notion that a court will find a parent/subsidiary implied contract.  Rowan was decided in the unique context of Colorado's "statutory employer" statute and the proponent of the existence of the implied contract was one of the parties to it.  *Id*. at 904, 907.  Here, ERC, as an outsider, is claiming that two other parties formed an implied contract.  And, importantly, the Rowan court noted that its finding required "careful analysis," was specific to the facts, and was a carve out from the prevailing law that a "functional relationship between a parent and a subsidiary is <u>not</u> a contract."  *Id.* (citation omitted) (emphasis added).

[13] ERC alleges that, far from insolvency, BTS had close to $100 million in assets in December 2014.  Compl. ¶ 27.

Finally, ERC launches into an elaborate discussion about how the sale to JTH was a "sham transfer . . . to an assetless, newly formed entity created for the sole purpose of holding the equity of the asset-stripped BTS."  Opp. 32; *see also* Opp. 9, 10, 25, 29 (similar).  These arguments are, again, based on "allegations" that are not in the Complaint, which refers to JTH only as "a newly formed subsidiary of Jamex Marketing," Compl. ¶ 48, and which does not allege that it was assetless, revenueless, or insolvent, and there is no sufficient allegation that any assets were stripped.  Further, the wildly inaccurate implication in the Opposition (and from the cases ERC cites) is that JTH was <u>Logistics's</u> newly formed shell company.  Opp. 20-22.  Likewise, ERC misleadingly ignores the guarantee obtained from the parent, Jamex Marketing.  Mot. 8, 14.  The truth, as set forth in the Complaint and documents properly before this Court, is that ERC entered into the RSA without negotiating a change in control provision, capitalization requirement, or other guarantees, and Logistics had full rights to sell BTS whenever it wished, without notice to ERC.  Mot. 7.[14]

### III.    FIDUCIARY DUTY (COUNT 4)

ERC ***still fails*** to clarify for this Court (or properly put the BL/FG Defendants on notice) of whether it asserts its breach of fiduciary duty claims directly or derivatively.  Mot. 24.  But, either way, ERC's claims must be dismissed.

The fiduciary duties owed to a Louisiana LLC are exclusively set forth in and narrowly circumscribed by the governing statute and, under Louisiana law, a creditor may not bring *direct*

---

[14] This alone distinguishes *Rowen Petroleum Properties v. Hollywood Tanning Systems*, No. 08-4764, 2011 WL 6755838 (D.N.J. Dec. 23, 2011), where the plaintiff-landlord had contracted for notice and consent rights before the tenant, HTS, could assign the lease to another tenant to ensure the new tenant would meet capitalization requirements. *Id.* at *1.  The tenant sought to assign the lease to one entity and provided information but then, in an alleged "bait and switch," substituted a new shell entity without providing updated information. *Id.* at *2.

claims for breach of fiduciary duty, absent viable allegations of fraud,[15] and a non-member lacks

standing to bring such claims *derivatively* against LLCs or their fiduciaries. Mot. 24–27.

### A.  ERC Incorrectly Relies on Pennsylvania Law

ERC wrongly asserts that Pennsylvania law applies to its breach of fiduciary duty claims

and cites seven irrelevant Pennsylvania decisions.[16]   Opp. 35–36, 36 n.5.   It is crystal clear,

however, that Louisiana law applies to ERC's breach of fiduciary duty claims under the internal

affairs doctrine.  *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 n.10 (3d Cir. 2005)

("[T]he 'internal affairs doctrine' holds that courts look to the law of the state of incorporation to

resolve issues involving the internal affairs of a corporation[,] . . . and Pennsylvania has adopted

the 'internal affairs doctrine' by statute."); 15 Pa. C.S.A. § 4145(a) (same); 15 Pa. C.S.A. §

402(a)(1), (2) (same as applied to foreign limited liability companies); *Pegasus Dev. Corp. v.

Hane*, 314 F. App'x 489, 492 n.3 (3d Cir. 2009) (similar).  Not surprisingly, the choice-of-law

decisions cited by ERC fail to counsel a different result. Opp. 36 n.5.   Pennsylvania and

Louisiana law differ substantially with respect to breach of fiduciary duty claims involving LLCs

and cannot be applied interchangeably.

