**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:17-cv-00495-RK |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, | ) | **Oral Argument Requested** |
| JEREMY GAMBOA, FERRELLGAS | ) | |
| PARTNERS, L.P., and FERRELLGAS, L.P., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**REPLY IN FURTHER SUPPORT OF**
**BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., AND**
**FERRELLGAS, L.P.'S MOTION TO**
**STRIKE ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 1

      I.       ALLEGATIONS BASED ON CONFIDENTIAL INFORMATION USED
             IN VIOLATION OF THE CONFIDENTIALITY ORDER MUST BE
             STRICKEN ................................................................................................. 1

           A.     ERC's Reading of the Confidentiality Order is Untenable and
                  Inconsistent with ERC's Own Representations. .......................................... 2

                 i.      Paragraph 6 of the Confidentiality Order Does Not Apply
                        Here ............................................................................................. 3

                 ii.     ERC Cannot Use Confidential Information Without a Court
                        Order. ........................................................................................... 5

                 iii.    ERC's Contradictions Belie Its Disingenuous Arguments ............... 5

           B.     ERC's Blatant Violation of the Confidentiality Order Justifies
                  Striking the Offending Allegations from Its Complaint under Rule
                  12(f) ........................................................................................................... 5

CONCLUSION ....................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*,
    718 F. Supp. 2d 1167 (N.D. Cal. 2010) ...................................................................7

*DeLa Cruz v. Piccari Press*,
    521 F. Supp. 2d 424 (E.D. Pa. 2007) .....................................................................7

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
    640 F.3d 1034 (9th Cir. 2011) ...............................................................................6

*Feed.ing BV v. Principle Sols.*,
    No. 14-C-1241, 2015 WL 136402 (E.D. Wis. Jan. 8, 2015) ..................................6

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
    No. 12-CV-03844-JST, 2014 WL 6879428 (N.D. Cal. Dec. 5, 2014) ...................6

*Stanbury Law Firm v. I.R.S.*,
    221 F.3d 1059 (8th Cir. 2000) ...............................................................................7

*Wattie-Bey v. Stephens & Michaels Assocs.*,
    No. 1:13-CV-396, 2013 WL 2302117 (M.D. Pa. May 24, 2013)...........................7

*Weeks v. McLaughlin*,
    No. CV 09-2498- JWL/GLR, 2010 WL 11485532, at *5
    (D. Kan. Mar. 11, 2010)..........................................................................................6

*Yates v. Applied Performance Techs., Inc.*,
    205 F.R.D. 497 (S.D. Ohio 2002) ..........................................................................6

*Yates v. Commerical Index Bureau*,
    861 F. Supp. 2d 546 (E.D. Pa. 2012) .....................................................................6

**Statutes**

FED. R. CIV. P. 12(f) .......................................................................................................5, 6, 7

ii

## PRELIMINARY STATEMENT[1]

In its MTS Opposition,[2] ERC continues to misconstrue the plain terms of the Confidentiality Order.  Its proposed reading of the Confidentiality Order is untenable and should be rejected.  This Court should also reject ERC's unbelievable contention that it did not use the BL/FG Defendants' Confidential Information to draft its Complaint, particularly where its current statements about the source of certain documents and information conflict with ERC's prior sworn statements in the Southern District of New York and representations in the MTS Opposition.   The allegations in ERC's complaint that rely on the BL/FG Defendants' Confidential Information should be stricken, or this Court's decision should be deferred pending discovery into the drafting of the Complaint.

## ARGUMENT

### I.     ALLEGATIONS BASED ON CONFIDENTIAL INFORMATION USED IN VIOLATION OF THE CONFIDENTIALITY ORDER MUST BE STRICKEN

As an initial matter, this Court should reject ERC's invitation to simply take its word that it did not use the BL/FG Defendants' Confidential Information in drafting its Complaint.  ERC swore in its Verified Petition in the Southern District of New York that "certain financial documents in FGP's *exclusive control* are material evidence in the arbitration . . . [and thus commanded the FG Defendants to produce, *inter alia,*] agreements among JTS, Bridger Logistics, Jamex Marketing, and Monroe relating to the transportation and sale of the crude,

---

[1] If the Court grants *Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Dismiss Plaintiff's Complaint* [ECF No. 35], then *Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Strike Allegations In Plaintiff's Complaint* [ECF No. 36] is rendered moot.  ERC's pleading is defective regardless of whether any allegations are struck from its Complaint.

