IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 2:17-CV-00495-RK |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, JEREMY GAMBOA, FERRELLGAS PARTNERS, L.P. AND FERRELLGAS, L.P., | § § § § § | |
| *Defendants.* | § | |

---

**AMENDED REPLY IN FURTHER SUPPORT OF JULIO RIOS' AND JEREMY GAMBOA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

Defendants Julio Rios ("Rios") and Jeremy Gamboa ("Gamboa"), through their undersigned counsel, respectfully submit this amended reply in further support of their motion for an Order dismissing Plaintiff's Complaint.

## INTRODUCTION

Eddystone's Opposition ignores overwhelming facts and law that clash with its flawed argument, while simultaneously (and conveniently) conflating acts taken by Rios and Gamboa years before the relevant time period with acts surrounding the Asset Transfer years later. Worse, Eddystone attempts to remedy the flaws in its arguments by

---

including a host of allegations that were not included in its original Complaint. Eddystone's transparent attempt to amend their Complaint through an opposition brief is not only forbidden under relevant caselaw, but it distracts from the controlling legal issue as to Rios and Gamboa: the fiduciary shield doctrine and its application. Eddystone's Opposition does nothing to establish any basis for this Court's jurisdiction over Rios or Gamboa, or to state a claim against Rios or Gamboa such that relief could be granted.

I. **The Complaint Should Be Dismissed Because This Court Does Not Have Personal Jurisdiction Over Rios or Gamboa.**

a. *The Fiduciary Shield Doctrine Applies in Pennsylvania.*

In its opposition, Eddystone asserts additional facts surrounding the limited contact Rios and Gamboa had in their capacity as officers of Bridger Logistics, LLC with the State of Pennsylvania.[1]  These allegations do nothing to form any basis for personal jurisdiction for two reasons:  **First**, the allegations asserted by Eddystone – while wildly inaccurate in most respects[2] – involve actions taken *years before* the acts which are the

---

[1] *See, e.g.*, Opp. at 40 (citing Rios and Gamboa's "extensive efforts to contract for the use of a facility fewer than 20 miles from the courthouse where this Court presides, their numerous dealings with Pennsylvania-based companies, and their many meetings in Pennsylvania related to this project").

[2] In accordance with this Court's procedures, Rios and Gamboa limit their reply to the issues in the Opposition that are absolutely necessary to correct.  Much more could be said, however, about the numerous ways in which Eddystone's Opposition misconstrues the allegations in the Complaint and the law.

**AMENDED REPLY IN FURTHER SUPPORT OF JULIO RIOS'
AND JEREMY GAMBOA'S MOTION TO DISMISS**                                    **PAGE 2**

subject of Eddystone's Complaint.  **Second**, even taken as true, every fact Eddystone alleges involves an action taken in Rios' and Gamboa's capacity as officers and directors of Bridger Logistics.  Eddystone's argument thus depends entirely on the inapplicability of the fiduciary shield doctrine, which Pennsylvania courts have routinely enforced.

Pennsylvania courts have regularly held that individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts.  *D & S Screen Fund II v. Ferrari*, 174 F. Supp. 2d 343, 346 (E.D. Pa. 2001); *National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc.*, 785 F.Supp. 1186, 1191 (W.D.Pa.1992).  Although there has been some occasional variance in Pennsylvania courts' interpretation of the fiduciary shield doctrine, Pennsylvania caselaw is replete with examples of the doctrine's application in factual scenarios similar to those before this Court.  *See, e.g., National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc.*, 785 F.Supp. 1186, 1191 (W.D.Pa.1992) (applying fiduciary shield doctrine and holding that telephone conversations and facsimile transmissions in the forum state were insufficient contacts to confer personal jurisdiction); *Simkins Corporation v. Gourmet Resources International*, 601 F.Supp. 1336 (E.D.Pa.1985); *Simpson v. Lifespring, Inc.*, 572 F.Supp. 1251 (E.D.Pa.1983), *aff'd without opinion*, 770 F.2d 1075 (3d. Cir.1985); *PSC Professional Services Group, Inc. v. American Digital Systems, Inc.*, 555 F.Supp. 788 (E.D.Pa.1983); *Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 62 (Pa.Commw.Ct.1994) ("[A] line of federal district court decisions have held that a court may not exercise jurisdiction over

