# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 17–cv–00495 |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, JEREMY GAMBOA, FERRELLGAS PARTNERS, L.P., and FERRELLGAS L.P. | ) |
| Defendants. | ) |

## PLAINTIFF EDDYSTONE RAIL COMPANY, LLC'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................................1

ARGUMENT .....................................................................................................................................2

I.     EDDYSTONE DID NOT USE INFORMATION OBTAINED FROM THE BRIDGER PARTIES UNDER THE CONFIDENTIALITY ORDER ................................2

II.    THE CONFIDENTIALITY ORDER DOES NOT PROHIBIT USE OF THE BRIDGER PARTIES' DOCUMENTS IN THIS LITIGATION .........................................3

III.   THERE IS NO BASIS FOR STRIKING ALLEGATIONS FROM THE COMPLAINT IN THIS CONTEXT ................................................................................6

**INTRODUCTION**

Defendants' puzzling Motion to Strike should be denied. They have not identified any documents that they alone produced on which Defendants have relied in the Complaint. They have not identified a single Complaint allegation that discloses confidential information. And Defendants' shifting arguments regarding the critical paragraph of the Confidentiality Order contradict its plain language.

First, Defendants still have not identified any documents that they produced in the arbitration and that Eddystone supposedly used to draft its Complaint – with the sole exception of the agreements to sell crude oil to Monroe, to which Defendants do not dispute that Eddystone had independent access from multiple other sources. That alone dooms their Motion to Strike.

Second, Defendants still have not identified a single allegation of the Complaint that they believe is genuinely confidential, nor have they acted on their many opportunities to request that Eddystone prepare a redacted version of the Complaint and file the original under seal. Indeed, Defendants have attached unredacted copies of the agreements at issue to their own pleadings and described them in far greater detail than did Eddystone in the Complaint.

Third, Defendants change the arguments by which they attempt to escape the language in the Confidentiality Order expressly allowing for the use of confidential documents in this litigation. Their new claim that this provision applies only to litigation "between the parties" to the arbitration relies on their own language, which appears nowhere in the Order and is inconsistent with the Order's plain text.

Notwithstanding the Bridger Parties' hyperbolic rhetoric and the accusations of dishonesty they direct against counsel for Eddystone, their Motion to Strike is without merit. It should be denied.

## ARGUMENT

### I. EDDYSTONE DID NOT USE INFORMATION OBTAINED FROM THE BRIDGER PARTIES UNDER THE CONFIDENTIALITY ORDER

The Defendants identify only one set of documents that they produced in the arbitration and that contains information supposedly appearing in the Complaint: the agreements between Monroe, Jamex Marketing, and Bridger Logistics regarding the sale and transportation of crude oil to Monroe's Trainer, Pennsylvania refinery. But as Eddystone explained in its Opposition, Jamex Marketing also produced these documents in the arbitration and consented to their use in this proceeding. Opp. at 1, 5. And Defendants' confidentiality concern about these documents is surprising in any event, since the Complaint contains no details from those contracts that do not appear in the redacted versions that are available as public attachments to Ferrellgas's public Securities and Exchange Commission filings. Opp. at 6, 7–8.

The Bridger Parties respond with bare and uncivil assertions that this is "unbelievable" and that the Court cannot "take [Eddystone's] word." Reply at 1. But the Bridger Parties never dispute that the agreements were available from Jamex Marketing (and, in partially redacted form, on the SEC's website). Similarly, while the Reply refers generically to "other documents," Reply at 2, the Defendants never identify a particular document whose contents they believe are reflected in the Complaint. Thus, there is actually no need to take Eddystone's word. The Bridger Parties have not made any concrete allegation that any of their documents was misused.[1]

The Bridger Parties insist that there is some contradiction between the fact that the agreements were available elsewhere and Eddystone's assertions that many relevant documents

---

[1] Ignoring the public versions of the agreements on the SEC website, the Bridger Parties argue that Eddystone cannot use Jamex Marketing's copies of the agreements under the terms of the Confidentiality Order as well. But Jamex Marketing has every right to consent to the use of its copies of documents and has done so here. *See* Dkt. 40-1, Theodore Decl. ¶¶ 12–13.

were under Bridger Logistics's exclusive control.  Reply at 1–2.  On this basis, they accuse counsel for Eddystone of making "misrepresent[ions]" either to this Court or to the Southern District of New York.  Reply at 2.  But there is no contradiction.  The record is quite clear that BTS could not produce its own operational documents because they remained in the exclusive control of Bridger Logistics.  Opp. at 3–4.  By contrast, the agreements between Jamex Marketing, Monroe, and Bridger Logistics were quite plainly in the possession of all three entities.

