**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EDDYSTONE RAIL COMPANY, LLC,

        Plaintiff,

   v.

JULIO RIOS and JEREMY GAMBOA,

        Defendants,

BRIDGER LOGISTICS, LLC, FERRELLGAS
PARTNERS, L.P., and FERRELLGAS L.P.,

        Defendants/Third-Party Plaintiffs,

   v.

JAMEX MARKETING, LLC (f/k/a BRIDGER
MARKETING, LLC), JAMEX TRANSFER
HOLDINGS, LLC, JAMEX, LLC (f/k/a
BRIDGER, LLC), JAMEX TRANSFER
SERVICES, LLC (f/k/a BRIDGER TRANSFER
SERVICES, LLC), JAMES BALLENGEE and
JOHN DOES 1–10,

        Third-Party Defendants.

Civil Action No. 17–cv–00495

**THIRD-PARTY COMPLAINT OF**
**BRIDGER LOGISTICS, LLC,**
**FERRELLGAS PARTNERS, L.P.**
**AND FERRELLGAS, L.P.**

**THIRD-PARTY COMPLAINT OF BRIDGER LOGISTICS, LLC, FERRELLGAS**
**PARTNERS, L.P. AND FERRELLGAS, L.P.**

Defendants/Third-Party Plaintiffs, BRIDGER LOGISTICS, LLC, FERRELLGAS

PARTNERS, L.P. and FERRELLGAS, L.P., by and through their undersigned counsel, for their

Third-Party Complaint against Third-Party Defendants JAMEX MARKETING, LLC (f/k/a

BRIDGER MARKETING, LLC), JAMEX TRANSFER HOLDINGS, LLC, JAMEX, LLC (f/k/a

BRIDGER, LLC), JAMEX TRANSFER SERVICES, LLC (f/k/a BRIDGER TRANSFER

SERVICES, LLC), JAMES BALLENGEE and JOHN DOES 1–10, allege as follows:

## NATURE OF THE ACTION

1.      Counts One and Two are contract-based claims for (i) indemnification, declaratory judgment and/or specific performance pursuant to the terms of a certain purchase and sale agreement and a related guarantee agreement and (ii) monetary damages for the breaches of those agreements already sustained by Third-Party Plaintiffs.  Third-Party Plaintiffs' indemnification and breach of contract claims are strictly based on contractual undertakings by Jamex Marketing, LLC ("JML") and Jamex Transfer Holdings, LLC ("JTH").  The Third-Party Plaintiffs do not allege herein that that any other Jamex corporate entity is responsible for such contractual undertakings in Counts One or Two and are not seeking to hold any other Jamex corporate entity derivatively responsible or to affirmatively pierce the corporate veil of any such Jamex entity.

2.      Count Three is for tortious interference with contract against the individual defendant James Ballengee ("Ballengee").  Ballengee caused the breaches detailed herein with full knowledge of JML and JTH's contractual obligations ████████████████████.

3.      Count Four is a contingent claim for contribution against Jamex, LLC, Jamex Transfer Services, LLC ("JTS'), Ballengee, and John Does 1–10.  The Third-Party Plaintiffs absolutely dispute all claims asserted against them by Eddystone Rail Company, LLC ("ERC" or "Plaintiff") in the above-captioned first party action (the "First-Party Action" or the "EDPA Action").  However, in the event a settlement is ever reached with Plaintiff, or a judgment is awarded against any of the Third-Party Plaintiffs, Third-Party Plaintiffs assert a wholly conditional claim for contribution under Count Four.

## JURISDICTION

4.      To the extent this Court has subject matter jurisdiction over the Complaint of ERC in the First-Party Action [ECF No. 1] (the "ERC Complaint"), which Third-Party Plaintiffs do

not concede, the Court also has subject matter jurisdiction over Third-Party Plaintiffs' claims under 28 U.S.C. § 1367(a) because they are so related to ERC's claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.     Third-Party Defendants Jamex, LLC, JML, and Ballengee were the former direct and indirect owners and/or affiliates of Bridger Transfer Services, LLC ("BTS") and negotiated and caused it to execute the Eddystone Rail Facilities Services Agreement ("RSA") in February 2013, which required performance and payment in Pennsylvania.  Jamex, LLC, JML and Ballengee continued to own and/or be affiliated with BTS, and BTS continued to perform under the RSA in Pennsylvania, until the sale of BTS on June 24, 2015.  Between June 2015 and February 1, 2016, Third-Party Plaintiff Bridger Logistics, LLC ("Bridger Logistics") owned the membership interests in BTS.

