**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:17-cv-00495-RK |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, | ) | |
| JEREMY GAMBOA, FERRELLGAS | ) | |
| PARTNERS, L.P., and FERRELLGAS, L.P., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF JEFFREY M. THEODORE IN SUPPORT OF PLAINTIFF'S
EDDYSTONE RAIL COMPANY'S MOTION TO COMPEL**

I, Jeffrey M. Theodore, hereby declare as follows:

1.      I am an attorney at the law firm of Steptoe & Johnson LLP, counsel for Plaintiff

Eddystone Rail Company, LLC ("Eddystone") in the above-captioned matter.

2.      On May 18, 2017, Eddystone and Defendants Bridger Logistics, LLC, Ferrellgas

Partners, L.P., and Ferrellgas, L.P. (together, "Ferrellgas") entered into a mutual early discovery

agreement whereby each side would produce seven selected categories of documents that the other

deemed most important to developing its case.   Attached to this Declaration as **Exhibit 1** is a true

and correct copy of Eddystone's and Ferrellgas' Preliminary Document Requests.   Ferrellgas

agreed to produce the accounting records of Bridger Logistics and BTS, including the general

ledgers (including subsidiary ledgers, journals, and full transaction details).

3.      On August 11, 2017, the Parties exchanged initial productions.   Ferrellgas

produced approximately 12,000 documents.   However, it did not produce the set of accounting

1

records to which the Parties had agreed.   Ferrellgas' production included many stray financial and accounting-related documents but not the general ledger or any complete or coherent set of accounting records describing the transactions of BTS or Bridger Logistics.

    4.     On August 30, 2017, I emailed counsel for Ferrellgas to alert them to the absence of a general ledger and to request that Ferrellgas produce it as promised.   A true and correct copy of my email is attached to this Declaration as **Exhibit 2**.   I sent follow-up emails on September 1 and September 5, true and correct copies of which are attached to this Declaration as **Exhibits 3 and 4**.

    5.     On September 6, I participated in a meet and confer teleconference with counsel for Ferrellgas.   When asked about the absence of the general ledger and other accounting records, Counsel for Ferrellgas stated that their client did not supply them with general ledgers as part of the materials Ferrellgas delivered to counsel for the initial production.   Counsel for Ferrellgas indicated that Bridger Logistics and BTS simply may not have kept general ledgers in the normal course of business.

    6.     On September 7, I sent counsel for Ferrellgas a follow-up letter explaining that documents obtained via subpoena from Bridger's auditor, KPMG, prove that the general ledgers Eddystone requested do exist.   Attached to this Declaration as **Exhibits 5-9** are selected documents produced by KPMG referring to the general ledgers.   Attached to this Declaration as **Exhibit 10** is a true and correct copy of my September 7, 2017 letter to counsel for Ferrellgas.

    7.     On September 13, I received a letter from counsel for Ferrellgas acknowledging the existence of BTS and Bridger Logistics general ledgers but refusing to produce them as part of early discovery on the grounds that they are not maintained on a "standalone" basis.   Attached to this Declaration as **Exhibit 11** is a true and correct copy of the September 13, 2017 letter from counsel for Ferrellgas.

8.      Attached to this Declaration as **Exhibit 12** is a true and correct copy of a January 7, 2016 email from counsel for Ferrellgas to counsel for Jamex Marketing.

9.      Attached to this Declaration as **Exhibit 13** is a true and correct copy of a General Warranty Deed from Bridger Transfer Services to Bridger Real Property effective January 31, 2016.

10.      Attached to this Declaration as **Exhibit 14** is a true and correct copy of an Assignment and Assumption Agreement between Bridger Transfer Services and Bridger Swan Ranch effective January 31, 2016.

11.      Attached to this Declaration as **Exhibit 15** is a true and correct copy of a May 16, 2015 Throughput Agreement between Bridger Transfer Services and Shell Trading (US) Company.

12.      Attached to this Declaration as **Exhibit 16** is a true and correct copy of an Assignment and Assumption Agreement between Bridger Transfer Services and Bridger Terminals effective January 31, 2016.

13.      Defendants Julio Rios and Jeremy Gamboa have refused to produce documents relevant to this case that are not dated between December 31, 2014 and March 1, 2016.   On September 6, 2017, I participated in a telephonic meet and confer with counsel for Rios and Gamboa regarding this issue.   Attached to this Declaration as **Exhibit 17** is a true and correct copy of my follow-up September 6-8, 2017 email exchange with counsel for Defendants Rios and Gamboa in which they confirm their refusal to produce documents outside the period December 31, 2014 to March 1, 2016.

14.      Attached to this Declaration as **Exhibit 18** is a true and correct copy of Ferrellgas's First Set of Requests for Production in this matter, which identify January 1, 2012 to present as the relevant time frame for discovery.

3

15.     Attached to this Declaration as **Exhibit 19** is a true and correct copy of an email I sent to opposing counsel on September 12, 2017.

16.     Attached to this Declaration as **Exhibit 20** is a true and correct copy of an email my colleague Andrew Sloniewsky sent to opposing counsel on September 15, 2017.

17.     Eddystone has served third-party subpoenas on Business First Bank and The Independent Bankers' Bank, which were the banks at which Bridger entities, Rios, and Gamboa have maintained their accounts, for account records of Defendants and their affiliates.   True and correct copies of these subpoenas are attached as **Exhibits 21 and 22**.   The banks have requested that Eddystone obtain consent from Defendants before they produce account records.

18.     On September 6 and 15, 2017, I participated in telephonic meet and confers with counsel for Defendants regarding these subpoenas.   Counsel for Rios and Gamboa stated that their clients would not move to quash and would be willing to consent to production bank records if limited to the period November 1, 2015 to March 1, 2016 and if the bank records were heavily redacted to remove all entries other than transfers to or from BTS or Bridger Logistics.   I responded that Eddystone could not agree to such a restricted date range or such a broad swathe of redactions, which would have included transfers involving Defendants Ferrellgas Partners, L.P, Ferrellgas, L.P., and many Bridger entities, but that Eddystone could agree to the redaction of clearly personal expenditures.   Counsel for Rios and Gamboa were unwilling to agree to such a compromise.

19.     Counsel for Ferrellgas stated that it would consent to production of bank records of Bridger Logistics and that it would confirm that in writing (though no such written confirmation has been forthcoming).   Counsel for Ferrellgas also stated that that it would consider agreeing to the production of bank records of a small subset (but not all) of other Bridger entities at this time and perhaps would consent to the production of records of additional entities later.

4

20.     I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated September 19, 2017

/s/ Jeffrey M. Theodore
Jeffrey M. Theodore

EXHIBIT 1

| From: | Sloniewsky, Andrew |
|---|---|
| Sent: | Thursday, May 18, 2017 3:24 PM |
| To: | Porter, Katherine; Zensky, David; Eno, Kelly; jfielding@lynnllp.com; kkrabill@lynnllp.com; jkelley@lynnllp.com; jn@sprucelaw.com; Dailey, Jeffery; Gardner, Carly |
| Cc: | hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Work, Tim; Petts, Nick |
| Subject: | Eddystone - Preliminary Document Requests |
| Attachments: | 10113670_1.docx; 10113678_1.docx |

Kelly and Julie:

Attached are the final versions of the preliminary document requests with the changes we discussed today. I also made one addition to Eddystone document request no. 4, namely, I made clear that Eddystone seeks accounting records for the period January 1, 2012-March 1, 2016. I think this was understood in the earlier draft, but I wanted to make it explicit.

As we also discussed today, Eddystone agrees with Defendants' proposal (per Katherine's May 17 email) that "all limitations for the preliminary requests are subject to the understanding that a full privilege review will take place at a later date, even for documents covered by these preliminary requests, and that all responsive, non-privileged documents that were not previously produced in this initial exchange will be produced at that time." The parties also agreed on today's call that, as with ordinary discovery under the Federal Rules, parties responding to these preliminary requests need only make a reasonable effort to produce responsive documents.

I am also working to find out whether Steptoe is authorized to accept service of Defendants' subpoenas directed to Enbridge and Canopy. I hope to get back to you on this soon.

Let us know when we can file the Rule 26(f) report and who Defendants would like to have as signatories.

Regards,

Andrew

**Andrew J. Sloniewsky**
Of Counsel
ASloniewsky@steptoe.com

## Steptoe

+1 202 429 6759 direct      Steptoe & Johnson LLP
+1 202 261 0621 fax         1330 Connecticut Avenue, NW
                            Washington, DC 20036
                            www.steptoe.com

This message and any attached documents contain information from the law firm Steptoe & Johnson LLP that may be confidential and/or privileged. If you are not the intended recipient, please do not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

Eddystone – Final Preliminary Discovery Requests

| 1. | <u>Request:</u>  The K-1 and/or W-2 and 1099 forms issued by Bridger Logistics and Bridger Transfer Services between January 1, 2012 and March 1, 2016. |
|----|----|
| 2. | <u>Request:</u>  The limited liability company operating agreements or limited liability company agreements of Bridger Logistics and Bridger Transfer Services, their resolutions or other documents of Bridger Logistics and Bridger Transfer Services naming their equity owners, managers and officers, their management agreements, and minutes of manager meetings between January 1, 2012 and March 1, 2016. |
| 3. | <u>Request:</u>  The account records for the bank accounts and other asset accounts maintained for Bridger Logistics, Bridger Rail Shipping, and Bridger Transfer Services between January 1, 2012 and March 1, 2016. |
| 4. | <u>Request:</u>  The accounting records of Bridger Logistics and Bridger Transfer Services for the period January 1, 2012 to March 1, 2016, including balance sheets, general ledgers and adjusting journals, cash flow statements, statements of changes in equity, statements of income and retained earnings, and fixed asset schedules. |
| 5. | <u>Request:</u>  Any agreements evidencing loans made by third parties or other members of the Bridger Group to BTS between January 1, 2012 and March 1, 2016, including documents discharging the loans. |
| 6. | <u>Request:</u>  The documents that reflect the transfer of assets from BTS to other entities from November 1, 2015 to March 1, 2016. |
| 7. | <u>Request:</u>  Any communication between a Bridger representative and a Jamex representative from November 1, 2015 to March 1, 2016. |

BL/FGP – Final Preliminary Discovery Requests

| 1. | **Request:** All drafts of the RSA from the time period up to and including March 8, 2013. |
|---|---|
| 2. | **Request:** All documents provided to ERC in connection with (or in any way related to) the RSA from the time period up to and including March 8, 2013. |
| 3. | **Request:** Documents and communications concerning any diligence and/or analysis concerning what became section 11 of the RSA, and payment risk and credit risk related to the RSA from the time period up to and including March 8, 2013.  For the purposes of these preliminary requests, all responsive external communications and documents sent externally should be produced without condition, and all responsive internal communications and documents on which a lawyer is not copied (or the sender/author) should be produced. |
| 4. | **Request:** Documents concerning BTS's assets and/or liabilities available to ERC from the time period up to and including March 1, 2016.  For the purposes of these preliminary requests, all responsive external communications and documents sent externally should be produced without condition, and all responsive internal communications on which a lawyer is not copied (or the sender) should be produced.  With respect to internal documents, we propose performing a targeted review of the files of the key individuals (non-lawyers) involved in the negotiation of the RSA and producing all responsive, non-privileged documents. |
| 5. | **Request:** An organization chart for ERC (or, in the alternative, documents sufficient to identify the corporate structure), and organization chart (or, in the alternative, documents sufficient to identify the corporate structure) for Enbridge as of (i) fiscal year 2013 and (ii) present; and all limited liability company agreements, operating agreements, articles of incorporation, bylaws, charters or other such governing documents for ERC from January 1, 2012 up to and including March 1, 2016. |
| 6. | **Request:** All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings, and other financial statements or accounting reports, along with drafts, trial balances, and internal accounting work papers for ERC for 2013, 2014, 2015 and 2016. |
| 7. | **Request:** The settlement agreement, and any other agreement negotiated or entered into in connection with the arbitration and/or with the settlement agreement, including but not limited to final versions and drafts, and all documents concerning the calculation of the settlement amount in the settlement agreement and any releases, payments, promises or consideration exchanged in connection with or arising out of the arbitration, the settlement agreement or other related agreements from the time period of April 1, 2016 through the present.  For the avoidance of doubt, "related agreements" includes any and all agreements entered into between any Jamex person or entity and any Enbridge, ERC or Canopy person or entity from the time period of April 1, 2016 through the present.  For the purposes of these preliminary requests, all responsive external communications and documents sent externally should be produced without condition, and all responsive internal communications and documents on which a lawyer is not copied (or the sender/author) should be produced. |

EXHIBIT 2

| | |
|---|---|
| **From:** | Theodore, Jeffrey |
| **Sent:** | Wednesday, August 30, 2017 5:08 PM |
| **To:** | Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com |
| **Cc:** | Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com |
| **Subject:** | initial discovery |

David and Katherine,

As you know, Defendants agreed to produce the following documents as part of initial discovery in this case:

- The accounting records of Bridger Logistics and Bridger Transfer Services for the period January 1, 2012 to March 1, 2016, including balance sheets, general ledgers and adjusting journals, cash flow statements, statements of changes in equity, statements of income and retained earnings, and fixed asset schedules.

- The account records for the bank accounts and other asset accounts maintained for Bridger Logistics, Bridger Rail Shipping, and Bridger Transfer Services between January 1, 2012 and March 1, 2016.

We are in the process of reviewing your initial production, and it appears that many of these key financial records – most importantly, the general ledgers of Bridger Logistics and Bridger Transfer Services – were not included. As you know, these documents are critical to evaluating and understanding the financial transactions and relationships within the Bridger Group that are at the heart of Eddystone's fraudulent transfer, alter ego, and breach of fiduciary duty claims.

