## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, )<br><br>Plaintiff, )<br><br>vs. )<br><br>BRIDGER LOGISTICS, LLC, JULIO RIOS, )<br>JEREMY GAMBOA, FERRELLGAS )<br>PARTNERS, L.P., and FERRELLGAS, L.P., )<br><br>Defendants. )<br><br> ) | Civil Action No. 2:17-cv-00495-RK |

## DEFENDANTS JULIO RIOS & JEREMY GAMBOA'S RESPONSE
## TO PLAINTIFF EDDYSTONE RAIL COMPANY LLC'S MOTION TO COMPEL

Defendants Julio Rios and Jeremy Gamboa ("Individual Defendants") file this response in opposition to Plaintiff Eddystone Rail Company, LLC's ("Plaintiff") Motion to Compel (ECF No. 74) (hereinafter, the "Motion"). The Individual Defendants have submitted redacted bank statements and amended their responses to Plaintiff's Requests for Production, which Plaintiff's counsel has accepted as meeting virtually all of the issues raised in the Motion. Plaintiff needs to withdraw the Motion, review the revised information, meet and confer with counsel for the Individual Defendants, and, only then, move to compel if material information remains lacking.

As it stands, Plaintiff's Motion is moot, completely unsupported by case law, and is both harassing and oppressive as to the Individual Defendants, who have not been involved in the business for almost two years. Thus, the Motion should be denied.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's instant Motion seeks to compel documents—some of which are dated as early as June of 2011—for an expansive scope (virtually every communication between fifteen or more entities) and timeframe that generally spans from January 2012 through the present date, for sixty

different categories.  *See* Plaintiff's First Set of Requests for Production (Exhibit A, attached hereto).

The Individual Defendants have agreed to produce relevant, responsive, non-privileged documents in their possession for almost every category in Plaintiff's Requests from January 1, 2012 through March 1, 2016.  *See* Amended Responses of Julio Rios and Jeremy Gamboa to Plaintiff's First Set of Requests For Production (Exhibit B, attached hereto).[1]

Since Plaintiff filed its Motion, the parties have had numerous and lengthy meet and confer sessions, the latest for an hour and half on October 11, 2017.  During that conference, the parties agreed to the amended language proposed by the Individual Defendants' counsel as to the vast majority of Plaintiff's requests for production, yet counsel for Plaintiff refused to grant even a minor extension to the Individual Defendants to allow the parties to potentially resolve the remaining issues. At the conclusion of that conference, Plaintiff's counsel sent an email confirming Individual Defendants' compliance with all but eighteen (18) of the requests.  *See* email from Andrew Sloniewsky, Esq. dated October 11, 2017 (Exhibit C, attached hereto).  Of those remaining 18 requests, many may not be in actual dispute, as the parties agreed to consider each other's positions and arguments from the call and to reconvene next week in order to further narrow the issues.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26 (b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . ."  Plaintiff bears the initial burden of proving the relevance of the material requested.  *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 25 (E.D. Pa. 2016).  As discussed below, Plaintiff has not met this burden when viewed through the lens of its own Complaint.

---

[1] The Individual Defendants have ***already*** produced redacted copies of their personal bank statements from Business First Bank for the time period of November 2015 to May 2016.

## III.    DISCUSSION

### A.    The Time Period From 2011 to Present is Overly-broad, Unduly Burdensome and Temporally Irrelevant

Plaintiff's First Set of Requests for Production ("RFP") define the relevant period as beginning in 2012 and extending to the present.  *See* Exhibit A, Instruction 5.   As a default, Plaintiff seeks over five years of information, based upon allegations of a fraudulent transfer that purportedly occurred on February 1, 2016, just eighteen months ago.  *See* Compl. ¶ 64, ECF No. 1.

While Individual Defendants are willing and have agreed to produce their personal bank statements and other information for the seven months shouldering the alleged event (from November of 2015 to May of 2016), Plaintiff's fishing expedition must be limited.

#### 1.   Plaintiff's Cases Do Not Support Stretching Discovery Back to 2011

As an initial matter, Plaintiff uses its assertions of alter ego as an excuse to obtain expansive discovery dating back to 2011, despite the fact that Plaintiff has not pled any alter ego theory against the Individual Defendants. *See* Compl. ¶ 61, ECF No. 1 ("In light of the alter ego relationship **between BTS and Bridger Logistics**, Eddystone is entitled to an order from this Court **piercing the corporate veil of BTS and holding Bridger Logistics liable** for the debts of BTS owed to Eddystone.") (emphasis added).  Plaintiff therefore cannot use alter ego as a vehicle to obtain **any** discovery of the Individual Defendants' financial records, let alone as a means to obtain 60 categories of documents spanning six years.

