**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, | )   Civil Action No. 2:17-cv-00495-RK |
| JEREMY GAMBOA, FERRELLGAS | ) |
| PARTNERS, L.P., and FERRELLGAS, L.P., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

**DEFENDANTS JULIO RIOS' & JEREMY
GAMBOA'S MOTION TO QUASH PLAINTIFF EDDYSTONE
RAIL COMPANY LLC'S SUBPOENA TO BUSINESS FIRST BANK**

Defendants Julio Rios and Jeremy Gamboa (the "Individual Defendants") ask the Court to

quash Plaintiff Eddystone Rail Company, LLC's Subpoena to Business First Bank in Louisiana (the

"Bank") for two principal reasons: first, because it seeks to obtain historical, personal financial records

of the Individual Defendants from the Bank over an oppressively broad time period; and second,

because the Individual Defendants have already produced pertinent financial records from the Bank

for the relevant time period.  For these and other reasons, Plaintiff's overreach is unwarranted and the

Subpoena should be quashed.

## I.    INTRODUCTION AND BACKGROUND

On February 2, 2017, Plaintiff Eddystone Rail Company filed a lawsuit against the Individual

Defendants, Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P. (the "Lawsuit"),

alleging that the defendants were involved somehow effecting a fraudulent transfer that took place in

early 2016. Compl., Feb. 2, 2017, ECF No. 1.  The Lawsuit asserts three claims against the Individual

Defendants: 1) Intentional Fraudulent Transfer; 2) Constructive Fraudulent Transfer; and 3) Breach

1

of Fiduciary Duty.  Each of the aforementioned claims—which the Individual Defendants believe are meritless—relate only to the tort that Eddystone alleges took place in the January/February 2016 timeframe.

On or about August 30, 2017, Plaintiff issued a "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action" to Business First Bank (the "Subpoena"), and properly served the Subpoena on counsel for the Individual Defendants on September 28, 2017.  A copy of the Subpoena is attached hereto as Exhibit A.  The Bank has, for years, provided personal and commercial banking services to the Individual Defendants and their family members.  The Bank is not a party to the Lawsuit, nor is it mentioned in the Complaint.  *See* Compl.

The Subpoena requests documents and communication pertaining to (among other things) all accounts or subaccounts "opened, maintained, accessed, used, controlled, held, or beneficially owned by any Bridger Party," which is defined to include "Julio Rios, James Ballengee, Jeremy Gamboa, Bridger LLC, Bridger Logistics, LLC, Bridger Marketing, LLC, Bridger Transportation, LLC, Bridger Leasing, LLC, Bridger Transfer Services, LLC, Bridger Lake, LLC, Bridger Rail Shipping, LLC, Bridger Marine, LLC, and Bridger Midstream, LLC, and any of their employees, officers, representatives, agents, attorneys, members, subsidiaries, affiliates, successors, predecessors, and parents." Ex. A, Document Req. No. 1.  Further, the subpoena demands all related documents and communications from July 1, 2011 to the present.  *Id.* at Document Req. No. 2.  The wildly broad and invasive scope of the Subpoena stands in stark contrast to the fact that 1) the Lawsuit's underlying claims all relate to an alleged tort that took place in early 2016, and 2) Eddystone seeks to pierce only one corporate veil in the Lawsuit: between Bridger Transfer Services, LLC and Bridger Logistics, LLC.

Accordingly, the Subpoena's request for personal financial information from the Individual Defendants includes an enormous six-year timeframe that is largely irrelevant, and Eddystone cannot

2

use an alter ego claim to obtain discovery from the Individual Defendants over the Subpoena's excessively broad timeframe because Eddystone has not alleged such theory against the Individual Defendants in its pleadings.

While the scope of the Subpoena is wildly broad, the Individual Defendants acknowledge that certain of their personal financial documents at Business First—subject to a reasonably limited scope—might be relevant given the claims asserted by Eddystone. Accordingly, on October 4, 2017, the Individual Defendants voluntarily produced their personal Bank records from November 2015 (three months before the alleged fraudulent transfer) through May 2016 (three months after the alleged transfer), redacted for everything but transactions involving any of the other "Bridger Party" entities.

