IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BRIDGER LOGISTICS, LLC, JULIO RIOS, JEREMY GAMBOA, FERRELLGAS PARTNERS, L.P., and FERRELLGAS, L.P., <br><br> Defendants. | Civil Action No. 2:17-cv-00495-RK |

**DEFENDANTS JULIO RIOS' & JEREMY GAMBOA'S
CROSS MOTION FOR PROTECTIVE ORDER**

Defendants Julio Rios and Jeremy Gamboa (the "Individual Defendants") hereby request entry of an Order pursuant to Federal Rule of Civil Procedure 26(c) for protection against annoyance, oppression and undue burden from Plaintiff Eddystone Rail Company, LLC's ("Plaintiff" or "Eddystone") discovery demands which cover almost every aspect of the Individual Defendants' personal and profession lives for the last six years.

Plaintiff has served a subpoena to Business First Bank in Louisiana to obtain six years of bank statements and correspondence concerning every account the Individual Defendants ever "opened, maintained, accessed, used controlled, held or beneficially owned." Ex. A, Business First Bank Subpoena (hereinafter, the "Subpoena").

Plaintiff has also served 60 Requests for Production, with a default relevant time period of 2012 to present. Ex. B, Pl.'s Req. For Prod., Instruction 5. Many of the requests span back to June of 2011, and Plaintiff has indicated that it will likely serve supplemental requests seeking

1

information back to June of 2011 for many of the remaining 60 requests.  *See, e.g*., Ex. B, Reqs. 6–9, 40.

While the Individual Defendants dispute Plaintiff's right to obtain documents over such an expansive timeframe, in an attempt to resolve these discovery issues without involving the Court, the Individual Defendants agreed to produce information pursuant from January 1, 2012 through March 1, 2016 (over four years) for most of the categories of documents in Plaintiff's requests.  *See* Ex. C, attached hereto, Individual Defs.' Am. Resps. to Pl.'s First Set of Reqs. for Prod.[1]  The Individual Defendants likewise produced to Plaintiff their personal financial records from Business First Bank from November 2015 through May 2016, which more than includes the timeframe relevant to the claims made by Plaintiff against the Individual Defendants.  Notwithstanding these concessions, Plaintiff demands even more of the Individual Defendants' personal information and over a timeframe that continues to grow in both scope and irrelevance. It is therefore oppressive and overly burdensome for Plaintiff to demand more.

The Individual Defendants respectively seek a Protective Order, limiting the Individual Defendants' obligations for discovery to (1) personal bank statements from November of 2015 to May of 2016; and (2) communications and other documents involving Bridger,[2] Ferrellgas,[3] Jamex, [4] and Eddystone Rail Company, LLC from January 1, 2012 to March 1, 2016, unless otherwise agreed to by the parties.

---

[1] Individual Defendants' Amended Responses are submitted after numerous lengthy meet and confer sessions with Plaintiff's counsel, the latest of which was October 11, 2017.

[2] The parties have agreed that the "Bridger" entities at issue include Bridger, LLC, Bridger Logistics, LLC, Bridger Transfer Services, LLC, Bridger Marketing, LLC, Bridger Administrative Services II, LLC, Bridger Marine, LLC, Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC.

[3] The parties have agreed that the "Ferrallgas" entities at issue include Ferrellgas, LP and Ferrellgas Partners, LP.

[4] The relevant Jamex entities are Jamex Marketing, LLC, Jamex Transfer Services, LLC and Jamex, LLC.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 (b)(1) defines the scope of discovery as "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Plaintiff bears the initial burden of proving the relevance of the material requested. *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 25 (E.D. Pa. 2016). As discussed below, Plaintiff has not met this burden when viewed through the lens of its own Complaint.

Federal Rule of Civil Procedure 26(c) provides for the entry of a protective order for good cause to limit or restrict discovery that is annoying, embarrassing, oppressive or unduly burdensome or expensive. *Shingara v. Skiles*, 420 F.3d 301 (3d Cir. 2005).

## II.    DISCUSSION

### A.    Plaintiff's Discovery Requests Should Not Extend to 2011

Plaintiff's First Set of Requests for Productions ("RFP") define the relevant time period for each request as beginning in 2012 and extending to the present. *See* Ex. B, Instruction 5. Likewise, Plaintiff's Subpoena requests documents and records from "July 1, 2011, to the present." Ex. A. As a default, Plaintiff seeks over six years of information, based upon allegations of a fraudulent transfer that purportedly occurred on February 1, 2016, just eighteen months ago. *See* Compl. ¶ 64, Feb. 2, 2017, ECF No. 1. Plaintiff offers one ostensible justification for seeking the Individual Defendants' personal bank records and other documents over this expansive timeframe: Plaintiff's reference to "$140 million" in value allegedly transferred to the "Defendants"—generically—as a result of a supposed abrogation of a supposed implied contract between Bridger Logistics and Bridger Transfer Services, and allegations that certain assets were transferred to Ferrellgas entities in early 2016. *See, e.g.*, Compl. ¶ 7 ("[S]uch an abrogation effectively transferred to [Ferrellgas Partners, L.P. and Ferrellgas, L.P.] and Bridger Logistics the almost $140 million present value of [Bridger Transfer Services, LLC's ("BTS")] right to receive payments

