**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EDDYSTONE RAIL COMPANY, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BRIDGER LOGISTICS, LLC, JULIO RIOS, JEREMY GAMBOA, FERRELLGAS PARTNERS, L.P., and FERRELLGAS L.P.**<br><br>**Defendants.** | **Civil Action No. 17–cv–00495** |

**PLAINTIFF EDDYSTONE RAIL COMPANY LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL**

BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

## TABLE OF CONTENTS

INTRODUCTION .....1

ARGUMENT .....4

I. The Court Should Order Immediate Production of or Eddystone Access to the Complete General Ledgers .....4

A. The General Ledgers Are Relevant and Fall within the Early Production Agreement .....4

B. There Is a Live Dispute for the Court to Resolve .....7

II. The Court Should Order Rios and Gamboa to Consent to the Production of their Bank Records .....9

A. The Bank Records Are Highly Relevant .....9

B. Heavily Redacted Records for the Months Surrounding January 2016 Are Not Adequate .....11

C. Eddystone Withdraws its Request for Production of Ferrellgas Bank Records .....12

III. The Court Should Overrule Rios and Gamboa's Objection to Discovery Beyond a Few Months Around January 2016 .....12

CONCLUSION .....15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abu–Nassar v. Elders Futures Inc.*,
1991 WL 45062 (S.D.N.Y.1991)....................10

*BASF Corp. v. Man Diesel & Turbo N. Am.*,
No. CIV.A. 13-42-JJB-RLB, 2014 WL 2876163 (M.D. La. June 24, 2014) ....................5

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
No. C 01-21151 JW, 2008 WL 4858502 (N.D. Cal. Nov. 10, 2008) ....................13

*In re Don's Making Money, LLP*,
No. 2:99-BK-07757-CGC, 2008 WL 509531 (Bankr. D. Ariz. Feb. 19, 2008) ....................10

*Fieldturf Int'l, Inc., Fieldturf, Inc. v. Triexe Mangement Grp., Inc.*,
No. 03 C 3512, 2004 WL 866494 (N.D. Ill. Apr. 16, 2004)....................14

*Inter-Tel Techs., Inc. v. Linn Station Properties, LLC*,
360 S.W.3d 152 (Ky. 2012) ....................14

*Luc Vets Diamant v. Akush*,
No. 05 CIV.2934 WHP, 2006 WL 258293 (S.D.N.Y. Feb. 3, 2006) ....................10

*Oldcastle Precast, Inc. v. VPMC, Ltd.*,
2013 WL 1952090 (E.D.Pa. May 13, 2013, Kelly, J.)....................14

*Rapp v. Walt Disney Co.*,
No. CIV. A. 98-3478, 1998 WL 564491 (E.D. Pa. Sept. 3, 1998) (Kelly, J.) ....................13, 14

*Selee Corp. v. McDanel Advanced Ceramic Techs.*,
No. 1:15-CV-00129-MR, 2016 WL 4546446 (W.D.N.C. Aug. 31, 2016)....................5

*In re Surrick*,
338 F.3d 224 (3d Cir. 2003)....................4

*Wachovia Sec., LLC v. Banco Panamericano, Inc.*,
674 F.3d 743 (7th Cir. 2012) ....................13

**Statutes**

12 Pa. C. S. § 5104(a) ....................9

12 Pa. C. S. § 5105....................10

## INTRODUCTION

In May, Eddystone and Ferrellgas agreed to an early exchange of documents in order to facilitate discovery. As part of the agreement, Ferrellgas expressly agreed to produce BTS and Bridger Logistics general ledgers, key accounting records for Eddystone's alter ego and fraudulent transfer claims. The general ledger of each company – the main accounting record of a company, from which all other financial statements are derived – will disclose how defendants accounted for transactions with BTS and will shape further discovery in the case.

The original date of production was August 11, 2017, at which time Ferrellgas produced nothing. After Ferrellgas continued not to produce, Eddystone moved to compel. Faced with Eddystone's motion to compel, Ferrellgas has now made a partial production of historical BTS and Bridger Logistics general ledgers for the period beginning September 2014. But it still has not produced pre-September 2014 entries, nor has it produced general ledger entries from the Ferrellgas accounting system for the post-June 2015 period after Ferrellgas acquired Bridger Logistics.

