**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EDDYSTONE RAIL COMPANY, LLC,

       Plaintiff,

    v.

JULIO RIOS and JEREMY GAMBOA,              Civil Action No. 2:17-cv-00495

       Defendants,

BRIDGER LOGISTICS, LLC, FERRELLGAS
PARTNERS, L.P., and FERRELLGAS L.P.,

       Defendants/Third-Party Plaintiffs,

    v.

JAMEX MARKETING, LLC (f/k/a BRIDGER
MARKETING, LLC), JAMEX TRANSFER
HOLDINGS, LLC, JAMEX, LLC (f/k/a
BRIDGER, LLC), JAMEX TRANSFER
SERVICES, LLC (f/k/a BRIDGER TRANSFER
SERVICES, LLC), JAMES BALLENGEE and
JOHN DOES 1–10,

       Third-Party Defendants.

**MEMORANDUM OF LAW AND EXHIBITS IN SUPPORT OF
JAMES BALLENGEE'S MOTION TO DISMISS THIRD-PARTY COMPLAINT**

**TABLE OF CONTENTS**

Page

I.      PRELIMINARY STATEMENT ................................................................1

II.     STATEMENT OF FACTS .....................................................................3

        A.      In February 2016, Jamex Transfer Holdings Purchased BTS with a
                Related Guarantee by Jamex Marketing; Mr. Ballengee was not a Party to
                the Contracts. ................................................................................3

        B.      Eddystone Initiates Arbitration Against JTS; After Arm's-Length
                Negotiations the Parties Settle Their Dispute and Jamex-Affiliated Entities
                are Released. ...................................................................................4

        C.      Bridger-Ferrellgas now Sues Mr. Ballengee in his Individual Capacity for
                Signing the Settlement Agreement with Eddystone. .............................4

III.    ARGUMENT ......................................................................................5

        A.      There is no Personal Jurisdiction over Mr. Ballengee. .........................5

                1.      The Third-Party Complaint Fails to Allege "with Reasonable
                        Particularity" any Facts Showing Contacts Between Mr. Ballengee
                        and Pennsylvania. .................................................................6

                        a.      There is no General Jurisdiction Alleged or Existing over
                                Mr. Ballengee..............................................................7

                        b.      There is no Specific Jurisdiction Because the Claims
                                Involving Mr. Ballengee do not Specifically Involve
                                Pennsylvania. ..............................................................8

                                (i.)    Mr. Ballengee has not "Purposefully Directed" any
                                        Alleged Tortious Interference or Personal Conduct
                                        at Pennsylvania. ...............................................9

                                (ii.)   The Third-Party Claims Against Mr. Ballengee do
                                        not "Arise out of" any Personal Contacts with
                                        Pennsylvania. ...................................................10

                                (iii.)  The Alleged Tortious Conduct was not Aimed at
                                        Pennsylvania. ...................................................13

                        c.      Mr. Ballengee is not Subject to Personal Jurisdiction Based
                                on the Indirect Ownership of a Company Having Contacts
                                with Pennsylvania. .......................................................15

                2.      Exercising Jurisdiction over Mr. Ballengee Would not be
                        Reasonable. .........................................................................17

        B.      The Claims Against Mr. Ballengee Should be Dismissed for Forum Non
                Conveniens...................................................................................18

        C.      The Third-Party Complaint Fails to State a Claim Against Mr. Ballengee..........19

i

1. Count III:  Bridger-Ferrellgas Fails to State a Tortious Interference Claim..............................................................................................................19

  a. The Settlement with Eddystone Benefited the Corporate Entities who are Parties to the PSA and Guarantee. ......................20

  b. Neither Jamex Marketing nor Jamex Transfer Holdings Complained About the Settlement with Eddystone. ......................22

  c. Tortious Interference does not Exist Due to a Failure to State a Claim for Breach of the PSA (Count I) or Guarantee (Count III). ....................................................................................................22

2. Count IV:  Bridger-Ferrellgas Fails to State a Claim for Contribution. ...........................................................................................................23

IV. CONCLUSION......................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987).................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................4

*Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*,
    413 F. Supp. 2d 410 (E.D. Pa. 2005) ......................................................10

*Blackwell v. Marina Assocs.*,
    2006 WL 573793 (E.D. Pa. Mar. 9, 2006).................................................7

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................6, 9

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)...................................................................19

*Burry v. Cach LLC*,
    2015 WL 328182 (E.D. Pa. Jan. 22, 2015) .............................................11

*Butnaru v. Ford Motor Co.*,
    84 S.W.3d 198 (Tex. 2002)......................................................................20

*In re Chocolate Confectionary Antitrust Litig.*,
    641 F. Supp. 2d 367 (M.D. Pa. 2009) .......................................................7

*Cintron Beverage Grp., LLP v. Aoun*,
    2011 WL 3156584 (E.D. Pa. July 26, 2011).............................................11

*D'Onofrio v. Il Mattino*,
    430 F. Supp. 2d 431 (E.D. Pa. 2006) ........................................................6

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)................................................................................7

*Eagle Traffic Control, Inc. v. James Julian, Inc.*,
    933 F. Supp. 1251 (E.D. Pa. 1996) ...........................................................9

*Eaton Corp. v. Maslym Holding Co.*,
    929 F. Supp. 792 (D.N.J. 1996) ................................................................18

*In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) .............................1

*Escude Cruz v. Ortho Pharm. Corp.*,
    619 F.2d 902 (1st Cir. 1980) ................................................................15

*Gen. Elec. Co. v. Deutz AG*,
    270 F.3d 144 (3d Cir. 2001)................................................................9

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
    466 U.S. 408 (1984) ................................................................6

*Holloway v. Skinner*,
    898 S.W.2d 793 (Tex. 1995)................................................................20

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998)................................................6, 13, 14

*Junge v. Wheeling Island Gaming, Inc.*,
    2010 WL 4537052 (W.D. Pa. Nov. 2, 2010) ........................................11

*Kachur v. Yugo Am., Inc.*,
    632 A.2d 1297 (Pa. 1993) ................................................................9

*Kehm Oil Co. v. Texaco, Inc.*,
    537 F.3d 290 (3d Cir. 2008)................................................................15

*Koken v. Pension Benefit Guar. Corp.*,
    430 F. Supp. 2d 493 (E.D. Pa. 2006) ................................................5

*Koresko v. Crosswhite*,
    2006 WL 263623 (E.D. Pa. Feb. 1, 2006) ........................................5

*Manning v. Flannery*,
    2010 WL 55295 (E.D. Pa. Jan. 6, 2010) ........................................13

*Marks v. Alfa Grp.*,
    2009 WL 1838358 (E.D. Pa. June 25, 2009) ........................................5

