# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC,<br>        Plaintiff,<br>  v.<br><br>JULIO RIOS and JEREMY GAMBOA,<br>        Defendants,<br><br>BRIDGER LOGISTICS, LLC, FERRELLGAS<br>PARTNERS, L.P., and FERRELLGAS, L.P.,<br>        Defendants/Third-Party Plaintiffs,<br>  v.<br><br>JAMEX MARKETING, LLC (f/k/a BRIDGER<br>MARKETING, LLC), JAMEX TRANSFER<br>HOLDINGS, LLC, JAMEX, LLC (f/k/a<br>BRIDGER, LLC), JAMEX TRANSFER<br>SERVICES, LLC (f/k/a BRIDGER TRANSFER<br>SERVICES, LLC), JAMES BALLENGEE and<br>JOHN DOES 1-10,<br>        Third-Party Defendants. | No. 2:17-cv-00495-RK |

**DEFENDANTS / THIRD-PARTY PLAINTIFFS BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., and FERRELLGAS L.P.'S SUR-REPLY IN OPPOSITION TO PLAINTIFF EDDYSTONE RAIL COMPANY, LLC'S MOTION TO COMPEL**

AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, Pennsylvania 19103
T: (215) 965-1200
F: (215) 965-1210

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002

I.      INTRODUCTION

The instant Motion to Compel need never have been filed and is a gross waste of the Court's and parties' time and resources.[1]  The BL/FG Defendants file this sur-reply solely in order to clarify for the Court the status of the purported dispute as *completely moot* and in order to show that there is *no judicial relief* that is properly requested, or could be given as to the BL/FG Defendants.

At the time the motion was filed, there was no crystalized dispute for the Court as the BL/FG Defendants had already produced substantial amounts of financial documents, had agreed to produce electronically stored information, and were actively engaged in productive discussions to resolve the remaining purported disputes without burdening the Court.  Now, it is plainly moot as to the BL/FG Defendants, but ERC inexplicably continues to press the purported dispute and even requests new relief, for the first time, in its reply brief.

ERC has withdrawn its Motion to Compel insofar as it requests an order directing the BL/FG Defendants to consent to the production of certain bank records.[2]  The sole remaining alleged "dispute" involves the production of electronically stored general ledger data for BTS and Logistics and should also have been withdrawn.  The BL/FG Defendants have *already produced* all electronically stored general ledger data to which they presently have access.  Indeed, the balance of the data was produced to ERC the same day it filed its Reply — a production ERC knew was coming — and yet the Reply still tries to argue there is a live dispute.  In fact, ERC initially indicated that it would, as you would expect, withdraw its Motion to

---

[1] Capitalized terms not defined herein have the meaning given in the *Defendants / Third-Party Plaintiffs Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.'s Response in Opposition to Plaintiff Eddystone Rail Company, LLC's Motion to Compel* [ECF No. 89] ("Opp.").

[2] *Plaintiff Eddystone Rail Company LLC's Reply in Support of its Motion to Compel* [ECF No. 94] (the "Reply" or "Reply Br.") at 3.

1

Compel as to the general ledger ESI when it received a production.[3]  To be crystal clear, the BL/FG Defendants *do not have* any other electronically stored general ledger data to provide for BTS and Logistics.  The BL/FG Defendants are continuing to try to unlock and obtain old and forgotten passwords for certain archived data of the *predecessor company* under *its former owner's management*.  If and when the BL/FG Defendants obtain access, and *if* general ledger data is contained therein, the BL/FG Defendants will produce such responsive material promptly.

Given the absence of any live discovery dispute between the parties, it is clear that ERC's Reply as to the BL/FG Defendants is the continuation of a litigation strategy ERC does not deny — to unreasonably drive up the costs of this litigation and mislead the Court as to the BL/FG Defendants' complete cooperation in discovery.

The most egregious example of ERC's effort to mislead the Court, which began in its Motion (*see* Opp. at 9-10), resumes on the first page of the Reply.  Incredibly, ERC states that on the date for the parties' exchange of preliminary discovery, "*Ferrellgas produced nothing*."  Reply Br. at 1 (emphasis added).  This is absurd and demonstrably false.  On the agreed-to production date, the BL/FG Defendants produced more than 12,200 documents, spanning over 45,400 pages, including financial documents.  Porter Decl. ¶ 3; Porter Sur-Reply Decl. ¶ 2, Ex. A.[4]  This production dwarfs ERC's production of fewer than 700 documents.  Porter Sur-Reply Decl. ¶ 2.  What ERC should have said, to properly frame its supposed grievance for the Court and comply with its duty of candor (*see* Pa. R.P.C. 3.3), is that "on August 11, the BL/FG Defendants timely produced to ERC thousands of documents responsive to all seven preliminary

---

[3] *See* Declaration of Katherine P. Porter in Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.'s Opposition to Eddystone Rail Company, LLC's Motion to Compel [ECF No. 87] ("Porter Decl.") at Ex. F.

