IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 17–cv–00495 |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, JEREMY GAMBOA, FERRELLGAS PARTNERS, L.P., and FERRELLGAS L.P. | ) |
| Defendants. | ) |

**PLAINTIFF EDDYSTONE RAIL COMPANY, LLC'S RESPONSE
IN OPPOSITION TO DEFENDANTS RIOS AND GAMBOA'S
<u>MOTION FOR A PROTECTIVE ORDER</u>**

**INTRODUCTION**

Plaintiff Eddystone hereby opposes Defendants Rios and Gamboa's Motion for a Protective Order.  The vaguely worded motion seeks an extremely broad protective order that would shield from discovery substantial material that is relevant to Eddystone's alter ego, fraudulent transfer, and breach of fiduciary duty claims.

Abandoning their earlier discovery positions, Rios and Gamboa assert that Eddystone's discovery should have a hard limit of January 2012 to March 2016.  While the majority of Eddystone's discovery is targeted at this period, there are relevant issues both before and after, as reflected in Eddystone's agreement with Ferrellgas – on whose discovery Rios and Gamboa are themselves piggybacking.  For example, BTS was formed in July 2011, making certain documents from that period relevant to Eddystone's alter ego claims, while the final agreements wrapping up the Monroe shipping arrangement and allocating the revenues therefrom were not entered until late 2016.  A ban on pre-2012 or post-March 2016 discovery is therefore improper, and Rios and Gamboa have failed to identify a single improper request focused on those timeframes.

Nor are Rios and Gamboa entitled to an even more extreme date restriction on discovery of their financial information to November 2015 through May 2016.  Rios and Gamboa exerted near complete control over BTS's finances, and it is already clear they commingled the corporate assets of BTS with those of other Bridger entities and withdrew substantial amounts from Bridger into their own pockets as part of major transactions in July 2013 and June 2015.  In support of its alter ego claims Eddystone is seeking to discover to what extent they commingled BTS's assets with their own and improperly withdrew funds from the company.  In support of its fraudulent transfer claims, Eddystone seeks to discover what portion of the vast BTS assets

1

and cash flow – which went missing after December 31, 2014 – ended up in their pockets. Eddystone cannot do this if Rios and Gamboa refuse to produce financial information before November 2015.

As in their opposition to Eddystone's motion to compel and in their motion to quash, Rios and Gamboa's only basis for objecting to this discovery is their refusal to acknowledge that they are in fact alter ego defendants in this case and an overly restrictive interpretation of Eddystone's fraudulent transfer theories. The Court has already rejected both arguments when denying the motions to dismiss, and it should not permit Rios and Gamboa to refuse to produce discovery based on claims that they are not proper defendants in this case.

Ultimately, Rios and Gamboa fail to describe in detail any particular need for a protective order under the circumstances. They complain that the requests for their personal financial information are invasive, but describe no particular harm that would result from their disclosure to the parties in this case, particularly under the terms of the confidentiality order entered in this case. Indeed, there is no privacy concern here, as the confidentiality order entered in this case will protect their information not only from public disclosure but may, if they choose, restrict it to review by counsel. *See, e.g.*, *In re Heritage Bond Litig.*, No. CV 02-1475-DT(RCX), 2004 WL 1970058, at *5 n. 12 (C.D. Cal. July 23, 2004) ("Any privacy concerns Kasirer defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter.").

Accordingly, the Court should deny Rios and Gamboa's Motion for a Protective Order and permit Eddystone to obtain discovery in support of its claims.

## ARGUMENT

Rule 26(c) authorizes a court to issue a protective order to shield a party "from annoyance, embarrassment, oppression, or undue burden or expense." On a motion for a

protective order under Rule 26(c), it is "the party resisting production of discovery [who] ordinarily bears the burden of establishing lack of relevancy." *Barnes Found. v. Twp. of Lower Merion*, No. CIV. A. 96-0372, 1997 WL 148587, at *2 (E.D. Pa. Mar. 20, 1997). Here, Rios and Gamboa cannot plausibly argue the discovery they resist producing is not highly relevant to Eddystone's claims in this case.

I. **Eddystone's Discovery Is Reasonable in Scope and Relevant to the Alter Ego and Fraudulent Transfer Claims**

    A. **Rios and Gamboa Are Not Entitled to a Ban on Pre-2012 and Post-February 2016 Discovery**

After previously taking the position that they would not produce any documents prior to December 31, 2014, Rios and Gamboa now partially change their tune and state that they will produce documents from January 1, 2012 to March 1, 2016. At the same time, however, they request a protective order supporting a blanket refusal to produce documents from the 2011 time period in which BTS was formed. Such an order is unjustified.

