# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC,<br>　　　　　Plaintiff,<br>　v. | )<br>)<br>)<br>) |
| JULIO RIOS and JEREMY GAMBOA,<br>　　　　　Defendants, | )　　No. 2:17-cv-00495-RK<br>)<br>) |
| BRIDGER LOGISTICS, LLC, FERRELLGAS<br>PARTNERS, L.P., and FERRELLGAS, L.P.,<br>　　　　　Defendants/Third-Party Plaintiffs,<br>　v. | )　　**Oral Argument Requested**<br>)<br>)<br>)<br>) |
| JAMEX MARKETING, LLC (f/k/a BRIDGER<br>MARKETING, LLC), JAMEX TRANSFER<br>HOLDINGS, LLC, JAMEX, LLC (f/k/a<br>BRIDGER, LLC), JAMEX TRANSFER<br>SERVICES, LLC (f/k/a BRIDGER TRANSFER<br>SERVICES, LLC), JAMES BALLENGEE and<br>JOHN DOES 1-10,<br>　　　　　Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS / THIRD-PARTY PLAINTIFFS BRIDGER LOGISTICS, LLC,
FERRELLGAS PARTNERS, L.P., and FERRELLGAS L.P.'S SUR-REPLY IN
FURTHER OPPOSITION TO PLAINTIFF EDDYSTONE RAIL COMPANY, LLC'S
MOTION TO DISMISS AMENDED COUNTERCLAIMS AND TO STRIKE
AFFIRMATIVE DEFENSES**

AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, Pennsylvania 19103
T: (215) 965-1200
F: (215) 965-1210

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002

**TABLE OF CONTENTS**

I.    ARGUMENT……………………………………………………………………...2

    A.    THERE IS NO BASIS TO DISMISS COUNTERCLAIMS II THROUGH VI
          FOR LACK OF STANDING AT THIS PLEADING STAGE  ................. 2

    B.    ERC'S REMAINING ARGUMENTS ON COUNTERCLAIMS II THROUGH
          VI ARE UNSUPPORTABLE .................................................................. 5

          1.    ERC Concedes Certain Claims Are Well Pled .................................. 5

          2.    ERC Misrepresents the Opposition, and Continues to Distort the RSA
                and Ignore ERC's Own Admissions  ......................................... 6

          3.    The Entire Agreement Clause Does Not Bar the Claims  ................. 7

          4.    Bad Faith Refusal to Consent to Carlyle Financing is a Breach....... 11

    C.    BL/FG STATE A CLAIM FOR TORTIOUS INTERFERENCE BASED ON
          ERC'S COLLUSIVE SETTLEMENT SCHEME................................... 13

          1.    ERC Has Not Properly Argued That Its Actions Were Privileged... 13

          2.    BL/FG Have Alleged Causation and Intent  .................................... 14

II.   CONCLUSION…………………………………………………………………..15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*511 W. 232nd Owners Corp. v. Jennifer Realty Co*.,
  98 N.Y.2d 144 (N.Y. 2002) ........................................................................11

*Aero Media LLC v. World Healing Ctr. Church, Inc.*,
  Civ. A. No. 12-5196, 2013 WL 2896856 (S.D.N.Y. June 11, 2013)......................................10

*Alpha Capital Anstalt v. Oxysure Sys., Inc.*,
  252 F. Supp. 3d 332 (S.D.N.Y. 2017)..................................................................10

*Anglo-German Progressive Fund, Ltd. v. Concorde Grp., Inc.*,
  Civ. A. No. 09-8708, 2010 WL 3911490 (S.D.N.Y. Sept. 14, 2010)......................................9

*Brown & Brown, Inc. v. Cola*,
  No. 10-3898, 2010 WL 5258067 (E.D. Pa. Dec. 22, 2010).........................................7

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  528 F. Supp. 2d 206 (S.D.N.Y. 2007)..................................................................9

*Cohen v. Elephant Wireless, Inc.*,
  No. 03 CIV. 4058 (CBM), 2004 WL 1872421 (S.D.N.Y. Aug. 19, 2004)......................12, 13

*Conopco Inc. v. Wells Enter., Inc.*,
  Civ. A. No. 14-2223, 2015 WL 2330115 (S.D.N.Y. May 14, 2015).......................................3

*Cont'l Cas. Co. v. Westerfield*,
  961 F. Supp. 1502 (D.N.M. 1997), *aff'd sub nom. Cont'l Cas. Co. v. Hempel*,
  4 F. App'x 703 (10th Cir. 2001) .......................................................................4, 14

*DeLa Cruz v. Piccari Press*,
  521 F. Supp. 2d 424 (E.D. Pa. 2007) ................................................................15

*Frankini v. Landmark Const. of Yonkers, Inc.*,
  91 A.D.3d 593 (2d Dep't 2012) .......................................................................11

*Graves v. Wells Fargo Bank, N.A.*,
  No. 1:14-CV-398, 2014 WL 12638789 (M.D.N.C. Nov. 19, 2014) ...............................11

*Green v. Beer*,
  Civ. A. No. 06-4156, 2009 WL 911015 (S.D.N.Y. Mar. 31, 2009) ...............................10

*Hammon Plating Corp. v. Wooten*,
  No. 16-CV-03951-LHK, 2017 WL 4232329 (N.D. Cal. Sept. 25, 2017) *appeal
  pending*, No. 17-17173 (9th Cir.)..................................................................11

*John Peterson Motors, Inc. v. Gen. Motors Corp.*,
  613 F. Supp. 887 (D. Minn. 1985) ........................................................................5

*Laduzinski v. Alvarez & Marsal Taxand LLC*,
  16 N.Y.S.3d 229 (N.Y. App. Div. 2015) ..........................................................9, 10

*LP Funding, LLC v. Tantech Holdings, Ltd.*,
  Civ. A. No. 15-4081, 2016 WL 1706182 (S.D.N.Y. Apr. 27, 2016).......................9

