## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | |
| Plaintiff, | |
| v. | |
| JULIO RIOS and JEREMY GAMBOA, | Civil Action No. 2:17-cv-00495 |
| Defendants, | |
| BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., and FERRELLGAS L.P., | |
| Defendants/Third-Party Plaintiffs, | |
| v. | |
| JAMEX MARKETING, LLC (f/k/a BRIDGER MARKETING, LLC), JAMEX TRANSFER HOLDINGS, LLC, JAMEX, LLC (f/k/a BRIDGER, LLC), JAMEX TRANSFER SERVICES, LLC (f/k/a BRIDGER TRANSFER SERVICES, LLC), JAMES BALLENGEE and JOHN DOES 1–10, | |
| Third-Party Defendants. | |

## JAMES BALLENGEE'S REPLY IN SUPPORT OF HIS
## MOTION TO DISMISS THIRD-PARTY COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      PRELIMINARY STATEMENT .....................................................................................1

II.     REPLY ARGUMENT ...................................................................................................1

      A.      Personal Jurisdiction over Mr. Ballengee is Still Lacking.......................................2

            1.      The Evidence Submitted by the Opposition for Jurisdiction as to
                 the Contribution Claim (Count IV) Shows No More Than
                 Corporate Actions.....................................................................................2

            2.      The Arguments in Regard to Tortious Interference (Count III)
                 Disregard that Specific Jurisdiction Must Arise From the Claim
                 Alleged.....................................................................................................4

      B.      Bridger-Ferrellgas's Response to the Failure to State a Claim for Tortious
          Interference Ignores the Fatal Impact of its Own Factual Allegations. ...................6

      C.      Joinder in the Jamex Entities' Reply for Purpose of Forum Non
          Conveniens and Additional Arguments on Failure to State a Claim. ...................11

III.    CONCLUSION............................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
    29 F.3d 855 (3d Cir. 1994)...................................................................................4

*Alviar v. Lillard*,
    854 F.3d 286 (5th Cir. 2017) ..............................................................................8

*Angel v. La Joya Indep. Sch. Dist.*,
    --- Fed. Appx.---, 2017 WL 5900026 (5th Cir. Nov. 29, 2017)...........................8

*Benningfield v. City of Houston*,
    157 F.3d 369 (5th Cir. 1998) ..............................................................................9

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)................................................................................7

*Eddystone Rail Company, LLC v. Ferrellgas Partners, L.P.*,
    No. 16-misc-00295-P1 (S.D.N.Y. filed on Aug. 10, 2016) ....................................5

*Holloway v. Skinner*,
    898 S.W.2d 793 (Tex. 1995)..................................................................7, 8, 9, 10

*Lexxus Intern., Inc. v. Loghry*,
    512 F. Supp. 2d 647 (N.D. Tex. 2007) ...............................................................10

*Mora v. Koy*,
    2013 WL 2289887 (S.D. Tex. May 23, 2013) .......................................................9

*Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*,
    2015 WL 1457631 (E.D. Tex. Mar. 31, 2015) ...................................................11

*N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Intern., Inc.*,
    107 F. Supp. 3d 620, 636 (N.D. Tex. 2015) .......................................................10

*Painter v. Prison Health Services, Inc.*,
    2009 WL 1664357 (W.D. Pa. June 12, 2009).......................................................4

*Parilla v. IAP Worldwide Serv., VI, Inc.*,
    368 F.3d 269 (3d Cir. 2004)................................................................................7

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)..............................................................................4

*Powell Indus., Inc. v. Allen*,
   985 S.W.2d 455 (Tex. 1998).............................................................................................8, 10

*Sourovelis v. City of Philadelphia*,
   246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) ...........................................................................4

**Other Authorities**

5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure
   § 1363 (3d ed. 2004) ...............................................................................................................4

Mr. Ballengee[1] files this reply in support of his Motion to Dismiss the Third-Party Complaint.  References to Mr. Ballengee's opening memorandum of law [Dkt. No. 99-1] will be to "Brief" (or "Br.") and references to Bridger-Ferrellgas's opposition [Dkt. No. 115] will be to "Opposition" (or "Opp.").

