**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, <br>        Plaintiff, <br>   v. <br><br> JULIO RIOS and JEREMY GAMBOA, <br>        Defendants, <br><br> BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., and FERRELLGAS, L.P., <br>        Defendants/Third-Party Plaintiffs, <br>   v. <br><br> JAMEX MARKETING, LLC (f/k/a BRIDGER MARKETING, LLC), JAMEX TRANSFER HOLDINGS, LLC, JAMEX, LLC (f/k/a BRIDGER, LLC), JAMEX TRANSFER SERVICES, LLC (f/k/a BRIDGER TRANSFER SERVICES, LLC), JAMES BALLENGEE and JOHN DOES 1-10, <br>        Third-Party Defendants. | No. 2:17-cv-00495-RK <br><br> **Oral Argument Requested** |

**DEFENDANTS / THIRD PARTY PLAINTIFFS BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., and FERRELLGAS L.P.'S CONSOLIDATED SUR-REPLY IN FURTHER OPPOSITION TO THIRD PARTY DEFENDANTS' MOTIONS TO DISMISS THE THIRD PARTY COMPLAINT**

AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, Pennsylvania 19103
T: (215) 965-1200
F: (215) 965-1210

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
T: (212) 872-1000
F: (212) 872-1002

# **TABLE OF CONTENTS**

I. *Forum Non Conveniens* Does Not Require Dismissal of the Third Party Complaint ..................................................................................................................2

II. This Court Has Personal Jurisdiction over Jamex LLC, JTH, and Ballengee. ....................4

    A. Ballengee's Corporate Actions Are Relevant, as this Court Has Already Found ........................................................................................................4

    B. The Settlement Confers Jurisdiction Over Jamex LLC, JTH, and Ballengee ................................................................................................4

    C. Jurisdiction over Jamex LLC and JTH Is Based on More Than Ownership ...........5

    D. The Contingent Alter Ego Allegations Are Another Basis for Jurisdiction Over Jamex LLC and Ballengee ................................................................6

III. The Third Party Defendants' Rule 12(b)(6) Arguments Are Meritless. ..............................7

    A. JTH and JML Must Indemnify the Third Party Plaintiffs for ERC's Claims Stemming from JTS's Breach of the RSA ..............................................7

    B. Tortious Interference .................................................................................9

    C. Contribution .............................................................................................10

CONCLUSION ................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cont'l Cas. Co. v. Westerfield*,
 961 F. Supp. 1502 (D.N.M. 1997) *aff'd sub nom. Cont'l Cas. Co. v. Hempel*, 4 F.
 App'x 703 (10th Cir. 2001) .................................................................................................9

*Cont'l Ins. Co. of New York v. Sherman*
 439 F.2d 1294 (5th Cir.1971) .............................................................................................6

*Eddystone Rail Co., LLC v. Bridger Logistics, LLC*,
 Civ. A. No. 17-0495, 2017 WL 3072250 (E.D. Pa. July 19, 2017) ..................................4, 5

*In re Teleglobe Commc'ns Corp.*,
 493 F.3d 345 (3d Cir. 2007), *as amended* (Oct. 12, 2007) ..................................................6

*Nichols v. Barwick*,
 792 F.2d 1520 (11th Cir. 1986) ..........................................................................................6

*Noasha LLC v. Nordic Grp. of Companies, Ltd.*,
 630 F. Supp. 2d 544 (E.D. Pa. 2009) ..................................................................................6

*O'Connor v. Sandy Lane Hotel Co.*,
 496 F.3d 312 (3d Cir. 2007) ................................................................................................6

*Powell Indus., Inc. v. Allen*,
 985 S.W.2d 455 (Tex. 1998) .............................................................................................10

*Sargent v. Johnson*,
 551 F.2d 221 (8th Cir. 1977) ..............................................................................................9

*State Farm Fire and Cas. Co. v. Gandy*,
 925 S.W.2d 696 (Tex. 1996) ..............................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P 12(b)(6) ...............................................................................................................7

The Third Party Plaintiffs respectfully submit this sur-reply in further opposition to the Third Party Defendants' motions to dismiss.[1]  The Third Party Defendants contend that their Replies address concessions, fallacies, and personal attacks in the Opposition.  As set forth below, the Third Party Defendants are tilting at windmills; they have invented the supposed concessions, fallacies, and attacks, and their arguments are off base.

