## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, | ) | Civil Action No. 2:17-cv-00495-RK |
| JEREMY GAMBOA, FERRELLGAS | ) | |
| PARTNERS, L.P., and FERRELLGAS, L.P., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DEFENDANTS JULIO RIOS & JEREMY GAMBOA'S
## OPPOSITION TO PLAINTIFF EDDYSTONE RAIL COMPANY,
## LLC'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................4

    I.       FACTUAL AND PROCEDURAL BACKGROUND ............................................5

    II.      ARGUMENT AND AUTHORITIES ....................................................9

          A.     Eddystone's Amendment Fails to Plead its Intentional Fraudulent Transfer Claim with Required Particularity. ...............................................10

          B.     Eddystone's Interrogatory Responses Confirm that it Cannot Cure this Fatal Defect. ........................................................................................13

CONCLUSION........................................................................................................14

## TABLE OF AUTHORITIES

**CASES**

*Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) ................................................................ 9

*Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628 (3d Cir. 1989) ...................... 5, 10, 12

*Diaz v. Palakovich*, 448 F. App'x 211 (3d Cir. 2011) ...................................................... 9

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ........................ 9

*In re Harris Agency, LLC*, 465 BR 410 (Bankr. E.D. Pa. 2011) (dismissing fraud claim under Bankruptcy Code and PUFTA § 5104(a)(2) .............................................................. 10

*Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)……………………………………...4, 14

*Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir.), cert. denied, 464 U.S. 937, 104 S. Ct. 348 L. Ed. 2d 314 (1983)............................................................................. 9

*Mosler v. M/K Ventures Int'l. Inc.*, 103 F.R.D. 385 (N.D. Ill. 1984) ............................... 9

*Peterson v. Philadelphia Stock Exchange*, 717 F. Supp. 332 (E.D. Pa. 1989) .................. 9

*River Rd. Dev. Corp. v. Carlson Corporation - Northeast*, 1990 U.S. Dist. LEXIS 6201 WL 69085, at *8 (E.D. Pa. 1990) ................................................................................. 4

*Sarfaty v. Nowak*, 369 F.2d 256 (7th Cir. 1966), cert. denied, 387 U.S. 909, 87 S. Ct. 1691, 18 L. Ed. 2d 627 (1967) ....................................................................................... 9

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir. 1984) .................. 10

*Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238 (3d Cir. 2010) ................. 9

*United States v. Rocky Mt. Holdings, Inc.*, 2009 U.S. Dist. LEXIS 52203, *1 .................. 4, 13

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 15(a) ............................................................................. 9

Federal Rule of Civil Procedure 9(b) ............................................................................... 4

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ................................................. 13

Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5101 ........................... 5, 10

Wright & Miller, 5 FEDERAL PRACTICE AND PROCEDURE, § 1298 .................................. 10

Defendants Julio Rios and Jeremy Gamboa ("Individual Defendants") file this Memorandum of Law in Opposition to Eddystone Rail Company, LLC's ("Eddystone") Motion for Leave to Amend (the "Motion"), and respectfully show as follows.

## INTRODUCTION

Eddystone's proposed First Amended Complaint (the "Amendment") includes new defendants, new allegations, and new theories of liability, but fails to include what it must to assert a cognizable claim for intentional fraudulent transfer: a description, with particularity, of the "circumstances of the alleged fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). This defect is fatal, both to Eddystone's Amendment and its Motion.

