Case 2:17-cv-00495-JD   Document 179-2   Filed 08/24/18   Page 1 of 13
Case 2:17-cv-00495-RK   Document 178   Filed 08/10/18   Page 1 of 13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>BRIDGER LOGISTICS, LLC, JULIO RIOS, )<br>JEREMY GAMBOA, FERRELLGAS )<br>PARTNERS, L.P., AND FERRELLGAS, L.P. )<br>)<br>Defendants. )<br>) | Civil Action No. 17-CV-00495 |

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

## INTRODUCTION

Eddystone seeks leave to amend its Complaint to identify specific Ferrellgas subsidiaries that received the fraudulent transfers alleged in the original complaint as well as an additional Ferrellgas subsidiary that acted as a key participant in the conduct that has been alleged as a basis for Eddystone's alter ego claim. Based on Ferrellgas's productions to date, Eddystone has uncovered these additional Ferrellgas subsidiaries as proper defendants on the same claims it asserted against Ferrellgas, Rios, and Gamboa in its original Complaint.

In its orginal Complaint Eddystone alleged that between December 31, 2014 and February 22, 2016, Ferrellgas, Rios, and Gamboa stripped Bridger Transfer Services, LLC ("BTS") of all its assets, so as to render it incapable of satisfying any judgment for breach of its contractual obligations to Eddystone. But without the benefit of discovery, Eddystone could not know the specific Ferrellgas subsidiaries to which the original defendants caused BTS to transfer its assets, only that they had reduced it to a shell. Now that Eddystone has secured the necessary evidence, it has identified additional specific transferee subsidiaries. Eddystone has also discovered that another BTS affiliate, Bridger Rail Shipping, LLC, was a core participant in the scheme to use BTS's transloading capacity to supply oil to Monroe Energy while depriving BTS of its share of the resulting revenues. Eddystone's proposed First Amended Complaint adds these entities as defendants and alleges more facts to apply its original claims for fraudulent transfer and alter ego to these new defendants.

Under the liberal amendment standard of Rule 15 of the Federal Rules of Civil Procedure, the Court should permit this amendment. Eddystone is amending its Complaint based on information that it obtained in discovery and which was not previously available to it. The Court has previously found the original Complaint sufficient to deny Defendant's motions to

dismiss. The Amended Complaint raises no new legal theory against any of the existing Defendants, and the claims against the additional Defendants only add more detail to the pre-existing claims in Eddystone's original complaint. All of the information on which the claims against the added defendants are based is within Defendants' possession: each entity is or was a direct or indirect wholly owned subsidiary of Ferrellgas, and Ferrellgas produced all the evidence to support amendment. There are no surprises here. Under such circumstances, the Court should grant leave to amend the already sufficient original Complaint.

## BACKGROUND

On February 2, 2017, Eddystone filed its Complaint (the "Original Complaint") against Defendants Ferrellgas Partners, L.P., Ferrellgas, L.P., and Bridger Logistics, LLC (collectively, "Ferrellgas"), Julio Rios, and Jeremy Gamboa (collectively, the "Original Defendants"). Dkt. 1. The Original Complaint pleaded claims for alter ego, intentional and constructive fraudulent transfer, and breach of fiduciary duty against each of the Original Defendants. In particular, Eddystone alleged that the Original Defendants stripped BTS of assets so as to render BTS judgment proof on about $140 million of minimum volume commitment payments that it owed Eddystone under the Eddystone Rail Facilities Services Agreement ("RSA") while taking the benefits of BTS's business and of the RSA for themselves.

On March 24, 2017, the Original Defendants filed two motions to dismiss and a motion to strike totaling 57 pages. Dkt. 34-36. In those motions, Defendants argued that each of Eddystone's claims was deficient as to every one of the Defendants. In addition, the Defendants argued that Eddystone had failed to allege facts on which to hold Ferrellgas, Rios, and Gamboa in particular liable for each of the claims. Dkt. 34-1 at 16-18; Dkt. 35-1 at 28-29. After extensive briefing, the Court denied all of the motions to dismiss. Dkt. 60.

Discovery confirmed and provided additional detail about the stripping of BTS. During discovery, Eddystone requested accounting records from Defendants, including general ledgers, subledgers, and accounting backup documents, and Defendants have produced some, though still not all, of the requested accounting records. By reviewing those accounting records, Eddystone's forensic accountants have been able to identify additional details regarding the operation of the scheme by which Defendants used the transloading capacity for which BTS had contracted under the RSA to supply crude oil to Monroe Energy, deprived BTS of the compensation for that capacity and other BTS facilities from the Monroe shipping arrangement, stripped BTS of its assets, and then sold BTS to a newly formed, shell entity. Before discovery, Eddystone did not know precisely where the Defendants had squirreled away BTS's assets and cash flow. The accounting records have disclosed the identity of these additional Ferrellgas subsidiaries and the role they played in the Defendants' scheme to benefit from BTS's contracts and other assets while diverting to other Ferrellgas entities the revenue to which BTS was entitled in return for the use of its assets.

