IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC </br></br> Plaintiff, </br> vs. </br></br> BRIDGER LOGISTICS, LLC, JULIO RIOS, JEREMY GAMBOA, FERRELLGAS PARTNERS, L.P., FERRELLGAS, L.P., </br></br> Defendants. | Civil Action No. 17-CV-00495 |

**PLAINTIFF EDDYSTONE RAIL COMPANY, LLC'S RESPONSES AND OBJECTIONS TO DEFENDANTS RIOS AND GAMBOA'S SECOND SET OF INTERROGATORIES**

Plaintiff Eddystone Rail Company, LLC ("Eddystone") pursuant to Federal Rule of Civil Procedure 33, hereby submits its Responses and Objections to the Second Set of Interrogatories of Defendants Julio Rios and Jeremy Gamboa in the above-captioned action ("this Litigation").

Eddystone has not yet completed its investigation of the facts in this Litigation, its search for relevant documents, or its preparation for trial. These responses and objections to the Interrogatories are based on information now known to Eddystone, following a reasonable preliminary investigation. Eddystone reserves the right to amend, modify, or supplement its responses as it learns of new information.

**GENERAL OBJECTIONS**
**AND OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.  Eddystone objects to the Interrogatories insofar as they seek to impose on Eddystone obligations that exceed or contradict those imposed by the Federal Rules of Civil Procedure, and/or the Local Rules of the Eastern District of Pennsylvania. Eddystone will respond in accordance with the applicable rules.

1

2.  Eddystone objects to the Definition of "Identify" insofar as it requires Eddystone to specify facts that are either already in the possession of Rios and Gamboa, or not relevant to the claims and defenses in this Litigation.

3.  Eddystone objects to the Definition of "You" insofar as it includes both Eddystone and "any of its affiliates." Eddystone's affiliates include a large multinational corporation, Enbridge, Inc., which has many business units other than the transloading facility in Eddystone, Pennsylvania. To the extent an Interrogatory seeks information about an Enbridge entity, employee, or agent unrelated to the events underlying this litigation, Eddystone objects to the request as irrelevant and disproportionate.

4.  Eddystone objects that the Instructions, including Instruction 10, require Eddystone to state objections in a manner different from what is required in Rule 33. Eddystone will state its objections as required by Rule 33.

5.  Eddystone objects to Rios and Gamboa's purporting to characterize these interrogatories as served on behalf of Rios alone. By their express terms, the interrogatories seek information on behalf of both Rios and Gamboa. Eddystone will treat these interrogatories as having been served on behalf of both Rios and Gamboa, including for purposes of the limits on interrogatories under the Rules of Civil Procedure.

## SPECIFIC RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 3:** Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Two of your Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual to whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars)

received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

**RESPONSE 3:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the information requested is within Defendants' knowledge. Eddystone further objects that this Interrogatory is premature, because Eddystone's investigation of the facts is ongoing. Identification of each transfer at issue will be detailed in an expert report. Accordingly, Eddystone will update and supplement its response at the end of expert discovery, in accordance with Rule 33(a)(2).

**INTERROGATORY NO. 4:** Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Three of your Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual too whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars) received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

**RESPONSE 4:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the information requested is within Defendants' knowledge. Eddystone further objects that this Interrogatory is premature, because Eddystone's investigation of the facts is ongoing. Identification of each transfer at issue will be detailed in an expert report. Accordingly,

Eddystone will update and supplement its response at the end of expert discovery, in accordance with Rule 33(a)(2).

**INTERROGATORY NO. 5:** Describe in detail the factual bases of your allegation in paragraph 27 of the Complaint that "Defendants represented that, as of December 31, 2014, BTS had total assets of $98.1 million," identifying: (1) who made the representation; and (2) to whom the representation was made. If the representation was oral, identify the date – at least the month and year – that the representation was made. If the representation was not oral, identify the document or communication in which the representation was made by stating: (1) the author of the document or communication; (2) the recipient of the document or communication; (3) the date of the document or communication; and (4) the bates label of the produced document or communication.

**RESPONSE 5:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.

Subject to and without waiving any of its objections, Eddystone states that on April 24, 2015, Bridger, LLC's Director, Market Risk & Credit, Clark Worthley, emailed audited financial statements for 2014 for Bridger, LLC and its subsidiaries to Jeff Simon, an employee of Enbridge, Inc., which owned 75% of Eddystone. Eddystone produced the relevant documents with Bates Numbers ERCEDPA00176401-00176426. The representation concerning BTS's total assets was made on the document Bates Numbered ERCEDPA00176423.

**INTERROGATORY NO. 6:** Describe in detail the factual bases of your allegation in paragraph 29 that "[t]he course of dealing among the Bridger entities shows that they either operated with one another without regard to corporate entities," identifying each and every practice by Rios or Gamboa that forms the basis of that allegation.

**RESPONSE 6:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the Interrogatory is overly burdensome insofar as it asks Eddystone to describe in detail each and every practice by Rios and Gamboa over a three-year period that forms the basis of its allegation in paragraph 29, particularly given that those practices are best known to Rios and Gamboa. Eddystone further objects that the Interrogatory is premature, because Eddystone's investigation of the facts is ongoing.

