# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDDYSTONE RAIL COMPANY, LLC

               Plaintiff,

vs.

BRIDGER LOGISTICS, LLC, JULIO RIOS,
JEREMY GAMBOA, FERRELLGAS PARTNERS,
L.P., and FERRELLGAS, L.P.

               Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 2:17-cv-00495-RK

**Oral Argument Requested**

## OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT BY DEFENDANTS BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., AND FERRELLGAS L.P.

BRYAN CAVE
LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York  10104
Tel: 212-541-2000
Fax: 212-541-4630

MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 South Broad, 24th floor
Philadelphia, PA 19109
Tel.: 215-772-1500
Fax: 215-772-7620

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 6

I.     EDDYSTONE UNDULY DELAYED ITS MOTION TO AMEND. ................................... 7

II.    PERMITTING AMENDMENT WILL PREJUDICE THE BL/FG DEFENDANTS. ......... 11

III.   EDDYSTONE'S PROPOSED AMENDMENT IS FUTILE. ............................................ 15

      A.     Fraudulent Transfer .......................................................................................... 15

      B.     Alter Ego ........................................................................................................... 18

CONCLUSION ................................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accurso v. Infra-Red Servs., Inc.*,
   23 F. Supp. 3d 494 (E.D. Pa. 2014) ........................................................................19

*Agri-Mktg., Inc. v. ProTerra Sols., LLC*,
   No. 5:17-CV-00627, 2018 WL 1444167 (E.D. Pa. Mar. 22, 2018) ...............................17, 18

*Alomang v. Freeport-McMoran, Inc.*,
   811 So. 2d 98 (La. Ct. App. 2002) ...........................................................................19

*Angel v. Tokyo Hibachi Cuisine, Inc.*,
   Civ. A. No. 14-00273 MCA, 2015 WL 2364769 (D.N.J. May 14, 2015) .............................12

*Arthur v. Maersk, Inc.*,
   434 F.3d 196 (3d Cir. 2006) ...................................................................................10

*Banjo Buddies, Inc. v. Renosky*,
   399 F.3d 168 (3d Cir. 2005) ...................................................................................19

*Barnco Int'l, Inc. v. Arkla, Inc.*,
   684 So. 2d 986 (La. Ct. App. 1996) ..........................................................................20

*Berger v. Edgewater Steel Co.*,
   911 F.2d 911 (3d Cir. 1990), *cert. denied,* 499 U.S. 920 (1991) ..................................10

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
   216 F.3d 338 (3d Cir. 2000) ...................................................................................18

*Chengelis v. Cenco Instruments Corp.*,
   386 F. Supp. 862 (W.D. Pa. 1975) ...........................................................................20

*CMC GH Sisak D.O.O. v. PTC Grp. Holdings Corp.*,
   Civ. A. No. 15-1357, 2016 WL 5025750 (W.D. Pa. Sept. 20, 2016) ..................................20

*Cmty. Voice Line, LLC v. Great Lakes Commc'n Corp.*,
   295 FRD 313 (N.D. Iowa 2013), *aff'd,* No. C 12-4048-MWB, 2014 WL
   272646 (N.D. Iowa Jan. 23, 2014) ...........................................................................10

*Conover v. Rash Curtis & Assoc.*,
   No. 3:15-CV-08381-FLW-TJB, 2016 WL 3708656 (D.N.J. July 12, 2016) .........................14

*Daelim Trading Co., Ltd. v. Giagni Enter., LLC*,
   No. 10 CV 2944(VB), 2012 WL 5995119 (S.D.N.Y. Oct. 16, 2012) ..................................13

ii

*DVI Fin. Servs., Inc. v. Kagan*,
    Civ. A. 00-CV-1666, 2001 WL 299272 (E.D. Pa. Mar. 23, 2001) (R. Kelly, J.) .............10, 11

*Edelson v. Cheung*,
    No. 2:13-CV-5870(JLL)(JAD), 2017 WL 4220291 (D.N.J. Sept. 22, 2017) .........................10

*Floyd v. Lykes Bros. S.S. Co.*,
    844 F.2d 1044 (3d Cir. 1988) .............................................................................................19

*Germain v. Wisniewski*,
    No. 15-1279, 2016 WL 4158994 (W.D. Pa. Aug. 5, 2016) ..................................................18

*Guinan v. A.I. DuPont Hosp. for Children*,
    597 F. Supp. 2d 485 (E.D. Pa. 2009), *rev'd in part on other grounds*, 393 F.
    App'x 884 (3d Cir. 2010) ...................................................................................................19

*Hamilton v. LMM Mgmt., Inc.*,
    No. 13-2932, 2014 WL 4063365 (E.D. Pa. Aug. 18, 2014) ..................................................10

*In re Harris Agency, LLC*,
    465 BR 410 (Bankr. E.D. Pa. 2011) ..................................................................................17

*Haywood v. La. Sugar Cane Prods.*,
    692 So. 2d 524 (La. Ct. App. 1997) .....................................................................................19

*Heraeus Med. GmbH v. Esschem, Inc.*,
    321 F.R.D. 215 (E.D. Pa. 2017) ......................................................................................7, 14

*Huard v. Shreveport Pirates, Inc.*,
    147 F.3d 406 (5th Cir. 1998), *aff'd*, 523 F.2d 1050 (1975) ................................................20

*Lee v. City of Philadelphia.*,
    Civ. A. No. 13-510, 2014 WL 12616820 (E.D. Pa. Sept. 24, 2014) .....................................15

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993) ...................................................................................................6

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004), *cert. denied*, 543 U.S. 918 (2004) .....................................15, 16

*Magness v. Walled Lake Credit Bureau, LLC*,
    CV 12-6586, 2014 WL 12610218 (E.D. Pa. Jan. 31, 2014) .............................................10, 14

*MRO Corp. v. Humana, Inc.*,
    CV 16-2881, 2017 WL 3675387 (E.D. Pa. Aug. 23, 2017) ........................................... *passim*

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir. 2001) ...........................................................................................19, 21

iii

*Port of S. La. v. Tri-Par Indus., Inc.*,
 Civ. A. Nos. 11-3065 & 12-433, 2013 WL 2394859 (E.D. La. May 28, 2013) ..................19

*Riggins v. Dixie Shoring Co., Inc.*,
 592 So. 2d 1282 (La. 1992) ................................................................................................19

