# EXHIBIT 2



**KATHERINE PORTER**
+1 212.872.7467/fax: +1 212.872.1002
kporter@akingump.com

December 1, 2017

VIA E-MAIL (jtheodore@steptoe.com)

Jeffrey M. Theodore
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, D.C. 20036

Re:     *Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al.*, No. 17-cv-00495
        (E.D. Pa.) - Meet and Confers

Dear Jeff:

As you know, we represent Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P. (collectively, "BL/FG").

Thank you for taking the time to meet and confer with us regarding (1) Plaintiff's First Set of Requests for Production ("ERC RFP"), (2) BL/FG Subpoena to Enbridge, Inc. ("Enbridge Subpoena"), (3) BL/FG Subpoena to Canopy Prospecting, Inc. ("Canopy Subpoena"), (4) BL/FG First Set of Requests for Production of Documents to Plaintiff Eddystone Rail Company, LLC ("BL/FG RFP"), and (5) BL/FG First Set of Interrogatories to Plaintiff Eddystone Rail Company, LLC ("BL/FG ROGS" and, collectively with the foregoing, the "Discovery Requests"), and the responses and objections thereto (respectively, the "BL/FG Rs&Os," the "Enbridge Rs&Os," the "Canopy Rs&Os," the "ERC Rs&Os," and the "ERC ROG Rs&Os," and collectively the "Responses and Objections").

As you know, the parties have exchanged multiple correspondence[1] and have met and conferred numerous times[2] regarding the discovery requests and Responses and Objections, respecting each of the foregoing.  As you know, all of our discussions thus far have been preliminary and non-binding on all parties, in an effort to reach a global resolution, and have

---

[1] Such correspondence includes: (1) September 13, 2017 letter from David Zensky; (2) September 25, 2017 letter from David Zensky; (3) September 27, 2017 letter from Jeff Theodore; (4) October 6, 2017 letter from Katherine Porter; (5) October 10, 2017 letter from Andrew Sloniewsky; (6) October 23, 2017 email from Andrew Sloniewsky; (7) October 23, 2017 email from Andrew Sloniewsky; (8) October 25, 2017 email from Andrew Sloniewsky; and (9) November 9, 2017 email from Andrew Sloniewsky.

[2] Such meet and confers include phone calls on September 29, October 2, October 5, October 11, October 20, October 23, October 24, October 25, and October 30, 2017.



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 2

been open to revision subject to client approval.  As we have now reached the close of our meet and confer sessions regarding the Discovery Requests and Responses and Objections, we write in order to finalize and to memorialize our positions on the foregoing.

Accordingly, this letter sets forth our position on the ERC RFP, as revised on October 23, 2017.  It also sets forth our understanding on which requests in the Enbridge Subpoena, the Canopy Subpoena, the BL/FG RFP, and the BL/FG ROGS the parties have reached resolution, and on which requests the parties are at an impasse.

### Discovery Review for Responsiveness

BL/FG agree to the following protocol for reviews for responsiveness.  Please note that this accepts, in large part, the formulation presented in Mr. Sloniewsky's email dated October 23, 2017, but contains certain revisions.  We do not agree to the unedited formulation in Mr. Sloniewsky's email.

> The parties are free to withhold a document that they believe in good faith that all other parties to the litigation would agree is not relevant, even if such document is non-privileged and was initially identified through agreed search terms and custodians.  But if the producing party is aware that even one party would find the document relevant, the document should not be withheld on relevance grounds unless the producing party gives prior notice specifically that it will not produce such materials in its discovery responses.  As an example of such prior notice, Enbridge/Canopy have stated that they believe the relationships among entities in the Enbridge corporate family are not relevant to this litigation, and that they will not produce documents relating solely to that issue.  However, a party's default position shall be that a document that is identified through agreed search terms and custodians and is, on its face, responsive to a request as written shall be produced.  If there is any doubt as to whether all parties would agree that a document is not relevant, the party shall produce the document.

