**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:17-cv-00495-RK |
| | ) |
| BRIDGER LOGISTICS, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**BL/FG DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL**

## I.   INTRODUCTION.

The Motion to Compel filed by Plaintiff Eddystone Rail Company, LLC ("Eddystone") on September 7, 2018 should be denied for multiple reasons.

First, the principal relief sought by Eddystone, unfettered access to the accounting systems of Defendant Ferrellgas Partners, L.P., is not the subject of any pending request under Fed. R. Civ. P. 34. As a result, Eddystone and the BL/FG Defendants have not negotiated, or even had occasion to negotiate, about the scope and details of such an inspection.[1]

Second, the other relief sought by Eddystone—supporting documentation for some 27,000 transactions, and documents requested in Eddystone's Document Request Nos. 20 and 21—were the subject of ongoing meet-and-confer discussions through August 2, 2018, when Eddystone's counsel went silent. More than a month later, without responding to a compromise

---

[1] "BL/FG Defendants" refers to Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P., which were among the defendants in Eddystone's original complaint. The Motion to Compel and the underlying document requests were not directed at the additional affiliates of the BL/FG Defendants that were joined in the First Amended Complaint, also filed on September 7.

suggested by the BL/FG Defendants as to the supporting documentation and without explaining why the BL/FG Defendants' understanding that the other issues were fully resolved was incorrect, Eddystone filed the Motion to Compel.  Eddystone has thus failed to satisfy its meet-and-confer obligations under Fed. R. Civ. P. 37(a)(1) and Local Rule 26.1(f).

These procedural issues are important, and not only because a premature motion to compel forces the opposing party to spend time and money on a response and requires the Court to decide a dispute that might have been resolved through further discussions.  In this case, the procedural issues help to illuminate the massively intrusive relief sought by Eddystone:  access to the accounting systems of a public company, and imposing upon the BL/FG Defendants the cost and disruption arising from the thousands of man-hours that are likely to be necessary to locate and compile supporting documentation for tens of thousands of transactions across multiple entities.  These requests are extraordinary, and extraordinarily burdensome; but they are all the more so because Eddystone never formally requested an inspection, never compromised an inch on the backup documentation, and walked away from discussions involving potential compromises.

Thus, even if the Motion to Compel were procedurally appropriate, it should be denied on the merits.  The BL/FG Defendants have produced copious accounting records that reflect activity recorded in their own books and records, as well as those of many of their current and former affiliates, over a period of several years.  The additional demands made by Eddystone, and the expenses and risks that those demands will impose on the BL/FG Defendants, are well out of proportion to any potential benefit to Eddystone.  Ferrellgas Partners, L.P. is a public company that should not be required to permit outsiders direct access to its accounting systems. As explained in greater detail below, the collection and collation of the backup documentation

for the 27,000 transactions identified by Eddystone—some involving just a few dollars, and for items as obscure as postage charges and employee travel expenses—is likely to involve thousands of man-hours.  And the BL/FG Defendants understand that they have fully complied with Request Nos. 20 and 21, as those requests have been narrowed in the meet-and-confer discussions, yet Eddystone answers this issue only in a footnote in which it complains, without elaboration, that defense counsel "misstates Eddystone's positions."  (Dkt. 183 at 10 n.1.)

Eddystone has brought this case in admiralty, but that does not mean that a deep-sea fishing expedition is appropriate.  Because the BL/FG Defendants have met their production obligations, and because Eddystone has abandoned without cause the good-faith negotiating efforts of the BL/FG Defendants, and also because Eddystone's requests are unduly burdensome and disproportionate to the needs of this case, the Motion to Compel should be denied.

## II.      THE MOTION IS NOT RIPE FOR DECISION BY THE COURT.

The Motion to Compel should be denied because Eddystone has not exhausted efforts to resolve the dispute without Court intervention, as required by Fed. R. Civ. P. 37(a)(1) and Local Rule 26.1(f).  In the Motion to Compel, Eddystone asks the Court:  (1) to compel the BL/FG Defendants to "permit Eddystone and its forensic accountants to conduct a full inspection of Ferrellgas's accounting system on site;" and (2) to overrule all of the BL/FG Defendants' objections to Eddystone's  Request Nos. 20 and 21.  (Dkt. 183-8.)  Sprinkled throughout the Motion to Compel are discussions of Eddystone's *demand for backup documentation for the 27,000 transactions*, although the unfettered access to accounting systems in the Proposed Order is not limited to those 27,000 items.  In any event, Eddystone's request for relief is procedurally inappropriate.

