IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDDYSTONE RAIL COMPANY, LLC, )
)
        Plaintiff, )
)
vs. )
) Civil Action No. 2:17-cv-00495-RK
BRIDGER LOGISTICS, LLC, JULIO RIOS, )
JEREMY GAMBOA, FERRELLGAS )
PARTNERS, L.P., and FERRELLGAS, L.P., )
)
        Defendants. )
)

## DEFENDANT JULIO RIOS'S MOTION TO COMPEL

Defendant Julio Rios ("Rios") files this Motion to Compel interrogatory responses (the "Motion") from Plaintiff Eddystone Rail Company, LLC ("Eddystone"), and respectfully shows as follows:

### I.    INTRODUCTION

Rios brings this Motion to compel Eddystone to provide him with a meaningful factual basis regarding his alleged wrongdoing. As it pertains to Rios, Eddystone's First Amended Complaint (the "Complaint") broadly alleges wrongdoing related to unspecified fraudulent transfers but is otherwise bereft of any factual support. Among other things, Eddystone concludes that Rios stripped Bridger Transfer Services ("BTS") of assets, payments, transshipment capacity, and cash flows,[1] but never identifies what the assets are, when the alleged stripping occurred, the value of those assets, or what

---

[1] Pl.'s First Am. Compl. at 2, ¶ 4; 14, ¶ 56; 15, ¶ 57; 18, ¶ 68; 25, ¶ 92(e) [ECF No. 178-1].

acts Rios personally took that constitute the alleged stripping. Similarly, Eddystone concludes that Rios benefitted from the alleged stripping,[2] but never identifies the value of any alleged benefit.

It is impossible for Rios to discern from the Complaint precisely which transactions he should examine as he attempts to prepare for his deposition, the deposition of Eddystone deponents, and for trial. Rios, therefore, served three interrogatories tailored to discover the specific factual bases supporting the allegations against him.[3] Rather than respond with what it has learned from millions of pages of documents produced over the last 18 months, including a complete set of Rios's personal financial statements, Eddystone argues that it can hide that information until the end of discovery, and refuses to respond.[4] That type of 'gotcha' litigation is an anachronism and there is no reason why this case should be governed by the outdated model of trial by ambush. Accordingly, Rios respectfully requests that the Court enter an order compelling Eddystone to respond fully to Rios's interrogatories.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Eddystone Lumps Rios Into Every Allegation In Its Complaint, Even Those Eddystone Has Actual Knowledge Do Not Apply To Rios.

1.  Eddystone's First Amended Complaint contains two types of allegations against Rios.

*First*, Eddystone makes allegations specifically naming Rios in alleged misconduct. Those include:

- "Rios...used the Monroe payments as if all Bridger affiliates were one entity."[5]
- "Rios...stripped BTS of assets, of its former payments for the Eddystone and other transshipment capacity, and of its cash flows from other contracts."[6]
- "Rios...caused BTS to forgive millions of dollars in accounts receivable that it was owed by other Bridger Logistics and FGP affiliates."[7]
- "Rios...re-directed the portions of the Monroe revenue stream that had gone to BTS – as well as much of BTS's non-Monroe related revenue – to other Bridger Logistics and FGP affiliates, particularly Bridger Rail Shipping."[8]

---

[2] *Id.* at 5, ¶ 11; 21, ¶¶ 78, 80; 22, ¶ 85; 24, ¶ 92(a); 27, ¶ 103.
[3] Def. Julio Rios's Second Set of Interrogs. to Pl. Eddystone Rail Co., LLC, served July 11, 2018, attached hereto as Exhibit 1.
[4] Pl. Eddystone Rail Co., LLC Responses and Objs. to Defs. Rios and Gamboa's Second Set of Interrogs., served August 10, 2018, attached hereto as Exhibit 2.
[5] Pl.'s First Am. Compl. at ¶ 43.
[6] *Id.* at ¶¶ 55, 65.
[7] *Id.* at ¶¶ 56, 68.
[8] *Id.* at ¶ 57.

- "Rios...[was] also receptive to Jamex Marketing's suggestions."[9]

2. *Second*, Eddystone makes allegations against groups of Defendants, which purport to include Rios. Although too numerous to list here, some of the allegations in which Rios is grouped include:

- "BTS was not capitalized with sufficient resources for its business, providing transloading services for [Rios, individually]."[10]
- "BTS making available all of its transloading capacity to [Rios, individually]."[11]
- "BTS did not maintain separate financial records from [Rios, individually]."[12]
- "[Rios, individually,] transferred, comingled, managed, and used BTS' assets and funds for the benefit of [his] affiliates."[13]

### B. Almost 18 Months Into This Case, And At The End Of Document Discovery, Rios Served Three Interrogatories To Help Clarify And Narrow The Issues To Be Tried.

