IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> BRIDGER LOGISTICS, LLC, JULIO RIOS, ) <br> JEREMY GAMBOA, FERRELLGAS ) <br> PARTNERS, L.P., and FERRELLGAS, L.P., ) <br><br> Defendants. ) | Civil Action No. 2:17-cv-00495-RK |

## AFFIDAVIT OF GREGORY A. BRASSFIELD

STATE OF TEXAS      §
                       §
COUNTY OF DALLAS   §

      BEFORE ME, the undersigned authority, personally appeared Gregory A. Brassfield, an individual personally known to me, who after being by me duly sworn, testified upon his oath as follows:

      1.    "My name is Gregory A. Brassfield. I am over the age of 21, have never been convicted of a felony or crime of moral turpitude, and am in all ways capable of making this affidavit. The facts stated within this affidavit are true and correct, and are within my personal knowledge.

      2.    I am an attorney licensed to practice law in the State of Texas. I am an associate at LYNN PINKER COX & HURST, LLP ("LPCH"). I am counsel in this case for Defendants, Julio Rios and Jeremy Gamboa ("Rios" and "Gamboa").

3.      Attached hereto as Exhibit "1" and incorporated herein is a true and correct copy of the Def. Julio Rios's Second Set of Interrogs. to Pl. Eddystone Rail Co., LLC, served July 11, 2018.

4.      Attached hereto as Exhibit "2" and incorporated herein is a true and correct copy of the Pl. Eddystone Rail Co., LLC's Resp. and Objs. to Defs. Rios and Gamboa's Second Set of Interrogs., dated August 10, 2018.

5.      Attached hereto as Exhibit "3" and incorporated herein are true and correct copies of the Email from Jeffrey Theodore, dated September 13, 2018; Email from Jon Kelley, dated September 13, 2018; and Email from Ali Olszeski, dated September 13, 2018.

6.      Attached hereto as Exhibit "4" email from Jeffrey Theodore to Gregory Brassfield, dated September 4, 2018.

7.      Attached hereto as Exhibit "5" Email from Jeffrey Theodore, dated July 25, 2018.

Gregory A. Brassfield

SWORN TO AND SUBSCRIBED BEFORE ME this 24th day of September 2018, by Greg Brassfield, who is personally known to me.



Evelina Johnson

Notary Public, in and for the State of Texas

# Exhibit  1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

| | | |
|---|---|---|
| **EDDYSTONE RAIL COMPANY, LLC;** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL NO.: 2:17-CV-495-RK** |
| **JULIO RIOS; JEREMY GAMBOA;** | § | |
| **BRIDGER LOGISTICS, LLC;** | § | |
| **FERRELLGAS PARTNERS, L.P.; AND** | § | |
| **FERRELLGAS, L.P.** | § | |
| | § | |
| **Defendants / Counterclaimants.** | § | |

**DEFENDANT JULIO RIOS'S SECOND SET OF INTERROGATORIES
TO PLAINTIFF EDDYSTONE RAIL COMPANY, LLC**

To:  Plaintiff Eddystone Rail Company, LLC, by and through its counsel of record, Filiberto Augusti, Jeffrey M. Theodore, Nicholas Petts and Timothy Work, STEPTOE & JOHNSON, LLP, 1330 Connecticut Ave. NW, Washington DC 20036.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Julio Rios serves his Second Set of Interrogatories to Plaintiff Eddystone Rail Company, LLC as follows:

## I.    INSTRUCTIONS

1. The following instructions apply to the Interrogatories and are deemed incorporated in each Interrogatory.

2. Answer the attached discovery requests separately and accurately in writing and under oath. You must deliver an original sworn and executed response to these Interrogatories to counsel for Defendant Julio Rios within 30 days after service of same at the offices of counsel for Defendant, LYNN PINKER COX & HURST, LLP, located at 2100 Ross Avenue, Suite 2700, Dallas, Texas 75201.

3. These Interrogatories are continuing. If any information or material responsive to any interrogatory comes to your attention, possession, custody, or control, or the attention, possession, custody, or control, or your agents, employees, affiliates, subsidiaries, accountants, partners, officers, directors, or attorneys subsequent to the filing of your response, you are required to furnish the additional information, answers, or material for as soon as possible.

4. The definitions listed below are to be construed as broadly as possible to include the most information or documents responsive to the Interrogatories propounded herein.

5. The terms "all" and "each" shall be construed as "all and each." In addition, the term "any" means "all and each."

6. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each of the Interrogatories all responses that might otherwise be construed to be outside of their scope.

7. The term "including" shall be construed as "including, but not limited to."

8. The use of the singular form of any word includes the plural and vice versa.

9. If you file a timely objection to any portion of an Interrogatory, definition, or instruction, provide a response to the remaining portion.

10. If you withhold production of any information responsive to the Interrogatories based upon any privilege, provide the following information for each document and each portion of any document withheld in a privilege log: (a) the type of document; (b) the general subject matter of the document and each portion withheld; (c) the date of the document; (d) the author(s) of the document and their title(s); (e) the recipient(s) of the document and their title(s); and (f) the basis for withholding such document and each

withheld portion of a document from production.

11. Except as otherwise stated herein, the relevant time period for these Interrogatories is

January 1, 2013, to the present.

## II.    DEFINITIONS

The following terms shall have the meanings indicated below and each time any such word

is used in these Interrogatories, you will be charged with knowledge of such definitions in

responding. In each case, your response should respond to all the elements or questions included

in such defined words.

1.     **"You,"** or **"your"** means Plaintiff Eddystone Rail Company, LLC, and any of its affiliates, assigns, agents, attorneys and/or representatives, and all other persons or entities who at any time act, purport to act or have acted or purported to act on behalf of and/or under the direction or control of Eddystone.

2.     The terms **"all documents"** means every **"document"** (as that term is defined herein), whether an original or copy, known to any individual or business organization to which this request is addressed, or to any officer, director, managing agent, file supervisor, or record keeper for such individual or organization, and every document which can be located or discovered by such persons through reasonably diligent efforts. The term **"all documents"** does not include multiple, identical copies.

