Exhibit 4

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, <br>           Plaintiff/Counter-defendant, <br><br>    v. <br><br> JULIO RIOS and JEREMY GAMBOA, <br> BRIDGER LOGISTICS, LLC, <br> FERRELLGAS PARTNERS, L.P., and <br> FERRELLGAS, L.P. *et al.*, <br>           Defendants, <br><br> BRIDGER LOGISTICS, LLC, <br> FERRELLGAS PARTNERS, L.P., and <br> FERRELLGAS, L.P., <br>           Defendants/ <br>           Counterclaimants | : <br> : <br> : <br> : <br> : <br> : No. 2:17-cv-00495-RK <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> :: |

## FERRELLGAS L.P.'S RESPONSES AND OBJECTIONS TO PLAINTIFF/COUNTER-DEFENDANT'S FIRST INTERROGATORIES

Defendant/Counterclaimant Ferrellgas, L.P., ("Ferrellgas") responds and object as follows to Plaintiff/Counter-Defendant Eddystone Rail Company, LLC's ("ERC") first interrogatories.

## OBJECTIONS TO ERC'S DEFINITIONS AND INSTRUCTIONS

Before turning to ERC's specific requests, Ferrellgas objects to ERC's definitions and instructions as follows:

A.      Ferrellgas objects to ERC's definition of "Bridger Entity," which purports to include entities that are not parties to this lawsuit.

B.      Ferrellgas objects to ERC's various instructions to the extent that they seek to impose obligations upon Ferrellgas that are different from or greater than Ferrellgas' obligations under the Federal Rules of Civil Procedure.  In particular, Ferrellgas objects to ERC's attempt to

12141184.8

require Ferrellgas to gather and produce information that is not in its possession, custody, or control (see paragraph 4 of the instructions), and to log responsive documents not in its possession, custody, or control (see paragraph 21 of the instructions), neither of which is required by the Federal Rules of Civil Procedure.

C.      Ferrellgas further objects to the instructions as unduly burdensome to the extent that they seek to require production of all electronic documents in their native format (see paragraphs 14, 15, 18) or to require Ferrellgas to permit access to its electronic databases (see paragraph 17), neither of which is customary or necessary, and which contradicts the parties' agreed form of production and the Court's November 6, 2017 Order.

### RESPONSES AND OBJECTIONS TO ERC'S INTERROGATORIES

**Interrogatory No. 1**:  Identify each instance in which the movement of a barge between the Eddystone facility and the Monroe refinery was delayed or otherwise adversely affected by actions or omissions of Eddystone or deficiencies in the Eddystone facility that you contend were in violation of the RSA or that otherwise form the basis for your affirmative defenses and/or counterclaims in this matter. For each such instance, include in your description the dates and times of departure and arrival at the Eddystone facility and the Monroe refinery, the volumes carried, the extent of any delay, the extent of any impact on volumes carried, and the cause of the delay or other claimed adverse impact.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.      This interrogatory is a contention interrogatory, which asks Ferrellgas to identify and describe "each" of the facts underlying allegations central to its "affirmative defenses and/or counterclaims."  ERC has taken the position in this case that responding

to contention interrogatories is premature when "investigation of the facts is ongoing" and before depositions have been taken.  Unless and until ERC abandons its position, either voluntarily or pursuant to a court order, Ferrellgas will refrain from answering this contention interrogatory, at least until it has completed its investigation of the facts, which remains ongoing.

In accordance with and without waiving the foregoing objection, Ferrellgas will provide its substantive response to this interrogatory once discovery is complete.


**Interrogatory No. 2**: Identify each instance in which the movement of a train between Abrams Yard and the Eddystone facility was delayed or otherwise adversely impacted by actions or omissions of Eddystone or deficiencies in the Eddystone facility that you contend were in violation of the RSA or that otherwise form the basis for your affirmative defenses and/or counterclaims in this matter. For each such instance, include in your description the dates and times of departure and arrival at the Eddystone facility and Abrams Yard, the extent of any delay, and the cause of the delay.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.      This interrogatory is a contention interrogatory, which asks Ferrellgas to identify and describe "each" of the facts underlying allegations central to its "affirmative defenses and/or counterclaims."  ERC has taken the position in this case that responding to contention interrogatories is premature when "investigation of the facts is ongoing" and before depositions have been taken.  Unless and until ERC abandons its position, either voluntarily or pursuant to a court order, Ferrellgas will refrain from answering this

contention interrogatory, at least until it has completed its investigation of the facts, which remains ongoing.

In accordance with and without waiving the foregoing objection, Ferrellgas will provide its substantive response to this interrogatory once discovery is complete.

