UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC,<br>      Plaintiff/Counter-defendant,<br><br>v.<br><br>JULIO RIOS and JEREMY GAMBOA,<br>BRIDGER LOGISTICS, LLC,<br>FERRELLGAS PARTNERS, L.P., and<br>FERRELLGAS, L.P. *et al.*,<br>      Defendants,<br><br>BRIDGER LOGISTICS, LLC,<br>FERRELLGAS PARTNERS, L.P., and<br>FERRELLGAS, L.P.,<br>      Defendants/<br>      Counterclaimants | No. 2:17-cv-00495-RK |

### THE ADDITIONAL ENTITY DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND BRIEF IN SUPPORT

Defendants Bridger Administrative Services, II, LLC, Bridger Marine, LLC, Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, Bridger Leasing, LLC, Bridger Energy, LLC, Bridger Lake, LLC, J.J. Liberty, LLC, and J.J. Addison Partners, LLC (collectively, the "**Additional Entity Defendants**"), pursuant to Fed. R. Civ. P. 12(b)(2), hereby move the Court to dismiss the First Amended Complaint of Plaintiff Eddystone Rail Company, LLC ("ERC" or "Plaintiff") as asserted against the Additional Entity Defendants for lack of personal jurisdiction.

### INTRODUCTION

As the plaintiff, ERC bears the burden of establishing personal jurisdiction over each of the Additional Entity Defendants, first by alleging in its complaint sufficient minimum contacts with the state of Pennsylvania, and then proving such contacts by a preponderance of the

evidence. Here, despite having already conducted extensive discovery with ample opportunity to pin down its jurisdictional bases for adding the Additional Entity Defendants to this suit, ERC's First Amended Complaint (the "**Complaint**") does not even attempt to show personal jurisdiction over the Additional Entity Defendants. The vague allegations in the Complaint regarding these defendants does not reveal any contact with Pennsylvania, let alone the level of contact that would be required to satisfy constitutional strictures governing the exercise of personal jurisdiction.

As explained below, the Court should dismiss the Complaint against the Additional Entity Defendants for lack of personal jurisdiction because (1) ERC has failed to allege sufficient contacts with the State of Pennsylvania on the part of the Additional Entity Defendants; (2) any attempt by ERC to rely on an alter-ego theory to establish jurisdiction over the Additional Entity Defendants would be meritless, as a parent company's contacts cannot be imputed to a subsidiary; and (3) any request by ERC for leave to amend to add the necessary jurisdictional allegations should be denied as, after extensive litigation and investigation, there is no excuse for ERC's failure to plead the requisite facts in the first instance.

## LEGAL STANDARD

Before a court may exercise personal jurisdiction, the "Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts within the [forum state]' so that defending the suit 'does not offend traditional notions of fair play and substantial justice.'" *Rodriguez v. City of Philadelphia*, 2017 WL 4957868, at *6 (E.D. Pa. Oct. 31, 2017) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Such "minimum contacts" are required to ensure that a defendant has "'fair warning'" that it may be

subject to suit in a state before being haled into court there.  *Rodriguez*, 2017 WL 4957868, at *6 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

There are two types of minimum contacts that will give rise to personal jurisdiction, and thus "two types of personal jurisdiction: general jurisdiction and specific jurisdiction." *Rodriguez*, 2017 WL 4957868, at *6.  General jurisdiction allows for the exercise of personal jurisdiction even where the defendant's "contacts with the state [] are unrelated to the cause of action."  *It's All Wireless, Inc. v. Woot, Inc.*, 2012 WL 3887041, at *1 (E.D. Pa. Sept. 7, 2012). The standard for establishing general jurisdiction is "demanding," as "due process requires the plaintiff to demonstrate that the non-resident defendant's contacts with Pennsylvania were 'continuous and systematic.'"  *It's All Wireless*, 2012 WL 3887041, at *1.

