**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EDDYSTONE RAIL COMPANY, LLC,
          Plaintiff/Counter-defendant,

    v.

JULIO RIOS, JEREMY GAMBOA,
BRIDGER LOGISTICS, LLC,
FERRELLGAS PARTNERS, L.P.,
FERRELLGAS, L.P., BRIDGER RAIL
SHIPPING, LLC, BRIDGER REAL
PROPERTY, LLC, BRIDGER STORAGE,
LLC, BRIDGER SWAN RANCH, LLC,
BRIDGER TERMINALS, LLC, BRIDGER
TRANSPORTATION, LLC, J.J. ADDISON
PARTNERS, LLC, J.J. LIBERTY, LLC,
BRIDGER ADMINISTRATIVE SERVICES
II, LLC, BRIDGER ENERGY, LLC,
BRIDGER LAKE, LLC, BRIDGER
LEASING, LLC, and BRIDGER MARINE,
LLC,
          Defendants,

BRIDGER LOGISTICS, LLC,
FERRELLGAS PARTNERS, L.P., and
FERRELLGAS, L.P.,
          Defendants/Counterclaimants.

No. 2:17-cv-00495-RK

---

**BL/FG DEFENDANTS' SUR-REPLY IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO COMPEL**

## I.    INTRODUCTION.

The Reply filed by Plaintiff Eddystone Rail Company, LLC ("Eddystone") on October 2, 2018 does not take issue with several important points made in the Response filed on September 21 by the BL/FG Defendants.[1]  As a result, the following items are undisputed:

---

[1] "BL/FG Defendants" refers to Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P.

- Eddystone has not provided a certification of counsel, as required by Federal Rule of Civil Procedure 37(a)(1) and Local Rule 26.1(f).

- Eddystone never made a Rule 34 request for the accounting inspection it now seeks to compel.

- Eddystone brought up the concept of an inspection as a question ("Is that something to which your side is amenable?"), not as a demand for discovery.

- The issue of an inspection arose only in connection with particular documents—not always the same ones—and not in the open-ended form that Eddystone now seeks.

- The limitations on the inspection proposed in the Reply—read-only access, supervision by Ferrellgas personnel—have not been suggested previously, are not discussed in the Motion to Compel or Eddystone's proposed order, and have not been negotiated by the parties.

- Other questions raised by the BL/FG Defendants in their Response, including who will bear the expenses of an inspection and whether Eddystone will be able to download or print information, still have not been addressed.

- The BL/FG Defendants believed that the parties had reached an agreement on the scope of Requests for Production Nos. 20 and 21 on July 30, and Eddystone believes that the parties did not.

Eddystone nevertheless argues that its informal suggestions that an accounting inspection would be appropriate are good enough for Rule 34 purposes and that it would be "happy to work out the details with Ferrellgas." (Dkt. 189 at 8.)  What is more, Eddystone faults the BL/FG Defendants for not stating with precision how burdensome, disruptive, or expensive this to-be-

negotiated process will be.  This is, at best, a half-baked dispute that has no business before this Court.

With respect to Requests for Production Nos. 20 and 21, there may be some disagreement between the parties.  But Eddystone did not clearly identify that disagreement when it broke off discussions in early August, nor in the Motion to Compel.  And the Reply is no better. Eddystone plainly wants something more from the BL/FG Defendants, but Eddystone has not explained what it is, or asserted that it is excluded from the vast collection of documents already produced, or even provided any basis for the Court or anyone else to believe that such a thing even exists.[2]

## II.   THE COURT SHOULD DENY EDDYSTONE'S REQUEST FOR AN INSPECTION.

### A.   Eddystone's Informal Suggestions About an Inspection Cannot Serve as the Foundation for a Motion to Compel.

Eddystone does not contend that it prepared and served an inspection request under Rule 34, which it plainly did not.  But it argues that its informality should be excused, because "Rule 34 contains no requirement that a party draft its document requests in fully captioned pdf files and attach them to an email rather than make them in the body of the email itself."  (Dkt. 189 at 6.)  Setting aside for a moment the fact that the parties are arguing about inspection requests and not document requests, Eddystone's point is literally correct.  But it is irrelevant, because the requirement of at least minimal formality is found elsewhere.  Rule 26(g)(1) requires that "every discovery request, response, or objection must be signed by at least one attorney of record," who thereby makes a certification that parallels Rule 11.  Fed. R. Civ. P. 26(g)(1).  And the recipient

---

[2]  The parties have re-engaged in discussions surrounding these issues following Eddystone's filing of the Reply.  The undersigned will update the Court if they are able to resolve or more clearly identify the nature of the disputes.

has "no duty to act on an unsigned disclosure, request, response, or objection until it is signed." Fed. R. Civ. P. 26(g)(2).  *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1311 (3d Cir. 1995) (affirming denial of motion to compel that was grounded on party's letter purporting to adopt discovery requests served by another party, because "the prerequisite for compelling discovery was never fulfilled").

