**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **EDDYSTONE RAIL COMPANY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 17–cv–00495 |
| | ) | |
| **BRIDGER LOGISTICS, LLC, JULIO RIOS,** | ) | |
| **JEREMY GAMBOA, FERRELLGAS** | ) | |
| **PARTNERS, L.P., FERRELLGAS L.P.,** | ) | |
| **BRIDGER ADMINISTRATIVE SERVICES** | ) | |
| **II, LLC, BRIDGER MARINE, LLC,** | ) | |
| **BRIDGER RAIL SHIPPING, LLC,** | ) | |
| **BRIDGER REAL PROPERTY, LLC,** | ) | |
| **BRIDGER STORAGE, LLC, BRIDGER** | ) | |
| **SWAN RANCH, LLC, BRIDGER** | ) | |
| **TERMINALS, LLC, BRIDGER** | ) | |
| **TRANSPORTATION, LLC, BRIDGER** | ) | |
| **ENERGY, LLC, BRIDGER LEASING, LLC,** | ) | |
| **BRIDGER LAKE, LLC, J.J. LIBERTY, LLC,** | ) | |
| **J.J. ADDISON PARTNERS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**PLAINTIFF EDDYSTONE RAIL COMPANY'S RESPONSE IN OPPOSITION TO
DEFENDANT JULIO RIOS'S MOTION TO COMPEL INTERROGATORY
RESPONSES**

**INTRODUCTION**

Contrary to the usual rule in this Court, Defendant Rios seeks to compel Eddystone to provide early answers to three highly burdensome contention interrogatories.  Each of the three interrogatories at issue seeks information that is within the knowledge of Defendants and that Eddystone is seeking to develop as part of ongoing fact and expert discovery in this case.  The Court should follow the long-established rule by which contention interrogatories need not be answered until the end of discovery when the information at issue is within the propounding party's knowledge.

Rios essentially requests that Eddystone describe all of the facts supporting its fraudulent transfer allegations long prior to the close of fact discovery.  This would be highly inefficient given that fact discovery is still ongoing and Eddystone would simply have to provide a supplemental answer at the close of discovery.  As a result, there will be no clarification or narrowing of the issues.  Any position Eddystone takes in answering the interrogatories now will not narrow the issues for Rios because Eddystone will likely be forced to revise its position after fact discovery closes and Eddystone's accounting expert issues his report.

Meanwhile, Rios has no compelling need for early answers to these interrogatories.  The First Amended Complaint contains detailed allegations describing specific facts relevant to its alter ego and fraudulent transfer claims.  And there is no discovery of these matters for Rios to take from Eddystone because they are entirely within the knowledge of Defendants.  The only reason for Rios to seek responses now is so that he may calibrate his own deposition answers to what Eddystone knows rather than providing a complete and truthful recounting of events.  That is not a proper purpose for contention interrogatories, and the Court should deny the motion to compel.

## BACKGROUND

This litigation arises out of the efforts of Ferrellgas, Julio Rios, and Jeremy Gamboa to evade the obligation to pay Eddystone for five years of capacity at an Eddystone, PA facility that "transloads" crude petroleum from rail tankcars to Delaware River barges. The Defendants evaded this obligation by stripping Eddystone's contract counterparty, Bridger Transfer Services, LLC (BTS), of assets to render it judgment-proof, then having BTS simply default. Eddystone alleges that the Defendants' actions give rise to claims of alter ego, fraudulent transfer, and breach of fiduciary duty

Currently the Parties are in the midst of fact discovery, with Eddystone attempting to understand the details of the fraudulent transfers at issue and the manner in which Defendants transacted in BTS. The Court set a document production completion deadline of August 13, 2018, but Defendants have continued to produce documents well after the deadline, with 333,000 pages produced between August 13 and October 2 and – Eddystone has been told – more on the way. The Parties are working to schedule fact depositions for late October and early November.

Meanwhile, Defendants have served a total of forty-seven interrogatories on Eddystone to date. Many of these are highly burdensome, including the three at issue on this motion to compel. Notwithstanding that Defendants have styled this set of interrogatories as having been served on behalf of Rios alone in an effort to inflate the number of interrogatories that they are permitted to serve, the interrogatories expressly call for information regarding both Rios and Gamboa.

