## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | : | |
| Plaintiff/Counter-defendant, | : | |
| | : | |
| v. | : | No. 2:17-cv-00495-RK |
| | : | |
| JULIO RIOS, JEREMY GAMBOA, | : | |
| BRIDGER LOGISTICS, LLC, | : | |
| FERRELLGAS PARTNERS, L.P., | : | |
| FERRELLGAS, L.P., *et al.*, | : | |
| Defendants, | : | |
| | : | |
| BRIDGER LOGISTICS, LLC, | : | |
| FERRELLGAS PARTNERS, L.P., and | : | |
| FERRELLGAS, L.P., | : | |
| Defendants/Counterclaimants. | : | |

## <u>MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL</u>

Defendants/Counterclaimants Bridger Logistics, LLC ("BL"), Ferrellgas Partners, L.P. ("FGP"), and Ferrellgas L.P. ("FG") (collectively, the "BL/FG Defendants") respectfully move this Court to disqualify Plaintiff's counsel, including the law firm of Steptoe & Johnson LLP ("Steptoe"), from representing Plaintiff Eddystone Rail Company, LLC ("ERC") in this case on grounds that Plaintiff's attorneys violated, and continue to violate, the Pennsylvania Rules of Professional Conduct, Fed. R. Civ. P. 26(b)(5)(B), and an order of this Court by using attorney-client privileged information inadvertently disclosed in discovery in this case. At a minimum, the BL/FG Defendants respectfully ask for an order compelling Steptoe to provide information necessary to understand the scope of such violations and craft an appropriate remedy.

As explained further below, the undersigned do not relish filing a motion of this kind and sought to avoid doing so through an extensive meet and confer process, including a series of emails and letters to Steptoe. At this point, however, Steptoe has admitted to (1) reviewing

privileged materials after being notified that such materials were inadvertently produced and (2) using privileged information from inadvertently produced documents to develop its litigation strategy in this case, including particularly its Motion to Compel Production of Withheld Documents Under the Crime-Fraud Exception (Dkt. 217) (the "Motion to Compel" or the "Motion").  These are clear violations of Rule 4.4 of the Pennsylvania Rules of Professional Conduct, Rule 26 of the Federal Rules of Civil Procedure, and an order of this Court.  Steptoe has refused to acknowledge such violations or to propose any cure.   In the circumstances, the BL/FG Defendants have no choice but to submit this matter to the Court.

## **BACKGROUND**

On September 21, 2018, counsel for the BL/FG Defendants, Bryan Cave Leighton Paisner LLP ("BCLP"), notified Steptoe, by letter, that the BL/FG Defendants had inadvertently produced certain documents containing attorney-client privileged communications in response to Plaintiff's discovery requests (the "BCLP Clawback Letter").  11/1/18 Declaration of J. Kramer (hereinafter "Kramer Decl."), Ex. A.  In accordance with the parties' July 31, 2017 Stipulation Pursuant to Fed. R. Evid. 502(d) (Dkt. 62) (the "Rule 502(d) Stipulation")—which defines "privileged or work-product-protected documents" as "Protected Information"—the BL/FG Defendants "clawed back" these materials by notifying Steptoe that the documents had been inadvertently produced and were subject to a claim of privilege, and by asking Steptoe to "promptly return, sequester, or destroy" all copies.  The BCLP Clawback Letter informed Steptoe that "[t]hese documents will also be included on our forthcoming privilege log," which was produced to Steptoe a few days later on September 26, 2018.[1]

On September 28, 2018, Lynn Pinker Cox & Hurst ("LP"), counsel for Co-Defendants Julio Rios and Jeremy Gamboa, sent a letter notifying Steptoe that a different set of documents

---

[1]     The BL/FG Defendants produced revised privilege logs dated October 8 and 24, 2018.

subject to the attorney-client privilege had been inadvertently produced by Rios and Gamboa (the "LP Clawback Letter").  Kramer Decl., Ex. B.  The LP Clawback Letter reminded Steptoe that it was required to "promptly return, sequester, or destroy all" of the inadvertently produced documents and advised that "[t]hese documents will also be included on our forthcoming privilege log."  It is undisputed that the BL/FG Defendants hold the privilege with respect to the materials inadvertently disclosed by their former employees, Rios and Gamboa.  *See In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-02002, 2014 WL 6388436, at *10 (E.D. Pa. Nov. 17, 2014) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management."); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) ("[O]ne co-defendant could not waive the privilege that attached to the shared information without the consent of all others.").

