**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17–cv–00495-RK |
| | ) | |
| BRIDGER LOGISTICS, LLC, JULIO RIOS, | ) | |
| JEREMY GAMBOA, FERRELLGAS | ) | |
| PARTNERS, L.P., and FERRELLGAS L.P. *et* | ) | |
| *al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| BRIDGER LOGISTICS, LLC, FERRELLGAS | ) | |
| PARTNERS, L.P., and FERRELLGAS, L.P. | ) | |
| | ) | |
| Defendants/Counterclaimants | | |

---

**EDDYSTONE RAIL COMPANY'S SUR-REPLY**
**IN OPPOSITION TO OCTOBER 5, 2018 MOTIONS TO DISMISS**

In their reply briefs, Rios and Gamboa and the new Ferrellgas entities continue to re-litigate matters that this Court has already decided against them while ignoring the controlling legal authority and this Court's prior orders.  The Court should reject this gambit and deny the pending motions to dismiss.

As Eddystone observed in its Opposition brief, the Court decided more than a year ago that Eddystone had stated a claim against Rios and Gamboa for breach of fiduciary duty.  Rios and Gamboa's reply brief evinces no disagreement on this point.  Yet, without even claiming to meet the governing standard for reconsideration of this Court's prior rulings, Rios and Gamboa seek to re-brief and re-litigate the sufficiency of Eddystone's fiduciary duty allegations.  And

still to this day, Rios and Gamboa have nothing to say about the authority cited in Eddystone's prior briefing that compels denial of their motion. The Court should deny Rios and Gamboa's motion for the same reason that it found Eddystone's allegations to be sufficient when this issue was first briefed at the outset of the litigation.

Meanwhile, Ferrellgas argues that Eddystone has "failed to meet" the "test" for personal jurisdiction "because it has not pleaded any acts to support its argument that the Additional Entity Defendants committed an intentional tort." Dkt. 261 at 5. This flies in the face of the Court's ruling that Eddystone has stated a claim against each of the additional Ferrellgas subsidiaries for intentional fraudulent transfer. The Court made that ruling when granting Eddystone's motion for leave to file the very amended complaint at issue on the current motions. *See* Dkt. 181 at 2 n.1. Yet, Ferrellgas does not even acknowledge the Court's ruling on this point, much less attempt to argue that the Court's ruling was in error. Its motion should be denied.

The current set of motions is the third time that Defendants have attempted to re-brief the same arguments about the adequacy of Eddystone's fraudulent transfer and fiduciary duty allegations. Not once have they claimed to meet the governing standard on a motion for reconsideration or even acknowledged the Court's prior rulings on these points. Their motions should again be denied.

## ARGUMENT

### I.  The Court Should Deny Rios and Gamboa's Motion to Dismiss

#### a.  The "Law of the Case" Doctrine Compels Denial of Rios and Gamboa's Motion to Dismiss

As Eddystone explained in its Opposition, Rios and Gamboa's motion simply rehashes the same arguments rejected by the Court in its July 19, 2017 opinion denying Defendants'

original motions to dismiss. *See* Dkt. 239 at 11-13.  Rios and Gamboa do not dispute or even

address this point.  Yet, they also have nothing to say about the legal standard governing motions

for reconsideration, which "directs courts to refrain from re-deciding issues that were resolved

earlier in the litigation" absent "extraordinary circumstances" such as new evidence or

supervening new law.  *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron,*

*Inc.*, 123 F.3d 111, 116-17 (3d Cir. 1997); *see also Wawrzynski v. H.J. Heinz Co.,* 2012 WL

1458721, at *5 (W.D. Pa. Apr. 27, 2012) (denying motion to dismiss on law-of-the-case grounds

where party raised same arguments previously rejected by the court); Dkt. 239 at 11-13.

Because Rios and Gamboa do not even claim to meet the standard for reconsideration motions,

their motion should be denied on this ground alone.

>    **b.  Rios and Gamboa Do Not Dispute that They Have Breached their Fiduciary**
>         **Duties under Pennsylvania Law**

Rios and Gamboa do not dispute that Eddystone has a valid fiduciary duty claim against

them under Pennsylvania law.  As the control persons of an insolvent entity, the Individual

Defendants had a fiduciary duty to manage the entity in the interests of the entity's creditor, i.e.

