IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | : | CIVIL ACTION |
| Plaintiff/Counter-Defendant, | : | |
| v. | : | No. 17-495 |
| JULIO RIOS, JEREMY GAMBOA, BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., FERRELLGAS, L.P., BRIDGER RAIL SHIPPING, LLC, BRIDGER REAL PROPERTY, LLC, BRIDGER STORAGE, LLC, BRIDGER SWAN RANCH, LLC, BRIDGER TERMINALS, LLC, BRIDGER TRANSPORTATION, LLC, J.J. ADDISON PARTNERS, LLC, J.J. LIBERTY, LLC, BRIDGER ADMINISTRATIVE SERVICES II, LLC, BRIDGER ENERGY, LLC, BRIDGER LAKE, LLC, BRIDGER LEASING, LLC, and BRIDGER MARINE, LLC, | : | |
| Defendants, | : | |
| BRIDGER LOGISTICS, LLC, FERRELLGAS PARTNERS, L.P., and FERRELLGAS, L.P., | : | |
| Defendants/Counterclaimants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                          **NOVEMBER 13, 2018**

Presently before this Court is the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendants, Bridger Administrative Services, II, LLC, Bridger Marine, LLC, Bridger Rail Shipping, LLC ("Bridger Rail Shipping"), Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, Bridger Leasing, LLC, Bridger Energy, LLC, Bridger Lake, LLC, J.J. Liberty, LLC, and J.J. Addison Partners, LLC (collectively, the "Additional Entity Defendants"). After considering the Motion, as well as Plaintiff, Eddystone Rail Company, LLC's ("Eddystone") Opposition to October 5,

2018 Motions to Dismiss, the Additional Entity Defendants' Reply, and Eddystone's Sur-Reply, the Court concludes that it does have personal jurisdiction over the Additional Entity Defendants, and declines to dismiss under Federal Rule of Civil Procedure 12(b)(2).[1] Therefore, the Motion will be denied.

I. **BACKGROUND**

In February 2013, Bridger Transfer Services, LLC ("BTS") entered into a Rail Services Agreement ("RSA") with Eddystone under which Eddystone agreed to construct and operate a facility in Eddystone, Pennsylvania, to transfer crude oil from railcars to river barges. Pursuant to the RSA, BTS committed to purchase a minimum volume of rail-to-barge crude oil transloading capacity over the course of five years. BTS made that capacity available to its affiliates so that they could supply Bakken crude oil to the Monroe Refinery in Trainer, Pennsylvania.

In June 2015, BTS's parent, Defendant, Bridger Logistics, LLC ("Bridger Logistics") was purchased by Ferrellgas Partners, L.P. and Ferrellgas, L.P. (collectively, "Ferrellgas"). At that time, BTS owed to Eddystone a remaining minimum volume obligation of approximately $150 million. Eddystone alleges that Ferrellgas promptly caused Eddystone to abandon more than $10 million of net accounts receivables with its affiliates, the Defendants in this litigation.

---

[1] When a court decides a motion to dismiss under Rule 12(b)(2), it must consider allegations made by plaintiff as true and construe all disputed facts in favor of the plaintiff. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Isaacs v. Trs. of Dartmouth Coll., No. 13-5708, 2014 WL 4186536, at *5 (E.D. Pa. Aug. 25, 2014). Once a defendant raises a jurisdictional defense, the plaintiff "must prove by affidavits or other competent evidence that jurisdiction is proper." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (citation omitted). Where, as here, the district court does not hold an evidentiary hearing, "a plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). However, the plaintiff may not rely on the pleadings alone and "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir. 1990). In this case, Eddystone relies on the Declaration of Nicholas Petts, Esq. in support of its Crime-Fraud Exception Motion as evidence to support the allegations of fraudulent transfer and of intent on which personal jurisdiction is based. (See Pl.'s Sur-Reply at 10.) (citing Doc Nos. 217, 218).

