UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, <br>     Plaintiff/Counter-defendant, <br> <br> v. <br> <br> BRIDGER LOGISTICS, LLC, *et al.*, <br>     Defendants/Counterclaimants. | : <br> : <br> : No. 2:17-cv-00495-RK <br> : <br> : <br> : PUBLIC VERSION <br> : <br> : <br> : <br> : <br> : <br> : |

**REPLY IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

Defendants/Counterclaimants Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas L.P. (collectively, the "BL/FG Defendants") respectfully offer this reply brief in further support of their Motion to Disqualify Plaintiff's Counsel (Dkt. 264) (the "Motion").

**INTRODUCTION**

In its brief, Eddystone Rail Company, LLC ("ERC") stakes its opposition to the Motion on an argument that attorneys are free to review inadvertently disclosed privileged communications to determine whether such documents are actually privileged. As explained further below, ERC cites no applicable authority for this position, which would eviscerate the privilege and the protective rules governing inadvertent disclosure. Indeed, if ERC's position were accepted, any attorney who receives inadvertently disclosed documents would be free to analyze such materials, absorbing confidential information that cannot be forgotten. Rules 26(b) and 4.4(b) do not permit such use, nor does the Rule 502(d) Stipulation in this case.

ERC also makes the incredible assertion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which displayed the

1

following all-caps, bolded legend on nearly every page:

**THIS IS A PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION OR WORK PRODUCT**

To understand the impossibility of ERC's argument, the Court need only ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆[1]

ERC also contends that, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Bottom line, Steptoe broke the rules by (1) continuing to review (and apparently circulating to its entire team) the Rios-Soiefer-Hampton email chain that was obviously subject to a claim of privilege and mistakenly produced; (2) using the Rios-Soiefer-Hampton email chain to make its decision to pursue a crime-fraud motion that had apparently been under consideration for some time; and (3) continuing to review other privileged documents even after receiving a clawback letter stating that such materials were inadvertently disclosed.

Rather than demonstrating contrition or proposing a different remedy, ERC denies fault and attempts to blame the victim, arguing (at 2) that the BL/FG Defendants "should not be allowed to benefit from their own mistaken disclosures." But the BL/FG Defendants *did not mistakenly disclose the Rios-Soifer-Hampton email chain* or *any* related documents. Rather, the

---

[1] Numbered exhibits cited in this brief are attached to the Davis Declaration submitted as Ex. A.

documents were inadvertently produced by their co-defendants, Rios and Gamboa.

Accordingly, for the reasons set forth in their opening brief and below, the BL/FG Defendants respectfully (and reluctantly) ask that Steptoe be disqualified. At a minimum, the BL/FG Defendants ask the Court to ensure that Steptoe and ERC are not able to make further "use" of or profit from the inadvertently disclosed documents for any purpose in this litigation.

## ARGUMENT

### I. ERC'S INTERPRETATION OF THE GOVERNING RULES IS WRONG.

ERC attempts to escape repercussions for Steptoe's misuse of the BL/FG Defendants' privileged information by arguing (at 9, 13, and 15) that, even after realizing that documents are inadvertently disclosed and subject to a claim of privilege, counsel is permitted to continue to use the documents for purposes of assessing the other party's claim of privilege. If true, ERC's position would eviscerate the governing rules by permitting counsel to review and take account of any privileged materials inadvertently disclosed in litigation. Steptoe's interpretation of the rules is wrong, and it risked disqualification when it made the decision to review documents that it knew were inadvertently disclosed and subject to a privilege claim.

### A. Both Rule 26(b)(5)(B) And The Rule 502(d) Stipulation Prohibited ERC From Using Inadvertently Disclosed Documents For Any Purpose.

