## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, §<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>BRIDGER LOGISTICS, LLC, JULIO §<br>RIOS, JEREMY GAMBOA, §<br>FERRELLGAS PARTNERS, L.P., §<br>FERRELLGAS, L.P., BRIDGER §<br>ADMINISTRATIVE SERVICES II, §<br>LLC, BRIDGER MARINE, LLC, §<br>BRIDGER RAIL SHIPPING, LLC, §<br>BRIDGER REAL PROPERTY, LLC, §<br>BRIDGER STORAGE, LLC, BRIDGER §<br>SWAN RANCH, LLC, BRIDGER §<br>TERMINALS, LLC, BRIDGER §<br>TRANSPORTATION, LLC, BRIDGER §<br>ENERGY, LLC, BRIDGER LEASING, §<br>LLC, BRIDGER LAKE, LLC, J.J. §<br>LIBERTY, LLC, J.J. ADDISON §<br>PERTNERS, LLC, §<br>§<br>*Defendants*. §<br>§ | Civil Action No. 17-CV-00495 |

### DEFENDANTS JULIO RIOS AND JEREMY GAMBOA'S
### RESPONSE IN OPPOSITION TO CANOPY PROSPECTING, INC.'S
### MOTION TO QUASH RULE 30(b)(6) DEPOSITION NOTICE

Pursuant to the Federal Rules of Civil Procedure, Defendants Julio Rios and Jeremy Gamboa (collectively, "Defendants") file this response to Canopy Prospecting Inc.'s ("Canopy") Motion to Quash Rule 30(b)(6) Deposition Notice (the "Motion"), and respectfully show as follows:

## I.   INTRODUCTION

At all relevant times, Canopy has been at the center of this lawsuit. From the outset, two Canopy representatives sat on the four-member Board of Directors of Eddystone Rail Company, LLC ("ERC"), while two representatives from Enbridge filled the remaining seats. ERC's Board of Directors was responsible for – or, at a minimum, was involved in – every material decision made by ERC through October of 2017, including the decision to file the instant action. Despite having exercised control at all times relevant to this lawsuit, Canopy now refuses to provide a corporate representative to answer questions pertaining to several narrow topics (the "Deposition Topics") that are central to this litigation. Worse yet, Canopy's emphatic refusal comes shortly after its principals failed to answer a litany of questions at their depositions and admitted to "trying to forget" facts related to the same. Canopy cannot hide behind the excuse that it is not a party here: it was one of two parties that controlled ERC when this litigation was filed and was directly involved in every material event relevant to ERC's claims in this lawsuit. Defendants have narrowed the Deposition Topics to those that pertain to material issues in this lawsuit and that, to date, remain unanswered by Canopy. The Court should therefore order the deposition of a Canopy representative under Rule 30(b)(6).

## II.   BACKGROUND

ERC was a joint venture between Enbridge, Inc. ("Enbridge") and Canopy that began in 2012. Approximately one year later, ERC entered into the Eddystone Rail Facilities Services Agreement ("RSA") with Bridger Transfer Services, LLC, under which ERC committed to provide a facility where crude oil would be transloaded to barges for delivery to customers along the east coast.

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO QUASH**                                    **Page 2**

During this time, Canopy's working relationship with Enbridge devolved into a contentious letter-writing campaign filled with threats of litigation. Canopy, as the minority owner of ERC, believed that Enbridge abused its control at Canopy's expense, leading to Canopy's repeated threat to sue Enbridge for its negligent management of the Facility and the Facility's consequent decline in value.  In retaliation, ERC accused Canopy of frustrating several of Enbridge's attempts to sell its ownership interests to third parties.  Further exacerbating these tensions, ERC exceeded its construction budget by roughly $100 million dollars in building the Eddystone Facility, rendering both the RSA and the Eddystone Facility unprofitable.  In short, Enbridge and Canopy blamed one another for the failings of the project and wanted desperately to exit the joint venture, but neither could find the opportune time (or justification) to do so.