### B.  Louisiana Bars Direct Claims by Creditors against Members of an LLC

Louisiana law does not permit creditors to bring direct claims for breach of fiduciary duty

against fiduciaries of an LLC in the absence of fraud.  Mot. 25.  The decisions cited in ERC's

Opposition confirm that a creditor plaintiff must plead fraudulent conduct with specificity in

order to prevail on a direct breach of fiduciary duty claim under Louisiana LLC law.  *See Young

v. Adolph*, 02-67 (La. App. 5 Cir. 5/15/02); 821 So. 2d 101, 106 (dismissing claim, noting

"[w]hile Plaintiffs are correct that our courts have recognized a fiduciary duty by a corporation

---

[15] ERC expressly concedes it does not allege fraud.  Opp. 19 n.4.

[16] Notably, one decision even applies New Jersey law to the breach of fiduciary duty claims alleged there.  *See Engle v. Matrix Golf & Hosp. Phila.*, No. 08-5831, 2009 WL 880680, at *6 (E.D. Pa. Mar. 31, 2009).

towards creditors of that corporation, personal liability by the principals of the corporation for breach of that duty does not lie, absent proof of fraud in the actions taken by the principals"); *Hillman Lumber Prod., Inc. v. Webster Mfg., Inc.*, No. 06-1204, 2007 WL 1266124, at *6 (W.D. La. Apr. 27, 2007), *report and recommendation adopted*, No. 06-1204, 2007 WL 1672199 (W.D. La. June 6, 2007) (similar).  ERC's claim is doomed because it has not alleged fraud.

This analysis does not change with respect to insolvent corporate entities, and ERC provides no support for the proposition that creditors of an insolvent LLC can bring breach of fiduciary duty claims and utterly fails to distinguish the decisions cited by the BL/FG Defendants.  *See McDonough Marine Serv., a Div. of Marmac Corp. v. Doucet*, 95-2087 (La. App. 1 Cir. 6/28/96); 694 So. 2d 305, 312 (fiduciaries of insolvent entity did not owe any duties to creditors); *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (applying Louisiana law; creditor of bankrupt corporation barred from bringing breach of fiduciary duty claims).

ERC's citation to *3 Point Holdings, L.L.C. v. Gulf South Solutions, L.L.C.*, No. 06-10902, 2008 WL 695379, at *2 (E.D. La. Mar. 13, 2008), is similarly unavailing. The <u>only</u> decision to even cite the *3 Point Holdings* decision criticizes it as badly reasoned and declines to follow it. *See In re Lobell*, 390 B.R. 206, 217 (Bankr. M.D. La. 2008) (rejecting *3 Point Holdings*, and holding that "[n]o controlling authority supports the conclusion that, even if [the shareholder of the LLC] owed a fiduciary duty to [the LLC], [the creditor] had the right to enforce that duty.") Indeed, without discussing Louisiana law at all, the *3 Point Holdings* court cites (cursorily) to only one case in connection with the breach of fiduciary duty claim—*Carrieri v. Jobs.com Inc.*— an appeal from a Texas court considering Texas and Delaware law, which is inapplicable and has

since been abrogated in relevant part and/or rendered inapplicable to LLCs. 393 F.3d 508, 534 n.24 (5th Cir. 2004); Mot. 26 n.22, 27 n.23.

### C.  ERC Lacks Standing to Pursue a Derivative Claim for Breach

As set forth in the MTD Brief, under Louisiana law, only a member or manager of an LLC may bring a derivative claim against an LLC, its members or managers.  *See* Mot. 26–27; *see also* LA. Code Civ. Proc. Art. 611; L.S.A.-R.S. 12:1301(A)(13).  Further, creditors are not permitted to bring derivative actions against fiduciaries of corporate entities, even in the context of insolvency.[17]  ERC cites *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009), for the proposition that "insolvency determines whether creditors have the power to bring derivative claims." Opp. 38.  *Torch*, however, only underscores the futility of ERC's claim.  *Torch* is a Fifth Circuit decision applying Delaware law to a corporation incorporated in Delaware that was being liquidated in bankruptcy under a Chapter 11 plan.  *See Torch*, 561 F.3d at 385 n.7.  And, *Torch* refused to allow a plaintiff to dress up an "impermissible" direct claim as derivative.[18]  *See id.* at 385.  ERC's attempt to avoid Louisiana's clear statutes limiting the liability of members and managers must fail.[19]

---

[17] ERC has failed to distinguish any of the decisions cited by the BL/FG Defendants on this point.  *See, e.g.*, *Nicholson Mgmt. & Consultants, Inc. v. Bergman*, 96-0557 (La. App. 4 Cir. Sept. 25, 1996); 681 So. 2d 471, 477, (in context of insolvency, rejecting plaintiffs' assertion that "as creditors their action is no different than a shareholder's derivative action, and that fiduciary duties are owed to . . . creditors," absent fraud).