[2] Capitalized terms not defined herein have the meaning given to them in the *Memorandum of Law in Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Strike Allegations in Plaintiff's Complaint* [ECF No. 36] ("MTS Brief").  In accordance with this Court's procedures, the BL/FG Defendants limit their reply to issues in *Plaintiff Eddystone Rail Company's Opposition to Defendants' Motions to Strike Allegations in Plaintiff's Complaint* [ECF No. 40] (the "MTS Opposition" or "MTS Opp.") that are "absolutely necessary" to correct.  The BL/FG Defendants reserve the right to raise at oral argument the issues not addressed in this reply out of respect for the Court's procedures.

financial and accounting records, as well as the asset purchase agreement for JTS's sale back to the Jamex Group."  Zensky MTS Decl. Ex. A ¶ 21 (emphasis added); *see also* ¶¶ 14, 17.[3] Despite its prior sworn representations that multiple categories of documents were in the FG Defendants' "exclusive control" (which the FG Defendants subsequently produced), ERC now asks this Court to believe that "the only relevant documents produced by Ferrellgas—the contracts—were also produced by Jamex Marketing."  MTS Opp. 5.  ERC cannot have it both ways: it either misrepresented the facts to the Southern District of New York by saying only the FG Defendants had the documents—in order to obtain relief compelling burdensome document productions—or is misrepresenting them to this Court by saying that Jamex Marketing ("Jamex") also had the documents—in order to shield its Complaint.

ERC concedes that the BL/FG Defendants produced final copies of the agreements and other documents that ERC relied upon in its Complaint but asks this Court to believe it did not use the BL/FG Defendants' copies of those documents but rather *identical copies* of such documents, which it swore in the Southern District of New York were under the BL/FG Defendants' exclusive control, produced to it by Jamex.  MTS Opp. 1, 4–6.  This too-convenient explanation should be rejected.  Further, as set forth below, even if ERC used Jamex's copies of certain Confidential Information rather than that of the BL/FG Defendants (which ERC is skeptical about), this nonetheless violates the Confidentiality Order.

**A.  ERC's Reading of the Confidentiality Order is Untenable and Inconsistent with ERC's Own Representations.**

ERC erroneously contends that it was permitted to use Confidential Information purportedly produced to it by Jamex to draft its Complaint because such use is permitted under

---

[3] ERC's bald assertion in the MTS Opposition that it "never asserted" this cannot overcome the straightforward language of the Verified Petition.  MTS Opp. 8 n.5.

the terms of the Confidentiality Order without an order from a court of appropriate jurisdiction. MTS Opp. 5, 6 n.3, 7, 9–10, 13 n.7.  ERC is wrong on both counts. When Paragraphs 4 and 6 of the Confidentiality Order are read together, it is clear that subsequent actions *between ERC and Jamex* are governed by Paragraph 6 and that actions against any *third party* (including a Producing Party) are governed by Paragraph 4.  This crucial difference shows that ERC's use of the Confidential Information was wholly improper.

### i.      *Paragraph 6 of the Confidentiality Order Does Not Apply Here.*

In a futile attempt at an end-run around the crystal clear provisions of Paragraph 4 (*see infra*), ERC maintains that Paragraph 6 authorizes its use of the BL/FG Defendants' Confidential Information because it permits the use of Confidential Information in "subsequent legal proceedings . . . for any matter that is the subject of this Arbitration."  Zensky MTS Decl. Ex. B ¶ 6.  MTS Opp. 9–10.  ERC maintains that Paragraph 6 applies here, because it "contemplates use in subsequent legal proceedings of confidential information produced by any 'Producing Party.'"  MTS Opp. 10.  But, on its face, Paragraph 6 applies only to subsequent legal proceedings *between the* "*Parties*," contractually defined as ERC and Jamex Transfer Services, LLC ("JTS").  Zensky MTS Decl. Ex. B at 1.  Paragraph 6 specifies that:

> [S]hould either [ERC or JTS] appeal to (or otherwise seek the involvement of) a court or other tribunal for any matter that is the subject of this Arbitration, then [ERC and JTS] agree to confer in good faith and try to reach agreement on other customary protections for the Confidential Information . . . and that [ERC or JTS] . . . provide written notice to each Producing Party [*i.e.*, the BL/FG Defendants] whose Confidential Information is sought to be used in *such proceeding* to allow *the Producing Party* [*i.e.*, the BL/FG Defendants] *to intervene if necessary to seek protection for its Confidential Information*.

*Id.* ¶ 6 (emphases added).  The reference in Paragraph 6 to a Producing Party *intervening* in "such proceeding" demonstrates that Paragraph 6 is *not intended* to encompass subsequent legal proceedings to which the Producing Party is *already* a party.  Likewise, the language establishes

that Paragraph 6 does not contemplate actions against Producing Parties as being "the subject of this Arbitration." Instead, it is clearly meant to apply to future actions *between the Parties* (ERC and Jamex), such as, for instance, the arbitration confirmation proceeding initiated by ERC against Jamex in the Southern District of New York. If that were not the case, the Producing Party (*e.g.*, BL/FG Defendants) would not have to "intervene," and that contractual language would be rendered superfluous.

Even if Paragraph 6 were potentially applicable in an action against a third party, which the BL/FG Defendants do not concede, ERC's action against the BL/FG Defendants does not involve "the subject of this Arbitration." *Id.* The Arbitration concerned a purported breach of the RSA when it was under the control of Jamex—the BL/FG defendants were not Parties to the Arbitration and did not have the opportunity to defend any potential allegations against them.[4] ERC's baseless contention that "Ferrellgas anticipated this lawsuit" demonstrates how frivolous ERC's action against the BL/FG Defendants is. MTS Opp. 6. The BL/FG Defendants had no reason to "anticipate" this lawsuit because it is baseless. During the time that the BL/FG Defendants owned BTS, BTS made every payment due under the RSA and any breach that occurred, occurred under the new ownership of Jamex Transfer Holdings, LLC ("JTH"), which expressly acknowledged liability for all post-closing obligations, and JTH's parent, Jamex, further guaranteed all such obligations.[5] What the BL/FG Defendants anticipated was that the

---

[4] JTS's Statement of Defenses and Counterclaims in the Arbitration, attached to ERC's MTS Opposition, shows the extent to which the subjects of the Arbitration differ from those here and also the number of substantive counterclaims and defenses asserted by JTS prior to its collusive settlement with ERC. *See Declaration of Jeffrey M. Theodore in Support of Plaintiff Eddystone Rail Company's Opposition to Defendants' Motion to Strike Allegations in Plaintiff's Complaint*, Ex. A; *see also* MTS. Opp. 3. Nevertheless, it is apparent that a hearing on those defenses never even took place. *See Declaration of David M. Zensky in Support of Reply in Further Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Dismiss Plaintiff's Complaint* [ECF No. 42-1], Ex. A at 9:3–5.

[5] The BL/FG Defendants have concerns about any alleged consent by Jamex to the purported use of its Confidential Information in this lawsuit (MTS Opp. 5, 6 n.3, 13 n.7) and Jamex's apparent cooperation with ERC's attempt to impose liability for JTS's purported breach of the RSA on the BL/FG Defendants.

arbitration would be an arms' length, adversarial process and adjudication on the merits or an arms' length settlement, not a collusive capitulation with as yet unknown payments, releases, or benefits to Jamex and the other entities that control JTH.