individual officers and directors of a corporation based solely upon acts taken in their corporate capacities."); *J.C. Snavely & Sons, Inc. v. Springland Assocs., Inc.*, 411 Pa.Super. 1, 600 A.2d 972, 974 (1991) (holding that a defendant's acts must be undertaken in an individual capacity, rather than a corporate capacity, to warrant the exercise of jurisdiction).

Unhappy with Pennsylvania courts' fidelity to application of the fiduciary shield doctrine, Eddystone creatively – but unpersuasively – cites to precedent from courts around the country, from Delaware to the Fourth Circuit.   Eddystone attempts to draw on Third Circuit precedent in citing *Brocious Trucking v. BFL*, No. CIV.A. 09-741, 2010 WL 569559 (W.D. Pa. Feb. 11, 2010), but *Brocious* only goes so far as to note that "Pennsylvania federal courts have raised questions regarding the applicability and scope of that doctrine." *Id.* at 1.  Indeed, the same could be said of nearly all other legal doctrines rooted in the constitution, including the presumption of innocence, reasonable doubt, and due process.  It would be far more concerning if questions had not been raised as to the applicability and scope of that doctrine, and it is precisely *because* of those questions that Pennsylvania courts are able to apply the doctrine so deftly on a routine basis.

Eddystone also cites to a footnote in *FlagHouse, Inc. v. ProSource Development, Inc.* 528 F. App'x 186, 189 (3d Cir. 2013), to support the proposition that "where state law provides for personal jurisdiction to the fullest extent allowed by the Due Process

Clause . . . there is no basis for the fiduciary shield doctrine to apply." Opp. at 43.  Yet Eddystone fails to mention that the court in *FlagHouse* was not interpreting and applying Pennsylvania law, but New Jersey law.  Furthermore, Pennsylvania courts have made clear that "[t]he reach of the [Pennsylvania] Long–Arm statute is co-extensive with that permitted by the due process clause of the Fourteenth Amendment to the United States Constitution," and in no way undermines the application of the fiduciary shield doctrine.  *See Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 62 (Pa. Commw. Ct. 1994).  Thus, while Pennsylvania's long-arm statute authorizes jurisdiction to the fullest extent allowed under the Constitution of the United States, its reach is co-extensive with – not exclusive of – the due process clause of the Constitution, and in no way precludes application of the fiduciary shield doctrine.

The *only* citation in Eddystone's Opposition to a Pennsylvania case purporting to disclaim the application of the fiduciary shield doctrine is to a single footnote in an unreported Pennsylvania state court case, *Kontonotas v. Hygrosol Pharmaceutical Corp.*, 2009 WL 3245421 (2009).  While the court includes a footnote noting that "the fiduciary shield doctrine has never been used by Pennsylvania state courts," this case does nothing for Eddystone's argument for multiple reasons.  **First**, the court in *Kontonotas* decided jurisdiction on the basis of minimum contacts, and expressly noted that the question of whether the fiduciary shield doctrine applied was not in dispute.  *Id.* at n.1.  **Second**, the present case is in federal court, not state, and a litany of Third Circuit precedent exists to

demonstrate that federal courts in Pennsylvania regularly apply the doctrine.  **Third**, even if this case was in state court, multiple Pennsylvania state courts *have* applied the doctrine.  *See, e.g., Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 62 (Pa. Commw. Ct. 1994); *J.C. Snavely & Sons, Inc. v. Springland Assocs., Inc.*, 411 Pa.Super. 1, 600 A.2d 972, 974 (1991).  Thus, Eddystone's argument – premised on an unpublished case – that the fiduciary "shield doctrine is not applicable in Pennsylvania" is not only untrue – it is unfounded – and Rios and Gamboa are both protected from jurisdiction as a result.