Nor did Eddystone ever represent to the Southern District of New York that agreements between those three parties were somehow in the sole possession of Bridger Logistics.  The Bridger Parties cite language asserting that "certain financial documents [are] in FGP's exclusive control."  Dkt. 36-3 ¶ 21; *see also id*. ¶ 17 (noting that "certain rail documents [are] in FGP's exclusive control").  But that is quite different.  In the arbitration, the Defendants produced only two financial documents and now make no claim that either is the source of any of the allegations in the Complaint.

The Defendants also have nothing to say about the fact that redacted versions of the agreements were attached to FGP's SEC filings and that these disclose the details incorporated into the Complaint.  It is quite notable on this score that the Defendants never identify any allegation that they claim to be genuinely confidential or that needs to be filed under seal.  Eddystone early on offered to file any allegation under seal, but Defendants did not accept the offer.

## II.     THE CONFIDENTIALITY ORDER DOES NOT PROHIBIT USE OF THE BRIDGER PARTIES' DOCUMENTS IN THIS LITIGATION

In any event, as explained in Eddystone's Opposition, Paragraph 6 of the Confidentiality Order permits the use of material produced in the arbitration for all "subsequent legal

proceedings" involving "any matter" that was the subject of the arbitration. That plainly extends to this litigation. Opp. at 9.

Rather than address the points in Eddystone's Opposition, the Defendants make a new argument that Paragraph 6 is limited to subsequent litigation "between the parties" to the arbitration. Reply at 3–4. Defendants' "between the Parties" language appears nowhere in Paragraph 6. Instead, Paragraph 6 extends to subsequent litigation brought by "either party" and to "any matter" that falls within the subject of the arbitration – whether an appeal of the award or "otherwise." As Eddystone explained in its Opposition, the use of the term "any matter" is "all-encompassing" and reflects an intention to apply broadly to "all claims." Opp. at 10 (citations omitted). The Defendants have nothing to say about this authority, and the plain language of Paragraph 6 contradicts their argument.[2]

Had Paragraph 6 meant to limit "subsequent legal proceedings" to those between ERC and JTS, it would have said so explicitly. Unable to identify any such language, the Defendants propose to infer that Paragraph 6 must refer only to subsequent litigation between ERC and JTS because it refers to the rights of "Producing Parties" to object to the use of their confidential information by intervening in that subsequent litigation. Reply at 3–4. Just the opposite is true. The Confidentiality Order defines "Producing Parties" to include both Parties and third parties that produce documents in the arbitration. Dkt. 36-4 ¶ 1. Thus, Paragraph 6 expressly contemplates that "either" ERC or JTS may seek the involvement of a court and permits any "Producing Party whose Confidential Information is sought to be used" – whether a third-party

---

[2] The Bridger Parties' suggestion that the Confidentiality Order can be divided up so that Paragraph 4 governs actions involving a third party while Paragraph 6 governs actions between Eddystone and JTS is inconsistent with the language of Paragraph 4 as well. The latter applies to other proceedings "whether or not [they] involv[e] the same Parties."

or the other Party to the arbitration – to intervene to protect its confidential information.  Had Paragraph 6 contemplated that subsequent litigation would be limited to disputes between ERC and JTS it not only would have said so explicitly, but it would have limited the right to intervene to third parties, not all Producing Parties.