6.     Effective February 1, 2016, Bridger Logistics sold BTS to Third-Party Defendant JTH, which is owned and controlled by Third-Party Defendants JML, Jamex, LLC and Ballengee, and JTH contractually indemnified the Third-Party Plaintiffs and assumed all obligations and liabilities under the RSA, including promising to perform and make payments as contractually obligated to ERC in the state of Pennsylvania.  Simultaneously, Third-Party Defendant JML issued an express guarantee to the Third-Party Plaintiffs covering JTH's performance of its obligations under the RSA in Pennsylvania.

7.     Alleged breaches of the RSA, alleged conduct respecting BTS dating back to 2013,  and alleged breaches of (and interference with) the foregoing assumption, indemnification and/or guarantee obligations form the basis for the ERC First-Party Action Complaint and this Third-Party Complaint.

## VENUE

8.      To the extent venue is proper with respect to the ERC Complaint in this action,

venue is also proper in this district under the doctrine of ancillary venue.

## PARTIES

9.      Third-Party Plaintiff Bridger Logistics is a Louisiana limited liability company,

with its corporate headquarters in the state of Texas.  Bridger Logistics has been named a

defendant in the EDPA Action.

10.     Third-Party Plaintiff Ferrellgas Partners, L.P. ("FGP") is a Delaware limited

partnership.  FGP has been named a defendant in the EDPA Action.

11.     Third-Party Plaintiff Ferrellgas, L.P. ("FG", and, together with Bridger Logistics

and FGP, "Third-Party Plaintiffs") is a Delaware limited partnership.  FG has been named a

defendant in the EDPA Action.

12.     Third-Party Defendant JML (f/k/a Bridger Marketing, LLC) is a Louisiana limited

liability company, with its corporate headquarters in Texas.

13.     Third-Party Defendant JTH is a Texas limited liability company, with its

corporate headquarters in Texas.  JML directly or indirectly owns all or substantially all of the

equity ownership interests of JTH.

14.     Third-Party Defendant Jamex, LLC (f/k/a Bridger, LLC) ("Jamex, LLC") is a

Delaware limited liability company, with its corporate headquarters in Texas.  "Jamex, LLC"

includes all entities that have merged with and into it, including but not limited to Bridger Group,

LLC, and any and all such predecessors and subsidiaries.

15.     Third-Party Defendant JTS is a Louisiana limited liability company, with its

corporate headquarters in Texas.

16.     Third-Party Defendant Ballengee is a resident of Texas.  Ballengee owns, directly or indirectly, all or substantially all of the ownership interests of JML, JTH, Jamex, LLC and JTS.

17.     Third-Party Defendants John Does 1–10 are predecessor entities and subsidiaries of Third-Party Defendant Jamex, LLC and/or entities owned and/or controlled by Ballengee.

## FACTS

18.     In or around February 2013, BTS entered the RSA with ERC.  At the time, BTS was owned and controlled by Jamex, LLC (and/or Bridger Group, LLC or another Jamex, LLC predecessor entity).

19.     Pursuant to the RSA, ERC agreed to improve upon and thereafter to operate a transloading facility in Eddystone, Pennsylvania (the "Facility"), that would transload crude oil from incoming rail cars to outgoing barges.  BTS, in turn, and subject to ERC's proper compliance with the RSA, agreed to utilize the Facility for a period of five years and two months by delivering for transloading a minimum volume of crude oil through the Facility every month (for which it would pay $2.25 per barrel), or, if it sent less than the minimum volume, to make certain "deficiency payments" to ERC.

20.     The RSA does not contain a provision preventing the transfer or sale of BTS, or giving ERC any consent rights over such a transfer or sale.

21.     Effective July 1, 2013, Jamex, LLC was named the manager of both Bridger Logistics and BTS.

22.     Effective November 20, 2013, Jamex, LLC owned all of the ownership equity interests in Bridger Logistics.

23.     Although the Facility had an extended "operational date" of April 14, 2014, the Facility did not ultimately commence operations until May 3, 2014, and BTS and its affiliates thereafter began to deliver crude oil for transloading.