Please produce all of the material in these agreed initial production categories – including the general ledgers and associated accounting records – immediately or let us know where in the initial production the material may be found. We continue to review Defendants' initial production and reserve the right to follow up on any other issues with Defendants' compliance with the Parties' initial discovery agreement.

Thanks,

Jeff


Jeffrey M. Theodore
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Tel. 202 429 8139
Fax. 202 429 3902


The information contained in this message may be privileged, confidential, or otherwise protected from disclosure.  If you are not an intended recipient to whom this message is addressed, please be aware that any dissemination, distribution, copying or other use of its contents is not permitted.  If you think that you have received this message in error, please contact the sender at jtheodore@steptoe.com.

EXHIBIT 3

| | |
|---|---|
| **From:** | Theodore, Jeffrey |
| **Sent:** | Friday, September 01, 2017 5:25 PM |
| **To:** | Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com |
| **Cc:** | Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com |
| **Subject:** | RE: initial discovery |

Katherine,

We have not received a response to this email. Please let us know whether Defendants will produce the accounting and financial documents described below.

Thanks,

Jeff

**From:** Theodore, Jeffrey
**Sent:** Wednesday, August 30, 2017 5:08 PM
**To:** Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** initial discovery

David and Katherine,

As you know, Defendants agreed to produce the following documents as part of initial discovery in this case:

- The accounting records of Bridger Logistics and Bridger Transfer Services for the period January 1, 2012 to March 1, 2016, including balance sheets, general ledgers and adjusting journals, cash flow statements, statements of changes in equity, statements of income and retained earnings, and fixed asset schedules.

- The account records for the bank accounts and other asset accounts maintained for Bridger Logistics, Bridger Rail Shipping, and Bridger Transfer Services between January 1, 2012 and March 1, 2016.

We are in the process of reviewing your initial production, and it appears that many of these key financial records – most importantly, the general ledgers of Bridger Logistics and Bridger Transfer Services – were not included. As you know, these documents are critical to evaluating and understanding the financial transactions and relationships within the Bridger Group that are at the heart of Eddystone's fraudulent transfer, alter ego, and breach of fiduciary duty claims.

Please produce all of the material in these agreed initial production categories – including the general ledgers and associated accounting records – immediately or let us know where in the initial production the material may be found. We continue to review Defendants' initial production and reserve the right to follow up on any other issues with Defendants' compliance with the Parties' initial discovery agreement.

1

Thanks,

Jeff


Jeffrey M. Theodore
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Tel. 202 429 8139
Fax. 202 429 3902

The information contained in this message may be privileged, confidential, or otherwise protected from disclosure.  If you are not an intended recipient to whom this message is addressed, please be aware that any dissemination, distribution, copying or other use of its contents is not permitted.  If you think that you have received this message in error, please contact the sender at jtheodore@steptoe.com.

EXHIBIT 4

| | |
|---|---|
| **From:** | Theodore, Jeffrey |
| **Sent:** | Tuesday, September 05, 2017 12:31 PM |
| **To:** | Porter, Katherine; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinlaw.com; Zensky, David |
| **Cc:** | Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com |
| **Subject:** | RE: initial discovery |

Katherine,

We are available to speak at 3 PM tomorrow. Please let us know in advance of the call your position on whether Defendants will produce the general ledgers, account records, and other missing financial and accounting documents so that we can have an informed discussion.

In addition, your initial production did not contain the W-2, 1099, and other tax documents covered by category 1 of the initial discovery agreement as well as the material covered by category 2. Please confirm that you will promptly produce those documents as well. In addition, please let us know whether Bridger Logistics and Ferrellgas object to the disclosure of their records and those of Bridger Logistics's subsidiaries (including but not limited to Bridger Rail Shipping) by IBB and Business First Bank as requested in our subpoenas.

In terms of David's email, as Fil indicated, prior to that email we had provided an updated production that should have resolved the issues raised. Please let us know if there are any problems with the updated production. We are of course happy to respond to any concrete objections that you may have to our initial production as soon as you specify what they are.

Jeff

**From:** Porter, Katherine [mailto:kporter@akingump.com]
**Sent:** Sunday, September 03, 2017 6:15 PM
**To:** Theodore, Jeffrey; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinlaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Jeff,

We are in receipt of your email and will respond next week. Preliminarily, I will note that the BL/FG Defendants did produce a significant number of documents responsive to the requests you identified (and more than 45,000 pages total). We are investigating the questions you raised and will respond more fully once we have done so. I will note that we have identified several apparent gaps in your production, which I hope you will be willing to address in turn. In addition, we are still waiting for a response to the remaining issues raised in David's email of August 30. Are you available for a call on Wednesday at 3:00 ET?

This email does not address all the open issues or disputes between the parties relating to discovery, or otherwise, or raise all relevant facts or contentions and the BL/FG Defendants reserve all rights.

I hope you are having a pleasant holiday weekend.

Best,
Katherine


**Katherine Porter**
Direct: +1 212.872.7467 | Internal: 37467

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Friday, September 01, 2017 5:25 PM
**To:** Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Katherine,

We have not received a response to this email. Please let us know whether Defendants will produce the accounting and financial documents described below.

Thanks,

Jeff



**From:** Theodore, Jeffrey
**Sent:** Wednesday, August 30, 2017 5:08 PM
**To:** Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** initial discovery

David and Katherine,

As you know, Defendants agreed to produce the following documents as part of initial discovery in this case:

- The accounting records of Bridger Logistics and Bridger Transfer Services for the period January 1, 2012 to March 1, 2016, including balance sheets, general ledgers and adjusting journals, cash flow statements, statements of changes in equity, statements of income and retained earnings, and fixed asset schedules.

- The account records for the bank accounts and other asset accounts maintained for Bridger Logistics, Bridger Rail Shipping, and Bridger Transfer Services between January 1, 2012 and March 1, 2016.

We are in the process of reviewing your initial production, and it appears that many of these key financial records – most importantly, the general ledgers of Bridger Logistics and Bridger Transfer Services – were not included. As you know, these documents are critical to evaluating and understanding the financial transactions

and relationships within the Bridger Group that are at the heart of Eddystone's fraudulent transfer, alter ego, and breach of fiduciary duty claims.

Please produce all of the material in these agreed initial production categories – including the general ledgers and associated accounting records – immediately or let us know where in the initial production the material may be found. We continue to review Defendants' initial production and reserve the right to follow up on any other issues with Defendants' compliance with the Parties' initial discovery agreement.

Thanks,

Jeff

Jeffrey M. Theodore
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Tel. 202 429 8139
Fax. 202 429 3902

The information contained in this message may be privileged, confidential, or otherwise protected from disclosure. If you are not an intended recipient to whom this message is addressed, please be aware that any dissemination, distribution, copying or other use of its contents is not permitted. If you think that you have received this message in error, please contact the sender at jtheodore@steptoe.com.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT 5
FILED UNDER SEAL

EXHIBIT 6
FILED UNDER SEAL

# EXHIBIT 7
# FILED UNDER SEAL

EXHIBIT 8
FILED UNDER SEAL

EXHIBIT 9
FILED UNDER SEAL

EXHIBIT 10

| | |
|---|---|
| **From:** | Theodore, Jeffrey |
| **Sent:** | Thursday, September 07, 2017 4:33 PM |
| **To:** | Porter, Katherine; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David |
| **Cc:** | Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com |
| **Subject:** | RE: initial discovery |
| **Attachments:** | Letter to Zensky re General Ledger.pdf |

David,

Please find attached correspondence of today's date.

Jeff

**From:** Porter, Katherine [mailto:kporter@akingump.com]
**Sent:** Wednesday, September 06, 2017 2:55 PM
**To:** Theodore, Jeffrey; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Jeff,

At the outset, we find it odd to require written responses in advance of a call. Nevertheless, we respond in an effort to move these issues along.

The BL/FG Defendants went through great effort to produce in the preliminary exchange all the non-privileged responsive documents that were reasonably technologically accessible. The BL/FG Defendants also went through great efforts and expense to extract any potentially responsive documents from archived computer systems. As you are well aware, a majority of the documents you sought were created and maintained by corporate entities under Jamex's (f/k/a Bridger) ownership. Many of those documents simply are not readily accessible to the BL/FG Defendants. We are currently in the process of exploring the possibility of engaging a vendor to try to obtain additional documents from the prior, archived computer systems that are available to the BL/FG Defendants. If extensive and/or costly efforts are required to obtain such archived data, Eddystone must be prepared to shoulder such discovery costs, and the added time will impact the previously agreed schedule. Of course, any additional responsive documents that are located will be produced if and when we locate them.

With respect to the requests that you specifically identify, the BL/FG Defendants produced more than 100 accounting records and bank records, including documents detailing revenues, expenses, EBITDA, and assets. The BL/FG Defendants also, in fact, did produce tax forms covered by category 1 and LLC documents covered by category 2. As noted, the BL/FG Defendants will produce any additional documents if and when we locate such document through our search and production process. To be clear, all responsive documents that we have located were produced in connection with the preliminary exchange.

Separately, I will note that we have identified several apparent gaps in ERC's preliminary exchange production. For instance, ERC agreed to produce an organization chart for Enbridge as of 2013 and the present (Request 5) but we have not located an organization chart for Enbridge for any period. Similarly, ERC agreed to produce "[a]ll audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings, and other financial statements or accounting reports, along with drafts, trial balances, and internal accounting work papers for ERC for 2013, 2014, 2015 and 2016." (Request 6).  But we have not seen anything from 2013, nothing unaudited for 2014, and nothing audited for 2015 forward. Moreover, there do not appear to be "Available Cash Calculation" documents for any time prior to 2015.  There appear to be other gaps as well in these and other Requests.

This email does not address all the open issues or disputes between the parties relating to discovery, or otherwise, and the BL/FG Defendants reserve all rights.

We look forward to discussing with you.  Please use the following dial in: **Dial-In Number: 877-332-1603; Access Code:** 516 8036

Thanks,
Katherine

**Katherine Porter**
Direct: <u>+1 212.872.7467</u> | Internal: <u>37467</u>

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Tuesday, September 05, 2017 12:31 PM
**To:** Porter, Katherine; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Katherine,

We are available to speak at 3 PM tomorrow. Please let us know in advance of the call your position on whether Defendants will produce the general ledgers, account records, and other missing financial and accounting documents so that we can have an informed discussion.

In addition, your initial production did not contain the W-2, 1099, and other tax documents covered by category 1 of the initial discovery agreement as well as the material covered by category 2. Please confirm that you will promptly produce those documents as well. In addition, please let us know whether Bridger Logistics and Ferrellgas object to the disclosure of their records and those of Bridger Logistics's subsidiaries (including but not limited to Bridger Rail Shipping) by IBB and Business First Bank as requested in our subpoenas.

In terms of David's email, as Fil indicated, prior to that email we had provided an updated production that should have resolved the issues raised. Please let us know if there are any problems with the updated production. We are of course happy to respond to any concrete objections that you may have to our initial production as soon as you specify what they are.

Jeff

**From:** Porter, Katherine [mailto:kporter@akingump.com]
**Sent:** Sunday, September 03, 2017 6:15 PM
**To:** Theodore, Jeffrey; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Jeff,

We are in receipt of your email and will respond next week.  Preliminarily, I will note that the BL/FG Defendants did produce a significant number of documents responsive to the requests you identified (and more than 45,000 pages total).  We are investigating the questions you raised and will respond more fully once we have done so.  I will note that we have identified several apparent gaps in your production, which I hope you will be willing to address in turn.  In addition, we are still waiting for a response to the remaining issues raised in David's email of August 30.  Are you available for a call on Wednesday at 3:00 ET?

This email does not address all the open issues or disputes between the parties relating to discovery, or otherwise, or raise all relevant facts or contentions and the BL/FG Defendants reserve all rights.

I hope you are having a pleasant holiday weekend.

Best,
Katherine


**Katherine Porter**
Direct: +1 212.872.7467 | Internal: 37467

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Friday, September 01, 2017 5:25 PM
**To:** Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Katherine,

We have not received a response to this email. Please let us know whether Defendants will produce the accounting and financial documents described below.

Thanks,

Jeff

**From:** Theodore, Jeffrey
**Sent:** Wednesday, August 30, 2017 5:08 PM
**To:** Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** initial discovery

David and Katherine,

As you know, Defendants agreed to produce the following documents as part of initial discovery in this case:

- The accounting records of Bridger Logistics and Bridger Transfer Services for the period January 1, 2012 to March 1, 2016, including balance sheets, general ledgers and adjusting journals, cash flow statements, statements of changes in equity, statements of income and retained earnings, and fixed asset schedules.

- The account records for the bank accounts and other asset accounts maintained for Bridger Logistics, Bridger Rail Shipping, and Bridger Transfer Services between January 1, 2012 and March 1, 2016.

We are in the process of reviewing your initial production, and it appears that many of these key financial records – most importantly, the general ledgers of Bridger Logistics and Bridger Transfer Services – were not included. As you know, these documents are critical to evaluating and understanding the financial transactions and relationships within the Bridger Group that are at the heart of Eddystone's fraudulent transfer, alter ego, and breach of fiduciary duty claims.

Please produce all of the material in these agreed initial production categories – including the general ledgers and associated accounting records – immediately or let us know where in the initial production the material may be found. We continue to review Defendants' initial production and reserve the right to follow up on any other issues with Defendants' compliance with the Parties' initial discovery agreement.