In its Motion, Plaintiff cites to various non-binding authorities for the proposition that the entity's entire life-cycle is fair game in alter-ego situations.  *See* Mot. 13 (citing *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1360 (2d Cir. 1991); *Painters Joint Comm. v. J.L. Wallco, Inc.*, No. 2:10-CV-1385 JCM PAL, 2011 WL 5854714, at *1 (D. Nev. Nov. 21, 2011); *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 219 (D. Del. 1985); *Schenley Indus., Inc. v. N.J. Wine & Spirit Wholesalers Ass'n*, 272 F. Supp. 872,

887–88 (D.N.J. 1967); *Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 41 (1995)).  Each of these cases are readily distinguishable.

Both *Kellam Energy* and *Schenley* involve discovery opinions made in the antitrust context. *Kellam Energy, Inc.*, 616 F. Supp. at 219 ("Where allegations of conspiracy to restrain trade and intent to monopolize are at issue, as in the instant case, a broad scope for discovery is appropriate . . ."); *Schenley Indus., Inc.*, 272 F. Supp. at 887 ("[A]ntitrust conspiracy is by nature secretive and hard to establish; plaintiffs are often forced to plead generalities at the outset until some discovery permits them to specify the relationship among their claims").  Here, there is no allegation of conspiracy or antitrust violations and no basis for the improper over-reaching of Plaintiff into Individual Defendant's historical personal financial situations.

Plaintiff similarly misapplies the holdings of two other cases.  The *Daval Steel* and *Painters Joint* courts addressed situations where entities—not individuals—were accused of being alter-egos of another entity.  *Daval Steel Prods.*, 951 F.2d at 1360 (noting that the alter ego "concern[ed entities] Ekco, Ekinciler, and Ektrans[, which] were attempting to divert assets to avoid execution"); *Painters Joint*, 2011 WL 5854714, at *1 (stating that entity "GQC is an alter ego of JLW, created to help JLW").

Plaintiff's final citation, the Pennsylvania Supreme Court's decision in *Lumax,* sets out the truism that "there is a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax*, 543 Pa. at 41.  And, Plaintiff's "claim" of alter ego is ***not*** a recognized cause of action.  *See Monarch v. Gorman,* No. CV 14-5980, 2015 WL 5584555, at *3 (E.D. Pa. Sept. 22, 2015) *(*"The alter ego doctrine represents a substantive principle of law separate from a cause of action."); *Boardakan Rest. LLC v. Gordon Grp. Holdings, LLC*, No. CIV.A. 11-5676, 2015 WL 4597970, at *1 (E.D. Pa. July 31, 2015) ("'Alter Ego,' though, is not a cause of action.  Rather, it is a theory of liability that permits a court to 'pierce the corporate veil' and impose liability on a corporation's owners or on a subservient corporation.").

Unlike in the cited cases, Plaintiff seeks to obtain burdensome, invasive, duplicative, discovery from the Individual Defendants, with no factual basis for such over-reaching.  Plaintiff's sole argument for such broad discovery is the allegation that the entities were undercapitalized and interrelated, which is based merely on the fact that in 2016 (five years after formation and a year after the entity had been sold) there was no money left to meet obligations owed to Plaintiff.  *See e.g.,* Compl., ¶ 49.  Further, Individual Defendants are no longer employed by or related to any of the entities.  *See* Ex. B. *passim*.

Plaintiff's discovery should thus be tied to the timeframe relevant to the claims alleged against the Individual Defendants.  This timeframe constitutes no more than a few months before the sale and a few months after the sale, which would show whether the Individual Defendants obtained any untoward benefit from the transaction to support the fraudulent transfer claim.  Discovery of every transaction for the entire six-year life-span of the entity is completely over-broad and should be denied.

### B.      Immaterial Historical Personal Financial Records

In its Complaint, Plaintiff, ostensibly, has one reason to rummage through the Individual Defendants' bank records: Plaintiff's reference to "$140 million" in value allegedly transferred to the "Defendants"—generically—as a result of a supposed abrogation of a supposed implied contract between Bridger Logistics and Bridger Transfer Services, and allegations that certain assets were transferred to Ferrellgas entities.  *See, e.g.,* Compl. ¶ 7 ("[S]uch an abrogation effectively transferred to [Ferrellgas Partners, L.P. and Ferrellgas, L.P.] and Bridger Logistics the almost $140 million present value of [Bridger Transfer Services, LLC's ("BTS")] right to receive payments from Bridger Logistics"); ¶ 9 (citing transfer of value "to Defendants – all of them BTS insiders – of almost $140 million"); ¶ 63 ("Defendants caused BTS to allow its implied contract with Bridger Logistics to be abrogated . . . thereby transferring to Defendants approximately $140 million of value."); ¶ 48 ("[T]he Defendants transferred all of BTS' real estate, equipment, receivables, and other assets to other FGP

5

entities and allowed BTS to effectively relinquish its right to payment of the RSA obligations from Bridger Logistics.").