## II.   DISCUSSION

### A.   The Individual Defendants Have Standing to Challenge Plaintiff's Subpoena

The Individual Defendants have standing to challenge the Subpoena because they have a personal right and privilege in their own historical, personal financial information (and the information of their family members), and the information sought by the Subpoena covers precisely such information. While a party does not generally have standing to quash a subpoena served on a third party, an exception to this rule exists where a party "claims some personal right or privilege in respect to the subject matter" of the subpoena. *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp.2d 362, 382 (E.D. Pa. 2013) (citation omitted); *see also Thomas*, 202 F.R.D. at 434 (noting that a party has standing to quash a third-party subpoena if she has "an interest or a claim of privilege relating to" the information sought in the subpoena). Courts in the Eastern District of Pennsylvania recognize that private individuals have an interest in their bank accounts. *See, e.g., ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014) (recognizing that the defendant has standing to challenge subpoena served upon third-party bank for records of bank accounts held by defendant). Therefore, to the extent the Subpoena requires production of the Individual Defendants' bank records, the

3

Individual Defendants necessarily have a "personal right" and "interest" in those bank accounts and records. *See id.* The Individual Defendants have a direct and continuing interest in protecting against the disclosure of such personal financial information, and as such, have a reasonable expectation of privacy to their bank account records. Accordingly, Individual Defendants have standing to bring this Motion to Quash.

### B.    Plaintiff's Subpoena Places an Undue Burden on the Individual Defendants

The Subpoena poses an undue burden because it includes a timeframe that is largely irrelevant, the Bridger and Ferrellgas Defendants have already agreed to consent to the Bank's production of vast amounts of financial information related to various Bridger and Ferrellgas entities, and the Individual Defendants have already produced their personal Bank records for a period of time proportional to the claims asserted in the Lawsuit. While Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," such discovery is limited to what is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "This concept of relevance is tempered . . . by principles of proportionality." *Fassett v. Sears Holdings Corp.*, No. 4:15-CV-00941, 2017 WL 386646, at *3 (M.D. Pa. Jan. 27, 2017) (citation omitted). Rule 26(b)(1) does not authorize a party to "simply engage in a fishing expedition." *Essex Ins. Co. v. RMJC*, Inc., No. 01–4049, 2008 WL 2757862, at *2 (E.D. Pa. July 16, 2008).

Under Rule 45(d)(3)(A)(iv), a court must quash a subpoena if it subjects the recipient to "undue burden." Whether a subpoena poses an "undue burden" turns on a number of factors, including (1) relevance, (2) the party's need for the documents, (3) the breadth of the request, (4) the time period covered by the request, (5) the particularity with which the documents are described, (6)

the burden imposed, and (7) the recipient's status as a nonparty. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.,* No. 07–133, 2008 WL 597711, at *2 (E.D. Pa. Mar. 4, 2008). "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." *First Sealord Sur.*, 918 F. Supp.2d at 383 (citation and internal quotation marks omitted).

### 1.   The Subpoena Covers Irrelevant Time Periods

In its Complaint, Plaintiff, ostensibly, has one justification for reviewing the Individual Defendants' personal bank records: Plaintiff's reference to "$140 million" in value allegedly transferred to the "Defendants"—generically—as a result of a supposed abrogation of a supposed implied contract between Bridger Logistics and Bridger Transfer Services, and allegations that certain assets were transferred to Ferrellgas entities in early 2016. *See, e.g.*, Compl. ¶ 7 ("[S]uch an abrogation effectively transferred to [Ferrellgas Partners, L.P. and Ferrellgas, L.P.] and Bridger Logistics the almost $140 million present value of [Bridger Transfer Services, LLC's ("BTS")] right to receive payments from Bridger Logistics"); ¶ 9 (citing transfer of value "to Defendants – all of them BTS insiders – of almost $140 million"); ¶ 63 ("Defendants caused BTS to allow its implied contract with Bridger Logistics to be abrogated . . . thereby transferring to Defendants approximately $140 million of value."); ¶ 48 ("[T]he Defendants transferred all of BTS' real estate, equipment, receivables, and other assets to other FGP entities and allowed BTS to effectively relinquish its right to payment of the RSA obligations from Bridger Logistics."). Notwithstanding this fact, Plaintiff's Subpoena requests documents from "July 1, 2011, to the present"—a full *five years* before any alleged fraud took place. *See* Ex. A, at 7. Thus, Plaintiff has failed to establish a temporal relationship stretching back to July 1, 2011, and the Subpoena's request for the Individual Defendants' personal financial documents dating back to 2011 is thus indefensibly overbroad and encompasses totally irrelevant time periods.