3

from Bridger Logistics"); ¶ 9 (citing transfer of value "to Defendants – all of them BTS insiders – of almost $140 million"); ¶ 63 ("Defendants caused BTS to allow its implied contract with Bridger Logistics to be abrogated . . . thereby transferring to Defendants approximately $140 million of value."); ¶ 48 ("[T]he Defendants transferred all of BTS' real estate, equipment, receivables, and other assets to other FGP entities and allowed BTS to effectively relinquish its right to payment of the RSA obligations from Bridger Logistics."). Notwithstanding this fact, Plaintiff's Subpoena and document requests ask for the production of documents dating back a full *five years* before any alleged fraud took place. *See* Ex. A, at 7. Thus, Plaintiff has failed to establish a temporal relationship stretching back to July 1, 2011, and both the Subpoena's and the RFP's request for documents dating back to 2011 is indefensibly overbroad and encompasses totally irrelevant time periods.

Notwithstanding this overreach, while records dating back to 2011 are not relevant to the claims in Plaintiff's Complaint, documents related to the timeframe surrounding the alleged fraudulent transfer clearly are, which is why the Individual Defendants have produced redacted copies of their personal bank statements and other information for the seven-month period shouldering the sale of BTS to Jamex. This is also why the Individual Defendants have agreed to produce documents responsive to the vast majority of Plaintiff's RFPs from January 1, 2012 through March 1, 2016—though the Individual Defendants' accommodation of this timeframe is indicative only of their desire to compromise and reach agreement with Plaintiff, and is not an agreement that Plaintiff is entitled to these documents based on its claims. Accordingly, any additional documents Plaintiff seeks—outside of what the Individual Defendants have offered to produce and have already produced—are necessarily irrelevant and oppressive, and subject the

Individual Defendants to undue burden and expense. *See generally*, Ex. C; *see also Shingara v. Skiles*, 420 F.3d 301 (3d Cir. 2005).

### B. Plaintiff Has Other Means of Obtaining the Information it Seeks

Not only do the Subpoena and RFPs cover an irrelevant time period, but Plaintiff has no less than two other means of obtaining the information it seeks through the Subpoena: *first*, Eddystone will obtain documents germane to the Subpoena's requests through Business First Bank's large-scale production of records and documents related to the Ferrellgas and Bridger entities; and *second*, the Individual Defendants have already produced copies of their personal financial records from the Bank.

While the Individual Defendants have already produced their personal Bank records for the relevant time period, the Bridger and Ferrellgas Defendants have already consented to the Bank's production of vast amounts of financial information related to various Bridger and Ferrellgas entities, including each entity Eddystone alleges was involved in the alleged transfer. Plaintiff's six-year request for individual, personal, historical financial information belonging to the Individual Defendants is thus not proportionate to the needs of the litigation, as Plaintiff will receive "relative access to relevant information" by other means, and indeed already has received access to such information from the Individual Defendants. *See Fassett*, 2017 WL 386646, at *3 (citation omitted) ("This concept of relevance is tempered . . . by principles of proportionality.").

### C. Immaterial Historical Personal Financial Records Should Be Protected

Not only does Plaintiff request information over a six-year timeframe that is largely irrelevant to the claims it asserts, but the breadth of Plaintiff's discovery includes highly personal information related to the Individual Defendants *and* their family members that could not bear any relation to this Lawsuit by any stretch of the imagination. As currently constituted, the documents and records requested by Plaintiff's Subpoena include any account the Individual Defendants

"opened, maintained, accessed, used, controlled, held or beneficially owned" over the last six years. *See* Ex. A, at 9. Given that the Individual Defendants have conducted the majority of their private banking at Business First since well before 2011, the Subpoena would require that records for every account the Individual Defendants opened or maintained—either for themselves, *or for any family member*—over the last six years be produced. The broad scope of the Subpoena only renders it increasingly overbroad and invasive, and Plaintiff has failed to articulate why such a broad request is relevant in any way to its causes of action against the Individual Defendants.

The highly personal and invasive of Plaintiff's discovery requests are not limited to its Subpoena, however, as Plaintiff's RFPs are equally harassing. For example, Plaintiff's Request for Production Number 11 includes:

> ***All records and documents for any bank account*** that held, accumulated, acted as a cash management account, or in any way was a depository, repository or vehicle for cash or money of . . . ***any entity in the Bridger Group*** . . .