Ferellgas's shifting series of explanations for failing to produce the complete set of general ledgers does not hold up, and the Court should order full production now. After initially attempting to deny that there were general ledgers – plainly impossible in light of express references to the general ledgers in its auditor's documents – Ferrellgas in its opposition asks to be excused from producing the general ledgers early. Despite agreeing to produce the *general ledgers specifically by name*, Ferrellgas in its opposition argues that the general ledger is "electronically stored information," which it now argues is not a "document" subject to the preliminary discovery agreement. This is at best a distinction without a difference; in the computer age, virtually all documents are stored electronically. And both case law and Rule 34 require production of electronically stored information in response to document requests.

In its opposition, Ferrellgas also claims that the general ledgers are not readily accessible because they reside on historical software systems that predate Ferrellgas's purchase of Bridger Logistics. But Ferrellgas still has not produced the general ledger data from Ferrellgas's *current accounting system*. And the fact that the documents of a Ferrellgas subsidiary were created before Ferrellgas acquired the subsidiary does not excuse Ferrellgas' obligation to produce them—an obligation it has now had *six months* to fulfill. Indeed, subsequent to filing its opposition, Ferrellgas made a partial production of historical general ledgers for the period beginning September 2014 for BTS and Bridger Logistics, contradicting its opposition's claim that they were inaccessible. If necessary, Ferrellgas can give Eddystone access to the relevant computer drives for the remaining historical data, and Eddystone will extract the necessary information.

The Court should order full production now, either Ferrellgas producing documents or giving Eddystone access to the computer drives containing the information. Eddystone is entitled to the early discovery of the general ledgers to which Ferrellgas agreed. This material is particularly important to Eddystone because the general ledger will disclose precisely how Bridger Logistics and Ferrellgas internally accounted for transactions with BTS. And that discovery, in turn, will shape later follow-on discovery in the case. As Ferrellgas' continued delay will hamper Eddystone's discovery efforts, even as Ferrellgas proceeds against Eddystone, the Court should order Ferrellgas to produce the general ledgers immediately. Ferrellgas should not be permitted to delay until some later date toward the end of the full discovery period, impeding Eddystone's ability to follow up on matters found in the general ledgers before September 2014.

After Eddystone moved to compel Ferrellgas to consent to production of bank records, it consented to the production of bank records sufficient to satisfy Eddystone's current needs. Eddystone thus withdraws its motion to compel Ferrellgas to consent to production of its bank records.

Meanwhile, Rios and Gamboa continue to obstruct Eddystone's discovery of facts relevant to its claims. Notwithstanding this Court's denial of their motion to dismiss, Rios and Gamboa doggedly refuse to consent to the production of their personal bank records on the grounds that Eddystone has failed to allege an alter ego claim against them. In addition, they refuse to produce documents from BTS's formation and operating history that may relate to its undercapitalization and a commingling of funds on the ground that Eddystone has not alleged with sufficient particularity facts to support discovery into those particular factors of an alter ego claim.

The Court eliminated both grounds for non-production when it ruled against Rios and Gamboa on their motion to dismiss Eddystone's complaint against it. Since the Court ruled that Eddystone has adequately pled alter ego claims against all the Defendants—including Rios and Gamboa—Eddystone is entitled to conduct the full scope of discovery into facts relevant to proving each element of its claims. Accordingly, the Court should order Rios and Gamboa to produce documents—both personal and corporate—relevant to the alter ego claims, beginning with BTS' formation in July 2011.

## ARGUMENT

### I. The Court Should Order Immediate Production of or Eddystone Access to the Complete General Ledgers

#### A. The General Ledgers Are Relevant and Fall within the Early Production Agreement

Ferrellgas offers excuses but no real justification for its failure to produce all of the general ledgers. As part of a preliminary discovery agreement, Ferrellgas expressly and specifically agreed to produce the general ledgers for BTS and Bridger Logistics early, obtained substantial material from Eddystone in exchange, and then failed to produce. Ferrellgas does not deny that the general ledgers are critical documents in the context of this litigation or that their production is proper and supported by extensive authority. *See* Ferrellgas Opposition to Motion to Compel at 10 ("FGP Opp.") ("[T]he BL/FG Defendants never argued that general ledgers of BTS or Logistics were not relevant."). Nor does Ferrellgas dispute the importance of early production of these materials so that Eddystone can understand the transactions at issue and proceed with appropriate further discovery.