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007)................................................................14

*N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.*,
    515 F. App'x 176 (3d Cir. 2013) ................................................15

*Papasan v. Allain*,
   478 U.S. 265 (1986) .......................................................................................16

*Pearson v. Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001) ...........................................................................16

*Powell Indus., Inc. v. Allen*,
   985 S.W.2d 455 (Tex. 1998) ...............................................................20, 21, 22

*Radmore v. Aegis Commc'ns Grp., Inc.*,
   2008 WL 5129895 (E.D. Pa. Dec. 4, 2008),
   *aff'd*, 346 F. App'x 835 (3d Cir. 2009) .....................................................5, 15, 16

*Rush v. Savchuk*,
   444 U.S. 320 (1980) .......................................................................................15

*Saudi v. Acomarit Mars. Servs., S.A.*,
   114 F. App'x 449 (3d Cir. 2004) .....................................................................11

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ...........................................................................19

*Selas Fluid Processing Corp. v. Spilman*,
   2006 WL 890818 (E.D. Pa. Apr. 3, 2006) .......................................................11

*Sheet Metal Workers' Int'l Ass'n Local Union No. 19 v. Main Line Mech., Inc.*,
   2013 WL 867123 (E.D. Pa. Mar. 7, 2013) .......................................................16

*Sherk v. Countrywide Home Loans, Inc.*,
   2009 WL 2412750 (E.D. Pa. Aug. 5, 2009) .....................................................19

*Surgical Laser Technologies v. C.R. Bard, Inc*,
   921 F. Supp. 281 (E.D. Pa. 1996) ............................................................11, 12, 13

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
   75 F.3d 147 (3d Cir. 1996) .......................................................................6, 8, 9, 10

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) .....................................................................................8

*World-Wide Volkswagen v. Woodson*,
   444 U.S. 286 (1980) .....................................................................................9, 10

**Statutes, Rules**

42 PA. CONS. STAT. ANN. § 5301(a)(1) ......................................................................7

42 PA. CONS. STAT. ANN. § 5322 ....................................................................... 6, 7

FED. R. CIV. P. 4(e) ....................................................................................................6

Fed. R. Civ. P. 12(b)(2) ..................................................................................... 1, 5, 23

FED. R. CIV. P. 12(b)(6) .................................................................................. *passim*

James Ballengee ("Mr. Ballengee") files this memorandum of law in support of his Motion to Dismiss the Third-Party Complaint [Dkt. No. 69/70] (cited herein as "TPC") of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P. (collectively "Bridger-Ferrellgas") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## I.   PRELIMINARY STATEMENT

Bridger-Ferrellgas's decision to name Mr. Ballengee—in his individual capacity—as a third-party defendant is baseless.  The Third-Party Complaint consists of conclusory allegations that fail to meet basic pleading standards and otherwise directly negate the claims asserted.

As a threshold matter, however, this Court does not have personal jurisdiction over Mr. Ballengee.  The Declaration of James H. Ballengee, attached as **Exhibit A** and incorporated by reference,[1] shows that he does not have (and never has had) contacts with Pennsylvania in a personal capacity.  Further, the jurisdictional facts alleged in the Third-Party Complaint fail to demonstrate either general or specific jurisdiction.  There are no allegations, nor any that could in good faith be made, that Mr. Ballengee is "at home" in Pennsylvania or that he "purposefully directed" his individual activities towards Pennsylvania.  The only jurisdictional allegation is that Mr. Ballengee is an indirect owner of the company (BTS/JTS[2]) that had a contract with Plaintiff Eddystone Rail Company LLC ("Eddystone").  [*See* TPC ¶ 5.]  But courts in Pennsylvania hold that one's status as an owner does not establish personal jurisdiction—or liability for that matter—for the alleged acts of a subsidiary, and the claim for tortious interference against Mr. Ballengee in his personal capacity involves contracts negotiated and entered into in Texas, between Texas companies, that do not directly "arise out of" activities in Pennsylvania.  For

---

[1] *See In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010) (for Rule 12(b)(2), court "must look beyond the allegations in the pleadings"), *aff'd*, 683 F.3d 462 (3d Cir. 2012).

[2] **For clarity, Jamex Transfer Services LLC (f/k/a Bridger Transfer Services LLC) is referred to as "BTS" when it was owned by Bridger-Ferrellgas *prior* to the sale on February 22, 2016, and as "JTS" once it afterwards became owned by Jamex Transfer Holdings and was renamed with the Jamex brand.**

these reasons Bridger-Ferrellgas has not met, and cannot meet, the burden of establishing personal jurisdiction over Mr. Ballengee in his individual capacity.

Moreover, the causes of action against Mr. Ballengee should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. The claim against Mr. Ballengee for tortious interference (Count III) alleges that, by entering into a settlement/release agreement related to a New York arbitration between Eddystone and JTS (a subsidiary at least four levels removed), Mr. Ballengee tortiously interfered with the two contracts that form the basis for Counts I and II of the Third-Party Complaint—i.e., a Purchase and Sale Agreement dated February 22, 2016 (the "PSA," attached as **Exhibit B**) and a related Guarantee given by Jamex Marketing as of the same date (the "Guarantee," attached as **Exhibit C**). However, under Texas law (which governs both contracts),[3] a corporate agent's "mixed motives" to benefit himself as well as his company are insufficient to establish tortious interference as a matter of law. The Third-Party Complaint explicitly alleges the settlement/release benefited not only Mr. Ballengee, but Jamex Transfer Holdings LLC and Jamex Marketing LLC as well—the two entities that are parties to the PSA and Guarantee (respectively). As a result, the allegations are fatal to a claim for tortious interference under Texas law and Count III should be dismissed.

Mr. Ballengee further joins in the Motion to Dismiss the Third-Party Complaint contemporaneously filed by Jamex LLC, Jamex Marketing LLC, Jamex Transfer Holdings LLC, and Jamex Transfer Services LLC (collectively, the "Jamex Entities") on several grounds. First, that Bridger-Ferrellgas fails to state a claim as to breach of the PSA (Count I). Count II and Count III are entirely dependent on the existence of a breach as to the PSA. Therefore, if Count I is dismissed on any basis, then Count III against Mr. Ballengee must be dismissed as well.

---

[3] *See* TPC ¶¶ 27 n.1, 35 n.2 (alleging Texas law governs both contracts); *see also* Ex. B § 10.12; Ex. C § 8.