[4] Declaration of Katherine P. Porter in Support of the Defendants / Third-Party Plaintiffs Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.'s Sur-Reply in Opposition to Plaintiff Eddystone Rail Company, LLC's Motion to Compel, filed concurrently herewith ("Porter Sur-Reply Decl.").

categories, but that ERC believes that the BL/FG Defendants failed to timely produce all ESI data responsive to one the several sub-categories to one of the seven requests, and as to that last sub-category, while the parties disagreed as to whether the extraction of responsive ESI was due on August 11 or later, the BL/FG Defendants had said they would produce it as soon as it could; nevertheless ERC believed a motion to compel was necessary."

The Motion to Compel should be denied, and ERC should be admonished to respect the rule requiring parties to reach an impasse on discovery disputes before seeking judicial relief. E.D. Pa. Loc. R. 26.1(f).

## II.   THERE IS NO LIVE DISPUTE FOR THE COURT TO DECIDE

The BL/FG Defendants have provided ERC with *all* general ledger electronically stored data for BTS and Logistics accessible to them at this point.  ERC contends that the BL/FG Defendants are refusing to produce remaining general ledger data.  Reply Br. at 4-7.  But this is patently false.  Once again, ERC is dishonest with the Court, cherry-picking facts to create a narrative that is favorable to it, yet woefully incomplete.

ERC concedes that the BL/FG Defendants have already produced general ledger ESI data for BTS and Logistics from September 2014 onward.[5]  In fact, the BL/FG Defendants have produced much more than that.  Prior to the Reply, the BL/FG Defendants produced general ledger-related ESI that was available for BTS and Logistics stretching all the way back to January 2012.[6]  Porter Sur-Reply Decl. ¶ 5.  Moreover, the BL/FG Defendants also produced

---

[5] ERC now says that producing this data "contradicts" claims that it was inaccessible. Reply Br. at 2. To the contrary, it shows what the BL/FG Defendants have always said, which is that they are working diligently to track down and produce data, much of which is difficult to access, *despite* that difficulty.

[6] The fact that the current accounting system has month-end, as opposed to transaction level data, is simply a result of the information that is available.  In short, the BL/FG Defendants gave what they had, and what was in the accounting system.  ERC cannot ask for more than that.  Moreover, while the BL/FG Defendants have agreed to and will produce this pre-2014 transaction level data if and when they can, the BL/FG Defendants dispute the proportionality of the request given that the transactions at issue in ERC's Complaint occurred years later, in 2016.

3

general ledger ESI for BTS and Logistics from the supplemental Ferrellgas accounting system on October 25, 2017, the same day that ERC filed its Reply.  Porter Sur-Reply Decl. ¶ 7, Ex. B.  ERC was well aware that this production was forthcoming.  The BL/FG Defendants' counsel informed ERC's counsel on Friday, October 20, 2017, that the general ledger ESI data from Ferrellgas's accounting system would be produced early the following week, confirming yet again that there was no disagreement between the parties on the production of BTS or Logistics general ledger ESI data.  Porter Sur-Reply Decl. ¶ 6.  Indeed, during a meet and confer on Wednesday, October 25, 2017, prior to the filing of the Reply, the BL/FG Defendants confirmed with ERC's counsel that the production of such data would be sent momentarily and the production was, in fact, made on that day.  Porter Sur-Reply Decl. ¶ 7, Ex. B.  ERC's representation in its Reply that the BL/FG Defendants had not and would not produce data from the Ferrellgas accounting system is yet another glaring misstatement.[7]

All that remains is for Logistics to see if it can obtain from the archived data daily, as opposed to month-end, financial data for BTS for the period January 1, 2012 through September 2014.  ERC now urges the Court to order the BL/FG Defendants to give ERC access to the BL/FG Defendants' computer drives.  This request — raised for the first time in ERC's Reply — is improper.  It is also futile.  ERC apparently believes that it has superior technological

---

[7] ERC states that the BL/FG Defendants' counsel requested two brief extensions of the BL/FG Defendants' time to respond to ERC's Motion to Compel, Declaration of Andrew Sloniewsky in Support of Plaintiff Eddystone Rail Company's Reply in Support of its Motion to Compel [ECF No. 93-1] ("Sloniewsky Decl.") ¶ 6, with the implication that extension was solely to allow time for the BL/FG Defendants' production, despite the fact that the extensions were requested precisely because the parties were attempting to resolve multiple inter-locking discovery matters throughout frequent and lengthy meet and confer sessions.  *See* Porter Sur-Reply Decl. ¶ 4; Porter Decl. Ex. F at 1-2.  ERC does not include the reason for the extension request.  Likewise, despite finally withdrawing the Motion to Compel as to the bank records as moot, ERC still presents argument and tries to paint the BL/FG Defendants (falsely) as recalcitrant.  Reply Br. at 12; Sloniewsky Decl. ¶¶ 2-6.  ERC presents a partial and misleading presentation of the BL/FG Defendants' ongoing good faith efforts, numerous meet and confers on multiple inter-locking discovery topics, and overall willingness to cooperate and compromise with ERC throughout the discovery process, but does not dispute that the subpoenas as drafted covered potentially hundreds of accounts or that the parties had each recently exchanged proposals prior to ERC's filing the Motion to Compel.