As Rios and Gamboa themselves note, the vast bulk of Eddystone's requests begin in January 2012, consistent with what Rios and Gamboa now assert is the proper timeframe. Moreover, Eddystone and the Ferrellgas defendants – on whose discovery Rios and Gamboa are piggybacking – have tentatively negotiated a default period of January 1, 2012 to March 31, 2016 for both sides' document production, subject to specific exceptions for relevant categories of material that will fall outside that timeframe. The blanket restriction sought by Rios and Gamboa is inconsistent with this reasoned approach.

Indeed, a blanket restriction on discovery to the January 1, 2012 to March 1, 2016 timeframe would prevent discovery of important documents relating to Eddystone's alter ego claims. Rios and Gamboa formed BTS on July 1, 2011, meaning that many important documents about the manner in which Rios and Gamboa capitalized the entity and the separation

3

of accounts between the individuals and the corporate entity pre-date the January 1, 2012 cutoff that Rios and Gamboa seek to impose. *See Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 752 (7th Cir. 2012) (alter ego liability turned on financial materials dating to the period of formation—three years before the parties contracted and almost 4 years before the defendant breached).

As owner-operators of BTS, Rios and Gamboa exercised absolute control over its finances, subject to no independent supervision until Ferrellgas acquired the company in June 2015. Eddystone has already identified evidence that Bridger Logistics made cash payments to cover expenses incurred by BTS in the normal course of business. *See* Sloniewsky Decl. Ex. 6 (Chart of Payments Made to Eddystone by and on behalf of BTS), Dkt. 93-1, Oct. 25, 2017. And it appears that Rios and Gamboa may have taken for themselves much of what was publicly represented as a major investment in Bridger's business. *Compare* Sloniewsky Decl. Ex. 4 (Bridger LLC Press Release, July 2, 2013) *with* Ex. 5 at 17 (Audited financial statements for Bridger, LLC and affiliates, Jan. 14, 2014), Dkt. 93-1, Oct. 25, 2017. Eddystone has therefore propounded to Rios and Gamboa requests for documents and communications concerning these and other instances of commingling and siphoning off of BTS' assets from the time they formed and assumed control over BTS—July 1, 2011.

Eddystone cannot obtain all material relevant to its alter ego claims from the Ferrellgas defendants alone. First, Rios and Gamboa have acknowledged that they conducted BTS business through their personal email accounts, over which they alone have custody and control. *See* Theodore Decl. ¶ 3. Second, Rios and Gamboa have acknowledged that they took flash drives or other electronic storage devices with them when they left the company in the Fall of 2016. *Id.* Eddystone is entitled to access that information.

Nor is a hard cut off of March 1 (or 31), 2016 appropriate. While the bulk of relevant documents likely were created before that date, important events occurred afterward. For example, the final agreements formally terminating the shipment of oil to Monroe and coming to a financial settlement of Monroe's obligations under the crude oil logistics and supply agreements – with Bridger Logistics permitted to pocket all of the future Monroe revenue – did not occur until the Fall of 2016. Those final arrangements – along with any post-March 2016 discussions between Ferrellgas and Jamex – are highly relevant to Eddystone's claim that BTS was deprived of the Monroe revenue to which it was entitled by virtue of providing key transloading capacity.[1] In addition, Rios and Gamboa parted ways with Ferrellgas soon after the final settlement with Monroe, in late 2016. The terms of that separation are relevant evidence, and Eddystone is entitled to discover the resulting financial relationship between the Defendants.

### B. Discovery of Rios and Gamboa's Financial Records is Highly Relevant to Eddystone's Alter Ego and Fraudulent Transfer Claims.

Rios and Gamboa attempt to impose an even more draconian time restriction on Eddystone's request for financial records. Rios and Gamboa should not be permitted to limit discovery into their personal financial records to the seven months between November 2015 and May 2016. Rios and Gamboa's financial records, which will reflect the sums that they took out of BTS and its affiliates, are highly relevant to the alter ego and fraudulent transfer claims against them, as Eddystone explained at length in its reply brief in support of its motion to

---

[1] Rios and Gamboa cannot deny Eddystone discovery on this point merely because the September 1, 2016 settlement is not mentioned in the Complaint, because "a fact need not 'be alleged in a pleading for a party to be entitled to discovery of information concerning that fact.'" *Hyosung (Am.), Inc. v. Hantle, Inc.*, No. 10-CV-2160 SBA (NJV), 2011 WL 13153990, at *1 (N.D. Cal. Sept. 20, 2011) (quoting 6 Patrick E. Higginbotham, Moore's Federal Practice § 26.41[2][a] (3d ed. 2011)).

compel their consent to the production of these records, and in response to their motion to quash. *See* Dkt. 93 at 9–11, Oct. 25, 2017; Dkt. 95 at 4–7, Oct. 27, 2017.