*Matthius v. Platinum Estates, Inc.*,
  903 N.Y.S.2d 477 (N.Y. App. Div. 2010) ..............................................................8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC*,
  798 N.Y.S.2d 14 (N.Y. App. Div. 2005) ...............................................................10

*Mfrs. Hanover Tr. Co. v. Yanakas*,
  7 F.3d 310 (2d Cir. 1993)................................................................................7, 10

*Morales Elec. Contracting, Inc. v. Siemens Bldg. Techs., Inc.*,
  Civ. A. No. 09-2743, 2012 WL 1038865 (E.D.N.Y. Mar. 28, 2012).......................9

*In re Napster, Inc. Copyright Litig.*,
  354 F. Supp. 2d 1113 (N.D. Cal. 2005) ..............................................................3, 4

*Nat'l Eng'g Serv. v. Galello*,
  No. CA9205303, 1995 WL 859241 (Mass. Super. Ct. May 9, 1995) .....................4

*Nielsen Co. (US), LLC v. Success Sys., Inc.*,
  Civ. A. No. 11-2939, 2013 WL 1197857 (S.D.N.Y. Mar. 19, 2013) .....................10

*Osmond v. Litton Loan Serv., LLC*,
  No. 1:10-CV-11, 2011 WL 1988403 (D. Utah May 20, 2011) ........................11, 12

*Pantusco v. Wiley*,
  616 S.E.2d 901 (Ga. Ct. App. 2005)....................................................................3, 4

*PetEdge, Inc. v. Garg*,
  234 F. Supp. 3d 477 (S.D.N.Y. 2017)......................................................................8

*Primedia Enthusiast Publ'n Inc. v. Ashton Int'l Media, Inc.*,
  Civ. A. No. 02-9997, 2003 WL 22220375 (S.D.N.Y. Sept. 25, 2003)....................9

*Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*,
  109 F. Supp. 3d 587 (S.D.N.Y. 2015)....................................................................11

*In re S. Textile Knitters, Inc.*,
  Civ. A. No. 99-80026-W, 1999 WL 33485638 (Bankr. D.S.C. May 24, 1999)......................4

*Sargent v. Johnson*,
  551 F.2d 221 (8th Cir. 1977) ....................................................................................13

*Schron v. Grunstein*,
  32 Misc. 3d 231 (N.Y. Sup. Ct. 2011) .......................................................................9

*Schulman v. J.P. Morgan Investment Management, Inc.*,
  35 F.3d 799 (3d Cir. 1994)........................................................................................14

*Sea-Terminals, Inc. v. Indep. Container Lines, Ltd.*,
  Civ. A. No. 89-6931, 1990 WL 130766 (S.D.N.Y. Sept. 4, 1990).......................3, 5

*Shannon v. Simon*,
  128 A.D.2d 859 (2nd Dep't 1987) ............................................................................11

*Sikes v. American Telephone & Telegraph Company*,
  841 F. Supp. 1572 (S.D. Ga. 1993)...........................................................................14

*Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc.*,
  135 A.D.2d 891 (3d Dep't. 1987) ..............................................................................11

*Tempo Shain Corp. v. Bertek, Inc.*,
  120 F.3d 16 (2d Cir. 1997)........................................................................................10

*Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*,
  934 F.2d 976 (8th Cir. 1991) ....................................................................................12

*Trans. Mgmt. Sys. II, LLC v. Carcione*,
  Civ. A. No. 14-2151, 2016 WL 7077040 (S.D.N.Y. Dec. 5, 2016) ..........................9

*Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co.*,
  209 F. Supp. 3d 547 (E.D.N.Y. 2016) ......................................................................11

*Vista Outdoor Inc. v. Reeves Family Tr.*,
  234 F. Supp. 3d 558 (S.D.N.Y. 2017)........................................................................15

## Other Authorities

Fed. R. Civ. P. 8(d)(2), (3)................................................................................................3

Fed. R. Civ. P. 23 ...........................................................................................................14

# INTRODUCTION

BL/FG[1] respectfully limit this sur-reply to the issues and cases in ERC's Reply that were improperly made for the first time in reply and are absolutely necessary to correct.[2]   ERC cites to no less than 19 cases in its Reply that were not cited by either party in the prior briefing.  This either reflects an improper strategic move by ERC, or recognition on ERC's part of the flaws in its Motion.[3]   The Reply also continues ERC's pattern of making statements to this Court that are simply not true.  For instance, in the first paragraph of its Reply, ERC states that BL/FG have cited no case in support of two claims, and no RSA provision in support of the breach of contract claims (Reply 1); that is demonstrably false.[4]

The main theme of ERC's Reply is the purported paucity of case law directly on point.  ERC's heavy reliance on this argument is surprising because ERC itself lacks on-point case law, and merely reaches for tenuous threads of analogy in non-analogous cases.  Furthermore, the

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the *Defendants / Third-Party Plaintiffs Bridger Logistics LLC, Ferrellgas Partners, L.P. and Ferrellgas, L.P.'s Opposition to Plaintiff Eddystone Rail Company, LLC's Motion to Dismiss Amended Counterclaims and to Strike Affirmative Defenses* [ECF No. 110] ("Opposition" or "Opp.").

[2] ERC, on the other hand, submitted a Reply that was the same length as its opening brief.  *Plaintiff Eddystone Rail Company LLC's Reply in Support of its Motion to Dismiss Amended Counterclaims and to Strike Affirmative Defenses* [ECF No.113] ("Reply").  The Reply, as well as the opening Motion, are full of fact-based arguments and even seek to dispute facts and introduce new facts, in contravention of the rules.  This only underscores that the dispute is not ripe for determination at this stage.

[3] After raising new arguments in its Reply that ought to have been presented in the opening brief, ERC then argues that BL/FG are not allowed to respond to these new arguments.  Reply 4 n.2.  That is not the case, rather it is ERC's new arguments that should not be considered by this Court (and which necessitate further briefing).