## I.    PRELIMINARY STATEMENT

There was a good reason Mr. Ballengee filed a motion to dismiss separate from the Jamex Entities: because he was sued in his individual capacity, separate and apart from the claims against the companies he owns.  Mr. Ballengee's counsel thus separated the briefing, correctly anticipating that Bridger-Ferrellgas would attempt to blur the lines between individual actions and corporate capacity in its Opposition—despite having earlier represented, in the Third-Party Complaint, that it is not seeking to "pierce the corporate veil of any such Jamex entity."  [*See* TPC ¶ 1.]  Regrettably as well, in its apparent anger and zeal to inflict pain on Mr. Ballengee, Bridger-Ferrellgas now resorts to false and defamatory personal attacks that are unsupported by the documents it attached to the Opposition.  Such tactics are as unbecoming as they are inconsequential, because the fact remains that the allegations in the Third-Party Complaint fail to show personal jurisdiction over Mr. Ballengee as an individual or state a claim for tortious interference (indeed, they actually negate that claim).

## II.    REPLY ARGUMENT

Mr. Ballengee continues to rely on all points in his opening Brief and those which he joined in the Jamex Entities' brief.  This Reply is submitted merely to address the Opposition's arguments directed specifically at Mr. Ballengee, including the regrettable personal attacks.

---

[1] All capitalized terms not defined herein are defined in the Brief.

**A.**     **Personal Jurisdiction over Mr. Ballengee is Still Lacking.**

> **1.**     ***The Evidence Submitted by the Opposition for Jurisdiction as to the Contribution Claim (Count IV) Shows No More Than Corporate Actions.***

Bridger-Ferrellgas offers no evidence to meet its burden to show that Mr. Ballengee, in his individual capacity, directed any *personal* activities at Pennsylvania that would support jurisdiction over the contribution claim (Count IV) based on the conclusory alter ego allegation.

The lack of evidence on purposeful availment as an individual, and the concurrent misconception evident in Bridger-Ferrellgas's attempt to establish jurisdiction over Mr. Ballengee as such, is first illustrated by the over-the-top accusation that Mr. Ballengee's witness statement from the arbitration [*see* Dkt. No. 115-7 (Ex. I)] is inconsistent with his declaration attached to the opening Brief.  [*See* Opp. at 29.][2]  There is no inconsistency between his current declaration and past arbitration witness statement. In reality, the accusation reveals more about Bridger-Ferrellgas's credibility than anyone else. The witness statement from the arbitration addressed the *corporate activities* of Mr. Ballengee, as stated therein, as "the CEO of Jamex Marketing" and a former "Executive Vice President and Chief Commercial Officer" of Bridger Logistics.  [*See* Dkt. No. 115-7 (Ex. I) ¶¶ 2-3.]  Mr. Ballengee's counsel could have submitted that earlier witness statement with his opening Brief, but did not for one dispositive factor: it says absolutely nothing about Mr. Ballengee's personal activities.  As a result, it was necessary to submit a new declaration addressing his *personal activities* in Pennsylvania, of which there are none.  [*See* Dkt. 99-2 (Ex. A) ¶ 4.]  There is thus nothing inconsistent between the declaration and arbitration witness statement.  The Opposition's effort to conflate the different capacities is meritless and hopefully this unwarranted offensive attack on Mr. Ballengee's credibility, by way

---

[2] The regrettable vitriol includes the unfounded and offensive accusation that Mr. Ballengee is "will[ing] to shift stories and say whatever he thinks will suit him in the moment …" and that "his credibility is clearly questionable …." [Opp. at 28 n. 29.]

of intentionally misleading the Court concerning his earlier declaration, does not presage a forthcoming pattern of say-anything pleadings on the part of Bridger-Ferrellgas.

Likewise, the email communications submitted with the Opposition involving various business with Eddystone do no more than confirm Mr. Ballengee acted only in a corporate capacity in Pennsylvania, which is expressly what he stated in his declaration attached to the opening Brief.  [*See id.* ¶¶ 8-9, 11 (listing visits to Pennsylvania and communications with Eddystone done as an officer of corporate entities).]  To be clear (if not already from the declaration), yes, Mr. Ballengee did have contacts with Pennsylvania; but only *in his capacities as an officer of various entities*.  As the law provided in the Brief clearly states, such contacts do not render Mr. Ballengee subject to personal jurisdiction as an individual.  [Br. at 15-17.]