The Third Party Defendants also claim to be offended by the description of their settlement with ERC as collusive, and the observation that the settlement was designed to impose liability on the Third Party Plaintiffs.  *E.g.*, Jamex Reply 1.  This posture is remarkable, given the scheme they pursued: namely, the Third Party Defendants entered into a settlement with ERC, to facilitate an award of $139 million against JTS, which *no party* to the settlement *ever intended* the Third Party Defendants to pay.  TPC ¶¶ 46–47, 50–55.  Instead, the settlement was explicitly designed to try to lock in liability and eliminate defenses, with the expressly stated purpose of helping ERC try to impose that liability on the Third Party Plaintiffs, who were not parties to the arbitration or settlement.  *Id.*[2]  This scheme is all the more brazen, given that the Third Party Defendants had explicitly assumed that very same liability and even indemnified the Third Party Plaintiffs for that assumption.  *Id.* ¶¶ 29, 32, 35–36, 69–70.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the *Defendants / Third Party Plaintiffs Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.'s Consolidated Opposition to Third Party Defendants' Motions to Dismiss the Third Party Complaint* [ECF No. 115] ("Opposition" or "Opp.").  The Third Party Plaintiffs limit this sur-reply to the issues in *James Ballengee's Reply in Support of His Motion to Dismiss Third-Party Complaint* [ECF No. 121] ("Ballengee Reply") and the *Jamex Entities' Reply in Support of Their Motion to Dismiss Third-Party Complaint* [ECF No. 122] ("Jamex Reply" and, together with the Ballengee Reply, the "Replies") that are absolutely necessary to address.

[2] For the avoidance of doubt, the Third Party Plaintiffs do not concede that ERC will be successful in imposing the arbitration award upon them, but it was undeniably the settling parties' collusive *intent* to lock in liability, eliminate defenses, and impose the arbitration award on the Third Party Plaintiffs.  *See, e.g.*, ERC Compl. Prayer for Relief ¶ 2 (seeking "an award against [Third Party Plaintiffs] of all amounts awarded by the SMA arbitration panel in the arbitration between Eddystone and BTS."); *Plaintiff's Motion to Dismiss Amended Counterclaims and to Strike Affirmative Defenses* [ECF No. 83], 16–19  (arguing that Third Party Plaintiffs have no standing to dispute the amount of the alleged breach liability); Hearing Transcript, *Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, No. 1:17-cv-01266-WHP (S.D.N.Y. July 14, 2017) [ECF No. 52] ("S.D.N.Y. Tr.") 24:10–14 (ERC counsel explaining intent to confirm the arbitration award into a federal court judgment in order to use it against Third Party Plaintiffs in this litigation).

I.      *Forum Non Conveniens* Does Not Require Dismissal of the Third Party Complaint.

The Third Party Defendants claim that the Third Party Plaintiffs concede that Count II for breach of the Guarantee is derivative of Count I for breach of the BTS PSA and, thus, that "simple logic" dictates that each of Counts II through IV is derivative of Count I and must be heard in Texas under the BTS PSA's mandatory forum selection clause. Jamex Reply 2–3.

The Third Party Plaintiffs made no such concession. To the contrary, the Opposition argues that Count II "is not dependent on the Third Party Plaintiffs' underlying claim against JTH under the BTS PSA," Opp. 19 (emphasis added), and spends several pages discussing why Counts II through IV are plainly not derivative. *See id.* 17–21. The Third Party Plaintiffs cite to on-point case law, as well as specific contract language, all demonstrating that the claims are not derivative. *Id.* The Third Party Defendants failed to respond to any of this authority.