Eddystone's intentional fraudulent transfer claim is subject to the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b), which requires Eddystone to plead this claim with particularity. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) ("[F]raud must be pled with particularity in *all* claims based on fraud[.]"). To meet this heightened pleading standard, Eddystone must plead "***the who, what, where, when, and how***" of the fraudulent transfer as applied to the Individual Defendants, specifically. *United States v. Rocky Mt. Holdings, Inc.,* 2009 U.S. Dist. LEXIS 52203, *1 (emphasis added). *See also In re Rite Way Elec., Inc.*, 510 B.R. 471, 477 (Bankr. E.D. Pa. 2014) (Rule 9(b) requires plaintiffs to plead the "circumstances constituting fraud, including the who, what, when, where, and how"). But the vague, conclusory allegations included in Eddystone's Amendment do nothing of the sort, and leave the Individual Defendants without knowing what, when, where, or how Eddystone claims they ***individually*** and ***intentionally*** committed a fraudulent transfer. Without describing the details of this claim, the Individual Defendants are left without the information necessary to mount a defense. This is precisely the purpose of the particularity requirement contained in Rule 9(b): to ensure that when fraud is alleged the defendant is placed on notice of the "precise

misconduct with which they are charged." *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).  The Amendment gives the Individual Defendants no such notice, and should not be permitted.

The Individual Defendants ask the Court to deny Eddystone's Motion because the Amendment fails to meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b), and would accordingly be dismissed under Rule 12(b)(6), rendering any amendment futile.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On February 2, 2017 – over a year and a half ago – Eddystone commenced litigation and filed its Complaint seeking recovery on claims of alter ego liability, fraudulent transfer, and breach of fiduciary duty against five defendants: the BL/FG Defendants, Julio Rios, and Jeremy Gamboa.

Eddystone brought Count II of its original complaint (the "Complaint") under Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5101, and alleges that an "implied contract" existed, whereby Bridger Logistics promised to provide Bridger Transfer Services ("BTS") with enough funds to make all future payments due to Eddystone, whether for actual transloading or for deficiency payments:

> Defendants caused BTS to allow its implied contract with Bridger Logistics to be abrogated without reasonably adequate consideration, thereby transferring to Defendants approximately $140 million of value.  Defendants Rios, Gamboa, Bridger Logistics and FGP therefore engaged in an intentional fraudulent transfer in violation of the Pennsylvania Uniform Fraudulent Transfer Act.

Compl. ¶ 63, attached as Exhibit A.  In Count III, Eddystone alleged constructive fraudulent transfer based on the same theory that BTS abrogated an implied contract with BL:

---

[1] The Individual Defendants also join in the arguments made by the BL/FG Defendants in their Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File Amended Complaint, and incorporate those arguments by reference herein.

By causing BTS to allow its implied contract with Bridger Logistics to be abrogated
without any compensation to BTS, Defendants transferred value to Rios, Gamboa,
Bridger Logistics, and FGP without "reasonably equivalent value."

*Id.* ¶ 69.  Thus, according to Eddystone, a fraudulent transfer occurred when BTS released Bridger

Logistics from its implied obligation to cover approximately $140 million in deficiency payments owed

by BTS (*i.e.*, an "abrogation" of the implied contract). Compl. ¶¶ 7, 63–67.

On August 10, 2018 – only one business day before the document production deadline –

Eddystone sought leave to file its First Amended Complaint (the "Amendment").  *See* Pl.'s Mot. for

Leave to File Am. Compl., Aug. 10, 2018, ECF No. 178, attached as Exhibit B.  In its Amendment,

Eddystone adds thirteen new entities as defendants,[2] a host of new allegations, and several previously

undisclosed theories of liability. *See generally* Ex. A.

The Amendment expands Eddystone's fraudulent transfer theory in Claims II and III far

beyond the abrogation of an implied contract, and now include that the Individual Defendants are

personally liable as a result of the transfers of unspecified balance sheet assets.  Specifically, Eddystone

seeks to add the following new paragraph to Count II:

Prior to, in preparation for, and after the sale of Bridger Logistics to FGP, Defendants
Rios, Gamboa, Bridger Logistics, and FGP caused BTS to transfer, without reasonably
adequate consideration in exchange, all of its cash, accounts receivable, real and
personal property, valuable commercial agreements, and other assets, to Bridger
Logistics, Bridger Administrative Services II, LLC, Bridger Marine, LLC, Bridger Rail
Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan
Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, Bridger Energy,
LLC, Bridger Leasing, LLC, Bridger Lake, LLC, Bridger Administration, Bridger
Management, J.J. Liberty, LLC, and J.J. Addison Partners, LLC.