On June 27, 2018, Ferrellgas requested that Eddystone agree to an amended pleadings deadline of July 13. While Eddystone cannot agree to an amended pleadings deadline given the badly incomplete state of Ferrellgas's production, Eddystone did draft an Amended Complaint to reflect what it currently knows. On July 12, 2018, counsel for Eddystone wrote to Defendants to inform them that Eddystone was prepared to disclose an Amended Complaint on July 13. However, later on July 12, counsel for Rios and Gamboa requested the opportunity to meet and confer regarding the contents of an Amended Complaint. After meeting and conferring with Rios and Gamboa counsel on July 13 and making further revisions, counsel for Eddystone emailed an Amended Complaint to counsel for all Defendants on July 18 and asked whether they

would consent to the amendment. On August 2, counsel for Ferrellgas stated that they would not consent. On August 2, counsel for Rios and Gamboa also stated that they would not consent. Therefore, Eddystone now moves for leave to amend.

### ARGUMENT

The Court should grant Eddystone leave to file its proposed First Amended Complaint in accordance with the liberal amendment standard of Rule 15. Eddystone's amendment to add new defendants is timely, supported by evidence available only through discovery, and in no way prejudicial to Ferrellgas's ability to prepare its defense.

Rule 15 of the Federal Rules of Civil Procedure creates a strong presumption in favor of granting leave to amend a complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Given the presumption in favor of amendment, the burden of persuasion lies on the non-movant to establish that amendment would be unjust. *Conover v. Rash Curtis & Assocs.*, No. 315CV08381FLWTJB, 2016 WL 3708656, at *2 (D.N.J. July 12, 2016). Ferrellgas cannot discharge its burden. The factors courts consider in determining whether amendment would be unjust are bad faith and inexcusable delay, undue prejudice, and futility of amendment. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir. 1993). Each of the factors heavily favors granting Eddystone leave to amend.

**A. Eddystone Has Moved to Amend in Good Faith and Without Delay**

Eddystone has acted in good faith and without delay in seeking to amend its complaint. In this Circuit, where the plaintiff has "served the complaint in a timely fashion, provided and requested discovery," moved to amend soon after discovering key new facts, and "prosecuted his

- 5 -

case in a fairly diligent manner," it cannot be charged with a "dilatory motive" to justify denying amendment. *Arthur*, 434 F.3d at 206.

Eddystone has been very diligent in prosecuting its case. Immediately after securing its arbitration award against an insolvent Jamex Transfer Services, Eddystone served its complaint to recover the amount of the unpaid award from Defendants for having stripped it of assets and used it as a shell. In discovery, Eddystone has nearly completed production of all documents Defendants have requested. Meanwhile, the vast bulk of Defendants' documents remain outstanding, including much of the accounting data that is critical to identifying fraudulent transfers with precision. Notably, Ferrellgas has not produced a single accounting backup document though Eddystone requested them on October 30, 2017. And the subledgers that Ferrellgas has produced to date are missing so much information as to be practically useless. No valid explanation for the missing information has been forthcoming, so Eddystone may again need the Court's assistance to compel an examination of the documents.

Nonetheless, Eddystone's forensic accountants have diligently analyzed the general ledger entries and subledgers that Ferrellgas has produced to identify previously unknown transferees of BTS's assets. Eddystone seeks to amend in accordance with Ferrellgas's own proposed amended pleadings date and at a state of the proceedings well in advance of what courts regularly permit. *See Cmty. Voice Line, LLC v. Great Lakes Commc'n Corp.*, 295 F.R.D. 313, 319 (N.D. Iowa 2013) (allowing plaintiff to add fifteen new defendants within the deadline for amendments); *Edelson v. Cheung*, No. 213CV5870JLLJAD, 2017 WL 4220291, at *8 (D.N.J. Sept. 22, 2017) ("Plaintiff's motion is timely considering he learned about the alleged facts through discovery, in particular, the deposition of Defendant"); *Hamilton v. LMM Mgmt., Inc.*, No. 13-2932, 2014 WL 4063365, at *2-3 (E.D. Pa. Aug. 18, 2014) (finding no undue delay

or bad faith where amendment based on facts obtained through depositions and document discovery).