Subject to and without waiving any of its objections, Eddystone states that, among other things, Rios and Gamboa caused the Bridger entities to enter into business arrangements with one another without written contracts, to incur debts to one another, and to forgive those debts for no consideration whenever convenient for the Bridger entities' owners and in the operation of their business treated their entities as an undifferentiated whole. Eddystone will update and supplement its response at the end of fact discovery, in accordance with Rule 33(a)(2).

**INTERROGATORY NO. 7:** Describe in detail the factual bases of your allegation in paragraph 29 that "[t]he course of dealing among the Bridger entities shows that they either operated . . . through a series of implied contracts," identifying each and every such "implied contract" and the factual basis for your belief in the existence of such contract.

**RESPONSE 7:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the Interrogatory misstates Eddystone's allegation in paragraph 29. Eddystone has alleged that, since the Bridger entities entered into business arrangements with one another without express contracts, that there were implied contracts governing the terms of those arrangements, including for the use of BTS's transloading, loading, pipeline, and injection capacity to supply

5

Monroe, and that if no implied contracts existed the entities were alter egos of one another. Eddystone further objects that the Interrogatory is premature, because Eddystone's investigation of the facts is ongoing. Eddystone will update and supplement its response at the end of fact discovery, in accordance with Rule 33(a)(2).

**INTERROGATORY NO. 8:** Set forth every representation made by Rios or Gamboa related to this action that you allege was false, misleading, or constitutes a misrepresentation or fraud. Include for each: (1) the person who made the misrepresentation, and (2) the person to whom the misrepresentation was made. If the representation was oral, identify the date – at least the month and year – that the representation was made. If the representation was not oral, identify the document or communication in which the representation was made by stating: (1) the author of the document or communication; (2) the recipient of the document or communication; (3) the date of the document or communication; and (4) the bates label of the produced document or communication.

**RESPONSE 8:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the Interrogatory is overly burdensome insofar as it asks Eddystone to identify each and every false or misleading statement made by Rios or Gamboa over more than three years. Eddystone's investigation of the facts is ongoing and it does not know every statement Rios or Gamboa made that was false. This information is best known to Rios and Gamboa. Eddystone further objects to the Interrogatory as requiring an unnecessary effort, because Eddystone has not, as yet, alleged fraudulent misrepresentation as a cause of action. There is no need for Eddystone to compile every false statement that Rios and Gamboa have made into an

interrogatory response, and doing so would be grossly overburdensome.  Eddystone will not respond to this Interrogatory.

**INTERROGATORY NO. 9:** Describe in detail the "implied contract" that the Complaint alleges exists between BTS and Bridger Logistics, identifying (1) the date on which the "implied contract" was entered into by BTS and Bridger Logistics; (2) the term of the "implied contract" *i.e.* its temporal duration; (3) the consideration provided by BTS as part of this "implied contract;" (4) the consideration provided by Bridger Logistics as part of this "implied contract;" (5) each of BTS' specific rights and obligations under this "implied contract"; (6) each of Bridger Logistics' specific rights and obligations under this "implied contract"; (7) whether BTS had the right under the "implied contract" to terminate and, if so, on what terms or conditions; and (8) whether Bridger Logistics had the right under the "implied contract" to terminate and, if so, on what terms or conditions.

**RESPONSE 9:**  Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition, Eddystone objects that this interrogatory mischaracterizes the allegations of the Complaint because the contention of an implied contract between BTS and Bridger Logistics is one Eddystone pled in the alternative.  Eddystone further objects that the Interrogatory is premature, because Eddystone's investigation of the facts is ongoing.

Subject to and without waiving any of its objections, Eddystone states that the term of the implied contract between BTS and Bridger Logistics was five years and two months.  The implied contract required BTS to make available to Bridger Logistics the throughput capacity that BTS secured at Eddystone, Pennsylvania and at Berthold, Van Hook, and New Town, North Dakota.  In exchange, Bridger Logistics promised to pay an amount sufficient for BTS to cover

its payment obligations under its throughput contracts and earn a profit. The remaining contract terms will be detailed in an expert report. Accordingly, Eddystone will update and supplement its response at the end of expert discovery, in accordance with Rule 33(a)(2).

Dated: August 10, 2018                                                                 Respectfully submitted,

/s/ Nicholas Petts
Henry E. Hockeimer, Jr. (I.D. No. 86768)
Terence M. Grugan (I.D. No. 307211)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
hockeimerh@ballardspahr.com
grugant@ballardspahr.com

Filiberto Agusti (*pro hac vice*)
Jeffrey M. Theodore (*pro hac vice*)
Andrew J. Sloniewsky (*pro hac vice*)
Nicholas Petts (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
fagusti@steptoe.com
jtheodore@steptoe.com
asloniewsky@steptoe.com
npetts@steptoe.com

*Counsel for Eddystone Rail Company, LLC*