*In re Rite Way Elec., Inc.*,
 510 B.R. 471 (Bankr. E.D. Pa. 2014) ................................................................................16

**Statutes**

Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5101, et seq. ............................15

Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5104(a) ........................16, 18, 21

Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5104(a)(2) .............................17

Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5105 .................................16, 21

**Other Authorities**

Fed. R. Civ. P. 8 ......................................................................................................................17, 18

Fed. R. Civ. P. 9(b) ...........................................................................................................1, 15, 16, 17

Fed. R. Civ. P. 12(b)(6) .................................................................................................................19

Fed. R. Civ. P. 15 ...............................................................................................................................1

Fed. R. Civ. P. 16 ...............................................................................................................................3

Fed. R. Civ. P. 26(f) ...........................................................................................................................3

12048112.10\C026759\2388969

Defendants Bridger Logistics, LLC ("Bridger"); Ferrellgas Partners, L.P.; and Ferrellgas L.P. (together, "Ferrellgas") respectfully submit this memorandum in opposition to the August 10, 2018 Motion for Leave to File an Amended Complaint (the "Motion") filed by Plaintiff Eddystone Rail Company, LLC's ("Eddystone").[1]

## PRELIMINARY STATEMENT

On August 10, 2018, at the proverbial eleventh hour of discovery in this litigation, Eddystone filed a Motion seeking to add thirteen new defendants and to advance completely new theories of fraudulent transfer and alter ego liability. (Dkt. 178.) Eddystone filed its Motion in the evening on Friday, August 10, 2018, one business day prior to the document production deadline on Monday, August 13, 2018 and not long before the parties are expected to begin taking depositions prior to the close of all fact discovery on October 15, 2018.

Eddystone attempts to excuse its dilatory tactics (at 2) by invoking the "liberal amendment standard of Rule 15 of the Federal Rules of Civil Procedure." But Eddystone's Motion should be denied for three related reasons recognized by courts in the Third Circuit.

First, Eddystone could have moved to amend months ago. Instead, it opted for tactical delay that results in unfair prejudice. A dilatory motive defeats Eddystone's motion.

Second, permitting Eddystone to amend the Complaint at this late stage will cause great prejudice to the BL/FG Defendants, because Eddystone has substantially changed its theories of fraudulent transfer and alter ego liability. With precious little time remaining in fact discovery, the BL/FG Defendants will not have sufficient time to defend themselves.

Third, Eddystone's proposed amendments are futile, including because Eddystone fails to plead its new theories with the particularity required by Fed. R. Civ. P. 9(b).

---

[1]      All three defendants are referred to collectively herein as the "BL/FG Defendants."

Overall, Eddystone waited until the end of discovery to seek an amendment that substantially alters its theories of liability with vague new allegations that leave the BL/FG defendants without a clear understanding of the factual basis for Eddystone's claims. This appears to be a tactical decision, and a transparent attempt to cause unfair prejudice to the defense of claims seeking more than $140 million in damages.

## BACKGROUND

On February 2, 2017, Eddystone commenced litigation and filed its Complaint seeking recovery on claims of alter ego liability, fraudulent transfer, and breach of fiduciary duty against five defendants: the three BL/FG Defendants, Julio Rios, and Jeremy Gamboa.

In Count I, Eddystone alleged that Bridger was the alter ego of Bridger Transfer Services, LLC ("BTS," later renamed under new ownership as Jamex Transfer Services, LLC or "JTS") and therefore liable for its debts:

> In light of the alter ego relationship between BTS and Bridger Logistics, Eddystone is entitled to an order from this Court piercing the corporate veil of BTS and holding Bridger Logistics liable for the debts BTS owed to Eddystone.

(Dkt. 1, Compl. ¶ 61.) Eddystone did not allege that other defendants were BTS alter egos.

In Count II Eddystone alleged that there was an "implied contract," whereby Bridger promised to provide BTS with enough funds to make all future payments due to Eddystone, whether for actual transloading or for deficiency payments.

> Defendants caused BTS to allow its implied contract with Bridger Logistics to be abrogated without reasonably adequate consideration, thereby transferring to Defendants approximately $140 million of value. Defendants Rios, Gamboa, Bridger Logistics and FGP therefore engaged in an intentional fraudulent transfer in violation of the Pennsylvania Uniform Fraudulent Transfer Act.

(*Id.* ¶ 63.)  In Count III, Eddystone alleged constructive fraudulent transfer based on the same theory that BTS abrogated an implied contract with Bridger:

> By causing BTS to allow its implied contract with Bridger Logistics to be abrogated without any compensation to BTS, Defendants transferred value to Rios, Gamboa, Bridger Logistics, and FGP without "reasonably equivalent value."

(*Id.* ¶ 69.)  Thus, according to Eddystone, a fraudulent transfer occurred when BTS released Bridger from its implied obligation to cover approximately $140 million in deficiency payments owed by BTS (*i.e.*, an "abrogation" of the implied contract).  (*Id.* ¶¶ 7, 63–67.)  Eddystone did not include any other alleged asset transfers in the allegations supporting Counts II and III.

In Count IV, Eddystone alleged that the BL/FG Defendants breached fiduciary duties of care and loyalty allegedly owed to creditors of BTS, based on essentially the same conduct underlying its fraudulent transfer claims.  (*Id.* ¶¶ 74-77.)

On March 16, 2017, the BL/FG Defendants moved to dismiss the Complaint, including the alter ego, fraudulent transfer, and fiduciary duty claims.  (Dkt. 35 & 35-1.)  Following collaboration on a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), the parties filed a Rule 26(f) report on May 18, 2017, proposing an eight-month period of fact discovery commencing after the Court decided the pending motions to dismiss.  (Dkt. 49 at 3.)

On July 19, 2017, the Court denied the BL/FG Defendants' motion to dismiss.  (Dkt. 59.) On April 13, 2018, the Court issued a Rule 16 Scheduling Order requiring, *inter alia*, that all document production be completed by August 13, 2018, and that all fact discovery be completed by October 15, 2018.  (Dkt. 157.)

On June 27, 2018, Eddystone's counsel advised the BL/FG Defendants that it intended to file an amended pleading, without disclosing any details.  In a July 12, 2018 telephone call, counsel for Eddystone stated that it would assert the same claims against some additional subsidiaries, amending its complaint to the limited extent necessary to plead claims against the

new defendants.  The BL/FG Defendants requested a draft of the amended complaint and a redline showing all of the proposed changes.