### ERC Request for Production to BL/FG, as revised on October 23, 2017

Based on our extensive meet and confers, further consideration of the arguments you presented during such discussions, and our understanding of ERC's and its parents' discovery



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 3

positions, BL/FG set forth the following responses regarding ERC's RFPs, as revised on October 23, 2017.

      Please note that BL/FG are agreeing to search for significantly more documents than we believe are relevant or proportional.  We agree to this scope of production in the spirit of cooperativeness and disclosure, but expressly preserve (and do not waive) all arguments respecting proportionality, burdensomeness, and relevance.  For the avoidance of doubt, the agreement to produce as outlined herein cannot be cited in defense of the proportionality, relevance, or otherwise, of discovery requests, either in connection with any other pending requests, ERC's Second Set of Requests for Production issued October 30, 2017, or other future discovery.

      Furthermore, BL/FG repeat and incorporate herein each of the objections set forth in the BL/FG Rs&Os dated September 6, 2017.  Subject to the foregoing, BL/FG agree to produce, on a rolling basis, non-privileged, non-work product, non-duplicative documents in their possession, custody or control, if any, that can be located upon a reasonable search and are responsive to the following Requests as subsequently discussed and/or modified by Mr. Sloniewsky's November 9, 2017 email[3]:

- ERC RFP Request Nos. 1,[4] 2, 4, 5,[5] 6, 7, 9, 10, 13,[6] 18,[7] 22, 23, 24, 25, 26, 27, 28,[8] 29, 30,[9] 31,[10] 32, 33,[11] 34, 35, 36,[12] 37, 38, 39, 40, 41, 42, 43, 44, 45,[13] 46, 47,[14] 48, 49, 50, 51, 52,[15] 53, 54, 55, 56, 57,[16] 58, 59, 60.

---

[3] We further reiterate that your clients' requests span timeframes that pre-date the sale of Logistics to Ferrellgas.  Our productions are based on reasonable efforts to access documents  in prior accounting systems and/or computer systems or files.  BL/FG will produce documents "sufficient to identify" for Requests 5, 6, 29, 39, 41, 42.

[4] BL/FG will produce expert materials, exhibits, and other materials pursuant to the Discovery Report schedule, as it may be modified from time to time.

[5] BL/FG will produce documents responsive to Request 4, and documents "sufficient to identify" for Request 5, for employees of any Bridger Group and/or Ferrellgas entity who made business decisions on an ongoing, continuous bases for BTS specifically (not third party agents).  BL/FG understand that ERC agrees with this.

[6] The parties agreed to limit this request to January 1, 2012 until March 31, 2016.

[7] BL/FG will produce an export providing as much data regarding a fixed asset listing that exists in the ordinary course of business and is accessible for the Identified Bridger Entities in response to this Request in light of BL/FG's accounting systems' capabilities from between January 1, 2012 and December 31, 2016.

[8] The production will be limited by reasonably search terms and custodians and repositories.



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 4

In addition, subject to the limitations specifically set forth below, BL/FG agree to produce, on a rolling basis, non-privileged, non-work product, non-duplicative documents in their possession, custody or control, if any, that can be located upon a reasonable search and are responsive to the following Requests:

- ERC RFP Request No. 3: BL/FG will produce documents "sufficient to identify" responsive to this Request for the named individuals (without conceding that all such named individuals had responsibility for Logistics or BTS) and for any individuals that made business decisions on an ongoing, continuous basis for Logistics or BTS, and sample agreements for ministerial employees as to which employees have substantially identical employment agreements.

- ERC RFP Request No. 8: BL/FG will produce meeting minutes and notes of formal corporate meetings.  To the extent that the request seeks notes of non-corporate, informal meetings among managers, officers, etc., of more than 10 entities over a five-year period, without any subject matter limitation, such request is vague, burdensome, over-broad, and not proportionate.