### A.     Eddystone Has Not Certified (And Cannot Certify) That The Parties Have Negotiated To Impasse.

Rule 37(a) requires that a party moving to compel discovery submit to the Court "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).   Local Rule 26.1(f) states that "[n]o motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute."  E.D. Pa. R. 26.1(f).  The parties' Discovery Report does not require an additional certificate, but it requires the parties to "meet-and-confer to attempt to reconcile any discovery-related matters on which there is a disagreement."  (Dkt. 49 at 4.)

Eddystone has not submitted the required certificate, nor does the Motion to Compel otherwise establish that the parties have fully negotiated the issues raised by Eddystone and reached an impasse.  Although Eddystone states in its introduction that the "two issues . . . have been the subject of extensive meet and confer discussions," it does not elaborate on those discussions, acknowledge where they left off, or demonstrate that there is now an impasse.  (Dkt. 183 at 3.)

As explained in greater detail below, the reasons for the lack of a certificate of counsel are obvious:  the accounting inspection has never been the subject of a Rule 34 request at all, and Eddystone abandoned meet-and-confer discussions on the other issues abruptly, more than a month before filing the Motion to Compel.   Consequently, the Motion to Compel should be denied.  *See Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186-87 (3rd Cir. 2003) (overturning sanctions as an abuse of discretion where meet-and-confer was insufficient).

4

**B.      Eddystone Cannot Move To Compel An Inspection That It Did Not Request.**

"In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent."  *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995).  Eddystone's effort to obtain an inspection of the BL/FG Defendants' accounting systems founders on this basic premise.

Rule 34 authorizes two distinct forms of discovery, production and inspection.  It provides as follows:

(a) A party may serve on any other party a request . . .

>    (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . .

>    >    (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained  . . . or

>    >    (B) any designated tangible things;  or

>    (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34.

Eddystone requested production of an enormous volume of documents and electronically stored information.  Following extensive meet-and-confer discussions, resulting in the narrowing of certain requests, the BL/FG Defendants have complied with those requests.  Eddystone did not request an inspection of the BL/FG Defendants' accounting systems, nor of any other computer systems or business operations.  (Porter Decl., ¶ 6; Davis Decl., ¶ 3(a).)[2]

---

[2]  Declaration of Katherine Porter in Support of BL/FG Defendants' Response in Opposition to Plaintiff's Motion to Compel ("Porter Decl."), filed concurrently herewith;

Eddystone raised the notion of an inspection of Ferrellgas's accounting systems on October 25, 2017, in its reply brief in support of an earlier motion to compel.  (Dkt. 93 at 8.)  The BL/FG Defendants pointed out that such a request was inappropriate in a reply brief.  (Dkt. 100 at 1.)  The Court did not grant that relief, and the issue went away for months.

Eddystone raised the question again as the parties were discussing other, particular document requests, and it came in the form of a suggestion (not a demand).  (Davis Decl., ¶ 3(d).)   On June 27, 2018, in the midst of meet-and-confer negotiations about Eddystone's inability to locate accounting sub-ledgers (*i.e.*, records of items such as accounts receivable and accounts payable) in the BL/FG Defendants' production, Eddystone's counsel raised the concept of direct access to the BL/FG Defendants' accounting systems.  (*Id.*, ¶ 3(d).)  Counsel presented the issue in the form of a question:  "Is that something to which your side is amenable?"  (*Id.*, ¶ 3(d).)  Later in the same line of discussion, counsel asked, "[W]ould it be possible for our accountants to perform an inspection so that they can better understand how these documents relate?"  (*Id.*, ¶ 3(e).)  In other words, the discussion was limited to particular documents that Eddystone hoped to receive or to better understand; it was not the free-for-all demanded in the Motion to Compel.

The inspection issue popped up occasionally in later communications, discussed below, during the parties' meet-and-confer exchange on other issues.  But it never became concrete.  As a result, the parties have had no occasion to discuss important issues, including these:

- How long does Eddystone propose to have access to the accounting systems?

- Is Eddystone proposing to access the systems live, or just to manipulate read-only copies?