3. Document discovery ended in this case on August 15, 2018, 18 months after this action was filed. During document discovery, the named defendants in this action produced millions of pages of documents. In addition, Eddystone sought, and the Court granted, extraordinary discovery in the form of Rios's personal financial records.

4. At the end of document discovery, Rios served three interrogatories calculated to discern the factual basis for the allegations against him, as follows:

- **INTERROGATORY NO. 3:** Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Two of your Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual to whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars) received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

- **INTERROGATORY NO. 4:** Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Three of your

---

[9] *Id.* at ¶ 64.
[10] *Id.* at ¶ 78.
[11] *Id.* at ¶ 79.
[12] *Id.* at ¶ 80.
[13] *Id.*

Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual too whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars) received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

- **INTERROGATORY NO. 6:** Describe in detail the factual bases of your allegation in paragraph 29 that "[t]he course of dealing among the Bridger entities shows that they either operated with one another without regard to corporate entities," identifying each and every practice by Rios or Gamboa that forms the basis of that allegation.

5. Rather than respond with what it has learned from mining the defendants' production, including Rios's personal financial records, Eddystone responded that it has no obligation to provide any information to Rios about its claims or allegations until, at the earliest, fact discovery is complete.[14]

6. The parties are now preparing to take depositions. Indeed, the parties have exchanged lists of deponents and the number of depositions currently stands at 26, including corporate representatives.[15] Unsurprisingly, Eddystone wishes to depose Rios. Rios, however, cannot prepare for his deposition in several respects because Eddystone simply will not disclose critical information related to his alleged wrongdoing. In addition, Rios expects to depose Eddystone's corporate representative regarding the factual bases for its claims, but Eddystone refuses to provide facts to clarify and narrow the scope of its claims.

### C. Eddystone's Offer To Supplement Its Responses Adds Ambiguity To Vaguery.

7. When counsel for Rios confronted Eddystone about its deficient responses, Eddystone offered to supplement its responses "to state that Rios and Gamboa directed the fraudulent transfer of assets from BTS to other Ferrellgas entities and benefitted from that transfer as substantial

---

[14] Pl. Eddystone Rail Co., LLC's Resp. and Objs. to Defs. Rios and Gamboa's Second Set of Interrogs., dated August 10, 2018, attached hereto as Exhibit 2.

[15] Email from Jeffrey Theodore, dated September 13, 2018, attached hereto as Exhibit 3; Email from Jon Kelley, dated September 13, 2018, attached hereto as Exhibit 3; Email from Ali Olszeski, dated September 13, 2018, attached hereto as Exhibit 3.

shareholders in Ferrellgas and because their compensation as tied to Ferrellgas's performance, which was improved by making BTS's assets unavailable to satisfy its obligations under the RSA."[16]

8.     None of this information is new. Rios already knows that Eddystone alleges fraudulent transfers. What Rios does not know is *what* was allegedly transferred, *where* the alleged transfers went, the *value* of the assets allegedly transferred, or the *benefit* he allegedly received. Rios also knows that he is alleged to have benefitted from the unspecified transfers, but it is impossible to discern what that benefit was, particularly because Rios never received a penny of incentive compensation – which Eddystone knows because it has Rios's financial records. That is why Rios served his interrogatories. But Eddystone refuses to provide the most basic information related to its claims and allegations, information which would clarify and narrow the actual issues to be tried.

### III.    APPLICABLE LEGAL STANDARD

Rule 33 of the Federal Rules of Civil Procedures governs interrogatories. A so-called "contention interrogatory" is "not objectionable merely because it . . . relates to fact…but the court may order that the interrogatory need not be answered until designated discovery is complete." Fed. R. Civ. P. 33(a)(2).

### IV.    ARGUMENTS AND AUTHORITIES

The Court should compel Eddystone to provide complete answers to Rios's interrogatories for at least three reasons. *First*, Eddystone cannot hide factual information simply because it is sought in a "contention interrogatory." *Second*, Rios's interrogatories will narrow the issues to be tried. And *third*, as a practical matter, Eddystone cannot hide critical factual information until the end of discovery because it must disclose that information no later than in a deposition of its corporate representative.

---

[16] Email from Jeffrey Theodore to Gregory Brassfield, dated September 4, 2018, attached hereto as Exhibit 4.