3.     The term **"Complaint"** means the complaint filed by Eddystone Rail Company, LLC on February 2, 2017, captioned *Eddystone Rail Company, LLC v. Bridger Logistics, LLC, Julio Rios, Jeremy Gamboa, Ferrellgas Partners, L.P., and Ferrellgas, L.P.*, No. 2:17-cv-000495-RK, and any amendments or supplements thereto.

4.     The terms **"communication"** and/or **"communications"** mean any written or electronic exchange or transmission of words, ideas, data, or information to another person or persons, including, without limitation, e-mails, text messages, facsimile cover sheets, facsimile transmissions, letters, memoranda, notes, notes of personal or telephone conferences or communications, and any other document memorializing or evidencing a verbal communication, conferences, conversations, correspondence, directives, discussions, interviews, meetings, negotiations, proposals, questions, speeches, legal opinions, judicial opinions, and any other form of written or verbal exchange, however transmitted. Without limiting the foregoing, this definition specifically includes emails, text messages, facsimiles, instant messages, Facebook, Twitter, Instagram and/or other social media posts, and letters.

5.     The terms **"documents"** and **"tangible things"** mean without limitation: any and all written, typed, printed, reproduced, filmed, electronic, or recorded material, and any and all photographs, movies, videotapes, pictures, plans, drawings, or other representations of any kind,

which pertain, describe, refer, or relate to the subject matter of a particular request, including, without limitation, the following:

    a.  Abstracts, advertisements, agreements, articles, audio tapes, bids, binders, books, blueprints, cables, calendars, charts, checks, contracts, correspondence, data, databases, desk calendars, diagrams, diaries, dictation, drafts, drawings, e-mail, estimates, facsimile transmissions, file folders (electronic), files (electronic or paper), films, graphic representations, graphs, hand held computers (Blackberry, Palm Pilots, iPhones, etc.), illustrations, information, instructions, invoices, journals, learned treatises, ledgers, letters, letters of intent, lists, logs, manuals, memoranda, messages, minutes, money orders, notes, note pads, orders, organizers, pamphlets, papers, PDAs (personal desk assistants *I* personal digital assistants), photographs, pictures, PIMs (personal information managers) plans, proposals, publications (scientific and medical), quotes, receipts, recordings, releases, reports, resumes, settlement agreements, sketches, social media posts (including Facebook, Twitter, Instagram, or otherwise), specifications, statements, summaries, telegrams, telexes, transcription of notes, transcriptions of tapes or recordings, work papers, worksheets, visual tapes, and any other writings, or tangible things in which any writing, typing, printing, photostatic, or other forms of communications are recorded or reproduced, as well as all notations on the foregoing;

    b.  Any electronic compilation of words, including, but not limited to, data, files, or information, including e-mail, *.jpg, *.txt, *.tif, *.mpeg, *.wav, *.wpd, *.doc, *.xls files, which have been saved to a computer network, computer hard drive, or other medium regularly used to store such words, data, or electronic or digital information, and without regard to whether or not a copy exists in paper form;

    c.  Any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); associated meta-data; any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data);

    d.  Originals and all other copies not absolutely identical to originals;

    e.  All drafts and notes (whether typed, handwritten, or otherwise) made or prepared in connection with the document, whether used or not; and

    f.  All file folders and envelopes containing documents.

    6.     The term **"person"** means without limitation, all human beings, associations, companies, corporations, general partnerships, joint ventures, limited liability companies, limited

partnerships, limited liability partnerships, organizations, professional corporations, sole proprietorships, trusts and estates, or any other form of business entity recognized by law.

7.  **"Identify," "identification," or "identity,"** shall have the following meanings:

When used in reference to an individual shall mean to state his or her full name, present or last known home address, and present or last known business affiliation, business title, and business address.

When used in reference to an entity shall mean to state its full legal name, any assumed names, type of entity, place of domicile, principal place of business, and business address.

When used in reference to a document shall mean to state the type of document (e.g., letter, tape recording, memorandum, telegram, chart, computer input or printout, photograph, sound reproduction, etc.), its date, author(s), addressee(s), title, its present location, the name and address of its custodian, and the substance of its content. If the above information is not available, provide some other means of identifying it, its present location, and the name of each of its present custodians. If any such document was, but no longer is, in your possession or subject to your control or in existence, state whether it (1) is missing or lost, (2) has been destroyed, (3) has been transferred, voluntarily or involuntarily, to others, or (4) has been otherwise disposed of; and, in each instance, explain the circumstances surrounding an authorization for such disposition, state the date or approximate date thereof, state the name of the person who authorized the disposition, and state the names of all persons having knowledge of the disposition.

When used in reference to a communication shall mean to state the form of communication (e.g., telephone conversation, face-to-face conversation, letter, e-mail, facsimile, written memorandum, etc.), the date of the communication, its author or speaker, all persons present, participating or receiving the communication, the substance of the communication, the present location and name and address of the custodian if the communication was non-oral, and the present location, name and address of the custodian of any written memorialization of any non-oral communication.

When used in reference to a fact, event, occurrence, or thing shall mean to state, if applicable, its location, date, all persons present or participating, the substance of any communications made, the subject, purpose or nature of the fact, event, occurrence or thing, and to describe such fact, event, occurrence or thing in such detail as would provide a reasonable person unfamiliar with it a reasonable understanding of it.

8.  All other terms are to be interpreted in accordance with their normal usage.

## SECOND SET OF INTERROGATORIES

**INTERROGATORY NO. 3:** Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Two of your Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual to whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars) received by: (a) Rios and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the:

(a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

**INTERROGATORY NO. 4:** Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Three of your Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual too whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars) received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

**INTERROGATORY NO. 5:** Describe in detail the factual bases of your allegation in paragraph 27 of the Complaint that "Defendants represented that, as of December 31, 2014, BTS had total assets of $98.1 million," identifying: (1) who made the representation; and (2) to whom the representation was made. If the representation was oral, identify the date – at least the month and year – that the representation was made. If the representation was not oral, identify the document or communication in which the representation was made by stating: (1) the author of the document or communication; (2) the recipient of the document or communication; (3) the date of the document or communication; and (4) the bates label of the produced document or communication.