**Interrogatory No. 3**:   Identify each fraudulent or negligent misrepresentation or omission by Eddystone on which you relied to your detriment and that forms the basis for your affirmative defenses and/or counterclaims in this matter, including the speaker, date, and time thereof, the manner and circumstances of the misrepresentation or omission, the nature of your reliance thereon, and the detrimental consequences that you suffered as a result.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.     This interrogatory is a contention interrogatory, which asks Ferrellgas to identify and describe "each" of the facts underlying allegations central to its "affirmative defenses and/or counterclaims."  ERC has taken the position in this case that responding to contention interrogatories is premature when "investigation of the facts is ongoing" and before depositions have been taken.  Unless and until ERC abandons its position, either voluntarily or pursuant to a court order, Ferrellgas will refrain from answering this contention interrogatory, at least until it has completed its investigation of the facts, which remains ongoing.

In accordance with and without waiving the foregoing objection, Ferrellgas will provide its substantive response to this interrogatory once discovery is complete.

**Interrogatory No. 4**:  Describe in detail the substance and amount of all damages that you or BTS has sustained – including deficiency charges incurred – as a result of actions or omissions of Eddystone or deficiencies in the Eddystone facility that you contend were in violation of the RSA or that otherwise form the basis for your affirmative defenses and/or counterclaims in this matter. Include in your answer the details and amount of each injury alleged and an explanation of why you would not have incurred those damages and/or deficiency charges but for the actions or omissions of Eddystone or the deficiencies in the Eddystone facility.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.    This interrogatory is a contention interrogatory, which asks Ferrellgas to identify and describe "each" of the facts underlying allegations central to its "affirmative defenses and/or counterclaims."  ERC has taken the position in this case that responding to contention interrogatories is premature when "investigation of the facts is ongoing" and before depositions have been taken.  Unless and until ERC abandons its position, either voluntarily or pursuant to a court order, Ferrellgas will refrain from answering this contention interrogatory, at least until it has completed its investigation of the facts, which remains ongoing.

B.    This interrogatory is premature in that damages calculations will be the subject of expert testimony, and Ferrellgas' expert disclosures have not yet come due.

In accordance with and without waiving the foregoing objections, Ferrellgas state as follows:

*Compensatory Damages Owing Under Counterclaim I.*  Ferrellgas has sustained damages of no less than $1,000,000.00 as a result of ERC's tortious interference with the BTS PSA. This

amount reflects the value of attorneys' fees and costs incurred as a result of being forced to defend against and assert various rights in connection with this matter as well as a related matter pending in the United States District Court for the Southern District of New York (Case No. 1:17-cv-01266-WHP) ("SDNY Action") wherein ERC has filed a petition to confirm the improperly obtained Final Award, which was based entirely on ERC's collusive and pretextual arbitration award. The damages suffered as a result of ERC's tortious interference continue to accrue as the present matter and the SDNY Action proceed; therefore, a final calculation will be subject to determination after trial.

*Compensatory Damages Owing Under Contingent Counterclaims II – V.*  BTS sustained damages of at least $31,604,519.12 as a result of ERC's fraudulent inducement (Counterclaim II), negligent misrepresentation (Counterclaim III), breach of the RSA (Counterclaim IV), and breach of the implied covenant of good faith and fair dealing (Counterclaim V).  This amount reflects the $11,604,519.12 value of the deficiency credits BTS was forced to forfeit and the deficiency charges BTS was forced to incur as a result of the defects and deficiencies of ERC's transloading facility (the "Facility"), as well as the minimum of $20,000,000 in damages sustained as a result of ERC's fraudulent inducement and negligent misrepresentations that caused BTS to enter the RSA.  As set forth in the operative pleadings, Ferrellgas will, by extension, sustain these damages if the Court determines that BTS and Logistics and/or the FG Defendants are alter egos (which Ferrellgas disputes), and sets aside BTS's corporate structure.

*Punitive Damages.* Ferrellgas is entitled to punitive damages as ERC's egregious actions in tortiously interfering with the BTS PSA were intentional, deliberate, and committed with a willful and wanton disregard of the rights of others.  Further information regarding punitive damages is subject to ongoing discovery.

*Pre- and Post-Judgment Interest.*   Ferrellgas is entitled to and claim both pre- and post-judgment interest at the maximum rate permitted by law.

Ferrellgas will amend, and reserve its rights to amend, its response to this interrogatory once discovery is complete.