The Supreme Court has repeatedly held that a corporation's place of incorporation and principal place of business are the paradigm bases for general jurisdiction.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (no general personal jurisdiction over nonresident defendant in California suit); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (no general jurisdiction over foreign subsidiaries).  "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."  *Daimler*, 134 S. Ct. at 760.  General jurisdiction may exist beyond these paradigm "all-purpose forums," but only in rare instances where the corporation's affiliations with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Id.* at 761 (quoting *Goodyear*, 564 U.S. at 919) (granting motion to dismiss).

In order for the Court to exercise specific jurisdiction, "the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (citation omitted).  "When there is no

3

such connection, specific jurisdiction is lacking[,] regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (citing *Goodyear*, 564 U.S. at 931 n.6). Thus, specific jurisdiction "may be found where the plaintiff's claim is related to or arises out of the defendant's contacts with the forum, and the defendant had the minimum contacts with the forum necessary for the defendant to have reasonably anticipate[d] being haled into court there." *It's All Wireless*, 2012 WL 3887041, at *1 (citation omitted). To satisfy this standard, there must be "'some act by which the defendant purposely availed itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws.'" *Capitol Ins. Co. v. Dvorak*, 2010 WL 4290059, at *2 (E.D. Pa. Oct. 29, 2010) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Further, "jurisdiction must be the result of intentional contact, not mere 'random, fortuitous, or attenuated' acts." *Rodriguez*, 2017 WL 4957868, at *6 (citing *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)).

Even if a court finds such specific contacts, a court must also decide whether exercising specific jurisdiction "comport[s] with fair play and substantial justice." *It's All Wireless*, 2012 WL 3887041, at *1 (citation omitted). In other words, "'even if a defendant has the requisite minimum contacts with the forum state, other factors may militate against exercising jurisdiction.'" *Capitol Ins. Co.*, 2010 WL 4290059, at *2 (citing *Burger King*, 471 U.S. at 476).

Particularly important to this case, the "burden of establishing [that] jurisdiction is proper rests with the plaintiff." *It's All Wireless*, 2012 WL 3887041, at *1. Satisfying this burden requires more than mere "general averments in the complaint or unsupported statements" in an opposition brief. *Id.* Rather, "'once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to

4

establish personal jurisdiction.'" *Capitol Ins.*, 2010 WL 4290059, at * 2.  To do so, the plaintiff must submit "sworn affidavits or other competent evidence." *Id.*; *see also It's All Wireless*, 2012 WL 3887041, at *1 (The plaintiff "must establish[] with reasonable particularity sufficient contacts between the defendant and the forum state, by providing jurisdictional facts supported by affidavits or competent evidence.").  The plaintiff may not "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Capitol Ins.*, 2010 WL 4290059, at *2.

**ARGUMENT**

**I.   ERC HAS FAILED TO ALLEGE SUFFICIENT CONTACTS WITH THE STATE OF PENNSYLVANIA BY THE ADDITIONAL ENTITY DEFENDANTS.**

Here, despite extensive discovery, ERC has failed to include in its Complaint any allegations whatsoever demonstrating that the Court may constitutionally exercise personal jurisdiction over the Additional Entity Defendants.  Indeed, apparently emboldened by the Court's denial of prior motions to dismiss filed by other defendants, ERC does not even attempt to plead a basis for either specific or general jurisdiction over the Additional Entity Defendants.

As an initial matter, ERC's own allegations demonstrate that all of the thirteen Additional Entity Defendants are nonresidents, as none of them is organized under Pennsylvania law or maintains its corporate headquarters in Pennsylvania.  (Dkt. 182, ¶¶ 18–30).  Moreover, the Complaint otherwise fails to include any allegations that would tend to show either type of required minimum contacts that might give rise to personal jurisdiction.  First, there is no suggestion whatsoever of the "continuous and systematic" contact that would be required to justify the exercise of general jurisdiction.  Second, as to specific jurisdiction, the scant allegations directed to the Additional Entity Defendants do not reveal any specific contact with Pennsylvania, let alone contact giving rise to ERC's claims.