Some courts have nevertheless permitted parties to move to compel on the basis of an informal request.  *See, e.g., Wells Fargo Bank, N.A. v. Konover*, No. 3:05-cv-1924, 2010 WL 11561491, at *4 (D. Conn. June 22, 2010) (noting that the "federal courts are divided concerning whether an order to compel may be issued to enforce an informal document request" and citing 19 cases reaching various conclusions).  Informal requests are particularly uncontroversial when the recipient agrees to produce the requested document, as in *Swope v. National Presto Industries, Inc.*, No. 89-2731, 1990 WL 149203, at *2 (E.D. Pa. Oct. 3, 1990), or agrees to treat the informal request as an amendment to an earlier formal request, as in *Trask v. Olin Corp.*, 298 F.R.D. 244, 260 (W.D. Pa. 2014).  But the minimum requirements of an enforceable informal request are that the information requested "is described with reasonable particularity, and that both parties were aware which documents [are] involved."  *Dixon v. Cappellini*, 88 F.R.D. 1, 2 (M.D. Pa. 1980); *see also Swope*, 1990 WL 149203, at *2 (applying same standard); *cf. Wells Fargo*, 2010 WL 11561491, at *6 (denying motion to compel because "the scope of the request was unclear; and it was not clear that the request was one to which the defendants were required to make a formal response or objection").

Eddystone's shifting suggestions and justifications for requesting an inspection disqualify it from moving to compel.  Eddystone first suggested an inspection last October because of what it contended were delays in the production of general-ledger data of Bridger Transfer Services

and Bridger Logistics.  (Dkt. 93 at 8.)  That information was produced long ago, and the issue disappeared until June 2018, when the parties were discussing accounting sub-ledgers. Eddystone did not demand an inspection to look for those documents; counsel instead asked, "Is that something to which your side is amenable?"  (Dkt. 183-5 at 15.)[3]  Counsel raised a similar question in early July:  "As I asked in my previous email, would it be possible for our accountants to perform an inspection so that they can better understand how these documents relate?"  (*Id.* at 13.)  By late July, Eddystone was taking a different tack, offering to perform an inspection in connection with its request for backup documents for 27,000 transactions.  On July 20, counsel said:  "If FGP does not want the burden of producing them, we are happy to perform an inspection."  (*Id.* at 9.)  Eddystone repeated that theme on July 30, stating that "[i]f they are too burdensome to produce, we are happy to inspect."  (*Id.* at 4.)

The inspection demanded in the Motion to Compel is not tethered to any of the contexts in which Eddystone raised the issue previously.  In fact, even though Eddystone discussed the 27,000 backup documents at length in the Motion to Compel, it now disclaims any attempt to require their production at all.  (Dkt. 189 at 5 n.1 & 11.)  The Motion to Compel instead requests the Court to "allow Eddystone to inspect Ferrellgas's accounting records and order a full production of Ferrellgas's accounting records."  (Dkt. 183 at 4.)[4]  And Eddystone's proposed order would require "a full inspection of Ferrellgas's accounting system on site."  (Dkt. 183-8.)

---

[3] Page references are to the page numbers at the bottom of each page of this document, not the ECF page numbers.

[4] Eddystone did not explain in the Motion to Compel which accounting records it contended had not been fully produced, except for the backup documents for the 27,000 transactions that it now says are not implicated by the motion.  Eddystone also has not taken issue with Ferrellgas's extensive explanation of the breadth of its accounting production in the Response.  Its Reply is limited to the inspection issue.

This is nothing short of a fishing expedition, and it vastly exceeds what Eddystone suggested in informal discussions might be the purpose or scope of an inspection.

In short, Eddystone has not met and cannot meet the standard set out in the informal-request cases:  that "the material requested is described with reasonable particularity such that both parties were aware of what document is involved."  *Swope*, 1990 WL 149203, at *2.  The Motion to Compel should be denied as procedurally improper and fundamentally unfair.

**B.      The BL/FG Defendants Cannot Reasonably Be Expected to Itemize the Burdens and Expenses Associated with an Inspection that Eddystone Has Not Fully Crystallized.**

Because Eddystone does not deny that an inspection of Ferrellgas's accounting systems will be intrusive, expensive, and burdensome, we will not repeat the portions of our Response that address those issues.  But Eddystone faults the BL/FG Defendants for failing to be more specific about the burdens and expenses that will be involved.  (Dkt. 189 at 10.)