Interrogatories 3 and 4 demand Eddystone "describe in detail the factual basis for your contentions regarding Rios and Gamboa" in connection with Counts Two and Three, for Intentional Fraudulent Transfer and Constructive Fraudulent Transfer. Dkt. 188-1, Ex. 2 at 2-3.

More specifically, they require Eddystone to "identify[] for each transfer you contend to be fraudulent the following: (1) what was transferred; (2) the entity from which the transfer was made; (3) the entity or individual to whom the transfer was made; (4) when the transfer occurred; (5) the value (in dollars) of the thing transferred; (6) the benefit (in dollars) received by: (a) Rios; and/or (b) Gamboa from the transfer; and (6) the method and manner of calculating the: (a) value of the thing transferred; and (b) the benefits received by Rios and/or Gamboa from the transfer." *Id.*

Interrogatory 6 asks that Eddystone "describe in detail the factual bases of your allegation in paragraph 29 that '[t]he course of dealing among the Bridger entities shows that they either operated with one another without regard to corporate entities,' identifying each and every practice by Rios or Gamboa that forms the basis of that allegation." *Id.* at 4.

On August 10, 2018, Eddystone served its objections and responses to Rios and Gamboa's second set of interrogatories. Eddystone objected to Interrogatories 3 and 4 on the grounds that they were "premature, because Eddystone's investigation of the facts is ongoing. Identification of each transfer at issue will be detailed in an expert report. Accordingly, Eddystone will update and supplement its response at the end of expert discovery, in accordance with Rule 33(a)(2)." *Id.* at 3-4.

With respect to Interrogatory 6, Eddystone specifically objected that "the Interrogatory is overly burdensome insofar as it asks Eddystone to describe in detail each and every practice by Rios and Gamboa over a three-year period that forms the basis of its allegation in paragraph 29, particularly given that those practices are best known to Rios and Gamboa. Eddystone further objects that the Interrogatory is premature, because Eddystone's investigation of the facts is ongoing." Dkt. 188-1, Ex. 2 at 5. Despite its objection, Eddystone offered a preliminary answer

for Interrogatory 6: "Rios and Gamboa caused the Bridger entities to enter into business arrangements with one another without written contracts, to incur debts to one another, and to forgive those debts for no consideration whenever convenient for the Bridger entities' owners and in the operation of their business treated their entities as an undifferentiated whole. Eddystone will update and supplement its response at the end of fact discovery, in accordance with Rule 33(a)(2)." *Id.*

On August 10, 2018, Eddystone moved to amend its complaint, which the Court granted on September 7, 2018. *See* Dkt. 178, 181. The current scheduling order provides for fact discovery to close on October 15, 2018. Dkt. 157 at 2. However, the parties have agreed that fact discovery will need to be extended. Expert discovery is currently set to end on January 28, 2019, 15 weeks after the close of fact discovery. *Id.*

## LEGAL STANDARD

Rios's Interrogatories 3, 4, and 6 are contention interrogatories, interrogatories that require the respondent to explain the basis for its legal theories. Under Rule of Civil Procedure 33, courts may order that contention interrogatories "need not be answered until designated discovery is complete, or until a pretrial conference, or some other time." Fed. R. Civ. P. 33(a)(2); *see also McCrink v. Peoples Benefit Life Ins. Co.*, No. Civ. A.2:04CV01068LDD, 2004 WL 2743420, at *4 (E.D. Pa. Nov. 29, 2004) ("Interrogatory 1 is a contention interrogatory. As such, defendant need not answer the contention interrogatory until the close of discovery."); *Dalmatia Import Group, Inc. v. Foodmatch, Inc.*, No. 16-2767, 2016 WL 5721161, at *1 (E.D. Pa. Oct. 3, 2016) (holding that a party need not respond completely to contention interrogatories prior to the close of discovery). As Rios acknowledges, "there is no shortage of cases in this district allowing plaintiffs to delay responding to contention interrogatories." Mot. at 8.

Where a propounding party seeks to compel an immediate response, it "bears the burden of proving how an earlier response assists the goals of discovery." *B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994). If that burden is not met, the responding party need not answer until the close of discovery.