Many of the inadvertently produced documents were marked on their face as "confidential" or "privileged" or "attorney-client communication."  Others are obviously privileged, including direct communications with counsel about matters at issue in this litigation. Kramer Decl. ¶ 15.

On Friday, September 28, Steptoe responded by e-mail to the BCLP Clawback Letter— after a full week had passed—and posed "specific questions about some of the privilege claims." Kramer Decl., Ex. C at 4.  Steptoe's e-mail contained a level of detail indicating that Steptoe attorneys reviewed and analyzed the documents after receiving the BCLP Clawback Letter.  In the email, Steptoe asked about 27 specific documents from among many more documents listed in the BCLP Clawback Letter, observing that some "of the documents appear to relate to a post-BL acquisition dispute between Bridger LLC and Ferrellgas" and that others "do not appear on their face to be privileged."  The only way Steptoe could have reached such conclusions is by reviewing the documents after receiving the BCLP Clawback Letter.

On Monday, October 1, 2018, counsel for the BL/FG Defendants replied by email:

> You are required by Fed. R. Evid. 502(b) and by stipulation (as well as by applicable rules of professional conduct) to promptly return, sequester, or destroy inadvertently produced documents, without conducting any further review of such documents.  Please confirm that you did so after receiving our letter.

*Id.* at 3  After receiving no response from Steptoe, counsel for the BL/FG Defendants followed up the next day, October 2, 2018, and asked Steptoe to "[p]lease respond to our request for confirmation that these documents were removed from your system without further review."  *Id.*

Steptoe replied two days later on October 3, 2018, neither admitting nor denying that Steptoe attorneys had continued to review the inadvertently disclosed documents after receiving the BCLP Clawback Letter.  Plaintiff's counsel instead stated that "we are working to sequester the documents in a prompt manner, and we have no intention of using the material while this remains an issue."  *Id.* at 2.  Counsel for the BL/FG Defendants responded the same day, asking again for "confirmation that [Steptoe] and [its] team did not go review these inadvertently produced privileged documents after receiving our claw-back notice," and asking that Steptoe "please provide a direct answer to that question[.]"  *Id.* at 1.  Also on October 3, 2018, counsel for Rios and Gamboa asked Steptoe to "confirm pursuant to the federal rules and [the parties'] stipulation that [Steptoe had] deleted all copies of the clawed-back documents" itemized in the LP Clawback Letter on September 28 (again, these materials are different from the documents listed in the BCLP Clawback Letter).  Kramer Decl., Ex. D.

Steptoe replied on October 4, stating as follows:  "As to your question, we disagree with both the factual and legal premise, and we are not going to provide you with details of our work effort on this case."  Ex. C at 1.

On October 5, 2018, counsel for Rios and Gamboa sent Steptoe a letter explaining why it was required to immediately cease any and all review of the Protected Information as soon as it

received the Clawback Letters.  Kramer Decl. Ex. E.  In the letter, Rios and Gamboa again asked Steptoe for "an unequivocal statement that, after receipt of the [LP Clawback Letter], Eddystone ha[d] not opened or reviewed any of the information contained therein."  *Id.*

Later on Friday, October 5, counsel for all parties held a meet and confer call to discuss Steptoe's handling of the inadvertently produced documents, among other issues.  At least three attorneys from Steptoe (Jeffrey Theodore, Andrew Sloniewsky, and Nicholas Petts) participated in the call, as well as several attorneys from BCLP and LP.  Kramer Decl. ¶ 13.[2]

During the October 5 call, Plaintiff's counsel initially refused to answer straightforward questions about whether Steptoe had continued to review Protected Information after receiving the Clawback Letters.  Kramer Decl. ¶ 14.  For example, Mr. Theodore declined to answer a "yes" or "no" question as to whether his team had continued to review any of the Protected Information following receipt of the Clawback Letters, taking the position that the answer was protected by the attorney work-product doctrine.  *Id.*  When asked, he also declined to say whether Steptoe had reviewed the governing authorities and applicable rules of professional conduct relating to inadvertently produced privileged materials since learning that Steptoe was in possession of opposing parties' privileged materials.  *Id.*  Instead, he asserted that he and Steptoe had "done nothing wrong" and suggested that Defendants' counsel provide Steptoe with any pertinent authorities.  *Id.*[3]

After further discussion of the issue during the October 5 call, Mr. Theodore made the first in a series of admissions of non-compliance with the Pennsylvania Rules of Professional Conduct, Fed. R. Civ. P. 26(b)(5)(B), and the Rule 502(d) Stipulation.  In particular, Mr.