Eddystone. *See Engle v. Matrix Golf & Hosp. Philadelphia, LLC*, 2009 WL 880680, at *6 (E.D.

Pa. Mar. 31, 2009) (Kelly, J.) ("[O]nce a corporation becomes insolvent[,] the creditors'

investment is at risk, and the directors should manage the corporation in their interests as well as

that of the shareholders.") (quoting *VFB, LLC v. Campbell Soup, Co.*, 482 F.3d 624, 635 (3d

Cir.2007) (alteration marks in original; quotation marks omitted)). *See also Vital*

*Pharmaceuticals v. USA Sports, LLC,* 2012 WL 760561, at *9 (M.D. Pa. Mar. 8, 2012)

("Pennsylvania common law imposes a fiduciary duty upon corporate officers in favor of

creditors, as well as to the corporation, when the corporation is insolvent.").

Rios and Gamboa also do not disagree that Pennsylvania law controls under Pennsylvania's governmental interest conflicts of laws test.  *See* Dkt. 259 at 2.  Instead, they argue that Louisiana law should control under the "internal affairs" doctrine.  *Id*.  But they have nothing to say about the fact that this argument was fully briefed when the Court first ruled on the sufficiency of Eddystone's fiduciary duty claims.  As Eddystone explained eighteen months ago, *see* Dkt. 53 at 13 n.14, the internal affairs doctrine does not apply to limited liability companies.  Language adopting the "internal affairs" doctrine appears only in the portion of the Pennsylvania business code applicable to corporations and applies only to "corporations" by its express terms.  *See* 15 Pa. C.S. § 4145.  By contrast, Part III of the Pennsylvania business code, dealing with limited liability companies, contains no such provision.  *See* 15 Pa. C.S. §§ 8101-8998.  And even if the internal affairs doctrine applied to limited liability companies, it would not not apply here, where "the rights of third parties external to the corporation are at issue." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983); *see also Curiale v. Tiber Holding Corp.,* 1997 WL 597944, at *11 (E.D. Pa. Sept. 18, 1997) (accord); Dkt. 53 at 13-14 (citing additional authority).  Accordingly, courts hold that fiduciary duty claims "brought by creditors not by officers, directors, or shareholders" are "not subject to the internal affairs doctrine" because they "involve dealings with third parties" rather than the "organic structure" of the entity.  *Tech. Dev. Co. v. Onischenko*, No. CIV.A. 05-4282 MLC, 2011 WL 6779552, at *11 (D.N.J. Dec. 23, 2011) (quoting *Palladin Partners v. Gaon*, No. 05–3305, 2006 WL 2460650, at *17 (D.N.J. Aug.22, 2006)); *accord Lastertel N. Am. v. Innova*, No. 3:12-CV-354, 2016 WL 1729558, at *1 (S.D. Ohio Feb. 10, 2016).

In their reply brief, Rios and Gamboa do not address any of these points.  They also do not cite a single case in which the Pennsylvania internal affairs doctrine has been applied to a

limited liability company or where the rights of an outsider such as a creditor were at issue.  Rios

and Gamboa's first two cases, *Griffith v. United Air Lines Inc.,* 203 A.2d 796 (Pa. 1964), and

*Hanover Ins. Co. v. Ryan,* 2007 WL 4456158 (E.D. Pa. Dec. 17, 2007), do not so much as

mention the internal affairs doctrine, instead undertaking the "interests/contacts" analysis that

Rios and Gamboa do not disagree requires application of Pennsylvania law here.  Rios and

Gamboa also cite *Baker-Bey v. Delta Sigma Theta Sorority, Inc.*, 941 F. Supp. 2d 659 (E.D. Pa.

2013).  But that case nicely demonstrates the circumstances in which the internal affairs doctrine

is properly applied and how they differ from those here.  In *Baker-Bey*, a member of an

incorporated sorority complained that the sorority and its officers had improperly suspended her

membership for violating the sorority's rules against hazing.  *Id*. at 661.  That, of course,

involves the internal affairs of a corporation and differs significantly from a claim by a third-

party creditor.  Under factually analogous case law, the Court should apply Pennsylvania law, as

to which there is no dispute that Eddystone has stated a valid claim for breach of fiduciary duty.