In addition, Ferrellgas allegedly began crediting the revenue associated with BTS's transloading capacity to its affiliate Defendant, Bridger Rail Shipping, and causing Bridger Rail Shipping to cover the RSA payments as they came due, while leaving the long-term obligation in BTS. According to Eddystone, as it became clear that a halt to shipping was imminent, Ferrellgas caused BTS to transfer the remainder of its assets to the affiliates now named as the Additional Entity Defendants in this litigation. Eddystone asserts that BTS then defaulted on the RSA.[2]

Eddystone filed this lawsuit on February 2, 2017, asserting claims for alter ego, intentional and constructive fraudulent transfer under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. C.S. §§ 5104(a), 5105, and breach of fiduciary duty against Defendants, Ferrellgas, Bridger Logistics, Julio Rios ("Rios"), and Jeremy Gamboa ("Gamboa"). (Doc. No. 1.) After extensive litigation and discovery, Eddystone sought leave to file an amended complaint on August 10, 2018. (Doc. No. 178.) The First Amended Complaint names the Additional Entity Defendants as additional Defendants identifying all thirteen entities as recipients of fraudulent transfers from BTS.[3] (See id.) It alleges that they are all commonly controlled by Gamboa, Rios, and Ferrellgas, and they knowingly received the fraudulent transfers at issue in this lawsuit. (Id.) Moreover, it states that there was no legitimate business reason for the transfers and they were intended to defraud Eddystone, as well as hinder its collection of debts from BTS. (Id.) Additionally, the First Amended Complaint identified

---

[2] In their Reply, the Additional Entity Defendants state that Eddystone mischaracterizes the record by saying that BTS defaulted on the RSA. (Add'l Entity Defs.' Reply at 2 n.4.) They point out that "[b]y the time of the default, BTS had become Jamex Transfer Services (or 'JTS'), and was owned by a different group of companies that, just eight months earlier, had been endowed with $250 million in capital as a result of the FGP acquisition." (Id.) (citing Doc. No. 239).

[3] "[A]ll of the thirteen Additional Entity Defendants are nonresidents, as none of them [are] organized under Pennsylvania law or maintains [sic] its corporate headquarters in Pennsylvania." (Add'l Entity Defs.' Mot. to Dismiss at 5) (citing First Am. Compl. ¶¶ 18-30). The Additional Entity Defendants argue that the First Amended Complaint does not allege sufficient contacts with Pennsylvania to establish personal jurisdiction. (See id.)

Bridger Rail Shipping as an alter ego of BTS. (See id.) Eddystone also added further detail regarding the history of events, the allegedly fraudulent transfers, and Defendants' alleged abuse of BTS as an entity. (See id.)

The Court granted Eddystone leave to amend on September 7, 2018. (Doc. No. 181.) The Additional Entity Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction on October 5, 2018, which Eddystone responded to on October 19, 2018.[4] (Doc. Nos. 190, 239.) The Additional Entity Defendants filed a Reply on October 30, 2018, and Eddystone filed a Sur-Reply on November 5, 2018. (Doc. Nos. 261, 265.)

## II. DISCUSSION

"Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants to the extent provided by the law of the state in which the federal court sits." Penco Prods., Inc. v. WEC Mfg., LLC, 974 F. Supp. 2d 740, 746 (E.D. Pa. 2013) (citation omitted). "Pennsylvania's Long-Arm Statute allows personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the Fourteenth Amendment." Id. (citing 42 Pa. Cons. Stat. Ann. § 5322(b); Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). "Under this standard, nonresident defendants are required to have minimum contacts with Pennsylvania so as not to offend traditional notions of fair play and substantial justice." Id. (citing Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "There are two types of personal jurisdiction: general and specific." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 & n.9 (1984)).

---

[4] Defendants, Rios and Gamboa filed a Motion to Dismiss Plaintiff's First Amended Complaint, which will be addressed separately. (See Doc. No. 207.)

Regarding specific jurisdiction, the United States Court of Appeals for the Third Circuit ("Third Circuit") has provided a clear summary of this jurisdictional analysis, noting:

> [t]he inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with fair play and substantial justice."

O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).

Eddystone, which is a Delaware entity with its principal place of business in Eddystone, Pennsylvania, argues that the Additional Entity Defendants are subject to personal jurisdiction because they committed intentional fraudulent transfers intended to defraud a Pennsylvania creditor by evading a Pennsylvania debt arising from a Pennsylvania crude oil transloading operation. (Pl.'s Opp'n Add'l Entity Defs.' Mot. to Dismiss at 6.) When, as here, a complaint alleges intentional fraudulent transfer allegations, we must apply a slightly refined version of the specific jurisdiction test outlined in O'Connor. See Wolstenholme v. Bartels, 511 F. App'x 215, 219 (3d Cir. 2013) (stating that complaints alleging intentional torts invoke a "slightly refined version" of the specific jurisdiction test outlined in O'Connor) (citing O'Connor, 496 F.3d at 317 n.2). "Specifically, consideration of jurisdiction . . . for the alleged intentional torts calls for application of the 'effects test' first outlined by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789–91 (1984)." Id.; see also Aetna Inc. v. Insys Therapeutics, Inc., 324 F. Supp. 3d 541, 552 (E.D. Pa. 2018) ("Courts apply the 'effects test' from Calder v. Jones, in analyzing jurisdiction over a non-resident who commits a tort outside of the forum state.").