ERC's argument cannot be reconciled with the plain text of Rule 26(b)(5)(B), which states that a party "*must not use*" the information subject to the claim of privilege "*until the claim is resolved*" (emphasis added). The parties' Rule 502(d) Stipulation also states that, upon receiving a clawback notice, the receiving party "*must not use* or disclose the Protected Information until the claim of privilege or protection is resolved." (Dkt. 62 at 2 (emphasis added).) These prohibitions on "use" are not subject to any general exception for "litigation activities related to challenging the claim of privilege."

3

Nevertheless, ERC argues that the Steptoe team had license to continue reviewing documents that they knew to be inadvertently disclosed because Rule 26(b)(5)(B) states that a party "may promptly present the information to the court under seal for a determination of the claim" of privilege, and the Rule 502(d) Stipulation contains similar language. This "exception," however, does not grant permission to examine or rely upon the substance of privileged documents, neither of which is necessary to have documents submitted under seal for *in camera* review. Indeed, ERC supports this untenable position (at 10) with a citation to an advisory committee note for *a different part of the Rule*—ERC's quote relates to Section 26(b)(5)(**A**), but Steptoe has violated Rule 26(b)(5)(**B**).[2]

As explained further below, Steptoe misused inadvertently disclosed documents to guide its decision to file its crime-fraud motion. Federal courts have held this type of use—*i.e.*, relying on the material subject to the claim of privilege to argue against the privilege—to be *prohibited* by Rule 26(b)(5)(B). As one district court aptly explained:

> Rule 26(b)(5) clearly prohibits the use or disclosure of an inadvertently produced document that is subject to a claim of privilege or work product protection "until the claim of privilege is resolved." Thus, [the party challenging the claim of privilege] cannot rely on the substance of the . . . privileged documents to argue that [the other party has] waived protection of them.

*Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 297 F.R.D. 495, 499 (W.D. Okla. 2014) (citation omitted). Other courts have reached similar conclusions. *See, e.g.*, *Greater N.Y. Taxi Ass'n v. City of N.Y.*, No. 13-cv-3089, 2018 WL 2316629, at *6 (S.D.N.Y. May 8, 2018) (rejecting plaintiffs' contention that they were permitted to continue reviewing documents after

---

[2] ERC argues (at 8-10) that such a submission for *in camera* review "necessarily" requires "receiving counsel" to "analyze the document[s] before deciding whether to contest the privilege." But inadvertently disclosed privileged documents can be submitted for *in camera* review *without being reviewed and analyzed by the receiving party*, including by adopting the standard practice of using non-privileged information to argue that the Court should order an *in camera* review. Here, it would have been highly improper for Steptoe to analyze and select inadvertently disclosed materials for submission to the Court under seal.

receiving clawback letter, explaining that plaintiff could seek to contest privilege claim only on grounds that were formed "independent of knowledge gained during their improper review of the documents"); *Burt Hill, Inc. v. Hassan*, No. 09-1285, 2010 WL 419433, at *4 (W.D. Pa. Jan. 29, 2010) (emphasizing "the oft-cited protocol directing counsel, upon discovering the confidential nature of documents, to *cease review*, notify the owner, and abide by the owner's instructions regarding the documents' disposition" (emphasis added)); *Kelly v. CSE Safeguard Ins. Co.*, No. 2:08-CV-88-KJD-RJJ, 2011 WL 3494235, at *3 (D. Nev. Aug. 10, 2011) (requiring party receiving inadvertently produced privileged documents to "return all unredacted copies . . . and destroy any unredacted electronic copies" and "prohibit[ing] [it] from using unredacted portions in any manner"); *Johnson v. Stein Mart, Inc.*, No. 306-CV-341-J-34TEM, 2009 WL 1424214, at *3 (M.D. Fla. May 20, 2009) (stating that court had reprimanded counsel, earlier in the same case, who "refus[ed] to return . . . inadvertently disclosed emails").[3]

### B. Rule 4.4(b) Did Not Allow Steptoe To Continue Reviewing The Documents.

ERC also attempts to excuse Steptoe's conduct (at 14) by arguing that Rule 4.4(b) allowed Steptoe to continue reviewing inadvertently produced materials even after recognizing their potentially privileged nature. This argument is wrong for at least three reasons.