In early 2016, Enbridge and Canopy were presented with both the opportunity and the justification they were waiting for.  In March of 2016, Jamex Transfer Services, LLC ("JTS") defaulted under the RSA, providing both parties with the perfect scapegoat to blame for their own failings.  But the Jamex breach also provided an opportunity for Enbridge and Canopy to collect on the RSA, which – prior to the breach – internally had been declared worthless.  Shortly after the breach, ERC filed an arbitration against Jamex claiming it was entitled to $140 million dollars for the breach of an agreement that would otherwise have failed to earn ERC a single dollar in profit.  The ensuing arbitration was short lived: before a hearing could take place on JTS's counterclaims, ERC and JTS entered a collusive settlement agreement awarding ERC the entire $140 million.  But before this award could be confirmed by the Southern District of New York, ERC brought the instant action against the Individual Defendants, seeking as damages an "award against Defendants of all amounts awarded by the SMA arbitration panel in the arbitration between

Eddystone and BTS." Am. Compl. at p.28. The Southern District has since refused to confirm the award.[1]

Eight months after this lawsuit was filed, in October of 2017, Canopy divested its ownership interests in ERC, Enbridge stripped ERC of its assets, and Enbridge conveyed those assets to Canopy. Canopy is now the sole owner of the Eddystone Facility. Importantly, this sale took place during the scheduled term of the RSA, which was set to expire in 2019, and remained unknown and undisclosed until Defendants discovered the sale in November of 2018. As part of that purchase and sale agreement, ERC agreed to pay any attorneys' fees related to this lawsuit and incurred by Canopy.

During the entire time these facts played out, Canopy represented 50% of the ERC Board of Directors and was integrally involved in ERC's decision making and strategy. Accordingly, Defendants deposed two of Canopy's principals – Jack Galloway ("Galloway") and Erik Johnson ("Johnson") – both of whom testified that their attorneys' fees were being paid for by ERC and/or Enbridge. During these depositions, both witnesses repeatedly testified that they had no recollection of a variety of material events that took place during their time at ERC. Coincidentally, many of the events that Messrs. Galloway and Johnson conveniently "forgot" involved the legal claims that Canopy believed it had against Enbridge, several of which form the basis for the Bridger Logistics/Ferrellgas Defendants' counterclaims, and all of which are highly relevant to the instant case. Mr. Galloway also disputed the authenticity of certain documents that Canopy itself had produced.

---

[1] Due to a stay instituted by the Southern District, this award has not – and will not – be confirmed while the instant lawsuit is pending. Prior to staying the confirmation proceedings, the Court noted correctly that the $140 million "settlement" between Jamex and Eddystone was far more akin to a "capitulation." *See* Transcript of April 13, 2017 Hearing, *Eddystone Rail Co., LLC v. Jamex Transfer Services, LLC*, No. 1:17-cv-01266-WHP (S.D.N.Y.) at 10:4-11, attached hereto as Exhibit A.

Following these depositions, Defendants sought to depose a corporate representative from Canopy to answer those questions neither Messrs. Galloway nor Johnson could answer. ERC informed Defendants of their intention to move to quash this deposition, and the parties conferred. During this conference, Defendants agreed to reduce the number of topics originally included in the deposition notice to only those that Messrs. Galloway and/or Johnson failed to remember.[2] After narrowing the Deposition Topics significantly and sending a revised list, counsel for ERC informed Defendants that they would still not agree, and Canopy would not offer a corporate representative absent a court order. *See* email from S. Barber to J. Kelley, dated Feb. 1, 2019, attached as Exhibit C. Shortly after this email – and before Defendants had the chance to send a subpoena to Canopy – Canopy filed the instant motion seeking to quash a subpoena while simultaneously (and ironically) noting that the subpoena had not been served (such that it could be quashed). Notwithstanding the nonsensical nature of this argument, Defendants served Canopy with a subpoena on February 15, 2019, rendering the issue moot. *See* Notice and Subpoena for 30(b)(6) Canopy Dep., attached hereto as Exhibit D (the "Subpoena").

In its Motion, Canopy presents no valid reason to deprive Defendants of otherwise discoverable information. Canopy's repeated insistence that it was relieved of any obligation to provide discovery when Johnson and Galloway failed to answer Defendants' questions in their previous depositions is not the law. The Court should deny Canopy's Motion.

---

[2] Attached hereto as Exhibit B is an annotated redline of Defendants' 30(b)(6) Notice of Deposition. This redline identifies topics removed by Defendants to narrow the scope of the Notice and remove potentially duplicative topics. This document is also annotated to identify portions of the Johnson and Galloway deposition transcripts where each failed to testify regarding a specific topic.