[18] Any dicta in *Torch* regarding a creditor's ability to bring derivative fiduciary breach claims under Delaware law is inapplicable to LLCs, even under Delaware law.  *See CML V, LLC v. Bax*, 28 A.3d 1037, 1046 (Del. 2011), *as corrected* (Sept. 6, 2011) (post *Torch*, holding Delaware law denies derivative standing to LLC creditors).

[19] ERC erroneously invokes L.S.A.-R.S. 12:1320(D) (Opp. 38–39), which permits an action against a member of an LLC solely for violations of professional duties performed "outside of the member's capacity as a member," most typically professional malpractice.  *See, e.g.*, *Hodge v. Strong Built Int'l, LLC*, 2014-1086 (La. App. 3 Cir. 3/4/15); 159 So. 3d 1159, 1166.  ERC makes no allegation that any of the BL/FG Defendants were acting outside of their capacities as purported controllers of BTS.  Further, neither of the decisions ERC cites for this proposition even purports to apply L.S.A.-R.S. 12:1320(D).  Opp. 38–39.  *Abraham v. Lake Forest* has also repeatedly been distinguished by Louisiana courts on the grounds that it required allegations of fraud.  *See e.g.*, *Nicholson Mgmt. & Consultants, Inc.*, 681 So. 2d at 477.

## IV.    ALTER EGO (COUNT ONE)

### A.   ERC Once Again Skirts Applicable Law and Relies on Allegations Not in the Complaint to Obscure the Defects of the Alter Ego Claim

In defense of its alter ego claim, ERC again relies on inapplicable state law.  As set forth in the MTD Brief, alter ego claims asserted under maritime jurisdiction are governed by federal common law.  Mot. 10.  "[S]tate law may supplement maritime law when maritime law is silent or where a local matter is at issue, but state law may not be applied where it would conflict with maritime law."  *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1047 (3d Cir. 1988).  Accordingly, the BL/FG Defendants moved to dismiss under federal common law, Louisiana law, and Pennsylvania law.[20]

But ERC's Opposition fails to cite and rely on a single maritime alter ego case.  Instead, without discussing choice-of-law, ERC relies on state-law cases from jurisdictions with no nexus whatsoever to the claims in this case, which apply state-law standards and presumptions that conflict with the law applicable here, and consider factual scenarios that bear no relation to the case at hand.[21]  To the extent that reference to cases from unrelated jurisdictions may guide this Court's analysis of ERC's claims, it is notable that multiple Circuit Courts have found that it is "inconceivable" that a creditor that knowingly contracted with a subsidiary and failed to obtain a parent guaranty should be able to pierce the corporate veil on a breach of contract claim, particularly where, as here, the negotiating history or relevant contract show that the parties considered the question of the subsidiary's "ability to pay"—even where domination was

---

[20] Louisiana law applies because BTS is a Louisiana LLC and the law has been found not to conflict with the federal alter ego test.  *See Port of S. La. v. Tri-Par. Indus., Inc.*, No. 11-3065, 2013 WL 2394859 (E.D. La. May 28, 2013).  Pennsylvania law is relevant in so far as ERC asserts that the claims have a nexus to Pennsylvania and the law has been found not to conflict with the federal alter ego test.  *Trinity Indus., Inc. v. Greenlease Holding Co.*, No. 08-1498, 2014 WL 1766083 (W.D. Pa. May 2, 2014).

[21] The following Circuit Court cases on which ERC relies all were applying Illinois law, which conflicts with the law applicable to ERC's claims and, moreover, are factually distinguishable.  *QVC, Inc. v. OurHouseWorks, LLC*, 649 F. App'x 223, 226 (3d Cir. 2016) (Illinois law); *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384 (7th Cir. 1994) (Illinois law); *Wachovia Secs., LLC v. Banco Panamericano, Inc*, 674 F.3d 743 (7th Cir. 2012) (Illinois law).

sufficiently alleged.  *Telecom Intern. America, Ltd. v. AT&T Corp.*, 280 F.3d 175, 200–01 (2d Cir. 2001) (noting alter ego plaintiff bears a heavy burden); *Southeast Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 675 (6th Cir. 2006) ("In both Tennessee and Delaware, the principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity") (citations omitted); *Secon Service System, Inc. v. St. Joseph Bank and Trust Co.*, 855 F.2d 406, 415-16 (7th Cir. 1988) (plaintiff on alter-ego contract claim must allege "something more than control" because "unless the corporation engaged in some practice that might have misled its contract creditors into thinking they were dealing with another entity, there simply is no need to 'protect' them.").