### ii.  *ERC Cannot Use Confidential Information Without a Court Order.*

Paragraph 4 of the Confidentiality Order unambiguously provides that "[a]bsent a separate order by a court of appropriate jurisdiction, Confidential Information and the substance thereof . . . *shall not be . . . used in any other legal*, regulatory and/or other *proceeding (whether or not involving the same Parties) . . .* " Zensky MTS Decl. Ex. B ¶ 4 (emphases added); MTS Brief 7.  Thus, Paragraph 4 explicitly applies to legal proceedings involving third parties, and requires a court order before Confidential Information may be used.  ERC does not contend that it has a court order of appropriate jurisdiction permitting use of Confidential Information. Consequently, ERC cannot use Jamex's Confidential Information in an action against a third party or Producing Party, *i.e.*, the BL/FG Defendants.

### iii.  *ERC's Contradictions Belie Its Disingenuous Arguments.*

ERC's own contradictory statements undermine its present interpretation of the Confidentiality Order.  On the one hand, it argues that it was perfectly entitled to use Confidential Information without a court order.  MTS Opp. 5, 6 n.3, 13 n.7.  On the other hand, ERC demurs that it "refrained from quoting" certain "highly probative language" from the BTS PSA "in order to avoid confidentiality concerns"—*even though* it had a copy of the agreement "and authority to use it in this litigation."  MTS Opp. 13 n.7.  These two positions cannot be squared.

### B.  ERC's Blatant Violation of the Confidentiality Order Justifies Striking the Offending Allegations from Its Complaint under Rule 12(f).

This Court may properly strike allegations in ERC's complaint that rely on, contain or are derived from Confidential Information under Rule 12(f).  MTS Brief 6–9.  ERC fails to address, let alone distinguish, even a single one of the on-point decisions cited by the BL/FG Defendants in the MTS Brief, in which each district court struck, under Rule 12(f), portions of pleadings that violated a confidentiality order.  *See* MTS Brief 6–7.[6]

The Confidentiality Order expressly prohibits not only public disclosure but also *use* of any party's Confidential Information, Zensky MTS Decl. Ex. B ¶ 4, yet ERC admits that it used Confidential Information in its Complaint anyway.  MTS Opp. 1, 4, 5.[7]  In this posture, justice and equity clearly do not favor ERC.  As recognized by a multitude of courts in a variety of contexts, the primary equitable purpose of striking allegations (or excluding evidence) asserted in violation of a Confidentiality Order is to hold plaintiffs to their word and "refuse[] to allow Plaintiffs to use the fruits of [their] violation . . . [of] a protective order that was entered by another court . . . to their benefit in this litigation."  *Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 501 (S.D. Ohio 2002).[8]  Indeed, "where protective orders have been violated, courts have broad discretion to impose whatever remedy they deem appropriate."  *Id.* at 500.

It must be emphasized that *ERC* negotiated the Confidentiality Order (not the third-party BL/FG Defendants) and compelled the BL/FG Defendants (through arbitral subpoena and

---

[6] The decisions cited by ERC are inapposite.  MTS Opp. 11–12.  *Yates v. Commerical Index Bureau*, 861 F. Supp. 2d 546, 552 n.8 (E.D. Pa. 2012) (where allegations confuse the issues or prejudice one of the parties, a motion to strike should be granted); *Weeks v. McLaughlin*, No. CV 09-2498- JWL/GLR, 2010 WL 11485532, at *5 (D. Kan. Mar. 11, 2010) (seeking to strike the entirety of a complaint); *Feed.ing BV v. Principle Sols.*, No. 14-C-1241, 2015 WL 136402, at *3 (E.D. Wis. Jan. 8, 2015) (use of materials in violation of underlying protective order permitted where court "subsequently modified the . . . protective order to allow the use of the materials in this action").

[7] ERC cites its offer to seal the Complaint if the FG Defendants "would identify supporting legal authority."  MTS Opp. 5–6.  That offer, however, does nothing to remedy ERC's use of the Confidential Information in violation of the Confidentiality Order and was thus a wholly inadequate response.