> b.  *The "tort exception" to the fiduciary shield doctrine does not apply to Rios and Gamboa.*

Eddystone's claim that the tort exception to the fiduciary shield doctrine applies is likewise unfounded.  First, as addressed in Rios' and Gamboa's Motion to Dismiss, neither Rios nor Gamboa committed a tort in Pennsylvania.  To incur liability under Pennsylvania's Uniform Fraudulent Transfer Act ("PUFTA") for an action arising from the Asset Transfer, Rios and Gamboa would need to be the transferor or transferee, or would need to have received some benefit from the Transfer.  12 PA. STAT. § 5108(b). Indeed, Eddystone admits this in its Opposition and concedes that, because neither Rios nor Gamboa were the transferor or transferee, liability is contingent on their having received some "benefit from the transfers."  Opp. at 32-33.  In support of this claim, Eddystone claims that "Rios and Gamboa directed the transfers from their executive positions at Ferrellgas, Bridger Logistics, and BTS and benefitted as substantial Ferrellgas

shareholders." Opp. at 34. Eddystone also cites to cases where the court held company shareholders liable for a fraudulent transfer "because [defendants] were the controlling shareholders," and received "more than just . . . incidental or indirect benefit." Opp. at 33 (citing *Esse v. Empire Energy III*, 333 S.W.3d 166 (Tex. App. 2010)).

Unfortunately for Eddystone, neither Rios and Gamboa held any equity in any of the Bridger Parties at the time of the Asset Transfer, and both have submitted declarations attesting to this fact. *See* Rios Decl. ¶ 6; Gamboa Decl. ¶ 6. As such, contrary to Eddystone's wildly inaccurate claim that "Rios and Gamboa were also persons for whose benefit the transfer was made" by virtue of "their substantial ownership stakes," neither Rios nor Gamboa received any financial compensation or other value from the Asset Transfer. *See* Rios Decl. ¶ 7; Gamboa Decl. ¶ 7. Further, far from "direct[ing] the transfers from their executive positions at Ferrellgas, Bridger Logistics, and BTS," neither Rios nor Gamboa even possessed the authority – delegated or otherwise – to transfer assets from BTS to other Bridger party entities. *See* Rios Decl. ¶ 5; Gamboa Decl. ¶ 5. Notably, despite the authority Eddystone cites holding "controlling shareholders" liable for fraudulent transfers, Eddystone has not brought any similar allegations against the majority shareholder of Bridger, LLC (now "Jamex, LLC"), James Ballengee, despite his intimate involvement in the purchase of BTS by JTH.

Additionally, even when examined under the three factor analysis of the tort exception, the exception is inapplicable.  In deciding whether to apply the fiduciary shield doctrine, courts analyze the following factors: (1) the officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) the nature and extent of the officer's participation in the alleged tortious conduct.  *McMullen v. European Adoption Consultants, Inc.*, 129 F.Supp.2d 805, 811 (W.D.Pa.2001); *United Products,* 122 F.Supp.2d at 562; *Elbeco,* 989 F.Supp. at 676.  Here, while Rios and Gamboa both held senior level positions, neither have had contact with the state of Pennsylvania outside of their roles as officers of the Bridger Parties,[3] and the nature and extent of Rios' and Gamboa's participation in the Asset Transfer was minimal to nonexistent.  Neither Rios nor Gamboa held the authority to make a decision to transfer the assets, nor did Rios or Gamboa hold any equity in Bridger Logistics or Ferrellgas such that they would have received any of the "$140 million of value" allegedly generated by the transfer.  Complaint, ¶ 63; *see* Rios Decl., ¶¶ 5-7; Gamboa Decl., ¶¶ 5-7.  Eddystone alleges in its Opposition that Rios and Gamboa somehow "directed" the Asset Transfer, yet both Rios and Gamboa have submitted declarations attesting to exactly the opposite.  Rios Decl., ¶5; Gamboa Decl., ¶ 5.  Eddystone's conclusory allegations contain no evidence or indication as to how Rios