The Defendants also reprise their argument that this litigation does not involve "any matter that is the subject of th[e] Arbitration."  Reply at 4.  They assert that the arbitration "concerned a purported breach of the RSA when it was under the control of Jamex."  *Id.*  But this litigation claims that the Defendants orchestrated that breach by stripping BTS of its assets and selling it to a shell company in order to deprive Eddystone of payments due under the RSA.  Indeed, the Bridger Parties anticipated that this litigation was coming as soon as they received a subpoena from the arbitral panel.  Opposing Eddystone's petition to enforce the arbitral subpoena, they described it as "plainly an effort by ERC to obtain discovery from non-party FGP to build a separate lawsuit against FGP."  *Eddystone Rail Co. v. Ferrellgas Partners*, No. 1:16-mc-00295-P1 (S.D.N.Y. Aug. 11, 2016), ECF No. 6 at 1.  This clear statement, on the record in the Southern District of New York, belies the Defendants' claim that they had "no reason to 'anticipate' this lawsuit."  Reply at 4.

Finally, the Defendants claim that Eddystone's decision not to quote from the Purchase and Sale Agreement "to avoid confidentiality concerns" demonstrates that their interpretation of Paragraph 6 is correct.  Reply at 5.  That does not follow.  While Paragraph 6 allows Eddystone to use confidential material in this litigation, it requires Eddystone to file such documents under seal.  To avoid the logistical difficulties of sealed documents, Eddystone avoided using the ostensibly confidential language from the Purchase and Sale Agreement in its initial pleading.  Eddystone's Opposition explained that the "confidentiality concerns" related to Eddystone's

desire to "file its Complaint on the public record."  *See* Opp. at 13 n.7.  Despite quoting the adjacent language in their Reply, the Defendants simply ignore this consideration.

## III. THERE IS NO BASIS FOR STRIKING ALLEGATIONS FROM THE COMPLAINT IN THIS CONTEXT

In sum, there is absolutely no basis for striking allegations from Eddystone's Complaint.  The Bridger Parties claim that Eddystone has "admit[ted] that it used Confidential Information in its Complaint."  Reply at 6 (citing Opp. at 1, 4, 5).  But no such admission appears on any of those pages, the last of which states that "in drafting the Complaint, Eddystone did not rely on a single document produced by Ferrellgas in the arbitration."  Opp. at 5.  And the Confidentiality Order expressly permits Eddystone to do so.

Eddystone pointed out in its Opposition that the Bridger Parties have made no claim that any of the allegations are actually confidential and have not attempted to seal the Complaint.  Opp. at 12.  The Bridger Parties do not even attempt to address this point on reply.  The failure to identify even a single confidential allegation in the Complaint shows that there is no good faith basis for their motion.

Indeed, as the Opposition explained, the Defendants make extensive use of the very documents that they accuse Eddystone of misusing in their Complaint.  Opp. at 12–13.  This improper sword/shield behavior has been condemned by courts across the country.  *Id*.  Yet, the Bridger Parties have nothing to say about it other than to assert that Eddystone's point is "absurd."  Reply at 7.[3]  That is far from the case.  The Defendants have shown no genuine concern about confidentiality.  Their Motion to Strike should be denied.

---

[3] The subsequent footnote in the Reply does not address a single one of the cases that Eddystone cited on this point.  *Compare* Opp. at 13 *with* Reply at 7 n.9.

- 6 -

Dated: June 7, 2017

Respectfully submitted,

/s/ Henry E. Hockeimer
Henry E. Hockeimer, Jr. (I.D. No. 86768)
Terence M. Grugan (I.D. No. 307211)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
hockeimerh@ballardspahr.com
grugant@ballardspahr.com

Filiberto Agusti (*pro hac vice*)
Jeffrey M. Theodore (*pro hac vice*)
Timothy Work (*pro hac vice*)
Nicholas Petts (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
fagusti@steptoe.com
jtheodore@steptoe.com
twork@steptoe.com
npetts@steptoe.com

*Counsel for Eddystone Rail Company, LLC*

## CERTIFICATE OF SERVICE

      I certify that I filed the foregoing via the Court's ECF system on June 7, 2017, thereby serving all counsel of record.

                                           /s/ Terence M. Grugan
                                              Terence M. Grugan