24.      Pursuant to a purchase and sale agreement dated May 29, 2015, Jamex, LLC sold Bridger Logistics and certain of its subsidiaries, including BTS, to FGP, effective June 24, 2015. Bridger Logistics (and indirectly, FG and FGP) owned BTS for the next approximately seven (7) months, at which point Bridger Logistics sold BTS to JTH and BTS changed its name JTS.

25.     During the foregoing 7-month period, all of BTS' obligations under the RSA were satisfied, including all applicable deficiency payments.

### (a) JML'S AND JTH'S ASSUMPTION OF LIABILITY, INDEMNIFICATION AND GUARANTEE OBLIGATIONS

26.     Effective February 1, 2016, Bridger Logistics, JTH and JML entered a series of agreements giving rise to this Third-Party Complaint.

27.     First, Bridger Logistics and JTH entered a purchase and sale agreement, the "BTS PSA," pursuant to which, *inter alia*, Bridger Logistics sold all ownership interests in BTS to JTH.  Attached hereto as Exhibit A, and incorporated by reference as if fully set forth herein, is a true and correct copy of an excerpt of the BTS PSA,[1] in conformance with Local Rule 5.1.2(6). At the time of the sale of BTS to JTH, BTS had minimal assets, a fact which was disclosed to JTH and the other Third-Party Defendants.

28.     Upon the sale, Bridger Logistics no longer controlled or owned any equity ownership interest in (and does not currently control or own any equity ownership interest in)

---

[1] The BTS PSA, by its terms, is governed by the laws of the State of Texas, without regard to its rules or principles regarding conflicts of laws.  *See* Ex. A at 10.12.

BTS/JTS.  Further, upon the sale, neither FG nor FGP controlled or owned any indirect equity ownership interests or partner interests in BTS.

29.     Pursuant to the terms of the BTS PSA, JTH expressly assumed all liabilities to ERC under the RSA arising on and after February 1, 2016 for the remainder of the term of the RSA, including all minimum delivery commitments and/or deficiency payments for that period. *See* Ex. A at 2.1(b).  As set forth above, per the original terms of the RSA, that term was set to run through February 1, 2019 (and, after the operational date was delayed, through June 14, 2019).

30.     The BTS PSA further provided that Bridger Logistics would make a $4,447,667.96 payment to JTH in satisfaction of all fees accrued during the ordinary course of business under the RSA during January 2016, which would then come due in February, after the sale.  *See* Ex. A at 2.3(c).

31.     Bridger Logistics made the $4,447,667.96 payment anticipated by the RSA to JTH.

32.     JTH also expressly agreed to indemnify Bridger Logistics and its "Affiliates," *i.e.*, FG and FGP, for the breach of any obligation required to be performed by JTH in the BTS PSA, including its assumption of liabilities under the RSA.  Specifically, pursuant to Section 8.2(b) of the BTS PSA, JTH agreed to indemnify Third-Party Plaintiffs for "any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by [JTH]" subsequent to the acquisition.

33.     Ballengee, who controls and was, upon information and belief, the manager of JTH, signed the BTS PSA on behalf of JTH.  Ballengee himself is not a party to the BTS PSA in his personal capacity.

34.     The sale of BTS to JTH, JTH's assumption of all potential liabilities to ERC, and JTH's indemnification of the Third-Party Plaintiffs were all supported by good and legally sufficient consideration.

35.     In addition, Bridger Logistics and JML entered a Release and Guarantee Agreement (the "Guarantee") pursuant to which, *inter alia*, JML unconditionally guaranteed JTH's performance of all obligations due to Third-Party Plaintiffs under the BTS PSA for good and fair consideration.  Attached hereto as Exhibit B, and incorporated by reference as if fully set forth herein, is a true and correct copy of an excerpt of the Guarantee,[2] in conformance with Local Rule 5.1.2(6).

36.     Specifically, Section 4 of the Guarantee dictates that JML shall "absolutely, unconditionally, and irrevocably guarantee[] each and every representation, warranty, covenant, agreement and other obligation of [JTH], and the full and timely payment and prompt and complete performance of [JTH's] obligations and liabilities under the provisions of" the BTS PSA.

37.     JML's agreement to issue the Guarantee was supported by fair and legally sufficient consideration.

38.     Ballengee, who controls and was, upon information and belief, the manager of JML, signed the Guarantee on behalf of JML.  Ballengee himself is not a party to the Guarantee in his personal capacity.