Thanks,

Jeff


Jeffrey M. Theodore
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Tel. 202 429 8139
Fax. 202 429 3902

The information contained in this message may be privileged, confidential, or otherwise protected from disclosure.  If you are not an intended recipient to whom this message is addressed, please be aware that any dissemination, distribution, copying or other use of its contents is not permitted.  If you think that you have received this message in error, please contact the sender at jtheodore@steptoe.com.


The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Jeffrey M. Theodore
202 429 8139
jtheodore@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com



September 7, 2017

*BY EMAIL*

David Zensky
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036

Re:   *Eddystone Rail Company, LLC v. Bridger Logistics, LLC et al.*

Dear David,

I write regarding the failure of your clients, Ferrellgas L.P., Ferrellgas Partners, L.P., and Bridger Logistics, LLC (together "Ferrellgas"), to produce critical accounting records for Bridger Logistics and Bridger Transfer Services ("BTS") that they agreed to produce as part of the parties' early discovery agreement in this case. You have indicated that Ferrellgas did not provide you with the records, but as Ferrellgas surely has the missing records in its possession, I ask that you confer with your client again and produce them without further delay.

On May 18, 2017, Eddystone and Ferrellgas exchanged initial discovery. Among other things, Eddystone requested "The accounting records of Bridger Logistics and Bridger Transfer Services, including balance sheets, *general ledgers* and adjusting journals, cash flow statements, statements of changes in equity, statements of income and retained earnings, and fixed asset schedules" (emphasis added). You agreed to produce these documents. On August 11, 2017, Ferrellgas served its production of responsive documents. Upon review, however, we discovered that the production contained no general ledgers for Bridger Logistics and Bridger Transfer Services.

On September 6, 2017, counsel for Eddystone and Ferrellgas discussed the contents of the initial document production. On the conference call, you explained that you were willing to produce general ledgers but that your client did not include any such materials among the financial records they delivered to you for production in this case. You promised to circle back

David Zensky
September 7, 2017
Page 2

to your client and renew your request but stated that Bridger Logistics and BTS simply may not
have kept general ledgers in the normal course of business.

This is flatly contradicted by work papers obtained from Bridger's auditor KPMG, which
state that "KPMG received General Ledgers for all companies of Bridger LLC." This audit was
concluded in spring of 2015, just before Ferrellgas acquired BTS. And there are repeated
references to general ledgers for BTS and Bridger Logistics in the work papers produced by
KPMG. Among many other examples, KPMG documents note that "Great Plains" is the
accounting software used for the Bridger "General Ledger System," observe that there are
deficiencies in the "General Ledger process," and discuss various procedures related to the
general ledger. These records establish conclusively that there were general ledgers containing
the accounting entries for Bridger Logistics and Bridger Transfer Services.

In addition, it is inconceivable that a publicly traded company such as Ferrellgas would
not maintain a general ledger for the transactions of Bridger Logistics and BTS, major
subsidiaries with a business Ferrellgas valued at almost $1 billion. Every business organization
of a similar size maintains a general ledger because it is the backbone of any effective accounting
system. Whenever a business transaction is executed it must be recorded in the company's
books and records. A general ledger is the accumulation of those transactions that make up the
books and records of a company and is used to record the financial transactions of the company.
There is no way to prepare financials or perform audits without a general ledger. And, of course,
Ferrellgas has continued to disclose audited financial statements since the Bridger Logistics/BTS
acquisition.

We therefore request that you ask your client to provide you with the general ledgers that
it surely possesses and produce them as agreed.

Sincerely,

Jeffrey M. Theodore

# EXHIBIT 11



**Akin Gump**
STRAUSS HAUER & FELD LLP

DAVID M. ZENSKY
+1 212.872.1075/fax: +1 212.872.1002
dzensky@akingump.com

September 13, 2017

VIA E-MAIL

Jeffrey M. Theodore
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, DC 20036

Re:   *Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al.*, No. 17-cv-00495
(E.D. Pa.) – BL/FG Defendants' Good Faith and Extensive Production of
Accounting Information

Dear Jeff:

I write in response to your letter dated September 7, 2017. As you know, we represent
Ferrellgas L.P., Ferrellgas Partners, L.P., and Bridger Logistics, LLC (the "BL/FG Defendants"),
defendants and third-party plaintiffs in the above-referenced action.[1]

Your assertion that the BL/FG Defendants have failed to produce critical accounting
records for Bridger Logistics and Bridger Transfer Services, which they allegedly agreed to
produce as part of the parties' early discovery agreement in this case, is false and incorrect.
Specifically, your letter complains that the preliminary exchange production contained no
"general ledgers" for Bridger Logistics or Bridger Transfer Services. You did not define
"general ledger" in connection with the preliminary exchange, but have subsequently explained
that by general ledger you mean a document setting forth details of individual transactions.

As an initial matter, the BL/FG Defendants produced more than 12,000 documents and
emails, and more than 45,000 pages, in the preliminary exchange. Your client, Eddystone Rail
Company, LLC, produced fewer than 700 documents. The documents and communications that
the BL/FG Defendants produced contained many dozens of accounting records, including, *inter
alia*, (i) audited financials for Bridger LLC and subsidiaries and/or affiliates for multiple years
throughout the relevant period, (ii) numerous additional Bridger LLC and subsidiaries and/or
affiliates financial reporting worksheets for multiple years throughout the relevant period,
(iii) bank records and statements (many with accounting work-sheets) for accounts held by
Bridger Logistics, LLC, Bridger Transfer Services, LLC, and Bridger Rail Shipping, LLC for

---

[1] This letter does not address all the open issues or disputes between the parties relating to discovery, or
otherwise, or raise all relevant facts or contentions and the BL/FG Defendants reserve all rights.



**Akin Gump**
STRAUSS HAUER & FELD LLP

Jeffrey M. Theodore
September 13, 2017
Page 2

multiple years throughout the relevant period, (iv) live spreadsheets detailing EBITDA for
Bridger LLC and segments and/or divisions on a monthly and quarterly basis for multiple years
throughout the relevant period, and quarterly projections into 2016, (v) live spreadsheets
detailing Bridger Logistics LLC's EBITDA, and Bridger subsidiary companies' EBITDA, since
the acquisition by Ferrellgas in June 2015, and (vi) other supporting records include AP and AR
aging records, fixed asset schedules, debt schedules and prepaid expense ledgers, among others.
Despite your bald assertion that the production did not contain "general ledgers," many of the
foregoing documents incorporate "general ledger" information, explicitly titled as such. (*See,
e.g.*, BLFG_EDPA0000780.)

    As we explained to you on the call on September 6, 2017 (and previously), the BL/FG
Defendants do not currently create, in the usual course of business, a document or report
representing a distinct "general ledger," as you have described it to us, for Bridger Transfer
Services or Bridger Logistics on a standalone basis. While the raw data that would contribute to
a general ledger is collected and maintained by the BL/FG Defendants in their current accounting
software systems along with the data of many other affiliates, the BL/FG Defendants do not
create or export reports of such data, other than in the form of the documents already produced to
you. Accordingly, the BL/FG Defendants are not aware of any further documents beyond the
dozens already produced that are encompassed by the agreement to produce "the accounting
records of Bridger Logistics and Bridger Transfer Services." (Preliminary Exchange Request 4).

    Furthermore, as we have explained to you on multiple occasions, many of the accounting
documents you have inquired about were created and maintained by corporate entities under
Jamex's (f/k/a Bridger) ownership. Many of those documents simply are not readily accessible
to the BL/FG Defendants. We are, however, currently in the process of exploring the possibility
of engaging a vendor to try to obtain additional documents from the prior, archived computer
systems that are available to the BL/FG Defendants.[2]

    The KPMG documents that you reference are entirely consistent with the foregoing.
First, the KPMG references you cite appear to refer to the period prior to the acquisition of
Bridger Logistics by Ferrellgas in June 2015. Second, the references appear to discuss
accounting software.

    As you well know, the BL/FG Defendants are not required by the Federal Rules of Civil
Procedure, or by the preliminary exchange agreement, to *create* responsive documents or to

---

    [2] If extensive and/or costly efforts are required to obtain such archived data, Eddystone must be prepared to
shoulder such discovery costs, and the added time will impact the previously agreed schedule.



Jeffrey M. Theodore
September 13, 2017
Page 3

produce documents that they do not possess. We remind you, furthermore, that the entire purpose of the preliminary exchange, as articulated by Filiberto Agusti, was for the parties to produce documents that would be easily identifiable, could be located in a single folder on a desktop, and would require a minimum amount of review for responsiveness or privilege, given the preliminary stage of the case and pending motions to dismiss.[3] The purpose and agreement of the preliminary exchange was *not* to *create* documents from accounting software systems.

Further, nothing in the preliminary exchange agreement to produce any responsive documents was or could reasonably have been construed as an admission or representation that any such documents existed.

Nevertheless, we note that the raw electronic data currently stored in the BL/FG Defendants' accounting systems may be requested by, and responsive to, certain of the requests in the Plaintiff's First Set of Requests for Production. We will, of course, work with you to produce the responsive data, consistent with our responses and objections to such requests.

Contrary to the BL/FG Defendants' complete, good faith compliance with the agreed-upon preliminary production, your e-mail dated September 12, 2017 indicates that your client has failed to produce documents that exist and are responsive to the agreed preliminary exchange requests. For instance, we did not request an organizational chart "as it relates to Eddystone," but rather, simply for Enbridge. While you are surely in possession of that, you have failed to provide it. Similarly, we note that you are continuing to consult with your client about other categories of documents that appear to be missing. Most incredibly, your email indicates that you are now asserting a post-hoc relevance objection to categories of documents that you had agreed to produce following a lengthy negotiation of what would be mutually acceptable production for both sides. Eddystone Rail Company should retract its position in that regard immediately, and focus on its own production obligations rather than generating serial letters and e-mails over the same topics.

---

[3] Notwithstanding, the BL/FG Defendants, in good faith and at great expense, devoted an enormous amount of time to identifying, retrieving, and producing many thousands of documents in the preliminary exchange.



**Akin Gump**
STRAUSS HAUER & FELD LLP

Jeffrey M. Theodore
September 13, 2017
Page 4

The BL/FG Defendants reserve all rights.

Sincerely,

David M. Zensky

EXHIBIT 12
FILED UNDER SEAL

EXHIBIT 13
FILED UNDER SEAL

EXHIBIT 14
FILED UNDER SEAL

EXHIBIT 15
FILED UNDER SEAL

EXHIBIT 16
FILED UNDER SEAL

EXHIBIT 17

| | |
|---|---|
| **From:** | Jonathan Kelley <jkelley@lynnllp.com> |
| **Sent:** | Friday, September 08, 2017 10:49 AM |
| **To:** | Theodore, Jeffrey; Sloniewsky, Andrew; Petts, Nick; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com |
| **Cc:** | Agusti, Fil; Work, Tim; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Christian Orozco |
| **Subject:** | RE: Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al |

Jeff,

At this time, Rios and Gamboa are unwilling to produce documents outside the time period of December 31, 2014 to March 1, 2016.  Please let me know if you have any questions about this.

Thanks,
Jon

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Wednesday, September 06, 2017 3:00 PM
**To:** Jonathan Kelley <jkelley@lynnllp.com>; Sloniewsky, Andrew <ASloniewsky@steptoe.com>; Petts, Nick <npetts@Steptoe.com>; Eno, Kelly <keno@akingump.com>; Porter, Katherine <kporter@akingump.com>; Jeremy Fielding <jfielding@lynnllp.com>; Kent Krabill <kkrabill@lynnllp.com>; Dailey, Jeffery <JDailey@AKINGUMP.COM>; zz-Gardner, Carly <cgardner@akingump.com>; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Agusti, Fil <FAgusti@steptoe.com>; Work, Tim <twork@steptoe.com>; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Christian Orozco <corozco@lynnllp.com>
**Subject:** RE: Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al

Jon and Kent,

Thanks for speaking with us this morning. To confirm our conversation, at this time Rios and Gamboa are unwilling to produce documents outside the time period of June 2015 to September 2016. Please let me know if this is incorrect.

Thanks,

Jeff

**From:** Jonathan Kelley [mailto:jkelley@lynnllp.com]
**Sent:** Wednesday, September 06, 2017 10:45 AM
**To:** Sloniewsky, Andrew; Theodore, Jeffrey; Petts, Nick; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Agusti, Fil; Work, Tim; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Christian Orozco
**Subject:** RE: Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al

11:30 EST works for us.

**From:** Sloniewsky, Andrew [mailto:ASloniewsky@steptoe.com]
**Sent:** Wednesday, September 06, 2017 9:42 AM
**To:** Jonathan Kelley <jkelley@lynnllp.com>; Theodore, Jeffrey <jtheodore@steptoe.com>; Petts, Nick <npetts@Steptoe.com>; Eno, Kelly <keno@akingump.com>; Porter, Katherine <kporter@akingump.com>; Jeremy Fielding <jfielding@lynnllp.com>; Kent Krabill <kkrabill@lynnllp.com>; Dailey, Jeffery <JDailey@AKINGUMP.com>; zz-Gardner, Carly <cgardner@akingump.com>; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Agusti, Fil <FAgusti@steptoe.com>; Work, Tim <twork@steptoe.com>; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Christian Orozco <corozco@lynnllp.com>
**Subject:** RE: Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al

Jonathan:

Something has come up.  We need to push back to 11:30 am.  Let me know if this poses a problem.

Regards,

Andrew

**From:** Jonathan Kelley [mailto:jkelley@lynnllp.com]
**Sent:** Tuesday, September 05, 2017 9:48 PM
**To:** Theodore, Jeffrey; Petts, Nick; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Christian Orozco
**Subject:** RE: Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al

11 a.m. EST works for us, tomorrow.  We will circulate a dial-in, and look forward to discussing these issues with you.