While the Individual Defendants deny Plaintiff's allegations, Plaintiff's Complaint asserts the purported fraudulent transfer occurred in February of 2016. *See* Compl. ¶¶ 37, 48. Accordingly, the Individual Defendants have agreed to produce—and have already produced to Eddystone's counsel— their personal bank records from November 2015 (three months before the alleged asset transfer) through May 2016 (three months after the alleged transfer). Accordingly, any financial gain realized by the Individual Defendants as a result of the alleged asset transfer will be represented in those documents that *Eddystone already has in its possession*. Information outside this time period is outside the scope of discovery under Rule 26(b)(1), which does not authorize a party to "simply engage in a fishing expedition." *Essex Ins. Co. v. RMJC*, Inc., No. 01–4049, 2008 WL 2757862, at *2 (E.D. Pa. July 16, 2008).

Finally, through the course of discovery, Plaintiff can seek readily available financial documents from corporate entities such as Jamex Marketing or Ferrellgas Partners, L.P., which would show any improper payments to Individual Defendants. Plaintiff's six-year request for individual, personal, historical financial information is not proportionate to the needs of the litigation, as Plaintiff will receive "relative access to relevant information" by other means, and indeed already has received access to such information from the Individual Defendants. *See Fassett v. Sears Holdings Corp.*, No. 4:15-CV-00941, 2017 WL 386646, at *3 (M.D. Pa. Jan. 27, 2017) (citation omitted) ("This concept of relevance is tempered . . . by principles of proportionality.").

### C. The Individual Defendants Should Not be Compelled to Consent to the Production of Bank Records in Response to Eddystone's Subpoena to Business First Bank

On September 28, 2017, the Individual Defendants were served with a subpoena to Business First Bank ("Business First") in Louisiana, which broadly requested "[a]ll documents evidencing, referring to, concerning, or relating to any account or subaccount opened, maintained, accessed, used,

6

controlled, held, or beneficially owned *by any Bridger Party*, or as to which any Bridger Party held power of attorney, *during any time between July 1, 2011 and the present*" as well as any communications between the Bank and "any Bridger Party" during the same timeframe. (Exhibit D, attached hereto). Notably, the Individual Defendants are each included in the Subpoena's definition of "Bridger Party," and have both banked at Business First since before 2011.

While the Subpoena is wildly broad, the Individual Defendants acknowledged that certain of their personal financial documents at Business First might be relevant, given the claims asserted by Eddystone—though the Individual Defendants vigorously dispute the merits of those claims. Accordingly, the Individual Defendants agreed to produce—and, indeed, have already produced to Eddystone's counsel—their personal bank records from November 2015 (three months before the asset transfer that is the subject of Eddystone's Complaint) through May 2016 (three months after the alleged transfer), redacted for everything but transactions involving any of the other "Bridger Party" entities. Accordingly, any financial gain realized by the Individual Defendants as a result of the alleged asset transfer will be represented in the Individual Defendants' personal bank records that *Eddystone already has in its possession*. Information outside this time period is outside the scope of discovery under Rule 26(b)(1), which does not authorize a party to "simply engage in a fishing expedition." *Essex Ins. Co. v. RMJC*, Inc., No. 01–4049, 2008 WL 2757862, at *2 (E.D. Pa. July 16, 2008).

Nevertheless, the Motion asks this Court to compel the Individual Defendants to consent to Business First's production of their personal financial information for a vast and irrelevant timeframe, and despite the fact that the Individual Defendants have already produced personal financial information in the form of bank records from Business First over a relevant time period. Accordingly, the Motion should be denied.

## IV.    CONCLUSION

The Court should deny Plaintiff's Motion as moot, overly-broad, unduly burdensome, harassing and oppressive.  The Individual Defendants have agreed to produce four years of documents under 52 separate categories of requests.  The remaining 18 categories of requests seek seven years of documents relating to Individual Defendants' personal, historical financial information, which is irrelevant, invasive, duplicative and oppressive.

DATE:  October 12, 2017

Respectfully submitted,

/s/ Jeremy A. Fielding
Jeremy A. Fielding
*Admitted pro hac vice*
jfielding@lynnllp.com
Kent D. Krabill
*Admitted pro hac vice*
kkrabill@lynnllp.com
Jonathan D. Kelley
*Admitted pro hac vice*
jkelley@lynnllp.com
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Julie Negovan, Esquire (1651)
1717 Arch Street, Suite 3630
Philadelphia, PA  19103
jnegovan@griesinglaw.com
(215) 431-9295
*Attorneys for Defendants*
*Julio Rios and Jeremy Gamboa*

CERTIFICATE OF SERVICE

I, Julie Negovan, hereby certify that I filed and served the foregoing Defendants Julio Rios and Jeremy Gamboa's Response to Plaintiff Eddystone Rail Company LLC's Motion to Compel to all counsel of record via the Court's ECF system on this date.

Dated: October 12, 2017                    /s/      *Julie Negovan*
                                                            Julie Negovan

9