2. <u>Plaintiff Has Other Means of Obtaining the Information it Seeks</u>

Not only does the Subpoena request documents well outside of the relevant time period, but Plaintiff has no less than two other means of obtaining the information it seeks: *first*, Eddystone will obtain documents germane to the Subpoena's requests through the Bank's voluminous production of records and documents related to the Ferrellgas and Bridger entities; and *second*, the Individual Defendants have already produced copies of their personal financial records from the Bank.

Eddystone has other means of capturing any alleged financial windfall that the Individual Defendants obtained from selling BTS to Jamex, or from the alleged abrogation of BTS' "implied rights to payment from Bridger Logistics". *See* Compl. ¶ 9. This is particularly true because the Bridger and Ferrellgas Defendants have already consented to the Bank's production of vast amounts of financial information related to various Bridger and Ferrellgas entities, including each entity Eddystone alleges was involved in the alleged transfer. Plaintiff's six-year request for individual, personal, historical financial information is thus not proportionate to the needs of the litigation, as Plaintiff will receive "relative access to relevant information" by other means, and indeed already has received access to such information from the Individual Defendants. *See Fassett*, 2017 WL 386646, at *3 (citation omitted) ("This concept of relevance is tempered . . . by principles of proportionality.").

Because Plaintiff's Complaint revolves around a purported fraudulent transfer in February of 2016, the Individual Defendants agreed to voluntarily produce copies of their Bank records for the three months before and after the alleged transfer. *See* Compl. ¶ 64. On October 4, 2017, the Individual Defendants produced their personal bank records at Business First Bank from November 2015 (three months before the alleged asset transfer) through May 2016 (three months after the alleged transfer), redacted except for any transaction involving a Ferrellgas, Bridger, or Jamex entity. Accordingly, any financial gain realized by the Individual Defendants as a result of the alleged

fraudulent transfer will be represented in the documents that Eddystone already has in its possession. Information outside of this time period is outside the scope of discovery under Rule 26(b)(1), which does not authorize a party to "simply engage in a fishing expedition." *Essex Ins. Co.*, 2008 WL 2757862, at *2. Further, Eddystone cannot use alter ego as an excuse to obtain expansive discovery because it has failed to plead alter ego against the Individual Defendants. *See* Compl. ¶ 61 ("In light of the alter ego relationship *between BTS and Bridger Logistics*, Eddystone is entitled to an order from this Court *piercing the corporate veil of BTS and holding Bridger Logistics liable* for the debts of BTS owed to Eddystone.") (emphasis added). Plaintiff therefore cannot use alter ego as a vehicle to obtain *any* discovery against the Individual Defendants, let alone as a means to obtain documents over a span of six years.

3. The Subpoena is Overbroad

In addition to the Subpoena's myriad aforementioned problems, the breadth of Plaintiff's request is troubling—as currently constituted, Plaintiff's request would include any account the Individual Defendants "opened, maintained, accessed, used, controlled, held or beneficially owned" over the last six years. *See* Ex. A, at 9. Therefore, every account that the Individual Defendants opened or maintained—either for themselves, *or for any family member*—over the last six years would fall under the Subpoena's purview and be produced. The broad scope of the Subpoena only renders it increasingly overbroad and invasive, and Plaintiff has failed to articulate why such a broad request is relevant in any way to its causes of action against the Individual Defendants.

4. The Subpoena Fails to the State the Request with Particularity

The Subpoena does not state its requests with particularity. *See supra* Part II.B.1–2.