Ex. B, at Req. No. 11 (emphasis added). "Bridger Group" is defined in Plaintiff's RFP as including both of the Individual Defendants. Plaintiff's Request for Production Number 12 constitutes an even more onerous invasion of the Individual Defendant's privacy, as it requests:

> ***All records and documents for all open or closed bank, financial, investment, brokerage, institutional, or other accounts*** holding assets or deposits . . . of ***any entity within the Bridger Group*** . . .

Ex. B, at Req. No. 12 (emphasis added). Again, because the default time period for these RFPs is 2012 to present, each of these requests would capture an enormous amount of highly personal financial information related to the Individual Defendants and their family members, and over a vast and almost totally irrelevant period of time. These and other similar requests are harassing on their face, totally irrelevant and duplicative of what the Individual Defendants have already produced, and what the Bridger and Ferrellgas Defendants have agreed to produce.

6

Indeed, Bridger and Ferrellgas Defendants have already agreed to relinquish financial bank records from Business First Bank for the entire contested period. To extent the Individual Defendants received any remuneration, it will be found either in the Bridger and Ferrellgas Defendants' production, in the forthcoming production from Business First Bank, or in the Individual Defendants' production of their own personal financial records.  Plaintiff's requests to the Individual Defendants will therefore be duplicative, and the Court has a duty to "limit the . . . extent of discovery where it is duplicative, where it can be obtained from another source that is more convenient, less burdensome, or less expensive." *Avago Techs. U.S., Inc v. IPtronics Inc*, 309 F.R.D. 294, 297 (E.D. Pa. 2015) (citing Fed. R. Civ. P. 26(b)(2)).  This is precisely the case.

### D. Plaintiff Cannot Use Alter Ego as a Vehicle to Obtain Expansive Discovery

In attempting to justify the immense scope of the discovery it seeks, Plaintiff asserts that its alter ego allegations somehow permit such discovery against the Individual Defendants. Notably, Plaintiff attempts to use this justification despite the fact that Plaintiff ***has not pled alter ego against the Individual Defendants***. *See* Compl. ¶ 61 ("In light of the alter ego relationship *between BTS and Bridger Logistics*, Eddystone is entitled to an order from this Court *piercing the corporate veil of BTS and holding Bridger Logistics liable* for the debts of BTS owed to Eddystone.") (emphasis added).  Plaintiff therefore cannot use alter ego as a vehicle to obtain *any* discovery against the Individual Defendants, let alone as a means to obtain documents over a span of six years.

### III.   CONCLUSION

Plaintiff's fishing expedition for the Individual Defendants' personal, historical financial information should be limited to their personal accounts, and for the few months before and after the alleged asset transfer.  Requiring production of every financial record for any account held,

opened, or managed by the Individual Defendants over a six-year span is completely over-broad and should be denied. Similarly, Plaintiff's discovery requests should be limited to the time period immediately before negotiation of the Rail Service Agreement ("RSA") in February of 2013 (the Individual Defendants have agreed to produce documents back to January of 2012) to the time BTS was sold to Jamex in February of 2016 (the Individual Defendants have agreed to produce documents up to March of 2016).

The Court should enter the attached Protective Order limiting the Individual Defendants' discovery obligations to: (1) personal bank records from November of 2015 to May of 2016; and (2) communications and other documents involving Bridger, Ferrellgas and Eddystone from January 1, 2012 to March 1, 2016, unless otherwise agreed by the parties.

### IV. CERTIFICATION OF MEET AND CONFER

Counsel for the Individual Defendants have met and conferred with Plaintiff's counsel concerning these issues over numerous and lengthy conference calls, the latest of which took place on October 11, 2017 at 12:00pm, and continued for over an hour and half.

DATE: October 17, 2017

    Respectfully submitted,

    */s/ Jeremy A. Fielding*
    Jeremy A. Fielding
    *Admitted pro hac vice*
    jfielding@lynnllp.com
    Kent D. Krabill
    *Admitted pro hac vice*
    kkrabill@lynnllp.com
    Jonathan D. Kelley
    *Admitted pro hac vice*
    jkelley@lynnllp.com
    LYNN PINKER COX & HURST, LLP
    2100 Ross Avenue, Suite 2700
    Dallas, Texas 75201
    Telephone: (214) 981-3800

        Facsimile: (214) 981-3839

        Julie Negovan, Esquire (1651)
        1717 Arch Street, Suite 3630
        Philadelphia, PA  19103
        jnegovan@griesinglaw.com
        (215) 431 9295
        *Attorneys for Defendants*
        *Julio Rios and Jeremy Gamboa*

## CERTIFICATE OF SERVICE

      I, Julie Negovan, hereby certify that I filed and served the foregoing Motion For Protective Order by Julio Rios and Jeremy Gamboa to all counsel of record via the Court's ECF system on this date.

Dated: October 17, 2017                            /s/    *Julie Negovan*
                                                                     Julie Negovan