Nonetheless, Ferrellgas argues that its failure to produce is justified because it is willing to produce the general ledgers "as a part of full discovery" and that this means there is no "live issue or dispute." FGP Opp. at 4. But this is no answer. *Early* production of these materials was the purpose of the agreement and is essential for the reasons given in Eddystone's opening brief, none of which FGP's opposition even attempts to address.[1] In particular, the general ledgers will provide a roadmap to the disposition of the Monroe revenue to which BTS should have been

[1] The Court has generally allowed sur-replies in this case. *See* Dkt. 53. Just as it is improper for a party to first make an argument in a reply brief, *see In re Surrick*, 338 F.3d 224, 237 (3d Cir. 2003), it is improper for a party not to respond to an argument in its opposition and then rebut it in the sur-reply when there is no opportunity for Eddystone to respond. To the extent Ferrellgas opposes arguments advanced in the motion for the first time on surreply, such arguments should be stricken as improper.

entitled, to the transfers of assets and value out of BTS to defendants and their affiliates, and to the use of BTS as an instrumentality of Bridger Logistics and Ferrellgas. Early production is essential so that Eddystone can begin to develop its case, formulate additional discovery, and identify any additional Ferrellgas entities that may be implicated – for example, additional transfer recipients.[2] The full discovery deadline is not until March. FGP should produce the general ledgers now.

Alternatively, Ferrellgas argues that the general ledgers should be exempted from discovery because they are "electronically stored information" and not "documents." Ferrellgas Opp. at 4-5. But that is a distinction without a difference. Rule 34 provides for production of electronically stored information on the exact same terms as other documents, and the advisory committee notes state that that "discovery of electronically stored information stands on equal footing with discovery of paper documents" and that "a Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information . . . ." For this reason, parties are required to produce electronically stored information in response to document requests whether or not it is mentioned specifically. *See Selee Corp. v. McDanel Advanced Ceramic Techs.*, No. 1:15-CV-00129-MR, 2016 WL 4546446, at *2 (W.D.N.C. Aug. 31, 2016); *see also BASF Corp. v. Man Diesel & Turbo N. Am.*, No. CIV.A. 13-42-JJB-RLB, 2014 WL 2876163, at *5 (M.D. La. June 24, 2014) ("It is clear that

---

[2] Eddystone has already identified some, as described in its motion. Dkt. 73 at 7-8. Ferrellgas claims that this is an attempt to argue the merits – which it uses an excuse to devote one third of its brief to a merits argument of its own. On the contrary, the evidence of extensive transfers to other Ferrellgas entities highlights the importance of early production of the general ledgers so that Eddystone can obtain a full picture of the entities implicated. Ferrellgas's merits argument to which it has devoted the final five pages of its brief is inaccurate and misleading, but a motion to compel should not become a vehicle for litigation of the merits, and Eddystone will respond at the proper time.

BASF should have located and produced all responsive and non-privileged ESI in its control and possession as part of its initial production.").

In fact, because virtually all documents are electronically stored today, the vast majority of Ferrellgas's initial production consisted of electronically stored information. And Ferrellgas expressly agreed to produce the general ledger entries *by name*. It waited until after the production deadline to claim an exemption from compliance with this explicit and central piece of the Parties' agreement on the ground that the general ledgers were not "documents." The objection has no merit.

Finally, Ferrellgas claims in the alternative that the general ledgers are not readily accessible because they are maintained on historical software systems not readily accessible to Ferrellgas personnel. FGP Opp., Knapp Decl. ¶¶ 5, 6. But Ferrellgas has had six months to retrieve the general ledgers from these software systems. And its recent partial production completely contradicts this explanation of its failure to produce. While Ferrellgas has not produced any general ledger entries from the *current* Ferrellgas accounting system, it has now produced general ledger entries from a portion of the historical, pre-acquisition Bridger accounting system, which it claimed in correspondence and in its Opposition were inaccessible. Theodore Decl. Ex. 11 at 2 (Dkt. 75). This system is equipped with the functionality to export relevant fields and related data with little difficulty, an effort that should not have taken more than a few days. Gardemal Decl. ¶ 4.