Second, Mr. Ballengee joins in the Jamex Entities' argument that Bridger-Ferrellgas fails to state a "contingent" claim for contribution (Count IV) based on a conclusory alter ego allegation. The arguments for all Third-Party Defendants subject to Count IV are the same, so they are not repeated in this motion. Finally, Mr. Ballengee joins in the Jamex Entities' motion to dismiss on *forum non conveniens* grounds given the intertwined facts of the claims and remote public interest Pennsylvania has in a third-party indemnity dispute between Texas companies. Those arguments are the same between all Third-Party Defendants, and thus not repeated here either.

## II.   STATEMENT OF FACTS[4]

### A.   In February 2016, Jamex Transfer Holdings Purchased BTS with a Related Guarantee by Jamex Marketing; Mr. Ballengee was not a Party to the Contracts.

On February 22, 2016, Bridger Logistics and Jamex Transfer Holdings (with Ferrellgas's "consent") entered into the PSA that serves as the primary basis for this indemnity dispute. [*See* Ex. B at 1, signature pages.] The agreement provided for Bridger Logistics to transfer all ownership interests in BTS to Jamex Transfer Holdings. [*See id.* § 2.1(b).] The PSA was executed by Mr. Ballengee solely as a manager of Jamex Transfer Holdings [*id.* at signature pages]; as such, Mr. Ballengee is not alleged to be a party to the PSA. [*See* TPC ¶ 33.]

In conjunction with the PSA, Jamex Marketing entered into a related Guarantee on February 22, 2016. [*See* Ex. C at 1.] Section 4(a) provided that it was guaranteeing the "prompt and complete performance of [Jamex Transfer Holdings'] obligations and liabilities, under the provisions of BTS Transfer Document." [*See id.* § 4(a).] Again, the Guarantee was executed by Mr. Ballengee solely in his capacity as a manager of Jamex Marketing [*id.* at signature pages] and Mr. Ballengee is not alleged to be a party to the Guarantee. [TPC ¶ 38.]

---

[4] These "facts" are largely derived from the allegations of Bridger-Ferrellgas. By making this motion the Third-Party Defendants do not adopt the allegations of the Third-Party Complaint and reserve all rights to deny the inaccuracies alleged by Bridger-Ferrellgas in accordance with the Federal Rules of Civil Procedure.

**B.      Eddystone Initiates Arbitration Against JTS; After Arm's-Length Negotiations the Parties Settle Their Dispute and Jamex-Affiliated Entities are Released.**

On April 19, 2016, Eddystone initiated an arbitration against the newly-purchased and renamed JTS before the Society of Maritime Arbitrators ("SMA").  [*See* TPC ¶ 43.]  Neither Mr. Ballengee nor Jamex Marketing/Jamex Transfer Holdings were parties to the arbitration.  The arbitration was litigated through 2016 until January 5, 2017, when, after a month of arm's-length negotiation, the Third-Party Defendants entered into a settlement with Eddystone.  [*Id.* ¶¶ 48-51.]  Under the terms of the settlement JTS agreed not to oppose entry of a final award against it for a discounted present value of $139,050,406.77.  [*Id.* ¶ 46]  For additional consideration paid to Eddystone, the other Third-Party Defendants—including Mr. Ballengee in his individual capacity—were released from any and all follow-on claims.  [*Id.* ¶¶ 50-52.]

On January 24, 2017, the SMA panel issued its final award holding JTS (and solely JTS) liable for its obligations under the Eddystone Agreement.  [*Id.* ¶ 56.]  Bridger-Ferrellgas now alleges the settlement and final award was "collusive."  [*Id.* ¶¶ 46, 51, 64.]  However, such characterization of an arm's length-negotiation undertaken for legitimate business reasons and providing real value to the Jamex entities is conclusory and not entitled to any weight.[5]

**C.      Bridger-Ferrellgas now Sues Mr. Ballengee in his Individual Capacity for Signing the Settlement Agreement with Eddystone.**

On February 2, 2017, Eddystone filed its Complaint initiating this action seeking to recover damages allegedly resulting from actions taken *by* Bridger-Ferrellgas *prior to* the sale of BTS.  [TPC ¶¶ 59–63.]  In response, Bridger-Ferrellgas seeks to drag in the Third-Party Defendants with dubious allegations that Jamex Transfer Holdings promised to "assume" and "perform" the Eddystone Agreement [*see id.* ¶¶ 6, 39, 41, 42, 70, 77], that Mr. Ballengee

---

[5] Conclusory allegations of law, inferences unsupported by facts, or a formulaic recitation of the elements in a complaint will not defeat a motion under Federal Rule of Civil Procedure 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

tortiously interfered with that nonexistent obligation [*see id.* ¶¶ 95-104], and that a bevy of identified and unidentified entities should be held jointly responsible for Bridger-Ferrellgas's actions during a time when it was admittedly the sole owner of BTS.  [*See id.* ¶¶ 24-25.]  The claims are baseless and should be dismissed.

## III.    ARGUMENT

### A.    There is no Personal Jurisdiction over Mr. Ballengee.

As a threshold matter, this Court should dismiss all claims against Mr. Ballengee due to a lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  Upon such a motion, the plaintiff (i.e., Bridger-Ferrellgas in this context) bears "the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction."  *Koresko v. Crosswhite*, 2006 WL 263623, at *2 (E.D. Pa. Feb. 1, 2006) (citing *N. Penn Gas Co. v. Corning Nat. Gas*, 897 F.2d 687, 689 (3d Cir. 1990).  Bridger-Ferrellgas's burden is substantial, as previously noted by a court in this district:

> After the defendant has raised a jurisdictional defense, the plaintiff bears the burden of coming forward with enough *evidence* to establish, *with reasonable particularity*, sufficient contacts between the defendant and the forum.  The plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction.  Once the motion is made, plaintiff must respond with *actual proofs*, not mere allegations.

*Koken v. Pension Benefit Guar. Corp.*, 430 F. Supp. 2d 493, 497-98 (E.D. Pa. 2006) (emphasis added and citations omitted).[6]  That burden is not met here.

---

[6] *See also Marks v. Alfa Grp.*, 2009 WL 1838358, at *1 (E.D. Pa. June 25, 2009) ("[T]he plaintiff must allege 'specific facts' rather than vague or conclusory assertions."); *Radmore v. Aegis Commc'ns Grp., Inc.*, 2008 WL 5129895, at *2 (E.D. Pa. Dec. 4, 2008) ("[Plaintiff] bears the burden of demonstrating facts establishing a basis for the exercise of jurisdiction.  Bald assertions and legal conclusions are insufficient and [plaintiff] must show the existence of sufficient contacts between each defendant and the forum.  Thus, . . . [plaintiff] must present 'competent evidence' showing that each defendant has the requisite minimal contacts with the forum to warrant the exercise of personal jurisdiction over each defendant." (citation omitted), *aff'd*, 346 F. App'x 835 (3d Cir. 2009).