capabilities; ERC has attached a declaration from its expert, Joseph Gardmeal III, saying that he has access to Quickbooks software and is familiar with the program. The BL/FG Defendants, however, also have the Quickbooks software and have retained experts quite familiar with the program. Porter Sur-Reply Decl. ¶ 10. That is not the problem. The problem is that the data is all password protected, locked up, and inaccessible; the passwords were created and the data locked away by the *predecessor company*, long before acquisition in June 2015.[8] Porter Sur-Reply Decl. ¶ 8. The BL/FG Defendants have been working diligently internally and with their advisors to track down the passwords and/or to develop other means to access the data. Porter Sur-Reply Decl. ¶ 9. Furthermore, the BL/FG Defendants have no custodial knowledge of the file or its contents, which may very well contain irrelevant, proprietary, or privileged material. Porter Sur-Reply Decl. ¶ 8. *If* the files can be accessed, and *if* they contain responsive material (which they may not), *then* the responsive data will be produced. But ERC is not entitled to the drastic, and heretofore unrequested, relief of rummaging around in the BL/FG Defendants' computers.[9] *See* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.").

ERC also mentions the production of "underlying records" and an accounting manual, without specifying if it is asking the Court to order the BL/FG Defendants to produce it. Reply Br. at 6 n.3. This is truly baffling, as that material was *not requested before* and *ERC never*

---

[8] In addition, the BL/FG Defendants did not know about this data at first, which was created and stored away long ago by the predecessor company. The BL/FG Defendants have put extraordinary work into tracking down leads for possible discovery material and discovered this data thereby.

[9] The BL/FG Defendants have never withheld, and do not intend to withhold, any responsive data in their possession. To the contrary, the BL/FG Defendants have agreed to extraordinarily overbroad discovery demands from ERC, while ERC is fighting the BL/FG Defendants on very reasonable discovery in return.

*mentioned it*, despite multiple meet and confer discovery calls every week.  It is wholly inappropriate, but par for the course, for ERC to raise it for the *first time* in a filing to the Court.

As such, ERC's new and belated request to require the BL/FG Defendants to provide access to computers (and vague allusion to "underlying records" and manuals) should be denied.

Finally, ERC's repeated practice of making assertions to this Court that are inaccurate and highly misleading places an extraordinary burden on the defendants in this action and hampers normal, cooperative discovery practice.  For that reason, the BL/FG Defendants have proposed that the parties request a discovery master in this action, but ERC has refused, apparently wanting to avoid any oversight of *its* conduct thus far.  Porter Decl. Ex. F.  The BL/FG Defendants continue to believe that a discovery master would facilitate discovery in this matter and respectfully request that a master be appointed.

### III.     CONCLUSION

For the foregoing reasons, as well as the reasons sets forth in the BL/FG Defendants' Response in Opposition to ERC's Motion to Compel, the BL/FG Defendants respectfully request that ERC's Motion to Compel be denied as to the BL/FG Defendants as moot.  Simply put, there is not (and never was) a dispute ripe for judicial intervention.  The BL/FG Defendants also respectfully request the appointment of a discovery master.

Dated: October 30, 2017

Respectfully submitted,

  /s/ *Jeffery A. Dailey*
Jeffery A. Dailey (I.D. No. 85993)
Ellen L. Pierce (I.D. No. 318579)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, Pennsylvania 19103
T: (215) 965-1200
F: (215) 965-1210
jdailey@akingump.com
epierce@akingump.com

David M. Zensky (*pro hac vice*)
Katherine P. Porter (*pro hac vice*)
Kelly A. Eno (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002
dzensky@akingump.com
kporter@akingump.com
keno@akingump.com

*Attorneys for Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.*

## **CERTIFICATE OF SERVICE**

I, Jeffery A. Dailey, hereby certify that I caused Defendants / Third-Party Plaintiffs, Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.'s Sur-Reply in Opposition to Plaintiff Eddystone Rail Company, LLC's Motion to Compel to be filed and served on all counsel of record via the Court's ECF system on October 30, 2017.

*/s/ Jeffery A. Dailey*
Jeffery A. Dailey

Dated:  October 30, 2017