Rios and Gamboa argue for their November-to-May limitation by misreading the Complaint to allege "that certain assets were transferred to Ferrellgas entities *in early 2016*." RG Mot. at 3 (emphasis added). What the Complaint actually alleges is that, "*Prior to the transfer of BTS to Jamex Marketing*, the Defendants transferred all of BTS' real estate, equipment, receivables, and other assets to other FGP entities . . . " Compl. ¶ 48, Dkt. 1 (emphasis added). In early 2015, the Defendants provided Eddystone a balance sheet showing that, as of December 31, 2014, BTS had nearly $100 million in assets. By February 22, 2016, it had apparently lost everything. *See* Compl. ¶ 49, Dkt. 1 ("Jamex Marketing paid $10 for the now valueless BTS, which twelve months earlier had $98.1 million in assets."). Eddystone does not yet know at what point during the 12 months between December 31, 2014 and February 22, 2016 Defendants bailed out all of BTS's assets, and Rios and Gamboa cannot arbitrarily limit discovery to November 2015 to May 2016—in effect, to the final three months before the Defendants declared BTS asset-less in its February 2016 sale to Jamex.

Moreover, considering the vast scale of the asset transfer from BTS in just the 12 months between December 31, 2014 and February 22, 2016, Eddystone also needs to review Rios and Gamboa's bank records from prior periods to discover whether they began siphoning off assets even earlier. In both July 2013 and June 2015, Rios and Gamboa appear to have taken for themselves substantial payments out of Bridger's business as part of significant investment transactions. *See* Sloniewsky Decl. Ex. 4, Ex. 5 at 17, Dkt. 93-1, Oct. 25, 2017; Theodore Decl. Ex. 1 at 17 (Redemption Agreement, June 24, 2015). Eddystone is entitled to explore Rios and

6

Gamboa's financial records to determine what amounts they siphoned out of BTS and its affiliates while it owed more than $100 million to Eddystone.[2]

Blocking discovery of Rios and Gamboa's financial records before November 2015 would also prejudice Eddystone's ability to develop its alter ego claims. Given the commingling of corporate funds between BTS and its affiliates and the substantial sums that Rios and Gamboa paid themselves, Eddystone propounded discovery requests for Rios's and Gamboa's own financial records to see whether their commingling of corporate assets extended to their personal assets. That is appropriate given the general rule that with respect to an alter ego claim against an individual, "any and all personal bank account records and tax returns should be produced for the period stated." *In re Don's Making Money, LLP*, No. 2:99-BK-07757-CGC, 2008 WL 509531, at *2 (Bankr. D. Ariz. Feb. 19, 2008).

Limiting production of Rios and Gamboa's bank records to the last three months in which they controlled BTS shields from discovery the preceding four years during which they held absolute control over BTS's finances. An alter ego claim against an individual typically entails discovery of personal financial information over a broader timeframe spanning the entire period during which the principals dominated the company. *See Luc Vets Diamant v. Akush*, No. 05 CIV.2934 WHP, 2006 WL 258293, at *1–2 (S.D.N.Y. Feb. 3, 2006) (holding that plaintiff who sought to pierce corporate veil and hold shareholder personally liable "is entitled to discovery into the personal assets of Akush up to and including the time that AGF was dissolved at the end of April 2004"). Given that Rios and Gamboa personally formed BTS in 2011 and their relationship with Eddystone dates to 2012, five years of financial records is reasonable in these

---

[2] Contrary to Rios and Gamboa's assertion, Eddystone does not seek records of accounts owned by their family members. Rios and Gamboa may have misunderstood the reference to "beneficial ownership," which refers not to family members' accounts but to brokerage accounts in which assets are owned by the manager for the benefit of the account holder.

7

circumstances.  *See In re Don's Making Money, LLP*, 2008 WL 509531, at *2 (permitting discovery into personal financial records for five years—"the temporal limitation will be 1998 through 2003").

As in their opposition to Eddystone's motion to compel, *see* Dkt. 84 at 3, and again in their motion to quash, *see* Dkt. 90 at 7, Rios and Gamboa do not address the alter ego claims other than to deny their existence as an excuse to limit discovery.  RG Mot. at 7 ("Plaintiff attempts to use this justification despite the fact that Plaintiff has not pled alter ego against the Individual Defendants.").  But, this Court has already held just the opposite – that Eddystone's Complaint clearly and adequately alleges colorable claims "*against each Defendant for Alter Ego . . . .*"  *See* Dkt. 60, July 19, 2017.  Rios and Gamboa cannot avoid production of the records based on the fantasy that they are not alter ego defendants.