[4] BL/FG cited numerous authorities in support of their alter ego claim, including (1) the Federal Rules of Civil Procedure, which expressly permit pleading contingent claims (Opp. 7–8), and (2) pointing out that ERC's *own cases* support BL/FG's standing on the counterclaims if BTS's veil is set aside at ERC's request (Opp. 9 n.8, 10).  Likewise, BL/FG's arguments in connection with tortious interference included a case by this Court, which ERC itself had overlooked.  Opp. 31, 34–35.  In its Reply, ERC had no response to the Federal Rules, nor to the fact that its own cases support BL/FG's standing in the event ERC strips away BTS's corporate form.  Indeed, ERC still fails to acknowledge this Court's holding in *Aetna*.  Similarly, BL/FG cited multiple RSA provisions in support of its breach claims, including the custody transfer meters which ERC concedes states a breach, the 8-hour window, and the deficiency credit provisions, among others.  Opp. 11, 16 n. 24, 18 n. 29 & n. 30, 19.

legal principles cited by BL/FG are bedrock and uncontroverted, and BL/FG's arguments are strongly grounded in the law.

And importantly, the reason few cases exist on the same facts is that this whole lawsuit reflects a bizarre and unique gambit. In a typical alter ego case, unlike here, a plaintiff will sue a subsidiary and alleged parent alter ego *at the same time*—or at least, at a time when the subsidiary and parent are in privity, such that the parent can control the defense of the suit. ERC's strategy is quite different: ERC is using an alter ego theory to sue BTS's *former* parents for a liability that arose *after* BL/FG no longer owned or controlled BTS. ERC's goal is to collect from JTS's *former* parents without any court or panel ever addressing the merits of the underlying breach of contract claim and the many defenses/counterclaims thereto. Indeed, Judge Pauley, of the Southern District of New York, pointedly asked ERC about the strategy, asking "assuming you prevail on your alter ego theory in Pennsylvania, doesn't it strike you as a little unfair or odd that the party against whom you intend to assert the liability never had an opportunity to challenge the damages?" and "If you were going to sue Ferrellgas and Bridger after obtaining an arbitration award on the basis of alter ego liability, why didn't you name them in the arbitration?"[5]

I.   **ARGUMENT**

A.   **THERE IS NO BASIS TO DISMISS COUNTERCLAIMS II THROUGH VI FOR LACK OF STANDING AT THIS PLEADING STAGE**

Counterclaims II through VI are properly pled contingent upon *ERC* succeeding in *its* attempt to set aside BTS's corporate veil (which BL/FG vigorously oppose). Opp. 7–10. ERC does not even try to dispute that the Federal Rules of Civil Procedure specifically permit and

---

[5] Hearing Transcript, *Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, No. 1:17-cv-01266-WHP (S.D.N.Y. July 14, 2017), ECF No. 52 ("S.D.N.Y. Tr."), 24:15–18, 26:4–8.

support the assertion of contingent counterclaims.  Fed. R. Civ. P. 8(d)(2), (3); *see also Conopco Inc. v. Wells Enter., Inc.*, Civ. A. No. 14-2223, 2015 WL 2330115, at \*7 (S.D.N.Y. May 14, 2015).[6]  ERC likewise has no response to the fact that ERC's own cases support the conclusion that if the Court pierces BTS's corporate veil at ERC's request, BL/FG would have standing to assert the counterclaims.  *See* Opp. 9 n.8, 10.

Instead, ERC cites, for the first time in its Reply, a Georgia state court case, which it claims supports dismissal of the contingent counterclaims.  Reply 8–9 (citing *Pantusco v. Wiley*, 616 S.E.2d 901, 902 (Ga. Ct. App. 2005)).  ERC should have, but failed to, cite this case (or make this argument) in its Motion.  In any event, *Pantusco* does not support dismissal of BL/FG's contingent counterclaims, especially not at the pleading stage.  Instead, *Pantusco* applies inapplicable Georgia state law, on summary judgment, based upon a different fact pattern and equities.

*Pantusco* was decided on summary judgment, after discovery.  *Id.* 902–03.  Here, in contrast, any finding about BL/FG's standing at the pleading stage would be premature.  Many courts have explicitly held that standing to bring counterclaims, contingent on an adversary's alter ego claim, cannot be determined on a motion to dismiss.  *See e.g.*, *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1122 (N.D. Cal. 2005) (denying motion to dismiss for lack of standing, noting that counterclaimant's pleadings adequately alleged antitrust standing, but noting that full resolution of issues raised in motion "must await summary judgment or trial"); *Sea-Terminals, Inc. v. Indep. Container Lines, Ltd.*, Civ. A. No. 89-6931, 1990 WL

---

[6] ERC does not respond to *Conopco* for the proposition for which BL/FG cite it, *i.e.* that the Federal Rules procedurally contemplate counterclaims conditional on the outcome of a plaintiff's lead claim.  Instead, ERC shadowboxes and argues that *Conopco* does not involve alter ego claims.  That is beside the point.  The fact remains that the Federal Rules expressly entitle BL/FG to plead their counterclaims contingent upon the outcome of ERC's claim.  Fed. R. Civ. P. 8(d)(2).

130766, at *2 (S.D.N.Y. Sept. 4, 1990) (noting that, since the alter ego determination "will not be made based on these pre-trial motions, there can be no successful challenge to defendant's standing to bring the counterclaim until the decision has been made"); *In re S. Textile Knitters, Inc.*, Civ. A. No. 99-80026-W, 1999 WL 33485638, at *4–6 (Bankr. D.S.C. May 24, 1999) (noting that prospective personal liability to defendants, partially as a result of trustee's corporate veil piercing claims, could be sufficient to grant defendants standing to assert debtor's counterclaims, but deferring determination pending the completion of discovery and adjudication of the corporate veil piercing allegations); *Nat'l Eng'g Serv. v. Galello*, No. CA9205303, 1995 WL 859241, at *3 (Mass. Super. Ct. May 9, 1995) (denying counterclaim defendants' motion to dismiss counterclaim for lack of standing because the issue was "best left for determination in a Rule 56 motion, if appropriate, or at trial.").