In the Opposition, Bridger-Ferrellgas goes on to suggest that the Third-Party Complaint pleads personal jurisdiction over Mr. Ballengee for the conclusory alter ego allegation by "incorporating" the Eddystone Complaint by reference.  [*See* Opp. at 32-33.]  The problem with that justification is a lack of alter ego allegations against Mr. Ballengee in the Eddystone Complaint; Eddystone alleges alter ego against only *Bridger Logistics*.  [*See* Eddystone Compl. ¶¶ 52-61.][3]  Nor would Eddystone attempt to allege alter ego against Mr. Ballengee since that would violate its covenant not to sue in the January 2017 settlement.  [*See* Dkt. 115-5 (Ex. D) ¶ 9.]  As a result, the single conclusory allegation of alter ego in the Third-Party Complaint, alleged solely on a "contingent" basis, fails to establish personal jurisdiction for Count IV.

---

[3] The concluding paragraph on alter ego in Eddystone's Complaint states in full: "In light of the alter ego relationship between BTS and Bridger Logistics, Eddystone is entitled to an order from this Court piercing the corporate veil of BTS and holding *Bridger Logistics* liable for the debts BTS owed to Eddystone." [Eddystone Compl. ¶ 61 (emphasis added).]

**2.      *The Arguments in Regard to Tortious Interference (Count III) Disregard that Specific Jurisdiction Must Arise From the Claim Alleged.***

Attempting to establish jurisdiction as to the tortious interference claim (Count III), the Opposition argues Mr. Ballengee knew Eddystone was seeking to sue Bridger-Ferrellgas and he therefore should have known it would occur in Pennsylvania.  No such allegation actually exists and, even if it did, it is: (i) contradicted by indisputable matters of public record and (ii) not even the proper inquiry since the tortious interference claim involves only the PSA/Guarantee.

During the arbitration, JTS and its attorneys certainly did inform Bridger-Ferrellgas and its attorneys (more than once) that Eddystone had long threatened to pursue entities other than JTS on various non-contract theories—including other Jamex entities *and* Bridger-Ferrellgas. But there is no basis to conclude that means Mr. Ballengee knew or should have known a suit would, if ever filed, be brought in Pennsylvania.  Bridger-Ferrellgas does not actually make such an allegation anywhere in the Third-Party Complaint [*see generally* TPC], and even if it had been properly alleged, there is no support in the public record or undisputed documents—which control over allegations that contradict such documents[4]—for the proposition, because everything points to New York for any potential suit; not Pennsylvania.  In particular, it is an indisputable matter of public record and judicial notice that:

---

[4] *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (court can consider "undisputedly authentic" documents relied on by the complaint); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) (noting "the Court need not accept as true allegations that are directly contradicted by indisputably authentic documents on which the complaint relies, or matters of public record."); *Painter v. Prison Health Services, Inc.*, 2009 WL 1664357, at *2 (W.D. Pa. June 12, 2009) ("Nevertheless, under the 12(b)(6) standard, a 'court need not ... accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'") (citations omitted); *see also* 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1363, at 120-21 (3d ed. 2004) ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.") (citations omitted).

1. Eddystone's previous suit against Ferrellgas in August 2016 was filed in New York;[5]

2. The arbitration between Eddystone and JTS was seated and heard in New York;[6] and

3. The January 2017 settlement agreement with Eddystone specifies New York as the locale for a motion to confirm the arbitration award,[7] and any disputes arising out of the settlement agreement were to be resolved in New York.[8]

The record thus overwhelmingly reflects that, if one had reason to predict any locale for any litigation against Bridger-Ferrellgas, it would have been New York.  There is no support for Bridger-Ferrellgas's conclusory claim (which, again, is not actually stated in the Third-Party Complaint) that Mr. Ballengee must have foreseen harm to Bridger-Ferrellgas in Pennsylvania.

More importantly, Bridger-Ferrellgas ignores its own allegations about the tortious interference claim, which are the proper focus of a specific jurisdiction analysis.  The Third-Party Complaint alleges interference by Mr. Ballengee with a contract between Texas companies that requires disputes to be resolved in a Texas forum (i.e., the PSA and derivative Guarantee). Any lawsuit naturally would be expected to occur in Texas where all contracting parties are headquartered and the Opposition concedes the PSA requires suit to be filed.  [*See* Opp. at 14.]