The Third Party Defendants argue that "[t]he only question" is whether the contribution claim "alters the practical conclusion that the entire third-party action should be heard in Dallas." Jamex Reply 3. This is not the only question. Rather, as set forth in the Opposition, the first, and fundamental question underlying the parties' dispute is whether, based on the unique circumstances and collusion alleged in the Third Party Complaint, dismissal of any of the Counts in favor of Texas on the grounds of *forum non conveniens* is warranted. The resounding answer is no.[3] Opp. 14–16. The Third Party Defendants offered no real response on this issue.

The next question is whether the claim for breach of the Guarantee (which contains a distinct *permissive* forum selection clause) or the contribution and tortious interference claims

---

[3] The Third Party Plaintiffs acknowledge that the BTS PSA contains a mandatory forum selection clause. While the Third Party Defendants claim this is a "critical concession," Jamex Reply 2, as stated in the Opposition, *this does not end the inquiry*. Opp. 14. The Third Party Defendants completely neglect the Opposition's arguments and case law that establish that enforcement of the BTS PSA's mandatory forum selection clause in this context is unreasonable, inequitable, and unwarranted. *Id.* 14–16. In light of these circumstances, the Court should exercise its legal authority and decline to enforce the forum selection clause. Even if the Court chooses to enforce the clause, it governs *only* Count I, which the Court need not resolve in adjudicating the remaining Third Party Claims.

2

(which are covered by no forum selection clause whatsoever) should be dismissed on the grounds of *forum non conveniens*. Again, the answer is no. *Id.* 17–21. The Replies try to make short shrift of the permissive nature of the Guarantee's forum selection clause, and propose that the mandatory forum selection clause has a much larger reach than it does; they even go so far as to say, incorrectly, that "the parties jointly agreed on mandatory venue in Dallas for *any resulting disputes*." Jamex Reply 5 (emphasis added). The fact remains, however, that the parties *actually* agreed to a permissive clause for the Guarantee, in stark contrast to the BTS PSA, and no clause for the remaining claims. Opp. 19–20. The Third Party Defendants, again, fail to respond to the plain contract language or the arguments in the Opposition.

Finally, the Third Party Defendants attempt to flip the burden and argue that the Third Party Plaintiffs have failed to meet their burden of establishing that dismissal on *forum non conveniens* grounds is inappropriate. Jamex Reply 3. This attempted sleight of hand relies on the incorrect assumption that the BTS PSA's mandatory forum selection clause applies to all claims. Opp. 17–21. Whatever the outcome of Count I, the burden remains on the Third Party Defendants to establish that dismissal of Counts II through IV is appropriate, *id.* 21, and they have failed to carry that burden. As set forth in the Opposition (but not addressed in the Replies), the private and public interest factors overwhelmingly favor adjudication of the Third Party Claims in this District. *See id.* 17–23.[4]

---

[4] The Third Party Defendants also do not address the Opposition's arguments regarding the convenience and availability of witnesses (who have already agreed to participate in *this* litigation), the duplication of litigation efforts, the risk of inconsistent obligations, and the inefficiencies that would arise from parties being forced to participate in related litigation before two courts. Opp. 15–16, 21–23. The halfhearted argument that judicial efficiency will not be undermined by splitting this litigation because "judges in northern Texas are on record lamenting the dearth of jury trials in their courts," Jamex Reply 4–5, does not address why two courts should have to hear overlapping issues, from the same set of witnesses, resolve overlapping discovery disputes, etc.

3

## II. This Court Has Personal Jurisdiction over Jamex LLC, JTH, and Ballengee.

### A. Ballengee's Corporate Actions Are Relevant, as this Court Has Already Found.

Ballengee concedes that he has engaged in significant contacts with Pennsylvania. Ballengee Reply 2–3.  He further concedes the accuracy of the statements in his arbitration witness statement and email communications respecting contacts with the forum.[5]  *Id.* 3.  He argues, however, that these contacts do not render him subject to personal jurisdiction because he was acting as an officer.  *Id.*  As noted in the Opposition, however, this Court has already considered and rejected the same arguments asserted by Ballengee's former business associates, Rios and Gamboa.  Opp. 29 (citing *Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, Civ. A. No. 17-0495, 2017 WL 3072250, at *5–6 (E.D. Pa. July 19, 2017)).  Despite the Opposition's citation to this decision, Ballengee failed to respond at all to this Court's prior holding on this legal issue.  Consistent with this Court's prior ruling, Ballengee's contacts are sufficient to confer personal jurisdiction over Ballengee for the tortious interference and contribution third party claims.