---

[2] These entities include (1) Bridger Administrative Services II, LLC; (2) Bridger Marine, LLC; (3)
Bridger Rail Shipping, LLC; (4) Bridger Real Property, LLC; (5) Bridger Storage, LLC; (6) Bridger Swan Ranch,
LLC; (7) Bridger Terminals, LLC; (8) Bridger Transportation, LLC; (9) Bridger Energy, LLC; (10) Bridger
Leasing, LLC; (11) Bridger Lake, LLC; (12) J.J. Liberty, LLC; and (13) J.J. Addison Partners, LLC.

Ex. B, ¶ 88.  As a result of this transfer, the Amendment alleges that "transferees Rios, Gamboa, Bridger Logistics, Bridger Rail Shipping, and FGP caused BTS to allow its implied contract with Bridger Logistics to be abrogated, transferring ***about $140 million of value to Defendants*** without providing BTS reasonably equivalent value." *Id.* at ¶ 90 (emphasis added).  Eddystone continues, stating "Rios and Gamboa were the officers and controlling persons of BTS as well as Bridger Logistics and FGP.  The [$140 million] value was transferred from BTS for the benefit of the insider Defendants." *Id.* at ¶ 92(a).  Yet nowhere in its Amendment does Eddystone allege ***what*** exactly that $140 million "value" or "benefit" included, or ***how*** the Individual Defendants obtained any of this alleged value/benefit, personally.

Later in the Amendment, Eddystone alleges that the Individual Defendants and at least fifteen other entities received the "transfer of BTS's other assets," without adequate consideration, and again makes a vague reference to "value" allegedly transferred to the Individual Defendants, personally:

> By causing BTS to allow its implied contract with Bridger Logistics to be abrogated without any compensation to BTS and by transferring away BTS's other assets to Bridger Logistics and the Additional Fraudulent Transfer Recipient Subsidiaries without reasonably adequate consideration in exchange, ***Defendants Rios, Gamboa, Bridger Logistics, and FGP transferred value to Rios, Gamboa, Bridger Logistics, FGP, and the Additional Fraudulent Transfer Recipient Subsidiaries*** without BTS' receiving "reasonably equivalent value."

*Id.* at ¶ 92(d); ¶ 95 (emphasis added).  Eddystone claims damages for the intentionally fraudulent transfer "in an amount equal to the value of the [$140 million] transfer," yet nowhere in the Amendment does Eddystone describe ***what*** value or benefit the Individual Defendants received in their ***personal*** capacity, nor does it describe ***how*** this value or benefit was received, or ***how*** it is possible that the Individual Defendants each received a $140 million benefit at the same time that

Bridger Logistics, FGP, and ***fifteen other entities***[3] also received that very same benefit. *Id.* at ¶ 93.

Unable to determine the "what, when, where, or how" of Eddystone's fraudulent transfer claim, the Individual Defendants sought clarification through a second set of interrogatories. Interrogatory No. 3, specifically, asked Eddystone to respond to the following:

> Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Two of your Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual to whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars) received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

Eddystone's Resp. to Rios Second Set of Interrogs., ROG 3, attached as <u>Exhibit C</u>.  This interrogatory sought to obtain the very factual information required by Rule 9(b) that was conspicuously absent from Eddystone's Complaint and Amendment.  But instead of answering the interrogatory, Eddystone refused.  In its response, Eddystone objects that

> the information requested is within Defendants' knowledge. Eddystone further objects that this Interrogatory is premature, because Eddystone's investigation of the facts is ongoing. Identification of each transfer at issue will be detailed in an expert report. Accordingly, Eddystone will update and supplement its response at the end of expert discovery, in accordance with Rule 33(a)(2).

Ex. C.  Eddystone's response ignores both its obligations to respond to discovery and the fact that the Individual Defendants possess no such knowledge.