### B. Amendment Would Not Prejudice Ferrellgas

The proposed First Amended Complaint will not result in undue prejudice because it raises no new legal theory against the existing Defendants and instead serves to flesh out the details of the fraudulent transfer allegations to incorporate the identities of the recipient subsidiaries. The new allegations all fall within the conceptual scope of the allegations in the Original Complaint and are based on information – drawn from Ferrellgas business records – that has been known to Ferrellgas, Rios, and Gamboa since the fraudulent transfers occurred during the time period at issue. Thus, the amendment will require no additional discovery nor will it meaningfully affect the scope of the allegations in the case.

"When evaluating what constitutes prejudice, the Third Circuit considers whether amendment would cause the opponent to expend significant additional resources to conduct discovery and prepare for trial, as well as whether it would significantly delay resolution of the action." *Angel v. Tokyo Hibachi Cuisine, Inc.*, No. CIV.A. 14-00273 MCA, 2015 WL 2364769, *2 (D.N.J. May 14, 2015) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). In *Angel*, the court found no prejudice where the "the proposed amendment would add no new claims against the current defendants." *Id.* at *2.

For the same reasons, Defendants will suffer no prejudice here. Eddystone disclosed its amended pleading three months before the end of fact discovery, which closes on October 15, 2018. *See* Scheduling Order, April 13, 3018, Dkt. 157. And the amendment will not require any additional discovery. The First Amended Complaint raises no new cause of action against any of the existing defendants. The new allegations against the additional defendants – detailing the

- 7 -

Ferrellgas entities that received transfers of BTS's assets – simply provide additional detail regarding the same fraudulent transfer allegations regarding the stripping of BTS that underlay the Original Complaint. "Where no 'new concepts and theories that would require extensive additional discovery' exist, there is no prejudice to the non-moving party in allowing the amendment." *Conover*, 2016 WL 3708656, at *2 (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 869 (3d Cir. 1984)).

Defendants also will have no need to conduct additional discovery because all of the information at issue with respect to the Amended Complaint can be found in Defendants' own files, and all the facts alleged in the First Amended Complaint have been known to Defendants for years. Each entity named as a new defendant was, during the relevant period, a direct or indirect subsidiary of Ferrellgas and a recipient of the very fraudulent transfers that were the gravamen of the Original Complaint. The new factual allegations tying the additional defendants to the fraudulent transfer and alter ego claims in the Original Complaint all derived from evidence that Ferrellgas itself produced in discovery. And the fraudulent transfers occurred during the time period in which Rios and Gamboa were Ferrellgas executives with supervisory responsibility for the transactions at issue. Thus, the gravamen of the Amended Complaint consists of information known to Defendants.

In *Daelim Trading Co. v. Giagni Enterprises, LLC*, No. 10 CV 2944 VB, 2012 WL 5995119, at *3 (S.D.N.Y. Oct. 16, 2012), the court held that new facts in an amended complaint were not "unexpected allegations" that could prejudice the defendants' ability to prepare their defense by requiring additional discovery where "defendants were the source of the additional facts plaintiffs learned during discovery." Because Ferrellgas, which produced the accounting records and asset assignment agreements at issue, was the source of the new facts that Eddystone

- 8 -

has alleged in support of its fraudulent transfer and alter ego claims, it cannot claim prejudice. With no need for Ferrellgas to conduct extensive additional discovery and three months remaining before the close of fact discovery, amendment will require no extension of the current case schedule. Amendment would therefore cause Ferrellgas no hardship at all.

### C. Amendment Would Not Be Futile

Nor would Eddystone's proposed amendment be futile, particularly in light of the Court's prior ruling on Defendants' Motions to Dismiss. Amendment can be considered futile only if the proposed amended complaint could not withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Broom v. Saints John Neumann & Maria Goretti Catholic High Sch.*, 722 F. Supp. 2d 626, 630 (E.D. Pa. 2010) (denying motion to amend as futile where plaintiffs sought to assert against current defendants new claim that court found inadequately pled). The proposed First Amended Complaint alleges facts that are more than sufficient to state claims for intentional and constructive fraudulent transfer against each of the new defendants and to state a claim for alter ego liability against Bridger Rail Shipping.

The Court has already ruled that Eddystone "clearly and adequately" alleged the Defendants dominated BTS as their alter ego and engaged in fraudulent transfers of all its assets. Dkt. 59 at 12. Early in the case the Defendants moved to dismiss all of Eddystone's claims, including its fraudulent transfer and alter ego claims. Dkt. 35. However, "[a]fter carefully considering all of the arguments, and accepting all of the factual allegations against in the Complaint as true," the Court held that "the Complaint clearly and adequately alleges claims against each Defendant for Alter Ego, Intentional Fraudulent Transfer, Constructive Fraudulent Transfer, and Breach of Fiduciary Duties of Care and Loyalty to Creditors." Dkt. 59 at 12. Eddystone has therefore already alleged to the Court's satisfaction that BTS was not a separate

- 9 -

entity independent from its owners, affiliates, and business managers, and that BTS's assets were fraudulently transferred from it.  The only possible issue for a motion to dismiss the proposed First Amended Complaint would be whether Eddystone can extend these claims against the new defendants.