On July 18, 2018, Eddystone's counsel provided a draft of its proposed amended complaint (the "Proposed FAC"), which sought to add thirteen new entities as defendants:  (1) Bridger Administrative Services II, LLC; (2) Bridger Marine, LLC; (3) Bridger Rail Shipping, LLC; (4) Bridger Real Property, LLC; (5) Bridger Storage, LLC; (6) Bridger Swan Ranch, LLC; (7) Bridger Terminals, LLC; (8) Bridger Transportation, LLC; (9) Bridger Energy, LLC; (10) Bridger Leasing, LLC; (11) Bridger Lake, LLC; (12) J.J. Liberty, LLC; and (13) J.J. Addison Partners, LLC (the "Proposed Defendant Entities").[2]

In addition, the Proposed FAC features new theories of alter ego and fraudulent transfer liability, which expand far beyond the theories upon which the claims were originally based. This is evidence from the redline supplied by Eddystone, which is attached hereto as Exhibit 1.

As to Count I, the Proposed FAC alleges not just that Bridger is the alter ego of BTS, but also that Ferrellgas and Bridger Rail Shipping, LLC ("BRS") are alter egos of BTS:

> In light of the alter ego relationship between BTS and Bridger Logistics, <u>FGP, Rios, Gamboa, and Bridger Rail Shipping,</u> Eddystone is entitled to an order from this Court piercing the corporate veil of BTS and holding ~~Bridger Logistics~~ <u>each Defendant</u> liable for the debts BTS ~~owed~~ <u>owes</u> to Eddystone.

(*Id.* ¶ 86 (emphasis added to show changes).)  Thus, Eddystone proposes to modify its alter ego theory to encompass not just BTS's direct corporate parent (Bridger), but also its "grandparent" (Ferrellgas, the owner of Bridger) and "sibling" (BRS, another subsidiary of Bridger).

---

[2]     The undersigned oppose Eddystone's Motion on behalf of the BL/FG Defendants only, as the new defendants have not yet been served.  Eddystone also names Bridger Administration and Bridger Management among a group it refers to as the "Additional Fraudulent Transfer Recipient Subsidiaries" (Proposed FAC ¶ 33), stating that the two "are not legally defined entities."  (*Id.* ¶ 66.)

As to the fraudulent transfer claims in Counts II and III, the Proposed FAC expands Eddystone's theory far beyond the abrogation of an implied contract, now claiming that the BL/FG defendants each participated in unspecified but allegedly fraudulent transfers of balance sheet assets.  Specifically, Eddystone seeks to add the following new paragraph to Count II:

> Prior to, in preparation for, and after the sale of Bridger Logistics to FGP, Defendants Rios, Gamboa, Bridger Logistics, and FGP caused BTS to transfer, without reasonably adequate consideration in exchange, all of its cash, accounts receivable, real and personal property, valuable commercial agreements, and other assets, to Bridger Logistics, Bridger Administrative Services II, LLC, Bridger Marine, LLC, Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, Bridger Energy, LLC, Bridger Leasing, LLC, Bridger Lake, LLC, Bridger Administration, Bridger Management, J.J. Liberty, LLC, and J.J. Addison Partners, LLC.

 (*Id*. ¶ 88.)  In addition, Eddystone proposes the following amendment to Count III:

> By causing BTS to allow its implied contract with Bridger Logistics to be abrogated without any compensation to BTS <u>and by transferring away BTS's other assets to Bridger Logistics and the Additional Fraudulent Transfer Recipient Subsidiaries without reasonably adequate consideration in exchange,</u> Defendants <u>Rios, Gamboa, Bridger Logistics, and FGP transferred value to Rios, Gamboa, Bridger Logistics, FGP, and the Additional Fraudulent Transfer Recipient Subsidiaries</u> without <u>BTS' receiving</u> "reasonably equivalent value."

(*Id.* ¶ 95 (emphasis added to show changes).)

The Proposed FAC does not identify such transfers with particularity.  Instead, it contains a slew of broad but vague allegations that (1) at an undisclosed time, "the Monroe revenues that had previously been credited to BTS were redirected to other FGP entities, including Bridger Logistics and Bridger Rail Shipping – and ultimately passed up to FGP" (*Id*.¶ 65); (2) "BTS engaged in a series of intercompany transactions" between late May 2015 and January 2016 "by which it transferred substantial assets" to the Proposed Defendant Entities (*id*. ¶ 66); (3) BTS "transferred away all of its real and personal property and valuable commercial contracts to other

FGP subsidiaries" (*id*. ¶ 67); and (4) in January 2016, BTS forgave "millions of dollars in accounts receivable that it was owed" by the Proposed Defendant Entities (*id*. ¶ 68).

Eddystone also seeks to amend Count IV to expand its breach of fiduciary duty claim to the same unspecified asset transfers underlying its fraudulent transfer claims.  (*Id*. ¶¶ 102-03.)

On July 19, 2018, the BL/FG Defendants notified Eddystone that the Proposed FAC contains only generalized allegations and does not identify any allegedly fraudulent transfers with particularity.   On July 25, 2018, Eddystone's counsel sent a chart identifying some allegedly fraudulent transfers at a broad level of generality, with a list of "Exemplary Transfers" for each of the Proposed Defendant Entities, most of which are described as follows:   "The accounts receivable in BTS's general ledger show that the defendant owed BTS at least [dollar amount] and that BTS forgave these intercompany receivables."   Eddystone took the position that the chart was not "a complete statement of all of the transfers that Eddystone will assert at trial."   After Eddystone failed to identify the factual basis for its proposed amendments with particularity, the BL/FG Defendants declined to consent to the Proposed FAC.

## ARGUMENT

Courts are empowered to deny a motion to amend a complaint when there is "bad faith, undue delay, prejudice, or futility."   *MRO Corp. v. Humana, Inc.*, CV 16-2881, 2017 WL 3675387, at *2 (E.D. Pa. Aug. 23, 2017) (citation omitted).   "'[P]rejudice to the non-moving party is the touchstone for the denial of an amendment.'"   *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993) (citation omitted) (cited by Eddystone). "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."   *Id.*

To allow Eddystone to amend its Complaint at this point would cause undue prejudice to the BL/FG Defendants and reward Eddystone's tactical delay in asserting materially different theories of alter ego and fraudulent transfer liability in the twilight of discovery (through a motion filed one business day prior to the document production deadline established in the Scheduling Order).  (Dkt. 157.)  If allowed, the amendment would leave the BL/FG Defendants with very little time to explore the basis for Eddystone's lawsuit prior to the close of discovery.