- ERC RFP Request Nos. 11, 12: BL/FG will produce documents responsive to this Request from between January 1, 2012 and March 31, 2016 for the bank accounts of the Identified Bridger Entities.  BL/FG will produce documents responsive to this Request from between May 1, 2015 and March 31, 2016 for the bank accounts of any Ferrellgas entity that transferred cash or other assets to/from Logistics or BTS, based on a

---

[9] The production will be limited by reasonable search terms and custodians and repositories.

[10] BL/FG agree to Requests 31 and 32 subject to the limitation respecting financial benefits.

[11] BL/FG will produce relevant accounting exports; BL/FG further production will be pursuant to reasonable search terms and custodians. BL/FG will not produce all backup accounting records for the multi-year period, but will produce records responsive to the agreed search terms and will produce backup documents for specific transactions that ERC identifies promptly upon request.

[12] BL/FG will produce accounting records plus a search of reasonable custodians/search terms.

[13] BL/FG will produce documents concerning the terms of any ongoing, continuous (not episodic or sporadic) arrangement, agreement or business relationship between BTS, on the one hand, and any other Bridger Group Entity, on the other hand, identified by a reasonable set of search terms and custodians.

[14] The production will be limited by reasonable search terms and custodians and repositories.

[15] BL/FG will not search for "documents relating to performance" absent narrowing or clarification by ERC.  ERC stated that it would provide for such narrowing or clarification but has not yet done so.

[16] BL/FG will produce documents for Requests 57 and 58 through the date of BL/FG's Responses and Objections.



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 5

       reasonably diligent search to identify which entities actually transferred cash or assets to BTS or Logistics.  BL/FG agree not to limit the production to line items showing transfers to or from BTS or Logistics for such accounts.

- ERC RFP Request Nos. 14, 15: BL/FG will produce accounting export reports that provide information available for (a) – (f) for all Bridger Group legal entities.  BL/FG will produce accounting export reports that provide information available for (a) – (f) from between May 1, 2015 and December 31, 2016 for Ferrellgas L.P. and Ferrellgas Partners L.P.  This response is based on the understanding that "detailed subsidiary ledgers" means a separate ledger outside the general ledger that supports balances, not a ledger of a subsidiary entity.  The requests as written do not seek backup documents, such as invoices.  Accordingly, BL/FG do not agree to ERC's belated, supplemental oral request for backup documents; producing such documents for such a vast number of (mostly utterly unrelated) transactions, for numerous (often unrelated) affiliates, spanning many years, is overbroad, extremely burdensome, and not proportionate.  In the spirit of compromise, although ERC has not actually requested backup documents, BL/FG offer to produce backup documents for specific transactions of BTS or Logistics that ERC identifies from the accounting export production.  BL/FG promise to make such productions promptly upon request.

- ERC RFP Request No. 16: BL/FG will produce entries responsive to this Request for transactions related to any of the Identified Bridger Entities from between May 1, 2015 to December 31, 2016. BL/FG will not search for entries concerning "an asset that was at any time owned or in the custody of any of the Identified Bridger Entities" because that is vague, overly burdensome, and neither proportionate nor relevant.

- ERC RFP Request No. 17: BL/FG will produce all submitted documents responsive to this Request.  BL/FG will not search for all "communications" as that is vague, overly burdensome, and neither proportionate nor relevant.

- ERC RFP Request No. 19: BL/FG will produce fixed asset listings responsive to Request 18 but will not otherwise seek to trace assets for this Request.  Such a request is extraordinarily burdensome and vague, and neither proportionate nor relevant.

- ERC RFP Request No. 20: BL/FG will produce documents and communications relating to proposed or requested financing for BTS and/or BTS's assets.  FG will produce documents sufficient to identify financing for the remaining Identified Bridger Entities and their assets.

- ERC RFP Request No. 21: BL/FG will produce documents and communications relating to any transfer of assets or things of value from BTS to Ferrellgas or another Bridger Group Entity from January 1, 2012 through March 31, 2016.  BL/FG will further produce



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 6

       documents sufficient to identify any transfer of assets or things of value from any of the other Identified Bridger Entities to any Ferrellgas or Bridger Group Entity from January 1, 2012 through March 31, 2016.