---

Declaration of Timothy Davis in Support of BL/FG Defendants' Response in Opposition to Plaintiff's Motion to Compel ("Davis Decl."), filed concurrently herewith.

- If the latter, who would be responsible for the cost, effort, hardware, and software licenses necessary to set up copies?

- Is Eddystone going to be permitted to download or print out any data?  If so, what restrictions will apply?

**C.   Eddystone Abandoned Meet-And-Confer Discussions In Midstream.**

The Court may benefit from an understanding of the parties' negotiations over their discovery differences, including the compromises suggested by the BL/FG Defendants in the last relevant communications, most of which Eddystone ignores in the Motion to Compel.

**1.   Discussions Concerning Supporting Documentation.**

In May 2018, Eddystone began demanding additional accounting information, including backup documentation for certain journal entries in the BL/FG Defendants' accounting records. Those demands resulted in protracted negotiations with Eddystone's counsel.  (Davis Decl., ¶¶ 3 and 4.)  Eddystone's counsel ultimately suggested that an inspection might be an appropriate way to address this issue.  (*Id.*, ¶ 3(g).)  The BL/FG Defendants' counsel informed Eddystone that "Ferrellgas, a public company, is not willing to let ERC's experts have access to its accounting system" (*Id.*, ¶ 3(f).)

As negotiations continued, the BL/FG Defendants requested that Eddystone "please submit a targeted and reasonably narrow list of ledger entries for which you seek backup materials." (*Id.*, ¶ 4(b).)  Eddystone refused, suggesting that if backup documents for the 27,000 items "are too burdensome to produce, we are happy to inspect." (*Id.*, ¶ 4(c).)  The BL/FG Defendants again sought "a compromise that both sides can live with," pointing out that the backup documentation was likely to require thousands of man-hours of work to collect and product, but offering on August 2, 2018 "to discuss the possibility of ERC paying contractors to complete the work." (*Id.*, ¶ 4(d).)  Eddystone's attorney wrote that "we will get back to you

shortly," but he did not respond at all.  Instead, Eddystone filed the Motion to Compel more than a month later.

### 2.    Discussions Concerning Request Nos. 20 and 21.

As far as the BL/FG Defendants are aware, the parties have already reached an agreement on the appropriate scope of documents to be produced in response to Request Nos. 20 and 21, and the BL/FG Defendants have already produced them.  (*Id.*, ¶ 5.)  Starting in September 2017, negotiations resulted in Eddystone's agreeing to narrow the scope of Request Nos. 20 and 21, among others.  (*Id.*, ¶ 5(a).)  Written revisions to these and other requests were issued on October 23, 2017.  (Porter Decl., ¶ 7; Davis Decl., ¶ 5(b).)  Negotiations continued, and the parties reached additional agreements about the scope of Request Nos. 20 and 21.  (*Id.*, ¶ 5(c).)

In a July 30, 2018 telephone conference and confirming email, Eddystone agreed to further narrow the scope of Request Nos. 20 and 21.  (*Id.*, ¶ 5(g).)  With respect to Request No. 20, which concerns efforts to obtain financing, Eddystone's counsel agreed to limit the request to situations in which assets of Bridger Transfer Services LLC ("BTS") were to be used as collateral.  (*Id.*, ¶ 5(h).)  The BL/FG Defendants agreed to produce documents within that narrowed scope and did so (to the extent not produced earlier) within several days.  (*Id.*, ¶ 5(h).)

Also on July 30, Eddystone's counsel proposed to limit the scope of Request No. 21, which concerns transfers of assets to Ferrellgas, to include only transfers from Bridger Logistics or certain of its affiliates or internal reporting units.  (*Id.*, ¶ 5(i).)  The BL/FG Defendants concurred with this proposal on August 1, 2018 and stated that responsive documents had been produced already.  (*Id.*, ¶ 5(i).)

At the same time, Eddystone requested that the BL/FG Defendants make one written modification to their formal responses to clarify that particular objections would not override the parties' extensively negotiated protocol for searching and producing electronically stored

8

information.  (*Id.*, ¶ 5(d).)  The BL/FG Defendants complied by serving their First Supplemental Responses in connection with the same August 1 communication.  A copy of these responses is attached to the Motion to Compel (Dkt. 183-3).[3]

Eddystone's counsel responded on August 2, 2108, stating that "we will get back to you shortly on all of these issues."  (Davis Decl., ¶ 5(j).)  Yet counsel did not respond at all before filing the Motion to Compel more than a month later.  A footnote in the Motion to Compel (at 10 n.1) argues that the BL/FG Defendants' August 1 email "misstates Eddystone's positions during the Parties' discovery calls," but it does not explain the nature of the supposed misstatement or clarify what Eddystone believes that it proposed instead.