## A. Eddystone Cannot Hide Factual Information Simply Because It Is Sought In A "Contention Interrogatory."

Eddystone should be compelled to produce factual information related to its claims and allegations because it has, and has had for many months, every piece of information it needs to answer Rios's interrogatories. Pretending Eddystone cannot respond to Rios's narrowly-tailored interrogatories 18 months into this case is like "pretending businesses still communicate by smoke signals" given "the capabilities which ESI allows the parties to search for and produce factual information." *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 229 (E.D. Pa. 2014). In *In re Domestic Drywall*, the defendants filed a motion to compel responses to their interrogatories which sought the factual basis for the plaintiffs' contention regarding the alleged cause of action. *Id.* There, as here, the parties had already produced voluminous information when the defendants served their interrogatories seeking more specific facts supporting the alleged cause of action. *Id.* Like Eddystone, the plaintiffs refused to answer, objecting that the interrogatories were "premature at this early stage of the litigation." *Id.* Overruling the plaintiffs' objections, the district court concluded that "[b]ecause [d]efendants . . . largely completed their document production and [p]laintiffs have shown...that they have acquired detailed knowledge of some of the documents produced" the interrogatory was "not premature, given the abilities of an ESI base and search program for finding documents." *Id.* at 230–31. The *In re Domestic Drywall* court then ordered the plaintiffs to "provide the facts currently available, from the information that has already been exchanged and from their own investigation" in a pretrial statement "***prior to depositions***." *Id.* (emphasis added).

*In re Domestic Drywall* is distinguishable from this case in only one respect. There, when the defendants filed their motion to compel, the plaintiffs had not yet had time to evaluate the voluminous documentation that was produced. Here, Eddystone has had millions of pages of ESI for many, many months, including Rios's personal financial statements. Moreover, like the plaintiffs in *In re Domestic Drywall Antitrust Litig.*, Eddystone has already demonstrated a detailed knowledge of the documents

exchanged in this case. Among other things, Eddystone sent Rios and other defendants a list entitled "Examples of Fraudulent Transfers to Newly Added Defendants." That list gave one specific example of an alleged transfer for 13 different defendants, including the alleged value of each asset. Eddystone acknowledged it gleaned the information "based on the current state of our review of the information available to us."[17]

Even if Eddystone has not yet identified the factual bases for its claims and allegations (which it clearly has), it would not matter because the answers – if they even exist – are in the ESI Eddystone already has. This case, like *In re Domestic Drywall* is grounded in an ESI production that is already complete, and which Eddystone has been mining for many, many months. Eddystone cannot punt its obligations to disclose information it has, or which is readily available to it. And requiring Rios to wait to discover that information would be, as the *In re Domestic Drywall* court observed, to ignore "the capabilities which ESI allows the parties to search for and produce factual information." *See id.* at 229. Accordingly, the Court should overrule Eddystone's objections and compel Eddystone to provide complete responses before depositions start.

### B. Rios's Interrogatories Will Clarify The Issues To Be Tried.

The purpose of a contention interrogatory is to "narrow the issues at trial and provide fair notice to [defendants] of what issues will be relevant at trial." *Am. Civil Liberties Union v. Gonzales*, 237 F.R.D. 120, 124 (E.D. Pa. 2006). This case is primarily about an alleged fraudulent transfer and the tortured way Eddystone attempts to attribute liability for the transfer to approximately 20 different parties, including Rios. For 18 months it has been impossible for Rios to ascertain what was transferred, what role he is supposed to have played in each transfer, and the benefit he allegedly received from each transfer.

---

[17] Email from Jeffrey Theodore, dated July 25, 2018, attached hereto as Exhibit 5.

At every stage of this case, Eddystone has deliberately kept its allegations broad and vague. For example, Eddystone alleges that many defendants, supposedly including Rios, did not personally maintain separate accounts from BTS.[18] That's nonsense and Eddystone knows it. For months Eddystone has had Rios's personal financial statements, which clearly demonstrate that there is no overlap between BTS's and Rios's personal financial records. It is also nonsense that BTS provided its transloading capacity to Rios, individually.[19] The root of Eddystone's many nonsensical accusations is its decision to lump Rios into allegations with other defendants where it makes no sense to do so. The tactic is clear: Eddystone is attempting to bootstrap Rios, individually, based on allegations against other defendants while it attempts to discover a good-faith basis for keeping him in this suit. That's not how the law works.