**INTERROGATORY NO. 6:** Describe in detail the factual bases of your allegation in paragraph 29 that "[t]he course of dealing among the Bridger entities shows that they either operated with one another without regard to corporate entities," identifying each and every practice by Rios or Gamboa that forms the basis of that allegation.

**INTERROGATORY NO. 7:** Describe in detail the factual bases of your allegation in paragraph 29 that "[t]he course of dealing among the Bridger entities shows that they either operated . . . through a series of implied contracts," identifying each and every such "implied contract" and the factual basis for your belief in the existence of such contract.

**INTERROGATORY NO. 8:** Set forth every representation made by Rios or Gamboa related to this action that you allege was false, misleading, or constitutes a misrepresentation or fraud. Include for each: (1) the person who made the misrepresentation, and (2) the person to whom the misrepresentation was made. If the representation was oral, identify the date – at least the month and year – that the representation was made. If the representation was not oral, identify the document or communication in which the representation was made by stating: (1) the author of the document or communication; (2) the recipient of the document or communication; (3) the date of the document or communication; and (4) the bates label of the produced document or communication.

**INTERROGATORY NO. 9:** Describe in detail the "implied contract" that the Complaint alleges exists between BTS and Bridger Logistics, identifying (1) the date on which the "implied contract" was entered into by BTS and Bridger Logistics; (2) the term of the "implied contract" *i.e.* its temporal duration; (3) the consideration provided by BTS as part of this "implied contract;" (4) the consideration provided by Bridger Logistics as part of this "implied contract;" (5) each of BTS' specific rights and obligations under this "implied contract"; (6) each of Bridger Logistics' specific

rights and obligations under this "implied contract;" (7) whether BTS had the right under the "implied contract" to terminate and, if so, on what terms or conditions; and (8) whether Bridger Logistics had the right under the "implied contract" to terminate and, if so, on what terms or conditions.

Dated: July 11, 2018                                  Respectfully submitted:

                                                     /s/ Jonathan D. Kelley
                                                     Jeremy A. Fielding (*pro hac vice*)
                                                     jfielding@lynnllp.com
                                                     Kent D. Krabill (*pro hac vice*)
                                                     kkrabill@lynnllp.com
                                                     Jonathan D. Kelley (*pro hac vice*)
                                                     jkelley@lynnllp.com
                                                     Christian A. Orozco (*pro hac vice*)
                                                     corozco@lynnllp.com

                                                     LYNN PINKER COX & HURST, LLP
                                                     2100 Ross Avenue, Suite 2700
                                                     Dallas, Texas 75201
                                                     Telephone: (214) 981-3800
                                                     Facsimile: (214) 981-3839

                                                     Julie Negovan, Esquire (1651)
                                                     jnegovan@griesinglaw.com
                                                     GRIESING LAW, LLC
                                                     1717 Arch Street, Suite 3630
                                                     Philadelphia, Pennsylvania 19103
                                                     **ATTORNEYS FOR DEFENDANTS**
                                                     **JULIO RIOS AND JEREMY GAMBOA**

## CERTIFICATE OF SERVICE

I, Jonathan Kelley, hereby certify that I served the foregoing Second Set of Interrogatories

for Defendant Julio Rios on all counsel of record via electronic mail on July 11, 2018as follows:

Filiberto Agusti
fagusti@steptoe.com
Jeffrey M. Theodore
jtheodore@steptoe.com
Nicholas Petts
npetts@steptoe.com
Timothy Work
twork@steptoe.com
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, DC 20036

Henry Hockeimer, Jr.
hockeimerh@ballardspahr.com
Terence Grugan
grugant@ballardspahr.com
BALLARD SPAHR LLP
1735 Market St. 51st Floor
Philadelphia, PA 19103
*Attorneys for Plaintiff Eddystone Rail Company, LLC*

Lawrence Scarborough
lgscarborough@bcplaw.com
Brian C. Walsh
brian.walsh@bclplaw.com
Sarah Hartley
Sarah.hartley@bclplaw.com
Alicia Ragsdale Olszeski
ali.olszeski@bclplaw.com
Jacob A. Kramer
jake.kramer@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
*Attorneys for Defendants Bridger Logistics, LLC; Ferrellgas
Partners, L.P.; and Ferrellgas L.P.*

/s/ *Jonathan D. Kelley*
Jonathan D. Kelley

| From: | Susan Wiebel |
|---|---|
| To: | "Davis, Tim"; "Theodore, Jeffrey"; "Petts, Nick"; "ASloniewsky@steptoe.com"; "Filiberto Agusti"; "hockeimerh@ballardspahr.com"; "grugant@ballardspahr.com" |
| Cc: | "Kramer, Jake"; "Hartley, Sarah"; Ewelina Johnson; "Kirkeby, Lisa"; Kent Krabill; Jeremy Fielding; "Witsch, Michael"; "Scheff, Richard"; "Ragsdale Olszeski, Ali"; "Scarborough, Lawrence"; "Walsh, Brian"; Christian Orozco; Greg Brassfield; Natalie Stallbohm |
| Subject: | Eddystone Rail Company, LLC v. Julio Rios, et al. |
| Date: | Wednesday, July 11, 2018 4:06:20 PM |
| Attachments: | Second Set of Interrogatories (Eddystone).pdf |

Counsel:

Attached is a copy of Defendant Julio Rios's Second Set of Interrogatories to Plaintiff Eddystone Rail Company, LLC.

**Susan Wiebel | Assistant to**

**A. Shonn Brown, Jonathan D. Kelley, and Michael T.E. Kalis**

**LynnPinkerCoxHurst**

**Direct   214 292 3638**

**Fax       214 981 3839**

swiebel@lynnllp.com

2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
www.lynnllp.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Lynn Pinker Cox & Hurst, LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments. Please consider the environment before printing this message.