**Interrogatory  No.  5**:   Describe  in  detail  your  repositories  for  documents  and electronically  stored  information  (including  any  email  or  other  electronic  systems)  and  the document retention/destruction policies and procedures applicable thereto at all times from 2012 to present.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.   This interrogatory seeks information that is neither relevant nor reasonably calculated  to  lead  to  the  discovery  of  relevant  and  admissible  evidence  insofar  as  the nature  and  scope  of  Ferrellgas'  repositories  for  documents  and  electronically  stored information  ("ESI")  and  the  associated  retention  and  destruction  procedures  have  no bearing  on  any  of  the  claims  or  defenses  in  this  case.   Further,  to  the  extent  that  ERC contends  this  information  is  related  to  any  purported  "spoliation,"  there  has  been  no allegation  of  spoliation  in  this  case  and  indeed  no  such  spoliation  has  occurred,  as evidenced  by  Ferrellgas'  production  of  more  than  2  million  pages  of  documents. Moreover, as numerous courts have recognized, discovery related to alleged spoliation is improper  unless  and  until  there  has  been  some  legitimate,  non-speculative,  fact-based showing of supposed spoliation.  *See, e.g.*, *LaSala v. Marfin Popular Bank Public Co.*, 410 Fed. App'x 474, 479 (3d Cir. 2011) (holding district court did not abuse its discretion in refusing to grant discovery into the issue of spoliation in part because "any allegations

of spoliation in this case are speculative and conclusory"); *Winter Family Trust v. Queen*, 2004 WL 350181, at *4 (E.D. Pa. Feb. 6, 2004) (refusing to allow discovery into alleged spoliation issues where the allegations of spoliation were "merely speculative"); *Fish v. Air & Liquid Sys. Corp.*, No. GLR-16-496, 2017 WL 697663, at *15 (D. Md. Feb. 21, 2017) (rejecting plaintiffs' request for discovery of defendant's document retention policies where plaintiffs failed to explain why the request was relevant and proportional); *Cableview Comm'n of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, No. 3:13-cv-306-J-34JRK, 2015 WL 12838175, at *6 (M.D. Fla. May 4, 2015) (holding that the "discoverability of document retention policies hinges upon whether spoliation is actually at issue"); *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 364 (N.D. Tex. 2013) (requested deposition discovery regarding document retention policies was overbroad and irrelevant because "[w]hile plaintiff speculates that [d]efendant may have additional documentation that it has not produced, there is no evidence to support that supposition at this point"); *Ceglia v. Zuckerburg*, 2012 WL 12995636, at *10 (W.D.N.Y. June 28, 2012) (denying request for discovery into backup tapes where plaintiff was merely "embarking on a fishing expedition for emails Plaintiff speculates may exist"); *Steuben Foods, Inc. v. Country Gourmet Foods, LLC*, 2011 WL 1549450, at *6 (W.D.N.Y. Apr. 21, 2011) (denying motion to conduct discovery regarding document preservation efforts where there was no factual basis for spoliation assertion, and motion was attempt "to initiate a 'fishing expedition' based on mere speculation"); *Cunningham v. Standard Fire Ins. Co.,* No. 07-cv-02538-REB-KLM, 2008 WL 2668301, at *5 (D. Colo. July 1, 2008) (holding that the "storage, preservation and backup of emails" were not relevant to the claims at issue).

B.    This interrogatory is improper and objectionable to the extent that it seeks to invade the attorney-client privilege and the attorney work-product privilege.

In accordance with the foregoing objections, Ferrellgas will not respond to this interrogatory.

**Interrogatory No. 6**:   Describe in detail your efforts to preserve documents and electronically stored information relevant to this litigation, from November 1, 2013 to the present, and the effectiveness of those efforts, including all mechanisms, notices, or instructions to retain physical or electronic information and documents, the date on which they were put into place, and all efforts to prevent loss or deletion of emails.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.    This interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant and admissible evidence insofar as the nature and scope of Ferrellgas' efforts to preserve documents and ESI have no bearing on any of the claims or defenses in this case.  Further, to the extent that ERC contends this information is related to any purported "spoliation," there has been no allegation of spoliation in this case and indeed no such spoliation has occurred, as evidenced by Ferrellgas' production of more than 2 million pages of documents.  Moreover, as numerous courts have recognized, discovery related to alleged spoliation is improper unless and until there has been some legitimate, non-speculative, fact-based showing of supposed spoliation.  *See, e.g.*, sources cited in response to interrogatory no. 5.

B.    This interrogatory seeks to invade the attorney-client privilege and the attorney work-product privilege.

In accordance with the foregoing objections, Ferrellgas will not respond to this interrogatory.

**Interrogatory No. 7**:  Describe in detail all categories of documents or electronically stored information (including emails) that are the subject of Eddystone's discovery requests in this matter that have not been preserved and the reasons therefor, including any email accounts of current or former personnel or portions thereof.