5

Indeed, nine of the thirteen Additional Entity Defendants are referred to only in group form, either through ERC's factually inaccurate and self-serving shorthand (the "Additional Fraudulent Transfer Recipient Subsidiaries") or alongside the rest of the Additional Entity Defendants as part of vague, general allegations.  There are only eight such allegations, and they do not show any contact with Pennsylvania by any of the nine Additional Entity Defendants:

- At Paragraphs 18 – 30, ERC introduces the parties and names each of the Additional Entity Defendants one by one, making clear that each of the Additional Entity Defendants is a nonresident;

- At Paragraph 33, ERC individually names each of the Additional Entity Defendants, but generally alleges, concerning the group as a whole, that the Additional Entity Defendants are part of a "series" of companies "with the name 'Bridger,'" and that such companies are purportedly "headed by the [] same people and share[] employees;"

- At Paragraph 34, ERC again individually names each of the Additional Entity Defendants, but it merely generally alleges that each of the Additional Entity Defendants is or was a subsidiary of Bridger Logistics, LLC;

- In Paragraph 43, ERC generally alleges that "there were no written contracts between Bridger Marketing, Bridger Logistics, and BTS or any of the Additional Fraudulent Transfer Recipient Subsidiaries;"

- In Paragraph 56, ERC generally alleges that "Defendants Rios, Gamboa, Bridger Logistics, and FGP [purportedly] caused BTS to forgive millions of dollars in accounts receivable that it was owed by other Bridger Logistics and FGP affiliates, including the Additional Fraudulent Transfer Recipient Subsidiaries;"

6

- At Paragraph 65, ERC again individually names each of the Additional Entity Defendants, but generally claims as to all of them that "BTS engaged in a series of intercompany transactions by which it transferred" assets to the Additional Entity Defendants;

- In Paragraph 68, ERC once again generally alleges that "Defendants Rios, Gamboa, Bridger Logistics, and FGP [purportedly] caused BTS to forgive millions of dollars in accounts receivable that it was owed by other Bridger Logistics and FGP affiliates, including the Additional Fraudulent Transfer Recipient Subsidiaries;" and, lastly,

- In Paragraph 69, ERC generally alleges that "BTS's revenue and profits were re-directed to Bridger Logistics, Bridger Rail Shipping, [and] the other Additional Fraudulent Transfer Recipient Subsidiaries."

(Dkt. 182, ¶¶ 18 – 30, 33, 34, 43, 56, 65, 68, 69.)  Again, none of these allegations shows any contact at all with the state of Pennsylvania, let alone the "continuous and systematic" contact required for general jurisdiction, or a specific contact giving rise to ERC's claims, as would be required for specific jurisdiction.

ERC at least makes specific allegations as to the other four Additional Entity Defendants—Bridger Swan Ranch, LLC, Bridger Real Property, LLC, Bridger Terminals, LLC, and Bridger Rail Shipping, LLC—but such allegations do nothing to show the requisite minimum contacts with Pennsylvania:

- As to Bridger Swan Ranch, LLC, ERC alleges in Paragraph 67 that BTS transferred "the Swan Ranch transloading facility" and an associated agreement to Bridger Swan Ranch, LLC; ERC does not allege that this facility is located in Pennsylvania or that the

referenced agreement is performed in whole or in part in Pennsylvania (and indeed they are not), or otherwise explain how this constitutes a contact with Pennsylvania;

- As to Bridger Real Property, LLC, ERC alleges in Paragraph 67 that "BTS granted Bridger Real Property, LLC, title to 15 acres of land in Laramie County, Wyoming;" ERC does not allege or explain how this constitutes a contact with Pennsylvania;

- As to Bridger Terminals, LLC, ERC alleges in Paragraph 67 that "BTS transferred tens of millions of dollars' worth of assets to Bridger Terminals, LLC," but ERC does not identify what these assets supposedly are, or how they, or this alleged transaction, supposedly create any contact with Pennsylvania; and

- As to Bridger Rail Shipping, LLC, ERC alleges in three places that Bridger Rail Shipping, LLC received some of the revenues from a crude oil supply arrangement with a refinery located in Pennsylvania (Monroe Energy LLC), and that Bridger Rail Shipping, LLC purportedly funded some of the payments to ERC under the Rail Services Agreement between BTS and ERC (Dkt. 182, ¶¶ 57, 65, 69); as this Court has recognized, however, merely dealing with (or even causing harm to) a party that the defendant knows has its "principal place of business [] located in the forum would be insufficient" to create personal jurisdiction; rather, the plaintiff must show that the defendant "expressly aim[ed] his conduct at" the forum state, *Capitol Ins.*, 2010 WL 4290059, at *3 (citing *IMO Indus., Inc. v. Kikert AG*, 155 F.3d 254, 256 (3d Cir. 1998).