At the same time, however, Eddystone seeks to negotiate the terms and conditions of the inspection and suggests that further negotiations would be appropriate.  In response to the BL/FG Defendants' concerns about unfettered access, Eddystone proposes to work "under the supervision of whatever personnel Ferrellgas deems appropriate."  (*Id.* at 8.)  Concerns about data integrity, Eddystone suggests, can be addressed by "read-only access to the accounting system," which its expert speculates Ferrellgas probably can implement.  (*Id.* at 11.)  Are there other issues?  Eddystone professes that it is "happy to work out the details with Ferrellgas, with the Court's assistance if necessary."  (*Id.*at 8.)

In sum, the proposed inspection is a moving target.  Even Eddystone does not know what it will look like or how it will be accomplished.  That is one reason why the Motion to Compel should not be before the Court at all, but it also demonstrates the absurdity of Eddystone's

Case 2:17-cv-00495-JD   Document 208   Filed 10/08/18   Page 7 of 9

argument that the BL/FG Defendants should be required to determine and quantify the likely
burden and expense.

### III.   EDDYSTONE HAS NOT DEMONSTRATED ANY BASIS FOR REQUIRING PRODUCTION OF ALL DOCUMENTS ENCOMPASSED BY REQUEST NOS. 20 AND 21 AND DISREGARDING THE PARTIES' PRIOR AGREEMENTS.

As discussed in the Response and the supporting Declaration of Timothy J. Davis (Dkt.
187-2), the BL/FG Defendants believe that they have provided a complete response and
production to Eddystone's Request Nos. 20 and 21, as amended by Eddystone in October 2017
(Dkt. 187-1 at ECF pp. 16-17) and as further agreed in discussions among counsel.  That
production has included not only "accounting records," as Eddystone claims (Dkt. 189 at 13),
and documents located by manual searches, but also "any responsive documents identified by
searching electronically stored information ('ESI') from certain agreed custodians and sources
using certain agreed search terms . . . unless it is clearly irrelevant (meaning no party could
contend in good faith that the document is relevant) or subject to an applicable privilege."  (Dkt.
183-3 at ECF pp. 34-36.)

The BL/FG Defendants acknowledged in their Response that it is possible that, because
of a miscommunication or misunderstanding, there remains some dispute about the scope of
Request Nos. 20 and 21.  (Dkt. 187 at 16.)  But the BL/FG Defendants also pointed out that they
"genuinely do not know what it is."  (*Id.*)  Nothing in the Reply helps matters.  Eddystone pleads
that "[o]f course" it didn't make the concessions that the BL/FG Defendants understood it to
make; such a thing would be "simply implausible."  (Dkt. 189 at 13.)  But neither of these bold
assertions is backed by a declaration explaining what Eddystone believes that it actually did or
said.

A party moving to compel discovery has the obligation to "direct the Court to the
particular discovery request at issue and inform the court of how the response received to that

request—if any—is deficient." *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-cv-00946, 2015 WL 5042918, at *7 (E.D. Pa. Aug. 26, 2015).  Because Eddystone has failed to cross this simple threshold, the Motion to Compel should be denied.

But even if the Court is able to figure out what Eddystone has not articulated, the relief requested by Eddystone is a *non sequitur*:  it wants "full production of documents responsive to the Amended Requests 20 and 21."  (Dkt. 189 at 15.)  That would be appropriate only if Eddystone had made *no concessions at all* since serving the amended requests a year ago.  If that were the case, it would have been simple for Eddystone to say so in the Motion to Compel and the Reply.  (It also would raise questions about the sincerity of Eddystone's meet-and-confer negotiations.)  Eddystone has not made that argument, nor could it.  If the Court orders the BL/FG Defendants to produce additional documents in response to Request Nos. 20 and 21, the order should, at the very least, exclude documents that Eddystone has already agreed need not be produced.

## IV.   CONCLUSION.

For these reasons, as well as those in the Response, the Motion to Compel should be denied.

Dated: October 8, 2018                    Respectfully submitted,

   /s/ Richard L. Scheff
Richard L. Scheff (I.D. No. 35213)
Michael C. Witsch (I.D. No. 313884)
ARMSTRONG TEASDALE LLP
1500 Market Street
12th Floor, East Tower
Philadelphia, Pennsylvania 19102
Telephone:  (800) 243-5070
Facsimile:  (215) 569-8228
rlscheff@armstrongteasdale.com
mwitsch@armstrongteasdale.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-4630
lgscarborough@bclplaw.com

Jacob A. Kramer (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 508-6000
Facsimile:  (202) 508-6200
jake.kramer@bclplaw.com

Brian C. Walsh (Admitted *Pro Hac Vice*)
Alicia Ragsdale Olszeski (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St.  Louis, Missouri 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
brian.walsh@bclplaw.com
ali.olszeski@bclplaw.com

Sarah L. Hartley (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200
sarah.hartley@bclplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2018, the foregoing was filed with the Court's electronic filing system, which sent electronic notice to all counsel of record.

/s/ Michael C. Witsch
Michael C. Witsch

9