Courts exercise their discretion to set the time for responding to contention interrogatories under Fed. R. Civ. P. 33(a)(2) based on whether the information is within the knowledge of the propounding party or the receiving party. Courts "should exercise particular caution in granting early responses to contention interrogatories when the complaint is not facially infirm and defendants appear to have control over or adequate access to much of the evidence to their alleged misconduct." *United States v. Educ. Mgmt. LLC*, No. 2:07-CV-00461, 2013 WL 3854458, at *20 (W.D. Pa. May 14, 2013)); *see also City of Moses Lake v. United States*, 2005 WL 8158741, at *3 (E.D. Wa. Nov. 29, 2005) ("whether the information is in the hands of the proponent or respondent" is "considered in determining the propriety of contention interrogatories").

## ARGUMENT

**I.     The Court Should Defer Answers to Rios's Interrogatories 3, 4, and 6 until the End of Expert Discovery Because Defendants Have the Knowledge of the Transfers.**

Interrogatories 3, 4, and 6 are broad contention interrogatories served prior to the close of discovery that seek to obtain from Eddystone information regarding Defendants' treatment of BTS that is within Defendants' knowledge. The transfers and alter ego relationships implicated by these interrogatories all occurred internally to Ferrellgas at the direction of Rios and Gamboa while Rios was CEO of Bridger Logistics and Gamboa was COO. Eddystone has no insight whatsoever into these matters other than via litigation counsel. Therefore, it is not appropriate to

demand that Eddystone tell Rios and Gamboa facts within their and FGP's knowledge before Eddystone has had a chance to complete discovery or depose witnesses.

In determining which contention interrogatories need to be answered before the end of discovery, courts distinguish between issues on which the facts are in the possession of the propounding and receiving parties and rule that parties do not need to answer contention interrogatories asking for facts in the propounding party's control until after discovery is completed. As explained in a leading decision on this issue, courts should "be especially vigilant" about permitting early contention interrogatories "when defendants appear to have control over or adequate access to much of the evidence relevant to their alleged misconduct." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 339 (N.D. Cal. 1985); *accord United States v. Educ. Mgmt. LLC*, No. 2:07-CV-00461, 2013 WL 3854458, at *20. By contrast, courts have required the respondent to provide responses to contention interrogatories requesting information in respondent's possession, custody or control.

For this reason, courts "look with considerable skepticism at sets of contention interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. at 338. That is exactly what Rios's interrogatories 3, 4, and 6 do: they seek all of the facts underlying Eddystone's intentional fraudulent transfer, constructive fraudulent transfer, and alter ego allegations respectively. That is not a proper approach for pre-close of discovery contention interrogatories. "A party who wants early answers to contention interrogatories must hand-craft a limited set of questions." *Id.* Where Defendants have done so, Eddystone has responded, such as in response to Rios's Interrogatory 5. Dkt. 188-1, Ex. 2 at 4. But Eddystone is not required to lay out its entire fraudulent transfer and alter ego case in the middle of fact discovery.

This is particularly axiomatic here because the answers to interrogatories 3, 4, and 6 depend not only on facts in Defendants' possession of which Eddystone is still attempting to obtain discovery but ultimately analysis by its forensic accounting expert.  Interrogatories 3 and 4 call for precise calculations of the "value of the thing transferred" and "the benefits received by Rios and/or Gamboa from the transfer," as well as "the method and manner of calculating" these figures.  *Id.* at 3-4.  These are complex and technical issues.  Determining these values and benefits requires the expert opinions of the forensic accountants Eddystone has retained for this litigation.

Courts decline to compel early responses to contention interrogatories when the parties anticipate filing expert reports that will address the very substance of the contentions inquired about.  In *BB&T Corp. v. United States*, 233 F.R.D. 447, 450 (M.D.N.C. 2006), the court found that "when there is an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery."  And in *Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC RNBX, 2010 WL 3705868 (C.D. Cal. Sept. 17, 2010), interrogatories sought precise financial calculations, and the court held the motion in abeyance because "this interrogatory can be best responded to at the close of expert discovery."  *Id.* at *4.