---

[2]     Mr. Theodore recently informed the undersigned that he is leaving Steptoe, but he plans to join another firm and remain as counsel for Plaintiff.

[3]     BCLP responded in an October 8, 2018 letter discussed below.  Kramer Decl., Ex. H.

Theodore stated that the contents of a "key email chain" listed in the LP Clawback Letter was "seared in his memory," and there is a "good chance [he] could recite it from memory." Kramer Decl. ¶ 15. He also stated that, when he reviewed the email exchange, "it was clear to me that [Defendants] would claim that it was privileged." *Id.* He also stated that, upon reviewing the email exchange, he concluded unilaterally that there was a "crime-fraud issue" in this case. *Id.*

When asked, Mr. Theodore refused to reveal how much time had passed since Steptoe first reviewed the inadvertently disclosed privileged information, except to say "recently." He also claimed that Steptoe was in the process of drafting a letter to apprise Defendants' counsel that Defendants had inadvertently disclosed Protected Information. Defendants never received such a letter, and Steptoe declined to say when it began preparing such a letter. *Id.*

On Monday, October 8, 2018, counsel for Rios and Gamboa sent another letter asking Steptoe to confirm that it had "immediately stopped review of documents after it first determined it [had] received Protected Information." Kramer Decl. Ex. F. Counsel also posed a series of specific questions regarding Steptoe's handling and review of Protected Information. *Id.*

Steptoe responded in an October 9 letter, stating categorically that "[w]e do not think that there is a single document in your production that is privileged." Kramer Decl., Ex. G. Steptoe also stated that "[w]e have not reviewed them with the knowledge that they were privileged or that you would think them to be privileged." This statement contradicts Mr. Theodore's October 5 admission that it was "clear to [him] that [Defendants] would claim that [the material] was privileged." Steptoe apparently based its conclusion that none of the materials is privileged on its unilateral decision that the crime-fraud exception applies to the communications. *Id.* (For a variety of reasons that will be explained when the undersigned submit an opposition to Steptoe's Motion to Compel on November 7, 2018, there is no basis for Steptoe's unilateral conclusion.)

Steptoe's October 9 letter further stated that "nobody **outside** the Steptoe litigation team has received any information that you claim to be privileged or that we think that you might claim to be privileged" (emphasis added), effectively disclosing that the entire "Steptoe litigation team" had reviewed the documents.  Steptoe declined to answer the questions posed by counsel for Rios and Gamboa, because "answering them would require us to disclose substantial information about our work on this case in contravention of the work product doctrine."  *Id.*

Finally, Steptoe stated that it "will not use [the inadvertently produced documents], **except in the context of motion practice seeking a ruling on the privilege**."  In the same letter, Steptoe reiterated that "we have not made any use of [the Protected Information] **other than as part of taking steps to obtain a determination of the privilege from the Court**." (emphasis added).  Through these statements (and the October 5 statements by Mr. Theodore), Steptoe admits that it relied on information contained in inadvertently disclosed documents subject to a privilege claim in preparing the pending Motion to Compel.  *Id.*

BCLP and Steptoe also exchanged letters in the wake of Mr. Theodore's startling admissions during the October 5 call.  On Monday, October 8, BCLP sent a letter outlining Steptoe's obligations to refrain from reviewing inadvertently produced privileged information, citing the Pennsylvania Rules of Professional Conduct, Fed. R. Civ. P. 26(b)(5)(B), Fed. R. Evid. 502(b), and the Rule 502(d) Stipulation.  Kramer Decl., Ex. H.  BCLP asked Steptoe for a proposal as to how it might continue to serve as counsel in this matter without "using Protected Information to make tactical and strategic choices about how to litigate this case," after admitting to reviewing documents that it recognized to be subject to a claim of privilege.