### c.  Eddystone Has Stated a Breach of Fiduciary Duty Claim under Louisiana Law

In the various rounds of briefing on this issue, Eddystone has cited a host of Louisiana

cases holding that officers and control persons of insolvent limited liability companies and other

business organizations have fiduciary duties to creditors.  *See* Dkt. 39 at 36-40; Dkt. 53 at 13-15;

Dkt. 239 at 15-18.  Rios and Gamboa's reply addresses only *3 Point Holdings, L.L.C. v. Gulf*

*South Solutions, L.L.C.*, No. CIV.A. 06-10902, 2008 WL 695379 (E.D. La. Mar. 13, 2008),

which squarely held that the officers of an insolvent Louisiana limited liability company owed

fiduciary duties to creditors.  Rios and Gamboa assert that *3 Point* applied Texas rather than

Louisiana law, but there is no basis for that assertion, and the word "Texas" does not even appear

in the decision.  The limited liability company at issue, Gulf South Solutions L.L.C., was formed

in Louisiana and was domiciled in Mandeville, Louisiana.  There is absolutely no basis for the suggestion that *3 Point* applied Texas law.

Incongruously, it is Rios and Gamboa who cite only non-Louisiana cases, notwithstanding their vigorous assertions that Louisiana law should apply.  *See* Dkt. 259 at 3-4. In *Tow v. Bulmahn*, No. 15-3141, 2016 WL 1722246, at *6 (E.D. La. Apr. 29, 2016), "Texas law govern[ed] the [bankruptcy] Trustee's breach of fiduciary claims" against former officers. *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008), *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006), and *In re TOCFHBI, Inc.*, 413 B.R. 523 (Bankr. N.D. Tex. 2009) were each decided under Delaware law.  Neither Eddystone nor the Individual Defendants claim that Texas or Delaware governs the breach of fiduciary duty claim, so these cases are not relevant here.

Finally, pivoting back to Louisiana law, Rios and Gamboa argue that the "negligent and wrongful act" language in La. Stat. Ann. § 12:1320(D) does not permit claims against them personally because Eddystone did not allege that they acted outside their capacity as members, employees, or agents of BTS or that they violated some "personal duty owed" to Eddystone.  *See* Dkt. 259 at 4 (quoting *Petch v. Humble*, 41,301 (La. App. 2 Cir. 8/23/06), 939 So.2d 499, 504). But the fiduciary duty to creditors is a personal duty owed by an LLC's officer to creditors, as Eddystone's many cases establish.  For example, using one's power to accomplish fraudulent transfers is sufficient to fall outside the shield from personal liability.  *See Gandhi v. Sonal Furniture & Custom Draperies, L.L.C.*, 49,959 (La. App. 2 Cir. 7/15/15), 192 So. 3d 783, 790 ("The wrongful act in this case is further addressed in Section 1320(D) as 'fraud' by a member/actor of an LLC.").