Under the "effects test" as applied within the Third Circuit, a district court may exercise personal jurisdiction over a defendant if the plaintiff shows "(1) the defendant committed an intentional tort; (2) the forum state is the focal point of the harm suffered by plaintiff; and (3) the forum state is the focal point of the defendant's tortious activity, because the defendant expressly aimed its tortious conduct there." Wolstenholme, 511 F. App'x at 219 (citing Marten, 499 F.3d at 297; IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998)).

"In applying this test, [the Third Circuit] ha[s] underscored that the scope of the law established in Calder is narrow, employing 'a conservative reading' to reflect the fact that Calder did not 'carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state.'" Id. (quoting IMO Indus., 155 F.3d at 265). "Moreover, 'the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state.'" Id. (quoting Marten, 499 F.3d at 297). "Therefore, '[o]nly if the 'expressly aimed' element of the effects test is met need we consider the other two elements.'" Id. (quoting Marten, 499 F.3d at 297).

Taking all of Eddystone's allegations as true, the first prong of the test is satisfied because the First Amended Complaint plausibly alleges that the Additional Entity Defendants committed an intentional tort by knowingly receiving the fraudulent transfers at issue in this case without any legitimate business reason, and with the intention of defrauding Eddystone and hindering its collection of debts from BTS. See Am. Compl. ¶¶ 33-34, 65-69, 87-93.

Eddystone's allegations also satisfy the second prong because it asserts that the Additional Entity Defendants' conduct caused economic harm to Eddystone, a Pennsylvania company, that operated in Pennsylvania pursuant to the RSA, which was performed solely in

6

Pennsylvania. In fact, Eddystone alleges that "[a]bruptly cut off from the business on which Eddystone had relied, Eddystone had to suspend operations," and it continues to try to find business to resume operations at the facility. (First Am. Compl. ¶ 74.) As Eddystone points out, the Additional Entity Defendants were all controlled by the same principals that dealt directly with Eddystone and knew that it was a Pennsylvania company that operated there pursuant to the RSA, which was performed by Eddystone wholly in Pennsylvania. (Pl.'s Resp. Opp'n Add'l Entity Defs.' Mot. to Dismiss at 9.) There is no doubt that the brunt of the harm in this lawsuit is likely to have been felt in Pennsylvania, making Pennsylvania the focal point of the harm. See Sugartown Worldwide LLC v. Shanks, No. 14-5063, 2015 WL 1312572, at *7 (E.D. Pa. Mar. 24, 2015) (concluding that plaintiff felt the effects of the tortious conduct related to the alleged fraudulent transfers in Pennsylvania because "Sugartown is a Pennsylvania limited liability company that has a Pennsylvania judgment it is attempting to enforce.").

Regarding the third prong, the "expressly aimed" requirement means that "[t]he defendant must manifest behavior intentionally targeted at and focused on the forum." IMO Indus., 155 F.3d at 265 (citation omitted). Eddystone has alleged sufficient facts suggesting that the Additional Entity Defendants expressly aimed their tortious conduct at the forum. That is, Eddystone sufficiently alleges that the Additional Entity Defendants knew that their conduct would cause harm to Eddystone in Pennsylvania, and they intentionally engaged in such conduct with the goal of causing the harm to Eddystone. Specifically, it alleges that they participated in fraudulent transfers with the intention of stripping a company, whose principal operation was in Pennsylvania, of assets to evade a Pennsylvania debt to a Pennsylvania business arising out of the RSA to take or pay for capacity at a Pennsylvania crude oil transloading facility. See Vizant Techs., LLC v. Whitchurch, 97 F. Supp. 3d 618, 632 (E.D. Pa. 2015) (finding the third prong

met when "defendants not only knew that their conduct would cause harm to an entity located in [the forum], but also engaged in that conduct intentionally, with the goal of causing said harm").