First, as explained in the BL/FG Defendants' Motion (at 9-10), Rule 4.4(b) and Rule 26(b)(5)(B) work in tandem to prevent misuse of inadvertently disclosed privileged information. ERC does not dispute that Rule 4.4(b) cannot override Rule 26(b)(5)(B). Instead, ERC quotes selectively (at 14) from ABA Formal Opinion 05-437, arguing that "Rule 4.4(b) does not obligate a 'lawyer either to refrain from examining the materials or to abide by the instructions of the sending lawyer.'" The Opinion states in the *next sentence*, however, that other sources of law

---

[3] ERC argues in a footnote (at 8 n.5) that Defendants did not comply with the Rule 502(d) stipulation because they did not state "the bases for their privilege assertions" in their clawback letters. As Steptoe concedes, however, all such documents were included in privilege logs.

beyond the ethical rules may require the lawyer to do more than just notify the producing party: "Whether the lawyer is required to take additional steps, such as returning the document . . . , is a matter of law beyond the scope of these Rules." Ex. E, ABA Formal Opinion 05-437 (Oct. 1, 2005) (quoting Rule 4.4, comment 2); *see also* Pa. R. P. C. 4.4(b) & cmt. 2. Indeed, the Pennsylvania Bar Association's Committee On Legal Ethics observed in 2007 that Rule 26(b)(5)(B) "restrict[s] a recipient's use or disclosure of information that is 'produced in discovery that is subject to a claim of privilege. . . .' until court resolution of any claims of privilege." Ex. F, Pa. Bar Revised Formal Opinion 2007-200, Inadvertent Disclosures, at 3.

Second, ERC does not dispute that Rule 4.4(b) requires the receiving party and its counsel to "promptly notify" the opposing party of the inadvertent production. Pa. R. P. C. 4.4(b). The purpose of this prompt notification requirement is to "permit [the sender] to take protective measures"—such as sending a clawback notice—with respect to the inadvertently disclosed documents. *Id.*, cmt. 2. Here, Steptoe did not adhere to its obligation to provide prompt notice of its ▅▅▅▅▅ discovery of the material subject to a claim of privilege. ERC and Steptoe should not be permitted to sleep on their Rule 4.4(b) notification obligation in order to delay the inevitable clawback notice or to avoid the prohibition on use in Rule 26(b)(5).

Third, even if Rule 4.4(b) allowed Steptoe to continue reviewing the inadvertently produced material and even if it had not violated the prompt notification requirement, the Rule 502(d) Stipulation required Steptoe to cease reviewing the inadvertently disclosed documents the moment it realized that they were subject to a privilege claim. The Stipulation provides that "where a Receiving Party first discovers a document or information that, in good faith, the Receiving Party believes the Producing Party may deem to be Protected Information, the Receiving Party shall promptly provide written notice to the Producing Party." (Dkt. 62 at 2.)

6

The Stipulation further provides that, upon "giving notice in accordance with the foregoing provision[], a Receiving Party . . . *must not use* or disclose the Protected Information until the claim of privilege or protection is resolved." (*Id.* (emphasis added).)

      **C.**      **The Cases ERC Cites Are Distinguishable.**

ERC relies principally on three cases to support its contention that it did nothing wrong by continuing to review documents it knew to be inadvertently disclosed: *National Graphics, Inc. v. Brax Ltd.*, *U.S. Home Corp. v. Settlers Crossing, L.L.C.*, and *Irth Sols., LLC v. Windstream Commc'ns LLC*. (Dkt. 274 at 11–13.) In all of these cases, however, the allegedly privileged communications were *not privileged*, or the *privileged had been waived*.