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO QUASH**  Page 5

### III.  APPLICABLE LEGAL STANDARD

Courts use a burden-shifting framework to analyze motions to quash.[3] *See Paramo v. Aspira Bilingual Cyber Charter School*, Civil Action No. 17-3863, 2018 WL 4538422, at *2 (E.D. Pa. Sept. 21, 2018). If the subpoenaing party can show that its request falls within the scope of Rule 26 of the Federal Rules of Civil Procedure, the burden "shifts to the party opposing the subpoena to establish that Rule 45(d)(3) provides a basis to quash the subpoena." *Id*.

Under Rule 45, courts must quash a subpoena *only* where it "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond [certain geographical limits]; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). This burden is "particularly heavy" when "contrasted to some more limited protection such as a protective order." *Paramo*, Civil Action No. 17-3863, 2018 WL 4538422, at *2.

### IV.  ARGUMENTS & AUTHORITIES

Canopy has not established good cause for a protective order, or any of the bases set forth in Rule 45, and the Court should deny its Motion for at least two reasons. *First*, Johnson and Galloway failed to provide adequate testimony on each of the Deposition Topics contained in the Subpoena. In the absence of such testimony, further discovery is not "unreasonably duplicative"

---

[3] Canopy styled its request as a motion to quash, but that is not the appropriate vehicle for its desired relief given that, at the time, no subpoena had yet been served. As Canopy observed, Defendants had not served a subpoena when Canopy filed its Motion. Thus, Canopy should have requested a protective order. Rule 26(c) of the Federal Rules of Civil Procedure provides that a court may issue a protective order only upon a showing of good cause. This burden lies with the movant. *See Crossley v. Iroquois Foundry Co., Inc.*, Civ. A. Nos. 91-1657, 1992 WL 114956, at *2 (E.D. Pa. May 18, 1992) (the party requesting a protective order must demonstrate "some plainly adequate reason therefor"). Where the requested relief would "prevent a deposition in its entirety, [the movant] must show that a clear injustice would occur if the deposition were permitted. Such motions are generally regarded as unusual and unfavorable." *Id*. (internal quotation marks omitted). For the foregoing reasons, Canopy's argument fails equally under this standard as it does under the standard imposed on a party moving to quash a subpoena.

and will not subject Canopy to undue burden. *Second*, the Deposition Topics concern information that is reasonably available to Canopy and highly relevant to this litigation.

## A. Both Johnson and Galloway Fail to Provide Testimony on the Subpoena's Deposition Topics

1. Neither Witness Testified as to Certain Deposition Topics

Canopy first objects to the deposition because Defendants have already deposed Johnson and Galloway—the only individuals who can "speak for," and whose prior testimony Defendants may "impute[] to," Canopy. *See* Mot. at 6 [Doc. No. 285]. But Defendants do not deny that they have deposed Johnson and Galloway on the Deposition Topics. Rather, Defendants deny that Johnson and Galloway have provided any meaningful testimony in response to such topics.

Examples of Galloway and Johnson refusing to respond to deposition questions abound. In Johnson's deposition, for example, Defendants asked Johnson to testify about a letter that Canopy's counsel sent to Christopher Pennington, and that Johnson admitted reviewing prior to it being sent. This letter implicated the claims that Canopy alleged it had against Enbridge, which is included as the fourth Deposition Topic in the Subpoena. After providing Johnson with time to review the letter and asking him a series of questions about its contents (most of which Johnson did not or could not answer), Johnson stated:

> The letter was sent over a year and a half ago. You know, this is – this is old news, and I'm doing my best to forget about it, quite frankly, you know. This is a prior life, so I'd have to go through, I'd have to review it, and I'd have to remember the context.

Johnson Dep. at 288:7-13, attached hereto as Exhibit E. It is unclear what ERC claims Defendants should "impute" to Canopy from this testimony—beyond a lack of knowledge and an unwillingness to cooperate. And this was by no means an isolated incident. Johnson and Galloway repeatedly denied having any recollection of basic, material facts and information from their time