The handful of Pennsylvania cases on which ERC relies are readily distinguishable. First, *Engle* has little precedential value here, as it did not consider the requirement that a plaintiff seeking to pierce the corporate veil "present an element of injustice or fundamental unfairness," the burden of a sophisticated plaintiff's informed decision to enter a long term contract solely with a subsidiary without any net worth representation or parent guaranty, and courts' reluctance to recut the deal.  *See* Mot. 4-5; 2009 WL 880680.  Indeed, the defendants in *Engle* offered <u>no</u> legal argument for the Court's consideration about the standard for alter ego claims at all, and instead based their entire (two page) argument on the *Iqbal/Twombly* pleading standard.[22]  Without an adversarial process on the alter ego claim, the issues at stake in this case were not determined by *Engle*.  *See Hohn v. U.S.*, 524 U.S. 236, 251 (1998) (the court is "less constrained to follow precedent where, as here, the opinion was rendered without full briefing or

---

[22] *See Defendants' Memorandum of Law in Support of Their Motion to Dismiss, or in the Alternative, Transfer Venue*, Case No. 2:08-cv-05831-RK (Feb. 12, 2009) [ECF No. 18-1] 7–9.

argument."); *Cestra v. Mylan, Inc*., No. 14-825, 2015 WL 2455420, at *11 (W.D. Pa. May 22, 2015) (declining to follow cases when the issue was not before the prior courts).[23]

### B.  No Injustice Results from Denying ERC's Alter Ego Claim

ERC does not allege fraud.  *See supra*.  Nor can it show injustice or unfairness where the Complaint, the plain terms of the RSA, and ERC's own words conclusively establish that it understood exactly who its counter-party was and the degree of protection it had bargained for in the event of BTS's potential inability to pay.  *E.g.*, Mot. 5; RSA § 11.1; Exhibit D to Zensky MTD Decl. (ERC refusing to provide consents because it insisted that its "agreements *are with Bridger Transfer Services, LLC only*.") (emphasis added).  Moreover, it is undisputed that BTS made all payments due to ERC during the BL/FG Defendants' ownership of it and any breach that occurred happened after BTS had been sold to new owners.

ERC argues that "Defendants cite no authority for the proposition that failure to obtain a guarantee—even in the presence of overwhelming alter ego facts—precludes veil-piercing." Opp. 18.  But *Lake Forest* holds precisely that, finding that although the plaintiff had established "a number of factors" supporting veil piercing, the fact that the plaintiff had made a "business judgment" to take a note betting on the success of the project, and "not relying on the credit of the parent corporation," foreclosed application of the alter ego theory.  377 So. 2d 465, 468-69 (La. App. 1979).  Numerous authorities are in accord. *E.g.*, *Chengelis v. Cenco Instruments Corp*., 386 F. Supp. 862, 865 (W.D. Pa. 1975); *Riggins v. Dixie Shoring Co., Inc*., 592 So. 2d

---

[23] *First United Bank & Trust v. PNC Financial Services Group*, 667 F. Supp. 2d 443 (M.D. Pa. 2009) included specific allegations of fraud and misrepresentations.  But as discussed, ERC does not make such allegations here. The remaining Pennsylvania cases on which ERC relies, considered alter ego claims for personal jurisdiction purposes—which ERC underline itself asserts is a "less onerous standard," Opp. 43—and the decisions lack consideration of the unfairness/injustice prong.  *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (considered alter ego in connection with personal jurisdiction analysis, not imposition of liability, and omitted the unfairness/injustice prong); *Rapp v. Walt Disney Co., Inc.*, No. 98-3478, 1998 WL 564491, at *3 (E.D. Pa. Sept. 3, 1998) (Kelly, J.) (considering alter ego in connection with personal jurisdiction analysis, omitting unfairness/injustice prong; declining to pierce the veil).

1282, 1285 (La. 1992); *see also* Fletcher, Cyclopedia of the Law of Corporations §41.85 (2016). This is exactly what happened here.

The absence of any unfairness or injustice supporting an alter ego claim is underscored in this case, where ERC not only knowingly entered the RSA, but also is pursuing the BL/FG Defendants—rather than the breaching counter-party and the entities that control it and guaranteed its performance—as an aggressive (and seemingly collusive) litigation tactic.[24]   If ERC truly considered the BL/FG Defendants to be the alter egos of BTS, they could have, and should have, sought to assert claims against them in the Arbitration.   Instead, following an arbitration, in which no hearing on JTS's defenses or counterclaims[25] even occurred, JTS and the entities that control it "capitulated" to a settlement agreement awarding ERC the full amount demanded.  Compl. ¶ 51; Conf. Tr. 8:20-9:5, 10:4-17, 15:15-16:12.[26]  And now, rather than even trying to seek satisfaction of that award from the parties to the settlement agreement (*i.e.*, the parties that breached, guaranteed performance, and controlled JTS), it appears that ERC has concocted a scheme to impose that liability *in full* on the *pre*-breach BL/FG Defendants.  *See generally* Compl.  This does not vindicate an injustice, it perpetrates one.