[8] *See also Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1040–41 (9th Cir. 2011) (district court properly excluded evidence proffered in violation of Confidentiality Agreement prohibiting any "aspect of the mediation" from being "relied upon or introduced as evidence in any arbitral, judicial or other proceeding"); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-03844-JST, 2014 WL 6879428, at *1 n.1 (N.D. Cal. Dec. 5, 2014) (declining to consider statements made in mediation due to confidentiality agreement forbidding such use).

judicial action in the Southern District of New York) to produce Confidential Information under the terms thereof.  ERC's contention that the BL/FG Defendants are using the Confidentiality Order as a "shield and a sword" is absurd.  MTS Opp. 13.[9]  In reliance on the protections of the Confidentiality Order, the BL/FG Defendants voluntarily produced more than 28,000 pages of documents in a compressed time frame.  MTS Brief 4.[10]  Had ERC, a sophisticated party, desired an unconditional right to use Confidential Information obtained during the Arbitration, it should have negotiated for such a provision in the Confidentiality Order or moved to amend the Confidentiality Order—its failure to do so does not justify the evisceration of the entire Order and the creation of a precedent preventing future third parties from being willing to produce documents in aid of arbitration.

## CONCLUSION

In the event the Complaint is not dismissed in its entirety pursuant to the BL/FG Defendants' motion to dismiss [ECF No. 35], for the foregoing reasons, and the reasons set forth in the BL/FG Defendants' MTS Brief, the allegations contained in paragraphs 3, 5, 7–9, 19, 25, 28–30, 32, 34–38, 43–49, 53, 56–59, 63, and 66(c) of the Complaint should be stricken. Alternatively, this Court's decision on the BL/FG Defendants' motion to strike [ECF No. 36] should be deferred pending discovery into the drafting of the Complaint.

---

[9] The decisions cited by ERC are inapposite and do not counsel a different result.  MTS Opp. 13.  *Wattie-Bey v. Stephens & Michaels Assocs.*, No. 1:13-CV-396, 2013 WL 2302117, at *1 (M.D. Pa. May 24, 2013) (noting that "rulings on motions to strike rest in the sound discretion of the court" and granting plaintiff's 12(f) motion to strike in part); *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("Because [Rule 12(f)] is stated in the permissive . . . it has always been understood that the district court enjoys 'liberal discretion' thereunder."); *Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (considering a motion to strike an affirmative defense); *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 435 (E.D. Pa. 2007) (preliminarily denying defendants' Rule 12(f) motion to strike but noting that it would re-visit as necessary).

[10] It is clear from the exhibits attached by ERC to its MTS Opposition that it was attempting to build a record of noncompliance on the part of the BL/FG Defendants whereby after the BL/FG Defendants produced everything required to ERC, ERC continued to request even more information that was not covered by the parties' stipulation. However, the BL/FG Defendants produced all categories of documents agreed upon with ERC, which now apparently form the basis of allegations in ERC's Complaint.

Dated: April 23, 2017

Respectfully submitted,

/s/  *Jeffery A. Dailey*

Jeffery A. Dailey (I.D. No. 85993)
Caroline A. Gardner (I.D. No. 318815)
AKIN GUMP STRAUSS HAUER &
FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, PA 19103
T: 215-965-1200
F: 215-965-1210
jdailey@akingump.com
cgardner@akingump.com

David M. Zensky (*pro hac vice*)
Katherine P. Porter (*pro hac vice*)
Kelly A. Eno (*pro hac vice*)
AKIN GUMP STRAUSS HAUER &
FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002
dzensky@akingump.com
kporter@akingump.com
keno@akingump.com
*Attorneys for Bridger Logistics, LLC*
*Ferrellgas Partners, L.P., and Ferrellgas L.P.*

**CERTIFICATE OF SERVICE**

I, Jeffery A. Dailey, hereby certify that I caused the Reply in Further Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Strike Allegations in Plaintiff's Complaint to be filed and served to all counsel of record via the Court's ECF system on April 23, 2017.

Dated: April 23, 2017                                         /s/ *Jeffery A. Dailey*