---

[3] Rios and Gamboa are both residents of Texas who have not paid taxes to Pennsylvania, own no real or personal property in Pennsylvania, and maintain no bank accounts or licenses in Pennsylvania. Rios Decl., ¶ 2; Gamboa Decl., ¶ 2.

and Gamboa accomplished this task for the simple reason that no explanation exists to justify this fiction.

      c.   *Rios and Gamboa Do Not Have Minimum Contacts with Pennsylvania.*

      i.  **Pennsylvania's Long Arm Statute Does Not Apply.**

      1.  **Eddystone improperly added factual allegations in an attempt to prove minimum contacts.**

Any attempt made by Eddystone to amend its Complaint through briefing is plainly forbidden. *See Com. of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("the legal theories set forth in [the plaintiff's] brief are helpful only to the extent that they find support in the allegations set forth in the complaint. It is axiomatic that the complaint may not be amended by the briefs in opposition to the motion to dismiss.") (citations omitted); *Coachtrans, Inc. v. Uber Techs., Inc.*,  No. 16-88, 2016 WL 4417261 (E.D. Pa. Aug. 19, 2016) (Kelly, J.) ("Plaintiff may not amend his complaint through statements made in his opposition brief.").

As just one example, Eddystone argues that JTH, the entity that purchased BTS before a breach occurred, was a "newly formed shell company," that JTH was "insolvent," "asset- and revenue-less," and that Defendants "knew[] JTH had no ability to fund the minimum volume payments." Opp. 2; *see also* Opp. 9, 10, 25, 29, 32 (similar). None of these allegations are in the Complaint, which never names JTH, refers to it only as "a newly formed subsidiary of Jamex Marketing," and contains no factual allegations

about its solvency, assets, or revenues, or defendants' supposed knowledge thereof. Compl. ¶¶ 48, 64.[4]   Similarly, Eddystone now states that "Jamex Marketing had no logistics business at all, so it was not capable of making arrangements." Opp. 10.  This has no basis in the Complaint. *Compare* Compl. ¶¶ 48, 49.

Also, Eddystone now states that Logistics and others entered an arrangement to "<u>end</u> crude deliveries on February 1, 2016," Opp. 8, when the Complaint (and the documents) show only that the delivery of crude oil was <u>suspended</u> on February 1, 2016 (and it was clearly contemplated that the flow of crude might resume).  Compl. ¶ 47.

### 2. Eddystone Purposefully Conflates Actions by Rios and Gamboa Years Before the Relevant Time Period with Acts Surrounding the Asset Transfer Years Later.

The proper time to examine a party's contacts with the forum is the time period relevant to the claims asserted.   *Johnson v. Woodcock,* 444 F.3d 953, 955 (8th Cir. 2006) ("Minimum contacts must exist either at  the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.") (citations omitted).  In this case, the Theodore Declaration refers to contacts by Rios and Gamboa years ago, with no relevance to the claims in this case. Plaintiff's claim for fraudulent transfer arose in 2015.  Complaint, ¶ 37.  Eddystone's evidence of minimum contacts via the emails attached to the Theodore Declaration are

---

[4] This also contradicts the BTS PSA and guarantee from the Jamex parent, which ERC admits it had in its possession in crafting the Complaint and Opposition. *See ERC's Opposition to Defendants' Motion to Strike Allegations in Plaintiff's Complaint* [ECF No. 40] at 13 n.7.

dated years prior, in 2012 and 2013.  Thomas Dec., Ex. 1-7.  Eddystone has adduced no

evidence of contacts at the time the claim arose (*i.e.* when the allegedly fraudulent transfer

occurred) or at the time the suit was filed.

> ### 3. Rios and Gamboa entered into a contract in Pennsylvania, but that alone is not enough to confer jurisdiction under Pennsylvania's long-arm statute.