39.     By assuming the obligations and liabilities of a contract to be performed in Eddystone, Pennsylvania, by explicitly indemnifying the Third-Party Plaintiffs against any

---

[2] The Guarantee, by its terms, is governed by the laws of the State of Texas, regardless of the laws that might otherwise govern under principles of conflicts of laws thereof.  *See* Ex. B at 8(a).

liabilities arising out of JTH's failure to perform that contract, and by guaranteeing JTH's

performance and indemnification, JML and JTH projected themselves into Pennsylvania.

### (b) THE ERC/JTS ARBITRATION

40. In February 2016, after the sale of BTS, JTH renamed BTS as "Jamex Transfer

Services, LLC" (JTS).

41. Upon information and belief, after February 1, 2016 (*i.e.*, the effective date of the

BTS PSA) JTS did not use the Facility for the delivery and transloading of any crude oil and did

not make any deficiency payments allegedly due to ERC for the period beginning on and after

such date.  JTH never performed the alleged obligations it had assumed to ERC under the RSA,

as it had promised Bridger Logistics it would, and never indemnified any of the Third-Party

Plaintiffs as it promised it would.  And JML promptly defaulted on its guarantee.

42. Nor did JTH or any of the other Third-Party Defendants make any such payments

(including the $4,447,667.96 sum from Bridger Logistics expressly earmarked for that purpose

in the BTS PSA), or negotiate and discharge a resolution of ERC's claims to future performance

or payments, despite having assumed the obligation under the BTS PSA and Guarantee to

perform the RSA and any alleged liability arising out of the RSA.

43. On or around April 19, 2016, ERC commenced an arbitration against JTS before

the Society of Maritime Arbitrators (the "Arbitration"), as required by the RSA.  Third-Party

Plaintiffs were not parties to the Arbitration.

44. In the Arbitration, ERC sought payment of alleged deficiency payments accruing

from and after February 1, 2016 plus all future deficiency payments through the remainder of the

term of the RSA, totaling approximately $144 million.

45. Having explicitly assumed all obligations and liabilities under the RSA in the BTS

PSA and Guarantee, JML and JTH should have ensured that JTS either fully and adversely

arbitrated the dispute to resolution and thereafter paid to ERC the full amount, if any, awarded to it, or settled it on an arms-length basis and paid the amount of any agreed-to settlement consideration.  In either case, JML and JTH should have sought to minimize the liability of JTS, and ensured that no claims could be asserted against the Third-Party Plaintiffs for amounts allegedly due to ERC from and after February 1, 2016.

46.     Instead, Third-Party Defendants did the opposite.  On January 5, 2017, ███, JML, Ballengee ████████████ ultimately entered a collusive settlement agreement with ERC (the "Settlement") ████████████████████████████████████████

████████████████████████████████████

████████████ JTS consented to the entry of a final award against it by the arbitration panel in the amount of $139,050,406.77 (the "Final Award"), ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████ That Final Award now forms the basis for the damages asserted in ERC's First-Party Complaint.

47.     ████████████████████████████, and the so-called Settlement was a gross breach of JTH's and JML's contractual obligations to the Third-Party Plaintiffs.

48.     Initially, JTS set out to defend against the Arbitration.  JTS asserted various defenses and counterclaims to the Arbitration.  Those defenses and counterclaims had substantial merit. ████████████████████████████████████

████████████████████████████.

49.     A one-day hearing was held in the Arbitration on June 29, 2016, at which JTS's various defenses and counterclaims were not addressed.  The arbitrators thereafter scheduled a

recess ███████████████████████ to hear testimony and receive evidence respecting such defenses and counterclaims.

50.     However, upon information and belief, prior to the commencement of such hearings, and before the arbitrators addressed any of JTS's defenses or counterclaims or issued any rulings, ████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████.

51.     ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████: $139,050,406.77.

52.     ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

53. 

54.

55.

56.     On January 24, 2017, the arbitration panel issued the award as requested by ERC and JTS.   Although the Arbitration Panel never heard evidence or argument concerning JTS's various counterclaims and defenses, the Final Award as submitted by the parties and signed by the Panel states that JTS "materially breached and anticipatorily repudiated the [RSA]," that JTS "is liable to [ERC] for general damages resulting therefrom," that the "defenses and counterclaims asserted by [JTS] in the arbitration are without merit" and that JTS "owes $139,050,406.77 in damages to [ERC]."