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Tuesday, September 05, 2017 11:56 AM
**To:** Petts, Nick <npetts@Steptoe.com>; Jonathan Kelley <jkelley@lynnllp.com>; Eno, Kelly <keno@akingump.com>; Porter, Katherine <kporter@akingump.com>; Jeremy Fielding <jfielding@lynnllp.com>; Kent Krabill <kkrabill@lynnllp.com>; Dailey, Jeffery <JDailey@AKINGUMP.com>; zz-Gardner, Carly <cgardner@akingump.com>; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew <ASloniewsky@steptoe.com>; Agusti, Fil <FAgusti@steptoe.com>; Work, Tim <twork@steptoe.com>; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Christian Orozco <corozco@lynnllp.com>
**Subject:** RE: Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al

Jon,

On the 11 AM call we would also like to meet and confer regarding Rios and Gamboa's discovery responses, including but not limited to the date restriction that you have imposed and the limitation to materials that are "proportional," your view as to the scope of which is not defined. For that and other reasons, the discovery responses are inadequate to let us know what documents Rios and Gamboa plan to produce.

Jeff

**From:** Petts, Nick
**Sent:** Tuesday, September 05, 2017 10:53 AM
**To:** Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Theodore, Jeffrey; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Christian Orozco
**Subject:** RE: Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al

Jon,

   We are available to discuss the bank subpoena tomorrow at 11:00 a.m. EST.  If that works for you, please circulate a calendar invite and dial-in info.

Thanks,
Nick

**From:** Jonathan Kelley [mailto:jkelley@lynnllp.com]
**Sent:** Tuesday, September 05, 2017 10:33 AM
**To:** Petts, Nick; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Theodore, Jeffrey; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Christian Orozco
**Subject:** RE: Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al

Nick,

We object to the subpoena to Business First Bank and intend to quash it, as it requests personal information for Mr. Rios and Mr. Gamboa that is irrelevant to this case, and covers a timeframe that is far too broad.

Please let us know when you are available for a call to discuss, further.

Thanks,
Jon

**From:** Petts, Nick [mailto:npetts@Steptoe.com]
**Sent:** Wednesday, August 30, 2017 2:49 PM
**To:** Jonathan Kelley <jkelley@lynnllp.com>; Eno, Kelly <keno@akingump.com>; Porter, Katherine <kporter@akingump.com>; Jeremy Fielding <jfielding@lynnllp.com>; Kent Krabill <kkrabill@lynnllp.com>; Dailey, Jeffery <JDailey@AKINGUMP.com>; zz-Gardner, Carly <cgardner@akingump.com>; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew <ASloniewsky@steptoe.com>; Agusti, Fil <FAgusti@steptoe.com>; Work, Tim <twork@steptoe.com>; Theodore, Jeffrey <jtheodore@steptoe.com>; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al

Counsel:

   Attached please find copies of two subpoenas for documents that Eddystone intends to serve shortly.  One subpoena is directed to Business First Bank, and the other to Riverstone Holdings.

   We will serve both subpoenas following this email.

Regards,

**Nick Petts**
Associate
npetts@Steptoe.com
+1 202 429 6488 direct | +1 212 961 6117 mobile | +1 202 429 3902 fax

## Steptoe

Steptoe & Johnson LLP
1330 Connecticut Avenue, NW | Washington, DC 20036
www.steptoe.com

This message and any attached documents contain information from the law firm Steptoe & Johnson LLP that may be confidential and/or privileged. If you are not the intended recipient, please do not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

EXHIBIT 18

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JULIO RIOS and JEREMY GAMBOA, <br><br> Defendants, <br><br> BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., and FERRELLGAS L.P., <br><br> Defendants/Third-Party Plaintiffs, <br><br> v. <br><br> JAMEX MARKETING, LLC (f/k/a BRIDGER MARKETING, LLC), JAMEX TRANSFER HOLDINGS, LLC, JAMEX, LLC (f/k/a BRIDGER, LLC), JAMEX TRANSFER SERVICES, LLC (f/k/a BRIDGER TRANSFER SERVICES, LLC), JAMES BALLENGEE and JOHN DOES 1–10, <br><br> Third-Party Defendants. | Civil Action No. 17–cv–00495 |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS BRIDGER LOGISTICS, LLC,
FERRELLGAS PARTNERS, L.P. AND FERRELLGAS L.P.'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO
PLAINTIFF EDDYSTONE RAIL COMPANY, LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Bridger

Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P. request that Plaintiff Eddystone Rail

Company, LLC produce the following documents within thirty (30) days.

1

## DEFINITIONS

1.    "Action" means the above-captioned action.

2.    "Affiliate" means either of two parties if (1) either party has the power to control the other, or if a third party controls or has the power to control the both, (2) the parties have interlocking directorates or ownership, (3) the parties have an identity of interests among members of a family or, (4) where some employees, equipment, and/or facilities, are shared.

3.    "Amended COSA" means the amended and restated COSA dated May 26, 2015

4.    "Arbitration" means the arbitration commenced by ERC against JTS on April 19, 2016 before the Society of Maritime Arbitrators, including all Communications and proceedings through the award issued by the Society of Maritime Arbitrators on January 24, 2017, ERC's petition to confirm the award, and the motion to intervene.

5.    "Ballengee" means James Ballengee.

6.    "Berthold Rail Agreement" means the Berthold Rail Services Agreement between Bridger Trading, LLC (n/k/a Jamex Marketing, LLC) and Enbridge Rail (North Dakota) LP.

7.    "BL/FG Defendants" means Bridger Logistics, FG and FGP.

8.    "Bridger Group" means prior to June 24, 2015, Bridger LLC, Bridger Logistics, Bridger Marketing, LLC f/k/a Bridger Trading, LLC, Bridger Transportation, LLC, Bridger Storage, LLC, Bridger Leasing, LLC, BTS, Bridger Lake, LLC, Bridger Rail Shipping, LLC, Bridger Marine, LLC, and Bridger Midstream, LLC and any of their partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents; after June 24, 2015, "Bridger Group" means all of the foregoing named entities other than Bridger, LLC (n/k/a Jamex, LLC), Bridger Marketing, LLC (n/k/a Jamex Marketing, LLC), and Bridger Midstream, LLC; after February 1, 2017, "Bridger Group" also does not include BTS.

2

9.     "Bridger Logistics" means Defendant Bridger Logistics, LLC, and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

10.     "BTS" means Bridger Transfer Services, LLC, now known as Jamex Transfer Services, LLC, and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

11.     "BTS Purchase and Sales Agreement" means the Purchase and Sale Agreement dated February 22, 2016, and includes the January Agreements.

12.     "Communication" means any recording, transmission or exchange of information, inquiries, opinions, or thoughts, whether oral, in writing, or otherwise.

13.     "Complaint" means the most recent complaint filed in this Action.

14.     "Canopy Prospecting" means the organization of "local Philadelphia investors" identified in *Plaintiff Eddystone Rail Company's Opposition To Defendants' Motions To Dismiss* in the Action [ECF No. 39] and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

15.     "Concerning" means concerning, referring to, relating to, pertaining to, touching upon, discussing, mentioning, demonstrating, reflecting, constituting, assessing, embodying, recording, stating, describing, evidencing, supporting, or summarizing.

16.     "COSA" means the Crude Oil Supply Agreement dated July 1, 2014 between Bridger Marketing, LLC and Monroe, and any amendments thereto.

17.     "Deficiency Volume Charge" has the meaning set forth in the RSA.

3

18.    "Delta" means Delta Air Lines, Inc., and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

19.    "Document" is equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedures and includes, without limitation, any written, printed, typed, stored, photographed, recorded or otherwise reproduced Communications and all written, graphic or otherwise recorded material, Including without limitation, computer or electronically generated or stored information or data, tape recordings or other sound recordings, computer cards, floppy disks, thumb drives, or printouts, any and all papers or other tangible Documents, photographs, drawings, films, recordings, things, books, records, accounts, Communications, letters, telegrams, correspondence, notes of meetings or conversations, memoranda or written Communications of any nature, recordings of conversations either in writing or upon any mechanical or electrical recording devices, email, instant messaging, voicemail, notes, papers, reports, presentations, analyses, invoices, canceled checks or check stubs, receipts, bills, purchase orders, blue prints, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs. "Document" specifically includes all forms of electronic data. A draft or non-identical copy is a separate Document within the meaning of this term.

20.    "Eddystone" or "ERC" means Eddystone Rail Company, LLC, and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

21.    "Enbridge" or "Enbridge Group" means any entity that is a part of the Enbridge corporate family, Including, but not limited to, Enbridge, Inc., Enbridge Energy Company, Inc.,

Enbridge Energy Management, L.L.C., and Enbridge Energy Partners, L.P., Enbridge Rail (Philadelphia) LLC, and any entity that is an Affiliate of or directly or indirectly owned (wholly or partially) by any of the foregoing entities identified in this paragraph, and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, or attorneys.

22.    "ERC Employee" means any Persons who were ERC partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, or who had any responsibility for business activities of ERC, or in any way acted for or on behalf of ERC, regardless of who paid their compensation.

23.    "Facility" means the rail and barge facility located in Eddystone, Pennsylvania that was subject of the RSA.

24.    "FG" means Defendant Ferrellgas, L.P. and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

25.    "FGP" means Defendant Ferrellgas Partners, L.P. and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

26.    "Including" means including but not limited to.

27.    "Jamex Marketing" means Jamex Marketing, LLC (f/k/a Bridger Marketing, LLC), and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents, for the period of time after June 24, 2015.

5

28.     "Jamex" means Jamex, LLC (f/k/a Bridger, LLC), and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents, for the period of time after June 24, 2015.

29.     "January Agreements" mean the letter agreements entered into on or about January 13, 2016, by and among any of Monroe, Jamex Marketing, and Bridger Logistics, bearing bates stamps BLFG_EDPA0043904–43928.

30.     "JTS" means Jamex Transfer Services, LLC, formerly known as Bridger Transfer Services, LLC, and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents, for the period of time on and after  February 1, 2016.

31.     "Monroe" means Monroe Energy, LLC, and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

32.     "Oil Storage Agreement" means the agreement between Enbridge Storage (North Dakota), LLC and Bridger Storage, LLC, effective as of June 1, 2012, and any exhibits, amendments, modifications or supplements thereto.

33.     "Other Agreements" means any other draft or final agreement negotiated or entered into in connection with the Arbitration and/or with the Settlement Agreement, Including certain consents to assignment.

34.     "Person" means any natural person or any legal entity, Including without limitation, any corporation, company, LLC, partnership, sole proprietorship, business, governmental entity, association, or other legally-recognized entity.

6

35.     "Plaintiff's Initial Disclosures" means the Initial Disclosures of Plaintiff Eddystone Rail Company, LLC produced by counsel to Eddystone in this Action on August 2, 2017.

36.     "Preliminary Exchange" means the preliminary exchange in response to seven requests issued by the BL/FG Defendants to ERC in May 2017 as set forth in the Report of Rule 26(f) Meeting in this Action.

37.     "RSA" means the Eddystone Rail Facilities Services Agreement dated February 13, 2013 between Eddystone and BTS.

38.     "SDNY Arbitration Action" means the action commenced by Eddystone in the United States District Court for the Southern District of New York under case number 1:17-cv-01266-WHP.

39.     "Settlement Agreement" means the agreement Eddystone entered into with BTS, Jamex Marketing, and Ballengee, as alleged in paragraph 51 of the Complaint.

40.     "Third-Party Complaint" means the Third-Party Complaint of Bridger Logistics, FGP, and FG filed in this Action.

41.     "TLA" means the Transportation and Logistics Agreement dated June 24, 2015 by and between Bridger Marketing, LLC and Bridger Logistics.

42.     "TLSA" means the Transportation and Logistics Services Agreement dated May 26, 2015 by and between Bridger Logistics and Monroe.

43.     "You" and "Your" mean Eddystone.

## INSTRUCTIONS

1.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

2.      The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the Request inclusive rather than exclusive.

3.      Use of the singular also includes the plural and vice-versa.

4.      The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

5.      Each Request shall be construed independently and without reference to any other Request.  Limitations in one Request shall not limit any other Request.  Any ambiguity in the Requests shall be construed to bring within the scope of the Requests all responses that otherwise could be construed to be outside of their scope.  Words and phrases are given their ordinary meaning and shall not be unduly or restrictively construed so as to avoid responding to the fair scope of these Requests for production.

6.      You are to produce all Documents responsive to the Requests that are in Your possession, custody or control, Including all those within the possession, custody, or control of any of Your current or former attorneys (including, without limitation Steptoe & Johnson LLP, Sutherland Asbill & Brennan LLP, and any other attorneys who represented You during the Relevant Period or as otherwise indicated), directors, officers, agents,  employees, representatives, associates, investigators, or division affiliates, partners, partnerships, principals, members, managers, advisors, parents or subsidiaries, Affiliates, Persons under Your control, or anyone acting on Your behalf, and all those that can be obtained through reasonably diligent efforts.

7.      Each Request for Documents requires the production of each original, or an identical copy of the original, and all non-identical copies (whether made different from the original because of the notes or notations made on such copies or otherwise).

8

8.     All Documents that exist in electronic format are to be produced in that format and context, with all contextual data and metadata, as agreed to by the parties pursuant to the email agreement dated July 7, 2017, Including native versions of Microsoft Excel spreadsheets, and in a manner that allows the BL/FG Defendants to search and organize such electronic Documents in a manner that is as effective and efficient as that enjoyed by the producing party.