5. The Subpoena Imposes an Onerous Burden

To demonstrate an undue burden, the movant must establish that compliance with the subpoena would be "unreasonable and oppressive." *Owens v. QVC*, 221 F.R.D. 430, 432 (E.D. Pa.

2004). Unfettered access to every account opened or maintained by the Individual Defendants would allow Plaintiff to pry into the Individual Defendants' private affairs over an enormous (and largely irrelevant) period of time. While the current protective order will shield Individual Defendants' accounts from the public, the request is still unreasonable and oppressive given the vast amount of highly personal and sensitive information requested. This, of course, supports the reason that courts in the Eastern District of Pennsylvania recognize standing for challenging bank accounts for nonparties. *See ITOCHU Int'l, Inc.*, 303 F.R.D. at 232.

6.  The Bank is a Nonparty

Here, the Bank, as a third party to the suit, has no personal concern in the instant action. In considering whether to quash a subpoena, the subpoena recipient's "status as a nonparty to the litigation should also be considered." *Lady Liberty Transp. Co. v. Phila. Parking Auth.*, No. CIV.05-1322, 2007 WL 707372, at *9 (E.D. Pa. Mar. 1, 2007) (citing *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 495 (E.D. Pa. 2005)). Where, as here, discovery is sought against a non-party, "courts have imposed broader restrictions on the scope of discovery." *Small v. Provident Life & Acc. Ins. Co.*, No. CIV. A. 98-2934, 1999 WL 1128945, at *1 (E.D. Pa. Dec. 9, 1999). "In general, third parties are afforded more sympathy in weighing the burden of discovery because they have no personal stake in the litigation." *Symetra Life Ins. Co.*, 2008 WL597711, at *2 (explaining how subpoena's recipient's status as a nonparty is a factor to consider under Rule 45(d)(3)(A)(iv)).

Because the Subpoena seeks an enormous amount of information from the Bank—including six years of the Individual Defendants' personal financial information—the Court should impose "broader restrictions on the scope of discovery" and not require the Bank to produce financial records and documents related to the Individual Defendants. *See Small*, 1999 WL 1128945, at *1.

### III.    CONCLUSION

The Court should not allow Plaintiff to go on a fishing expedition through six years of the Individual Defendants' (and their family members') most intimate pecuniary interest—their bank records and related documents.  The Individual Defendants have already produced personal financial Bank records, and the other Defendants in the Lawsuit have already consented to the Bank's production of an enormous number of records.  Indeed, for these and other aforementioned reasons, the seven *Symetra Life* factors all support the Court quashing the Subpoena as it relates to Individual Defendants.  *See supra* Part II.  Accordingly, the Court should grant Individual Defendants' Motion to Quash Plaintiff's Subpoena insofar as it requests documents related to the Individual Defendants.

DATE:  October 13, 2017                    Respectfully submitted,


                                           */s/ Jeremy A. Fielding*
                                           Jeremy A. Fielding
                                           *Admitted pro hac vice*
                                           jfielding@lynnllp.com
                                           Kent D. Krabill
                                           *Admitted pro hac vice*
                                           kkrabill@lynnllp.com
                                           Jonathan D. Kelley
                                           *Admitted pro hac vice*
                                           jkelley@lynnllp.com
                                           LYNN PINKER COX & HURST, LLP
                                           2100 Ross Avenue, Suite 2700
                                           Dallas, Texas 75201
                                           Telephone: (214) 981-3800
                                           Facsimile: (214) 981-3839

                                           Julie Negovan, Esquire (1651)
                                           1717 Arch Street, Suite 3630
                                           Philadelphia, PA  19103
                                           jnegovan@griesinglaw.com
                                           (215) 431-9295
                                           *Attorneys for Defendants*
                                           *Julio Rios and Jeremy Gamboa*

CERTIFICATE OF SERVICE

I, Julie Negovan, hereby certify that I filed and served the foregoing Individual Defendants'

Motion to Quash Plaintiff's Subpoena to all counsel of record via the Court's ECF system on this

date.

Dated: October 13, 2017                                /s/      _Julie Negovan_____
                                                                Julie Negovan