Ferrellgas has now produced general ledger information for BTS and Bridger Logistics from September 2014 forward.[3] But Ferrellgas has failed to produce general ledger information

---

[3] Ferrellgas has not produced the underlying records supporting the ledger entries, which based on the referencing document numbers in the general ledger appear to be stored as part of

for either BTS or Bridger Logistics for the critical early period of July 2011 through August 2014. *Id. See* Gardemal Decl. ¶ 3.a. Nor has it produced post-June 2015 data from the current Ferrellgas general ledger system. Ferrellgas should be compelled to produce post-acquisition records from its current system as well as the full set of historical records or to provide Eddystone immediate access to those records so that Eddystone can extract copies of them.

**B. There Is a Live Dispute for the Court to Resolve**

Ferrellgas's continued failure to produce a full set of general ledgers for BTS and Bridger Logistics and its shifting history of obfuscations belie its claim that there is "no dispute for the Court to resolve." FGP Opp. at 4. During their September 6 meet and confer, counsel for Eddystone repeatedly asked about the existence of general ledgers, to which Ferrellgas responded by indicating that BTS and Bridger Logistics may not have kept general ledgers in the normal course of business—full stop. Theodore Decl. ¶ 5 (Dkt. 75). Only after Eddystone then sent a letter with indisputable evidence of the general ledgers from the auditor that reviewed Bridger's financial statements, KPMG, did Ferrellgas introduce its current distinction between general ledger "reports" and general ledger ESI. *Compare* Theodore Decl. Ex. 10 (Ltr. from J. Theodore to D. Zensky, Sept. 7, 2017) with Theodore Decl. Ex. 11 (Ltr. from D. Zensky to J. Theodore, September 13, 2017).[4]

---

the same electronic system, nor has it produced the accounting manual containing the descriptions of relevant codes and abbreviations. Gardemal Decl. ¶ 3.b-c.

[4] It appears from the parties' exchange of letters on September 7 and 13 that Ferrellgas drew this self-serving distinction only after the fact, to justify its failure to produce the general ledgers. In his reply letter, Zensky writes that "You did not define 'general ledger' in connection with the preliminary exchange, but have subsequently explained that by general ledger you mean a *document* setting forth details of individual transactions." Theodore Decl. Ex. 11 (emphasis added). Eddystone never limited its request for general ledgers in this way, that is, to documents generated from a general ledger system. To the contrary, Eddystone's initial letter addresses electronic accounting systems: "KPMG documents note that "Great Plains" is *the accounting software used for the Bridger "General Ledger System"* . . . These records establish conclusively

Ferrellgas further argues that it has never refused to produce, is in the process of making a production, and Eddystone should have agreed to an extension or to withdraw its motion. But Eddystone agreed to two separate extensions of Ferrellgas's response deadline. On September 29, 2017, Eddystone agreed to Ferrellgas' request for a one-week extension but made clear in its email that the extension was conditioned "on the understanding that Ferrellgas would use that time to produce the accounting records (including general ledgers) at issue as described in the motion." Sloniewsky Decl. ¶ 6. On October 2, Ferrellgas asked for an additional two days, which Eddystone again accommodated. *Id.* Three weeks after all of these extensions and almost three months after the agreed deadline, Ferrellgas still has not made a complete production.