1.      **The Third-Party Complaint Fails to Allege "with Reasonable Particularity" any Facts Showing Contacts Between Mr. Ballengee and Pennsylvania.**

Generally, "to exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998).  First, the court must ascertain whether the relevant state long-arm statute permits the exercise of personal jurisdiction.  FED. R. CIV. P. 4(e) (2005); *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 439 (E.D. Pa. 2006) (noting court may assert jurisdiction "over non-resident defendants to the extent permissible under the law of the state where the district court sits").  Second, the court must determine if the exercise of jurisdiction comports with the Due Process Clause of the Constitution.  *IMO Indus.*, 155 F.3d at 259.  In Pennsylvania the inquiry collapses into a single step because Pennsylvania's long-arm statute is coextensive with constitutional due process.  *See* 42 PA. CONS. STAT. ANN. § 5322 (West 2005); *D'Onofrio*, 430 F. Supp. 2d at 439.

The due process limits on the exercise of personal jurisdiction are further defined by a two-prong test.  First, the defendant must have purposefully established "minimum contacts" with the forum and, second, if minimum contacts are shown, the court must determine whether personal jurisdiction is consistent with notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985).  Determining minimum contacts requires "an examination of the relationship among the forum, the defendant and the litigation." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). Minimum contacts may exist if the particular cause sued upon arose from the defendant's activities in the forum state (specific jurisdiction) or the defendant has "continuous and systematic" contacts with the forum state (general jurisdiction).  *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984).

Here, Bridger-Ferrellgas has not alleged, and cannot establish, the requisite contacts between Pennsylvania and Mr. Ballengee and requiring him to defend this action in Pennsylvania is not consistent with fair play and substantial justice.

### a.   There is no General Jurisdiction Alleged or Existing over Mr. Ballengee.

Pennsylvania's general jurisdiction statute sets forth the type of relationships that constitute a sufficient basis for the exercise of general jurisdiction over a non-resident; that is, the statute lists the activities that will permit an individual to be sued in Pennsylvania for any reason:

(i)    Presence in this Commonwealth at the time when process is served.

(ii)   Domicile in this Commonwealth at the time when process is served.

(iii)  Consent, to the extent authorized by consent.

42 PA. CONS. STAT. ANN. § 5301(a)(1).  According to the Supreme Court, general jurisdiction requires affiliations with the forum to be so continuous and systematic as to render the person essentially "at home" in the state.  *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  An individual is considered at home where he is domiciled.  *Id.* at 760.  Therefore, the "threshold showing for establishing general jurisdiction is very high, and requires a showing of extensive and pervasive facts demonstrating connections with the forum state."  *Blackwell v. Marina Assocs.*, 2006 WL 573793, at *3 (E.D. Pa. Mar. 9, 2006); *see also In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 383 (M.D. Pa. 2009) ("The defendant must maintain perpetual, abiding ties with the forum.  Sporadic, ephemeral, or deciduous contacts do not suffice.").

Mr. Ballengee has none of the relationships with Pennsylvania specified in 42 PA. CONS. STAT. ANN. § 5301(a)(1), nor does he have any contacts with Pennsylvania to be considered "at home" in the forum under relevant federal law.  Bridger-Ferrellgas does not even allege general jurisdiction exists or that Mr. Ballengee now has, or has ever had, any "continuous and

systematic" contacts with Pennsylvania such that he is "at home" there.  [*See* TPC ¶¶ 4–7.]

There is no basis to make such a claim either.  As stated in the attached Declaration of James H.

Ballengee (Exhibit A), he has no contacts with Pennsylvania that would constitute a sufficient

basis for the exercise of general jurisdiction under the long-arm statute cited above.  He was not

present in Pennsylvania at the time suit was initiated, has never been domiciled in Pennsylvania,

and has not consented to the exercise of jurisdiction by Pennsylvania courts.  [*See* Ex. A ¶ 4.]

Moreover, Mr. Ballengee is not "at home" in Pennsylvania:

- He does not reside in Pennsylvania; has never owned or leased property in Pennsylvania; never paid personal taxes in Pennsylvania; never held any licenses from Pennsylvania; and is not registered to vote in Pennsylvania.

- He does not own any business incorporated in or with its principal place of business in Pennsylvania; never employed anyone based in Pennsylvania; never personally had any contracts with Pennsylvania residents; and never personally transacted business in Pennsylvania.

- He has never accepted an election or appointment or exercised powers under the authority of Pennsylvania; and never applied for a license, certificate, or similar instrument in Pennsylvania.

- He does not maintain an office, mailing address, or telephone number in Pennsylvania; does not own any assets or investments in Pennsylvania; or own any bank, investment, or savings accounts in Pennsylvania.

- He has never personally sued a Pennsylvania resident or previously participated in any lawsuit in Pennsylvania.

[*Id.*]  In short, there are no contacts between Mr. Ballengee and Pennsylvania sufficient to

establish general jurisdiction over him.

### b.   There is no Specific Jurisdiction Because the Claims Involving Mr. Ballengee do not Specifically Involve Pennsylvania.

A defendant may be subject to specific jurisdiction only "when the cause of action arises

from the defendant's forum related activities."  *Vetrotex*, 75 F.3d at 151; *see also Walden v.*

*Fiore*, 134 S. Ct. 1115, 1122 (2014) (cause of action must "arise out of contacts that the

defendant *himself* creates with the forum state") (emphasis in original).  In addition, "a plaintiff must show that the defendant has minimum contacts with the state such that the defendant should reasonably anticipate being haled into court there."  *Vetrotex*, 75 F.3d at 151.  Thus, "[s]pecific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).

Bridger-Ferrellgas cannot establish the "purposeful" contacts required for specific jurisdiction.  Even if it could, this Court still would not have jurisdiction over Mr. Ballengee because Bridger-Ferrellgas's claims do not arise out of any contacts with Pennsylvania.