## II.  Rios and Gamboa's Motion Should Be Denied Because It Fails to Show Specifically How the Discovery at Issue Would Be Unduly Burdensome

Rios and Gamboa fail to point to any specific need for a protective order to shield from discovery the plainly relevant material sought in Eddystone's document requests.  The Third Circuit has long held that, for a motion under Rule 26(c), "the burden rests with the moving party to show that there is good cause for the protective order by showing a 'particular need for protection.'"  *Raso v. CMC Equip. Rental, Inc.*, 154 F.R.D. 126, 127 (E.D. Pa. 1994) (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986)).  A movant cannot establish a particular need for protection with "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Delanoy v. Twp. of Ocean*, No. CIV.A. 13-1555 PGS, 2015 WL 3949199, at *7 (D.N.J. June 29, 2015) (quoting *Cipollone*, 785 F.2d at 1121).

Rios and Gamboa object to producing documents outside their preferred timeframe without giving any concrete sense of the burden it would cause.  They merely assert that "any

additional documents Plaintiff seeks—outside of what the Individual Defendants have offered to produce and have already produced—are necessarily irrelevant and oppressive, and subject the Individual Defendants to undue burden and expense." RG Mot. at 4–5.  This stock formulation of harm is insufficient on a motion for a protective order.  In fact, the position Rios and Gamboa have taken in their motion undermines any more specific claims of burden.  Given that they are willing to produce responsive documents generated between January 1, 2012 and March 1, 2016, it is implausible that production of responsive documents for an additional six to nine months on either side of that four-year timeframe would be too costly for them to bear.

      Rios and Gamboa's complaints about the personal nature of the financial information sought are also too vague and general to evidence a true need for a protective order.  They repeatedly complain that the requests seek "highly personal financial information," are "highly personal and invasive," an "onerous invasion of the Individual Defendants' privacy," and "harassing on their face." RG Mot. at 6.  These complaints are the very definition of the "conclusory allegations which the Third Circuit held to be insufficient to meet the stringent requirements of Rule 26(c)."  *Danilo v. Healthhelp, Inc.*, No. CIV.A. 01-CV-5625, 2002 WL 32345697, at *4 (E.D. Pa. July 3, 2002).   In similar circumstances, the *Danilo* court refused to issue a protective order for material the movant simply claimed would reveal "confidential, proprietary information." *Id.*  Likewise, in the *Barnes Foundation* case, the court denied a motion for a protective order where the plaintiff had only "assert[ed] in conclusory fashion that it is entitled to have its business relationships and interests protected against interference and harassment." *Barnes Foundation*, 1997 WL 148587 at *3.  As in those two cases, Rios and Gamboa offer no "specific examples of the harm that will be suffered because of the disclosure

of information."  *Danilo*, 2002 WL 32345697 at *4 ("The only foundation that Defendant has provided in support of its motion is the text of its memorandum of law.").

Rios and Gamboa's complaints about the privacy of their financial information also ring hollow.  There is a confidentiality order in place to assure no improper disclosure to the general public.  In light of the confidentiality order, Rios and Gamboa have "failed to demonstrate any clearly defined or serious injury that would result from the disclosure . . . *to [the parties in this case] under the parameters of the Discovery Confidentiality Order entered by the Court*.") (emphasis added).  *Delanoy*, 2015 WL 3949199 at *8; *Topol v. Trustees of Univ. of Pennsylvania*, 160 F.R.D. 476, 477 (E.D. Pa. 1995) (refusing to grant protective order shielding from disclosure plaintiff's personal diary where confidentiality order already in place).

Rios and Gamboa have failed to carry their burden of showing that disclosure of their personal financial information and production of documents before January 1, 2012 and after March 1, 2016 would result in a clearly defined and serious injury to them.  Their motion for a protective order on personal financial records should be denied.

## CONCLUSION

For these reasons, the Court should deny Rios and Gamboa's Motion for Protective Order.

Dated: October 31, 2017                                   Respectfully submitted,

*/s/ Jeffrey M. Theodore*
Henry E. Hockeimer, Jr. (I.D. No. 86768)
Terence M. Grugan (I.D. No. 307211)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
hockeimerh@ballardspahr.com
grugant@ballardspahr.com

Filiberto Agusti (*pro hac vice*)
Jeffrey M. Theodore (*pro hac vice*)
Andrew J. Sloniewsky (*pro hac vice*)
Timothy Work (*pro hac vice*)
Nicholas Petts (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
fagusti@steptoe.com
jtheodore@steptoe.com
twork@steptoe.com
npetts@steptoe.com

*Counsel for Eddystone Rail Company, LLC*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via the Court's ECF system on October 31, 2017, thereby serving all counsel of record.

<u>*/s/ Jeffrey Theodore*</u>  
Jeffrey M. Theodore