In addition, in *Pantusco*, the alter ego defendant and underlying liability defendant were sued together, and the former caused the latter to default, thereby losing the ability to assert defenses and counterclaims. 616 S.E.2d at 902–03. Here, the opposite is true, BL/FG were not sued together with BTS and had no power to prevent it from capitulating. Furthermore, *Pantusco* focused on the equities. *Id.* Here, the equities militate against shielding from judicial review ERC's own fraud and breaches. *E.g. Cont'l Cas. Co. v. Westerfield*, 961 F. Supp. 1502, 1506 (D.N.M. 1997) (concerning collusive settlement), *aff'd sub nom. Cont'l Cas. Co. v. Hempel*, 4 F. App'x 703 (10th Cir. 2001).

Multiple other courts have held that a counterclaimant *does* have standing to assert claims belonging to its affiliate on the basis of its adversary's alter ego allegations. *See, e.g.*, *In re Napster*, 354 F. Supp. 2d at 1120–21 (holding that counterclaimant investor adequately pled antitrust standing to assert claims belonging to non-party corporation where *plaintiffs* alleged that

counterclaimant had "essentially full operational control" over corporation during the relevant timeframe and noting that "[s]uch allegations are consistent with a unity of interest and ownership between the two corporations of the type that would justify piercing the corporate veil under an alter ego theory [and,] if proven, [are] sufficient to establish" standing to assert counterclaims); *Sea-Terminals*, 1990 WL 130766, at *2 (rejecting plaintiff's argument that counterclaimant lacks standing to assert claim based upon other corporation's lease contract and finding that, "[i]f [counterclaimant] Container is the alter ego of . . . Caribbean, *as plaintiff claims*, then Container can bring its counterclaims."); *John Peterson Motors, Inc. v. Gen. Motors Corp.*, 613 F. Supp. 887, 901–02 (D. Minn. 1985) (finding that sole shareholder plaintiff had standing to assert corporation's claims where *defendants* "urged this court to consider [the corporation] as the alter-ego of [the sole shareholder].").

ERC cannot have it both ways:  either ERC asserts that BTS and BL/FG were alter egos, or it does not.  If ERC succeeds in establishing that the corporate form should be set aside to impose liability on BL/FG for breach of the RSA, then BL/FG must be able to assert counterclaims under the RSA (which no Court has adjudicated).

### B.   ERC'S REMAINING ARGUMENTS ON COUNTERCLAIMS II THROUGH VI ARE UNSUPPORTABLE

#### 1.   *ERC Concedes Certain Claims Are Well Pled*

ERC concedes that certain of the BL/FG counterclaims must survive a motion to dismiss: (i) fraudulent inducement and negligent misrepresentation due to ERC's misrepresentations and failure to disclose details regarding the true depth of the channel leading to the Facility after entry into the RSA (Mot. 3 n.1, 19; Reply 10–11, 13, 15) and (ii) breach of contract due to ERC's failure to install custody transfer meters (Reply 11, 17).  Thus, if the Court finds that BL/FG may contingently assert these counterclaims, they may not be dismissed.

**2.      *ERC Misrepresents the Opposition, and Continues to Distort the RSA and Ignore ERC's Own Admissions***

BL/FG do not repeat here, section-by-section, breach-by-breach, all the ways in which ERC misrepresents the relevant allegations and contract terms.  Instead, BL/FG note three recurrent flaws in ERC's argument, and that the intensely factual nature of ERC's Reply further underscores that the arguments are not ripe for a motion to dismiss.

For instance, ERC asserts that BL/FG failed to cite specific RSA provisions in support of their breach of contract counterclaims (Reply 9–10, 13), but this is untrue.  BL/FG cite to the requirements for custody transfer meters (which ERC concedes states a breach) (Opp. 11, 19), an eight-hour train arrival window (*id.* 16), ERC's responsibility for constructing the docking area and for approving or rejecting barges that fail to satisfy the requisite draft (*id.* 15), and the definition and deficiency credit provisions of the RSA (*id.* 13, 16, 19).  The Opposition was clear about what cause of action each factual allegation of the counterclaims supported.  *Id.* 11 n.12, 12 n.13, 16 n.16, 14 n.20, 16 n. 22, 17 n. 27.  ERC's attempt to combine and confuse the elements of these claims and the factual allegations supporting them should be rejected.

ERC also misrepresents the terms of the RSA and misconstrues BL/FG's arguments regarding ERC's breach of the deficiency credit provision.  The RSA explicitly provides for collection and use of deficiency credits, and BL/FG allege that the Facility's multiple defects[7] rendered those credits unusable, which breached the RSA's credit provisions.  *Id.* 18–19.  ERC attempts to defend these defects by plucking inapplicable language from the RSA out of context, and arguing that ERC was contractually entitled to build a sub-par facility (rather than the "state of the art" facility as advertised).  Reply 11–16.  ERC is wrong.  The RSA specifically provides

---

[7] *E.g.* the slower-than-promised transloading and pumping capacities, the Granite Pinnacle, the Four-Hour Window, etc.

for use of deficiency credits which are the subject of the breach of contract claim, RSA §§ 4.2–4.3, and the RSA does not address the specific capacity issues that made the facility inoperable and that ERC wrongly argues are contradicted by contract terms.[8]

ERC also uses its Reply, once again, to dispute facts as pled.[9]  For instance, ERC tries to sidestep the many specific allegations of its own plain statements, its assumption of responsibility for certain issues, and hiding and misleading BTS.  This includes, among others,

██████████████████████████████████████████████████████████████

███████████████████████████████████, FG CC ¶ 77(a), Opp. 15–17, as well as ███████████████████████████████████████

███████████████████████████████, FG CC ¶ 77(b).  ERC's argument that it was BTS's responsibility to resolve the SEPTA and Granite Pinnacle problems, simply because BTS caused trains to be delivered and barges to arrive at the dock, has no basis in the RSA and ignores ERC's own contemporaneous statements and BL/FG's multiple specific allegations.