Finally, the Opposition makes an argument that the Court should deny Mr. Ballengee's objection to personal jurisdiction related to the tort claim because it did so for a tort claim against Messrs. Rios and Gamboa.  [*See* Opp. at 27-29.]  There is, however, a fundamental difference between jurisdiction over those defendants for purposes of Eddystone's Complaint and jurisdiction over Mr. Ballengee for purposes of the Third Party Complaint: Eddystone sued those

---

[5] *See Eddystone Rail Company, LLC v. Ferrellgas Partners, L.P.,* No. 16-misc-00295-P1 (S.D.N.Y. filed on Aug. 10, 2016).

[6] [*See* Dkt. No. 115-6 (Ex. H) at 3 (award signed by all three arbitrators in New York City).]

[7] [*See* Dkt. 115-5 (Ex. D) ¶ 1 (confirmation only in New York); TPC ¶ 57 (Bridger-Ferrellgas confirming suit was filed in New York)]

[8] [*See* Dkt. 115-5 (Ex. D) ¶ 16 (venue for any claims in New York).]

individuals for allegedly tortious actions directed *at Eddystone in Pennsylvania*. Messrs. Rios and Gamboa's contacts with Pennsylvania related to BTS's operations at the Eddystone terminal and claims of denuding BTS of assets to satisfy debts to Eddystone.  Bridger-Ferrellgas, on the other hand, sues Mr. Ballengee for allegedly tortious actions directed at a contract with Bridger Logistics in Texas that is governed by Texas law and requires venue in Dallas.

There is simply no support in the public record, the relevant contracts, or elsewhere for the argument that Mr. Ballengee should have expected to be haled into court in Pennsylvania by Bridger-Ferrellgas for a tortious interference claim.  The claims against Mr. Ballengee should be dismissed for a lack of specific jurisdiction.

**B.      Bridger-Ferrellgas's Response to the Failure to State a Claim for Tortious Interference Ignores the Fatal Impact of its Own Factual Allegations.**

As set out in the Brief, the allegations in the Third-Party Complaint fail to state a claim for tortious interference (Count III) against Mr. Ballengee under Texas law because an element of the cause of action is entirely lacking (as well as for independent reasons raised in the Jamex Entities' motion).  [*See* Br. at 19-23.]  The Opposition's arguments in response—i.e., that there are fact issues, the controlling Texas Supreme Court law should be ignored, and that JTS was harmed by the settlement—all suffer from one common deficiency: they ignore Bridger-Ferrellgas's own allegations and claim.

First, in opposing a motion to dismiss for failure to state a claim, it is customary for a plaintiff to repeat the mantra that the motion involves factual disputes precluding resolution at this stage of the case; the Opposition dutifully trots out this canard, asserting the motion to dismiss the tortious interference claim requires the resolution of disputed facts.  [*See* Opp. at 43-44.]  But that assertion is misplaced here, where Mr. Ballengee's argument is based entirely on Bridger-Ferrellgas's own allegations of fact quoted directly from the Third-Party Complaint.

Those allegations must be taken as true for purposes of a motion to dismiss and are, solely for that purpose, cited by Mr. Ballengee as judicial admissions.  *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 n. 20 (3d Cir. 2006) ("Judicial admissions are concessions in pleadings or briefs that bind the party who makes them."); *see also Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (similar).  As quoted word-for-word in the opening Brief, the Third-Party Complaint alleges the settlement that Mr. Ballengee executed, on his own behalf and as manager of the companies who allegedly thereby breached their contracts with Bridger Logistics, benefitted those companies (i.e., Jamex Marketing and Jamex Transfer Holdings).  [*See* Br. at 20-21.]  That is the judicial admission on which Mr. Ballengee's motion to dismiss is based.  There are no fact issues to be resolved; only judicial admissions to apply.

The Opposition incorrectly suggests as well that Mr. Ballengee's argument involves a privilege defense and that the Third-Party Complaint need only generally allege tortious interference to survive.  [*See* Opp. at 43 (quoting *Miller Brewing* language regarding an "agent's privilege" and citing cases).]  Both arguments are wrong under well-established Texas law.

As to the first, while there is a defense of privilege available under Texas law, that is not the basis for Mr. Ballengee's motion to dismiss.  Rather, he argues that Bridger-Ferrellgas's own judicial admissions—i.e., the allegations of the Third-Party Complaint—affirmatively negate an element of the claim that Bridger-Ferrellgas has the burden to prove.  In *Holloway v. Skinner*, the Texas Supreme Court made very clear that, to establish tortious interference against a defendant sued as an individual (who is also an agent of the corporation whose contract was allegedly breached), it is a requirement that:

> … *the plaintiff* must show that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could *only* have been motivated by personal interests.