### B. The Settlement Confers Jurisdiction Over Jamex LLC, JTH, and Ballengee.

The Third Party Defendants argue that the collusive settlement did not render this litigation reasonably foreseeable.  Jamex Reply 6–7; Ballengee Reply 4–5.  Importantly, the Third Party Defendants do not dispute that they knew that ERC intended to commence a lawsuit

---

[5] Ballengee states that he "could have" submitted his arbitration witness statement before this Court, but for the fact that he felt it necessary to inform this Court about his "personal activities" in Pennsylvania.  Ballengee Reply 2.  He says there is nothing inconsistent about his two statements, and emphasizes how offended he is by arguments comparing the two.  Ballengee's declaration submitted before this Court, however, was not confined to personal activities; it included a section on corporate contacts by Jamex LLC and JTH, and another section on Ballengee's involvement as an officer of Bridger Logistics.  Declaration of James H. Ballengee in Support of Motion to Dismiss ("Ballengee Decl.") ¶¶ 5–11 [ECF 99-2].  Furthermore, the two witness statements, read side by side, paint very different pictures regarding even corporate contacts.  *Compare* Ballengee Decl. ¶¶ 7–8 *with* Murphy Decl. Ex. I ¶¶ 2–3, 5–10, 15, 17–20.  At this pre-deposition stage, the Court cannot resolve the inconsistencies between the statements or accept Ballengee's convenient second version that now tries to minimize his forum contacts.

4

against the Third Party Plaintiffs, or that they knew about ERC's plan to use the collusive settlement in that lawsuit. TPC ¶¶ 51–54. They argue only that ERC's litigation should have been expected in New York, because ERC filed a discovery motion against Ferrellgas in New York, the arbitration occurred in New York, and the collusive settlement specified New York as the forum for the motion to confirm the arbitration award. Jamex Reply 6–7; Ballengee Reply 4–5.[6] All of those facts derive from the arbitration clause in the RSA and have nothing to do with where ERC intended to commence this case. Pennsylvania, ERC's home turf, was an obvious place for ERC to bring its claims. The Third Party Defendants' arguments, if anything, merely raise the question of what they knew about ERC's intentions and should be the subject of jurisdictional discovery, not a basis for dismissal.

### C.  Jurisdiction over Jamex LLC and JTH Is Based on More Than Ownership.

Jamex LLC and JTH argue that personal jurisdiction cannot be based on "mere ownership" and posit that they did not direct their own activities at Pennsylvania. Jamex Reply 5–6, 8. This fails for the reasons set forth in the Opposition, and for the plain fact that JTH made a binding contractual commitment to the Third Party Plaintiffs to assume all liabilities (including all duties, responsibilities, commitments, obligations, etc.) under the Pennsylvania-based RSA (which is both in the contract and well-pled in the Third Party Complaint, which must be accepted as true). TPC ¶ 29; Opp. 30. JTH also caused suit-related harm in Pennsylvania, including its alleged breach of the RSA after the acquisition of JTS, and failing its indemnification obligations related to this Pennsylvania litigation and the Third Party Plaintiffs' resulting losses. TPC ¶¶ 41, 42; Opp. 30–31. JTH attempts to argue that its promise to the Third

---

[6] This argument also depends on the notion that the Third Party Claims are based only on a breach of the BTS PSA and Guarantee, and ignore the contribution and tortious interference claims. Moreover, as this Court has already held, "though specific jurisdiction must ordinarily be analyzed claim-by-claim, it is 'not necessary to do so in all multiple claim cases,'" particularly where the claims factually overlap and involve the same RSA and series of transactions. *Eddystone*, 2017 WL 3072250, at *3 n.8.