Eddystone's Amendment lacks requisite particularity, and its interrogatory responses only prove that this defect cannot be cured.  The Individual Defendants are thus left without required

---

[3] Accordingly to the Amendment, these entities include Bridger Administrative Services II, LLC, Bridger Marine, LLC, Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, Bridger Energy, LLC, Bridger Leasing, LLC, Bridger Lake, LLC, Bridger Administration, Bridger Management, J.J. Liberty, LLC, J.J. Addison Partners, LLC (the "Additional Fraudulent Transfer Recipients"). *See id.* at ¶ 33.

notice as to the substance of the fraudulent transfer claim made against them, and without the ability to adequately prepare a defense. The Amendment fails for lack of particularity, and the Motion should be denied.

## II.   ARGUMENT AND AUTHORITIES

The Court should deny Eddystone's Motion because its proposed Amendment fails to plead its intentional fraudulent transfer claim against the Individual Defendants with anywhere near the particularity required by Federal Rule 9(b), rendering the Amendment futile.

Federal Rule of Civil Procedure 15(a) provides that "the grant or denial of an opportunity to amend is within the discretion of the District Court. . . [and,] [a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, *and futility*." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (emphasis added) (citation omitted). Indeed, where repleading could not correct the defects in a party's claim, a court should not grant leave to replead. *See e.g., Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."); *Peterson v. Philadelphia Stock Exchange*, 717 F. Supp. 332, 337 (E.D. Pa. 1989); *see generally Mosler v. M/K Ventures Int'l. Inc.*, 103 F.R.D. 385 (N.D. Ill. 1984); *see also Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), cert. denied, 464 U.S. 937, 104 S. Ct. 348, 78 L. Ed. 2d 314 (1983); *Sarfaty v. Nowak*, 369 F.2d 256, 259 (7th Cir. 1966), cert. denied, 387 U.S. 909, 87 S. Ct. 1691, 18 L. Ed. 2d 627 (1967) (Rule 15(a) does not require a court to do a futile thing).

"For a proposed amendment to be futile, the complaint – as amended – must fail to state a claim upon which relief could be granted, that is, the same standard Federal Rule of Civil Procedure 12(b)(6) contemplates." *Diaz v. Palakovich*, 448 F. App'x 211, 216 (3d Cir. 2011). Thus, the Court

must apply the Rule 12(b)(6) framework to analyze whether a claim would be futile.  *See Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010).

The allegations contained in Eddystone's Amendment are vague, ambiguous, and lack even the most basic detail necessary to allege a colorable claim – let alone a claim subject to the heightened standard required by Rule 9. And Eddystone's responses to the Individual Defendants' latest interrogatories illustrate that Eddystone has not, will not, and likely cannot, plead its fraudulent transfer claim against the Individual Defendants with the level of particularity necessary to state a claim upon which relief might be granted.  Eddystone's failure to plead its fraudulent transfer claim against the Individual Defendants with sufficient particularity renders the filing of its proposed Amendment futile, as it would be subject to dismissal under Rule 12(b)(6). *See In re Harris Agency, LLC*, 465 BR 410, 417 (Bankr. E.D. Pa. 2011) (dismissing fraud claim under Bankruptcy Code and PUFTA § 5104(a)(2) for "failing to plead fraud with particularity" and "providing only the bare outline of an allegation without giving any details or describing any circumstances").  The Court should therefore deny Eddystone's Motion.

### A.      Eddystone's Amendment Fails to Plead its Intentional Fraudulent Transfer Claim with Required Particularity.

To properly plead its fraudulent transfer claims Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5101, et seq. ("PUFTA"), Eddystone must state that a transfer is intentionally fraudulent "with actual intent to hinder, delay or defraud any creditor of the debtor," 12 Pa. C.S. § 5104(a).