The First Amended Complaint properly adds even more detail to the Complaint the Court found sufficient and extends Eddystone's legally sufficient claims of fraudulent transfer against the new defendants by specifying that they are the Ferrellgas entities which actually received the tranfers.  *See* FAC ¶¶ 63-67.  The Amended Complaint properly alleges that the additional defendants each received substantial transfers of value from BTS when in June 2015 and January 2016, BTS forgave intercompany debts they owed and transferred numerous valuable assets, including revenue streams, real property, crude oil transmission and pipeline loading infrastructure, and customer contracts with other firms that had guaranteed payments outstanding.  *See* FAC ¶¶ 65-68.  Thus, the First Amended Complaint clearly states claims for relief against the new defendants on its fraudulent transfer theory – even more specifically than the Complaint the Court has already found sufficient.  *See* PUFTA § 5108(b)(1) (authorizing recovery from transferee as well as beneficiary of fraudulent transfer).

The First Amended Complaint also specifically alleges that Bridger Rail Shipping (another Ferrellgas subsidiary) should be treated as an alter ego of BTS.  Not only did Bridger Rail Shipping share control persons and employees with BTS, but it played a core role in the scheme by which Defendants took advantage of BTS's transloading capacity under the RSA and BTS's other assets while depriving BTS of the resulting revenue and evading the minimum volume obligations in the RSA.  *See* FAC ¶¶ 73-83.  Until May 2015, BTS earned millions in revenue each month for its services in shipping the crude oil Bridger Marketing sold to Monroe,

especially the critical rail-to-barge transloading services it provided at Eddystone. But beginning in June 2015, while BTS continued to provide the same services for the Monroe deal, its new owner Ferrellgas diverted BTS revenue to Bridger Rail Shipping and other fictional accounting entities while allowing Bridger Logistics and Bridger Rail Shipping use of the transloading capacity BTS had obtained under the RSA. *See* ¶¶ 57, 65. Having stripped BTS of the revenue needed to cover its expenses, Bridger Logistics and Bridger Rail Shipping paid BTS's creditor Eddystone directly only so long as they needed the use of BTS's transloading capacity it obtained under the RSA – to service Monroe. *Id.*

Courts regularly hold that where one entity remains financially dependent on an affiliate in a manner calculated to allow the affiliate to exploit its assets while evading the corresponding obligations, an alter ego relationship exists. *See, e.g.*, *Inter-Tel Technologies v. Linn Station Properties*, 360 S.W.3d 152 (Ky. 2012) (finding alter ego relationship where defendant paid all expenses on behalf of subsidiary only so long as it needed the subsidiary's assets and then reneged). In addition, asset stripping is a hallmark of alter ego relationships; for example, in *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588 (N.D. Cal. 2012) alter ego liability attached to a defendant principally because it had stripped the entity of its "primary asset" and "[n]o evidence suggest[ed] that any consideration was given for the transfer." Thus, the facts alleged in the First Amended Complaint make clear that, like the current defendants, Bridger Rail Shipping was an alter ego of BTS.

In short, the proposed First Amended Complaint states viable claims for relief against the new defendants based on the same alter ego and fraudulent transfer theories the Court has already recognized. The Court should therefore permit Eddystone to amend so that it can pursue

a full and complete recovery from all the entities now known to have been centrally involved in the wrongdoing at the heart of this case.

## CONCLUSION

For these reasons, Eddystone requests that the Court grant its Rule 15(a)(2) motion for leave to amend and allow its First Amended Complaint.

Dated: August 10, 2018                      Respectfully submitted,

/s/ Jeffrey M. Theodore
Henry E. Hockeimer, Jr. (I.D. No. 86768)
Terence M. Grugan (I.D. No. 307211)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
hockeimerh@ballardspahr.com
grugant@ballardspahr.com

Filiberto Agusti (*pro hac vice*)
Jeffrey M. Theodore (*pro hac vice*)
Andrew J. Sloniewsky (*pro hac vice*)
Nicholas Petts (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
fagusti@steptoe.com
jtheodore@steptoe.com
asloniewsky@steptoe.com
npetts@steptoe.com

*Counsel for Eddystone Rail Company, LLC*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via the Court's ECF system on August 10, 2018, thereby serving all counsel of record.

*/s/ Nicholas Petts*
Nicholas Petts