It is critical that the BL/FG Defendants have sufficient time to defend themselves against late-breaking allegations underlying a claim for more than $140 million in damages.  The need for discovery is compounded by the generalized nature of the allegations in the Proposed FAC, which do not begin to state a basis for expanded alter ego liability or to describe the allegedly fraudulent transfers with specificity.  Eddystone's Motion should be denied for the additional reason that its proposed amendments are futile, as the fraudulent transfer claims lack the particularity required to state claims sounding in fraud and the alter ego claim is conclusory.

## I.   EDDYSTONE UNDULY DELAYED ITS MOTION TO AMEND.

As explained above, it appears that Eddystone intentionally delayed filing this Motion until the end of discovery, when it could have done so many months earlier.  A motion to amend may be denied for undue delay when the movant "(1) failed to utilize previous opportunities to amend; and (2) has not offered any explanation for this failure.'"  *Heraeus Med. GmbH v. Esschem, Inc.*, 321 F.R.D. 215, 217–18 (E.D. Pa. 2017) (citation omitted); *see also MRO Corp.*, 2017 WL 3675387, at *3.  "'Implicit in the concept of "undue delay" is the premise that Plaintiff[ ], in the exercise of due diligence, could have sought relief from the court earlier.' In evaluating undue delay, courts balance the reasons for not amending sooner against the burden of delay on the Court."  *Heraeus Med. GmbH*, 321 F.R.D. at 218 (citation omitted).

Eddystone could and should have moved to amend its Complaint many months ago.  The original Complaint asserts alter ego liability only as to Bridger, and the fraudulent transfer claims are based only on the alleged abrogation of an implied contract.  In their March 16, 2017 Motion to Dismiss, the BL/FG Defendants noted that Count I "does not assert an alter ego claim against either FG Defendant" and limited their arguments to the alter ego allegations against Bridger. (*See* Dkt. 35-1, Motion to Dismiss at 10-19.)   Similarly, the BL/FG Defendants' Motion to Dismiss targeted the implied contract theory underlying the fraudulent transfer claims, because such claims were based on "only the alleged 'abrogation' of a supposed 'implied contract.'" (*See* Dkt. 35-1, Motion to Dismiss at 20-24.)  Eddystone has been aware of such limitations for more than a year, yet it chose to wait until the close of discovery to attempt to expand its alter ego theory beyond Bridger and to seek to avoid transfers of balance sheet assets by BTS.

Eddystone attempts to excuse its undue delay by alleging that it is only "[n]ow that Eddystone has secured the necessary evidence" to "identif[y] additional specific transferee subsidiaries," without giving any indication as to what recently-received accounting records warrant this Motion.  At the same time, Eddystone argues (at 2, 6) that "the vast bulk" of the BL/FG Defendants' accounting data has not been produced.  That is a gross mischaracterization.

The BL/FG Defendant have steadily produced such accounting records, including a significant number in their first document production on August 11, 2017, which included tens of thousands of pages of Bridger and BTS accounting records for the period from January 1, 2012 through March 1, 2016, such as balance sheets, general ledgers and adjusting journals, cash flow statements, statement of changes in equity, statements of income and retained earnings, and fixed asset schedules.   The BL/FG Defendants' subsequent productions—on October 17, 2017; October 25, 2017; November 1, 2017; November 15, 2017; January 4, 2018; and January 18,

2018—all contained additional accounting data for numerous entities, including intercompany transaction records that Eddystone apparently used to identify the Proposed Defendant Entities.[3]

At the very least, Eddystone had the information needed to identify the Proposed Defendant Entities nearly seven months ago, following the ninth document production on January 18, 2018. Rather than seeking to amend, Eddystone opted for tactical delay.

Such delay is inexcusable at this late stage. By the time the Court decides this Motion, the parties will be even closer to (or past) the October 15 fact discovery deadline; and if amendment is allowed, Eddystone will need time to serve the amended complaint on new parties. Consequently, the operative complaint will change after the close of discovery, which will end under a cloud of uncertainty.

Even more fundamentally, it is difficult—if not impossible—to imagine how the parties would currently proceed with the depositions ahead of the October 15 fact discovery deadline without understanding the basis for Eddystone's legal theories in the Proposed FAC.

Eddystone's undue delay appears calculated to inflict prejudice on the BL/FG Defendants. Eddystone's decision to file the Motion one business day before the August 13 document production deadline evinces a purposeful strategy to limit the BL/FG Defendants' ability to probe any new allegations in the course of the very limited discovery that remains.

---

[3]     Eddystone also states (at 6) that "Ferrellgas has not produced a single accounting backup document [for subledgers] though Eddystone requested them on October 30, 2017." The BL/FG Defendants have produced the subledgers they maintain in the ordinary course of business. Beyond that, Eddystone demanded *all* backup materials for *all* accounting entries for a lengthy period of time. The BL/FG Defendants objected to the burden of this onerous and vastly overbroad request, but they offered to respond to targeted requests for back-up materials. Rather than making targeted requests, Eddystone asked for backup materials for nearly 28,000 journal entries. Because such materials are not maintained in the ordinary course of business in a manner that allows the BL/FG to retrieve them at the push of a button, it would require thousands of hours for the BL/FG Defendants to gather and produce them. Counsel for BL/FG Defendants explained to Eddystone the extreme burden this request would impose.

Accordingly, the Motion should be denied.  *See Berger v. Edgewater Steel Co.,* 911 F.2d 911, 924 (3d Cir. 1990), *cert. denied,* 499 U.S. 920 (1991) (affirming denial of motion to amend filed after the close of discovery and over four months after information became available); *DVI Fin. Servs., Inc. v. Kagan*, Civ. A. 00-CV-1666, 2001 WL 299272, at *2 (E.D. Pa. Mar. 23, 2001) (R. Kelly, J.) (denying defendant's motion to amend answer and finding undue delay where "sufficient information existed" for defendants to amend to raise fraud or forgery defenses "many months ago" and "prior to the close of discovery"); *Magness v. Walled Lake Credit Bureau, LLC*, CV 12-6586, 2014 WL 12610218, at *2 (E.D. Pa. Jan. 31, 2014) (undue delay where plaintiff waited to move for almost three months and "was in possession of the factual underpinnings of the information well before filing her motion to amend").