       BL/FG do not refuse to produce documents in response to any request by ERC in its entirety.

       Finally, BL/FG agree to produce all family members.

### *BL/FG Subpoenas to Enbridge and Canopy*

       We understand that ERC's parents, Enbridge and Canopy, object that certain requests should have been directed to ERC in the first instance.  However, we also understand that Steptoe & Johnson LLP represents each of Enbridge, Canopy, and ERC in connection with this litigation.  Further, we understand that ERC has access to and the ability to produce documents within Enbridge and Canopy's possession or control that relate in any way to ERC, BL/FG or BL/FG's current or former affiliates, the Jamex parties, any Enbridge/Canopy entity involved in the marketing or shipping of crude from the Bakkens to the East Coast, and credit and risk policies and decisions concerning the foregoing, among other things, whether or not ERC personnel are specifically copied on such documents and communications.  Accordingly, we understand that it is your clients' collective position that at least one of Enbridge, Canopy, and/or ERC shall produce the documents responsive to the following requests[17]:

- Enbridge Request Nos. 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17*, 18*, 19, 20, 24, 26, 31, 32, 50, 52, 53, 54, 55.
- Canopy Request Nos. 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17*, 18*, 19, 20, 23, 25, 26, 27, 43, 45, 46, 47, 48.

---

[17] The requests marked with an asterisk * denote those that will be responded to subject to search terms and custodians that will be agreed upon at a later date after good faith negotiations and subject to the "Proposed Plan" set forth in Mr. Sloniewsky's October 25, 2017 email, *i.e.*, documents will be produced subject to the following caveats: (a) that BL/FG not insist that individuals be named as custodians solely because they may have documents responsive to the Disputed Requests, and (b) that when BL/FG negotiate search terms, they agree to engage in good faith negotiations to limit the subjects of RFPs 17-18 (*i.e.*, BL/FG will not insist that every document regarding the "operation" of the Facility must be produced).



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 7

We ask that you provide the documents in response to Enbridge Request No. 24 by December 8, 2017, as that production was due as part of the preliminary exchange and we have yet to receive it.

BL/FG understand that your clients will also produce the documents responsive to the following requests, re-written as follows:

- <u>Enbridge Request No. 4 and Canopy Request No. 4</u>:

"All Documents Concerning either (a) Your evaluation, opinion, or assessment of any investment in ERC or the Facility or (b) Your decision to invest in ERC or the Facility. This request includes Communications with lenders or direct or indirect investors in [Enbridge or Canopy] relating to any actual or potential investments in ERC or the Facility, Including Documents and Communications Concerning any business risks, investment risks, credit risks, opportunities, projections, estimated or potential profit or loss, business analysis, business relationships, costs, structural or operational issues with the Facility, or the corporate structure and finances of BTS, or of any of the BL/FG Defendants, or any parents or Affiliates thereof."

- <u>Enbridge Request No. 16 and Canopy Request No. 16</u>:

"Documents (a) sufficient to identify any capital raise, loans, or other financing in connection with any capital raised by Eddystone to acquire or develop the Facility, and (b) Documents and Communications Concerning any money raised by Enbridge or Canopy where such Documents mention or refer to ERC or the Facility.

BL/FG understand that your clients will also produce some—but not all—of the documents responsive to the following requests, with the limitations set forth below:

- <u>Enbridge Request Nos. 25, 40 and Canopy Request Nos. 24, 33</u>: you agree to produce responsive documents for ERC only; you refuse to produce documents for the remaining entities identified in the requests or for the subset of Bridger



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 8

>Counterparties offered as a compromise during the meet and confers and identified in our letter of October 6, 2017.

- Enbridge Request Nos. 47, 48 and Canopy Request No. 40, 41:  you agree to produce the lease for the site on which the ERC Facility operated only, and no other responsive documents.
- Enbridge Request No. 49 and Canopy Request No. 42:  you agree to produce documents and communications concerning any alternative sources of funding, revenue, sales, or income (other than the RSA), received by ERC, Enbridge or Canopy concerning the Facility, whether received from affiliates or third parties.
- Enbridge Request No. 51 and Canopy Request No. 44:  you agree to produce documents concerning the Carlyle Group only if such documents relate to ERC, and no other responsive documents.