## III.   THE BL/FG DEFENDANTS HAVE PRODUCED EXTENSIVE ACCOUNTING INFORMATION THAT SATISFIES EDDYSTONE'S REQUESTS.

Early in this case, the parties agreed to a staggered discovery process.  (Dkt. 49 at 3-4.) Each party agreed to produce a first wave of documents responsive to seven initial requests (the "Preliminary Exchange"), with a second wave of full discovery to commence after the then-pending motions to dismiss were decided.  (*Id.* at 3.)  The BL/FG Defendants expended significant time and resources in order to locate as many documents as possible for the Preliminary Exchange production.  (Dkt. 86, ¶¶ 2, 6, 8.)

The BL/FG Defendants complied with the Preliminary Exchange agreement and, by the agreed date of August 11, 2017, produced more than 12,200 documents spanning more than 45,400 pages, which included more than 100 accounting and financial records, such as:  (i) more than two dozen documents which included "general ledger" data, explicitly titled as such; (ii) tax

---

[3] The BL/FG Defendants inadvertently updated their responses to Eddystone's original requests, rather than the revised requests from October 2017, but all counsel agreed that other commitments reached in the course of negotiations remained in effect even if they were not formally included in updated requests or objections.  (Davis Decl., ¶ 5(d).)

records; (iii) bank account statements and reconciliation schedules; (iv) financial statements, accounting records and schedules consisting of segment and/or subsidiary details showing (a) revenue, (b) earnings before interest, tax, depreciation and amortization charges, (c) balance sheet, (d) income statement, (e) account receivable schedules, (f) account payable schedules, (g) fixed asset schedules with additions, dispositions and adjustments, (h) prepaid schedules, (i) debt schedules, (j) intercompany balances, and (k) professional services schedules; (v) consolidated management reports respecting midstream operations financial performance; (vi) budgets and forecasts; (vii) audited financial statements; and (viii) loan documents, including notes, letters of credit, guarantees, security agreements and loan releases.  (Dkt. 87, ¶ 3.)

After the motions to dismiss were denied in July 2017, full discovery commenced.  The parties exchanged document requests and responses and objections and met and conferred on multiple issues, by writing and by phone.  (*Id.*, ¶ 5.)

On November 6, 2017, the Court ordered the BL/FG Defendants to produce "the general ledgers of [Bridger Transfer Services, LLC (BTS)] and Bridger Logistics for the period of January 1, 2012 to March 1, 2016, including all subsidiary ledgers, adjusting journals, and transactions detail."  (Dkt. 107, ¶ 1.)  Eddystone's suggestion in the Motion to Compel (at 2) that the Court directed "full production of Ferrellgas's accounting records" is not accurate, for the November 2017 dispute was *limited to BTS and Bridger Logistics*.

Nevertheless, the BL/FG Defendants were by that time busy gathering and producing a much larger universe of accounting data.  In the course of five additional productions through January 18, 2018, the BL/FG Defendants produced an enormous quantity of information relating to Ferrellgas and other affiliates of Bridger Logistics.  And the BL/FG Defendants have continued to produce additional accounting and finance documents in subsequent months.

To provide Eddystone with the data sought by its accounting-related document requests, the BL/FG Defendants had to harvest information from three different accounting systems. (Gronberg Decl., ¶¶ 2-4.)[4]   Bridger Logistics and its affiliates maintained their accounting records in a system known as Quickbooks until approximately September 2014.  (*Id.*, ¶ 2.)[5]  The Bridger companies began to maintain their accounting records in a system known as Great Plains beginning in approximately September 2014.  (*Id.*, ¶ 3.)  Ferrellgas maintains its accounting records in a system known as PeopleSoft.  (*Id.*, ¶ 4.)  Certain financial activity involving the Bridger companies was also recorded in PeopleSoft after Ferrellgas acquired Bridger Logistics and certain of its affiliates.  (*Id.*, ¶ 4.)