Where parties like Eddystone refuse to disambiguate their claims, contention interrogatories are particularly appropriate. For example, in *Bove v. Worlco Data Sys., Inc.*, a case involving RICO claims against twelve defendants, the court ordered the plaintiff to set forth the factual basis for its claims, even though the "contention" interrogatories were served only three months after the action was filed. CIV.A. 86-1419, 1986 WL 11258, at *2 (E.D. Pa. Oct. 8, 1986).

It is true that there is no shortage of cases in this district allowing plaintiffs to delay responding to contention interrogatories. *See, e.g., Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 97, n.3 (E.D. Pa. 1992) ("Because the contention interrogatories are premature, at the completion of a substantial amount of discovery in this case, a motion to compel may become timely."). In each of those cases, however, the interrogatories were served early in the litigation and before substantial discovery was completed. That is not this case, here. This case has been stewing for 18 months. Millions of pages of documents have been exchanged and the period for document discovery is over. Substantial written

---

[18] Pl.'s First Am. Compl. ¶ 80.
[19] Pl.'s First Am. Compl. ¶ 79.

**DEFENDANT JULIO RIOS'S MOTION TO COMPEL**  8

discovery has been completed and motions to compel have been filed and granted – including granting Eddystone extraordinary discovery of Rios's personal financial records. Depositions will begin soon, followed by expert disclosures. Eddystone's desire to hide discoverable information does not outweigh Rios's need to clarify and narrow issues that Eddystone has deliberately kept vague for 18 months. "[I]n light of the history and nature of this litigation, . . . [Rios's] interrogatories [are] neither early nor knee-jerk." *See Bove*, 1986 WL 11258, at *2. Accordingly, Eddystone's objections should be overruled and it should be compelled to provide complete responses before depositions start.

### C. As A Practical Matter, Eddystone Cannot Hide Critical Factual Information Until The End Of Discovery Because It Must Disclose That Information No Later Than In A Deposition Of Its Corporate Representative.

Eddystone's objections that it will not provide the requested information until the end of discovery also ignore the mechanics of litigation. Depositions will begin soon. Rios will ask Eddystone's corporate representative to provide each and every fact supporting each and every one of Eddystone's allegations. Eddystone will be required to educate its corporate representatives regarding each of the topics in Rios's interrogatories. *See Clientron Corp. v. Devon IT, Inc.*, 310 F.R.D. 262, 267 (E.D. Pa. 2015) ("Where a corporate defendant cannot produce a knowledgeable current employee, it 'is obligated to prepare one or more witnesses so that they may give complete, knowledgeable and binding answers on behalf of the corporation.'"). Thus, contrary to Eddystone's argument that it need not provide responses until after fact discovery is over, it will be required to educate a corporate representative regarding the company's position and provide those positions in a deposition. Accordingly, Eddystone's objections should be overruled and it should be compelled to provide complete responses before depositions start.

## V.   CONCLUSION

This case is 18 months old and substantial discovery is complete. In these circumstances, the law does not permit Eddystone to continue to hide the facts supporting its allegations against Rios.

To do so would be to ignore Eddystone's ability to search for responses in ESI using sophisticated platforms, ignore that parties are entitled to use contention interrogatories to clarify and narrow issues that will be tried, and ignore the mechanics of discovery in litigation. No case law in this or any other jurisdiction supports such an approach to litigation, particularly one that would create such asymmetry in information between the parties.

Therefore, Rios respectfully requests that the Court grant this Motion; overrule all of Eddystone's objections to Interrogatory Nos. 3, 4, and 6; order Eddystone to provide complete responses to Interrogatory Nos. 3, 4, and 6 within seven days of this order; and grant Rios all other relief to which he is entitled.

DATE: September 25, 2018

Respectfully submitted,

/s/ Jeremy A. Fielding
Jeremy A. Fielding
*Admitted pro hac vice*
jfielding@lynnllp.com
Kent D. Krabill
*Admitted pro hac vice*
kkrabill@lynnllp.com
Jonathan D. Kelley
*Admitted pro hac vice*
jkelley@lynnllp.com
Christian A. Orozco
*Admitted pro hac vice*
corozco@lynnllp.com
LYNN PINKER COX & HURST, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Julie Negovan, Esquire (1651)
1622 Spruce Street
Philadelphia, PA 19103
jn@sprucelaw.com
(267) 546-0623

*Attorneys for Defendants Julio Rios and Jeremy Gamboa*

## CERTIFICATE OF SERVICE

I, Julie Negovan, hereby certify that I filed and served the foregoing filing to all counsel of record via the Court's ECF system on this date.

Dated: September 25, 2018        /s/    *Julie Negovan*
                                      Julie Negovan