# Exhibit  2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDDYSTONE RAIL COMPANY, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | **Civil Action No.  17-CV-00495** |
| | ) | |
| **BRIDGER LOGISTICS, LLC, JULIO RIOS,** | ) | |
| **JEREMY GAMBOA, FERRELLGAS** | ) | |
| **PARTNERS, L.P., FERRELLGAS, L.P.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFF EDDYSTONE RAIL COMPANY, LLC'S RESPONSES AND OBJECTIONS TO DEFENDANTS RIOS AND GAMBOA'S SECOND SET OF INTERROGATORIES

Plaintiff Eddystone Rail Company, LLC ("Eddystone") pursuant to Federal Rule of Civil Procedure 33, hereby submits its Responses and Objections to the Second Set of Interrogatories of Defendants Julio Rios and Jeremy Gamboa in the above-captioned action ("this Litigation").

Eddystone has not yet completed its investigation of the facts in this Litigation, its search for relevant documents, or its preparation for trial.  These responses and objections to the Interrogatories are based on information now known to Eddystone, following a reasonable preliminary investigation.  Eddystone reserves the right to amend, modify, or supplement its responses as it learns of new information.

## GENERAL OBJECTIONS
## AND OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Eddystone objects to the Interrogatories insofar as they seek to impose on Eddystone obligations that exceed or contradict those imposed by the Federal Rules of Civil Procedure, and/or the Local Rules of the Eastern District of Pennsylvania.  Eddystone will respond in accordance with the applicable rules.

1

2.      Eddystone objects to the Definition of "Identify" insofar as it requires Eddystone to specify facts that are either already in the possession of Rios and Gamboa, or not relevant to the claims and defenses in this Litigation.

3.      Eddystone objects to the Definition of "You" insofar as it includes both Eddystone and "any of its affiliates." Eddystone's affiliates include a large multinational corporation, Enbridge, Inc., which has many business units other than the transloading facility in Eddystone, Pennsylvania. To the extent an Interrogatory seeks information about an Enbridge entity, employee, or agent unrelated to the events underlying this litigation, Eddystone objects to the request as irrelevant and disproportionate.

4.      Eddystone objects that the Instructions, including Instruction 10, require Eddystone to state objections in a manner different from what is required in Rule 33. Eddystone will state its objections as required by Rule 33.

5.      Eddystone objects to Rios and Gamboa's purporting to characterize these interrogatories as served on behalf of Rios alone. By their express terms, the interrogatories seek information on behalf of both Rios and Gamboa. Eddystone will treat these interrogatories as having been served on behalf of both Rios and Gamboa, including for purposes of the limits on interrogatories under the Rules of Civil Procedure.

## SPECIFIC RESPONSES AND OBJECTIONS

**INTERROGATORY NO. 3:** Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Two of your Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual to whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars)

2

received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

**RESPONSE 3:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the information requested is within Defendants' knowledge. Eddystone further objects that this Interrogatory is premature, because Eddystone's investigation of the facts is ongoing. Identification of each transfer at issue will be detailed in an expert report. Accordingly, Eddystone will update and supplement its response at the end of expert discovery, in accordance with Rule 33(a)(2).

**INTERROGATORY NO. 4:** Describe in detail the factual basis for your contentions regarding Rios and Gamboa in connection with Count Three of your Complaint, identifying for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual too whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars) received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer.

**RESPONSE 4:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the information requested is within Defendants' knowledge. Eddystone further objects that this Interrogatory is premature, because Eddystone's investigation of the facts is ongoing. Identification of each transfer at issue will be detailed in an expert report. Accordingly,

3

Eddystone will update and supplement its response at the end of expert discovery, in accordance with Rule 33(a)(2).

**INTERROGATORY NO. 5:** Describe in detail the factual bases of your allegation in paragraph 27 of the Complaint that "Defendants represented that, as of December 31, 2014, BTS had total assets of $98.1 million," identifying: (1) who made the representation; and (2) to whom the representation was made. If the representation was oral, identify the date – at least the month and year – that the representation was made. If the representation was not oral, identify the document or communication in which the representation was made by stating: (1) the author of the document or communication; (2) the recipient of the document or communication; (3) the date of the document or communication; and (4) the bates label of the produced document or communication.

**RESPONSE 5:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.

Subject to and without waiving any of its objections, Eddystone states that on April 24, 2015, Bridger, LLC's Director, Market Risk & Credit, Clark Worthley, emailed audited financial statements for 2014 for Bridger, LLC and its subsidiaries to Jeff Simon, an employee of Enbridge, Inc., which owned 75% of Eddystone. Eddystone produced the relevant documents with Bates Numbers ERCEDPA00176401-00176426. The representation concerning BTS's total assets was made on the document Bates Numbered ERCEDPA00176423.

**INTERROGATORY NO. 6:** Describe in detail the factual bases of your allegation in paragraph 29 that "[t]he course of dealing among the Bridger entities shows that they either operated with one another without regard to corporate entities," identifying each and every practice by Rios or Gamboa that forms the basis of that allegation.

**RESPONSE 6:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the Interrogatory is overly burdensome insofar as it asks Eddystone to describe in detail each and every practice by Rios and Gamboa over a three-year period that forms the basis of its allegation in paragraph 29, particularly given that those practices are best known to Rios and Gamboa. Eddystone further objects that the Interrogatory is premature, because Eddystone's investigation of the facts is ongoing.

Subject to and without waiving any of its objections, Eddystone states that, among other things, Rios and Gamboa caused the Bridger entities to enter into business arrangements with one another without written contracts, to incur debts to one another, and to forgive those debts for no consideration whenever convenient for the Bridger entities' owners and in the operation of their business treated their entities as an undifferentiated whole. Eddystone will update and supplement its response at the end of fact discovery, in accordance with Rule 33(a)(2).

**INTERROGATORY NO. 7:** Describe in detail the factual bases of your allegation in paragraph 29 that "[t]he course of dealing among the Bridger entities shows that they either operated . . . through a series of implied contracts," identifying each and every such "implied contract" and the factual basis for your belief in the existence of such contract.

**RESPONSE 7:** Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein. In addition to those objections, Eddystone objects that the Interrogatory misstates Eddystone's allegation in paragraph 29. Eddystone has alleged that, since the Bridger entities entered into business arrangements with one another without express contracts, that there were implied contracts governing the terms of those arrangements, including for the use of BTS's transloading, loading, pipeline, and injection capacity to supply

5

Monroe, and that if no implied contracts existed the entities were alter egos of one another.