**Response**:   Ferrellgas objects to this interrogatory on the following grounds:

A.    This interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant and admissible evidence insofar as the purported lack of preservation of any documents or ESI has no bearing on any of the claims or defenses in this case.  Further, to the extent that ERC contends this information is related to any purported "spoliation," there has been no allegation of spoliation in this case and indeed no such spoliation has occurred, as evidenced by Ferrellgas' production of more than 2 million pages of documents.   Moreover, as numerous courts have recognized, discovery related to alleged spoliation is improper unless and until there has been some legitimate, non-speculative, fact-based showing of supposed spoliation.  *See, e.g.*, sources cited in response to interrogatory no. 5.

B.    Further, this interrogatory seeks information that is doubly irrelevant in that it lacks any temporal scope, and, if read literally, it seeks to require Ferrellgas to identify any categories of documents or ESI that might have expired prior to the reasonable anticipation of this lawsuit by Ferrellgas (or any other party).  Even assuming there were a legitimate spoliation allegation in this case (there is not), the expiration of

any documents prior to the point at which litigation might have been reasonably anticipated could not possibly have any bearing on any such (non-existent) spoliation allegation.

C.    This interrogatory generally refers to ERC's "discovery requests," without limitation as to those discovery requests that have been directed to Ferrellgas.  Thus, if read literally, this interrogatory purports to require Ferrellgas to investigate the potential non-preservation of documents that might have at one time or another been in the possession, custody, or control of other defendants or third parties who have received a "discovery request" from ERC.  This is unduly burdensome and improper seeing as how Ferrellgas (as with any other party) is only responsible for producing documents or information within its possession, custody, or control.

D.    This interrogatory is unduly burdensome insofar as, to fully respond to the interrogatory as written, Ferrellgas would need to conduct a broad and far-reaching investigation in order to, in essence, prove a negative—*i.e.*, that there are not any preservation issues.  By way of example only, to fully respond to this interrogatory as written, Ferrellgas would need to interview every single employee (past and present) who was employed by any of Ferrellgas during the relevant time period, to determine if, for example, any one of them might have at some point printed some documents and kept them in a manila folder on his or her desk, only to later recycle them upon deeming them no longer worthy of desk space.  This type of effort is unduly burdensome, especially so late in the discovery period, and especially when plaintiff has offered no legitimate basis for seeking such information (indeed, none exists).

In accordance with the foregoing objections, Ferrellgas will not respond to this interrogatory.

**Interrogatory No. 8**:   Identify the date on which you first anticipated litigation with Eddystone regarding the subject matter of the above-captioned action, which includes but is not limited to the RSA, the SEPTA window, the granite pinnacle, the Eddystone Facility's loading rate, the other alleged deficiencies in the Facility as described in your counterclaims and affirmative defenses, the failure to make deficiency payments under the RSA from February 2016 forward, the sale of BTS to Jamex Transfer Holdings, and the transfer of BTS's assets and revenue streams to other FGP entities. [To the extent that you anticipated litigation on some aspects of the subject matter of the above-captioned action before other aspects, please specify that in your answer to this Interrogatory.]

**Response**:   Ferrellgas objects to this interrogatory on the following grounds:

A. This interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of relevant and admissible evidence insofar as the purported lack of preservation of any documents or ESI has no bearing on any of the claims or defenses in this case.  Further, to the extent that ERC contends this information is related to any purported "spoliation," there has been no allegation of spoliation in this case and indeed no such spoliation has occurred, as evidenced by Ferrellgas' production of more than 2 million pages of documents.  Moreover, as numerous courts have recognized, discovery related to alleged spoliation is improper unless and until there has been some legitimate, non-speculative, fact-based showing of supposed spoliation. *See, e.g.*, sources cited in response to interrogatory no. 5.

B.      This interrogatory seeks to invade the attorney-client privilege and the attorney work-product privilege, in that revealing the date on which Ferrellgas first anticipated litigation with respect to any of the subject matters pertinent to this lawsuit tends to reveal the thinking of counsel and the time at which Ferrellgas might have first sought legal advice.

In accordance with the foregoing objections, Ferrellgas will not respond to this interrogatory.

**Interrogatory No. 9**:  For each "sub-ledger" file maintained in the accounting records of you or your affiliates, including but not limited to BLFG_EDPA0045645 through BLFG_EDPA0047279, identify the corporate entity to which the sub-ledger file relates, the type of sub-ledger the file represents (*i.e.*, receivables ledger, payables ledger, etc.), the general ledger entries to which the journal entries in the sub-ledger file are tied, and all missing customer, payor, or payee detail (names, amounts, invoice numbers).