(Dkt. 182, ¶ 67.)

In sum, none of ERC's allegations regarding the Additional Entity Defendants shows the requisite minimum contacts necessary for the constitutional exercise of personal jurisdiction.

12214840.4

## II. ANY ATTEMPT BY ERC TO RELY ON AN ALTER-EGO THEORY TO ESTABLISH JURISDICTION OVER THE ADDITIONAL ENTITY DEFENDANTS WOULD BE MERITLESS.

To the extent that ERC tries to avoid the jurisdictional shortcomings of its pleading by relying on an alter-ego theory, this too would fail. As an initial matter, ERC has asserted alter ego allegations against only one of the Additional Entity Defendants—Bridger Rail Shipping, LLC. (Dkt. 182, p. 20, ¶¶ 77–86.) Thus, ERC could not possibly rely on an alter-ego theory as to any of the other twelve Additional Entity Defendants.

In any case, here, any alter-ego theory of personal jurisdiction would fail as to Bridger Rail Shipping, LLC or any of the other Additional Entity Defendants. This is because any such theory necessarily is premised on imputing a parent entity's alleged contacts to a subsidiary, *i.e.*, using one or more of Bridger Logistics, LLC's, Ferrellgas, L.P.'s, or Ferrellgas Partners, L.P.'s alleged contacts with Pennsylvania to establish personal jurisdiction over their present or former subsidiaries, the Additional Entity Defendants. While some courts have recognized that an alter-ego theory may be used to try to impute a <u>subsidiary</u>'s contacts <u>to a parent</u>, the converse is not allowed. As the Tenth Circuit has aptly explained:

> When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former. . . . In such situations, attribution of contacts to the [controlling] individual defendant merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual. The same situation obtains in those cases holding a corporate parent to answer for conduct within the forum carried out by an alter ego subsidiary.
>
> But the rationale of these cases does not support the proposition that, because the court has jurisdiction over a parent corporation or dominating individual, without more, it has jurisdiction over the alter ego corporation. The dominated corporation does not direct and control its dominating corporate or individual alter ego. Accordingly, it is unfair to impute to the dominated corporation the forum contacts of its alter ego. . . . [The alter ego defendants] have, as much as any other defendant, a constitutionally protected liberty interest in not being subject to the binding judgments of a forum with which [they have] established no meaningful contacts, ties, or relations.

9

*Home-Stake Prod. v. Talon Petroleum*, 907 F.2d 1012, 1020–21 (10th Cir. 1990) (internal quotation marks and citations omitted).

Numerous courts in other federal circuits have followed the Tenth Circuit's reasoning. *See, e.g.*, *Thomas Global Group L.L.C. v. Watkins*, 2016 WL 3946774, at *3 (D.N.J. July 19, 2016) ("The Tenth Circuit's reasoning is sound, and therefore this Court rejects Plaintiff's theory of alter ego jurisdiction in this case."); *Quantum Sail Design Group, LLC v. Jannie Reuvers Sails, Ltd.*, 2014 WL 266409, at * 6–7 (W.D. Mich. Jan. 23, 2014) (applying *Home-Stake* rationale, and deeming it "persuasive"); *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1302 (N.D. Ga. 2013) ("The Court finds this reasoning sound, and rejects Plaintiffs' argument that personal jurisdiction exists over [defendants] simply because these entities may be alter egos of [another defendant]."); *Mewbourne v. Cheytac, USA, LLC*, 2013 WL 1346569, at *7 (N.D. Ala. Mar. 29, 2013) ("The court finds the reasoning in *Home-Stake* persuasive.").