Similarly, in *Nguyen v. Roth & Rau AG*, No. AMD-06-1290, 2009 WL 10682035 (D. Md. Mar. 24, 2009), "where the expert opinions will likely be key to identifying the supportive facts" for the plaintiffs' theory of liability, the court "permit[ted] plaintiffs to supplement their answers to defendant's interrogatories after plaintiffs' expert reports are complete."  *Id.* at *2; *see also Par Pharm., Inc. v. TWi Pharm., Inc.*, No. CCB-11-2466, 2012 WL 12548935, at *1 (D. Md. Oct. 4, 2012) (holding that "answers to contention interrogatories may be deferred until the

completion of expert discovery to minimize the burden on the responding party"); *WFC Holdings Corp. v. United States*, No. CV 07-3320 JRT/FLN, 2009 WL 10678229, at *1 (D. Minn. Mar. 30, 2009) (denying motion to compel more detailed answer to interrogatory without prejudice to renewing its motion after expert discovery closed); *Francis v. Lakewood Eng'g & Mfg. Co.*, No. 05-2429 MAV, 2006 WL 8434945, at *1 (W.D. Tenn. July 18, 2006) (allowing plaintiffs to postpone their answer to certain contention interrogatories "until their expert has examined the fan and component part and rendered an opinion.").

In re Domestic Drywall Antitrust Litig., 300 F.R.D. 228, 230 (E.D. Pa. 2014), on which Rios heavily relies, is wholly distinguishable.  There, Judge Baylson did not order an early response to contention interrogatories of the sort that Rios has served here.  In fact, the premise of his decision was that the interrogatories at issue in that case "are not truly 'contention' interrogatories" at all.  *Id.* at 230.  Rather than the plaintiff's calculations underlying the contentions about their claims, *Domestic Drywall* required plaintiffs to disclose concrete "facts," specifically, "the names of the alleged conspirators, dates of communications, and the products subject to price fixing."  *Id.*  By contrast, Rios seeks expert calculations of the value of transferred assets and the "method and manner of calculating the[ir] . . . value."  Those core contentions will be at issue in expert discovery and are very different than a simple identification of facts such as "the identities of the products, individuals who discussed prices with competitors, and the dates and substance of the communications."  *Id.* at 231.[1]

---

[1] *American Civil Liberties Union v. Gonzales*, 237 F.R.D. 120, 123 (E.D. Pa. 2006), is even more off point.  There, the Court ordered responses to contention interrogatories served *after the close of discovery* and where the information at issue was in the hands of the responding party.  Rios claims that *Bove v. Worlco Data Sys., Inc.*, No. CIV.A. 86-1419, 1986 WL 11258, at *1 (E.D. Pa. Oct. 8, 1986), supports early answers to contention interrogatories "only three months after the action was filed."  Mot at 8.  But Rios fails to note the key to Judge Pollak's decision in that case:  the same issues had been addressed in "prior state court litigation dating

It would be inefficient for Eddystone to provide an incomplete answer to the interrogatories now and then provide a supplemental answer at the end of expert discovery. This is not a case in which "compelling the interrogatories will increase the efficiency of the discovery process," and "[e]fficiency prescribes that the parties should not be obliged to answer contention interrogatories repeatedly." *Educ. Mgmt.*, 2013 WL 3854458, at *24. Any position Eddystone takes in answering the interrogatories now will not narrow the issues for Rios. This is because Eddystone likely will be forced to revise its position after fact discovery is complete and its accounting expert issues his report. In the interest of efficiency, Eddystone should be permitted to answer after its accounting expert has issued his report and discovery closes.

## II.    Rios Fails to Articulate a Compelling Need for an Early Response to his Contention Interrogatories

At the same time that requiring early answers to Rios's broad contention interrogatories would be highly burdensome to Eddystone, Rios does not enunciate a single reason that he needs answers now. Each of his supposed explanations collapses upon inspection.