Steptoe responded on October 12.  Kramer Decl., Ex. I.  Steptoe admitted that, upon receiving the BCLP Clawback Letter, Steptoe "look[ed] at the documents at issue and attempt[ed] to meet-and-confer regarding [the BL/FG Defendants'] overbroad privilege

assertions." *Id.* Steptoe sought to excuse this violation by stating that the BL/FG Defendants "fail[ed] to provide any description of the documents or basis for claiming privilege." *Id.* Steptoe also stated that documents listed in the BCLP Clawback Letter "are irrelevant" and "[w]e do not plan to use them in this litigation." *Id.*

As to the documents in the LP Clawback Letter, Steptoe admitted again that they "had identified the Rios/Soiefer/Hampton [email] chain prior to the letter as something that you likely would claim to be privileged and were planning to raise it with you promptly along with any other documents we might find in our review of your productions." *Id.* (emphasis added)

Minutes after sending its October 12 letter, Steptoe filed its Motion to Compel, citing the crime-fraud exception as a basis to invade the attorney-client privilege.  Steptoe did not, however, disclose in its Motion that it had already reviewed inadvertently produced versions of some of the very documents at issue.  Nor did Steptoe disclose that it based its decision to file its Motion on its review of such documents, including the "Rios/Soiefer/Hampton [email] chain" referenced in its October 12 letter to BCLP.   Kramer Decl., Ex. I at 3.  Indeed, the Motion to Compel asserts, *inter alia*, that Defendants "Rios [and] Gamboa, [Defendant] Ferrellgas['s] executive Todd Soiefer, and Ferrellgas's general counsel [Trent Hampton] had an extensive email discussion with the subject line 'Eddystone restructuring'" and "[b]eginning on December 18, 2015 and subsequent days, those same Ferrellgas personnel began a series of email chains regarding 'restructuring,' 'Bridger Transfer Services,' and 'effect of subsidiary bankruptcy' with an outside law firm."  (Dkt. 217, Motion to Compel at 8-9.)

On Monday, October 15, 2018, Mr. Theodore stated during a call with counsel for the BL/FG Defendants that Steptoe had "pulled together" its Motion to Compel in just "two weeks." Kramer Decl. ¶ 16.  If accurate, this statement is further evidence that Steptoe reviewed inadvertently produced materials after receiving notice and used such materials to prepare its

Motion to Compel.  Indeed, the LP Clawback Letter is dated September 28, and Steptoe filed its Motion to Compel precisely two weeks later on October 12.

As the foregoing demonstrates, Steptoe has admitted to (1) reviewing privileged materials after being notified that such materials were inadvertently produced and (2) using information from inadvertently produced documents to inform its litigation strategy in this case.  For the reasons set forth below, such conduct warrants disqualification.  At a minimum, more information is needed to craft an appropriate remedy.[4]

## GOVERNING RULES AND AUTHORITIES

The "Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania provide the standards for professional conduct that attorneys appearing before this Court must comply with." *J & J Snack Foods Corp. v. Kaffrissen*, No. CIV A 98-5743, 2000 WL 562736, at *2 (E.D. Pa. May 9, 2000) (Kelly, J.).  Rule 4.4(b) provides that "[a] lawyer who receives a document, including electronically stored information, relating to the representation of the lawyer's client and knows or reasonably should know that the document, including electronically stored information, was inadvertently sent **shall promptly notify the sender**."  Pa. R. P. C. 4.4(b) (emphasis added); *see also Alers v. City of Philadelphia*, Civil Action No. 08-4745, 2011 WL 6000602, *1 (E.D. Pa. Nov. 29, 2011) (privilege not waived for inadvertently produced privileged documents).  This rule "permit[s] [the sender] to take protective measures" with respect to the inadvertently disclosed documents.  Pa. R. P. C. 4.4(b) cmt. 2.

While Rule 4.4(b) does not expressly require the receiving lawyer to also return or destroy documents inadvertently disclosed, the receiving lawyer is obligated to do so under the Federal Rules of Civil Procedure and, in this case, the Rule 502(d) Stipulation.  *See* Pa. R. P. C.

---

[4]     The undersigned presently have no reason to believe that Plaintiff's local counsel at Ballard Spahr LLP reviewed the inadvertently produced privileged materials.

4.4(b) & cmt. 2 (recognizing that, while Rule 4.4(b) does not expressly impose a return or destroy requirement, other sources of law may require it). *See also Alers*, 2011 WL 6000602, at *1 (counsel had an obligation to do more than merely notify opposing counsel where document was clearly and emphatically marked as privileged).