Nor can Rios and Gamboa escape liability by arguing that Bridger Logistics and not they was the managing member of BTS.  There is no dispute that Rios and Gamboa were the control persons of BTS—Rios signed the transfer agreements divesting BTS of all of its remaining assets in his capacity as CEO of Bridger Logistics.  And Louisiana law explicitly protects the rights of creditors as against not only "a member [or] manager," but also the "employee or agent of a limited liability company."  L.S.A.-R.S. § 12:1320(D).  This is consistent with the law generally, which applies fiduciary duty liability to control persons and officers on the same terms as to members and managers.  *See 3 Point Holdings, L.L.C. v. Gulf South Solutions, L.L.C*., No. CIV.A. 06-10902, 2008 WL 695379, at *2 (E.D. La. Mar. 13, 2008) ("officers" of an insolvent LLC owe fiduciary duties); *In re Covenant Partners, L.P*., No. AP 16-226, 2017 WL 838637, at *3 (Bankr. E.D. Pa. Mar. 2, 2017); *Hipple v. Hipple*, No. CV 12-1256, 2016 WL 320216, at *12 (E.D. Pa. Jan. 27, 2016) ("When a corporation is insolvent, the fiduciary duty of the controlling shareholders arises in favor of corporate creditors."); *Vital Pharmaceuticals v. USA Sports, LLC*, No. 3:11-CV-975, 2012 WL 760561, at *9 (M.D. Pa. Mar. 8, 2012) (holding in the LLC context that "Pennsylvania common law imposes a fiduciary duty upon corporate officers in favor of creditors, as well as to the corporation, when the corporation is insolvent."); *Sugartown Worldwide LLC v. Shanks*, No. CIV.A. 14-5063, 2015 WL 1312572, at *12 (E.D. Pa. Mar. 24, 2015) (holding that "when [a limited partnership] becomes insolvent," its "officers, directors, and controlling shareholders . . . owe a fiduciary duty to the corporation's creditors"); *In re Jamuna Real Estate*, LLC, 416 B.R. 412, 435–36 (Bankr. E.D. Pa. 2009) (LLC context).

**II.   The Additional Fraudulent Transfer Recipient Subsidiaries Are Subject to Personal Jurisdiction in this Court**

The Court has already rejected the premise by which Ferrellgas argues that the Additional Fraudulent Transfer Recipient Subsidiaries are not subject to personal jurisdiction.

Acknowledging that jurisdiction exists where a defendant has "aimed its tortious conduct at the forum," Dkt. 261 at 4, Ferrellgas argues that "ERC fails to meet this test because it has not pleaded any acts to support its argument that the Additional Entity Defendants committed an intentional tort." *Id*. at 5. But Ferrellgas ignores that the Court has already decided this question against it. Overruling Ferrellgas's argument that Eddystone should have been denied leave to submit the very Amended Complaint at issue, the Court ruled that Eddystone "state[s] claims for intentional and constructive fraudulent transfer." Dkt. 181 at 2 n.1.

That ruling was consistent with the allegations in the First Amended Complaint, which make clear that the Additional Fraudulent Transfer Recipient Subsidiaries were knowing participants in the fraudulent transfers. FAC ¶¶ 56, 65-69, 92. Indeed, the same persons who controlled the transferor controlled the transferees.

Under controlling Third Circuit authority, it follows that the new defendants are subject to personal jurisdiction. By "participating" in a fraudulent conveyance against Pennsylvania creditors, a defendant "thus expressly aim[s] his conduct at the forum." *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 14 (3d Cir. 2008); see also Dkt. 239 at 8-9 (citing additional authority).

Nor can the Additional Fraudulent Transfer Recipient Subsidiaries evade jurisdiction by denying that they "'knew' that ERC would suffer harm in Pennsylvania." Dkt. 261 at 5. Of course, this assertion contradicts the controlling allegations of the complaint. FAC ¶¶ 56, 65-69, 92. And it is utterly implausible in light of the common control among the Bridger entities. Where a transferor and transferee are under common control, the "alleged intent on the Transferor side—to defraud creditors, Plaintiff included—may be presumed to exist on the Transferee side as well." *DCK/TTEC, LLC v. Postel,* 2015 WL 2341284, at *4 (W.D. Pa. May 14, 2015). Here, FGP, Bridger Logistics, Rios and Gamboa acted on behalf of both BTS and the

fraudulent transfer recipient subsidiaries in accomplishing the fraudulent transfers — for example, by signing the transfer agreements on behalf of both sides of the transaction. That makes the Additional Fraudulent Transfer Recipient Subsidiaries equal and active participants in the intentional transfers directed at Pennsylvania.[1]

Ferrellgas also attempts to distinguish Eddystone's cases finding that fraudulent transfers aimed at Pennsylvania creditors give rise to personal jurisdiction on the ground that they involved actual judgments rendered in Pennsylvania. But that is a distinction without a difference. The analysis focuses on the transfers themselves, which is the misconduct aimed at Pennsylvania, not subsequent litigation against the transferor. "[F]raudulently transferring assets to avoid [] specific [contractual] obligations constitutes conduct 'expressly aimed' at Pennsylvania." *Sugartown Worldwide LLC v. Shanks*, No. CIV.A. 14-5063, 2015 WL 1312572, at *7 (E.D. Pa. Mar. 24, 2015). Jurisdiction follows from the fact that it is "inevitable that any harm would be felt uniquely in Pennsylvania, which, assuming the truth of plaintiff's allegations for purposes of deciding this motion to dismiss, was the focal point of the fraudulent transfers." *C.D. Acquisition Holdings v. Meinershagen*, No. 05-cv-1719, 2007 WL 184796 at *6 (W.D. Pa.