We find that Eddystone's allegations, which are unique to this case, are sufficient to establish that the Additional Entity Defendants expressly aimed their conduct at Pennsylvania. See Agri-Mktg., Inc. v. ProTerra Sols., LLC, No. 17-627, 2018 WL 1444167, at *8 (E.D. Pa. Mar. 22, 2018) ("Here, Agri-Marketing alleges that Defendants fraudulently transferred assets for the purpose of preventing Agri-Marketing from collecting a debt. Allegations of this type have been found sufficient to establish jurisdiction under the effects test.") (citing Gambone v. Lite Rock Drywall, 288 F. App'x 9, 14 (3d Cir. 2008) (holding that allegations that a defendant "(1) participated in a fraudulent conveyance, which is a species of the intentional tort of fraud, (2) for the purpose of preventing the plaintiffs, who are Pennsylvania creditors, from collecting on a judgment rendered in their favor by a court in Pennsylvania, (3) and thus 'expressly aimed' his conduct at the forum" were sufficient to establish the court's jurisdiction); Sugartown, 2015 WL 1312572, at *7 (finding that allegedly fraudulent transfers were "expressly aimed" at Pennsylvania where there was "apparently no other business reasons for these transfers" other than to avoid the judgment of the Pennsylvania creditor)); see also State Farm Mut. Auto. Ins. Co. v. Tz'Doko V'Chesed of Klausenberg, 543 F. Supp. 2d 424, 430–31 (E.D. Pa. 2008) (stating that "the alleged acts — liquidating [Metropolitan Family Practice] to avoid paying the Pennsylvania judgment — were 'expressly aimed' at the forum state"); C.D. Acquisition Holdings, Inc. v. Meinershagen, No. 05-1719, 2007 WL 184796, at *5 (W.D. Pa. Jan. 22, 2007) (noting that although none of the defendants' "physical or metaphysical conduct took place *in* Pennsylvania, their conduct certainly was directed *at* Pennsylvania[,]" and finding that "[t]he fraudulent transfer of assets from judgment debtor . . . to his transferees, through a series of

transactions successfully designed to insulate his assets from the reach of Pennsylvania creditors holding a Pennsylvania judgment, could *only* be aimed at Pennsylvania") (emphasis in original); In re Akbari–Shahmirzadi, No. 11-15351, 2016 WL 6783245, at *3 (Bankr. D.N.M. Nov. 14, 2016) ("Courts have held with near uniformity that they have personal jurisdiction to hear fraudulent transfer cases under the Calder analysis, even when the transfer is the only contact between the debtor and the foreign transferee.") (citing cases).

Under the facts of this case, it was certainly foreseeable that the Additional Entity Defendants' conduct would subject them to suit in Pennsylvania. In sum, their conduct and connection with Pennsylvania is such that they should have reasonably anticipated being haled into court here. Furthermore, we rule that exercising jurisdiction over the Additional Entity Defendants would not offend traditional notions of fair play and justice, especially given the allegations that they are all commonly controlled by Gamboa, Rios, and Ferrellgas, who are already Defendants in this action. Eddystone has made a prima facie showing that personal jurisdiction exists over the Additional Entity Defendants; therefore, we will deny their Motion to Dismiss.

Since all of the counts addressed in the Additional Entity Defendants' Motion to Dismiss arise from the alleged fraudulent transfer conduct at issue in this case, we exercise personal jurisdiction over the alter ego claim against Bridger Rail Shipping (Count I), and the intentional and constructive fraudulent transfer claims under the PUFTA (Count II – Intentional Fraudulent Transfer (12 Pa. C.S. § 5104(a)) and Count III – Constructive Fraudulent Transfer (12 Pa. C.S. § 5105)) against all Additional Entity Defendants. See Sugartown, 2015 WL 1312572, at *7 ("As three of the five counts arise from the 'transfer' conduct . . . , we exercise personal jurisdiction over the piercing of the Outlook's corporate veil (Count I), the PUFTA claim (Count

IV) and the breach of fiduciary duty claim (Count V)."); see also Eddystone Rail Co., LLC v. Bridger Logistics, LLC, No. 17-0495, 2017 WL 3072250, at *3 n.8 (E.D. Pa. July 19, 2017).

## III.  CONCLUSION

For the reasons set forth above, the Court denies the Additional Entity Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

An appropriate Order follows.