As the court explained, the inadvertently disclosed declaration at issue in *National Graphics* was intended to be disclosed to a third party and therefore was *not privileged*: "I conclude that the declaration is not privileged because the information contained in it was not intended to be a confidential communication with Plaintiff's attorney," but rather "that his statements and representations would be presented to the Patent and Trademark Office (PTO) or used in litigation over the patent." Case No. 12-C-119, 2015 WL 13029361, at *1 (E.D. Wisc. Jan. 8, 2015). In stark contrast, the emails inadvertently disclosed to Steptoe were clearly privileged, as is evident from the bold-faced, all-caps warnings on nearly every page.

In *U.S. Home*, the court found that the disclosing party had *waived privilege* and that the disclosure was *not inadvertent*: "The disclosure by Greenberg Traurig, former counsel to U.S. Home, was not *inadvertent*." Civil Action No. DKC-08-1863, 2012 WL 13013055, at *7 (D. Md. Oct. 12, 2012). And in *Irth Solutions*, No. 2:16-cv-219, 2017 WL 3276021, at *13-14 (S.D. Ohio Aug. 2, 2017), the court found that the disclosing party "*waived the privilege*" because they produced the documents twice, after conducting a privilege review, and the disclosure was "completely reckless." (emphasis added).

7

Here, of course, Rios and Gamboa (not the BL/FG Defendants) inadvertently produced the Rios-Soiefer-Hampton email chain, and there is no dispute that co-defendants cannot waive a privilege on the BL/FG Defendants' behalf. *See In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-02002, 2014 WL 6388436, at *10 (E.D. Pa. Nov. 17, 2014) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management."); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) ("[O]ne co-defendant could not waive the privilege that attached to the shared information without the consent of all others.").

        **D.**        **Counsel Risks Disqualification By Ignoring Inadvertent Disclosure Rules.**

To allay any remaining doubts the Court may have, the undersigned retained Lawrence J. Fox, an expert in professional responsibility and lecturer at Yale Law School, to offer an opinion on Steptoe's position that it was free to continue reviewing inadvertently disclosed documents.

Mr. Fox is a former chairman of the ABA Standing Committee on Ethics and Professional Responsibility and a former chairman of the ABA's Section of Litigation. (Ex. D, Fox Decl. ¶ 8.) Before teaching at Yale, he taught law at Cornell, The University of Pennsylvania, and Harvard. (*Id.* ¶ 6.) He is the author or co-author of a number of books on professional responsibility and dozens of articles on many topics related to both ethics and litigation. (*Id.* ¶ 7.) Mr. Fox was a lawyer at Drinker Biddle & Reath LLP for 45 years, and he now is a partner at Schoeman Updike Kaufman & Gerber LLP in New York, where he continues to specialize in the area of professional responsibility. (*Id.* ¶ 4.)

Mr. Fox helped author the first ABA Formal Ethics Opinion concerning the inadvertent disclosure of privileged information. (*Id.* ¶ 15.) As he explains, along with the historical backdrop against which these rules have developed, there is no basis for Steptoe's position that attorneys are free to review inadvertently disclosed privileged materials:

> When it comes to this juncture in the proceeding where a mis-sent document is in

8

> the possession of the adverse party, both the rules of professional conduct and the rules of civil procedure, in Rule 26(b)(5)(B), provide the fair way out of this conundrum. . . . Without consulting Court or adversary, Steptoe proceeded to review the documents without regard to the privilege that attached to all or most of them. Such self-help destroyed the careful balance that Rule 4.4 and the Federal Rules of Civil Procedure, Rule 26 (b)(5)(B), have established, demonstrating pure disdain for the present civilized order that has been established to avoid the rules of the jungle, treating the rules as merely hortatory and not applying to the law firm. But the only way this works is if, as lawyers, everyone follows the proper procedure.