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO QUASH**     **Page 7**

at ERC. *See, e.g.*, Ex. E at 139:21 ("I have no recollection of that."); 142:9-10 ("That was [someone else's] department, really."); 326:9 ("I don't recall."); 62:8 ("Not that I recall."); 72:12 ("Not that I recall."). *See also* Galloway Dep. at 448:2 ("I don't know."), attached hereto as Exhibit F; *see also id*. at 364:14 ("I don't recall."); 408:17 ("I can't recall."); 305:21 ("I don't recall."); 306:1 ("I don't recall."); 307:2 ("I don't recall this memo, no."); 514:16-17 ("[I don't know] is the only answer I can give you."); 38:11-13 ("I don't – I don't have that information."); 47:11-12 ("Boy, I'd have to – I don't recall."); 174:16 ("I don't recall reviewing those documents."); 175:1-3 ("I can't recall seeing it. I don't know whether [the agreement] would be temporary or permanent."); 387:19-20 ("Specifically, I don't remember that letter, no."); 484:19-20 ("I don't recall them making all of those offers and threats to us, no."); 87:19-21 ("I don't know because I've never examined the books of Eddystone Rail that were held by the administrative part."); 88:3 ("I don't know."); 89:18 ("I don't know."); 347:2 ("I don't recall."); 127:20 ("I don't know that."); 310:21 ("I don't recall."); 313:19 ("I don't know."); 322:21 ("I don't know."); 323:2-3 ("I don't know what his commission was.").

In light of this, the argument Canopy advances is ironic: if either Messrs. Galloway or Johnson **had** testified as a corporate representative of the company, either would have been woefully underprepared and Defendants would be forced to re-take the deposition (and move the Court to compel the same). *See Constellation NewEnergy, Inc. v. Powerweb, Inc.,* No. 02–2733, 2004 WL 1784373, at *5 (E.D.Pa. Aug.10, 2004) ("In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it."). Thus, even if Defendants had noticed and taken the deposition of either Messrs. Johnson or Galloway as a 30(b)(6) witness, Defendants would be in the same position they are now: forced to ask the Court to compel Canopy to provide

a prepared witness who had performed a "reasonable inquiry for information that is noticed and reasonably available." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 216 (E.D. Pa. 2008).

> 2. <u>Canopy's President Disputes the Authenticity of Canopy's Own Documents, and Canopy Produces a Significant Number of Documents After Depositions Take Place</u>

In addition to disclaiming knowledge of foundational factual matters, during his deposition, Galloway even disputed the authenticity of documents Canopy itself produced:

> Q: This is an email from you where you attached this document and sent it to Mr. Johnson, right?
>
> A: I don't know. . .
>
> Q: And you're disputing that you actually attached this email and sent it to Mr. Johnson?
>
> A: Until it's – until it's presented in a more legible form, yes.
>
> Q: So this is a fabrication?
>
> A: I don't know if it's a fabrication.
>
> Q: This is produced by you. . . . This – it's got your Bates label on the bottom of it, sir. This was produced by you and your lawyers. . . .
>
> A: I will say they're powerful words but they don't sound like me.
>
> Q: Do they sound like Mr. Johnson?
>
> A: No.
>
> Q: Well, who wrote this?
>
> A: I don't know.

Ex. F at 447:20-453:24.

If Canopy's CEO does not know the answer to these questions, Defendants certainly do not. Yet Canopy takes the position that Defendants are not entitled to any further explanation of the authenticity of its documents or Canopy's document collection and production efforts, generally. *See* Ex. D (Deposition Topic 1, "Canopy's document collection efforts and document production in connection with this Action."). Worse yet, on February 5, 2019 – after both the

Galloway and Johnson depositions took place – ***Canopy produced an additional 114 documents***, leaving Defendants without any opportunity to question a witness about their content. This only exacerbated Defendants' concerns about Canopy's document collection and production efforts, but instead of offering a 30(b)(6) witness on the limited Deposition Topics, Canopy's response was clear: tough luck. According to Canopy, Defendants are not entitled to confirm the nature and authenticity of its documents or to question its witnesses about any of the documents produced after Messrs. Galloway and Johnson's depositions.

This is gamesmanship, pure and simple, and it should not be rewarded.

### 3. A Canopy 30(b)(6) Witness is Necessary Because of its Witnesses' Failure to Answer Material Questions and Related Document Production Failures

Rule 30(b)(6) does not permit a witness to evade these simple and straightforward issues, which is the singular reason it is necessary for Defendants to depose a Canopy corporate representative. Specifically, the Rule provides that a corporation's designated representative must "testify about information known or *reasonably available* to the organization." FED. R. CIV. P. 30(b)(6) (emphasis added). Such representative must therefore be prepared to "give binding answers on [the corporation's] behalf and perform a reasonable inquiry for information that is noticed and reasonably available to it." *New Horizont, Inc.*, 250 F.R.D. at 216; *see also Colon v. Ashford Buck County, LLC*, C.A. No. 11-CV-1464, 2012 WL 3263578, at *4 (E.D. Pa. Aug. 10, 2012) ("The burden is on the corporate recipient of the notice . . . to prepare [its representative] in order that they can answer fully, completely, unevasively, the questions posed as to relevant subject matter.") (internal quotation marks omitted). Producing an unprepared witness, under this rule, is "tantamount to a failure to appear." *New Horizont, Inc.*, 250 F.R.D at 217. Such a witness is "no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it." *Powerweb, Inc.*, No. 02-2733, 2004 WL 1784373, at *5.