## V.    THE FG DEFENDANTS ARE NOT PROPER DEFENDANTS

The Opposition does nothing to save the claims against the FG Defendants, who were clearly added to the Complaint as an afterthought, without any specific details concerning the FG Defendants' purported domination.   First, the Complaint does not assert any alter ego claim

---

[24] ERC pursues this strategy, even though it admits that it has long had in its possession, documents showing that Jamex Marketing guaranteed JTS's performance under the RSA.  *See* MTS Opp. 13 n.7.

[25] *See Declaration of Jeffrey M. Theodore in Support of Plaintiff Eddystone Rail Company's Opposition to Defendants' Motions to Strike Allegations in Plaintiff's Complaint* [ECF No. 40] Ex. A.

[26] Relevant excerpts of the transcript of the April 13, 2017 conference before the U.S. District Court for the Southern District of New York (the "Conf. Tr.") are attached as *Exhibit A to the Declaration of David M. Zensky in Support of Reply in Further Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Dismiss Plaintiff's Complaint*, filed concurrently herewith.

against the FG Defendants. Count One clearly asks this Court to pierce only one corporate veil: that of BTS.  Compl. ¶ 61.  As noted, ERC cannot use its Opposition, Opp. 23, to add an additional count against the FG Defendants. Second, with respect to Counts Two and Three, ERC does not contest that either of the FG Defendants was a direct or subsequent transferee of any alleged fraudulent transfer.  Opp. 32-33.  ERC argues only that the FG Defendants are the persons "for whose benefit the transfer was made." Opp. 33.  But ERC alleges no specifics about how or why that is the case, and alleging ownership of Logistics, and thereby BTS, is not enough to allege status as a transfer beneficiary.  *Holber v. Pocius (In re Pocius)*, 556 B.R. 658, 672 (E.D. Pa. 2016). And finally, Count Four fails because the FG Defendants are neither members nor managers of BTS and therefore are not liable for any purported fiduciary breaches. Mot. 29.  ERC fails to distinguish—or even to cite—the on point law cited in the MTD Brief. *See Kidd v. Symbion, Inc.*, No. 10-3361, 2011 WL 4020814, at *9 (E.D. La. Sept. 9, 2011).[27]

## CONCLUSION

For the foregoing reasons, this action should be dismissed in its entirety as to the BL/FG Defendants.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

---

[27] Instead, ERC cites to a bankruptcy case decided under the Delaware statutory law of limited partnerships, neither of which governs here.  *See Seitz v. Fretz, Jr. (In re Covenant Partners, L.P.)*, No. AP 16-226, 2017 WL 838637, at *3 (Bankr. E.D. Pa. Mar. 2, 2017);  Opp. 39.

Dated: April 21, 2017                    Respectfully submitted,

                                          */s/ Jeffery A. Dailey*
                                          Jeffery A. Dailey (I.D. No. 85993)
                                          Caroline A. Gardner (I.D. No. 318815)
                                          AKIN GUMP STRAUSS HAUER &
                                          FELD LLP
                                          Two Commerce Square, Suite 4100
                                          2001 Market Street
                                          Philadelphia, PA 19103
                                          T: 215-965-1200
                                          F: 215-965-1210
                                          jdailey@akingump.com
                                          cgardner@akingump.com

                                          David M. Zensky (*pro hac vice*)
                                          Katherine P. Porter (*pro hac vice*)
                                          Kelly A. Eno (*pro hac vice*)
                                          AKIN GUMP STRAUSS HAUER &
                                          FELD LLP
                                          One Bryant Park
                                          New York, New York 10036
                                          T: (212) 872-1000
                                          F: (212) 872-1002
                                          dzensky@akingump.com
                                          kporter@akingump.com
                                          keno@akingump.com
                                          *Attorneys for Bridger Logistics, LLC*
                                          *Ferrellgas Partners, L.P., and Ferrellgas L.P.*

**CERTIFICATE OF SERVICE**

I, Jeffery A. Dailey, hereby certify that I caused the Reply in Further Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Dismiss Plaintiff's Complaint and supporting documents to be filed and served to all counsel of record via the Court's ECF system on April 21, 2017.

Dated: April 21, 2017                                         */s/ Jeffery A. Dailey*