The fact that a non-resident has contracted with a resident of the forum state is not,

by itself, sufficient to justify personal jurisdiction over the nonresident. *Burger King Corp.*

*v. Rudzewicz,* 471 U.S. 462, 479 (1985).   The Thomas Declaration, the only evidence

submitted by Eddystone to support its burden of proof, relies extensively on emails

showing Rios and Gamboa had contacts with Pennsylvania in 2012 and 2013 relating to

negotiation of the contract.  Thomas Decl., Ex. 1 through 6.  Nothing in those emails (or

the contacts with Pennsylvania shown there) that is relevant to Eddystone's cause of

action for fraudulent transfer, after Rios and Gamoba were not involved anymore, in mid-

2016.

> ### 4. The asset transfer took place months after Rios and Gamboa sold Bridger Logistics to Ferrellgas and became Ferrellgas Officers.

Eddystone's claim that Rios and Gamboa should have "'reasonably anticipate[d]

being haled into court" in Pennsylvania is nonsensical, given that the only contact either

had with Pennsylvania took place before Ferrellgas acquired Bridger, and years before

the Asset Transfer.  Indeed, contrary to Eddystone's contention, it is precisely *because* Rios

and Gamboa had various business dealings in the State of Pennsylvania before Bridger Logistics was purchased by Ferrellgas that they would have no reason to anticipate being haled into court for actions taken *after* the Ferrellgas transaction by an entity that neither had any ownership of, or control over.

### 5. Jurisdiction Over Rios and Gamboa Would Not Comport with Fair Play and Substantial Justice.

Eddystone's contention that Rios and Gamboa "do not even dispute that exercising personal jurisdiction would comport with fair play and substantial justice" mischaracterizes Rios and Gamboa's argument and is simply wrong. In their Motion to Dismiss, Rios and Gamboa note plainly that, "[b]ecause Rios and Gamboa do not have sufficient minimum contacts to warrant exercising personal jurisdiction over them in this court under the first two elements of the specific jurisdiction test, no fair-play inquiry is necessary." Rios and Gamboa Mot. to Dismiss at 15. As the Supreme Court has made clear, a "fair-play" inquiry is necessary only if minimum contacts have been established. *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998) ("[A]ssuming minimum contacts have been established, a court may inquire whether 'the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'") (quoting *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). No less than five pages of Rios' and Gamboa's Motion to Dismiss concern their lack of minimum contacts with the State of Pennsylvania. Far from not disputing that the

exercise of jurisdiction would comport with fair play and substantial justice, any exercise of jurisdiction would constitute such a violation of fair play and substantial justice that the Court can resolve the jurisdictional issue before even reaching this second level of inquiry.

    d. *Rios and Gamboa Are Not Subject to Jurisdiction Under an Alter Ego Theory.*

  Eddystone's claim that – because it has asserted an alter ego claim against Rios and Gamboa – the fiduciary shield doctrine does not apply, is both meritless and a gross misrepresentation of applicable law. According to Eddystone's interpretation of the law, all a party must do to confer jurisdiction on an individual defendant in Pennsylvania is allege – on the basis of pleadings only – liability based on a theory of alter ego. Then, as if transformed by legal magic, the "alter ego claim is itself a basis on which to establish jurisdiction over an officer defendant." Opp. at 44. Were this actually the case, any time a plaintiff merely *alleged* alter ego liability, the fiduciary shield doctrine would automatically be inapplicable, and the court would acquire jurisdiction. Thankfully, it is an axiom of Pennsylvania law that alter ego allegations alone are insufficient to render the fiduciary shield doctrine inapplicable and confer jurisdiction over an individual.

  Indeed, courts have held that a motion to dismiss for lack of personal jurisdiction is "inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then ***the plaintiff must sustain its burden of proof in establishing jurisdictional facts through***

*sworn affidavits or other competent evidence*. Contrary to the dissent's suggestion, therefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (1984) (citing *International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700 (3d Cir.1982) (emphasis added)).  Once a motion to dismiss for lack of personal jurisdiction is made, "plaintiff must respond with actual proofs, not mere allegations." *Id.*  Thus, once Rios and Gamboa moved to dismiss Eddystone's Complaint for lack of personal jurisdiction, it became incumbent upon Eddystone to allege facts supportive of an alter ego theory through a declaration, an affidavit, or some other form of proof beyond the pleadings.  Indeed, such proof is *required* if the Court is to find jurisdiction over Rios and Gamboa based on an alter ego theory of liability.