57.     On February 17, 2017, ERC filed a petition to confirm the Final Award, in the amount of $139,050,406.77, against JTS in the United States District Court for the Southern District of New York (case no. 1:17-cv-01266-WHP) (the "SDNY Action").

58.     Third-Party Plaintiffs have been forced to seek to intervene in the SDNY Action in order to protect their legal rights and prevent ERC from obtaining a federal court judgment based on the Final Award that it will seek to enforce against Third-Party Plaintiffs in the First-Party Action (see below).   ERC has opposed intervention, and Third-Party Plaintiffs have already

incurred and will continue to incur substantial attorneys' fees and expenses in seeking

intervention and to prevent ERC from obtaining a judgment confirming the Final Award.

### (c) ERC'S LAWSUIT AND THIRD-PARTY PLAINTIFFS' INDEMNIFICATION DEMANDS

59.     On February 2, 2017, Plaintiff filed the ERC Complaint in the above-captioned

First-Party Action.  [ECF No. 1.]

60.     On a variety of legal theories, the ERC Complaint seeks to recover damages for

JTS's alleged breach of the RSA for the period after February 1, 2016, *i.e.*, after JTH and JML

expressly assumed liability, indemnification and guarantee obligations for such payments under

the BTS PSA and Guarantee.

61.     The ERC Complaint also alleges that Third-Party Plaintiffs are and were the "alter

egos" of BTS and are liable for conduct that happened from and after the entry into the RSA, *i.e.*,

when Third-Party Defendant Jamex, LLC (and/or its predecessor entity Bridger Group, LLC and

later Bridger, LLC) and Ballengee directly or indirectly owned Bridger Logistics and BTS.

62.     The ERC Complaint also alleges that Third-Party Plaintiffs are and were the "alter

egos" of BTS and are liable for conduct that happened after February 1, 2016, *i.e.*, when JTH

purchased BTS and Ballengee became the manager of BTS and re-named it JTS.

63.     The ERC Complaint also specifically cites the $139 million arbitration Final

Award JTS consented to as a basis to recover from the Third-Party Plaintiffs in the EDPA Action.

64.     ERC is seeking to enforce the collusive Final Award, which contains a purported

finding of liability against JTS for breaches of the RSA, against Third-Party Plaintiffs.  In order

to protect its interests in defending against the EDPA Action, Third-Party Plaintiffs have, as

noted above, also sought to intervene in the federal court proceeding by which ERC seeks to

confirm such arbitration Final Award.

65.     Third-Party Plaintiffs vigorously contest any alleged liability to ERC under the RSA.  Third-Party Plaintiffs have been incurring and continue to incur attorneys' fees and other related costs and expenses in connection with defending against the EDPA Action.

66.     By letters dated February 20 and 21, 2017, counsel for Third-Party Plaintiffs issued notices of a third party claim (the "Notices") under the terms of the BTS PSA (*see* Ex. A at 8.3) to JTH and JML.  Attached hereto as Exhibit C, and incorporated by reference as if fully set forth herein, is a true and correct copy of each February 20 Notice.

67.     The Notices provided JTH and JML with notice of the ERC Complaint in the EDPA Action and informed them that they were required to indemnify Third-Party Plaintiffs "for all Losses arising out of, with respect to, or by reason of the [ERC] Complaint" under the express terms of the BTS PSA and the Guarantee.  Ex. C at 4.  The Notices also informed JTH and JML that Third-Party Plaintiffs, at that point, had incurred losses in excess of $100,000.00 in defending against the ERC Complaint, and that "[t]he total amount of Loss that will be incurred in respect of the [ERC] Complaint is unknown and not reasonably estimable."  Ex. C at 5.

68.     By letter dated February 23, 2017, counsel for JTH and JML informed counsel for Third-Party Plaintiffs that JML and JTH "deny and dispute the allegation of default and/or for indemnification arising from the [C]omplaint filed by [ERC]."  No further explanation for their position was provided.  Attached hereto as Exhibit D, and incorporated by reference as if fully set forth herein, is a true and correct copy of the February 23, 2017 letter.