9.     All Documents that exist only in paper or other hard-copy format are to be produced as they are or were kept in the usual course of business so that the BL/FG Defendants can ascertain the files in which they were located, their relative order in such files, and how such files were maintained.

10.     All Documents produced must be produced in their entirety, Including all attachments and enclosures, and in their original folder, binder, or other cover or container unless it is not possible to do so. Whenever a Document or group of Documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the Document. If You choose to image and produce such documents electronically, such information shall be provided in the metadata.

11.     If any specific Request cannot be complied with in full, it shall be complied with to the extent possible. If a Document was, but no longer is, in Your possession, custody or control, state so in writing. If no Documents exist that are responsive to a particular request, state this assertion in writing.

12.     If any part of any of the Requests is the subject of an objection, all Documents that are responsive to the portions of any of the Requests to which the objection does not apply shall be produced, and the nature of and ground(s) for the objection shall be stated. If You object to any Request as overly broad or unduly burdensome or not proportional to the needs of the

case, specifically identify the respect in which the Request is allegedly overly broad, unduly burdensome, or not proportional.

13.     If You claim that any Document that You are requested to produce is privileged or otherwise immune from discovery, You must provide the following information in writing, at the time of production set forth above or at the time mutually agreeable by the parties, in a format to be agreed upon by the parties.  If no alternative agreement has been reached by the parties, You must provide the following information in writing, at the time of production set forth above or at the time mutually agreeable by the parties, with respect to each such Documents:

    a.   the nature of the privilege You claim;

    b.   the facts upon which You rely as the basis for claiming privilege;

    c.   the Person who created, wrote, or prepared the Document;

    d.   the title (if any) and date on which the Document was created, written, prepared or transmitted;

    e.   the time period, if any, that the Document relates to or concerns;

    f.   the general subject matter of the Document;

    g.   the general nature of the Document (e.g., letter, email, memorandum);

    h.   each Person, if any, who signed the Document;

    i.   each Person to whom the Document was directed, circulated or shown;

    j.   each Person now in possession of the Document or any copy hereof;

    k.   the number of pages the Document contains;

    l.   the particular Request to which such Document is responsive; and

    m.   whether any business or non-legal matter is contained or discussed in such Document.

10

14.     If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a Document has been redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the Person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted Documents.

15.     Documents not otherwise responsive to a Request shall be produced if such Documents refer to, relate to, or explain the Documents called for by this Request or if such Documents are attached to Documents called for by this Request.

16.     These Requests are continuing Requests pursuant to Federal Rule of Civil Procedure 26(e).  You shall supplement any production of Documents made in response to any of the following Requests and produce promptly any and all responsive Documents that are received, discovered, or created after any of Your responses to the Requests, or that are otherwise within Your possession, custody, or control, wherever located, Including, without limitation, those in the custody of Your representatives, agents, professionals, Affiliates or anyone acting on Your behalf.[1]

17.     None of the definitions herein or requests for production set for the below shall be construed as an admission by Defendants relating to the existence of any evidence, the relevance

---

[1] The BL/FG Defendants incorporate by reference herein the requests issued by the BL/FG Defendants in connection with the Preliminary Exchange and specifically instruct that the seven Preliminary Exchange requests be deemed continuing requests.  The BL/FG Defendants further instruct that Plaintiff conduct a full privilege review on all documents withheld as potentially privileged pursuant to the privilege review parameters agreed to by the parties in connection with the Preliminary Exchange.

or admissibility of any evidence or the truth or accuracy of any statement or characterization in the definition or Request.

## RELEVANT PERIOD

Unless otherwise indicated, the time period covered by these Document Requests covers the period of January 1, 2012, through the present, and shall include all Documents and information produced or created during that period, and shall also include all Documents which relate in whole or in part to such period, or to events or circumstances that occurred during such period, even though dated, prepared, generated or received prior or subsequent to that period. However, if a Document prepared prior to January 1, 2012 (or another date as indicated in a particular Document Request) is necessary for a correct or complete understanding of any Document covered by this Document Request, the Document shall be produced. If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to this Document Request.

## REQUESTS

1.      All Documents produced to ERC in or in relation to this Action, by Person other than the BL/FG Defendants and Individual Defendants, whether formally or informally.

2.      All Documents on which You will rely in this litigation.

3.      All Documents Concerning any claim or allegation in the Complaint.

4.      All Documents referenced in the Complaint, or used or considered in drafting the Complaint.

5.      All Documents Concerning any entity in the Bridger Group, any of the BL/FG Defendants, JTS, Jamex Transfer Holdings, LLC, Jamex Marketing, Jamex, Ballengee, Monroe, the RSA, the Facility, the COSA, the TLA, or the TLSA.

12

6.    All Documents Concerning any negotiations, drafting, or approval Concerning the RSA.

7.    All Documents Concerning any diligence and/or analysis by ERC, any Enbridge entity, Canopy Prospecting, or any advisor to ERC, Enbridge or Canopy Prospecting, Concerning BTS, BL, any member of the Bridger Group or the BL/FG Defendants, the Oil Storage Agreement, the Berthold Rail Agreement, the RSA, the COSA, the TLA, or the TSLA, Including but not limited to risks, opportunities, payment assurance, credit support, projections, estimated profits or losses, business analysis, business relationships, or the corporate structure and finances of BTS, any of the BL/FG Defendants, and members of the Bridger Group, or Affiliates thereof.

8.    All Documents Concerning any proposed, negotiated, considered (whether or not shared during negotiations), draft, final, and/or agreed-to parent or Affiliate guarantees, letters of credit, collateral pledges, covenants, capitalization or ownership requirements or representations or notice requirements, or other credit support or financial assurances Concerning any member of the Bridger Group or any of the BL/FG Defendants in relation to any potential or actual agreement, contract, business relationship or trade.

9.    All Documents Concerning section 11 of the RSA and/or ERC's rights thereunder.

10.    All Documents Concerning BTS's (or JTS's) ability to satisfy actual or contingent obligations under the RSA, Including but not limited to BTS's (or JTS's) capitalization, corporate structure, assets, liabilities, revenues, expenses, debt, business operations cash flow and/or express or implied contracts, or the corporate structure of any member of the BL/FG Defendants or the Bridger Group.

13

11.     All Documents Concerning any contract, express or implied, between BTS and any other member of the Bridger Group, any of the BL/FG Defendants, or any other Affiliates or related entities.

12.     All Documents Concerning any Communications between (1) You, Enbridge, or Canopy Prospecting, on the one hand, and (2) any present or former partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates or parents of any member of the Bridger Group, any of the BL/FG Defendants, JTS, Jamex Marketing, or Jamex, on the other hand, Including all emails, voicemails, calendar entries, and notes of all meetings or phone calls.

13.     All Documents Concerning any proposal (whether or not conveyed), plan, offer, or bid to sell or purchase ERC, the Facility and/or Enbridge's, Canopy Prospecting's or ERC's interest in the Facility, or any actual sale, at any time, Including all applications, communications, or discussions that in any way relate to actual or potential financing or a credit facility.

14.     All Documents Concerning any actual or proposed contract for the use or services of ERC or the Facility, or any sale, lease, rental of ERC's services or the Facility, in whole or in part, with or by any party other than BTS.

15.     All Documents Concerning any efforts or analysis by ERC to obtain alternate customers for the Facility or otherwise to mitigate loss, whether (1) prior to or concurrent with entering into the RSA, (2) during the term of the RSA, or (3) after the alleged breach by JTS.

16.     All Documents Concerning any marketing, advertising, or solicitation materials Concerning ERC or the Facility, whether (1) prior to or concurrent with entering into the RSA, (2) during the term of the RSA, or (3) after the alleged breach by JTS.

14

17.    All Documents related to  the Facility exchanged with, and prices and volume commitments considered for: Monroe, BP, Philadelphia Energy Solutions, Shell, Morgan Stanley, Macquarie Group Ltd., World Fuels (Dakota Plains), Statoil Marketing & Trading (US) Inc, EOG Resources, Whiting Petroleum (Monroe Supply), Oasis Petroleum, Enerplus, Sunoco Partners Marketing & Terminals, or Tidal Marketing – US.

18.    All Documents Concerning any payments received by ERC, Enbridge, or Canopy Prospecting Concerning the RSA or the Facility (from any source), Including all records of payments identified in Plaintiff's Initial Disclosures.

19.    All Documents Concerning BTS's (or JTS's) obligations under, compliance with, and/or breach of any term(s) of the RSA, and any claimed damages resulting from any such breach.

20.    All copies of agreements between ERC and BTS, and between ERC's Affiliates (Including Enbridge or Canopy Prospecting) and BTS's Affiliates, as identified in Plaintiff's Initial Disclosures.

21.    All Documents Concerning the allegations that BTS was held out as a "bona fide" entity, and that BTS was "in fact not [an] independent bona fide entity."

22.    All Documents sufficient to show that the RSA provided Logistics with "exclusive" access to the Facility or access to "exclusive" transloading capacity.

23.    All Documents Concerning the estimated and actual cost (1) to construct, build, and/or improve the Facility, (2) to operate the Facility, and/or (3) of transloading per barrel at the Facility.

24.    All Documents reflecting the revenue, return, profit and/or earnings Eddystone, Enbridge and/or Canopy expected to earn in connection with the Facility.

25.     All Documents Concerning any capital raise, loans, or other financing in connection with any capital used to acquire/develop the Facility, Including but not limited to any Documents or Communications Concerning information provided to banks, lenders, or other third parties, or Including any capital contributions made to ERC or repaid by ERC.

26.     All Documents Concerning the construction and operation of the Facility, Including the operating budget, the "development and early management of the Eddystone project" as identified in Plaintiff's Initial Disclosures, and any Communications with contractors, and/or sub-contractors Concerning designing and constructing the Facility.

27.     All Documents Concerning the "management of Eddystone's business, and transloading operations at the Eddystone facility," the "management of the Eddystone project," and/or the "transloading operations at the Eddystone facility" as identified in Plaintiff's Initial Disclosures.

28.     All Documents or Communications between or among ERC, Enbridge, and/or Canopy Prospecting Concerning the Facility, any Bridger Group entity, JTS, Jamex Marketing, Ballengee, the Arbitration, or the Settlement Agreement, including Communications between ERC and its counsel conveying or reporting on non-privileged Communications with JTS, Jamex Marketing, Ballengee concerning the Arbitration or Settlement.

29.     With respect to all ERC Employees:

    a.  all employment agreements and other Documents Concerning the terms of employment, identity of employer, status of employment, and source of such Person's compensation; and

    b.  Documents sufficient to show all letterhead, email addresses, or signature blocks used by each such Person at any time in the Relevant Period.

30.     All Documents Concerning any reprimand, termination, demotion, criticism, negative review, probation, or suspension of or given to, or other adverse employment action taken against, any ERC Employee or Enbridge employee related in any way to the RSA or the decision to enter into the RSA, the creditworthiness of BTS, JTS or any member of the Bridger Group, the creditworthiness of Jamex or its Affiliates, the granting of any credit exception in connection with the RSA, or BTS or JTS's refusal or alleged inability to satisfy its alleged obligations under the RSA.

31.     All board minutes or resolutions or presentations to the board of ERC or any entity in the Enbridge Group and/or Canopy Prospecting that in any way Concern ERC, the RSA, the Oil Storage Agreement, the Berthold Rail Agreement, any of the BL/FG Defendants, any member of the Bridger Group, Monroe, the Facility, the COSA, the TLA, the TLSA, Ballengee, JTS, Jamex, Jamex Marketing, the Settlement Agreement, the Arbitration, the Settlement, or this Action.

32.     All Documents Concerning any payments by any Enbridge entity or from any bank account not held in ERC's name made for, in consideration of, or on behalf of ERC or any other Enbridge subsidiary or Affiliate's obligations.

33.     All Documents Concerning any parent or Affiliate guarantees, letters of credit, collateral pledges, or other financial assurances issued as credit support to or for the benefit of ERC, any other Enbridge entity, or Canopy Prospecting.

34.     All accounting books and records (in their native form, Including electronic format, as generated and maintained in the normal course of business) of ERC or of any entity in the Enbridge Group or Canopy Prospecting that transferred cash or other assets to ERC, received

cash or assets from ERC, or paid expenses or liabilities for ERC, for 2013, 2014, 2015 and 2016,

Including but not limited to the following:

    a.   all books of original entries;

    b.   detailed General Ledger;

    c.   all detailed subsidiary ledgers;

    d.   all detailed journal entries or other detailed sources of entries that resulted in a posting to the General Ledger;

    e.   opening and closing balances;

    f.   debit and credit memos; and

    g.   metadata reflecting the software on which the accounting files were maintained in the normal course of business and the electronic format of the files.

     35.    All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings, and other financial statements or accounting reports, along with drafts, trial balances, and internal accounting workpapers, of ERC or of any entity in the Enbridge Group or Canopy Prospecting that transferred cash or other assets to ERC, received cash or assets from ERC, or paid expenses or liabilities for ERC, for 2013, 2014, 2015 and 2016.

     36.    All Documents of ERC, Canopy Prospecting, or any other entity in the Enbridge Group that were provided to or Communications with independent auditors in 2013, 2014, 2015, and 2016, as part of the financial statement audit process that Concern, in any way, ERC, the RSA, any of the BL/FG Defendants, any member of the Bridger Group, Monroe, the Facility, the COSA, the TLA, the TLSA, Ballengee, JTS, Jamex, Jamex Marketing, the Settlement

18

Agreement, Other Agreements, or any other issues Concerning the Arbitration or this Action, including any impairment..