If Ferrellgas continues to insist that it cannot process the general ledgers, Eddystone should promptly be given access to do so. Once Eddystone is granted physical access to the records, it is confident that it can extract the necessary information promptly. Gardemal Decl. ¶¶ 3.a, 4. Eddystone should not be made to wait any longer to receive the general ledgers because they are critical the shaping of further discovery and to identifying additional Bridger and Ferrellgas entities that may be implicated – i.e., additional transfer recipients. It is for this reason that, even before the parties' preliminary exchange agreement, Eddystone first served Ferrellgas with discovery requests for the general ledgers on March 14, 2017. *See* Sloniewsky Decl. Ex. 1 at 9 (Eddystone's First Set of Requests for Production, March 14, 2017) (requesting "Detailed General Ledger" and "All detailed subsidiary ledgers" for BTS and Bridger Logistics). Seven months later, and two months after the parties' deadline for their preliminary discovery

---

that there were general ledgers containing the accounting entries for Bridger Logistics and Bridger Transfer Services." Theodore Decl. Ex. 10 (emphasis added). From the start, Eddystone has simply asked for the general ledgers of BTS and Bridger Logistics, in whatever form they are maintained.

exchange, Eddystone still does not have these key documents. Any additional delay will only further prejudice Eddystone's right to full and fair discovery in this case. Accordingly, the Court should hold Ferrellgas to the terms of its agreement with Eddystone and order it to produce the general ledgers for BTS and Bridger Logistics immediately.

## II. The Court Should Order Rios and Gamboa to Consent to the Production of their Bank Records

### A. The Bank Records Are Highly Relevant

Rios's and Gamboa's personal bank records are an important source of discovery for the alter ego claims Eddystone has raised against both. The Bridger Group was not a publicly held company with an independent board of directors monitoring Rios and Gamboa's management of the business. Rios and Gamboa exercised complete control over the closely held company they owned with Ballengee. To discover the extent to which they dominated BTS's finances, it is important for Eddystone to review their accounts at the same bank at which they had BTS hold its cash as well.

Rios's and Gamboa's primary objection to discovery of these facts is their claim that they are not proper alter ego defendants. They argue that "Plaintiff uses its assertions of alter ego as an excuse to obtain expansive discovery dating back to 2011, despite the fact that Plaintiff has not pled any alter ego theory against the Individual Defendants." Rios, Gamboa Opposition to Motion to Compel at 3, Dkt. 84, October 12, 2012 ("RG Opp."). But not only has Eddystone pled such a theory, the Court already rejected their motion to dismiss on exactly that basis. On July 19, 2017, the Court clearly ordered that "*the Motion to Dismiss for Failure to State a Claim filed by Rios and Gamboa*, and the Motion to Dismiss filed by Bridger Logistics and Ferrellgas, are **DENIED** because *Eddystone's Complaint clearly and adequately alleges colorable claims against each Defendant for Alter Ego*, Intentional Fraudulent Transfer (12 Pa. C. S. § 5104(a)),

Constructive Fraudulent Transfer (12 Pa. C. S. § 5105), and Breach of Fiduciary Duties of Care and Loyalty to Creditors." Order Denying Mot. to Dismiss, July 19, 2017, Dkt. 60 (emphasis added). Given the Court's ruling that Eddystone has adequately pled alter ego claims against both Rios and Gamboa, Eddystone is now entitled to discover facts in support of its claims against each.

Nor is this a "fishing expedition." RG Opp. at 3. The personal financial information Eddystone seeks lies well within the scope of proper discovery for an alter ego claim against an individual. "[C]ourts have held that when a party seeks discovery about the relationships between individuals and a corporation, relevance is broadly and liberally construed." *Abu–Nassar v. Elders Futures Inc.*, 1991 WL 45062 (S.D.N.Y.1991). And where, as here, the plaintiff has alleged a commingling of funds and misuse of corporate assets, personal bank records are typically discoverable. *See, e.g.*, *In re Don's Making Money, LLP*, No. 2:99-BK-07757-CGC, 2008 WL 509531, at *2 (Bankr. D. Ariz. Feb. 19, 2008) (holding, with respect to an alter ego claim, "the Court concludes that any and all personal bank account records and tax returns should be produced for the period stated"); *Luc Vets Diamant v. Akush*, No. 05 CIV.2934 WHP, 2006 WL 258293, at *1–2 (S.D.N.Y. Feb. 3, 2006) (holding that plaintiff who sought to pierce corporate veil and hold sole shareholder personally liable "is entitled to discovery into the personal assets of Akush up to and including the time that AGF was dissolved at the end of April 2004"). That five years may strike Rios and Gamboa as too broad a timeframe for discovery of financial records is immaterial. *Cf. In re Don's Making Money, LLP*, 2008 WL 509531, at *2 (permitting discovery into personal financial records for five years—"the temporal limitation will be 1998 through 2003").