> *(i.)*   *Mr. Ballengee has not "Purposefully Directed" any Alleged Tortious Interference or Personal Conduct at Pennsylvania.*

Purposeful availment requires more than the mere foreseeability of causing injury in another state.  *Burger King*, 471 U.S. at 474.  Instead, it is designed "to ensure that jurisdiction would not be based on 'random', 'fortuitous' or 'attenuated' contacts, or on the 'unilateral activity of another party or a third person.'"  *Kachur v. Yugo Am., Inc.*, 632 A.2d 1297, 1300 (Pa. 1993).  To meet that standard, the Constitution requires an "affirmative act" by which "the defendant purposefully avails itself of the privilege of conducting activities within the forum state."  *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 933 F. Supp. 1251, 1255 (E.D. Pa. 1996) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  This requirement helps to safeguard the "orderly administration of the laws" by providing "a degree of predictably to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980) (quoting *Int'l Shoe Co. v. State*

*of Wash.,* 326 U.S. 310, 319 (1945)).  Indeed, the "defendant's conduct and connection with the

forum State [must be] such that he should reasonably anticipate being haled into court there."  *Id.*

As noted above, Mr. Ballengee has not invoked legal process in Pennsylvania; has never

personally transacted business in Pennsylvania; does not maintain an office or employees in

Pennsylvania; and does not own or lease property in Pennsylvania.  [*See* Ex. A ¶ 4.]  He has no

contacts to Pennsylvania in his personal capacity.  [*See id.*]  This lack of contacts belies any

notion that he has somehow purposefully availed himself of the benefits and privileges of

Pennsylvania.  *See, e.g.*, *Vetrotex*, 75 F.3d at 148 ( (holding defendant did not purposefully direct

its activities toward Pennsylvania for purposes of specific jurisdiction even though it had entered

into contract with a Pennsylvania-based corporation); *Bhd. of Locomotive Eng'rs & Trainmen v.

United Transp. Union*, 413 F. Supp. 2d 410, 413–14 (E.D. Pa. 2005) (rejecting argument

defendant was subject to specific jurisdiction on allegation "it purposefully directed its activities

at Pennsylvania residents" by negotiating and entering into a contract that affected the terms and

conditions of employment for Pennsylvania residents.)

Indeed, if Bridger-Ferrellgas is permitted to continue its claims against Mr. Ballengee in

his personal capacity in Pennsylvania, a jurisdiction in which he has not been present since 2014

in relation to Eddystone (and, even then, only as an officer of Bridger Logistics at the time) [*see*

Ex. A ¶ 8], any corporate officer's ability to structure their conduct would be thrown into

disarray.  Mr. Ballengee simply has not engaged in any act in his individual capacity in

Pennsylvania such that he should "reasonably anticipate" being personally "haled" into court.

> *(ii.)*   *The Third-Party Claims Against Mr. Ballengee do not "Arise out
>         of" any Personal Contacts with Pennsylvania.*

Even if there were purposeful availment in general, the Third Circuit requires the analysis

to further "zero in on" whether the claims actually "arise from" the purposeful availment.  *See*

*Burry v. Cach LLC*, 2015 WL 328182, at *5 (E.D. Pa. Jan. 22, 2015). Though the Third Circuit has not settled on a specific rule to test "relatedness," it has advised that the inquiry should begin with a "but-for" causation test. *Id.* The inquiry does not end there, however, because "specific jurisdiction requires a closer and more direct causal connection than that provided by the 'but-for test.'" *Id.* As such, courts in the Third Circuit routinely dismiss claims—like the one at present—that do not arise out of a defendant's contacts with the relevant forum.[7]

The decision in *Surgical Laser Technologies v. C.R. Bard, Inc.* is directly on point. 921 F. Supp. 281 (E.D. Pa. 1996). There the defendant, Trimedyne, allegedly attempted to sabotage a contract between the plaintiff, Surgical Laser Technologies (SLT), and its foreign distributor. For personal jurisdiction the complaint alleged that agents of Trimedyne visited SLT in Pennsylvania to negotiate and obtain licenses to use certain medical devices, and engaged in communications directed at Pennsylvania. *Id.* at 284. The court, however, determined it could not exercise general or specific jurisdiction because the alleged contacts did "not relate to plaintiff's claims against Trimedyne [including tortious interference] and are not therefore relevant to the question of specific jurisdiction." *Id.* at 284. In rejecting specific jurisdiction, the court emphasized Trimedyne's contacts in Pennsylvania did not relate to SLT's claims:

> Trimedyne has not directed any activity at Pennsylvania: no negotiation, no bid, no bargain, no benefit, no breach, no betrayal. *Its alleged interference with SLT's contract took place in India, half a world away. Its alleged receipt of SLT's trade secrets similarly took place outside of Pennsylvania* [in New Jersey]. While Trimedyne could have reasonably foreseen that either of these activities would cause harm to SLT in Pennsylvania, this knowledge, standing alone, does not

---

[7] *See, e.g., Saudi v. Acomarit Mars. Servs., S.A.*, 114 F. App'x 449, 453 (3d Cir. 2004) (holding "Saudi's alleged injury did not arise from any activities Acomarit 'purposefully directed' at Pennsylvania"); *Cintron Beverage Grp., LLP v. Aoun*, 2011 WL 3156584, at *4 (E.D. Pa. July 26, 2011) (finding "the claim in the present case arose in Michigan where GFDI failed to remit payment to Cintron in Pennsylvania. Thus, the present litigation did not arise out of the activities GFDI directed toward Pennsylvania."); *Junge v. Wheeling Island Gaming, Inc.*, 2010 WL 4537052, at *1 (W.D. Pa. Nov. 2, 2010) (declining jurisdiction because it was clear from complaint that plaintiff's injuries "did not arise out of" defendant's alleged contacts with Pennsylvania); *Selas Fluid Processing Corp. v. Spilman*, 2006 WL 890818, at *3 (E.D. Pa. Apr. 3, 2006) (same).

establish the minimum contacts required for a Pennsylvania court to exercise jurisdiction.

*Id.* at 285 (emphasis added).

Here, Bridger-Ferrellgas alleges in similar fashion that Mr. Ballengee tortiously interfered with Jamex Transfer Holdings' contractual obligations under the PSA (and Jamex Marketing's derivative obligations under the Guarantee) by entering into a settlement with Eddystone. [*See* TPC ¶¶ 2, 95–104.] These allegations, however, do not directly arise out of any jurisdictional contacts in Pennsylvania. As occurred in *Surgical Laser*, Mr. Ballengee's alleged interference with the PSA and Guarantee took place "half a world away" in Texas where he considered and entered into a settlement agreement related to the New York arbitration [*see* Ex. A ¶¶ 12-13], and any alleged knowledge of harm resulting to Bridger-Ferrellgas—which are entities all based in either Texas or Kansas—by a breach of the PSA and Guarantee (both of which are Texas contracts) does not, as *Surgical Laser* ruled, "standing alone … establish the minimum contacts" required for jurisdiction. *See* 921 F. Supp. at 285; *id.* at 284 n.2 (noting claim contrasted "by a situation where plaintiff might claim that Trimedyne's alleged efforts to sabotage the contract with the Indian distributor took place in Pennsylvania. In that case, the claim, tortious interference, would arise out of the defendant's contact with the forum state").