### 3. *The Entire Agreement Clause Does Not Bar the Claims*

ERC acknowledges that a general merger clause, such as the clause in the RSA, is insufficient to bar fraudulent inducement claims absent "explicit disclaimers of the particular representations that form the basis of the fraud-in-the-inducement claim."  *Mfrs. Hanover Tr. Co.*

---

[8] ERC is also wrong in arguing that the breach of contract counterclaim asserts breach of oral promises. Reply 10 n.5.  BL/FG's breach of contract counterclaim is based on the fact that ERC prevented the use of the deficiency credit provision, which is in the RSA.  It is the multiple facility flaws that had the effect of preventing use of the credits, which are not specifically addressed by the RSA and thus not foreclosed.  ERC is also wrong in arguing that the entire agreement clause precludes reliance on extrinsic promises.  *See* Sec. (1)(B)(3).

[9] This is improper because this Court must accept as true the factual allegations set forth in the BL/FG's counterclaims and draw all reasonable inferences in favor of BL/FG.  Opp. 6–7.  *E.g.*, *Brown & Brown, Inc. v. Cola*, No. 10-3898, 2010 WL 5258067, at *10 (E.D. Pa. Dec. 22, 2010).

*v. Yanakas*, 7 F.3d 310, 316 (2d Cir. 1993).  ERC does not dispute that the RSA's merger clause is insufficiently specific to bar a fraudulent inducement claim.[10]

Instead, ERC argues that the "specificity requirement may be relaxed (or even altogether disregarded) when the clause and its surrounding contract were the product of arm's-length negotiations between sophisticated parties."  *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 488 (S.D.N.Y. 2017).  ERC contends that this is applicable because "Rios and Gamboa were sophisticated businessman [sic] negotiating a multi-hundred million dollar transaction through a complex corporate structure with the assistance of counsel."  Reply 18, 20.

ERC is wrong.  The "heavily negotiated clause by sophisticated businessman" exception is plainly not applicable here because there is absolutely nothing at all before this Court—and ERC cites to nothing—to establish that the entire agreement clause was the subject of *any* negotiations, let alone extended, sophisticated, and arms' length negotiations.  Nor is there anything at all to support ERC's throw-away comment that the RSA was negotiated "with the assistance of counsel."  Reply 20.

For this reason, even ERC's lead case on this issue held that an entire agreement clause was _not_ a basis to dismiss fraudulent inducement claims at the pleadings stage.  *See PetEdge*, 234 F. Supp. 3d at 490 ("[T]he Court recognizes that its analysis of the Merger Clause could be influenced by facts that are not properly before it in this motion [to dismiss].  For example, *neither the [complaint] nor any of the documents attached to it contain facts concerning whether PetEdge is a sophisticated party or whether the Merger and Warranty Clauses are the result of*

---

[10] ERC's effort to distinguish *Matthius v. Platinum Estates, Inc*., 903 N.Y.S.2d 477, 479 (N.Y. App. Div. 2010), is unavailing.  The fact that *Matthius* involved a separate contract whereas BL/FG's contract claims involve prior oral and written promises not formally set down in a separate contract is a distinction without a difference. The salient point is that ERC's promises were not contradicted by the RSA, did not "vary, alter, or contradict" the RSA's terms, and "dealt with different subject matter."  *Id.*  As a result, they remained enforceable.

*negotiations between the parties*.  Additionally, the materials that the Court may properly

consider do not address whether PetEdge was represented by counsel in the negotiation of the

Agreement.") (citations omitted, emphasis added) (dismissing claims on other grounds);[11] *see*

*also LP Funding, LLC v. Tantech Holdings, Ltd.*, Civ. A. No. 15-4081, 2016 WL 1706182, at *3

(S.D.N.Y. Apr. 27, 2016) (granting leave to amend counterclaims to assert fraudulent

inducement claim, notwithstanding merger clause, where "the merger clause at issue is a general

one, which makes no reference to any specific prior representations" and "the proposed

counterclaims do not, on their face*,* indicate that the transaction at issue here was of such a

sophisticated character that preclusion of the fraud claim is warranted as a matter of law.");

*Anglo-German Progressive Fund, Ltd. v. Concorde Grp., Inc.*, Civ. A. No. 09-8708, 2010 WL

3911490, at *9 (S.D.N.Y. Sept. 14, 2010) (denying motion to dismiss fraud claims on the basis

of merger clause, notwithstanding that claim involved multi-million dollar transaction between

business entities, because "there is no allegation that the parties negotiated over the content of

the [contract] or that plaintiff was represented by legal counsel or a financial advisor when it

entered into the agreement.").