898 S.W.2d 793, 796 (Tex. 1995) (emphasis added).   That was expressly stated to be a requirement for a "prima facie case."  *Id.*  Further, the court rejected the notion it was "shift[ing] the burden of proof on the affirmative defense of legal justification," emphasizing it was merely stating an element of the cause of action that the plaintiff has the burden to prove in such situations (i.e., the "willful and intentional interference" element).  *Id.*  Indeed, in applying that law, the court went on to rule that plaintiff Skinner did not meet his burden of "proving each element of tortious interference," *id.*, because he failed to show the minority shareholder/officer Holloway was acting solely in his own personal interest.  *Id.* at 796-98.  Moreover, the fact that Holloway was a minority shareholder who owned 40% of the company was highlighted as important because, according to the Texas Supreme Court, for someone who has a "complete identity of interests" with the company, "there can be no interference as a matter of law."  *Id.* at 797.   In *Powell Industries, Inc. v. Allen*, the Texas Supreme Court noted further that a defendant's "mixed motives—to benefit both himself and the corporation—are insufficient to establish liability" and, moreover, that a plaintiff must also prove the company complained of its agent's conduct.  985 S.W.2d 455, 457 (Tex. 1998) (emphasis added).

Those pronouncements from the Texas Supreme Court in *Holloway* and *Powell* are all affirmative elements of a *plaintiff's* burden of proof.  As a result, a failure to allege them—or, as in this instance, a complaint that affirmatively negates them—requires dismissal.  The Fifth Circuit has done just that in all conceivable variations of deficiency.  *See, e.g.*, *Alviar v. Lillard*, 854 F.3d 286, 290 (5th Cir. 2017) (failure to allege defendant acted "*solely* in his own interests" or that company complained of conduct meant plaintiff "failed to adequately plead that Lillard acted willfully and intentionally at the expense of Macy's") (emphasis in original); *Angel v. La Joya Indep. Sch. Dist.*, --- Fed. Appx.---, 2017 WL 5900026, at *6 (5th Cir. Nov. 29, 2017)

(affirming dismissal where no allegation school board complained of agent's acts); *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) ("In this case, the Plaintiffs fail to allege facts showing that the Defendants' actions could only have been motivated by personal interests. At best, the Plaintiffs' contentions indicate that the Defendants acted with *mixed motives* and are, therefore, legally insufficient.") (emphasis added).

The judicial admissions by Bridger-Ferrellgas require dismissal. Here, it cannot be disputed that the Third-Party Complaint alleges the companies that are parties to the contracts allegedly interfered with—Jamex Transfer Holdings (PSA) and Jamex Marketing (Guarantee)—benefitted from the acts of their agent, Mr. Ballengee, who is now sued in an individual capacity. [*See* Br. at 20-21 (quoting TPC).] That judicial admission alone entirely negates the cause of action. In addition, however, the Third-Party Complaint fails to allege either company complained of Mr. Ballengee's actions (nor could it plausibly be alleged since they both received releases in, and clearly benefitted by, the settlement). Under Texas law and the Fifth Circuit opinions cited above, those pleading defects require dismissal of the claim with prejudice. In addition, the Opposition's point (and reality) that Mr. Ballengee is the controlling owner of all Jamex Entities [*see* Opp. at 45-46; *see also* TPC ¶¶ 16, 33, 38] means the interests of his companies must be deemed to align with his own. Under *Holloway*, such controlling ownership makes a tortious interference claim fail "as a matter of law." 898 S.W.2d at 797; *see also e.g.*, *Mora v. Koy*, 2013 WL 2289887, at *7 (S.D. Tex. May 23, 2013) (dismissing claims because no indication in complaint that individual defendant's interests were not aligned with those of his companies). Count III must be dismissed for that reason as well.

The two Northern District of Texas cases relied on by the Opposition to argue dismissal is not appropriate are easily distinguishable since there is no indication in either that the plaintiff

had affirmatively negated its own cause of action by judicial admission[9] as Bridger-Ferrellgas does here.  Even if those two cases were not distinguishable on that basis, they would be anomalies since, as cited above at pages 8-9, there are far more cases from the *Fifth Circuit* itself applying Texas law so as to dismiss claims due to insufficient allegations that a defendant acted "solely" for his own personal benefit or that the company "complained" of its agent's conduct.