5

Party Plaintiffs to assume liability would be relevant "only if" ERC were suing JTH. Jamex Reply 8. But JTH's assumption of the RSA liabilities, its role in JTS's alleged breach of the RSA, its entrance into a settlement that caused this litigation, and its default on its indemnification obligations are indisputably related to this litigation; indeed, they form the foundation for both the first party and third party claims. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

### D. The Contingent Alter Ego Allegations Are Another Basis for Jurisdiction Over Jamex LLC and Ballengee.

The Third Party Plaintiffs assert a contingent contribution claim against Jamex LLC and Ballengee based on ERC's alter ego claims. TPC ¶¶ 106–09; Opp. 32–33. Despite acknowledging the explicitly contingent nature of the allegation, Jamex LLC nevertheless tries to argue that such contingent allegation based on ERC's allegations constitutes a "suicidal" judicial admission. Jamex Reply 6. That is not the case. The Third Party Plaintiffs made crystal clear that they "*absolutely dispute all claims asserted by ERC*," TPC ¶ 106, and the law plainly holds that such a contingent claim is *not* a judicial admission. *See, e.g.*, *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007), *as amended* (Oct. 12, 2007) (holding that "[t]o be binding, admissions must be unequivocal" and finding statements "couched in alternative language" were not binding judicial admissions); *Noasha LLC v. Nordic Grp. of Companies, Ltd.*, 630 F. Supp. 2d 544, 550–51 (E.D. Pa. 2009) (counterclaims not admissions where denied in the answer); *Nichols v. Barwick*, 792 F.2d 1520, 1523 (11th Cir. 1986) (holding that general rule binding a party by admissions in his pleadings does not apply when a party takes "inconsistent positions . . . in pleadings in a complicated joinder situation, involving . . . the contingent liability of third parties") (citing *Cont'l Ins. Co. of New York v. Sherman*, 439 F.2d 1294, 1298 (5th Cir.1971)).

6

Jamex LLC and Ballengee also argue that ERC's alter ego claim cannot apply because ERC alleges that only Bridger Logistics was an alter ego of pre-sale BTS. Jamex Reply 6 & n.5; Ballengee Reply 3 & n.3. First of all, ERC does not agree with this assessment of its alter ego claim.[7] Secondly, the two Ferrellgas defendants and Rios and Gamboa all made this same argument in their motions to dismiss, but this Court did not accept that argument at the pleading stage.[8] Accordingly, as this argument was not a basis for dismissal of the claims against FG, FGP, Rios, or Gamboa, the contingent alter ego claims must likewise stand and support jurisdiction over Jamex LLC and Ballengee as well.

### III. The Third Party Defendants' Rule 12(b)(6) Arguments Are Meritless.

#### A. JTH and JML Must Indemnify the Third Party Plaintiffs for ERC's Claims Stemming from JTS's Breach of the RSA.

The Third Party Defendants assert that the Third Party Plaintiffs improperly seek indemnification for their own conduct. Jamex Reply 9. Jamex argues that ERC "could" not be seeking recoveries for the post-closing breach because that breach "was the subject of a separate arbitration." *Id.* 9–10. This notion is at odds with the well-pled allegations of the Third Party Complaint and is defeated simply by looking at ERC's complaint, which seeks "an award . . . of all amounts awarded by the SMA arbitration panel in the arbitration between Eddystone and BTS" as well as "expectation damages available to a party injured by breach of contract" against the Third Party Plaintiffs. ERC Compl. Prayer for Relief ¶¶ 2–3; *see also id.* ¶ 61 (seeking liability for debts owed to ERC, which all parties concede occurred post-sale); *id.* ¶¶ 50–51;

---

[7] *Plaintiff Eddystone Rail Company's Opposition to Defendants' Motions to Dismiss* [ECF No. 39] at 23 ("Ferrellgas, Rios, and Gamboa deny that they are alter egos. But the Complaint alleges that those three defendants dominated BTS as their alter ego and therefore should be held personally liable for its debts.").