Eddystone's intentional fraudulent transfer claim must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that a party "state *with particularity* the circumstances constituting fraud. . ." Fed. R. Civ. P. 9(b) (emphasis added).   Indeed, Rule (9)(b) "requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure

that defendants are placed on notice of the 'precise misconduct with which they are charged, and to safeguard defendants against spurious charges' of fraud." *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting, respectively, *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), and Wright & Miller, 5 FEDERAL PRACTICE AND PROCEDURE, § 1298, at 407 (1969)). The conclusory, vague, inconsistent and overly broad allegations offered in support of Eddystone's intentional fraudulent transfer claim against Rios and Gamboa fail to meet this standard.

Eddystone's Amendment claims that the intentional fraudulent transfer consists of 1) the transfer of BTS's assets, and 2) the abrogation of an implied contract between BTS and Logistics, but does nothing to describe how Rios or Gamboa could be ***personally*** liable for these transfers, as it must. Indeed, to be liable in their individual capacities for a fraudulent transfer, Eddystone must allege that both Rios and Gamboa, as transferees, received some benefit from the transfer. But in describing this alleged benefit, Eddystone lumps the Individual Defendants together with seventeen different corporate entities and claims that ***each*** somehow received a "transfer of value" of $140 million. *Id.* at ¶¶ 10, 89, 92(a). These allegations could hardly be less clear. Indeed, in alleging that these Defendants were "transferred value" from BTS, Eddystone conspicuously omits any description of ***what*** value the Individual Defendants personally received, ***when*** they received it, and ***how*** they received this value in their individual capacities, when simultaneously FGP, Bridger Logistics, and fifteen other entities received that same value in their corporate capacities. Nowhere in the text of the Amendment does Eddystone describe what "value" Rios and Gamboa received, what form this value took, or how it was obtained.

Other allegations make Eddystone's intentional fraudulent transfer claim against the Individual Defendants even more confused. In paragraph 8 of the Amendment, Eddystone alleges

that the abrogation of the obligation to fund BTS's payments to Eddystone "effectively transferred *to FGP and Bridger Logistics* the almost $140 million present value of BTS' right to receive payments." Ex. B ¶ 8.  The Individual Defendants are not mentioned at all.  Then, in paragraph 92(d) of the Amendment, Eddystone alleges that "the transfer of the value of Bridger Logistics' implied obligation by causing BTS to allow termination of that contract *and the transfer of BTS's other assets* constituted a transfer of substantially all of BTS's assets *to transferee Defendants*," which include both Rios and Gamboa. *Id.* at ¶ 92(d) (emphasis added).  These assets – which exist separate and apart from the $140 million value Eddystone attaches to the RSA contract[4] – include "shareholders' (members') equity of $37.9 million, including crude oil truck injection units, construction in progress, and receivables." *Id.* at 42.  In other words, in addition to a vague and undefined transfer of $140 million in "value" that the Individual Defendants allegedly gained in their personal capacities, Eddystone also claims that the Individual Defendants personally received "BTS's other assets," which include *crude oil truck injection units, construction in progress, and receivables*.  This claim is unsupported by any other allegation in the Amendment or the Original Complaint, and simply makes no sense.  Indeed, these are the very kinds of "spurious charges of fraud" that Rule 9(b) was designed to protect against. *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).  Based on the Amendment, the Individual Defendants simply do not – and cannot – know the nature of the "precise misconduct with which they are charged." *Id.*  The Amendment therefore fails to provide the particularity required of Eddystone's intentional fraudulent transfer claim as applied to the Individual Defendants.

---

[4] Eddystone's Amendment specifically notes that BTS's assets "did not include any value for the RSA contract." Ex. B ¶ 42.

**B.      Eddystone's Interrogatory Responses Confirm that it Cannot Cure this Fatal Defect.**

While the Amendment demonstrates a failure to plead with requisite particularity, Eddystone's interrogatory responses demonstrate a fundamental inability to correct this infirmity.