Eddystone seeks to excuse its delay (at 6) by citing cases where amendments were permitted at even later stages of litigation.  But this Court has rejected that very argument where a plaintiff, like Eddystone, made a "strategic decision" to delay moving to amend a pleading. *See MRO Corp.*, 2017 WL 3675387, at *5 (denying plaintiff's motion to amend and finding plaintiff's argument "that courts often grant leave to amend even at more advanced stages of litigation" unavailing because it "ignores that the delay here was needless and brought about by Plaintiff's own strategic decisions").  Here too, Eddystone's Motion should be denied.[4]

---

[4]      The cases Eddystone cites are factually and procedurally inapposite.  *Cmty. Voice Line, LLC v. Great Lakes Commc'n Corp.*, 295 FRD 313, 319 (N.D. Iowa 2013), *aff'd*, No. 12-4048-MWB, 2014 WL 272646 (N.D. Iowa Jan. 23, 2014) (out of circuit case holding plaintiff did not unduly delay by filing motion to amend three months after discovering evidence); *Edelson v. Cheung*, No. 2:13-CV-5870(JLL)(JAD), 2017 WL 4220291, at *8 (D.N.J. Sept. 22, 2017) (finding that, unlike here, "nothing in the record suggests that Plaintiff seeks amendments and to supplement the Complaint in bad faith or with a dilatory motive"); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("The District Court did not state, and the record does not suggest, that Arthur acted in bad faith or with improper motive"); *Hamilton v. LMM Mgmt., Inc.*, No. 13-2932, 2014 WL 4063365, at *2 (E.D. Pa. Aug. 18, 2014) (plaintiff filed motion to amend "just over two weeks" after discovering pertinent information through deposition).

## II.       PERMITTING AMENDMENT WILL PREJUDICE THE BL/FG DEFENDANTS.

Eddystone's Motion should also be denied for the related reason that its tactical delay will, in fact, greatly prejudice the BL/FG Defendants by forcing them to defend against new legal theories underlying claims for more than $140 million without sufficient discovery to explore the vague new allegations.  Eddystone states (at 3) that "the Amended Complaint raises no new legal theory against any of the existing Defendants" and "[t]here are no surprises here." As already explained, however, Eddystone advances alter ego and fraudulent transfer theories that are materially different and far more expansive, but simultaneously non-specific.

As stated above, "'prejudice to the non-moving party is the touchstone for the denial of an amendment,'" and in this context "'[p]rejudice means 'undue difficulty in prosecuting [or defending] a law suit as a result of a change in tactics or theories on the part of the other party.'" *MRO Corp.*, 2017 WL 3675387, at *3.  In assessing prejudice, "[r]elevant considerations include 'whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.'"  *Id.* That is surely the case here.

This Court has denied a motion to amend based on prejudice where "the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation[.]" *DVI Fin. Servs., Inc.,* 2001 WL 299272, at *3 (R. Kelly, J.).

If amendment is allowed, the BL/FG Defendants will need to expend significant resources to defend themselves at this late stage of discovery—including poring over hundreds of thousands of pages of financial documents to discern the factual basis for Eddystone's sweeping new alter ego and fraudulent transfer claims, conducting and defending depositions before the October 15, 2018 deadline, and evaluating the effect on expert testimony and analysis. *MRO Corp.*, 2017 WL 3675387, at *3 (denying motion to amend and finding that forcing

11

defendant to litigate claims based on new legal theory after "nearly a year of discovery" would be prejudicial and "would significantly broaden discovery at this late stage, delaying the resolution of this action and forcing Defendant to incur additional costs").[5]

The prejudice is compounded by the lack of particularity or substance in Eddystone's new allegations, which is discussed further below. Eddystone asserts (at 8) that its proposed amendments are not "unexpected allegations" that would prejudice the BL/FG Defendants, because the "new facts" are found in the documents the BL/FG Defendants produced. But, it is not the BL/FG Defendants' burden to foresee that Eddystone would shift its legal theory so precipitously to assert new alter ego and fraudulent transfer theories or to guess what Eddystone may or may not claim to be a fraudulent transfer.[6]

Eddystone's argument (at 7) that "the amendment will require no additional discovery" is self-serving and wrong. As an initial matter, Eddystone's failure to properly plead the specific transactions that it contends are fraudulent transfers makes it nearly impossible for the BL/FG Defendants to determine what discovery or expert analysis they need from the less than two-

---

[5]     Eddystone erroneously cites (at 7) *Angel v. Tokyo Hibachi Cuisine, Inc.*, Civ. A. No. 14-00273 MCA, 2015 WL 2364769, *2 (D.N.J. May 14, 2015), for the proposition that "the court found no prejudice where the [] 'the proposed amendment would add no new claims against the current defendants.'"   In *Angel*, the defendants based their prejudice argument not on the addition of a new legal theory, but on "the proposed addition of two new defendants because it may require them to defend against crossclaims that the newly named defendants may assert against them." *Id.*   The district court stated specifically that "several months [remained] before the fact discovery deadline," and "[t]he mere possibility that the existing defendants may have to defend against a crossclaim that may or may not be asserted by the new defendants, where there has been no undue delay or other factor that will impair the existing defendants' ability to defend the claim." *Id.*   Here, Eddystone's dilatory tactics and vague pleading will certainly undermine the BL/FG Defendants' ability to defend against the new alter ego and fraudulent transfer claims.

month period that remains in fact discovery.  Nonetheless, practically speaking, if Eddystone had complied with its pleading obligations and identified particular transactions, the BL/FG Defendants might pursue (1) discovery from Eddystone to determine whether Eddystone requested or consented to the transaction, (2) discovery from Monroe or other customers about the background or circumstances of that transaction, or (3) discovery from Jamex about what it knew or understood or requested in connection with its purchase of BTS/JTS.

Moreover, the BL/FG Defendants would not be able to determine which fact witnesses to depose or even what questions to ask by the October 15, 2018 fact discovery deadline, since Eddystone's new allegations lack substance or specificity.  The practical implications of this are astounding—Eddystone would have the BL/FG Defendants poke in the dark for a defense to claims that leave them exposed to more than $140 million in damages.