BL/FG also understand that you refuse to produce documents responsive to the below listed requests in their entirety.  We note that it is our understanding that you have categorically rejected our proposal (offered as a compromise) to narrow certain requests to the "Bridger Counterparty" entities or as otherwise identified in our letter of October 6, 2017:

- Enbridge Request Nos. 21, 27, 28, 29, 30, 33, 34, 35, 36, 37, 41, 42, 44, 45.
- Canopy Request Nos. 21, 28, 29, 30, 34, 35, 37, 38.

BL/FG have withdrawn, without prejudice, the following requests *solely to the extent not overlapping* with any other request to Enbridge or Canopy or ERC:

- Enbridge Request Nos. 3, 15, 22, 23, 38, 39, 43, 46.
- Canopy Request Nos. 3, 15, 22, 31, 32, 36, 39.

### ***BL/FG First Set of Requests for Production to ERC***

Based on ERC's Rs&Os, our meet and confers, and Mr. Sloniewsky's email of November 9, 2017, BL/FG understand that your clients agree to produce documents and communications (whether in the possession, custody, or control of ERC, Enbridge, or Canopy) responsive to the following requests in the BL/FG RFPs[18]:

---

[18] The requests marked with a pound sign # denote those that will be responded to subject to search terms and custodians that will be agreed upon at a later date after good faith negotiations.  With respect to BL/FG RFP



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 9

- BL/FG RFP Request Nos. 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 26#, 27#, 30, 31, 39, 42, 43, 44, 45, 46, 47, 49, 51, 52#, 53, 55, 56, 58.

BL/FG will withdraw BL/FG RFP Request No. 22 if ERC enters a stipulation of fact that ERC did not grant, and did not state it would grant, BTS, Logistics, or any Bridger Group Entity exclusive access to the ERC Facility at any time.

BL/FG understand that your clients will produce some—but not all—of the documents responsive to the following requests, with the limitations set forth below:

- <u>BL/FG RFP Request No. 33</u>: your clients agree to produce documents concerning guarantees, letters of credit, collateral pledges, or other financial assurances for ERC only; your clients refuse to produce documents responsive to the request on behalf of other requested entities or the subset of "Bridger Counterparty" entities offered by BL/FG as compromise.
- <u>BL/FG RFP Request Nos. 34, 35</u>: your clients agree to produce accounting documents and records of ERC; your clients refuse to produce documents responsive to this request for Enbridge or Canopy, even where such documents expressly relate to ERC, the Facility, or its cash, assets, revenue, liabilities, or obligations.
- <u>BL/FG RFP Request No. 36</u>: your clients agree to produce responsive documents solely relating to valuation of the Facility; your clients refuse to produce responsive documents relating to the other identified subjects, including ERC, BL/FG, Monroe, the COSA, the Settlement, Jamex, etc.
- <u>BL/FG RFP Request Nos. 37, 38</u>: your clients agree to produce the lease agreement for the Facility only; your clients refuse to produce any other responsive documents.
- <u>BL/FG RFP Request Nos. 40, 41</u>: your clients agree to produce arbitration productions, submissions, transcripts, witness statements, and exhibits, to the extent BL/FG do not already have these documents in their possession; BL/FG will provide a list bates ranges and witness statements that have been produced and your clients will supplement that list and the remaining categories. Your clients otherwise refuses to produce documents responsive to this request.

---

Request Nos. 26 and 27, Mr. Sloniewsky's email states that we agreed to submit revised language. We do not recall agreeing to submit revised language; rather, we recall agreeing to address ERC's breadth concerns through search terms and custodians. We continue to believe search terms and custodians are the appropriate way to address these requests.