The BL/FG Defendants' accounting production ultimately consisted of more than 2,500 documents.  With the production on January 18, 2018, the BL/FG Defendants included a note explaining terminology differences in the way their accounting records are kept:

> We believe that the enclosed production and our production of January 4, 2018 complete our accounting export productions in response to ERC RFPs # 14, 15, 16, 18, and 19.  For the avoidance of doubt, please note that the BL/FG accounting team does not use the following terms set forth in the ERC RFPs in the ordinary course: "books of original entries," "detailed general ledger," "detailed subsidiary ledgers."  We understand, however, that the productions of journal entries, trial balances, and accounts payable and accounts receivable, respectively, provide the information that ERC has requested and BL/FG have agreed to provide.  Furthermore, the trial balances and journal entries contain the opening and closing balances information and the credit and debit information.  Finally, the asset documents that we are producing are what is available in the ordinary course of business and we believe responsive to the requested "fixed

---

[4]  Declaration of Nathan Gronberg in Support of BL/FG Defendants' Response in Opposition to Plaintiff's Motion to Compel ("Gronberg Decl."), filed concurrently herewith.

[5]  The Quickbooks file was password-protected and could not be accessed by Ferrellgas's accounting personnel.  BL/FG Defendants' required the assistance of a consultant to crack the password and export all general-ledger data from the file.  (Declaration of Gary Polkowitz in Support of BL/FG Defendants' Response in Opposition to Plaintiff's Motion to Compel ("Polkowitz Decl."), filed concurrently herewith.)   Responsive data has been provided to Eddystone.  (Polkowitz Decl., ¶¶ 2-4; Porter Decl., ¶ 4.)

asset listing." Our productions are ongoing and we will produce additional documents if we locate them.

(Porter Decl., ¶ 5.) It appears that many of the issues identified by Eddystone and its experts in the Motion to Compel may stem from the difference in nomenclature that was addressed by the message above.[6]

## IV.   THE BL/FG DEFENDANTS SHOULD NOT BE REQUIRED TO PERMIT OUTSIDERS ACCESS TO THEIR ACCOUNTING SYSTEMS.

The Court should deny Eddystone's request to inspect the BL/FG Defendants' accounting systems. As discussed above, Eddystone should not be permitted to move to compel relief that it did not request in written discovery, and the parties have not even begun to engage on the details of how such an inspection might work. But even if this request were procedurally proper and ripe for decision, the Court should deny it.

Eddystone seeks "a full inspection of Ferrellgas's accounting system *on site*." (Dkt. 183-8.) (emphasis added) Such an inspection would be intrusive, time consuming, and potentially damaging to the integrity of Ferrellgas's business records.

"[D]iscovery must be fair." *Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331, 333 (E.D. Pa. 2012). "The responses sought must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party." *Hicks v. Arthur*, 159 F.R.D. 468, 470 (E.D. Pa. 1995). "[T]he scope of [ ] discovery is not without limits." *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) (citations and quotations

---

[6] In the Motion to Compel, Eddystone cites one document, Bates-numbered BLFG_EDPA0045640, in an effort to imply that BL/FG Defendants' production of Ferrellgas's accounting data is incomplete, asserting that the file is limited to entries from July 2015 through March 2016. However, Eddystone ignores BLFG_EDPA0046412 through BLFG_EDPA0046433, which contain more comprehensive Ferrellgas general-ledger data for additional time periods. (Polkowitz Decl., ¶¶ 5-8.)

omitted).  The burden placed on the responding party cannot be unreasonable.  *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 149 (M.D. Pa. 2017).

To justify the inspection that it seeks, Eddystone must do more than show mere relevance of the information it hopes to find; it must demonstrate that the burden the inspection would cause justifies the benefit.  As the Fourth Circuit recognized in *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904, 908 (4th Cir. 1978), inspection entails "greater burdens and risks than mere production of documents."  *Id.* at 908.  The *Belcher* court went on to note that a greater inquiry into the necessity for inspection is warranted and the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection.  *Id.*[7]

In this instance, the burden is great and the incremental information it might yield is negligible.  Ferrellgas Partners, L.P. is a publicly traded company that uses its accounting systems to prepare consolidated financial statements that are audited and then filed with the Securities and Exchange Commission for the benefit of the investing public.  Eddystone's request for onsite access to the accounting systems introduces the potential that data could be lost, altered, or corrupted.