Eddystone further objects that the Interrogatory is premature, because Eddystone's investigation

of the facts is ongoing.  Eddystone will update and supplement its response at the end of fact

discovery, in accordance with Rule 33(a)(2).

**INTERROGATORY NO. 8:** Set forth every representation made by Rios or Gamboa related to

this action that you allege was false, misleading, or constitutes a misrepresentation or fraud.

Include for each: (1) the person who made the misrepresentation, and (2) the person to whom the

misrepresentation was made. If the representation was oral, identify the date – at least the month

and year – that the representation was made.  If the representation was not oral, identify the

document or communication in which the representation was made by stating: (1) the author of

the document or communication; (2) the recipient of the document or communication; (3) the

date of the document or communication; and (4) the bates label of the produced document or

communication.

**RESPONSE 8:**  Eddystone incorporates its General Objections and Objections to Definitions

and Instructions as if fully set forth herein.  In addition to those objections, Eddystone objects

that the Interrogatory is overly burdensome insofar as it asks Eddystone to identify each and

every false or misleading statement made by Rios or Gamboa over more than three years.

Eddystone's investigation of the facts is ongoing and it does not know every statement Rios or

Gamboa made that was false.  This information is best known to Rios and Gamboa.  Eddystone

further objects to the Interrogatory as requiring an unnecessary effort, because Eddystone has

not, as yet, alleged fraudulent misrepresentation as a cause of action.  There is no need for

Eddystone to compile every false statement that Rios and Gamboa have made into an

interrogatory response, and doing so would be grossly overburdensome.  Eddystone will not respond to this Interrogatory.

**INTERROGATORY NO. 9:** Describe in detail the "implied contract" that the Complaint alleges exists between BTS and Bridger Logistics, identifying (1) the date on which the "implied contract" was entered into by BTS and Bridger Logistics; (2) the term of the "implied contract" *i.e.* its temporal duration; (3) the consideration provided by BTS as part of this "implied contract;" (4) the consideration provided by Bridger Logistics as part of this "implied contract;" (5) each of BTS' specific rights and obligations under this "implied contract"; (6) each of Bridger Logistics' specific rights and obligations under this "implied contract"; (7) whether BTS had the right under the "implied contract" to terminate and, if so, on what terms or conditions; and (8) whether Bridger Logistics had the right under the "implied contract" to terminate and, if so, on what terms or conditions.

**RESPONSE 9:**  Eddystone incorporates its General Objections and Objections to Definitions and Instructions as if fully set forth herein.  In addition, Eddystone objects that this interrogatory mischaracterizes the allegations of the Complaint because the contention of an implied contract between BTS and Bridger Logistics is one Eddystone pled in the alternative.  Eddystone further objects that the Interrogatory is premature, because Eddystone's investigation of the facts is ongoing.

Subject to and without waiving any of its objections, Eddystone states that the term of the implied contract between BTS and Bridger Logistics was five years and two months.  The implied contract required BTS to make available to Bridger Logistics the throughput capacity that BTS secured at Eddystone, Pennsylvania and at Berthold, Van Hook, and New Town, North Dakota.  In exchange, Bridger Logistics promised to pay an amount sufficient for BTS to cover

7

its payment obligations under its throughput contracts and earn a profit. The remaining contract terms will be detailed in an expert report. Accordingly, Eddystone will update and supplement its response at the end of expert discovery, in accordance with Rule 33(a)(2).

Dated: August 10, 2018                          Respectfully submitted,


                                                /s/ Nicholas Petts
                                                Henry E. Hockeimer, Jr. (I.D. No. 86768)
                                                Terence M. Grugan (I.D. No. 307211)
                                                BALLARD SPAHR LLP
                                                1735 Market Street, 51st Floor
                                                Philadelphia, PA 19103-7599
                                                Telephone: (215) 665-8500
                                                Facsimile: (215) 864-8999
                                                hockeimerh@ballardspahr.com
                                                grugant@ballardspahr.com

                                                Filiberto Agusti (*pro hac vice*)
                                                Jeffrey M. Theodore (*pro hac vice*)
                                                Andrew J. Sloniewsky (*pro hac vice*)
                                                Nicholas Petts (*pro hac vice*)
                                                STEPTOE & JOHNSON LLP
                                                1330 Connecticut Avenue, NW
                                                Washington, DC 20036
                                                Telephone: (202) 429-3000
                                                Facsimile: (202) 429-3902
                                                fagusti@steptoe.com
                                                jtheodore@steptoe.com
                                                asloniewsky@steptoe.com
                                                npetts@steptoe.com

                                                *Counsel for Eddystone Rail Company, LLC*

8

| | |
|---|---|
| **From:** | Petts, Nick <npetts@Steptoe.com> |
| **Sent:** | Friday, August 10, 2018 4:23 PM |
| **To:** | Scarborough, Lawrence; Walsh, Brian; Kramer, Jake; tim.davis@bclplaw.com; Hartley, Sarah; Ragsdale Olszeski, Ali; Kirkeby, Lisa; Jeremy Fielding; Jon Kelley; Witsch, Michael (MWitsch@mmwr.com); Scheff, Richard (rscheff@mmwr.com); Ewelina Johnson; Christian Orozco |
| **Cc:** | hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Theodore, Jeffrey; Sloniewsky, Andrew |
| **Subject:** | Eddystone Rail Company, LLC v. Bridger Logistics, LLC et al. |
| **Attachments:** | ERC Resp. to RG 2d Rogs.pdf |

Counsel,

Attached please find Eddystone's Responses and Objections to Defendants Rios and Gamboa's Set of Interrogatories.