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.      This request is unduly burdensome insofar as it seeks to require Ferrellgas to gather and organize information that is already available to ERC at an equivalent burden.  Specifically, as to ERC's request for identification of the "type of sub-ledger" each file represents, the vast majority (if not all) of Ferrellgas' accounting documents are labeled; thus, for example, if a sub-ledger is a "receivables ledger" or a "payables ledger," the sub-ledger will say so.  ERC is just as capable as Ferrellgas of looking at the sub-ledger documents and reading the labels included on such documents.  Similarly, ERC's request for an identification of "the general ledger entries to which the journal

entries in the sub-ledger file are tied" will require Ferrellgas' outside accounting experts to reconstruct this information—an exercise that would require an enormous amount of man-power and hours.  ERC has its own accounting experts that are just as capable of performing the same reconstruction exercise, and ERC should shoulder the burden of paying for this exercise if it believes it to be important.

B.     This request is vague and ambiguous insofar as Ferrellgas is uncertain what ledger entries ERC deems to contain "missing customer, payor, or payee detail," and Ferrellgas would be left to guess as to the entries to which ERC might be referring. Relatedly, this aspect of ERC's interrogatory is also unduly burdensome, in that if ERC knows which entries it deems to contain missing information, ERC should simply identify those entries, as opposed to having Ferrellgas comb through the entirety of the sub-ledger files to attempt to identify the entries to which ERC might be referring. Moreover, to the extent that ERC identifies a substantial and overbroad universe of entries with supposedly missing data, Ferrellgas further objects to this request as unduly burdensome in that Ferrellgas should not be required to comb through its vast accounting records to locate purportedly missing data for accounting entries that have little, if any, bearing on this case.

In accordance with and without waiving the foregoing objections, Ferrellgas will respond to this interrogatory only in part by identifying a list of company codes and the names of the corresponding entities and reporting units used in the Great Plains accounting system and the PeopleSoft system, which will help ERC identify the entities to which the sub-ledgers belong:

| Entity | Great Plains Code | PeopleSoft Code |
|---|---|---|
| Bridger Marketing, LLC | 101 | |

12141184.8

| | | |
|---|---|---|
| Bridger Transportation LLC | 201 | 4150 |
| Bridger Transfer Services LLC | 202 | 4175 |
| Bridger Rail Shipping LLC | 203 | 4160 |
| Bridger Leasing LLC | 204 | 4151 |
| Bridger Lake, LLC | 205 | 4171 |
| Bridger Trucking Services | 207 | 4152 |
| Bridger Rail Services | 208 | 4161 |
| Bridger Storage, LLC | 209 | 4162 |
| Bridger Pipeline Services | 210 | 4170 |
| Bridger Energy, LLC | 211 | 4180 |
| Bridger Marine, LLC | 212 | 4185 |
| Bridger Management | 213 | 4190 |
| Bridger Terminals, LLC | 216 | |
| JJ Liberty LLC | 302 | 4192 |
| JJ Addison Partners LLC | 303 | 4194 |
| Bridger Real Property LLC | 304 | 4191 |
| Bridger Admin Services, LLC | 401 | |
| Bridger, LLC | 402 | |
| Bridger Logistics, LLC | 403 | |
| Bridger Admin Services II, LLC | 404 | |
| Bridger Environmental, LLC | 501 | |

12141184.8

**Interrogatory No. 10**:  Identify each contract that BTS made for storage capacity and/or rail loading capacity, including but not limited to Berthold, New Town, and Van Hook, and describe the terms of the arrangement, including the volume contracted for, volume shipped, payment terms, payments made, and whether the capacity was used to transport oil ultimately bound for Eddystone and/or Monroe.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.    This interrogatory is overbroad and not reasonably calculated to lead to the discovery of relevant and admissible evidence to the extent that it seeks information about BTS contracts that are unrelated to the supply of crude oil to Monroe through the Eddystone facility, or that relate to time periods outside of the time period in which crude oil was being supplied to Monroe through the Eddystone facility.

B.    This interrogatory is improper to the extent that it seeks to require Ferrellgas to gather and provide information that is not within its possession, custody, or control.

C.    This interrogatory is unduly burdensome in that it seeks to require Ferrellgas to collect and organize information that is already available to ERC at an equivalent burden.  Specifically, Ferrellgas has already produced the contracts referenced by this interrogatory, and ERC is just as capable as Ferrellgas of reviewing those contracts and culling out the information that ERC seeks regarding those contracts.

D.    This interrogatory seeks confidential and proprietary information regarding the manner in which Ferrellgas has run is business.