So too should this Court. Any attempt by ERC to impute any of Bridger Logistics, LLC's, Ferrellgas, L.P.'s, or Ferrellgas Partners, L.P.'s alleged Pennsylvania contacts to the Additional Entity Defendants should be rejected as a matter of law.

**III.   ANY REQUEST BY ERC FOR LEAVE TO AMEND SHOULD BE DENIED.**

The purpose of allowing parties to amend pleadings is to "enabl[e] a party to assert matters that were overlooked or were unknown at the time the original pleading was filed." *Rehabilitation Inst. of Pittsburgh v. Equitable Life Assur. Soc. of U.S.*, 131 F.R.D. 99, 101 – 02 (W.D. Pa. 1990) (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1473). Thus, although "leave to amend shall be freely given when justice so requires," a court "may withhold leave to amend if the moving party knew the facts" on which a claim is "based at the time of the original pleading and no excuse exists for the failure to plead them." *Id.*; *see also Priestly v. Am. Airlines, Inc.*, 1991 WL 64459, at * (S.D.N.Y. Apr. 12, 1991) ("[L]eave to amend

may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading.").

Here, ERC has had an extended period in which to conduct discovery in this matter and otherwise investigate its purported bases for asserting claims in this forum against the Additional Entity Defendants. Any request for leave to amend should be denied.

## CONCLUSION

ERC has failed to meet its burden to establish personal jurisdiction over the Additional Entity Defendants, as its Complaint does not allege sufficient contacts with Pennsylvania. Further, any attempt to use the alleged contacts of the Additional Entity Defendants' parent companies (former parent companies, in some cases) to establish jurisdiction fails as a matter of law. For these reasons, the Additional Entity Defendants respectfully ask the Court to enter an order ruling that it lacks personal jurisdiction over the Additional Entity Defendants, and dismissing the First Amended Complaint in its entirety and with prejudice as to the Additional Entity Defendants. Further, leave to amend should be denied, as ERC has no excuse for its failure to properly allege jurisdiction in the first instance.

Dated: October 5, 2018

          Respectfully submitted,

          /s/ Richard L. Scheff
          Richard L. Scheff (I.D. No. 35213)
          Michael C. Witsch (I.D. No. 313884)
          ARMSTRONG TEASDALE, LLP
          1500 Market Street
          12th Floor, East Tower
          Philadelphia, PA 19102
          Telephone: (215) 246-3469
          Facsimile: (215) 569-8228
          rlscheff@armstrongteasdale.com
          mwitsch@armstrongteasdale.com

        Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
        BRYAN CAVE LEIGHTON PAISNER LLP
        1290 Avenue of the Americas
        New York, New York 10104
        Telephone:  (212) 541-2000
        Facsimile:  (212) 541-4630
        lgscarborough@bclplaw.com

        Jacob A. Kramer (Admitted *Pro Hac Vice*)
        BRYAN CAVE LEIGHTON PAISNER LLP
        1155 F Street, NW
        Washington, D.C. 20004
        Telephone:  (202) 508-6000
        Facsimile:  (202) 508-6200
        jake.kramer@bclplaw.com

        Brian C. Walsh (Admitted *Pro Hac Vice*)
        Alicia Ragsdale Olszeski (Admitted *Pro Hac Vice*)
        BRYAN CAVE LEIGHTON PAISNER LLP
        211 North Broadway, Suite 3600
        St. Louis, Missouri 63102
        Telephone:  (314) 259-2000
        Facsimile:  (314) 259-2020
        brian.walsh@bclplaw.com
        ali.ragsdale@bclplaw.com

        Sarah L. Hartley (Admitted *Pro Hac Vice*)
        BRYAN CAVE LEIGHTON PAISNER LLP
        1700 Lincoln Street, Suite 4100
        Denver, Colorado 80203
        Telephone:  (303) 861-7000
        Facsimile:  (303) 866-0200
        sarah.hartley@bclplaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2018, the foregoing was filed with the Court's electronic filing system, which sent electronic notice to all counsel of record.

        /s/ Michael C. Witsch
        Counsel for Defendant