First, there is no merit to Rios's claim that he remains in the dark about his alleged misconduct. Rios argues that "[f]or 18 months it has been impossible for Rios to ascertain what was transferred, what role he is supposed to have played in each transfer, and the benefit he allegedly received from each transfer." Mot. at 7. This is incorrect. Eddystone's First Amended Complaint (FAC) alleges very specific facts regarding the fraudulent transfers and alter ego claims. The FAC alleges that Rios and the other Defendants caused BTS to transact business with its affiliates without written contracts, on terms that did not reflect dealings at arms' length. FAC ¶¶ 43-44, 47. The FAC identifies the types of assets commingled and transferred—diverted

back to June of 1985 in which depositions and documentary discovery were conducted" and the "prior involvement of plaintiffs' counsel with the transactions underlying" the litigation. *Bove*, 1986 WL 11258, at *1. That plainly distinguishes *Bove* from the current matter, where the Parties are in the midst of fact discovery.

revenue to specific Bridger Logistics subsidiaries Rios controlled, forgiven accounts receivable owed to BTS by Bridger Logistics subsidiaries Rios headed, and massive fixed assets assigned away for nothing in documents that Rios personally signed.  FAC ¶¶ 65-68.  The FAC also identifies the relevant time periods and substantial examples of individual assets commingled and transferred:  "From May 2015 onward, Defendants … re-directed the portions of the Monroe revenue stream that had gone to BTS – as well as much of BTS's non-Monroe related revenue – to other Bridger Logistics and FGP affiliates …"  FAC ¶ 57.  "In June 2015, Defendants … caused BTS to forgive millions of dollars in accounts receivable that it was owed by other Bridger Logistics and FGP affiliates…"  FAC ¶ 56.  The FAC also states that BTS also transferred away all of its real and personal property and valuable commercial contracts to other FGP subsidiaries.  For example, in January 2016, BTS transferred to Bridger Swan Ranch, LLC, a newly-formed FGP subsidiary, the Swan Ranch transloading facility with all of its transshipment infrastructure, including crude injections stations, a crude oil transmission pipeline, and associated fixture, valued at $18.5 – 20 million.  FAC ¶ 67.

In particular, the January 31, 2016 transfers detailed in the FAC undermine Rios's claim of ignorance about his role.  Rios signed both sides of the very agreements described in the FAC by which Rios transferred away BTS's assets.  The FAC identifies how Rios exercised control over BTS, and Rios already understands his role in connection with each fraudulent transfer and the alter ego facts.  In his Motion to Compel, he admits that he knows the gist of Eddystone's fraudulent transfer claims.  *See* Mot. at 1 ("Among other things, Eddystone concludes that Rios stripped Bridger Transfer Services [] of assets, payments, transshipment capacity and cash flows…").  Here, as in *United States v. Educ. Mgmt. LLC*, No. 2:07-CV-00461, 2013 WL 3854458, at *20, "[t]he court should exercise particular caution in granting early responses to

contention interrogatories when the complaint is not facially infirm and defendants appear to have control over or adequate access to much of the evidence to their alleged misconduct."

Answering the interrogatories now also will not narrow the issues.  Mot. at 9.  Rios "bear[s] the burden not of suggesting that such narrowing is desirable but, rather, of setting forth 'specific, plausible grounds' as to why such narrowing will actually occur from these particular interrogatories."  *See United States v. Educ. Mgmt. LLC*, No. 2:07-CV-00461, 2013 WL 3854458, at *24.  He has not done so.  Meanwhile, any position Eddystone takes now in response to the interrogatories is one it will have to substantially revise after it takes depositions and its accounting expert issues his report at the end of discovery.  Thus, answering Rios's contention interrogatories would be an "artificial narrowing of the issues, instead of an informed pairing down" before expert discovery is complete.  *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 542 (N.D. Ill. 2005).

Next, Rios argues that he needs Eddystone's answers to these interrogatories "as he attempts to prepare for his deposition."  Mot. at 2.  But Rios identifies no authority for the proposition that an early response to a contention interrogatory is necessary to *defend* a deposition.  He should not need access to Eddystone's case to testify truthfully at his deposition.  Indeed, Rios's argument suggests that he seeks to ascertain Eddystone's strategy so that he can tailor his answers around that, not the truth.  That is improper and reason enough alone to deny the motion to compel.

If anything, the fact that depositions are to begin soon is further reason to defer requiring Eddystone to answer.  For example, in *Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc.*, No. CV 16-2767, 2016 WL 5721161, the court deferred responses to an interrogatory asking for "all facts" regarding the defendant's contentions because the defendant would "need time to process the

information it learns" in depositions before it can state all the facts.  *Id.* at *2.  Here, many of the

factual details of Rios's involvement in the fraudulent transfers will be confirmed through his

deposition.  As in *Dalmatia*, Eddystone needs to defer its answer to this contention interrogatory

so that it can study the transcript and add material facts to its interrogatory response.