Fed. R. Civ. P. 26(b)(5)(B) states that a party in receipt of inadvertently produced information subject to a claim of privilege, "**must promptly return, sequester, or destroy** the specified information and any copies it has," and it "**must not use** or disclose the information until the claim is resolved." Fed. R. Civ. P. 26(b)(5)(B) (emphasis added). Thus, Rule 26(b)(5)(B) supplies the standard by which litigants—and their counsel—must abide when privileged information is inadvertently produced in discovery.

In addition, the parties to this case entered into the Rule 502(d) Stipulation, which was endorsed and ordered by the Court (Dkt. 62). Fed. R. Evid. 502(b) provides that inadvertent disclosure "does not operate as a waiver" so long as the privilege holder took reasonable steps to prevent disclosure and to promptly rectify the error. The Rule 502(d) Stipulation acknowledged that all parties expected to make "voluminous" productions in this case and included language mirroring the requirements of Fed. R. Civ. P. 26(b)(5)(B):

> Upon receiving or giving notice in accordance with the foregoing provisions, a Receiving Party **must promptly return, sequester, or destroy** the specified Protected Information and any copies it has [and] **must not use** or disclose the Protected Information until the claim of privilege or protection is resolved. . . .

(*See* Dkt. 62 (emphasis added).) The Rule 502(d) Stipulation likewise mirrors Pennsylvania Rule 4.4(b), providing that, "where a Receiving Party first discovers a document or information that, in good faith, the Receiving Party believes the Producing Party may deem to be Protected Information, the Receiving Party shall promptly provide written notice to the Producing Party advising that the Producing Party may have produced Protected Information." (*Id*. at 2.)

10

To ensure compliance with the rules of professional conduct, the Court has the "power to disqualify an attorney deriving from its inherent authority to supervise the professional conduct of attorneys appearing before it." *J & J Snack Foods*, 2000 WL 562736, at *2 (internal quotations and citation omitted); *see also De La Cruz v. Virgin Islands Water and Power Auth.*, 597 Fed. App'x 83, 87 (3d Cir. 2014) (citation omitted) (same). The Court "should" disqualify counsel "when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable" rule of professional conduct. *J & J Snack Foods*, 2000 WL 562736, at * 2 (citing *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). In assessing whether disqualification is appropriate, "any doubts as to the existence of a violation of the rules should be resolved in favor of disqualification." *J & J Snack Foods*, 2000 WL 562736, at * 2 (citing *IBM Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978)).

In general, this Court, the Third Circuit, and other courts have recognized that counsel should be disqualified where, in violation of rules of professional conduct, counsel has gained confidential information regarding an opposing party. *See*, *e.g.*, *De La Cruz*, 597 Fed. App'x at 88 (upholding attorney disqualification where there was a "genuine risk that [counsel] obtained confidential information from [the opposing party] during his work on" a prior matter); *Brice v. Hoffert*, No. 5:15-cv-4020, 2016 WL 3981361, at *5 (E.D. Pa. July 25, 2016), *reversed and remanded on other grounds by Brice v. Bauer*, 689 F. App'x 122 (3d Cir. 2017) (disqualifying counsel under rules of professional conduct where former client "might have disclosed confidences which could be relevant in the present action"); *Martinez v. Cty. of Antelope, Nebraska*, No. 4:15CV3064, 2016 WL 3248241, at *10 (D. Neb. June 13, 2016), objections overruled, No. 4:15-CV-3064, 2016 WL 4094864 (D. Neb. Aug. 1, 2016) (internal citation and quotations omitted) (disqualifying counsel and noting that "wrongly obtained knowledge can never be erased from counsel's mind, and the benefits derived from knowing that information

will continue to provide . . . an unfair advantage and taint [the] proceedings"); *Maldonado v. New Jersey*, 225 F.R.D. 120 (D.N.J. 2004) (disqualifying counsel for retaining and using letter from opposing parties addressed to their attorney); *J & J Snack Foods*, 2000 WL 562736, at * 4 (disqualifying counsel based on conflict of interest in counsel's representation of two defendants and ruling that attorney could remain counsel for neither defendant, as "confidential information may have passed from one to the other").