---

[1] Ferrellgas disputes that the actions of corporate principals on behalf of an entity are imputed to that entity for personal jurisdiction. Dkt. 261 at 10. That is not true under basic principles of agency. *See Grunberger Jewelers v. Leone*, No. CIV.A. 303CV647CFD, 2004 WL 1393608, at *3 (D. Conn. June 18, 2004) ("the actions of a corporate officer may typically be attributed to the corporation under agency principles for purposes of determining jurisdiction over the corporation"); *Bankers' Bank Ne. v. Ayer*, No. 3:11CV262 JBA, 2012 WL 1067677, at *5 (D. Conn. Mar. 30, 2012) (same). Indeed, because corporate entities can only act through their agents, it would otherwise be completely impossible to attribute any actions to them for any purpose, including jurisdiction. Ferrellgas's supposedly contrary cases do not involve principles of agency and imputation but rather address alter ego claims.

Ferrellgas also asserts that Eddystone has failed to allege that Rios and Gamboa were the principals of the Additional Fraudulent Transfer Recipient Subsidiaries. But that is contracted by the allegations of the FAC. FAC ¶¶ 33, 43, 47, 68.

Jan. 22, 2007).  Ferrellgas does not cite a single case holding that a plaintiff must first obtain a judgment against a transferor before bringing suit against out-of-state transferees.

Ferrellgas heavily relies on *Clark v. Int'l Shell*, No. 2:09-CV-257, 2009 WL 4262830 (W.D. Pa. Nov. 24, 2009), but that case is easily distinguishable because the true subsequent transferee and its principals were not involved in the attack on the creditor plaintiff.  Unlike FGP, Bridger Logistics, Rios and Gamboa, the common control person of the transferor and transferees in *Clark* did not have any contact with plaintiff or Pennsylvania in his current or former capacities.  Specifically, *Clark* involved "no allegation of any contact which [the corporate principal] had with Plaintiff or with Pennsylvania in either his current or former capacity of an officer of the respective corporations."  *Id.* at *3.  The opposite is true here, where the Additional Fraudulent Transfer Recipient Subsidiaries were core participants in a scheme designed and carried out by their principals to target Eddystone.[2]

Ferrellgas also claims that Eddystone improperly seeks to establish jurisdiction based on allegations as opposed to "competent evidence."  But a plaintiff is entitled to rely on allegations at the pleading stage.  *See* Dkt. 239 at 6.  *Gambone* itself found personal jurisdiction on the basis of adequate fraudulent transfer allegations, 288 F. App'x at 14, as did the courts in *State Farm Mut., Auto. Ins. Co. v. Tz'doko V'CHESED of Klausenberg*, 543 F. Supp. 2d 424, 431 (E.D. Pa. 2008), and *DCK/TTEC, LLC v. Postel*, 2015 WL 2341284, at *5 (W.D. Pa. May 14, 2015).  In any event, the Petts Declaration in support of Eddystone's crime/fraud motion, Dkt. Nos. 217 & 218, provides ample evidence to support the allegations of fraudulent transfer and of intent on which personal jurisdiction is based here.

---

[2] In addition, *Clark* does not address the holdings of *Gambone* and other controlling authority which establishes that fraudulent transfers aimed at Pennsylvania entities are a basis for personal jurisdiction.