(*Id.* ¶¶ 18–20.) Of course, the contents of privileged materials cannot simply be forgotten:

> Steptoe argues there is nothing to worry about because their lawyers will only review the documents for privilege. Nowhere does Steptoe explain how this is possible. How does a lawyer review an allegedly privileged document without learning its substantive content? How does the lawyer forget what he or she saw? How can any information be flushed from the reviewing lawyer's mind once it has been read?

(*Id.* ¶ 21.) As a result, attorneys risk disqualification by continuing to review privileged materials they believe to be inadvertently disclosed by an adversary in litigation. (*Id.* ¶ 19.)

## II. STEPTOE BROKE THE RULES.

**A.** ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ This contention is demonstrably false. As stated above, the Rios-Soiefer-Hampton email chain contains the following message on the first page: "**THIS IS A PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION OR WORK PRODUCT.**" (Ex. 1.) Hampton's email signature block also appears on the first page and shows his title as

"Senior Vice President, Legal and Risk Management."  None of this is hidden in fine print:

```
Trent Hampton
Ferrellgas
Senior Vice President
Legal and Risk Management
7500 College Boulevard, Suite 1000
Overland Park, KS 66210
Phone: 913-661-1512
Fax: 816-792-7449
email: trenthampton@ferrellgas.com

THIS IS A PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION OR WORK PRODUCT
This message contains information which is privileged and confidential, and is solely for the use of the recipient. If you are not
the intended recipient, any review, disclosure, copying, distribution, or use of the contents of this message is strictly prohibited.
If you have received this in error, please delete it immediately.
```

(*See* Ex. 1, Redacted Copy of Rios-Soiefer-Hampton chain.)

The Rios-Soiefer-Hampton chain is six pages long. The "**PRIVILEGED AND CONFIDENTIAL**" warning and Hampton's signature block identifying him as "Senior Vice President, Legal and Risk Management" appear on four of the six pages. (*Id.*)  Moreover, on one of the other two pages, Rios began his email with another bold, all-caps warning: "**PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**." (*Id.*)  In short, the document was obviously privileged, and it should not have been reviewed.

[redacted]

10

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ Attached are three additional declarations from attorneys who participated in the October 5 call, all of whom affirm the account in the Kramer Declaration. (Ex. A, Davis Decl. ¶¶ 5–8; Ex. B, Hartley Decl. ¶¶ 5–8; Ex. C, Brassfield Decl. ¶¶ 3–6.).

**B.      Steptoe Used The Rios-Soiefer-Hampton Email Chain To Guide Its Strategy.**

Again, Rule 26(b)(5)(B), Rule 4.4(b), and the Rule 502(d) Stipulation together required Steptoe to immediately cease reviewing the Rios-Soiefer-Hampton email chain and provide prompt notification to Defendants of the inadvertent production. Instead, Steptoe appears to have circulated the emails to its entire litigation team, who used the content of the emails to make the decision to file a crime-fraud motion Steptoe had been contemplating for some time. Indeed, ERC states repeatedly that █████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████ But it is undisputed that ERC decided to file its crime-fraud motion *after* reviewing the privileged emails.

As several attorneys who participated in the October 5 meet and confer call attest, ██

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

[4] ████████████████████████████████████

██████████████████████████████████████████

████████████████████████ The sequence of events it undisputed, and it is clear ████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

ERC also attempts to distract from Steptoe's wrongdoing (at 8, 15) by listing ways in which Steptoe restrained itself from misusing the BL/FG Defendants' privileged information. As to the crime-fraud motion, ERC chooses its words carefully when it argues that Steptoe did not "*specifically* reference" clawed-back documents in the motion. ████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ Steptoe failed to inform the

---

[4] ████████████████████████████████████
████████████████████████████████████ Moreover, as explained in the BL/FG Defendants' Opposition to the crime-fraud motion (Dkt. 268 at 19-26), the alleged fraudulent transfers in January 2016 (following the communications in the Rios-Soiefer-Hampton email chain) involved assets already pledged as collateral for a credit facility, and encumbered assets cannot be fraudulently transferred under PUFTA.