Canopy does not (and cannot) claim that the Deposition Topics concern information not "reasonably available" to it. Instead, Canopy emphasizes that some of the Deposition Topics relate to ERC, and that ERC and Canopy "are separate and distinct entities." Mot. at 9. This is equally true and irrelevant. ERC was – and has always been – a single-purpose entity without any employees. ERC and Canopy are distinct legal entities just as Enbridge and ERC are, but it is Enbridge and Canopy that together created, governed and operated ERC. Canopy was a joint venture partner in ERC at all times relevant to the facts underlying this lawsuit, and was involved in the decision to institute these very proceedings. It is therefore untenable for Canopy to now claim that its testimony on such topics as the "basis for and meaning of" ERC's allegations would have "little, if any, probative value." *Id.*

A Canopy 30(b)(6) deposition is therefore necessary because (1) Johnson and Galloway did not provide adequate testimony regarding the Deposition Topics; (2) these topics concern information "reasonably available" to Canopy; and (3) Rule 30(b)(6) requires corporations to prepare their representatives for depositions noticed thereunder. It follows, then, that a deposition of Canopy pursuant to Rule 30(b)(6) would not produce "duplicative" information or unduly burden Canopy, and Canopy's cited authority does not provide otherwise. Indeed, *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97CIV4978LMMHBP, 2002 WL 1041356, at *3 (S.D.N.Y. May 23, 2002), which Canopy cites for the proposition that it may adopt the prior testimony of Johnson or Galloway, places a significant qualification upon this proposition that completely undermines Canopy's argument: "[where] the witness is ***properly prepared***, [and] the entity establishes that the witness's testimony . . . ***would be identical*** to his testimony as an individual," a 30(b)(6) deposition may not be justified. *Id.* (emphasis added). Canopy conveniently omits discussion of this aspect of the opinion, which is hardly surprising given that neither Johnson nor Galloway were

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO QUASH**             **Page 11**

prepared to testify regarding the Deposition Topics. Thus, if they *were* to prepare as corporate representatives—as Rule 30(b)(6) requires—their testimony would not be "identical" to their testimony as fact witnesses.

Ironically, this was precisely the conclusion the court reached in *A.I.A. Holdings*. There, the court held that, because there were "several instances in which [the company's] principals, testifying as individuals, denied knowledge concerning certain [company] books and records . . . it may be impossible for [the company] to represent that its corporate knowledge is no greater than that of its principals." *Id*.

Canopy's other principal case, *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537 (4th Cir. 2004), equally undercuts its position. Though Canopy describes the underlying facts as being "on all fours" with the present case, those facts did not involve uninformed, unremembering, or uncooperative witnesses, and is therefore entirely inapposite. Canopy simply cannot escape the reality that, for it to adopt a witness's testimony, such testimony must, in the first place, exist. That is not the case here, and the Court should deny Canopy's request for a protective order accordingly. *See AIA Holdings, S.A.*, No. 97CIV4978LMMHBP, 2002 WL 1041356, at *2 ("Since a 30(b)(6) witness is obligated to provide the entity's knowledge, the mere fact that the principal of a corporation has been deposed is not an automatic substitute for a 30(b)(6) deposition.").

### B. The Deposition Topics Seek Information Reasonably Available to Canopy and Relevant to this Litigation

Canopy was a joint venture partner in ERC during the events underlying this litigation and possesses at least as much knowledge of the underlying facts as does Enbridge. It is therefore disingenuous for Canopy to claim that it could only provide "speculative testimony" on the basis for and meaning of ERC's claims, particularly given that Canopy itself ***currently owns and operates the Eddystone Facility***.

Perhaps sensing the shortcomings of this argument, Canopy attempts to impose a novel and inapplicable standard on Defendants. Specifically, Canopy states that the notice is improper because Canopy's testimony would have "little, if any, probative value." Mot. at 9. While this statement is patently false, it is also not the applicable test. Rule 26(b) governs the scope of discovery under the Federal Rules of Civil Procedure, and such scope is defined as "any nonprivileged matter relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).