The only attempt Eddystone can be said to have made to offer facts outside of the allegations made in its Complaint is its submission of the declaration of Jeffrey M. Theodore in support of its Opposition ("Theodore Decl.").  The Declaration does nothing to prove any facts related to Eddystone's claim that Rios and Gamboa acted as the alter egos of BTS (which it asserted for the first time in its Opposition, in a transparent attempt to amend its Complaint).  Instead, the Declaration states only that Rios and Gamboa "directed dozens or hundreds of email exchanges as well as telephone calls to Eddystone personnel in Pennsylvania, and made several in-person visits to the state," and attaches

various emails from Rios and Gamboa, none of which have anything to do with an alter ego theory.  Theodore Decl. at ¶ 2.  Thus, Eddystone's alter ego claims against Rios and Gamboa are entirely limited to the baseless accusations in its Complaint and Opposition, and are not in any way supported by facts that would satisfy the legal standard in Pennsylvania.  Indeed, in asserting an alter ego theory while refusing to provide any supporting evidence, Eddystone has violated the established precedent that at "no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61.  Thus, Eddystone's jurisdictional theory based on its alter ego claim fails.

## II.     The Complaint Should Be Dismissed Because Rios And Gamboa Are Not Proper Defendants.

Rios and Gamboa incorporate their argument from **Section I.b,** *supra*, and reiterate that, because neither was involved in the Asset Transfer as either the transferee or the transferor, and because neither received any benefit from the Asset Transfer, no basis for liability exists for either Rios or Gamboa under PUFTA.

DATE:  April 24, 2017                     Respectfully submitted,


                                          /s/ Jeremy A. Fielding
                                          Jeremy A. Fielding
                                          *Admitted pro hac vice*
                                          jfielding@lynnllp.com
                                          Kent D. Krabill
                                          *Admitted pro hac vice*
                                          kkrabill@lynnllp.com
                                          Jonathan D. Kelley
                                          *Admitted pro hac vice*
                                          jkelley@lynnllp.com
                                          LYNN PINKER COX & HURST, LLP
                                          2100 Ross Avenue, Suite 2700
                                          Dallas, Texas 75201
                                          Telephone: (214) 981-3800
                                          Facsimile: (214) 981-3839

                                          Julie Negovan, Esquire (1651)
                                          1622 Spruce Street
                                          Philadelphia, PA  19103
                                          jn@sprucelaw.com
                                          (267) 546-0623

                                          *Attorneys for Defendants*
                                          *Julio Rios and Jeremy Gamboa*

CERTIFICATE OF SERVICE

I, Julie Negovan, hereby certify that I filed and served the foregoing Amended

Reply In Further Support of Motion to Dismiss of Julio Rios and Jeremy Gamboa to all

counsel of record via the Court's ECF system on this date as follows:

Filiberto Agusti
fagusti@steptoe.com
Jeffrey M. Theodore
jtheodore@steptoe.com
Nicholas Petts
npetts@steptoe.com
Timothy Work
twork@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036

Henry Hockeimer, Jr.
hockeimerh@ballardspahr.com
Terence Grugan
grugant@ballardspahr.com
BALLARD SPAHR LLP
1735 Market St. 51st Floor
Philadelphia, PA 19103

*Attorneys for Defendant Eddystone Rail Company, LLC*

Jeffery A. Dailey
Caroline A. Gardner
AKIN GUMP STRAUSS HAUER &
FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, PA 19103
T: 215-965-1200
F: 215-965-1210

jdailey@akingump.com
cgardner@akingump.com

David M. Zensky
Katherine P. Porter
Kelly A. Eno
AKIN GUMP STRAUSS HAUER &
FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002
dzensky@akingump.com
kporter@akingump.com
keno@akingump.com

*Attorneys for Bridger Logistics, LLC*
*Ferrellgas Partners, L.P., and Ferrellgas L.P.*


Dated: April 24, 2017

                              /s/      *Julie Negovan*
                                   Julie Negovan