69.     Under the express terms of the BTS PSA and Guarantee, JTH and JML are required to indemnify Third-Party Plaintiffs for any purported breaches of the RSA, including those that were alleged in the arbitration and/or those alleged in the EDPA Action.  If ERC were correct that JTS breached the RSA, which Third-Party Plaintiffs do not concede, then JTH and

14

JML would be required, by the terms of the BTS PSA and the Guarantee, to indemnify Third-Party Plaintiffs for the damages incurred by Third-Party Plaintiffs in litigating, settling or discharging ERC's claims.

70.    JTH and JML have breached their obligations to make any required payments under the RSA and failed and refused to perform their indemnification and guarantee obligations as required by the BTS PSA and the Guarantee in connection with the EDPA Action and the SDNY Action.

71.    As of the date hereof, Third-Party Plaintiffs have incurred no less than $1,000,000.00 in attorneys' fees in connection with the EDPA Action and the SDNY Action, all of which is due to JTH's breach of the BTS PSA and JML's breach of the Guarantee.  All such sums are due and owing to Third-Party Plaintiffs by JML and JTH.

72.    While Third-Party Plaintiffs absolutely dispute all claims asserted by ERC, it is possible that a settlement may be agreed to by Third-Party Plaintiffs or a money judgment entered against Third-Party Plaintiffs in the EDPA Action.  If any of the Third-Party Plaintiffs are found liable to ERC or otherwise settle with ERC in the EDPA Action, JTH and JML would be required, by the terms of the BTS PSA and the Guarantee, to indemnify Third-Party Plaintiffs for any sum awarded.

## COUNT ONE – BREACH OF CONTRACT AND INDEMNIFICATION
### (for Indemnification, Specific Performance and/or Declaratory Judgment and Damages against Third-Party Defendant JTH)

73.    The above paragraphs are incorporated by reference as if fully restated herein.

74.    There is a valid and enforceable contract between Bridger Logistics and JTH, the BTS PSA.

75.    FGP and FG are permitted third-party beneficiaries under the BTS PSA.

76.    Bridger Logistics has performed its material obligations under the BTS PSA.

77.     JTH has a contractual duty under the BTS PSA to perform any obligations arising under the RSA and to discharge liabilities, if any, to ERC, and to indemnify Third-Party Plaintiffs against any claims or losses relating to the RSA for the period after February 1, 2016.

78.     Defendant JTH breached that contract by failing to fulfill any alleged contractual obligations to ERC under the RSA following the sale of BTS to JTH.

79.     JTH further breached the BTS PSA by failing to fulfill its contractual obligation to indemnify Third-Party Plaintiffs in connection with the EDPA Action and SDNY Action as required by the BTS PSA.

80.     Third-Party Plaintiffs are entitled to indemnification from JTH with respect to the ERC Complaint in the EDPA Action and all fees, costs, judgments, award or settlements incurred thereunder.

81.     Third-Party Plaintiffs are further entitled to indemnification from JTH with respect to the SDNY Action and all fees, costs, judgments, award or settlements incurred thereunder.

82.     Third-Party Plaintiffs have been irreparably damaged by JTH's refusal to indemnify expenditures already made, and which continue to be incurred, in defending against the EDPA Action and protecting their legal rights in the related SDNY Action and are entitled to a grant of specific performance and/or a declaratory judgment against JTH with respect to its future indemnification obligations under the BTS PSA, including the payment of ongoing legal fees and expenses, and any monetary judgment or settlement entered against Third-Party Plaintiffs in the EDPA action.

83.     Third-Party Plaintiffs are entitled to indemnification damages flowing from JTH's breach of contract in an amount to be proved at trial, attorneys' fees, costs and other expenses.

Third-Party Plaintiffs' damages will also include the amount of any monetary judgment entered against Third-Party Plaintiffs in the EDPA action, or any amounts paid by Third-Party Plaintiffs in the settlement of the EDPA Action.

### COUNT TWO – BREACH OF CONTRACT AND INDEMNIFICATION
### (for Indemnification, Specific Performance and/or Declaratory Judgment and Damages against Third-Party Defendant JML (f/k/a Bridger Marketing, LLC))

84.     The above paragraphs are incorporated by reference as if fully restated herein.

85.     There is a valid and enforceable contract between Bridger Logistics and JML, the Guarantee.

86.     Bridger Logistics has performed its material obligations under the Guarantee.

87.     FG and FGP are permitted third-party beneficiaries under the BTS PSA, the contract guaranteed by the Guarantee.

88.     JML has a legal duty under the Guarantee, and the BTS PSA, to indemnify Third-Party Plaintiffs against any claims or losses relating to the RSA for the period after February 1, 2016.