37.     Documents sufficient to identify or reflect the ownership or control of all property, plant, and equipment used by ERC or used in the shipping of crude oil through the Facility at all times during the Relevant Period.

38.     All Documents Concerning the premises from which ERC conducted business, Including but not limited to all commercial lease agreements and any other entity in the Enbridge Group or Canopy Prospecting that also used such premises.

39.     All Documents Concerning the crude petroleum identified in the Settlement Agreement, including all Documents Concerning the crude petroleum's valuation, sale, lease, or other disposition.

40.     All Documents Concerning any claim, counter-claim, allegation, or defense in the Arbitration.

41.     All Documents Concerning any witness statements prepared in connection with the Arbitration or received from other parties to the Arbitration.

42.     All Documents Concerning representations to BTS, any member of the Bridger Group, or any other actual or prospective customer, related to the Facility, Including but not limited to:

     a.  the Facility would be a "state-of-the-art, high speed crude oil unloading facility" or any similar representation;

     b.  the Facility could receive, unload, and depart a full unit train of a certain number of barrels within a certain time frame, such as, for instance, 80,000 barrels within 12 hours;

    c.   the Facility could accept cargo barges with any certain depth, such as, for instance, barges with up to 34 feet of draft;

    d.   the Facility would include custody transfer meters;

    e.   the Facility would have a scale capable of weighing the laden rail cars;

    f.   the Facility would have a certain pumping capacity;

    g.   the rail-to-barge phase would be operational in 2013; and

    h.   the Facility would double its capacity with pipeline distribution in 2014.

43.    All Documents Concerning any actual or potential obstacles in the channel near the Facility, Including a "granite pinnacle," Including the existence, discovery, disclosure, or removal of such obstacle.

44.    All Documents Concerning timing of access to the Facility, Including any limitations or constraints on access and/or timing.

45.    All Documents Concerning any actual, proposed, or considered custody transfer meters, or methods, procedures, tools, or technology for measuring volume, input, and output of transloaded crude, and all Documents Concerning the accuracy of any of the foregoing.

46.    All Documents Concerning construction phases and/or the "operational date" of the Facility.

47.    All Documents Concerning pipeline diameters, any "elbows" or other structural or design aspects that impeded the flow of crude, and/or pumping capacity Concerning the Facility.

48.    All Documents Concerning fire safety at the Facility.

49.    All Documents Concerning any request to ERC to provide consent Concerning any financing Concerning the crude oil to be transloaded to the Facility.

20

50.     All Documents Concerning the Carlyle Group.

51.     All Documents Concerning a potential tripartite agreement Concerning ERC, the Facility, or Jamex Marketing in 2015.

52.     All Documents Concerning any Communications involving Julio Rios, Jeremy Gamboa, Ballengee, Dion Nicely, Alan Heitmann, Joseph Natale, Heike Wallace, Jon Kolniak, Kelly Wilkins, Troy Lee, Patrick Knapp, Otis Randle, Tye Graham, Dan Giannini, David Stark, Josh Taton, Wade Dollins, Michael Farmer, Callie Mendenhall, Les Patterson, Vispi Jilla, Linda Carabajal, and Taylor Phifer.

53.     All Documents Concerning any actual or considered efforts to hedge against or insure against a default by BTS or JTS (at any time), and/or to reduce the amount and/or ongoing nature of any Deficiency Volume Charges allegedly accrued through the end of the term of the RSA.

54.     All Documents Concerning any effort to collect damages for an alleged breach of the RSA from any source other than the specific defendants in this Action.

55.     All Documents Concerning any alleged expectation damages, compensatory damages, punitive damages, prejudgment interest, or damages relating to unjust enrichment.

56.     All Documents Concerning any Enbridge, ERC, or Canopy Prospecting guidance, handbook, policy, or instructions, formal or informal, Concerning best practices or corporate practices on negotiating contracts, entering contracts, evaluating credit-worthiness of counter-parties, "credit risk guidelines," deal diligence, or providing exceptions to credit policies.

57.     All Documents reflecting the views of ERC, Enbridge and/or Canopy at any time in 2012 and/or 2013 as to (a) the forecasted or expected future price of crude oil, (b) the forecasted or expected future spread between the prices for crude oil coming from different

locations, (c) the forecasted or expected future need for the services offered by the Facility, (d) the forecasted or expected future need for pipelines, trains, barges and other logistics involved in moving Crude from the wellhead to the refinery, and/or (e) the forecasted or expected ability of the Bridger Group or other potential customers of the Facility to obtain long term off-take or other supply agreements which would enable it or them to utilize the Facility and pay for its transloading services.

58.    All Documents Concerning any Communications between You, Enbridge and/or Canopy and JTS occurring after February 22, 2016 for alternative use of the Facility.

Dated:  September 6, 2017

/s/ David M. Zensky
David M. Zensky (*pro hac vice*)
Katherine P. Porter (*pro hac vice*)
Kelly A. Eno (*pro hac vice*)
AKIN GUMP STRAUSS HAUER &
FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002
dzensky@akingump.com
kporter@akingump.com
keno@akingump.com

Jeffery A. Dailey (I.D. No. 85993)
AKIN GUMP STRAUSS HAUER &
FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, PA 19103
T: 215-965-1200
F: 215-965-1210
jdailey@akingump.com

*Attorneys for Bridger Logistics, LLC
Ferrellgas Partners, L.P., and Ferrellgas L.P.*

EXHIBIT 19

| | |
|---|---|
| **From:** | Theodore, Jeffrey |
| **Sent:** | Tuesday, September 12, 2017 4:39 PM |
| **To:** | Porter, Katherine; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David |
| **Cc:** | Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com |
| **Subject:** | RE: initial discovery |

Katherine,

Thanks for your email. Please respond regarding the general ledgers. It has now been almost two weeks since we raised this issue and almost one week since our call of last Wednesday and our follow-up letter of last Thursday.

In addition, we again ask you to let us know whether Defendants consent to the release by The Independent BankersBank ("TIB") and Business First Bank (the "Banks") of documents relating to accounts that Bridger entities had there. This request has now been pending for a week and we have yet to receive a response. The entities at issue that Bridger Logistics and Ferrellgas currently control include but are not limited to Bridger Logistics, LLC, Bridger Rail Shipping LLC, Bridger Rail Services LLC, Bridger Marine LLC, Bridger Swan Ranch LLC, Bridger Real Property LLC, Bridger Terminals, LLC, Bridger Energy, LLC, Bridger Lake, LLC, Bridger Transportation, LLC, Bridger Leasing, LLC, Bridger Midstream, LLC, Waskom Energy Marketing & Transportation LLC, Southern Energy Transportation, LLC. The consents should be in the form of signed letters explaining that the signatories have the authority to consent on behalf of the foregoing entities, and that the subject financial records – including account statements, bank reconciliations, and wire transfer records – may be released to Eddystone and its counsel (subject to the protective order).

We do not agree with your suggestion that only records of BTS and Bridger Logistics are relevant. The evidence shows that Defendants caused BTS to make transfers to other Bridger entities, behavior that is highly relevant to the alter ego and fraudulent transfer allegations in this case. Eddystone is entitled to take discovery of those matters. In this vein, we continue to note the incomplete production of bank account records and tax materials in your initial production. Contrary to the assertion in your email below, you have not resolved the issues with your preliminary production.

Turning to third-party productions, while we don't agree with your historical characterizations, I believe we are in agreement as to present status as to your and our first and second bullet points in the emails below. Contrary to your third bullet point, we have already produced to you all documents received from third parties in this litigation. Please produce all documents that you have obtained, including from Jamex. We do not know exactly what Jamex has produced to you and therefore we request that you provide us with the entire Jamex production.

In addition, please explain how your request to Jamex for all documents produced in the arbitration, including all documents produced by third parties, comports with your forcefully asserted position earlier in this litigation that the arbitration confidentiality order prevents use in this litigation of arbitration documents – and particularly of documents produced by third parties to the arbitration. Please also let us know whether you continue to object to Eddystone's use in this litigation of documents produced by Ferrellgas in the arbitration.

As to Eddystone's production, an organization chart for Enbridge as it relates to Eddystone for all relevant time periods can be found at ERCEDPA00001844. We are continuing to consult with our client but do not believe that there are analogs for 2013 of the financial materials that we produced for later periods. We note that Eddystone did not begin transloading operations until 2014. We believe that we have produced all records for

1

2014 forward and do not believe that there are any gaps. In any event, we do not believe that any of the records identified in your email are relevant to the claims and defenses in this case.

Best,

Jeff

**From:** Porter, Katherine [mailto:kporter@akingump.com]
**Sent:** Monday, September 11, 2017 7:27 PM
**To:** Theodore, Jeffrey; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Porter, Katherine
**Subject:** RE: initial discovery

Jeff,

Thanks for your email. Please see our responses regarding our agreement.

- The BL/FG Defendants agree that neither side shall mass designate documents for production as "Attorneys Eyes Only";
- The BL/FG Defendants understand that our prior agreement to include each other in meet and confers regarding subpoenas has been suspended;
- The BL/FG Defendants agree that both sides shall promptly produce all documents received from third parties in response to subpoenas served or threatened to be served (Steptoe has and/or will make a production of such documents this week);
- Akin will confer with its clients as to whether they consent to production by Independent BankersBank and Business First Bank of records for Bridger and Ferrellgas entities as requested in Eddystone's subpoena to those banks, and will get back to Steptoe about this as early as practicable. Preliminarily, while we may be willing to consent to production of BTS and Bridger Logistics records for certain time frames, we see no reason for the scope of banking records your subpoenas purport to seek;
- Steptoe will study the last full paragraph of Katherine's email below, and Akin and Steptoe will reconvene to discuss as early as practicable. Please plan to respond on these items by COB Wednesday.

With respect to your question regarding K-1s issued by Bridger Logistics and Bridger Transfer Services between January 1, 2012 and March 1, 2016, we are investigating this issue with our clients. As you noted, we have produced the forms issued in 2014 which our clients were able to locate. Since receiving your email, our clients investigated further and believe they have located records from one additional year. We will process and produce those as quickly as possible. We have not, however, been able to locate the forms for other years. We believe that certain of the forms are more readily accessible from Jamex.

We will respond to your letter regarding general ledgers under separate cover. Accordingly, we understand that this resolves all of your questions in your emails below about the BL/FG Defendants' preliminary exchange production.

Finally, with respect to productions, we received the production from Nick Petts containing KPMG-BRIDGER 00001–05107 and TIB00001. Thank you for sending that. Can you please confirm that contains all of the productions which Eddystone has received to date for all served or threatened subpoenas in this litigation?

2

As you know, we received a production from Jamex in response to a subpoena issued in this litigation.  The vast majority of the documents are from the arbitration and are already in your possession.  Accordingly, in order to avoid duplication, please identify any bates ranges which you would like from Jamex's production cover letter, reattached here for your convenience.

Regards,
Katherine


**Katherine Porter**
Direct: +1 212.872.7467 | Internal: 37467

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Thursday, September 07, 2017 4:38 PM
**To:** Porter, Katherine; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

David and Katherine,

Thanks very much for the bates numbers below. To memorialize the remainder of our conversation, below are the agreements we reached:

- Neither side shall mass designate documents for production as "Attorneys Eyes Only";
- Neither side shall be required to invite the other to participate in its communications with third parties regarding subpoenas;
- However, both sides shall produce all documents received from third parties in response to subpoenas served or threatened to be served (Steptoe will make a production of such documents later this week);
- Akin will confer with its client as to whether they consent to production by Independent BankersBank and Business First Bank of records for Bridger and Ferrellgas entities as requested in Eddystone's subpoena to those banks, and will get back to Steptoe about this as well by early next week;
- Steptoe will study the last full paragraph of Katherine's email below, and Akin and Steptoe will reconvene to discuss after Steptoe has an opportunity to study the list in greater detail.

Please let us know if any of the statements above is inaccurate.  Also, while we have received Bridger's K-1 tax information for 2013, we were unable to locate that information for the other years covered by our document requests.  Please confirm whether that information was produced or is not currently in your possession.

Thanks,

Jeff



**From:** Porter, Katherine [mailto:kporter@akingump.com]
**Sent:** Wednesday, September 06, 2017 4:17 PM
**To:** Theodore, Jeffrey; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com; Porter, Katherine
**Subject:** RE: initial discovery

3

Jeff,

As discussed, the LLC agreements are Bates stamped BLFG_EDPA0044073 and BLFG_EDPA0044078.

Thanks,

**Katherine Porter**
Direct: +1 212.872.7467 | Internal: 37467

**From:** Porter, Katherine
**Sent:** Wednesday, September 06, 2017 2:55 PM
**To:** 'Theodore, Jeffrey'; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Jeff,

At the outset, we find it odd to require written responses in advance of a call.  Nevertheless, we respond in an effort to move these issues along.

The BL/FG Defendants went through great effort to produce in the preliminary exchange all the non-privileged responsive documents that were reasonably technologically accessible.  The BL/FG Defendants also went through great efforts and expense to extract any potentially responsive documents from archived computer systems.  As you are well aware, a majority of the documents you sought were created and maintained by corporate entities under Jamex's (f/k/a Bridger) ownership.  Many of those documents simply are not readily accessible to the BL/FG Defendants.  We are currently in the process of exploring the possibility of engaging a vendor to try to obtain additional documents from the prior, archived computer systems that are available to the BL/FG Defendants.  If extensive and/or costly efforts are required to obtain such archived data, Eddystone must be prepared to shoulder such discovery costs, and the added time will impact the previously agreed schedule.  Of course, any additional responsive documents that are located will be produced if and when we locate them.