### B. Heavily Redacted Records for the Months Surrounding January 2016 Are Not Adequate

The handful of bank records Rios and Gamboa have produced thus far are completely inadequate. Gamboa has produced bank statements from Business First Bank for the months November 2015 through May 2016, and Rios has produced similar statements for the same time period. However, Rios and Gamboa have redacted these statements almost completely; hardly any information can be gleaned from them. *See* Sloniewsky Decl. Ex. 2 (Bank Statements for J. Rios, Oct. 4, 2017) & Ex. 3 (Bank Statements for J. Gamboa, Oct. 4, 2017). Moreover, Rios and Gamboa have limited their production of bank records to a timeframe—three months before and after January 2016—that is far too narrow.

The period before November 2015 – leading up to the stripping of assets from BTS, Eddystone's counterparty – is highly relevant to Eddystone's claims against Rios and Gamboa. Between May and June 2015, Rios and Gamboa diverted to Bridger Logistics the flow of revenue BTS was earning for moving the crude oil shipments through the Eddystone facility to Monroe, earning them tens of millions of dollars when they sold the now very profitable Bridger Logistics to Ferrellgas, on June 22, 2015. July 2014 through May 2015 is also a critical period for discovery because during that time Rios and Gamboa may have withdrawn for their personal benefit some of the profits the Bridger Group earned under the Monroe contract. And the early period of July 2011 through July 2014 is relevant to Eddystone's alter ego claims against Rios and Gamboa to the extent it may reveal a mishandling of BTS' assets for their personal gain. For example, in July 2013 Rios and Gamboa trumpeted to the public a new equity investment in Bridger. Sloniewsky Decl. Ex. 4 (Bridger Press Release, July 2, 2013). [redacted]

[redacted]

### C. Eddystone Withdraws its Request for Production of Ferrellgas Bank Records

Unlike with the general ledgers, Ferrellgas and Eddystone have resolved their current dispute over consents to the production of bank records. Ferrellgas has agreed to consent to the initial production of bank records for eleven entities, and the Parties will discuss production of records for additional records as needed going forward.

Eddystone notes that Ferrellgas's gratuitous assertion that the motion to compel was improper and the suggestion that counsel were in a position to resolve the bank consents issue as of a September 15 phone call is not accurate. Indeed, Ferrellgas did not consent to the production of bank records for any entity until October 11, 2017, the day before their opposition to Eddystone's motion to compel was due. Sloniewsky Decl. ¶ 6. By that point, Eddystone had hand served nineteen relevant Bridger entities pursuant to a Louisiana bank records statute in an effort to induce the banks to turn over the subpoenaed material. Sloniewsky Decl. ¶¶ 4–6.

## III. The Court Should Overrule Rios and Gamboa's Objection to Discovery Beyond a Few Months Around January 2016

Rios and Gamboa continue to reject a reasonable timeframe for discovery. In their opposition brief, Rios and Gamboa continue to argue that the relevant timeline is "no more than a few months before the sale and a few months after the sale" of BTS to Jamex. RG Opp. at 5. Thus, the relevant timeframe remains a critical issue in dispute in discovery between Eddystone and Rios and Gamboa. Given the alter ego claims, it is necessary for Eddystone to conduct discovery into BTS's formation in July 2011 and into Rios and Gamboa's management of BTS thereafter, until they left Bridger Logistics in November 2016.

Eddystone is entitled to discover from Rios and Gamboa facts surrounding BTS' formation because undercapitalization is an important factor in piercing the corporate veil. Contrary to Rios and Gamboa's protestations that an entity's formation is irrelevant to alter ego liability, courts regularly look to the amount of capital contributed initially to an entity to determine whether it was set up as an independent entity capable of meeting its obligations. In *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743 (7th Cir. 2012), for example, the court imposed alter ego liability based in part on finding that defendants had inadequately capitalized their company upon formation, almost 4 years before the wrongful conduct sued upon occurred. *Id.* at 752. Here, Eddystone has alleged not only that defendants thinly capitalized BTS upon formation but also that they rendered it incapable of independently meeting its obligations in May 2015 when they diverted the revenue it earned under the contract with Monroe, and finally stripped it of any remaining capital in January 2016. In *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW, 2008 WL 4858502, at *4 (N.D. Cal. Nov. 10, 2008), where the plaintiff had alleged that the defendants had kept their company "thinly capitalized by transferring all of these corporations' net income" to another company controlled by the defendants, the court ordered broad discovery into financial information for a three-year period beginning with the entities' formation. Accordingly, Eddystone has a right to discover all financial facts throughout BTS' operating history that may support its alter ego claims against Rios and Gamboa.