In reality, the only jurisdictional contacts referenced in the Third-Party Complaint that relate to Pennsylvania are references about Mr. Ballengee having taken part in the negotiation of the Eddystone Contract in February 2013, apparently for the purposes of the contribution claim. [*See* TPC ¶¶ 5-6, 107-08.] There is no allegation, however, that Mr. Ballengee undertook those negotiations in his own personal capacity and, in fact, those were all done solely as an officer of Bridger Logistics (when Mr. Ballengee was formerly affiliated with that company prior to June 2015). [*See* Ex. A ¶¶ 8-9.] As a result, there is no specific jurisdiction on that basis. Activities

by a corporate agent related to Eddystone in 2013 cannot serve as the basis for personal jurisdiction over that individual in his personal capacity for alleged tortious interference with a Texas contract (between Texas companies) in 2017, and "are therefore not relevant to the question of specific jurisdiction." *See Surgical Laser Techs.*, 921 F. Supp. at 284.

The only personal contacts that could matter for specific jurisdiction are those related to the PSA and Guarantee that Mr. Ballengee is alleged to have personally interfered with. Indeed, if those two contracts did not exist there would be no tortious interference claim. Mr. Ballengee's actions with regards to those contracts did not take place in Pennsylvania in any regard [*see* Ex. A ¶¶ 10-13], nor does the Third-Party Complaint allege they did. As a result, Bridger-Ferrellgas cannot satisfy its burden of establishing specific jurisdiction.

(iii.)   <u>The Alleged Tortious Conduct was not Aimed at Pennsylvania.</u>

When an injury is the result of an intentional tort, there is an alternative specific jurisdiction inquiry known as the *Calder* effects test that may apply. *See Manning v. Flannery*, 2010 WL 55295, at *9 (E.D. Pa. Jan. 6, 2010). Generally, "under *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc.*, 155 F.3d at 260. However, the *Calder* effects test is stringent and requires each and every one of the following conditions to be met:

1.   the defendant committed an intentional tort;

2.   the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and

3.   the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

13

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).  In order to satisfy the third prong of the test in particular, "the plaintiff must show that the defendant knew that the plaintiff would suffer the *brunt* of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  *IMO Indus.*, Inc., 155 F.3d at 266 (emphasis added).  If a plaintiff "fails to show that the defendant manifested behavior intentionally targeted at and focused on the forum, the plaintiff fails to establish jurisdiction under the effects test."  *Marten*, 499 F.3d at 298.

Bridger-Ferrellgas fails to allege, and cannot demonstrate, that Mr. Ballengee "expressly aimed" any tortious conduct at Pennsylvania.  The claim is that Bridger-Ferrellgas was damaged by Mr. Ballengee's "tortious interference with the BTS PSA and the Guarantee."  [TPC ¶ 104.] But Mr. Ballengee did not negotiate, draft, or sign the PSA or Guarantee in Pennsylvania [Ex. A ¶¶ 10-11], and, as admitted in the Third-Party Complaint, Mr. Ballengee is not a party to those contracts in his personal capacity.  [TPC ¶¶ 33, 38.]  Those contracts were entered into in Texas and contain Texas choice of law and venue provisions.  [Ex. A ¶¶ 10-11; *see also* Ex. B § 10.12; Ex. C § 8.]  There are no well-pled allegations that Mr. Ballengee "expressly aimed" any alleged tortious conduct at Bridger-Ferrellgas in Pennsylvania.  *See IMO Indus.*, 155 F.3d at 267 (concluding *Calder* test not met because alleged tortious interference involved deal negotiated outside forum).  None of the signatories of the contracts on either side were based in Pennsylvania.  Indeed, Bridger Logistics is headquartered in Texas and Ferrellgas in Kansas.  As a result, if there were any tortious conduct that existed (and there is not) to aim at them, then it would at best be aimed where they reside in Texas and/or Kansas.

14

In sum, Pennsylvania is not the focal point of either the alleged tortious interference or any harm directed at Bridger-Ferrellgas. Therefore, jurisdiction over Mr. Ballengee in Pennsylvania is not proper based on any supposed "effects" of the alleged tortious interference.

### c.   Mr. Ballengee is not Subject to Personal Jurisdiction Based on the Indirect Ownership of a Company Having Contacts with Pennsylvania.

To the extent the Third-Party Complaint asserts jurisdiction over Mr. Ballengee based on his status as an indirect owner of the Jamex Entities, those allegations are also insufficient.

For purposes of personal jurisdiction, each defendant's contacts with the forum must be assessed individually. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe*, however, must be met as to *each defendant* over whom a state court exercises jurisdiction." (emphasis added). "[T]he mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary," *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980) (cited approvingly by *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3d Cir. 2008)).

The only exception is when a parent "controls" the subsidiary such that the subsidiary is an alter ego of the parent. *Id.* at 300; *see also Radmore v. Aegis Commc'ns Grp., Inc.*, 2008 WL 5129895 at *3 (E.D. Pa. Dec. 4, 2008), *aff'd*, 346 F. App'x 835 (3d Cir. 2009) ("To warrant imputing the subsidiary's contacts for jurisdiction, the parent must control the business operations and affairs of the subsidiary, effectively making it the parent's alter ego."). To meet that standard, however, there must be more than "mere majority or complete stock control." Instead, the parent must exercise "complete domination" not over just the "finances" of a company, "but of policy and business practice[s]" such that the subsidiary had "no separate mind, will or existence of its own." *N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.*, 515 F. App'x 176, 180 (3d Cir. 2013). Further, there is an "extremely high burden" when it

comes to establishing parent liability.  *See, e.g.*, *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) (observing burden of proving alter ego under the traditional test "is notoriously difficult for plaintiffs to meet"); *Sheet Metal Workers' Int'l Ass'n Local Union No. 19 v. Main Line Mech., Inc.*, 2013 WL 867123, at *4 (E.D. Pa. Mar. 7, 2013) ("The traditional corporate alter ego test places an extremely high burden on plaintiffs attempting to pierce the corporate veil.").  The standard requires, at a minimum, specific allegations connecting Mr. Ballengee individually as to things such as "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder."  *Pearson*, 247 F.3d at 484–85.