---

[11] The remaining cases upon which ERC relies are also inapposite.  Both *Century Pacific* and *Primedia Enthusiast* were decided at the summary judgment stage with the benefit of developed factual records as to the sophistication of the parties, the nature of the negotiations, and the assistance of counsel and other experts, and *Century Pacific* further noted that fraud defense must be "inconsistent with other specific recitals in the contract" in order for the exception to apply; none of that applies here.  *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 229–30 (S.D.N.Y. 2007); *Primedia Enthusiast Publ'n Inc. v. Ashton Int'l Media, Inc.*, Civ. A. No. 02-9997, 2003 WL 22220375, at *6 (S.D.N.Y. Sept. 25, 2003).  In *Trans. Mgmt. Sys. II, LLC v. Carcione*, Civ. A. No. 14-2151, 2016 WL 7077040, at *7 (S.D.N.Y. Dec. 5, 2016), the court's decision to dismiss the fraud claims was based on the fact that the contract at issue, unlike here, specifically disclaimed representations as to the alleged misrepresentations.  Finally, *Schron v. Grunstein*, 32 Misc. 3d 231, 236 (N.Y. Sup. Ct. 2011), involved a straightforward parol evidence question, and did not even involve a fraudulent inducement claim or fraud allegations of any kind; its statement that all "merger clauses are not mere boilerplate," is simply not applicable to the claims here.  *E.g.*, *Morales Elec. Contracting, Inc. v. Siemens Bldg. Techs., Inc.*, Civ. A. No. 09-2743, 2012 WL 1038865, at *6 (E.D.N.Y. Mar. 28, 2012) (merger clause that "contains the standard boilerplate that typifies a general merger clause" did not bar fraud claims); *Laduzinski v. Alvarez & Marsal Taxand LLC*, 16 N.Y.S.3d 229, 233 (N.Y. App. Div. 2015) ( "boilerplate language" of the contract's merger clause "is too general to bar plaintiff's claim[.]").

ERC tries to distinguish the cases holding that a general merger clause does not bar fraudulent inducement claims, noting that some of them involved unsophisticated parties or smaller contract amounts.  Reply 19 n.16.  That attempt is unavailing.  Plenty of cases, many cited in the Opposition, uphold fraudulent inducement claims in the face of a merger clause even with respect to sophisticated parties and big-dollar contracts.  *See Mfrs. Hanover Tr. Co.*, 7 F.3d at 315 (transaction involved more than $1 million and previous loans of hundreds of thousands of dollars); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997) (parties were two corporations; more than $2 million was at stake); *Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 341–42 (S.D.N.Y. 2017) (parties were two corporations; more than $1 million was at stake); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC*, 798 N.Y.S.2d 14, 16 (N.Y. App. Div. 2005) (similar);[12] *see also Nielsen Co. (US), LLC v. Success Sys., Inc.*, Civ. A. No. 11-2939, 2013 WL 1197857, at *8 (S.D.N.Y. Mar. 19, 2013).

Nor does ERC have any response at all to the fact that the RSA contains *two* relevant clauses—one general (on which ERC attempts to rely) and one specific (on matters unrelated to ERC's claims).  Opp. 23.  ERC knew how to, but did not, disclaim specific reliance on the topics relevant to the counterclaims.

---

[12] These cases, which were each cited in BL/FG's Opposition, demonstrate that fundamental rule on general merger clauses applies to contracts like the RSA, despite ERC's attempt to distance the rule.  *See* Reply 19 n.16.  Additionally, the plaintiff in *Laduzinski*, who ERC labels as an unsophisticated worker because of his $150,000 annual salary, was a vice-president and senior tax-manager at J.P. Morgan and then a senior director at Alvarez & Marsal Taxand LLC.  16 N.Y.S.3d 229 at 231.  Moreover, nothing in *Aero Media LLC v. World Healing Ctr. Church, Inc.*, Civ. A. No. 12-5196, 2013 WL 2896856 (S.D.N.Y. June 11, 2013), indicates that the counterclaimant was unsophisticated merely because it was a ministry.  To the contrary, as part of the transaction at issue, the counterclaimant ministry paid the plaintiff nearly $50 million in exchange for services.  Def. Mem. Of Law in Opp. to Pl. MTD, Civ. A. No. 12-5196, ECF No. 32, 2012 WL 6949470 (S.D.N.Y. Oct. 15, 2012).  Additionally, contrary to ERC's characterization, the contract in *Green v. Beer*, Civ. A. No. 06-4156, 2009 WL 911015, at *9 (S.D.N.Y. Mar. 31, 2009), provided that the signing plaintiff was "a sophisticated investor."

### 4.      *Bad Faith Refusal to Consent to Carlyle Financing is a Breach*

In its Reply, ERC does not grapple with the gravamen of BL/FG's claim, *i.e.*, ERC's

blanket refusal, out of the gate, ████████████████████████████████████████████

████████████████████████████████████  Opp. 24.  ERC was not required to disadvantage its

own financial interests; but it *was* required to cooperate in good faith toward an industry standard

agreement that allowed crude oil to flow through the facility as anticipated by the RSA.  Opp.

23–26.  ERC unquestionably failed to live up to these implied obligations when it declined to

execute a financing acknowledgment ██████████.  ERC's arguments and cases do not address

the authority that a defendant's frustration of the purpose of the contract or contractual provision

(including, but not limited to, conditions precedent) can breach the implied covenant of good

faith and fair dealing or bar a breach of contract claim.  Opp. 23–28.[13]

If ERC had complied with its obligations of good faith and fair dealing, it would have at

least negotiated or discussed the form of acknowledgment it would have been willing to sign.  In

all probability, the parties would have ended up with an agreement quite different from the first

draft sent, and far more favorable to ERC.[14]  But ERC stubbornly refused to negotiate or even

---

[13] ERC argues that financing for BTS's customer was not a condition precedent.  Reply 22.  This assumes its own conclusion and is premature.  ERC's own case was rendered after trial and judgment.  *Shannon v. Simon*, 128 A.D.2d 859, 859 (2nd Dep't 1987).  In any event, such frustration is not limited to conditions precedent.  *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 152 (N.Y. 2002) (defendant subverted purpose of contract by failing to facilitate non-contractual but reasonably-understood premise of contract, thereby violating the implied covenant of good faith and fair dealing); *Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co*., 209 F. Supp. 3d 547, 555 (E.D.N.Y. 2016) (similar); *Frankini v. Landmark Const. of Yonkers, Inc*., 91 A.D.3d 593, 595 (2d Dep't 2012) (defendant's failure to fulfill non-contractual promise to plaintiff deprived plaintiff of benefits of contract, thereby breaching the implied covenant); *see also Sunshine Steak, Salad & Seafood, Inc. v. W.I.M. Realty, Inc*., 135 A.D.2d 891, 892–93 (3d Dep't 1987); *Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 605 (S.D.N.Y. 2015).