Simply put, Bridger-Ferrellgas cannot avoid its own allegations.  Nevertheless, in a last-ditch effort to do so, the Opposition futilely tries to make JTS's interests relevant to the analysis by arguing Mr. Ballengee acted in bad faith *toward JTS* and that JTS was "thrown under the bus" or "to the wolves."  [Opp. at 45-46.]  Those characterizations—reminiscent of the likewise empty mantra of "collusion"—cannot save the tortious interference claim since the Third-Party Complaint alleges Mr. Ballengee interfered only with contracts that Jamex Transfer Holdings and Jamex Marketing were parties to (i.e., the PSA/Guarantee); not a JTS contract.  [*See* TPC ¶¶ 95-104.]  The only relevant inquiry under *Holloway/Powell* then is whether Mr. Ballengee's actions benefited Jamex Transfer Holdings and Jamex Marketing.[10]  JTS's interests are irrelevant and, clearly, the Third-Party Complaint alleges over and over that Mr. Ballengee's actions benefitted the relevant companies.  [TPC ¶¶ 46, 50, 52, 55, 100.]  Any impact on JTS is simply beside the point (even assuming that a company with no assets like JTS, as alleged by Bridger-

---

[9] *See Lexxus Intern., Inc. v. Loghry*, 512 F. Supp. 2d 647, 670 (N.D. Tex. 2007) (no indication the plaintiff pled the corporation benefited from its agent's action); *N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Intern., Inc.*, 107 F. Supp. 3d 620, 636 (N.D. Tex. 2015) (same).

[10] *Holloway v. Skinner*, 898 S.W.2d 793, 798 (Tex. 1995) ("Because Skinner failed to introduce any evidence tending to prove that Holloway committed an act that was so contrary to the *Corporation's best interests* that it could only have been motivated by the pursuit of his personal interests, there is no evidence that Holloway tortiously interfered with Skinner's contractual rights *with the Corporation*.") (emphasis added); *see also Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456–57 (Tex. 1998) ("When the defendant is both a corporate agent and the third party who allegedly induces *the corporation's breach* … [t]he plaintiff must prove that the agent acted willfully and intentionally to serve the agent's personal interests at *the corporation's expense*.") (emphasis added).

Ferrellgas, could somehow suffer a detriment from an agreed award).   Count III must be dismissed with prejudice as a matter of law.

**C.      Joinder in the Jamex Entities' Reply for Purpose of *Forum Non Conveniens* and Additional Arguments on Failure to State a Claim.**

As with the opening briefs, Mr. Ballengee continues to join in the Jamex Entities' independent arguments for dismissal on the grounds of *forum non conveniens*, failure to state a claim for Count III because the underlying breach of PSA (Count I) fails,[11] as well as the insufficient allegations of a joint tort to support a claim for contribution (Count IV).   He accordingly also joins in the Jamex Entities' reply brief for those purposes.

### III.      <u>CONCLUSION</u>

For the foregoing reasons and those provided in the Brief (as well as the Jamex Entities' brief and reply), Mr. Ballengee requests that the Court grant his motion to dismiss.

---

[11] *See, e.g., Mount Spelman & Fingerman, P.C. v. GeoTag, Inc.*, 2015 WL 1457631, at *3 (E.D. Tex. Mar. 31, 2015) (dismissing claims due to failure to show fee contract allegedly interfered with was breached by a settlement of claims in way not otherwise prohibited by contract).

Dated:  December 26, 2017

Respectfully submitted,

*/s/ T. Ray Guy*

Allison Brown
Pennsylvania State Bar No. 202227
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street, Suite 201
Princeton, New Jersey 08542
Telephone: 609-986-1104
Telecopier: 609-986-1199
allison.brown@weil.com

-and-

T. Ray Guy
Texas State Bar No. 08648500
(*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201-6950
Telephone: 214-746-7700
Telecopier: 214-746-7777
ray.guy@weil.com

*Attorneys for James H. Ballengee, Jamex LLC,
Jamex Marketing LLC, Jamex Transfer
Holdings LLC, and Jamex Transfer Services
LLC*

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 7.1(d), I hereby certify that on December 26, 2017, the foregoing document was electronically submitted using the ECF system for filing and transmittal of a Notice of Electronic Filing to those parties registered for ECF in this case.


*/s/ Jason E. Wright*_____
Jason E. Wright