[8] *See Memorandum of Law in Support of Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P.'s Motion to Dismiss Plaintiff's Complaint* [ECF No. 35-1], 28; *Memorandum of Law in Support of Motion of Julio Rios and Jeremy Gamboa to Dismiss Plaintiff's Complaint and Joinder in the Bridger Defendants' Motion to Dismiss* [ECF No. 34-1], 17–18; *Order* [ECF No. 60] ¶ 2.

7

S.D.N.Y. Tr. 24:10–14 (arbitration award, as federal court judgment, to be imposed upon Third Party Plaintiffs in this Pennsylvania litigation).  It is not, as the reply argues, "meaningless" that ERC "seeks a maximum amount of damages referenced" in the arbitration award, Jamex Reply 10—ERC seeks *actual* imposition of the arbitration award on the Third Party Plaintiffs.

Likewise, Jamex's arguments on "accrual" and "conduct" are simply another transparent attempt to wiggle away from the plain fact that the ERC Complaint is a bid to recover from the Third Party Plaintiffs for the liability that resulted from JTS's post-closing breach, the liability that JTH and JML promised Jamex would discharge.  Jamex Reply 9, 11.  The Third Party Defendants concede the alleged breach of the RSA occurred *after* closing of the sale to Jamex.  *Id.* 10.  ERC also concedes this.  ERC Compl. ¶¶ 32, 34, 50–51.  Without that conduct by Jamex, ERC has no claims whatsoever.  In fact, all parties to this litigation agree that any amounts owed to ERC under the RSA are post-closing obligations.  ERC's claims are wholly dependent on the post-closing breach and seek recovery for the post-closing liability[9] that is indemnifiable.

The Third Party Defendants also glibly argue that it is not their "problem" if ERC is seeking to impose liability for the post-sale breach on the Third Party Plaintiffs.  Jamex Reply 10–11.  If ERC's damages in the present action are traceable to JTS's breach of the RSA, however, this is JML and JTH's "problem"—they concededly indemnified the Third Party Plaintiffs for this breach.

Lastly, there is no dispute that the Third Party Defendants were entitled to settle their claims in the proper course.  *Id.* 13–14.  What they were not entitled to do, however, was to assume (and indemnify) such liability, and then settle the claims collusively with the design of

---

[9] *See* ERC Compl. ¶ 61 (Count I seeking RSA debts owed to ERC, which are post-closing), ¶¶ 67, 72 (Counts II and III seeking amounts to satisfy obligations owed to ERC, which are post-closing), ¶ 77 (Count IV seeking damages for injuries to ERC, which occurred from post-closing breach); Prayer for Relief ¶¶ 1–3 (seeking award for payments owed under the RSA, arbitration award regarding post-closing breach, and breach of contract expectation damages).

forcing the indemnified parties to foot the bill; there is no public policy that encourages collusion.  *See Sargent v. Johnson*, 551 F.2d 221, 232 (8th Cir. 1977); *Cont'l Cas. Co. v. Westerfield*, 961 F. Supp. 1502, 1506 (D.N.M. 1997) *aff'd sub nom. Cont'l Cas. Co. v. Hempel*, 4 F. App'x 703 (10th Cir. 2001).

### B. Tortious Interference.

The Ballengee Reply relies heavily on the argument that the Third Party Plaintiffs' allegations are judicial admissions that require dismissal of the tortious interference claim. Ballengee Reply 6–10.  Ballengee vastly overstates the significance of the quoted allegations, which do nothing to undermine the claim.  That Ballengee, motivated by his own personal interest, included releases for other entities at the same time that he made sure to obtain the coveted release for himself (while also throwing JTS under the bus, and colluding to foist onto an absent party the very liability entities he controlled had assumed and indemnified shortly before), does <u>not</u> excuse his tortious conduct.  Opp. 43–46.  Indeed, Ballengee's lead case, *Holloway v. Skinner*, emphasizes that an officer must act *in good faith* and not have been motivated by personal interests.  898 S.W.2d 793, 796 (Tex. 1995).