Without any description of what value either Rios or Gamboa received from the allegedly intentional fraudulent transfer, the Individual Defendants sought to obtain clarity through discovery, asking Eddystone to identify the factual basis for its intentional fraudulent transfer claim and "the benefit (in dollars) received by: (a) Rios; and/or (b) Gamboa from the transfer." Ex. C.  Yet instead of providing information it was already required to include in its Complaint pursuant to Rule 9(b), Eddystone flatly refused to provide any information related to the nature and value of the Individual Defendants' alleged benefit.  Further, Eddystone's principal objection is that "the information is within Defendants' knowledge." *Id.*  This objection is ironic, given that the Individual Defendants have a clear recollection of their time at Bridger Logistics, and have attested to the fact that they did not receive *any* benefit from the transfer of BTS's assets. *See* Aff. of J. Gamboa, Dated March 15, 2017 (ECF No. 34-3), attached as Exhibit D; Aff. of J. Rios, dated March 15, 2017 (ECF No. 34-2), attached as Exhibit E.  Both Individual Defendants have submitted affidavits to this Court attesting to the fact that neither defendant 1) "owned any equity in any of the Bridger Parties" at the time of the BTS transfer of assets; or 2) "received [any] financial compensation or other value from the transfer of assets from Bridger Transfer Services, LLC." Ex. D ¶¶ 6, 7; Ex. E ¶¶ 6, 7.  The Individual Defendants agree with Eddystone that relevant information is best known to them, and both have disclaimed in sworn declarations any knowledge of a benefit personally obtained through the fraudulent transfers alleged.

In short, after having been sued by Eddystone over a year and a half ago, the Individual Defendants still do not know "the who, what, where, when, and how" of the fraudulent transfer

Eddystone sued them for intentionally committing. *United States v. Rocky Mt. Holdings, Inc.,* 2009 U.S. Dist. LEXIS 52203, *1. This is not permitted by the Federal Rules, nor by the Third Circuit. *See Lum v. Bank of Am.,* 361 F.3d at 220 ("Federal Rule of Civil Procedure 9(b) requires that the fraud be pled with specificity."*); Agri-Mktg., Inc. v. ProTerra Sols., LLC,* 5:17-CV-00627, 2018 WL 1444167, at *9 (E.D. Pa. Mar. 22, 2018) (dismissing fraudulent transfer claim because plaintiff included "no allegations identifying any particular transfer, i.e., which assets were transferred, when such a transfer occurred, who made the transfer, and to whom the assets were transferred"). Eddystone has refused to provide the Individual Defendants with notice of the "precise misconduct with which they are charged," through both its failure to allege fraud in its Amendment with particularity, and its staunch refusal to disclose any related facts when asked directly in discovery. Eddystone has altogether failed to "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation," which the Third Circuit requires to satisfy Rule 9(b). *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007). The Amendment thus fails the standard required by Rule 9 and renders any amendment futile.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the intentional fraudulent transfer claim alleged in Eddystone's Amendment against the Individual Defendants fails for a lack of particularity. Eddystone's discovery responses illustrate that this deficiency is not curable, but fatal. The Court should thus deny Eddystone's Motion for Leave to Amend.

DATE:  August 24, 2018          Respectfully submitted,

                                     */s/ Jeremy A. Fielding*
Jeremy A. Fielding
*Admitted pro hac vice*
jfielding@lynnllp.com
Kent D. Krabill
*Admitted pro hac vice*
kkrabill@lynnllp.com
Jonathan D. Kelley
*Admitted pro hac vice*
jkelley@lynnllp.com
Christian A. Orozco
*Admitted pro hac vice*
corozco@lynnllp.com
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Julie Negovan, Esquire (1651)
1622 Spruce Street
Philadelphia, PA  19103
jn@sprucelaw.com
(267) 546-0623

*Attorneys for Defendants*
*Julio Rios and Jeremy Gamboa*

## CERTIFICATE OF SERVICE

I, Julie Negovan, hereby certify that I filed and served the foregoing filing to all counsel of record via the Court's ECF system on this date.

Dated: August 24, 2018                                    /s/      Julie Negovan
                                                                        Julie Negovan