In addition, even assuming that no further document or fact discovery is necessary— which is, at the very least, impossible to determine given the vague fraudulent transfer allegations—the BL/FG Defendants would still be severely prejudiced in their ability to prepare effective expert reports and testimony to rebut Eddystone's new fraudulent transfer theory.  For example, should Eddystone produce an expert report on the November 19, 2018 deadline in the Scheduling Order that identifies for the first time the specific transactions that it contends are fraudulent, the BL/FG Defendants would be hamstrung in preparing a responsive expert report

---

<sup>6</sup>      Eddystone relies on *Daelim Trading Co., Ltd. v. Giagni Enter., LLC*, No. 10 CV 2944(VB), 2012 WL 5995119, at *3 (S.D.N.Y. Oct. 16, 2012), to disclaim that these are "unexpected allegations."  In that case, the district court found that "[a]n opponent is not prejudiced . . . where he previously recognized that the new matters included in the amendment would be at issue."  *Id.*  Here, the BL/FG Defendants still do not know the factual basis for Eddystone's proposed amendments.

that includes analysis of those same transactions with the accounting investigation and depositions of fact witnesses already having been completed.[7]

On top of that, allowing Eddystone to amend to add thirteen new defendants will further delay the resolution of this action.  Should the Proposed Defendant Entities be added to this action, Eddystone will need time to serve the amended complaint on those defendants, and they will need time to respond.  By then, the October 15, 2018 fact discovery deadline will have come and gone, and the parties will be in the throes of expert discovery.

Bottom line:  "Even if [the BL/FG Defendants were] not required to issue new discovery requests, [Eddystone's] proposed amendments would still force [the BL/FG Defendants] to expend additional resources and prolong this dispute.  That is sufficient to establish prejudice." *MRO Corp.*, 2017 WL 3675387, at *4; *see Heraeus Med. GmbH*, 321 F.R.D. at 218 (denying motion to amend based on prejudice where plaintiff moved to amend about a month before conclusion of discovery where there would be a "new wave of motion practice" from new defendant, and delay would "undermine judicial efficiency by significantly delaying resolution" of the case); *Magness,* 2014 WL 12610218, at *3 (denying motion to amend where defendants relied on longstanding amended complaint "to conduct the discovery that they did," such that "it would be prejudicial to require these parties to bear the burden, time, and expense of engaging in discovery that will be both repetitive and more expansive because of the nature of the additional

---

[7]      Eddystone relies on *Conover v. Rash Curtis & Assoc.*, No. 3:15-CV-08381-FLW-TJB, 2016 WL 3708656 (D.N.J. July 12, 2016), which demonstrates the importance of discovery proceedings to determining whether leave to amend should be granted.  The court in *Conover* found no prejudice because "essentially no discovery has taken place" and emphasized that "[t]he Court specifically refrained from entering a discovery schedule, pending a decision on the instant motion [for leave to amend]."  *Id.* at *3.  The Court also made it a point to state that "[i]f significant discovery has already taken place, a motion for leave to amend to add class allegations may be denied."  *Id.*

claim Plaintiff seeks to bring," and "Plaintiff seeks to add two new defendants that have not participated in this case over the last year and two months").

Thus, Eddystone's Motion should be denied for the additional, related reason that the BL/FG Defendants would be prejudiced by being forced to defend against materially different theories of liability at the eleventh hour of discovery. As explained further below, the prejudice is compounded by Eddystone's vague and conclusory pleading.

## III.   EDDYSTONE'S PROPOSED AMENDMENT IS FUTILE.

Finally, Eddystone's Motion should be denied because its proposed amendments are futile. *See Lee v. City of Philadelphia*, Civ. A. No. 13-510, 2014 WL 12616820, at *2 (E.D. Pa. Sept. 24, 2014) ("Futility is . . . a sufficient basis to deny a motion to amend.") (citations omitted). In this context, "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id.* (citation omitted) (holding that plaintiff's motion to amend was futile).

Here, Eddystone fails to plead its expanded theories of liability with the particularity required by Rule 9(b), which applies to its fraudulent transfer claim and any allegations of fraud supporting its remaining claims. *Lum v. Bank of Am.*, 361 F.3d 217, 220 (3d Cir. 2004), *cert. denied*, 543 U.S. 918 (2004) (finding that "fraud must be pled with particularity in *all* claims based on fraud," including claims not generally subject to Rule 9(b) pleading requirements) (citation omitted). In addition, Eddystone fails to state any basis to pierce the Bridger corporate veil to extend alter ego liability to Ferrellgas or BRS.

### A.   Fraudulent Transfer

To properly plead its fraudulent transfer claims under Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5101, et seq. ("PUFTA"), Eddystone must state that a transfer is intentionally fraudulent and made "with actual intent to hinder, delay or defraud any creditor of

15

the debtor," 12 Pa. C.S. § 5104(a), and constructively fraudulent when made for less than reasonably equivalent value at a time when the debtor was insolvent or the debtor became insolvent as a result of the transfer, 12 Pa. C.S. § 5105.[8]

Because both claims sound in fraud, Eddystone has an obligation to comply with Rule 9(b) and plead with particularity the "circumstances constituting fraud, including the who, what, when, where, and how." *In re Rite Way Elec., Inc.*, 510 B.R. 471, 477 (Bankr. E.D. Pa. 2014) (citation omitted). A proposed amended complaint alleging fraud is futile if it fails to "identify [the] particular fraudulent financial transactions" at issue. *Lum*, 361 F.3d at 224.

Eddystone's intentional fraudulent transfer claim (Count II) does not pass muster under Rule 9(b), particularly with respect to the Proposed Defendant Entities. Rather than describing the "who, what, when, where, and how," Eddystone vaguely refers to "a series of intercompany transactions" between May 2015 and January 2015, through which it alleges BTS "transferred substantial assets" to the Proposed Defendant Entities (Proposed FAC ¶ 66), and it alleges that BTS forgave "millions of dollars in accounts receivable that it was owed" by the Proposed Defendant Entities (*id.* ¶ 68). *See In re Rite Way Elec., Inc.*, 510 B.R. at 481-82 (dismissing intentional fraudulent transfer claim for failure to plead with particularity).