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 10

- BL/FG RFP Request No. 50:  your clients agree to produce documents concerning the Carlyle Group only if such documents relate to ERC, and no other responsive documents.[19]
- BL/FG RFP Request No. 54:  your clients agree to produce documents responsive to this Request to the extent those documents concern demand letters, and internal discussions about actual or contemplated demand letters.
- BL/FG RFP Request No. 57:  your clients propose to produce documents responsive to this Request, subject the "Proposed Plan" referenced above.  BL/FG would be willing to agree to production to this request as limited by search terms and custodians, other than subsection (e).  Further, your clients will determine if there is an analyst that opines on the forecasted prices of relevant crude.

With respect to BL/FG RFP Request No. 25, Mr. Sloniewsky's November 9, 2017 states that ERC agrees to produce documents as written in the revised Enbridge Request No. 16 and Canopy Request No. 16.  We do not see the need to rewrite BL/FG RFP Request No. 25 and believe that it is appropriately worded.  Please advise by the end of day on Monday, December 4 if you will respond to the request as originally written.

BL/FG RFP Request No. 28 was reserved for further consideration.  BL/FG propose that your clients produce responsive documents to the request as written.  The parties will narrow the documents respecting the "Facility" through reasonable search terms and custodians.

BL/FG understand that your clients refuse to produce documents responsive to the following requests in the BL/FG RFPs in their entirety based on purported burdensomeness and/or work-product:

- BL/FG RFP Request Nos. 3, 4, 29, 32, 48.

Finally, Mr. Sloniewsky's November 9, 2017 email revises General Objections 3 and 4 in ERC's Rs&Os.  We understand that you do not mean to include documents, emails, or other

---

[19] In Mr. Sloniewsky's November 9, 2017 email, he references his prior October 25 email.  However, on subsequent calls you explained your position was that your clients would not produce documents concerning Carlyle and financing arrangements unless such documents specifically relate to ERC.  If we have misstated your position or you have changed your position and are willing to produce documents concerning Carlyle financing arrangements with other Enbridge or Canopy entities, please inform us by the end of the day on Monday, December 4.



Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 11

communications between the parties as "documents that are equally available to both sides." With that understanding, we accept your statement regarding General Objection 3.

With respect to General Objection 4, you state that "Eddystone agrees to produce documents in its possession, custody, or control as required by Rule 34, but will not go beyond this." We understand that this statement is made in the context of your prior statements that ERC *has* access to the documents of Enbridge and Canopy entities (as set forth above in connection with the BL/FG Subpoenas to Enbridge and Canopy). Accordingly, we understand that you meant to communicate that ERC agrees to produce documents in its possession, custody, or control (including documents of Enbridge or Canopy). If that is not correct, please inform us by the end of the day on Monday, December 4. As you can imagine, if that is not correct, it will be an extremely significant shift in possession that impacts all prior discovery discussions and agreements.

### *BL/FG First Set of Interrogatories to ERC*

With respect to the BL/FG ROGS, thank you for agreeing to answer BL/FG ROG Nos. 1, 2, and 4.

With respect to BL/FG ROG No. 3, BL/FG understands that your clients will respond. Please provide a complete response within one week of the date of this letter. If Steptoe & Johnson has been engaged to represent a potential witness, we do not need the witness's home address. Otherwise, we are entitled to complete information in order to be able to contact potential witnesses for deposition or trial.

With respect to BL/FG ROG No. 5, BL/FG are willing to withdraw the request only in so far as it related to Enbridge – Enbridge services. If ERC receives or provides any services or payments, the ROG stands.

With respect to BL/FG ROG No. 6, we understand that you have continued to consider the issue.



**Akin Gump**
STRAUSS HAUER & FELD LLP

Jeffrey M. Theodore
Steptoe & Johnson LLP
December 1, 2017
Page 12

      Please let us know by the end of the day on Monday, December 4 whether you will provide answers to BL/FG ROG Nos. 3, 5, and 6 as set forth in this letter.

                                  Sincerely,

                                    Katherine Porter

cc:    All Counsel of Record