Eddystone blithely suggests that "[t]here is nothing unusual in such an inspection."  (Dkt. 183 at 6).  In fact, there is.  Even Ferrellgas's auditors do not access the company's  accounting systems directly.  If they request documentation of a particular transaction, they rely on Ferrellgas's employees to retrieve the documentation for their review.  (Gronberg Decl., ¶ 10.) Moreover, if the Court were to provide Eddystone with access to Ferrellgas's system, Ferrellgas

---

[7] Since *Belcher* was decided, the Supreme Court has amended Rule 26(b)(1) to add the requirement of proportionality.

would have to assign employees to assist and supervise the inspectors at all times to ensure the integrity of the company's records.  Such efforts would be costly and time-consuming.[8]

In short, the burden of an accounting inspection on the BL/FG Defendants does not justify the meager incremental benefit that Eddystone might obtain from accessing the accounting information already available to it in a somewhat different format.  *See McCurdy Grp., LLC v. American Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001) (denying motion to compel inspection of computer system where files were obtained by alternate means).

## V.     THE BL/FG DEFENDANTS SHOULD NOT BE REQUIRED TO PRODUCE SUPPORTING DOCUMENTATION FOR MORE THAN 27,000 JOURNAL ENTRIES.

As discussed above, Eddystone abandoned the parties' meet-and-confer discussions about its request for backup documentation for some 27,000 transactions, ignoring a request for a more targeted list of journal entries and a compromise offered by the BL/FG Defendants.  That alone is sufficient reason to justify the denial of the Motion to Compel.  But the request is equally inappropriate on the merits.

On the same day that it filed the Motion to Compel, Eddystone filed its First Amended Complaint, joining new defendants and modifying its fraudulent-transfer allegations to include new concepts and theories.  But those allegations (as well as others in the new complaint) remain remarkably opaque.  In particular, Eddystone has not identified any particular transaction in which any of the existing or new defendants was involved that Eddystone contends was

---

[8] The Motion to Compel and Proposed Order seek access to Ferrellgas's live accounting systems.  To the extent that Eddystone instead seeks access to a read-only copy of Ferrellgas's systems, that would require significant time and expense as well, including for hardware, software licenses, and personnel to create copies of the systems.  But in any event, if Eddystone has suggestions that would limit the effects of an inspection on the BL/FG Defendants and risks to the integrity of their financial information, Eddystone should have proposed those limits in meet-and-confer communications, not in negotiations before the Court.

fraudulent or otherwise wrongful.  Rather, Eddystone has somehow selected more than 27,000 transactions that it believes *might* be interesting and has insisted that the BL/FG Defendants locate and provide supporting documentation to Eddystone.  Some of these journal entries involve less than $100; many more involve less than $1,000; and they span a range of topics far removed from the core of the parties' dispute (such as travel reimbursements, meal expenses, and charges for drug testing).  (Gronberg Decl., ¶ 7.)

Because of the BL/FG Defendants' multiple accounting systems and the manner in which their records are organized, they have estimated that it would take approximately 7,000 man-hours to gather and catalog the information Eddystone seeks.  (*Id.*, ¶ 8.)  Contrary to the suggestions of Eddystone's expert, Meghan Cardell, the BL/FG Defendants cannot simply push a button (or 27,000 buttons) and generate the documentation Eddystone seeks.  Bookkeeping personnel would need to manually locate backup documentation for each journal entry (depending on the nature of the entry) from a vendor file, a customer file, a spreadsheet, or some other repository.  (*Id.*, ¶ 9.)  Some of these records would be located on a shared network drive, outside the accounting system, and others would be stored in hard copy.  (*Id.*, ¶ 9.)  Then someone would need to catalog or index the backup documentation so that its relationship to a particular journal entry is clear.  Factoring in the time to gather and catalog the information properly, it probably would take a well-trained individual approximately an hour to dispose of four journal entries.  (*Id.*, ¶ 8.)  At that pace, it could take a team of eight well-trained analysts 20 full work weeks to satisfy Eddystone's request.

The BL/FG Defendants should not be required to absorb the expense of this deep-sea fishing expedition simply because Eddystone refuses to identify a reasonably narrow subset of the transactions that truly underlie its claims in this litigation.  Eddystone's demand for backup

documentation should be denied or, at a minimum, conditioned on Eddystone's agreement to retain contract workers to gather the documentation, under the supervision of Ferrellgas employees, at Eddystone's expense.