Regards,
Nick

**Nicholas Petts**
Associate
npetts@steptoe.com

# Steptoe

+1 202 423 6488 direct       Steptoe & Johnson LLP
+1 212 961 6117 mobile       1330 Connecticut Avenue, NW
                             Washington, DC 20036
                             www.steptoe.com

# Exhibit  3

| From: | Theodore, Jeffrey <jtheodore@steptoe.com> |
|---|---|
| Sent: | Thursday, September 13, 2018 5:26 PM |
| To: | Ragsdale Olszeski, Ali; Jon Kelley; Julie Negovan; Sloniewsky, Andrew; |
| | hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Petts, Nick; Arad-Neeman, Daniele; pbogdasarian@stradley.com; Scarborough, Lawrence; Landon, Jana (JLandon@STRADLEY.COM); Kent Krabill; Adrian Garcia; Ewelina Johnson; Christian Orozco; Greg Brassfield |
| Cc: | 'rscheff@mmwr.com'; 'mwitsch@mmwr.com'; Eddystone Team |
| Subject: | RE: Eddystone v. Ferrellgas, et al.; BL/FG Defendants' Preliminary Deponent List |

Ali,

Rule 30 limits each side of the "v" to ten depositions: "10 depositions . . . by the plaintiffs, or by the defendants, or by the third-party defendants." See F.R.C.P. 30(a)(1)(A)(i). Rios and Gamboa's list contains ten names, all of whom appear on Ferrellgas's list, but Ferrellgas has an additional six for a total of sixteen. Can you coordinate with Rios and Gamboa's counsel and send us a list of the ten deponents whose depositions Defendants plan to take?

In the interest of efficiency and expedition, we will begin looking into availability for all of your names so that we will have made progress in the interim (as we understand you will be doing for the witnesses we have identified), but we do not agree that Defendants may take sixteen depositions.

Jeff

---

**From:** Ragsdale Olszeski, Ali [mailto:ali.olszeski@bclplaw.com]
**Sent:** Thursday, September 13, 2018 2:01 PM Jeremy Fielding <jfielding@lynnllp.com>
**To:** Jeremy Fielding; Jon Kelley; Theodore, Jeffrey; Julie Negovan; Sloniewsky, Andrew; hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Petts, Nick; Arad-Neeman, Daniele; pbogdasarian@stradley.com; Scarborough, Lawrence; Landon, Jana (JLandon@STRADLEY.COM); Kent Krabill; Adrian Garcia; Ewelina Johnson; Christian Orozco; Greg Brassfield
**Cc:** 'rscheff@mmwr.com'; 'mwitsch@mmwr.com'; Eddystone Team
**Subject:** Eddystone v. Ferrellgas, et al.; BL/FG Defendants' Preliminary Deponent List

Counsel:

We plan to take the following fact witness depositions:

1. Bryan Boaz
2. Keith Chesnutt

3. Steve Elliott
4. W. Russel Frank, Jr
5. Tom Fridel
6. Jack Galloway
7. Erik Johnson
8. Vince Paradis
9. Steve Turnbull
10. Kelly S. Wilkins
11. Stephen J. Wuori
12. ERC Corporate Representative(s) – 30(b)(6)
13. John Dudley (Tankerisk)
14. Graeme Burnett (Delta)
15. John Hunter (Delta)
16. Jeff Warmann (Monroe)

In addition, we reserve the right to depose any witness included by any of the parties in a Rule 26 disclosure or on the lists exchanged today. We also reserve the right to make changes to this list as events/strategy/discovery develop.

Thanks,

Ali



**ALI RAGSDALE OLSZESKI**
Associate
ali.olszeski@bclplaw.com
T: +1 314 259 2497  F: +1 314 552 8497

BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO
63102-2750
**bclplaw.com**

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

| From: | Jon Kelley |
| --- | --- |
| To: | Theodore, Jeffrey; "Julie Negovan"; Sloniewsky, Andrew; "Kramer, Jake"; "rscheff@rnmwr.com"; "mwitsch@rnmwr.com"; "Eddystone Team"; "Hartley, Sarah"; "hockeimerh@ballardspahr.com"; "grugant@ballardspahr.com"; Agusti, Fil; Petts, Nick; Arad-Neeman, Daniele; "pboodasarian@stradley.com"; Scarborough, Lawrence; "Landon, Jana (JLandon@STRADLEY.COM)" |
| Cc: | Jeremy Fielding; Kent Krabill; Adrian Garcia; Ewelina Johnson; Christian Orozco; Greg Brassfield |
| Subject: | Eddystone v. Ferrellgas et al.; Rios and Gamboa Deponent List |
| Date: | Thursday, September 13, 2018 3:55:53 PM |

All,

Below please find Rios and Gamboa's preliminary list of deponents:

<u>Enbridge:</u>

1. Kelly Wilkins

2. Plaintiff Corporate Representative(s) – 30(b)(6)

3. Keith Chesnutt

4. Steve Turnbull

5. Vince Paradis

6. Bryan Boaz

7. Tom Fridel

<u>Canopy:</u>

8. Erik Johnson

<u>Delta / Monroe:</u>

9. Graeme Burnett (Delta)

10. Jeff Warmann (Monroe)

Given that discovery is ongoing, additional deponents will likely be added as we learn more. Further, and for the avoidance of doubt, Rios and Gamboa expressly

reserve the right to depose any individual listed on a party's Rule 26 disclosure, or on a deponent list submitted by Eddystone.

Thanks,

Jon

**JON KELLEY**, Attorney

**Lynn Pinker Cox & Hurst**

2100 Ross Avenue, Suite 2700

Dallas, Texas 75201

lynnllp.com

Direct    214 981 3823

jkelley@lynnllp.com

*Benchmark Litigation - Top 10 Litigation Boutiques in America - 2017*

# Exhibit 4

**From:** Theodore, Jeffrey <jtheodore@steptoe.com>
**Sent:** Tuesday, September 04, 2018 4:26 PM
**To:** Greg Brassfield; Sloniewsky, Andrew
**Cc:** Jon Kelley; Kent Krabill; Jeremy Fielding; Christian Orozco; Ewelina Johnson
**Subject:** RE: Eddystone v. FGP et. al.