In accordance with the foregoing objections, Ferrellgas will respond to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d), and will respond only in part by identifying

those BTS contracts for storage capacity and/or rail loading capacity that were related to the supply of crude oil to Monroe through the Eddystone facility.   Ferrellgas direct ERC to the following Confidential documents, which reflect the information in Ferrellgas' possession, custody, or control that is responsive to this interrogatory as narrowed by Ferrellgas' objections:

| Bates Range | Description |
| --- | --- |
| BLFG_EDPA 0276187 – 210 | Oct. 1, 2011 Truck Station Lease Agreement, Reserve Station, with Enbridge Pipelines |
| BLFG_EDPA 0276211 – 234 | Nov. 1, 2011 Truck Station Lease Agreement, Alexander Station, with Enbridge Pipelines |
| BLFG_EDPA 0276235 – 258 | Nov. 1, 2011 Truck Station Lease Agreement, Trenton Station, with Enbridge Pipelines |
| BLFG_EDPA 0276302 – 310 | Berthold Exclusive Lease of Truck Unloading Station |
| BLFG_EDPA 0277003 – 012 | Jan. 5, 2012 Terminal Throughput Agreement, Trenton Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277013 – 022 | Jan. 5, 2012 Terminal Throughput Agreement, Reserve Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277023 – 032 | Jan. 5, 2012 Terminal Throughput Agreement, Beaver Lodge Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277033 – 042 | Jan. 5, 2012 Terminal Throughput Agreement, Alexander Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277668 – 675 | Feb. 1, 2013 Terminal Throughput Agreement, Little Muddy Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277676 – 683 | Jan. 1, 2011 Terminal Throughput Agreement, Stanley 3A Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277684 – 691 | Feb. 1, 2013 Terminal Throughput Agreement, Grenora Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0282034–083 | Mar. 28, 2014 Crude Oil Services Agreement with Dakota Petroleum Transportation Solutions, LLC |
| BLFG_EDPA 0287763 – 799 | Mar. 8, 2013 Eddystone Rail Facilities Services Agreement with ERC |

| BLFG_EDPA 0287800–823 | May 8, 2012 Berthold Rail Loading Agreement with Enbridge Rail |
| BLFG_EDPA 0287824–847 | Sept. 16, 2012 Berthold Rail Phase I Loading Agreement with Enbridge Rail |
| BLFG_EDPA 0297858 | Truck Station Lease Agreement Amendment, Berthold Station |
| BLFG_EDPA 0298246 – 253 | Nov. 1, 2013 Terminal Throughput Agreement, Stanley 3B Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0298254 – 261 | Nov. 1, 2013 Terminal Throughput Agreement, Berthold Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0311524–548 | Mar. 25, 2015 Rail Terminal Services Agreement with Van Hook Crude Rail Terminal LLC |
| BLFG_EDPA 0313988 – 996 | Nov. 22, 2012 Truck Station Lease Agreement, Grenora Station, with Enbridge Pipelines |
| BLFG_EDPA 0313997 – 005 | Nov. 22, 2012 Truck Station Lease Agreement, Little Muddy Station, with Enbridge Pipelines |
| BLFG_EDPA 0314018 – 027 | Dec. 1, 2010 Truck Station Lease Agreement, Stanley Station, with Enbridge Pipelines |
| BLFG-EDPA 0314033–042 | Dec. 1, 2010 Truck Station Lease Agreement, Berthold Station, with Enbridge Pipelines |
| BLFG_EDPA 0314045 – 068 | Sept. 1. 2011 Truck Station Lease Agreement, Beaver Lodge Station, with Enbridge Pipelines |

Ferrellgas notes that discovery is ongoing, and it will, and reserves its right to, supplement its response to this interrogatory if and when it discovers additional responsive information.

**Interrogatory No. 11**:  Identify and describe in detail all agreements between BTS and any other Bridger, Ferrellgas, or Jamex entity, including for each agreement the written

12141184.8

documentation (if any) or the absence thereof, the parties to the agreement, the terms of the agreement, the date of entry of the agreement, the duration of the agreement, any amendments to or changes to the agreement, each party's obligations under the agreement, and any payments or other consideration exchanged or contemplated as part of the agreement.

**Response**: Ferrellgas objects to this interrogatory on the following grounds:

A.      This interrogatory is overbroad and not reasonably calculated to lead to the discovery of relevant and admissible evidence to the extent that it seeks information about BTS contracts that are unrelated to the supply of crude oil to Monroe through the Eddystone facility.

B.      This interrogatory is further overbroad and not reasonably calculated to lead to the discovery of relevant and admissible evidence in that ERC's definition of "Bridger entity" and "Jamex entity" purport to incorporate entities that are not parties to this lawsuit.