Finally, Rios does not need answers to these interrogatories in order to take discovery of

his own.  There is in fact no discovery to be had of Eddystone's witnesses on these points

because the fraudulent transfers and alter ego allegations are not within their knowledge.

Rios attempts to sidestep this difficulty by pointing to Rule 30(b)(6) depositions and

asserting that he "will ask Eddystone's corporate representative to provide each and every fact

supporting each and every one of Eddystone's allegations.  Eddystone will be required to educate

its corporate representatives regarding each of the topics in Rios's interrogatories."  Mot. at 9.  If

this were true, it would only serve to make Rios's discovery cumulative.  But these matters are

also not the proper subject of an Eddystone 30(b)(6) deposition.  There is no information about

the fraudulent transfers that is in Eddystone's possession other than attorney work product

generated for the purposes of this lawsuit and attorney-client privileged communications

transmitting that legal analysis to Eddystone.  As a result, there is nothing that Eddystone or its

witnesses have learned about the fraudulent transfers that is not protected by attorney-client

privilege and the attorney work product privilege.

But even if there were no privilege issues, interrogatories 3, 4, and 6 are not an

appropriate subject matter for 30(b)(6) depositions because the information is too technical and

complex and because connecting facts to fraudulent transfer allegations turns on legal analysis

that is not the province of any proper 30(b)(6) witness.  For example, in *Kinetic Concepts, Inc. v.

Convatec Inc.*, 268 F.R.D. 255 (M.D.N.C. 2010), the court barred a 30(b)(6) deposition which

sought "testimony regarding the basis for all of Defendants' defenses and counterclaims." *Id.* at

260. The deposition involved "highly complex and technical issues" better pursued through

other means. *Id.* The court granted a protective order because the deposition notice exceeded

the limitations of Rule 26(b)(2)(C) and good cause existed under Rule 26(c)(1) to forbid the

discovery so as to protect Defendants from undue burden or expense. *Id.* at 263. Where the

topics noticed for a 30(b)(6) deposition seek to cover "the complete factual basis" for certain

legal claims, "[s]uch testimony is not properly within the scope of a Rule 30(b)(6) deposition.

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, No. CIV.A.1:05CV2482ODE, 2007

WL 5155945, at *9 (N.D. Ga. Mar. 27, 2007).

Here, the interrogatories at issue concern complex accounting entries that involve not

Eddystone's accounts, but BTS's and FGP's internal accounting—a topic with which no one in

the Eddystone organization was familiar, or had any visibility into, prior to this litigation.

Moreover, an "attempt at seeking the same information via deposition is unreasonably

cumulative or duplicative" because Rios will soon discover the information "from a source that

was more convenient and less burdensome" when Eddystone's expert files his report and

Eddystone answers these interrogatories. *See Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-

496, 2017 WL 697663, at *8 (D. Md. Feb. 21, 2017).

In sum, there is no reason that Rios needs the information that he seeks in his

interrogatories before Eddystone completes fact discovery and submits its accounting expert

report. At that point, Rios will be free to work with his own expert to file a report in response.

III.    **The Court Should Not Compel a Supplemental Answer to Rios's Interrogatory 6 for
the Additional Reason that it Demands a Narrative of Eddystone's Entire Alter Ego
Case.**

Interrogatory 6 requires Eddystone to state all facts supporting its alter ego case against

Rios. The interrogatory asks Eddystone to "identify[] *each and every practice* by Rios or

- 14 -

Gamboa that forms the basis of that allegation." Rog Responses at 4 (emphasis added).  As
Eddystone stated in its objection to this interrogatory, "the Interrogatory is overly burdensome
insofar as it asks Eddystone to describe in detail each and every practice by Rios and Gamboa
over a three-year period that forms the basis of its allegation in paragraph 29, particularly given
that those practices are best known to Rios and Gamboa."  *Id.* at 5.