Accordingly, courts have disqualified counsel who obtained confidential information from inadvertently produced documents. *McDermott Will & Emery LLP v. Superior Court*, 10 Cal. App. 5th 1083, 1120, 217 Cal. Rptr. 3d 47, 80 (Ct. App. 2017), review denied (June 14, 2017) (finding that "[d]isqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed" and disqualifying counsel who refused to return inadvertently disclosed privileged email) (quotation omitted); *Burch & Cracchiolo, P.A. v. Myers*, 237 Ariz. 369, 373, 351 P.3d 376, 380 (Ct. App. 2015) (affirming disqualification of counsel who used inadvertently produced privileged client file that "contain[ed] assessments of strengths as well as weaknesses in [the producing party's] litigation position" by distributing the client file as part of a disclosure statement despite being notified that privileged documents had been inadvertently produced); *Clark v. Superior Court*, 196 Cal. App. 4th 37, 53, 125 Cal. Rptr. 3d 361, 374 (2011) (disqualifying counsel who examined inadvertently produced documents "in sufficient detail to allow [counsel] to 'determine their subject matter for categorization'" and conducted a subsequent review, after being informed that the production contained inadvertently produced privileged information, to determine "'whether the dominant purpose of the e-mail was business or legal advice,' which necessarily involved an assessment of its contents"); *Atlas Air, Inc. v. Greenberg Traurig, P.A.*, 997 So. 2d 1117, 1118 (Fla. Dist. Ct. App. 2008) ("The receipt of privileged documents is

grounds for disqualification of the attorney receiving the documents based on the unfair tactical advantage such disclosure provides.").

Importantly, where there is risk that the implicated attorney "has shared confidential information with a partner who has appeared in the case," the disqualification will "ordinarily" apply to "all of the partners of the implicated attorney." *Miller*, 624 F.2d at 1203.

## ARGUMENT

### I.   STEPTOE VIOLATED THE RULES AND A COURT ORDER.

Here, it is apparent that Steptoe violated Rule 4.4(b) of the Pennsylvania Rules of Professional Conduct, Fed. R. Civ. P. 26(b)(5)(B), and the Rule 502(d) Stipulation.

First, Steptoe has admitted that it continued to review inadvertently produced documents after realizing that such documents were subject to a claim of privilege, even after being informed that such documents had been inadvertently produced.

The BCLP Clawback letter is dated September 21, 2018.   Kramer Decl., Ex. A.   On September 28, Steptoe responded by e-mail and posed "specific questions about some of the privilege claims" as to 27 documents from among 260 identified in the BCLP Clawback Letter. Kramer Decl., Ex. C at 4.   Steptoe argued that "many of the documents appear to relate to a post-BL acquisition dispute between Bridger LLC and Ferrellgas" and that others "do not appear on their face to be privileged." *Id.*   In its October 12 letter, Steptoe admitted that it "look[ed] at the documents at issue" after receiving the BCLP Clawback Letter.   Based on this review, Steptoe concluded that that the documents listed in the BCLP Clawback Letter "are irrelevant" and "[w]e do not plan to use them in this litigation."   Kramer Decl., Ex. I.

The LP Clawback Letter is dated September 28 and concerns a different set of documents inadvertently produced by Rios and Gamboa.   Kramer Decl., Ex. B.   As stated above, many of these documents state on their face that they are confidential or attorney-client privileged.

Others are obviously privileged, including direct communications with counsel about matters at issue in this litigation.  Kramer Decl. ¶ 15.  During the October 5 call, Mr. Theodore admitted that "it was clear to [him]" that Defendants would assert privilege when he reviewed a "key email chain" that was inadvertently produced.  In an October 12 letter, Steptoe admitted again that it "had identified the Rios/Soiefer/Hampton [email] chain prior to the letter as something that you likely would claim to be privileged."  Kramer Decl., Ex. I.

Steptoe did not promptly notify Defendants, nor did it return, sequester, or destroy the inadvertently produced materials, as it was required to do under the rules and the Rule 502(d) Stipulation entered by this Court.  In contrast, Steptoe has inadvertently produced privileged documents, and counsel for the BL/FG Defendants have promptly e-mailed Plaintiff's counsel on several occasions (typically within minutes after identifying such documents) to notify them that Plaintiff's production included what appeared to be inadvertently produced privileged information and to confirm immediate compliance with the Rule 502(d) Stipulation by removing the documents from electronic systems and destroying any copies.  Kramer Decl. ¶ 17.

Second, Steptoe has admitted that it used confidential information from inadvertently produced materials to prepare its Motion to Compel.  In its October 9 letter, Steptoe stated that it would rely on inadvertently disclosed materials "in the context of motion practice seeking a ruling on the privilege" and "to obtain a determination of the privilege from the Court" (*i.e.*, in connection with the Motion to Compel).  Kramer Decl., Ex. G.