10

Finally, Ferrellgas argues that the Court must analyze personal jurisdiction on a claim-by-claim basis.  But the Court has already rejected this argument in this case.  As the Court explained in rejecting Rios and Gamboa's personal jurisdiction motion, "it is unnecessary to conduct a separate jurisdictional inquiry as to each claim" because "Eddystone's claims for Alter Ego, Intentional Fraudulent Transfer (12 Pa. C. S. § 5104(a)), Constructive Fraudulent Transfer (12 Pa. C.S. § 5105), and Breach of Fiduciary Duties of Care and Loyalty to Creditors all factually overlap."  Dkt. 59 at 6 n.8; *see also O'Connor v. Sandy Lane Hotel Co. Ltd.*, 496 F. 3d 312, 318 (3rd Cir. 2007) ("We note that our usual practice is to assess specific jurisdiction on a claim-by-claim basis.  However, it may not be necessary to do so for certain factually overlapping claims."); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 WL 3129147, at *5 (E.D. Pa. 2017) ("Because Plumbers' claims all stem from the same conduct of Jurisdiction Defendants . . . a claim-specific analysis is not necessary.").

In any event, Eddystone's claim that Bridger Rail Shipping is an alter ego of BTS is sufficient in itself to establish personal jurisdiction.  There is no dispute that BTS, which carried out an oil transloading operation in Pennsylvania that is the basis for this dispute, is subject to Pennsylvania jurisdiction.  And the basis for Eddystone's alter ego claim against Bridger Rail Shipping is that the economics and profits of that transloading operation were transferred to Bridger Rail Shipping starting in June 2015 (though the long-term obligation under the RSA remained with BTS).  FAC ¶¶ 57, 65, 69.  Bridger Rail Shipping received payment for BTS's transloading capacity at Eddystone, made payments to Eddystone, and owned or leased all of the rail cars by which Bridger and then Ferrellgas transported crude oil through Pennsylvania.  Not only do these facts themselves subject Bridger Rail Shipping to Pennsylvania jurisdiction in a suit arising out of that crude oil transportation scheme, but the sufficiency of Eddystone's alter

ego allegations, Dkt. 181 at 2 n.1, establishes jurisdiction as well.  The "jurisdictional analysis over an alleged alter ego is a less onerous standard than [the one] appl[ied] under Fed. R. Civ. P. 12(b)(6) for piercing the corporate veil for liability purposes."  *Sugartown Worldwide LLC v. Shanks*, 129 F. Supp. 3d 201, 205 (E.D. Pa. 2015) (exercising personal jurisdiction).

Meanwhile, Eddystone's constructive fraudulent transfer claims, arising out of the same facts as its intentional fraudulent transfer claims, are sufficient to confer jurisdiction.  Neither *Gambone* nor any of the other cases cited in Eddystone's Opposition distinguish between intentional and constructive fraudulent transfer for personal jurisdiction purposes.  On the contrary, courts find personal jurisdiction against constructive fraudulent transferees under the effects test.  *See Sugartown*, 2015 WL 1312572, at *7, 11 (finding that constructive fraudulent transfers were "conduct 'expressly aimed' at Pennsylvania").  The reason for this is simple: once all of the elements of a constructive fraudulent transfer have been proven, "fraud on the creditors is presumed."  *See In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006).  Thus, personal jurisdiction under the effects test is equally applicable to claims for constructive fraudulent transfer.  The motion to dismiss should be denied.

Dated: November 5, 2018                          Respectfully submitted,


                                                 /s/ Nicholas Petts
                                                 Henry E. Hockeimer, Jr. (I.D. No. 86768)
                                                 Terence M. Grugan (I.D. No. 307211)
                                                 BALLARD SPAHR LLP
                                                 1735 Market Street, 51st Floor
                                                 Philadelphia, PA 19103-7599
                                                 Telephone: (215) 665-8500
                                                 Facsimile: (215) 864-8999
                                                 hockeimerh@ballardspahr.com
                                                 grugant@ballardspahr.com

Filiberto Agusti (*pro hac vice*)
Jeffrey M. Theodore (*pro hac vice*)
Andrew J. Sloniewsky (*pro hac vice*)
Nicholas Petts (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
fagusti@steptoe.com
jtheodore@steptoe.com
npetts@steptoe.com
*Counsel for Eddystone Rail Company, LLC*

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via the Court's ECF system on November 5, 2018, thereby serving all counsel of record.

/s/ *Nicholas Petts*
Nicholas Petts