Court that it had *already reviewed* this email chain before filing its crime-fraud motion.

In sum, it is clear from the sequence of events that Steptoe used the Rios-Soiefer-Hampton email chain (and other such documents) to make its strategic decision to challenge the BL/FG Defendants' claim of privilege under the crime-fraud exception. This is the precise sort of use prohibited by Rule 4.4(b), Rule 26(b)(5)(B), and the Rule 502(d) Stipulation.

### C. Steptoe Admits That It Continued To Review Inadvertently Produced Materials And Used Them To Evaluate Privilege Claims.

As ERC admits (at 5), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ As discussed above, this is the very type of improper "use" prohibited by Rule 26(b)(5), Rule 4.4(b), and the 502(d) Stipulation.

While the documents listed in the BCLP Clawback Letter are not the subject of ERC's crime-fraud motion, Steptoe brazenly violated the rules by continuing to review these documents even after receiving the clawback letter. Steptoe's lack of contrition is significant as a general matter and also because "a finding of actual prejudice is not necessarily a prerequisite to a court's disqualification of counsel." *Nunez v. Lovell*, Civil No. 2005-7, 2008 WL 4525835, at *6 (D.V.I. Oct. 3, 2008). "Rather, disqualification in circumstances . . . where specific injury to [a] party has not been shown is primarily justified as a vindication of the integrity of the bar," *id.*, and upholding the integrity of the judicial system is the "most significant" policy supporting disqualification. *Jordan v. Philadelphia Hous. Auth.*, 337 F. Supp. 2d 666, 678 (E.D. Pa. 2004).

### III. STEPTOE SHOULD BE DISQUALIFIED.

ERC argues (at 20) that disqualification is "not favored." Also disfavored, however, are flagrant violations of the rules protecting the attorney-client privilege and stipulations endorsed

13

by the Court entered to effectuate such rules. As this Court has explained, the "most significant policy weighing in favor of disqualification is the court's interest in protecting the integrity of the proceedings and maintaining public confidence in the judicial system." *Jordan*, 337 F. Supp. at 678; *see also Comm'l Credit Bus. Loans, Inc. v. Martin*, 590 F. Supp. 328, 336 (E.D. Pa. 1984) ("Despite my conclusion that plaintiff has not established that disqualification is required under a literal reading [of the rules], the duty to maintain the integrity of the judicial process requires the exercise of my inherent supervisory powers to order the disqualification of [defendant's] trial counsel.").

ERC and Steptoe attempt to brush aside with inconsequential distinctions (at 18-20) the numerous cases in which courts have ordered disqualification. But as in those cases, Steptoe obtained privileged, confidential information, which it then used improperly and broke the rules.

Moreover, ERC's principal case, *Nesselrotte v. Allegheny Energy, Inc.*, No. 06-01390, 2008 WL 2890832, at *6-8 (W.D. Pa. July 23, 2008), is factually distinguishable. The court in *Nesselrotte* declined to order disqualification after finding that (1) the plaintiff acted in good faith, (2) the documents in question "come into play in th[e] case," (3) the plaintiff did not rely on the documents to further the pursuit of her claims, and (4) disqualification would have severely prejudiced the plaintiff. The circumstances here stand in stark contrast.

First, it is debatable whether Steptoe acted in good faith when it reviewed an email chain with the following warning on nearly every page: "**THIS IS A PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION OR WORK PRODUCT**."

Second, the court in *Nesselrotte* concluded that the documents plaintiff's counsel improperly reviewed would "not influence the litigation," "would have a minimal effect on th[e] litigation," and would "not come into play in th[e] case." 2008 WL 2890832, at *6. Here, the

Rios-Soiefer-Hampton email chain contains privileged communications about central events in this case, and it is featured specifically in the crime-fraud motion.