The Deposition Topics here *are* relevant to the parties' claims and defenses. These topics seek information regarding the operation, functionality, and value of ERC's facility—information that is critical to determining the damages, if any, that ERC suffered in connection with the breach of the RSA. The Deposition Topics likewise include information relevant to Canopy's claims against Enbridge, Canopy's document collection and production efforts, representations made by Defendants to Canopy regarding the financial capability of any Bridger entity, and other highly relevant topics. *See generally*, Exhibit D. Canopy's conclusory assertions otherwise do not satisfy Canopy's burden of showing good cause for a protective order from an otherwise valid notice of deposition. *See Iroquois Foundry Co., Inc.*, Civ. A. Nos. 91-1657, 1992 WL 114956, at *2 ("Where, as here, the party seeking the protective order seeks to prevent a deposition in its entirety, the movant must show that a clear injustice would occur if the deposition were permitted.").

Nor do any of Canopy's other conclusory assertions, individually or together, show good cause, much less "clear injustice," such that the deposition should be "prevented . . . in its entirety." *Id*. These assertions include that "Defendants have already obtained testimony on ERC-related topics from ERC witnesses," "Defendants have[] listed many ERC-related topics in their Rule 30(b)(6) Notice of ERC," "ERC expects to produce a corporate representative(s) to testify on various topics," and "ERC and Canopy have[] produced voluminous documents." Mot. at 9-10.

Such facts may be true but, again, are irrelevant. *Of course* Defendants have served discovery requests or taken depositions regarding "ERC-related topics." And *of course* ERC has produced documents though, notably, many were produced *after* the Galloway and Johnson depositions. No one disputes this. But Defendants now seek to take depositions concerning relevant topics about which they have *not* received sufficient information—whether through depositions or through written discovery. Canopy's Motion should therefore be denied.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Canopy's Motion to Quash Defendants' Rule 30(b)(6) Deposition Notice and require a Canopy corporate representative to testify as to the Deposition Topics listed in the Subpoena.

Dated: February 19, 2019

Respectfully submitted,

*/s/ Jeremy A. Fielding*
Jeremy A. Fielding
*Admitted pro hac vice*
jfielding@lynnllp.com
Kent D. Krabill
*Admitted pro hac vice*
kkrabill@lynnllp.com
Jonathan D. Kelley
*Admitted pro hac vice*
jkelley@lynnllp.com
Christian A. Orozco
*Admitted pro hac vice*
corozco@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Julie Negovan, Esquire (1651)

                                      GRIESING LAW, LLC
                                      1800 JFK Blvd, Suite 1880
                                      Philadelphia, PA  19103
                                      jnegovan@griesinglaw.com
                                      (215) 431-9295

*Attorneys for Defendants*
*Julio Rios and Jeremy Gamboa*

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO QUASH**        **Page 15**

## CERTIFICATE OF SERVICE

I, Julie Negovan, hereby certify that I served the foregoing on all counsel of record via the Court's ECF System on February 19, 2019 as follows:

| | |
|---|---|
| Filiberto Agusti<br>fagusti@steptoe.com<br>Nicholas Petts<br>npetts@steptoe.com<br>Timothy Work<br>twork@steptoe.com<br>**STEPTOE & JOHNSON LLP**<br>1330 Connecticut Ave. NW<br>Washington, DC 20036 | Ellen Rosen Rogoff, Esq.<br>erogoff@stradley.com<br>Adriel J. Garcia, Esq.<br>agarcia@stradley.com<br>**STRADLEY RONON STEVENS &<br>YOUNG, LLP**<br>2005 Market Street, Suite 2600<br>Philadelphia, PA 19103<br>T: 215.564.8000 |
| Henry Hockeimer, Jr.<br>hockeimerh@ballardspahr.com<br>Terence Grugan<br>grugant@ballardspahr.com<br>**BALLARD SPAHR LLP**<br>1735 Market St., 51st Floor<br>Philadelphia, PA 19103<br><br>*Attorneys for Plaintiff*<br>*ERC Rail Company, LLC* | *Attorneys for Canopy Prospecting, Inc.* |

 

             */s/ Julie Negovan*
             Julie Negovan, Esq.

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO QUASH**   **Page 16**