89.     JML breached the Guarantee by failing to fulfill, or to cause JTH to fulfill, any alleged contractual obligations to ERC under the RSA following the sale of BTS to JTH.

90.     JML further breached the Guarantee by failing to fulfill, or to cause JTH to fulfill, its contractual obligation to indemnify Third-Party Plaintiffs in connection with the EDPA Action and the SDNY Action as required by the Guarantee and BTS PSA.

91.     Third-Party Plaintiffs are entitled to indemnification from JML with respect to the ERC Complaint in the EDPA Action and all fees, costs, judgments, awards or settlements incurred thereunder.

92.     Third-Party Plaintiffs are further entitled to indemnification from JML with respect to the SDNY Action and all fees, costs, judgments, awards or settlements incurred thereunder.

93.     Third-Party Plaintiffs have been irreparably damaged by JML's refusal to indemnify expenditures already made, and which continue to be incurred, in defending against the EDPA Action and protecting their legal rights in the related SDNY Action and are entitled to a grant of specific performance and/or a declaratory judgment against JML with respect to its future indemnification obligations under the BTS PSA, including the payment of ongoing legal fees and expenses, and any monetary judgment or settlement entered against Third-Party Plaintiffs in the EDPA action.

94.     Third-Party Plaintiffs are entitled to indemnification damages flowing from JML's breach of contract in an amount to be proved at trial, attorneys' fees, costs and other expenses. Third-Party Plaintiffs' damages will also include the amount of any monetary judgment entered against Third-Party Plaintiffs in the EDPA action, or any amounts paid by Third-Party Plaintiffs in the settlement of the EDPA Action.

### COUNT THREE – TORTIOUS INTERFERENCE WITH CONTRACT
### (for Damages against Third-Party Defendant Ballengee)

95.     The above paragraphs are incorporated by reference as if fully restated herein.

96.     There is a valid and enforceable contract between Bridger Logistics and JTH, the BTS PSA.

97.     There is a valid and enforceable contract between Bridger Logistics and JML, the Guarantee.

98.     Bridger Logistics has performed its material obligations under the BTS PSA and the Guarantee.

99.     FGP and FG are permitted third-party beneficiaries under the BTS PSA and the Guarantee.

100.     Ballengee was aware of JTH's and JML's indemnification obligations to Third-Party Plaintiffs under the terms of the BTS PSA and Guarantee. ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ .

101.     Upon information and belief, ████████████████████████████████████ ████████████████████████ would result in harm to the Third-Party Plaintiffs, including the breach of the BTS PSA and Guarantee and ERC's pursuit of the Third-Party Plaintiffs for the full amount of the Final Award entered against JTS.  Upon information and belief, ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ .

102.     ████████████████████████████████████████████████ ████████████████████████████████████ intentionally, willfully and purposefully interfered with the specific known obligations of JML and JTH under the BTS PSA and Guarantee to assume the responsibilities for payments under the RSA in the first place.

103. ████████████████████████████████████████████

████████████████████████████████, and all actions flowing from that

purpose, were not privileged and had no justification.

104. Third-Party Plaintiffs have been damaged by Ballengee's tortious interference

with the BTS PSA and the Guarantee through expenditures they have already made, and which

continue to be incurred, in defending against the EDPA Action and protecting their legal rights in

the related SDNY Action, and are entitled to these and other damages flowing from Ballengee's

tortious interference in an amount to be proved at trial, including all fees, costs, judgments,

awards or settlements incurred in the EDPA or SDNY Actions, and all applicable punitive

damages.

## COUNT FOUR – CONTRIBUTION
### (for Contribution against Third-Party Defendants Jamex, LLC (f/k/a Bridger, LLC), JTS (f/k/a Bridger Transfer Services, LLC), Ballengee and John Does 1–10)

105. The above paragraphs are incorporated by reference as if fully restated herein.

106. The Third-Party Plaintiffs absolutely dispute all claims asserted by ERC. In the

event a settlement is reached in the above-captioned First-Party action or a judgment is awarded

against Third-Party Plaintiffs, Third-Party Plaintiffs assert the following wholly conditional

claim for contribution.