With respect to the requests that you specifically identify, the BL/FG Defendants produced more than 100 accounting records and bank records, including documents detailing revenues, expenses, EBITDA, and assets.  The BL/FG Defendants also, in fact, did produce tax forms covered by category 1 and LLC documents covered by category 2.  As noted, the BL/FG Defendants will produce any additional documents if and when we locate such document through our search and production process.  To be clear, all responsive documents that we have located were produced in connection with the preliminary exchange.

Separately, I will note that we have identified several apparent gaps in ERC's preliminary exchange production. For instance, ERC agreed to produce an organization chart for Enbridge as of 2013 and the present (Request 5) but we have not located an organization chart for Enbridge for any period. Similarly, ERC agreed to produce "[a]ll audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings, and other financial statements or accounting reports, along with drafts, trial balances, and internal accounting work papers for ERC for 2013, 2014, 2015 and 2016."  (Request 6).  But we have not seen anything from 2013, nothing unaudited for 2014, and nothing audited for 2015 forward. Moreover, there do not appear to be "Available Cash Calculation" documents for any time prior to 2015.  There appear to be other gaps as well in these and other Requests.

This email does not address all the open issues or disputes between the parties relating to discovery, or otherwise, and the BL/FG Defendants reserve all rights.

4

We look forward to discussing with you.  Please use the following dial in: **Dial-In Number:** 877-332-1603; **Access Code:** 516 8036

Thanks,
Katherine

**Katherine Porter**
Direct: +1 212.872.7467 | Internal: 37467

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Tuesday, September 05, 2017 12:31 PM
**To:** Porter, Katherine; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Katherine,

We are available to speak at 3 PM tomorrow. Please let us know in advance of the call your position on whether Defendants will produce the general ledgers, account records, and other missing financial and accounting documents so that we can have an informed discussion.

In addition, your initial production did not contain the W-2, 1099, and other tax documents covered by category 1 of the initial discovery agreement as well as the material covered by category 2. Please confirm that you will promptly produce those documents as well. In addition, please let us know whether Bridger Logistics and Ferrellgas object to the disclosure of their records and those of Bridger Logistics's subsidiaries (including but not limited to Bridger Rail Shipping) by IBB and Business First Bank as requested in our subpoenas.

In terms of David's email, as Fil indicated, prior to that email we had provided an updated production that should have resolved the issues raised. Please let us know if there are any problems with the updated production. We are of course happy to respond to any concrete objections that you may have to our initial production as soon as you specify what they are.

Jeff

**From:** Porter, Katherine [mailto:kporter@akingump.com]
**Sent:** Sunday, September 03, 2017 6:15 PM
**To:** Theodore, Jeffrey; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Jeff,

We are in receipt of your email and will respond next week.  Preliminarily, I will note that the BL/FG Defendants did produce a significant number of documents responsive to the requests you identified (and more than 45,000 pages total).  We are investigating the questions you raised and will respond more fully once we have done so.  I will note that we have identified several apparent gaps in your production, which I hope you will be willing to address in turn.  In addition, we are still waiting for a response to the remaining issues raised in David's email of August 30.  Are you available for a call on Wednesday at 3:00 ET?

This email does not address all the open issues or disputes between the parties relating to discovery, or otherwise, or raise all relevant facts or contentions and the BL/FG Defendants reserve all rights.

I hope you are having a pleasant holiday weekend.

Best,
Katherine


**Katherine Porter**
Direct: +1 212.872.7467 | Internal: 37467

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Friday, September 01, 2017 5:25 PM
**To:** Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** RE: initial discovery

Katherine,

We have not received a response to this email. Please let us know whether Defendants will produce the accounting and financial documents described below.

Thanks,

Jeff




**From:** Theodore, Jeffrey
**Sent:** Wednesday, August 30, 2017 5:08 PM
**To:** Jonathan Kelley; Eno, Kelly; Porter, Katherine; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; zz-Gardner, Carly; jnegovan@griesinglaw.com; dzensky@AkinGump.com
**Cc:** Sloniewsky, Andrew; Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** initial discovery

David and Katherine,

As you know, Defendants agreed to produce the following documents as part of initial discovery in this case:

- The accounting records of Bridger Logistics and Bridger Transfer Services for the period January 1, 2012 to March 1, 2016, including balance sheets, general ledgers and adjusting journals, cash flow statements, statements of changes in equity, statements of income and retained earnings, and fixed asset schedules.

- The account records for the bank accounts and other asset accounts maintained for Bridger Logistics, Bridger Rail Shipping, and Bridger Transfer Services between January 1, 2012 and March 1, 2016.

We are in the process of reviewing your initial production, and it appears that many of these key financial records – most importantly, the general ledgers of Bridger Logistics and Bridger Transfer Services – were not included. As you know, these documents are critical to evaluating and understanding the financial transactions and relationships within the Bridger Group that are at the heart of Eddystone's fraudulent transfer, alter ego, and breach of fiduciary duty claims.

Please produce all of the material in these agreed initial production categories – including the general ledgers and associated accounting records – immediately or let us know where in the initial production the material may be found. We continue to review Defendants' initial production and reserve the right to follow up on any other issues with Defendants' compliance with the Parties' initial discovery agreement.

Thanks,

Jeff

Jeffrey M. Theodore
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, DC 20036
Tel. 202 429 8139
Fax. 202 429 3902

The information contained in this message may be privileged, confidential, or otherwise protected from disclosure.  If you are not an intended recipient to whom this message is addressed, please be aware that any dissemination, distribution, copying or other use of its contents is not permitted.  If you think that you have received this message in error, please contact the sender at jtheodore@steptoe.com.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT 20

**From:** Sloniewsky, Andrew
**Sent:** Friday, September 15, 2017 4:11 PM
**To:** Theodore, Jeffrey; Porter, Katherine; Jonathan Kelley; Eno, Kelly; Jeremy Fielding; Kent Krabill; Dailey, Jeffery; jnegovan@griesinglaw.com; Zensky, David
**Cc:** Agusti, Fil; Work, Tim; Petts, Nick; grugant@ballardspahr.com; hockeimerh@ballardspahr.com
**Subject:** Eddystone - Discovery of Bank Records

Counsel:

As you are aware, Eddystone recently sought to obtain documents from third-party Business First Bank ("BFB") through issuance to BFB of a subpoena dated August 30, 2017.   The requested documents included banking records of Defendants and their affiliates.   A copy of that subpoena was previously sent to you via email.

In recent discussions, counsel for BFB has asked us to follow the procedures of La. R.S. 6:333.   That statute sets forth procedures for banks to follow in responding to requests for customer records.  Among other things, the statute provides that, in responding to records requests, banks like BFB may produce a customer's documents if (1) the customer (or its attorney on its behalf) consents to production, or (2) the customer or the customer's attorney is formally served with a copy of the requests at least 15 business days before the due date for production of the documents.   La. R.S. 6:333(C)-(E).

Eddystone does not agree that La. R.S. 6:333 limits BFB's obligations under the August 30 subpoena.  Nonetheless, Eddystone has asked that counsel for Defendants obtain consent from their clients and the other Bridger-related entities to produce their documents.  Defendants' counsel has either stated that their clients would not provide the requested consent, or has failed to respond.

Eddystone is now preparing to formally serve on Defendants and entities controlled by Defendants a copy of the August 30 subpoena.  Eddystone will extend the due date for production to October 27.  Specifically, Eddystone expects to serve the subpoena and a cover letter on the following parties:

Defendants:

Bridger Logistics, LLC
Julio Rios, II
Jeremy Gamboa
Ferrellgas Partners, L.P.
Ferrellgas, L.P.

Affiliated Entities:

Bridger Administrative Services II, LLC
Bridger Energy, LLC
Bridger Environmental, LLC
Bridger Lake, LLC
Bridger Leasing, LLC
Bridger Marine, LLC
Bridger Rail Shipping, LLC
Bridger Real Property, LLC
Bridger Storage, LLC
Bridger Swan Ranch, LLC

Bridger Terminals, LLC
Bridger Transportation, LLC
Bridger Energy, LLC
J.J. Addison Partners, LLC
J.J. Karnack Partners, LLC
J.J. Liberty, LLC
Waskom Energy and Marketing Transporation, LLC
South C&C Trucking, LLC

I am writing to determine whether you wish to accept service of the subpoena and cover letter on behalf of any of the foregoing parties.  We would appreciate a response by close of business on Tuesday, September 19.  In the event that you do not wish to accept service, or we do not hear back from you by that time, we will take steps to serve the above-referenced parties through their registered agents or via personal service.

If you have any questions or comments regarding the foregoing, please let me know.

Regards,

Andrew


**Andrew J. Sloniewsky**
Of Counsel
ASloniewsky@steptoe.com

# Steptoe

+1 202 429 6759 direct      Steptoe & Johnson LLP
+1 202 261 0621 fax         1330 Connecticut Avenue, NW
                            Washington, DC 20036
                            www.steptoe.com


This message and any attached documents contain information from the law firm Steptoe & Johnson LLP that may be confidential and/or privileged. If you are not the intended recipient, please do not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

# EXHIBIT 21

Nicholas Petts
202 429 6488
npetts@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

May 12, 2017

The Independent Bankersbank
11701 Luna Road
Farmers Branch, TX 75234

Re:    **Subpoena in *Eddystone v. Bridger Logistics et al.*, 2:17-cv-00495, (E.D. Pa. 2017)**

Dear Sir or Madam:

I represent plaintiff Eddystone Rail Company, LLC in the above-referenced case now pending in the U.S. District Court for the Eastern District of Pennsylvania. Enclosed please find a subpoena for documents issued in connection with this case.

The subpoena concerns accounts controlled by Bridger Logistics, LLC, Bridger Transfer Services, LLC, their owners, and affiliates. The subpoena covers all documents and communications concerning any such accounts.

At your convenience, please contact me to discuss further the manner in which the documents should be produced.

Sincerely yours,

Nicholas Petts, Esq.

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| Eddystone Rail Company, LLC | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:17-cv-00495-RK |
| Bridger Logistics, LLC, Julio Rios, Jeremy Gamboa, Ferrellgas Partners, L.P., and Ferrellgas, L.P. | ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          The Independent Bankersbank
          11701 Luna Road, Farmers Branch, TX 75234
          *(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Henry Oddo Austin & Fletcher, P.C. 1700 Pacific Avenue, Suite 2700 Dallas, Texas 75201 | Date and Time: 05/30/2017 4:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/12/2017

CLERK OF COURT

                    OR   *Nicholas Petts*

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ Eddystone Rail Company, LLC _____, who issues or requests this subpoena, are:

Nicholas Petts, Steptoe & Johnson LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036, npetts@steptoe.com, (202) 429-6488

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:17-cv-00495-RK

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

□  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

□  I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

### Schedule A

This Subpoena is issued in connection with the civil action *Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al.*, No. 2:17-cv-00495-RK (E.D. Pa. filed Feb. 2, 2017). The Subpoena commands you (as further defined below) to produce and permit inspection and copying of the documents set forth below.

### DEFINITIONS

1.    "ERC" means Plaintiff Eddystone Rail Company, LLC.

2.    "Ferrellgas" means Defendants Ferrellgas, L.P., Ferrellgas Partners, L.P., and any of their employees, officers, representatives, agents, attorneys, members, subsidiaries, affiliates, successors, predecessors, and parents.

3.    "Bridger Party" means Julio Rios, James Ballengee, Jeremy Gamboa, Bridger LLC, Bridger Logistics, LLC, Bridger Marketing, LLC, Bridger Transportation, LLC, Bridger Leasing, LLC, Bridger Transfer Services, LLC, Bridger Lake, LLC, Bridger Rail Shipping, LLC, Bridger Marine, LLC, and Bridger Midstream, LLC, and any of their employees, officers, representatives, agents, attorneys, members, subsidiaries, affiliates, successors, predecessors, and parents.

4.    "Communication" means any transmission of information including facts, ideas, inquiries, solicitations, requests, complaints, proposals, or otherwise by any means and in any form, whether orally, electronically, telephonically, in writing, in person, or otherwise.

5.    "Concerning" or "relating to" mean embodying, discussing, referring to, relating to, pertaining to, describing, evidencing, comprising, containing, constituting, concerning supporting, reflecting, connected with, involving, identifying, or regarding.

6.     "Document" means any information or means of recording information –
including without limitation writings, drawings, graphs, charts, photographs, sound recordings,
images, files, and other data or data compilations – stored physically, electronically, or in any
other medium from which information can be obtained either directly or, if necessary, after
translation by the responding party into a reasonably usable form.  "Document" expressly
includes but is not limited to bank records, including documents reflecting: account balance and
holdings, deposits, withdrawals, drawdowns, the passing of checks or money orders, investment
in or holding of any type of financial asset, the transfer of financial assets, intra-bank transfers
(including transfers among different accounts held by the same person, or among different
subaccounts of a single account), transfers or wires to or from accounts at other financial
institutions (including the identity of such other financial institutions; the name of the transferee
or transferor account(s) and, where applicable, subaccount(s); and the identity of the person that
holds, controls, beneficially owns, or has power of attorney as to, the transferee or transferor
account(s) or subaccount(s)),  transfer or wire instructions (including when such instructions are
not carried out), flow of funds, account or subaccount opening and closing, control over and
beneficial status of accounts and subaccounts (such as records reflecting the account holder,
power-of-attorney holder, beneficial owner, or any other person exercising control over or
benefiting from the account or subaccount), and know-your-customer (KYC) information.

7.     "Financial institution" means any corporation, company, partnership, sole
proprietorship, or other business or legally recognized entity, a principal business line of which
consists of conducting or facilitating financial transactions, managing financial assets or
investments, lending money, or holding financial assets, and includes without limitation any

2

bank, thrift, savings and loan association, credit union, brokerage, insurance company, investment company, investment adviser, fund, or money-transfer service.