Rios's and Gamboa's documents and communications concerning BTS' full operating history are also subject to discovery because Eddystone has alleged a commingling of funds in its alter ego claims. As this Court explained in *Rapp v. Walt Disney Co.*, No. CIV. A. 98-3478, 1998 WL 564491 (E.D. Pa. Sept. 3, 1998) (Kelly, J.), "Evidence that a parent corporation pays

expenses for its subsidiary tends to show the existence of an alter-ego relationship." *Id.* at *3. [redacted] In *Inter-Tel Techs., Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012), the court found an alter ego relationship in similar circumstances, where the corporate grandparent had made rent payments on a lease for which its undercapitalized subsidiary was the obligor but the grandparent and parent derived all the use and benefit from the leased premises. Eddystone is therefore entitled to explore the full extent of this pattern of commingling and the other ways in which BTS' assets may have been mishandled from its inception.

Rios and Gamboa should not be permitted to limit discovery by claiming that the allegations in the complaint are not sufficiently specific. They complain that "Plaintiff's sole argument for such broad discovery is the allegation that the entities were undercapitalized and interrelated, which is based merely on the fact that in 2016 (five years after formation and a year after the entity had been sold) there was no money left to meet obligations owed to Plaintiff." RG Opp. at 5. But Eddystone is not required to allege the details of undercapitalization when the financial records are "uniquely in control of Defendants." *Oldcastle Precast, Inc. v. VPMC, Ltd.*, 2013 WL 1952090, *16 (E.D. Pa. May 13, 2013, Kelly, J.) ("Plaintiff has plead factual allegations that raise a reasonable expectation that *discovery* will reveal evidence of the necessary elements of an alter ego claim.") (emphasis added). Because this Court held that the allegations were sufficient to make out a claim for alter ego liability against Rios and Gamboa, Eddystone is now entitled to the full scope of discovery necessary to develop its alter ego claims. *See Fieldturf Int'l, Inc., Fieldturf, Inc. v. Triexe Mangement Grp., Inc.*, No. 03 C 3512, 2004 WL

866494, at *4 (N.D. Ill. Apr. 16, 2004) (stating in discovery dispute in alter ego case, "It is not surprising the factual record has not been fully developed regarding the relationship among the defendants because the very purpose of discovery is to obtain relevant information"). What limits discovery is not the factual details Eddystone has sufficient evidence to allege thus far in its complaint but the basic elements of its cause of action. Because the documentary evidence Eddystone seeks from Rios and Gamboa relates directly to the elements of an alter ego claim it is properly discoverable.

## CONCLUSION

For these reasons, the Court should grant Eddystone's Motion to Compel Ferrellgas, Rios, and Gamboa.

Dated: October 25, 2017

Respectfully submitted,

/s/ Terence M. Grugan

Henry E. Hockeimer, Jr. (I.D. No. 86768)
Terence M. Grugan (I.D. No. 307211)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
hockeimerh@ballardspahr.com
grugant@ballardspahr.com

Filiberto Agusti (*pro hac vice*)
Jeffrey M. Theodore (*pro hac vice*)
Andrew J. Sloniewsky (*pro hac vice*)
Timothy Work (*pro hac vice*)
Nicholas Petts (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

Telephone: (202) 429-3000
Facsimile: (202) 429-3902
fagusti@steptoe.com
jtheodore@steptoe.com
twork@steptoe.com
npetts@steptoe.com

*Counsel for Eddystone Rail Company, LLC*

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via the Court's ECF system on October 25, 2017, thereby serving all counsel of record.

/s/ Terence M. Grugan
Terence M. Grugan