Here, Bridger-Ferrellgas does not allege Mr. Ballengee is an alter ego of Jamex Marketing or Jamex Transfer Holdings.  Quite the contrary, Bridger-Ferrellgas expressly alleges it is "not seeking to hold any other Jamex corporate entity derivatively responsible or to affirmatively pierce the corporate veil of any such Jamex entity."  [*See* TPC ¶ 1.]   The Third-Party Complaint only generically asserts for the purposes of its contribution claim, on a wholly "contingent" basis, that, "[i]f a judgment is issued against any or all of the Third-Party Plaintiffs on the grounds that they are the alter ego of BTS … Ballengee … should also be adjudged" an alter ego.  [*See id.* ¶ 107.]  Such a contingent, conclusory allegation is not sufficient.  As the Supreme Court has held, courts are "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The allegation of alter ego is divorced from any factual basis.  As a result there is no jurisdiction over Mr. Ballengee as an alter ego.  *See, e.g.*, *Radmore*, 2008 WL 5129895 at *3 (rejecting attempt to impute to parent the

16

jurisdictional contacts of its wholly-owned subsidiaries because plaintiff "failed to provide any evidentiary basis for concluding that [parent entity] is the alter ego of [children entities]" and plaintiff had "not pleaded or established any of the indicia of an alter ego relationship"). Bridger-Ferrellgas has entirely failed to allege—nor can it establish—personal jurisdiction over Mr. Ballengee on the basis of any other entity's contacts with Pennsylvania.

2.      **Exercising Jurisdiction over Mr. Ballengee Would not be Reasonable.**

The precepts of "fair play" and "substantial justice" pronounced in *International Shoe* and its progeny require the Court to examine the reasonableness of exercising personal jurisdiction in the particular case at hand. 326 U.S. at 316. In doing so, the Court must consider: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the efficient resolution of controversies between the states; and (5) the shared interests of the states in furthering fundamental, substantive social policies. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987).

In the instant case, an examination of these factors does not need to go no further than the first and second; namely, the burden on the defendant and the forum state's interest in adjudicating the dispute. Mr. Ballengee lives in Texas and, as explained in his Declaration, he has no personal contacts with Pennsylvania. [*See* Ex. A ¶ 4.] In addition, the interests of Pennsylvania do not weigh heavily because the relationship between the third parties at issue was not commenced in Pennsylvania and any alleged tortious interference did not occur in Pennsylvania. The agreements alleged to have been interfered with—the PSA and Guarantee— were not performed in Pennsylvania, contain only Texas choice of law and forum-selection

provisions,[8] and involved parties neither headquartered nor domiciled in Pennsylvania. [TPC ¶¶ 9–14.]  Given the absence of Mr. Ballengee's contacts with Pennsylvania and Pennsylvania's lack of interest in adjudicating this third-party dispute, it would strain the bounds of reasonableness to force Mr. Ballengee to litigate in Pennsylvania. The remaining factors also weigh heavily against the exercise of jurisdiction.  While every plaintiff has an interest in obtaining convenient and effective relief, that interest is best served in the forum of Dallas County, Texas, where Bridger-Ferrellgas agreed venue was mandatory for the PSA [*see* Ex. B § 10.12] and otherwise waived any objection to venue in the Guarantee [*see* Ex. C § 8(a)], where all the contractual parties and witnesses are located [*see* TPC ¶¶ 9, 12-16; *see also* Ex. A ¶¶ 11, 14], where Mr. Ballengee was located at the time he was alleged to have tortiously interfered with Bridger-Ferrellgas's rights under the PSA/Guarantee [*see* Ex. A ¶ 13], and where the law that governs the claims is decided every day by Texas courts.

These circumstances, when weighed against the burden that would be placed on Mr. Ballengee and the public policy reasons for declining to stretch Pennsylvania's long-arm jurisdiction halfway across the United States, dictate that the exercise of personal jurisdiction over Mr. Ballengee would not be reasonable or comport with "traditional notions of fair play and substantial justice."  This Court should decline to exercise personal jurisdiction.

**B.    The Claims Against Mr. Ballengee Should be Dismissed for *Forum Non Conveniens*.**

Bridger-Ferrellgas's third-party action is founded primarily upon the allegation of breach of contractual indemnity under the PSA (Count I).  Given the mandatory venue provision in the PSA, Mr. Ballengee asserts that *forum non conveniens* should apply and that all claims be

---

[8] *See Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 799–800 n. 14 (D.N.J. 1996) (noting potential importance of forum selection provision in "fair play and substantial justice" calculus).

dismissed in favor of this third-party action occurring in Dallas County, Texas.  Rather than repeat all the arguments made by the Jamex Entities here, Mr. Ballengee joins in their motion.

**C.**     **The Third-Party Complaint Fails to State a Claim Against Mr. Ballengee.**

Even if this Court determines it may exercise personal jurisdiction over Mr. Ballengee and that *forum non conveniens* does not apply, the third-party claims against Mr. Ballengee should nonetheless be dismissed under Rule 12(b)(6) because they fail to allege facts that constitute a claim for tortious interference (Count III) or contribution (Count IV).

In considering a motion to dismiss for failure to state a claim, "all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiffs."  *Sherk v. Countrywide Home Loans, Inc.*, 2009 WL 2412750, at *4 (E.D. Pa. Aug. 5, 2009) (citation omitted).  However, it is only "well-pleaded" allegations of fact—not vague generalities or legal conclusions—that are accepted.  *Id.*  The well-pleaded facts must establish a "plausible basis for relief under the law, indicating more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at *5 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

A court ruling on motion to dismiss can "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  However, any "document integral to or explicitly relied upon in the complaint" can be attached to a motion to dismiss and considered as well.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**1.**     <u>**Count III**</u>:  **Bridger-Ferrellgas Fails to State a Tortious Interference Claim.**

To state a claim for tortious interference with Texas contracts (occurring in Texas), Bridger-Ferrellgas must plead a plausible factual basis that establishes each of the following elements: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss.

*See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002); *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995).  The Third-Party Complaint fails as a matter of law in regard to the second, third, and fourth elements of tortious interference.

### a.   The Settlement with Eddystone Benefited the Corporate Entities who are Parties to the PSA and Guarantee.

Under Texas law, the second element of tortious interference "is of particular importance when the defendant serves the dual roles of the corporate agent and the third party who allegedly induces the corporation's breach." *Holloway*, 898 S.W.2d at 796.  To establish a prima facie case under such circumstances, "the alleged act of interference must be performed in furtherance of the defendant's personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract." *Id.*  To meet this burden, the Texas Supreme Court has determined that "the plaintiff must show that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Id.*  Thus, because "a corporate officer's acts are deemed corporate acts, a plaintiff must show that the agent acted *solely* in his own interests." *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998) (emphasis added).  Specifically, a corporate agent's "'mixed motives' to benefit himself as well as the corporation are insufficient to establish liability." *Id.*

Bridger-Ferrellgas's own allegations concerning the settlement are fatal to a tortious interference claim.  Multiple paragraphs in the Third-Party Complaint admit that Mr. Ballengee's decision to enter into the settlement benefited not only himself, but also Jamex Transfer Holdings and Jamex Marketing; the only two Jamex entities who were parties to the contracts that were allegedly interfered with (i.e., the PSA and Guarantee):

> 46. … In the Settlement, all of the Third-Party Defendants, save JTS, were released, and JTS consented to the entry of a final award against it by the arbitration panel in the amount of $139,050,406.77 (the "Final Award") …

20

50. … Ballengee and/or his Texas-based attorneys, acting on behalf of the Jamex entities, began to negotiate with ERC to reach a "settlement" that would extricate <u>Ballengee and the Third-Party Defendants</u> from any potential claims by ERC or otherwise relating to the RSA, while facilitating and possibly strengthening ERC's ability to sue the Third-Party Plaintiffs.