[14] Because BL/FG are not alleging that ERC had to accept the proposed Carlyle acknowledgment as-is, the decisions cited by ERC as standing for the proposition that a party is not required to disadvantage its financial interests to assist another party, most of which do not apply New York law, are irrelevant.  *See, e.g.*, *Graves v. Wells Fargo Bank, N.A.*, No. 1:14-CV-398, 2014 WL 12638789, at *2 (M.D.N.C. Nov. 19, 2014) (applying North Carolina law) (lender not required to modify loan in foreclosure); *Osmond v. Litton Loan Serv., LLC*, No. 1:10-CV-11, 2011 WL 1988403, at *2 (D. Utah May 20, 2011) (applying Utah law) (similar); *Hammon Plating Corp. v.*

consider any counteroffers or other terms, thereby destroying BTS's ability to receive the fruits of the RSA in violation of the implied covenant of good faith and fair dealing.  FG CC ¶ 96.

In addition to being asserted at the wrong stage of the case and being inherently factual, ERC's arguments that focus on comparing the agreements depend on the fallacy that the first draft would have been the same as the last draft: it is a false dichotomy to compare precise terms of the negotiated and finalized Merrill Lynch Intermediation Agreement with a non-final, first draft of the proposed Carlyle acknowledgment.[15]

ERC relies heavily on *Cohen v. Elephant Wireless, Inc*., No. 03 CIV. 4058 (CBM), 2004 WL 1872421 (S.D.N.Y. Aug. 19, 2004), yet another case not cited in its opening brief.  Reply 24.  But the claim in *Cohen* was that the party "breached [the] implied promise by refusing to subordinate their interests to a lender who was allegedly willing to finance."  *Id.* at *1.  That is not BL/FG's counterclaim.  Rather, BL/FG argue that ERC breached by refusing to negotiate or even consider terms for necessary financing (after having agreed to prior financings, no less).[16]

The only explanation for ERC's conduct is bad faith.  ERC already signed one of these agreements with Merrill Lynch, and it had no justifiable reason not to attempt to negotiate a

---

*Wooten*, No. 16-CV-03951-LHK, 2017 WL 4232329, at *6 (N.D. Cal. Sept. 25, 2017) *appeal pending*, No. 17-17173 (9th Cir.) (applying California law) (after a full trial, finding defendant not required to subordinate debt); *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 982 (8th Cir. 1991) (applying Nebraska law) (lender not required to subordinate secured position).  The citation to *Osmond* regarding failure to negotiate (Reply 24 n.20), is also off-point, as the counterclaims do not involve failure to renegotiate the RSA; they involve the refusal to consider a financing agreement.

[15] Should the Court want to compare the terms of the Intermediation Agreement and the proposed Carlyle agreement, the Court should decline to grant ERC's Motion at this time.  As set forth in the Opposition, ERC's arguments raise issues of fact not properly decided at this stage.  Opp. 26.  ERC argues that it would only have received "storage fees" under the proposed Carlyle acknowledgment.  Reply 21, 26.  However, as ERC itself notes, "storage fees" are not defined in the RSA or the Carlyle acknowledgment.  *Id.* 26.  It is thus unclear what the proposed Carlyle Agreement intended to encompass by this phrase (perhaps transloading charges), and a factfinder would have to evaluate this term.

[16] The court's analysis that ERC cites, moreover, was based on a claim for an implied promise, a different cause of action that depended on analysis of the specific contract terms and what promises were or were not contained in the contract.  *Id.* at *7–11.  That is not the claim or the question here.  The good faith and fair dealing claim in *Cohen* was dismissed as duplicative, *Id.* at * 11, which is also not the issue here.

similar agreement with Carlyle (or another willing party).  *Id.*  Indeed, ERC fails to identify in its

Reply any economic reason that it was not in ERC's financial interest to negotiate a financing

acknowledgment and keep oil flowing through the facility and payments flowing from BTS to

ERC under the RSA.

### C.   BL/FG STATE A CLAIM FOR TORTIOUS INTERFERENCE BASED ON ERC'S COLLUSIVE SETTLEMENT SCHEME

ERC tortiously interfered with JTH and JML's performance of the BTS PSA and the

Guarantee by scheming up and entering into a collusive settlement with the express intention and

effect of foisting the very liabilities for which the BTS PSA explicitly required JTH and JML to

indemnify BL/FG back onto BL/FG.  Opp. 30.

#### 1.   *ERC Has Not Properly Argued That Its Actions Were Privileged*

As an initial matter, the Court should decline to consider ERC's arguments, raised for the

first time on reply, that ERC was privileged or justified in settling its claims with Jamex.  Reply

2–4.  Appearing to recognize that its arguments in its Motion regarding "legal prejudice" miss

the mark, ERC changes course on Reply, abandoning its opening arguments and attempting to

argue now that its settlement was privileged.  Reply 2–4.[17]

On the merits, ERC's newly-raised argument that collusive settlements are immune from

claims of tortious interference is untenable.  Reply 3–4.   There is no policy reason to encourage

collusive settlements.[18]  Opp. 33; *see also Sargent v. Johnson*, 551 F.2d 221, 232 (8th Cir. 1977)

(insured acted in bad faith when it "did not enter into a bargain to settle its liability claims for a

---

[17]  ERC did not argue in its Motion that ERC was privileged to interfere in the BTS PSA, Opp. 31–32, 31 n.46, and not a single one of the decisions cited in the Motion pertains to privilege or justification in the tortious interference context, *id*. 32–34.  Instead, ERC's arguments and law focused on the assertion that BL/FG had "suffered no legal prejudice" and thus had "no basis to challenge [the collusive settlement] as improper."  Mot. 14.