Further the court in *Holloway* made clear that the concern behind the doctrine was to prevent every case involving failure to pay a corporate debt from being recast as a tortious interference case against a corporate officer who decided not to pay the debt.  *Id.*  Here, however, the claim involves not simple failure to pay a debt, but also tortious and collusive *creation* of a purported liability.  Ballengee has no response to the case law holding that the settlement with ERC was a sham and a fraud.  Opp. 45 (citing *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696, 712–13 (Tex. 1996)).  And Ballengee's only response to the on-point tortious interference case law cited in the Opposition, *see id.* 43 (citing cases), is to argue that they do not involve judicial admissions and to note that other cases (in different scenarios) come out

9

otherwise. Ballengee Reply 9–10. That simply does not suffice to distinguish the applicable case law.

Ballengee cites no case, in either brief, involving a corporate agent who controlled multiple companies and sacrificed one for the supposed benefit of others and, importantly and principally, himself. Opp. 46. The situation, of Ballengee's own making, presents complex factual questions respecting his good faith and motives at different times and with respect to different entities.[10] Indeed, it is unclear on which entity's behalf Ballengee now claims to have been acting, or with what entity he claims to have been acting with complete identity of interest—it cannot be all of them at once, unless he disregards multiple corporate forms. There are no "judicial admissions" on those points, and the Third Party Defendants point to none.

### C.     Contribution.

The Third Party Defendants contend that the Opposition concedes that the Third Party Complaint fails to allege a joint tort cause of action. Jamex Reply 14. Again, this is wrong.

The Opposition set forth case law rejecting the Third Party Plaintiffs' incorrectly circumscribed view of the broad contribution right and case law showing that parties may act sequentially—rather than simultaneously—and be considered "joint" tortfeasors, that alter ego is akin to and has elements of fraud, and that contribution is a broad equitable right available in a range of circumstances, including those applicable here. Opp. 49–50. The Third Party Defendants fail to distinguish, or even to cite, those decisions.

---

[10] Despite Ballengee's derisive tone, it remains the standard that factual questions are not to be decided at the pleading stage. Ballengee's lead cases are distinguishable on this basis as well. *Holloway*, 898 S.W.2d at 793 (jury verdict); *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455 (Tex. 1998) (summary judgment).

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Opposition, the Third Party Plaintiffs request that the Jamex MTD and the Ballengee MTD be denied in their entirety. In the event the Court deems the allegations in the Third Party Complaint deficient in any way, the Third Party Plaintiffs respectfully request that they be granted leave to take jurisdictional discovery and/or to re-plead.

Dated: January 9, 2018

                        Respectfully submitted,

                         /s/ *Jeffery A. Dailey*
                        Jeffery A. Dailey (I.D. No. 85993)
                        Ellen L. Pierce (I.D. No. 318579)
                        AKIN GUMP STRAUSS HAUER
                        & FELD LLP
                        Two Commerce Square, Suite 4100
                        2001 Market Street
                        Philadelphia, Pennsylvania 19103
                        T: (215) 965-1200
                        F: (215) 965-1210
                        jdailey@akingump.com
                        epierce@akingump.com

                        David M. Zensky (*pro hac vice*)
                        Katherine P. Porter (*pro hac vice*)
                        Kelly A. Eno (*pro hac vice*)
                        AKIN GUMP STRAUSS HAUER
                        & FELD LLP
                        One Bryant Park
                        New York, New York 10036
                        T: (212) 872-1000
                        F: (212) 872-1002
                        dzensky@akingump.com
                        kporter@akingump.com
                        keno@akingump.com

                        *Attorneys for Bridger Logistics,*
                        *LLC, Ferrellgas Partners, L.P., and*
                        *Ferrellgas L.P.*

## **CERTIFICATE OF SERVICE**

    I, Jeffery A. Dailey, hereby certify that I caused Defendants / Third Party Plaintiffs Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.'s Consolidated Sur-Reply in Further Opposition to Third Party Defendants' Motions to Dismiss the Third Party Complaint to be filed and served on all counsel of record via the Court's ECF system on January 9, 2018.

                                                 */s/ Jeffery A. Dailey*
                                                 Jeffery A. Dailey

Dated:  January 9, 2018