Nowhere in its Proposed FAC does Eddystone identify the allegedly fraudulent transfers underlying such allegations, let alone (1) describe the "series of intercompany transactions" or any particular "accounts receivable" upon which Eddystone bases its new allegations, (2) identify when the allegedly fraudulent transfers were made during the period from May 2015 to

---

[8]     Eddystone asserts its claims under the PUFTA, but the BL/FG Defendants reserve the right to assert that the law of a different jurisdiction applies. The Pennsylvania legislature replaced PUFTA with the Pennsylvania Uniform Voidable Transactions Act effective February 20, 2018. Statutory citations here are to the pre-amendment versions, which would apply here.

January 2016, or (3) state how such transfers were made.  These oblique allegations do not put the defendants on notice of what transactions Eddystone claims are fraudulent transfers.

Eddystone's constructive fraud claim (Count III) suffers from the same defect. Eddystone simply states that Bridger and Ferrellgas, among others, made fraudulent transfers "by transferring away BTS's other assets to Bridger Logistics and the Additional Fraudulent Transfer Recipient Subsidiaries without reasonably adequate consideration in exchange." (Proposed FAC ¶ 95.)  It does not suffice for Eddystone to "provid[e] only the bare outline of an allegation without giving any details or describing any circumstances."  *In re Harris Agency, LLC*, 465 BR 410, 417 (Bankr. E.D. Pa. 2011) (dismissing constructive fraud claim under Bankruptcy Code and PUFTA § 5104(a)(2) for "failing to plead fraud with particularity").

The BL/FG Defendants recognize that some courts have found that constructive fraud claims need not be pled with particularity and instead fall under the Rule 8 pleading standard. *See, e.g.*, *Agri-Mktg., Inc. v. ProTerra Sols., LLC*, No. 5:17-CV-00627, 2018 WL 1444167, at *9 (E.D. Pa. Mar. 22, 2018).  The court in *Harris Agency* addressed this issue directly:

> The Court is aware of opinions holding that the heightened pleading standard of Rule 9(b) does not apply to constructive fraud causes of action.  Contrary decisions do not affect the result discussed above for two reasons. First, many courts in this circuit take the opposite view, namely that constructive fraud causes of action must satisfy a heightened pleading standard. Since the Circuit Court has not ruled on this, it is within this Court's discretion to determine the matter. Second, there remains the alternative ground for dismissing Count Three that it fails to comply with Federal Rule 8(a)(2).

465 B.R. at 417 (citation omitted).

Here too, Eddystone's allegations do not meet the Rule 8 pleading standard, let alone the particularity standard imposed by Rule 9(b).  Eddystone's vague allegation that "BTS's other assets" were fraudulently transferred away leaves the BL/FG Defendants to guess at which transactions are at issue and unable to determine whether BTS received a reasonably equivalent

value in exchange.  *See Agri-Mktg., Inc.,* 2018 WL 1444167, at *9 (dismissing with prejudice either intentional or constructive fraudulent transfer claim under § 5104(a) that failed to state a claim under Rules 8 or 9, because plaintiff included "no allegations identifying any particular transfer, i.e., which assets were transferred, when such a transfer occurred, who made the transfer, and to whom the assets were transferred"); *Germain v. Wisniewski*, No. 15-1279, 2016 WL 4158994, at *4 (W.D. Pa. Aug. 5, 2016) (dismissing constructive fraudulent transfer claim under § 5105 because "Plaintiff's failure to provide a single supporting fact or basis for his allegation with respect to the 'reasonably equivalent value' element of constructive fraudulent transfer renders his Complaint insufficient under the governing pleading standard") (citation omitted).

Eddystone attempts to justify its vague allegations by arguing (at 10) that they are more specific than the allegations in the original Complaint, which "the Court has already found sufficient."  The Court's decision to deny a motion to dismiss targeting Eddystone's *implied contract abrogation theory*, however, does not give Eddystone license to expand its allegations to include unidentified, allegedly fraudulent asset transfers, which could and should have been specified in the Proposed FAC.

### B.    Alter Ego

Eddystone's proposed amendments to its alter ego claim are futile for the additional reason that the allegations do not state a basis to pierce the BTS corporate veil to impose alter ego liability on Bridger (the corporate parent of BTS) *and then* to pierce Bridger's corporate veil to reach Ferrellgas (BTS's corporate grandparent and the parent company of Bridger) or BRS (BTS's corporate sibling and a subsidiary of Bridger).

If Eddystone has properly invoked maritime jurisdiction, its claims are governed by federal common law, supplemented by state law.  *Calhoun v. Yamaha Motor Corp., U.S.A.*, 216

F.3d 338, 343 (3d Cir. 2000); *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1047 (3d Cir. 1988).

Because BTS and Bridger are both Louisiana LLCs, Louisiana state law is relevant.[9]

In addition, to the extent Eddystone alleges fraud as a basis to pierce the BTS corporate

veil, it has an obligation to plead with particularity. *Alomang v. Freeport-McMoran, Inc.*, 811

So. 2d 98, 101 (La. Ct. App. 2002) (affirming dismissal of alter ego claim); *Port of S. La. v. Tri-*

*Par Indus., Inc.*, Civ. A. Nos. 11-3065 & 12-433, 2013 WL 2394859, at *3 (E.D. La. May 28,

2013) (finding in admiralty case that Louisiana state and federal alter ego tests are essentially the

same).[10]   Generally, a court will pierce the veil only when "exceptional circumstances warrant

such an exceptional remedy."  *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 509 (E.D.

Pa. 2014) (dismissing claims under Rule 12(b)(6) and "stringent" alter ego standard).

Piercing the corporate veil is "a drastic remedy" that "must of course be construed very

narrowly and exercised reluctantly and cautiously."  *Riggins v. Dixie Shoring Co., Inc.*, 592 So.

2d 1282, 1283 (La. 1992) (concurrence in denial of rehearing); *see also Pearson v. Component*

*Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) (alter ego test is "notoriously difficult for

plaintiffs").  Without an allegation that shareholders engaged in fraud, a plaintiff "bear[s] a

heavy burden of proving that the shareholders disregarded the corporate entity to such an extent

that it ceased to become distinguishable from themselves."  *Haywood v. La. Sugar Cane Prods.*,

---

[9]   Because resolving alter ego issues necessarily involves analyzing the internal affairs of a corporation, Pennsylvania courts apply the internal affairs doctrine and "look to the laws of the state of incorporation to resolve issues involving the internal affairs of a corporation.'"  *Guinan v. A.I. DuPont Hosp. for Children*, 597 F. Supp. 2d 485, 494 (E.D. Pa. 2009), *rev'd in part on other grounds*, 393 F. App'x 884 (3d Cir. 2010) (quoting *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 n.10 (3d Cir. 2005)).