## VI.   THE BL/FG DEFENDANTS HAVE RESPONDED APPROPRIATELY TO REQUEST NOS. 20 AND 21, AND EDDYSTONE'S REQUEST FOR UNSPECIFIED FURTHER RELIEF SHOULD BE DENIED.

As discussed above, the BL/FG Defendants believe that they have provided a complete response and production to Eddystone's Request Nos. 20 and 21.   In particular, Eddystone narrowed Request No. 20 to cover only financing efforts involving the assets of BTS as collateral, and the BL/FG Defendants have produced responsive documents.   And Eddystone modified Request No. 21 so that it is limited to transfers from Bridger Logistics or several of its affiliates or internal reporting units; the BL/FG Defendants have produced documents accordingly.   The production includes not only documents located in manual searches but, as stated in the BL/FG Defendants' supplemental responses, "any responsive documents identified by searching electronically stored information ('ESI') from certain agreed custodians and sources using certain agreed search terms . . . unless it is clearly irrelevant (meaning no party could contend in good faith that the document is relevant) or subject to an applicable privilege." (Dkt. 183-3 at 33-35.)

In response to the BL/FG Defendants' August 1 communication confirming the parties' understanding, Eddystone promised to "get back to you shortly on all of these issues" but did not.   If there remains a genuine dispute about the scope of these requests or the sufficiency of the documents produced, the BL/FG Defendants genuinely do not know what it is.   The Motion to Compel should be denied for that reason alone.

But even if there were a ripe dispute, the relief sought by Eddystone—overruling *all* of the BL/FG Defendants' objections and requiring production of *everything* originally requested

(Dkt. 183-8 at 1)—would be wholly inappropriate.  If there is a remaining dispute between the parties, it must be a narrow one that arises from Eddystone's insistence that it has not made quite as many concessions as the BL/FG Defendants believe it has.  (Dkt. 183 at 10 n.1.)  Had Eddystone continued the discussion rather than abandoning it on August 2, the BL/FG Defendants might now be in a better position to identify the apparent problem or to respond more concretely.  But in any event, there is no question that each party has made important concessions about the scope of these requests and the validity of the BL/FG Defendants' objections.  Any disagreement should be resolved within those parameters, not by the overruling of all of the BL/FG Defendants' objections.

## VII.   CONCLUSION.

The Motion to Compel should be denied for the procedural reasons described above:  it seeks relief not properly requested in written discovery; the issues have not been negotiated to impasse; and in significant part, the BL/FG Defendants have already complied with Eddystone's requests.  But the motion is equally troubling on the merits, for it proposes to require the BL/FG Defendants to allow outside access to their fundamental financial records, to impose upon them approximately 7,000 man-hours of work (for no apparent purpose), and to require them to produce documents that Eddystone has already agreed need not be produced.  Should the Court reach the merits, it should deny the Motion to Compel.


Dated: September 21, 2018

Respectfully submitted,

 /s/ Richard L. Scheff
Richard L. Scheff (I.D. No. 35213)
Michael C. Witsch (I.D. No. 313884)
ARMSTRONG TEASDALE LLP
1500 Market Street
12th Floor, East Tower
Philadelphia, Pennsylvania 19102
Telephone:  (800) 243-5070
Facsimile:  (215) 569-8228
rlscheff@armstrongteasdale.com
mwitsch@armstrongteasdale.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-4630
lgscarborough@bclplaw.com

Jacob A.  Kramer (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 508-6000
Facsimile:  (202) 508-6200
jake.kramer@bclplaw.com

Brian C. Walsh (Admitted *Pro Hac Vice*)
Alicia Ragsdale Olszeski (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St.  Louis, Missouri 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
brian.walsh@bclplaw.com
ali.ragsdale@bclplaw.com

Sarah L. Hartley (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200
sarah.hartley@bclplaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Michael C. Witsch, hereby certify that on September 21, 2018, a true and correct copy of the foregoing *RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL* was filed electronically using the Court's ECF filing system. This document is available for viewing and downloading from the ECF system and electronic notification has been sent to all counsel of record.

/s/ Michael C. Witsch_____
     Michael C. Witsch