Greg,

The case you cite is completely inapposite – among other things, it involves contention interrogatories well after the deposition stage. Nonetheless, in the interest of avoiding an unnecessary discovery dispute, we are prepared to update our interrogatory responses to state that Rios and Gamboa directed the fraudulent transfer of assets from BTS to other Ferrellgas entities and benefitted from that transfer as substantial shareholders in Ferrellgas and because their compensation was tied to Ferrellgas's performance, which was improved by making BTS's assets unavailable to satisfy its obligations under the RSA. Of course, we would reserve the right to supplement further given the ongoing status of discovery. Please let us know whether that would resolve your concerns.

In addition, could you provide us with a full list of the interrogatories served by Rios and Gamboa and an identification of which you claim to have be Rios's and which you claim to be Gamboa's? We do not agree that Rios and Gamboa are each permitted to serve 25 interrogatories in this matter, particularly given the overlapping content of the interrogatories served so far, but would like to ensure that we are clear on your characterization of the interrogatories so that we can address the issue further.

Thanks,

Jeff

---

**From:** Greg Brassfield [mailto:gbrassfield@lynnllp.com]
**Sent:** Friday, August 31, 2018 8:36 AM
**To:** Theodore, Jeffrey; Sloniewsky, Andrew
**Cc:** Jon Kelley; Kent Krabill; Jeremy Fielding; Christian Orozco; Ewelina Johnson
**Subject:** RE: Eddystone v. FGP et. al.

I'm told that Monday is a holiday in some offices. Please let us know by Tuesday. Thanks.

**GREG BRASSFIELD | Attorney**
Lynn**Pinker**Cox**Hurst**
Direct    214 981 3827
Fax       214 981 3839
gbrassfield@lynnllp.com

**From:** Greg Brassfield
**Sent:** Friday, August 31, 2018 10:34 AM
**To:** 'Theodore, Jeffrey' <jtheodore@steptoe.com>; 'Sloniewsky, Andrew' <ASloniewsky@steptoe.com>
**Cc:** Jon Kelley <jkelley@lynnllp.com>; Kent Krabill <kkrabill@lynnllp.com>; Jeremy Fielding <jfielding@lynnllp.com>;

Christian Orozco <corozco@lynnllp.com>; Ewelina Johnson <ejohnson@lynnllp.com>
**Subject:** RE: Eddystone v. FGP et. al.

Jeff and Andrew:

Please let us know by Monday if you intend to stand on your objections to the discovery discussed on our meet and confer regarding Rios's Second Set of Interrogatories.

Best,

**GREG BRASSFIELD | Attorney**
**LynnPinkerCoxHurst**
Direct    214 981 3827
Fax       214 981 3839
gbrassfield@lynnllp.com

**From:** Greg Brassfield
**Sent:** Wednesday, August 29, 2018 9:32 AM
**To:** Theodore, Jeffrey <jtheodore@steptoe.com>; Sloniewsky, Andrew <ASloniewsky@steptoe.com>
**Cc:** Jon Kelley <jkelley@lynnllp.com>; Kent Krabill <kkrabill@lynnllp.com>; Jeremy Fielding <jfielding@lynnllp.com>;
Christian Orozco <corozco@lynnllp.com>; Ewelina Johnson <ejohnson@lynnllp.com>
**Subject:** Eddystone v. FGP et. al.

Jeff and Andrew:

Thanks for your time on our call the other day. I told you that I would send you some case law supporting our position that contention interrogatories are proper once the case is well under way and substantial discovery has been conducted. For your consideration I have attached *American Civil Liberties Union v. Gonzales*, 237 F.R.D. 120, 123 (E.D. Pa. 2006). In that case, one of the arguments the party opposing contention interrogatories made was that the interrogatories required them to "make determinations which [it had] not yet made." The court found that argument unpersuasive, observing that "substantial discovery" had already been conducted and that the case was "very mature." According to the Court, therefore, the time was "ripe for the parties to solidify their contentions." The relevant discussion starts on page 4 of the attached document.

There are several similar cases in this jurisdiction discussing the appropriateness of contention interrogatories in litigation at similar stages, which we will fully brief if required to do so. In the spirit of cooperation, however, we wanted to take you up on your offer to present authority and allow you an opportunity to reconsider your responses. As we discussed, at minimum we believe that Eddystone should respond to the extent that it can, recognizing that it has the right to amend its responses if further discovery yields additional information. For example, if Eddystone cannot identify the benefit that Julio Rios or Jeremy Gamboa received from the alleged abrogation of the implied contract outlined in the Complaint, it should just say so. If it can, Eddystone should respond so that we can take appropriate steps (e.g., propounding further discovery or commissioning experts) to address the core allegations in the Complaint (or the First Amended Complaint, if allowed).

We look forward to your response.

Best regards,

**GREG BRASSFIELD | Attorney**
**LynnPinkerCoxHurst**
Direct    214 981 3827
Fax       214 981 3839
gbrassfield@lynnllp.com

2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
**lynnllp.com**

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Lynn Pinker Cox & Hurst, LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail, and destroy this communication and all copies thereof, including all attachments.

# Exhibit 5

| | |
|---|---|
| **From:** | Theodore, Jeffrey <jtheodore@steptoe.com> |
| **Sent:** | Wednesday, July 25, 2018 1:37 AM |
| **To:** | Kramer, Jake; Kent Krabill; Jeremy Fielding; Jon Kelley; Julie Negovan; rscheff@mmwr.com; mwitsch@mmwr.com; Scarborough, Lawrence; Walsh, Brian; Hartley, Sarah; Ragsdale Olszeski, Ali; hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Petts, Nick; Sloniewsky, Andrew; Greg Brassfield; Christian Orozco; Ewelina Johnson |
| **Subject:** | RE: Amended Complaint |
| **Attachments:** | FT Chart for Amended Compl.docx |

Jake,

The Amended Complaint sets out the basis for adding the new defendants and more than meets the requirements to plead a cause of action against each of them. Nonetheless, in the interest of avoiding an unnecessary round of motion practice, we have prepared the attached chart, which identifies an example of a transfer for each Defendant for purposes of discussion. The chart is intended to satisfy any concerns you may have as to the adequacy of our grounds for naming each of the additional defendants and should not be taken as a complete statement of all of the transfers that Eddystone will assert at trial. We also note that it is based on the current state of our review of the information available to us and that discovery is ongoing.