C.      This interrogatory is unduly burdensome in that it seeks to require Ferrellgas to collect and organize information that is already available to ERC at an equivalent burden.  Specifically, Ferrellgas has already produced the contracts referenced by this interrogatory, and ERC is just as capable as Ferrellgas of reviewing those contracts and culling out the information that ERC seeks regarding those contracts.

D.      Given this interrogatory is unlimited in temporal scope, this interrogatory improperly seeks to require Ferrellgas to gather and provide information that is not within its possession, custody, or control insofar as it seeks information about a time period when BTS was no longer affiliated with Ferrellgas.

E.     This interrogatory seeks confidential and proprietary information regarding the manner in which Ferrellgas has run its business.

In accordance with and without waiving the foregoing objections, Ferrellgas will respond to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d), and will respond only in part by identifying those BTS contracts with other Bridger or Ferrellgas entities that were related to the supply of crude oil to Monroe through the Eddystone facility.  Ferrellgas direct ERC to the following Confidential documents, which reflect the information in Ferrellgas' possession, custody, or control that is responsive to this interrogatory as narrowed by Ferrellgas' objections:

| Bates Range | Description |
| --- | --- |
| BLFG_EDPA 0005571 – 588 | Feb. 22, 2016 Terminal Logistics Services Agreement, between BTS and Bridger Terminals, LLC |
| BLFG_EDPA 0277003 – 012 | Jan. 5, 2012 Terminal Throughput Agreement, Trenton Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277013 – 022 | Jan. 5, 2012 Terminal Throughput Agreement, Reserve Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277023 – 032 | Jan. 5, 2012 Terminal Throughput Agreement, Beaver Lodge Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277033 – 042 | Jan. 5, 2012 Terminal Throughput Agreement, Alexander Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277668 – 675 | Feb. 1, 2013 Terminal Throughput Agreement, Little Muddy Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277676 – 683 | Jan. 1, 2011 Terminal Throughput Agreement, Stanley 3A Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0277684 – 691 | Feb. 1, 2013 Terminal Throughput Agreement, Grenora Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0298246 – 253 | Nov. 1, 2013 Terminal Throughput Agreement, Stanley 3B Station, between BTS and Bridger Trading, LLC |
| BLFG_EDPA 0298254 – 261 | Nov. 1, 2013 Terminal Throughput Agreement, Berthold |

| | Station, between BTS and Bridger Trading, LLC |
|---|---|
| BLFG_EDPA 2268331 – 340 | Jan. 31, 2016 Assignment and Assumption Agreement, between BTS and Bridger Terminals, LLC |
| BLFG_EDPA 2268315 – 330 | Jan. 31, 2016 Assignment and Assumption Agreement, between BTS and Bridger Swan Ranch, LLC |

Ferrellgas notes that discovery is ongoing, and it will, and reserves its right to, supplement its response to this interrogatory if and when it discovers additional responsive information.

**Interrogatory No. 12**:  Identify and describe in detail the business terms by which BTS made the crude oil transloading capacity at Eddystone, PA, Berthold, ND, Van Hook, ND, and/or New Town, ND available to Bridger Logistics, Bridger Rail Shipping, Jamex Marketing, Bridger Marketing, Bridger LLC, Jamex, LLC, or any Bridger, Jamex, or Ferrellgas entity, including the written documentation (if any) or the absence thereof, the parties to the agreement, the terms of the agreement, the date of execution and/or effectiveness of the agreement, the duration of the agreement, any amendments to or changes to the agreement, each party's obligations under the agreement, and any payments or other consideration exchanged or contemplated as part of the agreement.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.    This interrogatory is overbroad and not reasonably calculated to lead to the discovery of relevant and admissible evidence to the extent that it seeks information about BTS dealings that are unrelated to the supply of crude oil to Monroe through the Eddystone facility.

B.      This interrogatory is further overbroad and not reasonably calculated to lead to the discovery of relevant and admissible evidence in that it seeks information about various entities that are not party to this lawsuit, both expressly, and through the use of the terms "Bridger entity" and "Jamex entity," which, according to ERC's definitions, purportedly incorporate entities that are not parties to this lawsuit.

C.      This interrogatory is unduly burdensome in that it seeks to require Ferrellgas to collect and organize information that is already available to ERC at an equivalent burden.  Specifically, Ferrellgas has already produced any documents that might detail any business terms referenced by this interrogatory, and ERC is just as capable as Ferrellgas of reviewing those documents and culling out the information that ERC seeks regarding those business terms.

D.      Given this interrogatory is unlimited in temporal scope, this interrogatory improperly seeks to require Ferrellgas to gather and provide information that is not within its possession, custody, or control insofar as it seeks information about a time period when BTS was no longer affiliated with Ferrellgas.