Courts regularly refuse to compel answers to contention interrogatories that demand a
complete accounting of all facts in support of a claim or defense.  In *Hilt v. SFC Inc.*, 170 F.R.D.
182 (D. Kan. 1997), for example, the defendant propounded several interrogatories asking the
plaintiff to state "'each and every fact supporting all of the allegations' in Counts I through IV of
her Complaint."  *Id.* at 186.  The court held it inappropriate to ask for "each and every fact"
because answering fully would "require plaintiff to provide the equivalent of a narrative or
otherwise detailed account of her entire case in chief, together with identification of virtually all
supporting evidence for each fact."  *Id.*  The court also held that plaintiff did not have to respond
to these "blockbuster interrogatories."  *Id.* at 187–88; *see also Grynberg v. Total S.A.*, No. 03-
CV-01280-WYD-BNB, 2006 WL 1186836, at *7 (D. Colo. May 3, 2006) (denying motion to
compel more complete answer to interrogatory asking for all material facts behind each denial of
material allegation and behind each affirmative defense).

Eddystone's response to Interrogatory 6 was adequate and reasonable, especially in light
of the FAC and the forty-six other interrogatories with which it has been served in this litigation.
Eddystone summarized the ways Rios exploited BTS and failed to treat it as an independent legal
entity.  Additional detail appears in the FAC, which Eddystone filed the same day and which
further articulated its alter ego theory.  As set forth in the FAC, there was no written contract
between BTS and its affiliates.  FAC ¶ 43.  BTS did not maintain separate financial records, and

Rios and Gamboa commingled BTS's assets and funds for the benefits of its affiliates.  FAC ¶ 80.  BTS's right to revenue generated by its assets and contracts was not respected, and they were diverted to other Bridger Logistics entities in order to evade the Eddystone debt.  FAC ¶¶ 57, 65. Its assets were used by other Bridger entities at will even before they were transferred to other entities for no charge.  BTS was manipulated to be no more than sham entity to protect the scheme of its ultimate owners and managers. FAC ¶¶ 45, 65.  These facts regarding Rios and Gamboa's actions that form the basis of Eddystone's alter ego case are detailed in the FAC.

What Rios really wants is not an interrogatory response but a trial brief.  This is improper.  The problem with broad-based contention interrogatories is that "contention discovery often requires a party to, in essence, prepare a trial brief at an earlier time in the litigation process than normally occurs. Without some specific reason to require such an acceleration, the Court may well deem the burden to outweigh the benefit. In the ordinary case, the complaint, answer, disclosures, and discovery will provide sufficient information about a party's position until such time as the filing of the dispositive motions or trial briefs." *BB & T Corp. v. United States*, 233 F.R.D. at 450–51.

Interrogatory 6 improperly demands before the close of discovery a full narrative account of Eddystone's alter ego case against Rios.  The Court should not compel Eddystone to supplement its answer.

## CONCLUSION

The Court should deny Rios's Motion to Compel without prejudice to refiling with respect to Interrogatories 3 and 4 thirty (30) days after the close of expert discovery.

Dated: October 10, 2018                        Respectfully submitted,

                                               /s/ Jeffrey Theodore
                                               Henry E. Hockeimer, Jr. (I.D. No. 86768)
                                               Terence M. Grugan (I.D. No. 307211)
                                               BALLARD SPAHR LLP
                                               1735 Market Street, 51st Floor
                                               Philadelphia, PA 19103-7599
                                               Telephone: (215) 665-8500
                                               Facsimile: (215) 864-8999
                                               hockeimerh@ballardspahr.com
                                               grugant@ballardspahr.com

                                               Filiberto Agusti (*pro hac vice*)
                                               Jeffrey M. Theodore (*pro hac vice*)
                                               Andrew J. Sloniewsky (*pro hac vice*)
                                               Nicholas Petts (*pro hac vice*)
                                               STEPTOE & JOHNSON LLP
                                               1330 Connecticut Avenue, NW
                                               Washington, DC 20036
                                               Telephone: (202) 429-3000
                                               Facsimile: (202) 429-3902
                                               fagusti@steptoe.com
                                               jtheodore@steptoe.com
                                               asloniewsky@steptoe.com
                                               npetts@steptoe.com

                                               *Counsel for Eddystone Rail Company, LLC*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via the Court's ECF system on October 10, 2018, thereby serving all counsel of record.

*/s/ Jeffrey Theodore*
Jeffrey Theodore