Mr. Theodore stated on the October 5 call that the contents of a "key email chain" listed in the LP Clawback Letter was "seared in his memory," and prompted him to identify what he characterized as a "crime-fraud issue."  Kramer Decl. ¶ 15.  In its October 12 letter, Steptoe referred to a "Rios/Soiefer/Hampton [email] chain" it had reviewed and identified as subject to a privilege claim.  Kramer Decl., Ex. I.  Steptoe describes the very same exchange in its October

12 Motion to Compel (at 8-9): "Rios [and] Gamboa, Ferrellgas['s] executive Todd Soiefer, and Ferrellgas's general counsel [Trent Hampton] had an extensive email discussion with the subject line 'Eddystone restructuring'" and "[b]eginning on December 18, 2015 and subsequent days, those same Ferrellgas personnel began a series of email chains regarding 'restructuring,' 'Bridger Transfer Services,' and 'effect of subsidiary bankruptcy' with an outside law firm."

In addition to this particular email chain, the Motion to Compel focuses on emails with subject lines such as "Eddystone restructuring," "restructuring," "Bridger Transfer Services," and "effect of subsidiary bankruptcy." (Dkt. 217 at 8.)   Plaintiff asserts, based on these innocuous subject lines, that these emails "must" discuss the transfers at issue in this case, which Plaintiff characterizes as "fraudulent."   As this Court knows, thousands upon thousands of lawyers—many in the very city where this Court resides—rise every day and provide advice on "restructuring" and possible "bankruptcy."   There is nothing nefarious or fraudulent about obtaining such advice, and the attorney-client privilege would virtually cease to exist in these practice areas if every email with a subject line dealing with these unremarkable topics suddenly became susceptible to attack under the crime-fraud exception.   Here, it appears that Steptoe has already reviewed emails featured in its Motion and concluded that they would be useful at trial.

Moreover, Mr. Theodore stated that Steptoe "pulled together" its Motion to Compel in "two weeks."   If accurate, this statement is further evidence that Steptoe reviewed and relied upon inadvertently produced materials after receiving the LP Clawback Letter dated September 28, which was sent precisely two weeks before Steptoe filed its Motion on October 12.

There is only one reasonable conclusion to draw from the foregoing:   Steptoe reviewed inadvertently produced documents that it knew were subject to a privilege claim, analyzed the contents, and then used the information to prepare the Motion to Compel.

## II.    STEPTOE SHOULD BE DISQUALIFIED.

As stated above, Steptoe has effectively admitted that its entire team reviewed inadvertently produced information subject to privilege claims, and also to using such information to formulate its litigation strategy.  As a result, the BL/FG Defendants respectfully move to disqualify Steptoe & Johnson LLP.  The BL/FG Defendants and their counsel do not lightly request such relief, as evidenced by their repeated efforts to resolve the situation without the Court's intervention (including a request that Steptoe propose an alternative solution).  In the unfortunate circumstances evident here, however, there is ample basis to disqualify Steptoe.[5]

The Court is "tasked with protecting 'the integrity of the legal profession and its high standing in the community.'" *Grant Heilman Photography, Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, Civil Action No. 17-694, 2018 WL 2065060, at *13 (E.D. Pa. May 2, 2018) (quoting *Levin*, 579 F.2d at 283).  Even where there is not "specific injury to the moving party" (unlike in this instance), disqualification for violation of the rules of professional conduct "is primarily justified as a vindication of the integrity of the bar."  *Levin*, 579 F.2d at 283 (affirming disqualification of law firm for violation of rules of professional conduct).

Although "motions to disqualify opposing counsel are disfavored" (including by the undersigned), any "doubts as to whether an attorney's disqualification is warranted should be resolved in favor of disqualification."  *Brice*, 2016 BL 238171, at *3 (citing *Levin*, 579 F.2d at 283) (internal citation omitted).  Thus, even where a party may "suffer as the result of its counsel's improper and Rules-violating conduct," the Court may—and should—disqualify attorneys and law firms who violate the rules.  *Grant Heilman*, 2018 WL 2065060, at *13.

---

[5]    If Mr. Theodore remains involved in this matter at a new law firm following his departure from Steptoe, he too should be disqualified.