Third, in *Nesselrotte*, plaintiff had not "relied upon" the privileged material "in any meaningful way in prosecution of her case." *Id.* at *7. Here, ERC and Steptoe made their decision to file the crime-fraud motion only after reviewing the Rios-Soiefer-Hampton email chain, which Mr. Theodore (mistakenly) concluded revealed a "massive crime-fraud issue." ERC plainly views the crime-fraud motion as meaningful, as it has postponed virtually all of its depositions of key defense witnesses until after the motion is resolved.

Fourth, in *Nesselrotte*, disqualification would have resulted in "severe prejudice'," because "discovery ha[d] concluded and Defendants ha[d] filed motions for summary judgment." *Id.* Here, despite Steptoe's argument (at 23) that "[f]act discovery is almost closed, and trial is likely only a few months away," the parties are in the midst of fact depositions, and there is no imminent trial. Indeed, following fact discovery, the parties will need to exchange expert reports, complete expert discovery, engage in dispositive motion practice, and litigate pre-trial motions (among other trial preparation activities). No trial date has been set.

There is ample time for different counsel to step in and be ready for the trial in this matter. In fact, it would not even be necessary for ERC to retain new counsel, as Ballard Spahr—a sophisticated law firm with more than 500 attorneys—has represented ERC in this matter from the very outset of the litigation.

In the event the Court has any doubts about disqualification, limited discovery could reveal the extent to which Steptoe used the BL/FG Defendants' privileged information in violation of the rules. With more information, the Court may be able to fashion a remedy that limits the harm resulting from Steptoe's improper decision to review and use the Rios-Soeifer-

Hampton chain and the other inadvertently-produced and clawed-back documents (*e.g.*, by disqualifying only Mr. Theodore, striking the crime-fraud motion, or excluding evidence).

## CONCLUSION

For all of these reasons, the BL/FG Defendants respectfully (and reluctantly) ask the Court to disqualify Steptoe as counsel for ERC. At a minimum, the BL/FG Defendants respectfully ask for discovery to further explore the prejudice resulting from ERC's improper use of inadvertently disclosed privileged documents and help fashion an alternative remedy.

Dated: December 4, 2018              Respectfully submitted,

By: /s/   *Lawrence G. Scarborough*

Richard L. Scheff (I.D. No. 35213)
Michael C. Witsch (I.D. No. 313884)
ARMSTRONG TEASDALE, LLP
1500 Market Street
12th Floor, East Tower
Philadelphia, PA 19102
Telephone: (215) 246-3469
Facsimile: (215) 569-8228
rlscheff@armstrongteasdale.com
mwitsch@armstrongteasdale.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
Bieta Andemariam (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-4630
lgscarborough@bclplaw.com
bieta.andemariam@bclplaw.com


Jacob A. Kramer (Admitted *Pro Hac Vice*)
Rachel A. Beck (Admitted *Pro Hac Vice*)

BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 508-6000
Facsimile:  (202) 508-6200
jake.kramer@bclplaw.com
rachel.beck@bclplaw.com

Brian C. Walsh (Admitted *Pro Hac Vice*)
Alicia Ragsdale Olszeski (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
211 North Broadway, Suite 3600
St.  Louis, Missouri 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
brian.walsh@bclplaw.com
ali.olszeski@bclplaw.com

Sarah L. Hartley (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200
sarah.hartley@bclplaw.com

*Attorneys for Bridger Logistics, LLC, Ferrellgas Partners, L.P., Ferrellgas L.P., Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, J.J. Addison Partners, LLC, J.J. Liberty, LLC, Bridger Admin Services II LLC, Bridger Energy, LLC, Bridger Lake, LLC, Bridger Leasing, LLC, Bridger Marine, LLC*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2018, the foregoing was filed with the Court's electronic filing system, which sent electronic notice of this filing to all counsel of record.

                                            s/ *Michael C. Witsch*
                                            Counsel for the BL/FG Defendants