107. If a judgment is issued against any or all of Third-Party Plaintiffs on the grounds

that they are the alter ego of BTS and/or JTS or a settlement of such claim is reached, Jamex,

LLC, JTS, Ballengee and John Does 1–10 should also be adjudged to be the alter egos of BTS

and/or JTS for the period prior to June 24, 2015 and following February 1, 2016.

108. If a judgment is issued against any or all of Third-Party Plaintiffs on the grounds

that they are the alter ego of BTS and/or JTS, or a settlement of such claim is reached, Jamex,

LLC, Ballengee and John Does 1–10 should be ordered to contribute to any such judgment in the

amount of their fault, *i.e.*, for all actions and conduct of BTS determined to have harmed ERC for the period prior to June 24, 2015 and following February 1, 2016.

109.    If a judgment is issued against any or all of Third-Party Plaintiffs for amounts allegedly owed to ERC by JTS or a settlement of such claim is reached, JTS should be ordered to indemnify the Third-Party Plaintiffs for the full amount of such judgment, or to contribute to any such judgment in the amount of its alleged fault.

## **PRAYER FOR RELIEF**

110.    For these reasons, Third-Party Plaintiffs ask that the Court grant them judgment against Third-Party Defendants for:

a.    Damages against JTH and JML, including but not limited to actual damages sustained by Third-Party Plaintiffs as a direct and proximate result of the occurrences made the basis of this lawsuit in an amount to be proved at trial, including but not limited to attorneys' fees, court costs and related expenditures incurred by Third-Party Plaintiffs in litigating the EDPA Action and the SDNY action;

b.    In the event that a judgment, award or settlement is entered against any or all of Third-Party Plaintiffs in the EDPA Action or the SDNY Action, this Court should enter a judgment of equivalent amount, based on indemnification and breach of contract as pleaded herein, against JTH and JML;

c.    Damages against JTH and JML, including but not limited to, expectancy damages, lost profits, reliance damages, out-of-pocket damages, punitive damages, exemplary damages, court costs, and pre- and post-judgment interest at the maximum rates allowed by law;

     d.     The issuance of a decree of specific performance requiring JML and JTH, jointly, to indemnify and reimburse Third-Party Plaintiffs for all fees, costs and expenses incurred in litigating the EDPA Action and the related SDNY Action, as well as full indemnification of any monetary judgment or settlement entered against any or all of Third-Party Plaintiffs in the EDPA Action;

     e.     In the alternative to a decree of specific performance, the issuance of a declaratory judgment stating that JML and JTH are jointly required to and responsible for indemnifying and reimbursing Third-Party Plaintiffs for all fees, costs and expenses, including attorneys' fees, incurred in litigating the EDPA Action and the related SDNY Action, as well as full indemnification of any monetary judgment or settlement entered against Third-Party Plaintiffs;

     f.     Damages against Ballengee, including but not limited to, actual damages sustained by Third-Party Plaintiffs as a direct and proximate result of the occurrences made the basis of this lawsuit in an amount to be proved at trial, including but not limited to attorneys' fees, court costs and related expenditures incurred by Third-Party Plaintiffs in litigating the EDPA Action and the SDNY action, including the amount of any judgment, award or settlement entered against any or all of Third-Party Plaintiffs, and expectancy damages, lost profits, reliance damages, out-of-pocket damages, punitive damages, exemplary damages, court costs, and pre- and post-judgment interest at the maximum rates allowed by law;

g.      In the event that any or all of Third-Party Plaintiffs are found to be the "alter ego" of BTS, contribution from Jamex, LLC, JTS, Ballengee and John Does 1–10; and

h.      Such other and further relief to which Third-Party Plaintiffs may be entitled at law or in equity.

Dated:  August 23, 2017
        Philadelphia, Pennsylvania

Respectfully submitted,


AKIN GUMP STRAUSS HAUER &
FELD LLP

_____
Jeffery A. Dailey (I.D. No. 85993)
Signature Code:  JD1044

Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, PA 19103
T: 215-965-1200
F: 215-965-1210
jdailey@akingump.com

David M. Zensky (*pro hac vice*)
Katherine P. Porter (*pro hac vice*)
Kelly A. Eno (*pro hac vice*)
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002
dzensky@akingump.com
kporter@akingump.com
keno@akingump.com

*Counsel for Defendants/Third-Party Plaintiffs
Bridger Logistics, LLC, Ferrellgas Partners, L.P. and
Ferrellgas, L.P.*