8. "Person" means any natural person, corporation, company, partnership, sole proprietorship, trust, or other business or legally-recognized entity.

9. "You" or "your" means TIB-The Independent BankersBank, its present and former employees, officers, representatives, agents, attorneys, members, subsidiaries, affiliates, and parents.

10. "Litigation" or "action" or "proceeding" means the above-captioned civil action.

## INSTRUCTIONS

1. Deem the singular to include the plural and the plural to include the singular.

2. Construe the words "all," "any," "each," and "every" to encompass "all," "any," "each," and/or "every" thing as necessary to make the document requests inclusive not exclusive and to bring within their scope all information that would otherwise be construed to be outside their scope.

3. Construe the words "and" and "or" conjunctively or disjunctively as necessary to make the document requests inclusive not exclusive.

4. Furnish all responsive information and documents either in your possession, custody, or control or available to you, your present and former representatives, employees, agents, attorneys, members, members, subsidiaries, parents, or affiliates.

5. Unless otherwise specified, these requests seek documents generated in the period between July 1, 2011 and the present.

6. Furnish all responsive documents with unique, sequential identifying numbers.

7.    State in detail the basis of any objection to any request, and respond fully to any request to the extent it is unobjected to in whole or in part.

8.    If any document covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, please furnish a log providing the following information with respect to each such withheld document: date, author, recipients, general subject matter sufficient to make a prima facie determination whether the asserted privilege has been properly invoked, and the legal basis upon which the document has been withheld.

9.    Produce all documents in their original form.

10.    When producing documents or information stored electronically, provide them in their native format and context with all contextual and metadata.

11.    Please organize electronic documents in the same manner that you store them (e.g., if maintained by a custodian, such as e-mail residing on an email server, please organize documents for production by custodian; if maintained as a subfolder of "My Documents" on a custodian's hard drive, please organize documents for production by custodian with path information preserved, etc.).

12.    To the extent responsive documents reside on databases and such other systems and files, you are requested to produce the relevant database in useable form and/or permit access for inspection, review and extraction of responsive information.

13.    Documents stored as electronic data on magnetic, optical, or other storage media as "active" or "backup" files shall be produced in their native formats with any associated metadata.

14. These requests require production of paper documents in the same form and same order as they are kept in the usual course of business, or organized and labeled to correspond with the requests set forth below. If you choose the former method, the documents are to be produced in the boxes, file folders, binders and other containers in which the documents are found. The titles, labels or other descriptions on the boxes, file folders, binders or other containers are to be left intact.

15. At your election, documents maintained or stored in paper, hard-copy form can be produced as searchable .pdf (i.e., portable document format files with embedded text) and in an appropriate and usable manner (e.g., by copying such data onto an external hard drive).

16. If any responsive document is not available to you or in your possession, custody, or control, identify each such document and state the disposition of such document, including the date of such disposition, the location of the document, and the person or persons presently in possession of the document.

17. Supplement and update your response: at any time you discover that your initial response was not entirely correct when made or is no longer entirely correct; at any time a failure to supplement would constitute a knowing or negligent concealment; or at any time you locate additional information or documents that are responsive to these requests.

## DOCUMENT REQUESTS

1. All documents evidencing, referring to, concerning, or relating to any account or subaccount opened, maintained, accessed, used, controlled, held, or beneficially owned by any Bridger Party, or as to which any Bridger Party held power of attorney, during any time between July 1, 2011 and the present.

2.      All communications between you and any Bridger Party between July 1, 2011 and the present, evidencing, referring to, concerning, or relating to any account or subaccount described in Document Request No. 1 above.

3.      All documents evidencing, referring to, concerning or relating to the transfer of, or plans to transfer, financial assets from any Bridger Party (a) to another Bridger Party, (b) to Ferrellgas, or (c) to ERC, during any time between July 1, 2011 and the present.

4.      All documents comprising, evidencing, referring to, concerning, or relating to any communications between you or your outside counsel, on the one hand, and any Bridger Party or their counsel, where such communications arose in connection with, concern, relate to, involve, or refer to ERC or this litigation.

5.      All documents that you or your outside counsel have provided to any Bridger Party or any of their counsel in connection with, concerning, or relating to the litigation or any other dispute involving ERC.

EXHIBIT 22

Nicholas Petts
202 429 6488
npetts@steptoe.com



**Steptoe**
STEPTOE & JOHNSON LLP

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

August 30, 2017

Business First Bank
500 Laurel Street
Baton Rouge, LA 70801

Re:     **Subpoena in *Eddystone v. Bridger Logistics et al.*, 2:17-cv-00495, (E.D. Pa. 2017)**

Dear Sir or Madam:

I represent plaintiff Eddystone Rail Company, LLC in the above-referenced case now pending in the U.S. District Court for the Eastern District of Pennsylvania. Enclosed please find a subpoena for documents issued in connection with this case.

The subpoena concerns accounts controlled by Bridger Logistics, LLC, Bridger Transfer Services, LLC, their owners, and affiliates. The subpoena covers all documents and communications concerning any such accounts.

At your convenience, please contact me to discuss further the manner in which the documents should be produced.

Sincerely,

Nicholas Petts, Esq.

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| Eddystone Rail Company, LLC | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  2:17-cv-00495-RK |
| Bridger Logistics, LLC, Julio Rios, Jeremy Gamboa, Ferrellgas Partners, L.P., and Ferrellgas, L.P. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:             Business First Bank
500 Laurel Street, Baton Rouge, LA 70801

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: Schutte, Terhoeve, Richardson et al. , L.L.P.<br>C/o David Ziober<br>501 Louisiana Ave, Baton Rouge, LA 70802 | Date and Time:          ,<br><br>09/19/2017 4:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    08/30/2017

| CLERK OF COURT | | |
|---|---|---|
| | OR | *Nicholas Petts* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's Signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Eddystone Rail Company, LLC _____ , who issues or requests this subpoena, are:

Nicholas Petts, Steptoe & Johnson LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036, npetts@steptoe.com, (202) 429-6488

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:17-cv-00495-RK

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

□ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or _____

□ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                    *Server's signature*

                                             _____
                                                    *Printed name and title*

                                             _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Schedule A

This Subpoena is issued in connection with the civil action *Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al.*, No. 2:17-cv-00495-RK (E.D. Pa. filed Feb. 2, 2017). The Subpoena commands you (as further defined below) to produce and permit inspection and copying of the documents set forth below.

### DEFINITIONS

1.    "ERC" means Plaintiff Eddystone Rail Company, LLC.

2.    "Ferrellgas" means Defendants Ferrellgas, L.P., Ferrellgas Partners, L.P., and any of their employees, officers, representatives, agents, attorneys, members, subsidiaries, affiliates, successors, predecessors, and parents.

3.    "Bridger Party" means Julio Rios, James Ballengee, Jeremy Gamboa, Bridger LLC, Bridger Logistics, LLC, Bridger Marketing, LLC, Bridger Transportation, LLC, Bridger Leasing, LLC, Bridger Transfer Services, LLC, Bridger Lake, LLC, Bridger Rail Shipping, LLC, Bridger Marine, LLC, and Bridger Midstream, LLC, and any of their employees, officers, representatives, agents, attorneys, members, subsidiaries, affiliates, successors, predecessors, and parents.

4.    "Communication" means any transmission of information including facts, ideas, inquiries, solicitations, requests, complaints, proposals, or otherwise by any means and in any form, whether orally, electronically, telephonically, in writing, in person, or otherwise.

5.    "Concerning" or "relating to" mean embodying, discussing, referring to, relating to, pertaining to, describing, evidencing, comprising, containing, constituting, concerning supporting, reflecting, connected with, involving, identifying, or regarding.

6.      "Document" means any information or means of recording information –

including without limitation writings, drawings, graphs, charts, photographs, sound recordings,

images, files, and other data or data compilations – stored physically, electronically, or in any

other medium from which information can be obtained either directly or, if necessary, after

translation by the responding party into a reasonably usable form.  "Document" expressly

includes but is not limited to bank records, including documents reflecting: account balance and

holdings, deposits, withdrawals, drawdowns, the passing of checks or money orders, investment

in or holding of any type of financial asset, the transfer of financial assets, intra-bank transfers

(including transfers among different accounts held by the same person, or among different

subaccounts of a single account), transfers or wires to or from accounts at other financial

institutions (including the identity of such other financial institutions; the name of the transferee

or transferor account(s) and, where applicable, subaccount(s); and the identity of the person that

holds, controls, beneficially owns, or has power of attorney as to, the transferee or transferor

account(s) or subaccount(s)),  transfer or wire instructions (including when such instructions are

not carried out), flow of funds, account or subaccount opening and closing, control over and

beneficial status of accounts and subaccounts (such as records reflecting the account holder,

power-of-attorney holder, beneficial owner, or any other person exercising control over or

benefiting from the account or subaccount), and know-your-customer (KYC) information.

7.      "Financial institution" means any corporation, company, partnership, sole

proprietorship, or other business or legally recognized entity, a principal business line of which

consists of conducting or facilitating financial transactions, managing financial assets or

investments, lending money, or holding financial assets, and includes without limitation any

bank, thrift, savings and loan association, credit union, brokerage, insurance company, investment company, investment adviser, fund, or money-transfer service.

8.      "Person" means any natural person, corporation, company, partnership, sole proprietorship, trust, or other business or legally-recognized entity.

9.      "You" or "your" means Business First Bank, its present and former employees, officers, representatives, agents, attorneys, members, subsidiaries, affiliates, and parents.

10.     "Litigation" or "action" or "proceeding" means the above-captioned civil action.

## INSTRUCTIONS

1.      Deem the singular to include the plural and the plural to include the singular.

2.      Construe the words "all," "any," "each," and "every" to encompass "all," "any," "each," and/or "every" thing as necessary to make the document requests inclusive not exclusive and to bring within their scope all information that would otherwise be construed to be outside their scope.

3.      Construe the words "and" and "or" conjunctively or disjunctively as necessary to make the document requests inclusive not exclusive.

4.      Furnish all responsive information and documents either in your possession, custody, or control or available to you, your present and former representatives, employees, agents, attorneys, members, members, subsidiaries, parents, or affiliates.

5.      Unless otherwise specified, these requests seek documents generated in the period between July 1, 2011 and the present.

6.      Furnish all responsive documents with unique, sequential identifying numbers.

7.      State in detail the basis of any objection to any request, and respond fully to any request to the extent it is unobjected to in whole or in part.

3

8.      If any document covered by these requests is withheld by reason of a claim of attorney-client privilege, attorney work product protection, or any other privilege or protection, please furnish a log providing the following information with respect to each such withheld document: date, author, recipients, general subject matter sufficient to make a prima facie determination whether the asserted privilege has been properly invoked, and the legal basis upon which the document has been withheld.

9.      Produce all documents in their original form.

10.     When producing documents or information stored electronically, provide them in their native format and context with all contextual and metadata.

11.     Please organize electronic documents in the same manner that you store them (e.g., if maintained by a custodian, such as e-mail residing on an email server, please organize documents for production by custodian; if maintained as a subfolder of "My Documents" on a custodian's hard drive, please organize documents for production by custodian with path information preserved, etc.).

12.     To the extent responsive documents reside on databases and such other systems and files, you are requested to produce the relevant database in useable form and/or permit access for inspection, review and extraction of responsive information.

13.     Documents stored as electronic data on magnetic, optical, or other storage media as "active" or "backup" files shall be produced in their native formats with any associated metadata.

14.     These requests require production of paper documents in the same form and same order as they are kept in the usual course of business, or organized and labeled to correspond with the requests set forth below.  If you choose the former method, the documents are to be

4

produced in the boxes, file folders, binders and other containers in which the documents are found. The titles, labels or other descriptions on the boxes, file folders, binders or other containers are to be left intact.

15.    At your election, documents maintained or stored in paper, hard-copy form can be produced as searchable .pdf (i.e., portable document format files with embedded text) and in an appropriate and usable manner (e.g., by copying such data onto an external hard drive).

16.    If any responsive document is not available to you or in your possession, custody, or control, identify each such document and state the disposition of such document, including the date of such disposition, the location of the document, and the person or persons presently in possession of the document.

17.    Supplement and update your response: at any time you discover that your initial response was not entirely correct when made or is no longer entirely correct; at any time a failure to supplement would constitute a knowing or negligent concealment; or at any time you locate additional information or documents that are responsive to these requests.

## DOCUMENT REQUESTS

1.    All documents evidencing, referring to, concerning, or relating to any account or subaccount opened, maintained, accessed, used, controlled, held, or beneficially owned by any Bridger Party, or as to which any Bridger Party held power of attorney, during any time between July 1, 2011 and the present.

2.    All communications between you and any Bridger Party between July 1, 2011 and the present, evidencing, referring to, concerning, or relating to any account or subaccount described in Document Request No. 1 above.

3.      All documents evidencing, referring to, concerning or relating to the transfer of, or plans to transfer, financial assets from any Bridger Party (a) to another Bridger Party, (b) to Ferrellgas, or (c) to ERC, during any time between July 1, 2011 and the present.

4.      All documents comprising, evidencing, referring to, concerning, or relating to any communications between you or your outside counsel, on the one hand, and any Bridger Party or their counsel, where such communications arose in connection with, concern, relate to, involve, or refer to ERC or this litigation.

5.      All documents that you or your outside counsel have provided to any Bridger Party or any of their counsel in connection with, concerning, or relating to the litigation or any other dispute involving ERC.