52. Meanwhile, in exchange for causing JTS to consent to a wholly unjustified award, which, upon information and belief, JTS will never discharge, ERC agreed to <u>release Ballengee, in his personal capacity, and the Jamex entities</u> for a payment of just $450,000.00 (and the assignment of an unspecified amount of crude oil).

55. Ballengee also successfully negotiated a side-deal with ERC's member or manager, Enbridge, that benefited <u>himself and the Jamex entities</u>.

100. … Ballengee colluded with ERC <u>to release himself, JML, JTH and other Jamex entities</u> from all liability for ERC's claims to pierce JTS's corporate veil or otherwise impose derivative liability on the Third-Party Defendants.

[TPC ¶¶ 46, 50, 52, 55, 100 (underlining added).]

The Third-Party Complaint thus affirmatively establishes that Mr. Ballengee's settlement with Eddystone benefited not only himself but also Jamex Marketing and Jamex Transfer Holdings, as well as other corporate entities, by providing each with a release from "all liability for ERC's claims to pierce [BTS's] corporate veil or otherwise impose derivative liability on the Third-Party Defendants." [*Id.* ¶ 100.] Such a release was clearly beneficial to all the entities because, as alleged and admitted by Bridger-Ferrellgas, the entity that is directly liable (i.e., JTS) to Eddystone lacks any assets to satisfy an award. [*Id.* ¶¶ 27, 47.][9]

Therefore, the tortious interference claim against Mr. Ballengee should be dismissed as a matter of Texas law. *See, e.g.*, *Powell*, 985 S.W.2d at 457 (Texas Supreme Court rejecting tortious interference claim because there was no "evidence that [defendant] acted *only* in his own interest and *against* the company's interest.") (emphasis added in part).

---

[9] Paragraph 27 of the Third-Party Complaint specifies that, at the time Bridger-Ferrellgas sold the company, "BTS had minimal assets." [TPC ¶ 27.] Paragraph 47 alleges JTS "has no assets to satisfy the Final Award." [*Id.* ¶ 47.]

> **b.**    *Neither Jamex Marketing nor Jamex Transfer Holdings Complained*
> *About the Settlement with Eddystone.*

In addition, the Texas Supreme Court mandates that "when determining whether an agent acted against the corporation's interests, [Texas courts must] consider the corporation's evaluation of the agent's actions," because a corporation "is a better judge of its own best interests than a jury or court."  *Powell*, 985 S.W.2d at 457 (citing *Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178, 181–82 (Tex. 1997)).  As such, "if a corporation does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests."  *Id.*

The Third-Party Complaint establishes Mr. Ballengee did not act contrary to the interests of Jamex Marketing or Jamex Transfer Holdings.  Bridger-Ferrellgas does not allege facts showing either company complained about the settlement/release, nor could they for good reason: both Jamex Marketing and Jamex Transfer Holdings had every reason to want to enter into the settlement and receive the benefit of releases.  Thus, it would make no sense for either entity to complain about Mr. Ballengee's actions in executing the settlement on their behalf (as well as his own).  The lack of any allegation that Jamex Marketing or Jamex Transfer Holdings complained further establishes Mr. Ballengee "cannot be held to have acted contrary to [either entity's] interests."  *See Powell Indus., Inc.*, 985 S.W.2d at 457.  Count III should be dismissed.

> **c.**    *Tortious Interference does not Exist Due to a Failure to State a Claim*
> *for Breach of the PSA (Count I) or Guarantee (Count III).*

The only basis upon which the Third-Party Complaint alleges Mr. Ballengee is liable for tortious interference is by way of the settlement he executed causing a breach of the PSA and Guarantee.  [*See* TPC ¶¶ 101-02.]  As a result, if the allegations that the PSA and Guarantee were breached as made in Counts I-II of the Third-Party Complaint fail to state a claim, so do those

for Count III.  As such, Mr. Ballengee joins in the Jamex Entities' Motion to Dismiss Counts I-II for the purposes of a further argument to dismiss Count III against him individually.

        **2.**        <u>**Count IV**</u>**:  Bridger-Ferrellgas Fails to State a Claim for Contribution.**

The claim for contribution against Mr. Ballengee (and others) consists entirely of conclusory allegations that fail to meet Rule 12(b)(6) pleading standards.  As noted previously, rather than repeat the same arguments here as to why Count IV fails to state a claim, Mr. Ballengee joins in the Jamex Entities' Motion to Dismiss that claim.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Mr. Ballengee (joining in the Jamex Entities' motion to dismiss at Parts III.A and III.C therein) respectfully requests that the Court:

1.        Dismiss all claims against him for lack of personal jurisdiction under Rule 12(b)(2);

2.        Dismiss all claims against him under the doctrine of *forum non conveniens*;

3.        Dismiss Counts III-IV in their entirety with prejudice and without leave to amend for failure to state a claim under Rule 12(b)(6); and

4.        Grant all other relief that Mr. Ballengee is entitled to at law or in equity.

Mr. Ballengee requests that the Court hear oral argument on this Motion.

Dated:  October 30, 2017

Respectfully submitted,

*/s/ Allison Brown* _____

Allison Brown
Pennsylvania State Bar No. 202227
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, New Jersey 08542
Telephone: 609-986-1104
Telecopier: 609-986-1199
allison.brown@weil.com

-and-

T. Ray Guy
Texas State Bar No. 08648500
(*pro hac vice to be submitted*)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201-6950
Telephone: 214-746-7700
Telecopier: 214-746-7777
ray.guy@weil.com

*Attorneys for James H. Ballengee, Jamex LLC, Jamex Marketing LLC, Jamex Transfer Holdings LLC, and Jamex Transfer Services LLC*

24

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 7.1(d), I hereby certify that on October 30, 2017, I electronically transmitted the foregoing document using the ECF system for filing and transmittal of a Notice of Electronic Filing to those parties registered for ECF in this case.

<u>*/s/ Allison Brown*</u>

Allison Brown