[18]  ERC defends its right to "settle," which is besides the point.  BL/FG do not dispute ERC's right to settle; they dispute <u>collusive</u> settlement.

fair price, but entered into a questionable collaboration by which the parties maneuvered through terms of a settlement agreement to impose an uncompromised full balance of a judgment upon the insurer, while insured incurred no real detriment."); *Cont'l Cas. Co.*, 961 F. Supp. at 1506 (settlement agreement collusive as matter of law where negotiations were "devoid of competing interests" and purpose was to impose maximum liability upon insurer).

The new decisions ERC cited in its Reply are as unavailing as the first attempt. *Sikes v. American Telephone & Telegraph Company*, 841 F. Supp. 1572, 1577 (S.D. Ga. 1993) reprises ERC's inapplicable "legal prejudice" argument and merely holds that a non-settling defendant likely did not have standing to challenge a settlement of that action with other defendants under Federal Rule of Civil Procedure 23.  In that instance the non-settling defendant would retain all of its defenses and counterclaims, yet ERC argues the opposite here—that all defenses and counterclaims are now precluded.  In *Schulman v. J.P. Morgan Investment Management, Inc.*, 35 F.3d 799, 809–10 (3d Cir. 1994), no contract existed to interfere with; the court was reviewing a summary judgment decision on a claim for tortious interference with prospective contractual relations, a different cause of action.  Further, *Schulman* was on summary judgment and held that acts must be taken in good faith and by "appropriate means."  *Id.*  It does not involve a settlement, let alone a collusive one, or provide that ERC's collusive scheme was privileged.

### 2.    *BL/FG Have Alleged Causation and Intent*

ERC again improperly relies on material outside the pleadings to argue that BL/FG have not alleged causation.  Opp. 34 n. 49; Reply 4–6.  As an initial matter, ERC fails to cite any decision to support its argument that setoffs to amounts Jamex actually owed BL/FG are not a "pecuniary loss."  Any monetary amount lost by BL/FG is a pecuniary loss.  Additionally, BL/FG have incurred many costs in defending this action, which never would have occurred

without ERC's tortious interference.  Opp. 34–35, 34 n.48.  Finally, ERC admits on Reply that "the settlement open[ed] the door to pursue its claims against [BL/FG]."[19]

With respect to intent, BL/FG's counterclaims are replete with allegations that ERC constructed this settlement scheme in order to wrongfully foist an inflated (and, so ERC hoped, incontestable) liability on BL/FG, whom they incorrectly view as "deep pockets."  Opp. 35. These include ERC's own statements that ██████████████████████████ ████████████████████████████████████████████████████ ████████████████.  *Id.* 34.  This is in direct contradiction of the obligations under the BTS PSA and Guarantee.[20]  ERC's only citation on this point is odd.  *Vista Outdoor Inc. v. Reeves Family Tr.*, 234 F. Supp. 3d 558, 570 (S.D.N.Y. 2017) did not dismiss the tortious interference claim and the cited portion discusses a completely different counterclaim.

## II.   CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Opposition, BL/FG request that the Motion be denied in its entirety.

---

[19] ERC's counsel in this action also represented during a hearing on intervention in the Final Award confirmation proceedings in the Southern District of New York that "this judgment [confirming the Final Award] is something that we have to have in order to be able to proceed in the Eastern District [of Pennsylvania] – or certainly having gone through the arbitration against our counterparty is certainly something that we need to have in the Eastern District of Pennsylvania."  S.D.N.Y. Tr. 24:10–14.

[20] ERC argues that BL/FG's rescission claim is based "purely on grounds of fraudulent inducement." Reply 28.  This is not true.  BL/FG also seeks (and argued for) rescission based on frustration of purpose, impracticability, and the rejection of industry-standard financing.  Opp. 29, 29 n.42.  ERC's arguments respecting rescission likewise fail because BL/FG did not forego rescission claims due to supposed ratification; to the contrary, BL/FG allege that they insisted on (and ERC promised) remedies for the breaches and the RSA specifically provides that waiting to assert a claim does not waive a party's rights.  Opp. 29–30 (citing RSA § 15.7).  ERC simply does not address the RSA provision protecting BL/FG's right not to seek immediate relief and the cases it cites about ratification (which were all decided after summary judgment or trial) do not involve such a contract provision, and thus are inapplicable.  Reply 29.  Finally, as noted in the Opposition, ERC has not met the standard for striking affirmative defenses as it has not argued that the defenses "have no possible relation to the controversy" or might "cause prejudice to one of the parties, or . . . confuse the issues."  *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428–29 (E.D. Pa. 2007).  ERC utterly fails to respond to the important point that <u>even if</u> ERC is successful in dismissing counterclaims on standing grounds, ERC will still need to prove damages in its case in chief, and the affirmative defenses are necessary to consider in order to come to the right and just result respecting damages.  Opp. 36.

Dated: December 4, 2017

Respectfully submitted,

  /s/ *Jeffery A. Dailey*
Jeffery A. Dailey (I.D. No. 85993)
Ellen L. Pierce (I.D. No. 318579)
AKIN GUMP STRAUSS HAUER
& FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, Pennsylvania 19103
T: (215) 965-1200
F: (215) 965-1210
jdailey@akingump.com
epierce@akingump.com

David M. Zensky (*pro hac vice*)
Katherine P. Porter (*pro hac vice*)
Kelly A. Eno (*pro hac vice*)
AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002
dzensky@akingump.com
kporter@akingump.com
keno@akingump.com

*Attorneys for Bridger Logistics,*
*LLC, Ferrellgas Partners, L.P., and*
*Ferrellgas L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffery A. Dailey, hereby certify that I caused Defendants / Third-Party Plaintiffs

Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.'s Sur-Reply in Further

Opposition to Plaintiff Eddystone Rail Company, LLC's Motion to Dismiss Amended

Counterclaims and to Strike Affirmative Defenses to be filed and served on all counsel of record

via the Court's ECF system on December 4, 2017.

/s/ Jeffery A. Dailey
Jeffery A. Dailey

Dated:  December 4, 2017