[10]   Eddystone has not alleged fraud as a basis for its alter ego claim, but it relies on the allegedly fraudulent transfers to establish alter ego liability.  (*See* Proposed FAC ¶ 78.)  In its opposition to the BL/FG Defendants' initial motion to dismiss, Eddystone stated that "while it has not brought a fraud count, the Complaint establishes that Defendant's holding out of BTS as a bona fide company was false."  (Dkt. 39 at 19 n.4.)  This is yet more obfuscation.

692 So. 2d 524, 529 (La. Ct. App. 1997) (citation and quotations omitted); *see also Chengelis v. Cenco Instruments Corp.*, 386 F. Supp. 862, 865 (W.D. Pa. 1975) ("Absent the element of fraud or injustice akin to fraud, we cannot disregard the corporate structure").

It is even more difficult to pierce the corporate veil where (as here) the plaintiff "voluntarily entered into an agreement with a corporate entity and knowingly accepted the consequences of limited liability." *Barnco Int'l, Inc. v. Arkla, Inc.*, 684 So. 2d 986, 992 (La. Ct. App. 1996); *see also Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406, 409 (5th Cir. 1998), *aff'd*, 523 F.2d 1050 (1975) (applying Louisiana law and explaining that "[m]ore stringent standards [to pierce the corporate veil] are justified with respect to contract claims because the plaintiff's claim depends on the existence of a contract in which he chose to rely solely on the obligation of the corporation without any additional guarantees from its shareholders").

Courts evaluating alter ego claims consider eight non-exclusive factors: (1) a subsidiary's gross undercapitalization for its purpose; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the subsidiary; (5) siphoning of funds of the corporation by the dominant stockholder; (6) nonfunctioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation is merely a façade for the operations of the dominant stockholder or stockholders. *CMC GH Sisak D.O.O. v. PTC Grp. Holdings Corp.*, Civ. A. No. 15-1357, 2016 WL 5025750, at *2 (W.D. Pa. Sept. 20, 2016).

The allegations in the Proposed FAC focus on BTS, which is the only company in privity with Eddystone, because Eddystone did not obtain a parental guaranty. Eddystone does not (and cannot) allege that Bridger was undercapitalized, failed to observe corporate formalities, failed to pay dividends, lacked functioning officers and directors, failed to maintain corporate records, or

was a mere façade for Ferrellgas.  (*See* Proposed FAC ¶¶ 76-86.)  Without such allegations, Eddystone cannot pierce *Bridger's* corporate veil to reach Ferrellgas or BRS.

At most, Eddystone alleges that BTS transferred assets to other subsidiaries of Bridger, including BRS, and that Ferrellgas indirectly benefited from the challenged conduct.  (*See id.*)  But the "mere ownership of a subsidiary does not justify [imposing] liability on the parent." *Pearson*, 247 F.3d at 484.

Finally, as with the fraudulent transfer claims, the Court's prior denial of a motion to dismiss a claim that *Bridger is the alter ego of BTS* is not license for Eddystone to assert a purely speculative and unsupported alter ego claim that extends all the way to Ferrellgas and BRS.[11]

---

[11]      To avoid its burden to plead facts sufficient to pierce the Bridger corporate veil and extend alter ego liability to Ferrellgas and BRS, Eddystone appears to rely (at 9) on the following sentence in the portion of the Court's order summarily denying the BL/FG Defendants' motion to dismiss:  "After carefully considering all of the arguments, and accepting all of the factual allegations in the Complaint as true, we conclude that the Complaint clearly and adequately alleges claims against each Defendant for Alter Ego, Intentional Fraudulent Transfer (12 Pa. C.S. § 5104(a)), Constructive Fraudulent Transfer (12 Pa. C.S. § 5105), and Breach of Fiduciary Duties of Care and Loyalty to Creditors."  (Dkt. 59 at 12.)  The BL/FG Defendants understand this to be a general statement denying 12(b)(6) motions prior to discovery, not a finding that Eddystone pled viable alter ego claims against Ferrellgas (not to mention BRS, which had not been added as a defendant).  Indeed, the original Complaint is quite clear in alleging only that Bridger was the alter ego of BTS.  Otherwise, there would be no need for Eddystone to include new language in the Proposed FAC extending this claim to Ferrellgas and BRS.

**CONCLUSION**

For all of these reasons, the BL/FG Defendants respectfully request that the Court deny

Eddystone's Motion for Leave to Amend the Complaint.  A proposed order is filed herewith.

Dated: August 24, 2018                          Respectfully submitted,

                                      /s/ Lawrence G. Scarborough
                                       Richard L. Scheff (I.D. No. 35213)
Michael C. Witsch (I.D. No. 313884)
MONTGOMERY   MCCRACKEN   WALKER   &
RHOADS LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
Telephone:  (215) 772-1500
Facsimile:  (215) 772-7620
rscheff@mmwr.com
mwitsch@mmwr.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-4630
lgscarborough@bryancave.com

Jacob A.  Kramer (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street NW
Washington, D.C. 20004
Telephone:  (202) 508-6000
Facsimile:  (202) 508-6200
jake.kramer@bryancave.com

Brian C. Walsh (Admitted *Pro Hac Vice*)
Alicia Ragsdale Olszeski (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St.  Louis, Missouri 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
brian.walsh@bryancave.com
ali.ragsdale@bryancave.com

Sarah L. Hartley (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200
sarah.hartley@bryancave.com

23

**CERTIFICATE OF SERVICE**

I, Michael C. Witsch, hereby certify that on August 24, 2018, a true and correct copy of the foregoing *OPPOSITION TO MOTION TO AMEND BY BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., AND FERRELLGAS, L.P.* was filed electronically using the Court's ECF filing system. This document is available for viewing and downloading from the ECF system and electronic notification has been sent to all counsel of record.

 /s/ Michael C. Witsch
Michael C. Witsch