Jeff

**From:** Kramer, Jake [mailto:jake.kramer@bclplaw.com]
**Sent:** Thursday, July 19, 2018 2:12 PM
**To:** Theodore, Jeffrey; Kent Krabill (kkrabill@lynnllp.com); Jeremy Fielding (jfielding@lynnllp.com); Jonathan Kelley (jkelley@lynnllp.com); Julie Negovan; rscheff@mmwr.com; mwitsch@mmwr.com; Scarborough, Lawrence; Walsh, Brian; Hartley, Sarah; Ragsdale Olszeski, Ali; hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Petts, Nick; Sloniewsky, Andrew; Greg Brassfield; Christian Orozco; Ewelina Johnson
**Subject:** RE: Amended Complaint

Jeff:

As we consider whether to consent to this amendment, it would be helpful to know the basis for adding the various new defendants. The draft amended complaint contains generalized allegations that they each received transfers from BTS, but it does not identify any transfers with particularity. Please advise.

Thanks,
Jake



**JACOB A. KRAMER**
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - Washington, D.C. USA
jacob.kramer@bclplaw.com
T: +1 202 508 6153  M: +1 202 550 8547

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Wednesday, July 18, 2018 4:18 PM
**To:** Kramer, Jake; Kent Krabill (kkrabill@lynnllp.com); Jeremy Fielding (jfielding@lynnllp.com); Jonathan Kelley
(jkelley@lynnllp.com); Julie Negovan; rscheff@mmwr.com; mwitsch@mmwr.com; Scarborough, Lawrence; Walsh, Brian;
Hartley, Sarah; Ragsdale Olszeski, Ali; hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Petts, Nick;
Sloniewsky, Andrew
**Subject:** RE: Amended Complaint

Jake,

A redline is attached.

Jeff

**From:** Kramer, Jake [mailto:jake.kramer@bclplaw.com]
**Sent:** Wednesday, July 18, 2018 1:50 PM
**To:** Theodore, Jeffrey; Kent Krabill (kkrabill@lynnllp.com); Jeremy Fielding (jfielding@lynnllp.com); Jonathan Kelley
(jkelley@lynnllp.com); Julie Negovan; rscheff@mmwr.com; mwitsch@mmwr.com; Scarborough, Lawrence; Walsh, Brian;
Hartley, Sarah; Ragsdale Olszeski, Ali; hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Petts, Nick;
Sloniewsky, Andrew
**Subject:** RE: Amended Complaint

Jeff:

Could you please provide us with a redline showing the changes from the prior version?

Note that I have removed Weil from this string.

thanks,
Jake



**JACOB A. KRAMER**
Partner
BRYAN CAVE LEIGHTON PAISNER LLP - Washington, D.C. USA
jacob.kramer@bclplaw.com
T: +1 202 508 6153  M: +1 202 550 8547

**From:** Theodore, Jeffrey [mailto:jtheodore@steptoe.com]
**Sent:** Wednesday, July 18, 2018 3:47 PM
**To:** Kramer, Jake; Kent Krabill (kkrabill@lynnllp.com); Jeremy Fielding (jfielding@lynnllp.com); Jonathan Kelley
(jkelley@lynnllp.com); Julie Negovan; rscheff@mmwr.com; mwitsch@mmwr.com; Scarborough, Lawrence; Walsh, Brian;
Hartley, Sarah; Ragsdale Olszeski, Ali; Guy, Ray (Ray.Guy@weil.com); Wright, Jason (Jason.Wright@weil.com);
hockeimerh@ballardspahr.com; grugant@ballardspahr.com; Agusti, Fil; Petts, Nick; Sloniewsky, Andrew
**Subject:** Amended Complaint

Jake, Jeremy, and colleagues,

Attached please find Eddystone's Amended Complaint. Please let us know whether Bryan Cave will accept service on behalf of the additional FGP subsidiaries named in the Amended Complaint and whether those entities will agree to waive service. In addition, please let us know whether Defendants consent to the amendment of the Complaint or whether we should file a motion for leave.

Thanks,

Jeff

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at www.bclplaw.com.

| Examples of Fraudulent Transfers to Newly Added Defendants | |
|---|---|
| **Defendant** | **Exemplary Transfer** |
| Bridger Rail Shipping | The accounts receivable in BTS's general ledger show that the defendant owed BTS at least $496,685 and that BTS forgave these intercompany receivables. |
| Bridger Administrative Services II, LLC | The accounts receivable in BTS's general ledger show that the defendant owed BTS at least $175,000 and that BTS forgave these intercompany receivables. |
| J.J. Liberty, LLC | The accounts receivable in BTS's general ledger show that the defendant owed BTS at least $858,315, and that BTS forgave these intercompany receivables |
| J.J. Addison Partners, LLC | The accounts receivable in BTS's general ledger show that the defendant owed BTS at least $94,218, and that BTS forgave these intercompany receivables |
| Bridger Transportation, LLC | The accounts receivable in BTS's general ledger show that the defendant owed BTS at least $2,544,381, and that BTS forgave these intercompany receivables |
| Bridger Leasing, LLC | The accounts receivable in BTS's general ledger show that the defendant owed BTS at least $2,635,942, and that BTS forgave these intercompany receivables. |
| Bridger Lake, LLC | Documents indicate that BTS incurred in excess of $400,000 in obligations to third parties in respect to the business of Bridger Lake |
| Bridger Storage, LLC | The defendants diverted away from BTS and to defendant Bridger Storage at least $6,718,658 in revenue for storage services. |
| Bridger Swan Ranch, LLC | BTS assigned at least $18.5-20 million in hard assets to the defendant for no consideration. |
| Bridger Terminals, LLC | BTS assigned at least $11.09-19.02 million in hard assets to the defendant for no consideration. |
| Bridger Real Property | BTS assigned real property worth at least $0.95 million to the defendant for no consideration. |
| Bridger Marine, LLC | Defendants diverted the Monroe throughput revenue away from BTS to entities including millions of dollars to Bridger Marine |
| Bridger Energy, LLC | The accounts receivable in BTS's general ledger show that the defendant owed BTS at least $610,347, and that BTS forgave these intercompany receivables |