E.      This interrogatory seeks confidential and proprietary information regarding the manner in which Ferrellgas has run its business.

In accordance with and without waiving the foregoing objections, Ferrellgas is responding to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d), and it is responding only in part by identifying any business terms related to the supply of crude oil to Monroe through the Eddystone facility.  Ferrellgas directs ERC to the following Confidential documents, which reflect the information in Ferrellgas' possession, custody, or control that is responsive to this interrogatory as narrowed by Ferrellgas' objections:

| Bates Range | Description |
| --- | --- |
| BLFG_EDPA 0298254 – 261 | Nov. 1, 2013 Terminal Throughput Agreement, Berthold Station, between BTS and Bridger Trading, LLC |

Ferrellgas notes that discovery is ongoing, and it will, and reserves its rights to, supplement its response to this interrogatory if and when it discovers additional responsive information.

**Interrogatory No. 13**:  Identify all persons (whether natural persons or legal entities) that served as managers, members, directors, officers, or employees of BTS or otherwise performed work for or acted on behalf of BTS from January 1, 2012 to February 1, 2016, including for each such person their position(s), title(s) and/or office(s), the dates between during which they held each such position, title, and/or office, their responsibilities and duties, and the position(s), title(s), office(s), and/or employment relationships that they had with any other Bridger, Jamex, or Ferrellgas entity between January 1, 2012 and February 1, 2016.

**Response**:  Ferrellgas objects to this interrogatory on the following grounds:

A.    This interrogatory is unduly burdensome in that it seeks to require Ferrellgas to collect and organize information that is already available to ERC at an equivalent burden.  Specifically, Ferrellgas has already produced documents detailing the individuals or entities who performed work for BTS or otherwise served in the referenced positions, and ERC is just as capable as Ferrellgas of reviewing those documents and culling out the information that ERC seeks.

In accordance with and without waiving the foregoing objection, Ferrellgas states Julio Rios and Ballengee Interests, LLC were the initial members and managers of BTS since its

12141184.8

inception in approximately June 2011 until approximately December 2011, when Bridger Logistics, LLC became the member and manager of BTS; Bridger Logistics, LLC was the member and manager of BTS until approximately February 2016, at which point Jamex Transfer Holdings, LLC became its member and manager.   Ferrellgas further responds to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d), and direct ERC to the following documents, which reflect the information in Ferrellgas' possession, custody, or control that is responsive to this interrogatory:

| Bates Range | Description |
|---|---|
| BLFG_EDPA 0005496 | Feb. 22, 2016 Purchase and Sale Agreement between Bridger Logistics, LLC and Jamex Transfer Holdings, LLC |
| BLFG_EDPA 0275216 | Bridger Employee List, June 24, 2015 – Mar. 31, 2016 |
| BLFG_EDPA 0275709 – 715 | BTS Organizational Documents |
| BLFG_EDPA 0297018 | Apr. 22, 2015 Bridger Entity Organizational Chart |
| BLFG_EDPA 1534006 | Bridger Employee Information, Oct. 16, 2014 |
| BLFG_EDPA 2028517 – 519 | Bridger Organizational Charts |
| BLFG_EDPA 2289668 | Employee List, Dec. 14, 2015 |
| BLFG_EDPA 2289667 | Employee List, Oct. 13, 2015 |
| BLFG_EDPA 2289669 | Employee List, Jan. 25, 2016 |

Ferrellgas notes that discovery is ongoing, and it will, and reserves its right to, supplement its response to this interrogatory if and when it discovers additional responsive information.

Dated: September 14, 2018

12141184.8

Respectfully submitted,

/s/ Richard L. Scheff
Richard L. Scheff (I.D. No. 35213)
Michael C. Witsch (I.D. No. 313884)
MONTGOMERY   MCCRACKEN   WALKER   &
RHOADS LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
Telephone:  (215) 772-1500
Facsimile:  (215) 772-7620
rscheff@mmwr.com
mwitsch@mmwr.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-4630
lgscarborough@bclplaw.com

Jacob A.  Kramer (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 508-6000
Facsimile:  (202) 508-6200
jake.kramer@bclplaw.com

Brian C. Walsh (Admitted *Pro Hac Vice*)
Alicia Ragsdale Olszeski (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St.  Louis, Missouri 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
brian.walsh@bclplaw.com
ali.ragsdale@bclplaw.com

Sarah L. Hartley (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200
sarah.hartley@bclplaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2018, the foregoing was served via email to all counsel of record.

s/ Michael C. Witsch
Counsel for Ferrellgas

12141184.8