Defendants' privileged communications will live on in the institutional memory of the Steptoe team, informing their strategy and conduct in this case.  As explained above, Steptoe has already filed a Motion to Compel disclosure of some of the same privileged communications it reviewed.  Unless disqualified, Steptoe will continue to rely on its knowledge of Defendants' privileged communications in litigating this case.  If any member of Steptoe's litigation team is not disqualified, there is a risk that such communications will be shared or recounted among those who remain as counsel for ERC.  *See Miller*, 624 F.2d at 1203 (where there is risk that an attorney "has shared confidential information with a partner who has appeared in the case," the disqualification will "ordinarily" apply to "all of the partners").

## III.    AT A MINIMUM, DISCOVERY IS NEEDED TO CRAFT A REMEDY.

The only interim step that might lead to an alternative to disqualifying the entire Steptoe team is to compel Steptoe to answer questions under oath about its use of inadvertently disclosed Protected Information (including in depositions).  Steptoe has never revealed when it first identified inadvertently produced materials or who reviewed them.  Instead, Steptoe has improperly relied on the attorney work-product doctrine to protect such information.  *See In re Prosser*, No. 3:06-BK-30009 (JFK), 2010 WL 2245002, at *2 (D.V.I. May 20, 2010) (time, date and place at which interview occurred not covered by work product doctrine even where email containing these facts was privileged); *McCrink v. Peoples Benefit Life Ins. Co.*, No. Civ.A.2:04CV01068, 2004 WL 2743420, at *5 (E.D. Pa. Nov. 29, 2004) (The "attorney-client privilege does not extend to facts pertaining to the existence of an attorney-client relationship, the fact of consultation, or the dates and general nature of legal services performed.").

With some limited discovery to determine the scope and degree of improper disclosure within the Steptoe team, Defendants might be able to suggest an alternative to disqualifying the entire group.  *See, e.g.*, *Clark Capital Mgmt. Group, Inc. v. Annuity Investors Life Ins. Co.*, 149

F. Supp. 2d 193, 199 n.4 (E.D. Pa. 2001) (Third Circuit "has left open the question of whether screening the attorney . . . from the case may serve as an appropriate alternative to disqualification."); *United States v. Stewart*, 294 F. Supp. 2d 490, 494 (S.D.N.Y. 2003) (remedying violation of work product doctrine by "prohibiting the opposing side from using the document at trial"). Without more information, however, there is no apparent alternative to disqualification.

## CONCLUSION

For all the foregoing reasons, the BL/FG Defendants respectfully move this Court to disqualify Steptoe & Johnson LLP (and Mr. Theodore) from representing Plaintiff in this case. At a minimum, the BL/FG Defendants respectfully ask for an order compelling Steptoe to submit to discovery concerning its use of inadvertently produced documents.

Dated: November 5, 2018

Respectfully submitted,

By: /s/ *Lawrence G. Scarborough*
Lawrence G. Scarborough (Admitted *Pro Hac Vice*)

Richard L. Scheff (I.D. No. 35213)
Michael C. Witsch (I.D. No. 313884)
ARMSTRONG TEASDALE, LLP
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19102
Telephone: (215) 246-3469
Facsimile: (215) 569-8228
rlscheff@armstrongteasdale.com
mwitsch@armstrongteasdale.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-4630
lgscarborough@bclplaw.com

18

Jacob A.  Kramer (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 508-6000
Facsimile:  (202) 508-6200
jake.kramer@bclplaw.com

Brian C. Walsh (Admitted *Pro Hac Vice*)
Alicia Ragsdale Olszeski (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St.  Louis, Missouri 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
brian.walsh@bclplaw.com
ali.ragsdale@bclplaw.com

Sarah L. Hartley (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200
sarah.hartley@bclplaw.com

*Attorney for Bridger Logistics, LLC, Ferrellgas Partners, L.P., Ferrellgas L.P., Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, J.J. Addison Partners, LLC, J.J. Liberty, LLC, Bridger Admin Services II LLC, Bridger Energy, LLC, Bridger Lake, LLC, Bridger Leasing, LLC, Bridger Marine, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, Michael Witsch, hereby certify that on November 5, 2018, a true and correct copy of the foregoing *BL/FG Defendants' Motion to Disqualify Plaintiff's Counsel* was filed electronically via the Court's ECF filing system.  This document is available for viewing and downloading from the ECF system and electronic notification has been sent to all counsel of record.

*/s/ Michael C. Witsch*
Michael Witsch
