# Exhibit D

**LYNN PINKER COX HURST**

JONATHAN D. KELLEY
*Associate*

D 214 981 3823
F 214 981 3839
jkelley@lynnllp.com

Lynn Pinker Cox & Hurst, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
lynnllp.com

February 15, 2019

<u>*Via Electronic Mail*</u>
Canopy Prospecting, Inc.
c/o
Ellen Rosen Rogoff, Esq.
Adriel J. Garcia, Esq.
Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103

    Re:    *Eddystone Rail Company, LLC v. Julio Rios et al.*; Subpoena for Canopy 30(b)(6) Deposition

Dear Counsel:

    Enclosed please find a subpoena to obtain the deposition testimony of a corporate representative of Canopy Prospecting, Inc., pursuant to Federal Rule of Civil Procedure 30(b)(6). The deposition is currently scheduled for March 11, 2019, but we are more than happy to discuss scheduling if a different time and/or date would be more convenient.

    Should you wish to discuss this deposition, or the topics listed in Exhibit A of the subpoena, please do not hesitate to contact me.

                                        Very truly yours,

                                          Jonathan D. Kelley

Enclosures

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC<br>*Plaintiff*<br>v.<br>JULIO RIOS, JEREMY GAMBOA, BRIDGER LOGSTICS, LLC, FERRELLGAS PARTNERS, LP<br>*Defendant* | )<br>)<br>)  Civil Action No. 2:17-cv-00495-RK<br>)<br>)<br>) |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:   CANOPY PROSPECTING, INC.

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attached Exhibit A

| Place: Magna Legal Services<br>1635 Market Street<br>Philadelphia, PA 19103 | Date and Time:<br>03/11/2019 9:00 am |
|---|---|

The deposition will be recorded by this method:  Stenographer and videographer

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  02/15/2019

*CLERK OF COURT*                                                        OR   [signature]

_____                     _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Julio Rios and Jeremy Gamboa , who issues or requests this subpoena, are:

Jonathan D. Kelley, Lynn Pinker Cox & Hurst, LLP, 2100 Ross Ave, #2700, Dallas, TX 75201; (214) 981-3800; jkelley@lynnllp.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:17-cv-00495-RK

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
     **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
     **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
         **(i)** is a party or a party's officer; or
         **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
     **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
     **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
     **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
     **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
         **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
         **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

     **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

         **(i)** fails to allow a reasonable time to comply;
         **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
         **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
         **(iv)** subjects a person to undue burden.
     **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

         **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
         **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
     **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
         **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
         **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
     **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
     **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
     **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
     **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
         **(i)** expressly make the claim; and
         **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A
# CORPORATE REPRESENTATIVE TOPICS

## I. DEFINITIONS

The following terms have the following meanings, unless the context requires otherwise:

1. "Action" means *Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al.*, No. 2:17-cv-00495, pending in the United States District Court for the Eastern District of Pennsylvania.

2. "Communications" means all transmittals of information in the form of facts, ideas, inquiries, or otherwise through oral or written expressions, statements, or utterances of any nature, including, but not limited to, correspondence, conversations, agreements, or other understandings between or among two or more persons, and made by or to anyone.

3. "Person" means any natural person, legal or governmental entity, association or business.

4. "Relating" means concerning, referring, describing, evidencing, or constituting, either directly or indirectly.

5. "Bridger" means Bridger LLC, Bridger Logistics, LLC, Bridger Marketing, LLC, f/k/a, Bridger Trading, LLC, Bridger Transportation, LLC, Bridger Leasing, LLC, Bridger Transfer Services, LLC, Bridger Lake, LLC, Bridger Rail Shipping, LLC, Bridger Marine, LLC, and Bridger Midstream, LLC, and include their respective directors and officers, affiliates, parents, subsidiaries, agents, assigns, legal representatives, non-legal representatives, attorneys, employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on its behalf.

6. "Canopy," "you," or "your" means Canopy Prospecting, Inc., and includes its respective directors and officers, affiliates, parents, subsidiaries, agents, assigns, legal representatives, non-legal representatives, attorneys, employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on its behalf.

7. "Carlyle Tripartite Agreement" means the intermediation agreement involving Carlyle Commodity Management L.L.C., or one of its affiliates.

8. "Defendants" means each individual and entity named as a defendant in the Action.

9. "Delta" means Delta Air Lines, Inc., and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

10. "ERC" means Eddystone Rail Company, LLC, also sometimes referred to as "Eddystone."

11.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and any of its partners, principals, employees, officers, directors, members, managers, representatives, agents, advisors, attorneys, subsidiaries, Affiliates, and parents.

12.     "Enbridge" means Enbridge (U.S.), Inc., and includes its respective directors and officers, affiliates, parents, subsidiaries, agents, assigns, legal representatives, non-legal representatives, attorneys, employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on its behalf.

13.     "Exelon" means Exelon Corporation and includes its respective directors and officers, agents, affiliates, parents, subsidiaries, assigns, legal representatives, non-legal representatives, attorneys, employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on its behalf.

14.     "Facility" means the rail and barge facility located in Eddystone, Pennsylvania that was subject of the RSA.

15.     "FAC" means ERC's First Amended Complaint filed in the above-captioned cause.

16.     "Individual Defendants" means Defendants Julio Rios and Jeremy Gamboa.

17.     "Intermediation Agreement" means the agreement between Merrill Lynch Commodities, Inc. and Jamex Marketing, LLC or Bridger Marketing, LLC.

18.     "Joint Venture" means the agreement between Canopy and Enbridge to operate the Facility together.

19.     "Loan" means the Pledge Agreement between Canopy and Enbridge dated May 2, 2014.

20.     "MLC Acknowledgment" means the agreement between Merrill Lynch Commodities, Inc. and Jamex Marketing, LLC or Bridger Marketing, LLC.

21.     "Monroe" means Monroe Energy, LLC, and includes its respective directors and officers, agents, affiliates, parents, subsidiaries, assigns, legal representatives, non-legal representatives, attorneys, employees, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on its behalf, including for the sake of clarity, Delta.

22.     "MOU" means the Memorandum of Understanding signed between Canopy and Enbridge before the Joint Venture.

23.     "RSA" means the Eddystone Rail Facilities Services Agreement dated February 13, 2013 between Plaintiff Eddystone Rail Company, LLC and Bridger Transfer Services, LLC.

24.     "SEPTA" means Southeastern Pennsylvania Transportation Authority.

25.     "SEPTA Window" means the period of time allotted by SEPTA to permit unit trains bound to and from the Facility.

26. All other terms not explicitly defined herein are to be construed in accordance with their plain and ordinary meanings in the English language and the context in which those terms are used.

27. The connectives "and" and "or" should be construed either conjunctively or disjunctively as necessary to bring within the scope of the topic all matters that might otherwise be construed to be outside its scope.

## II.   CORPORATE REPRESENTATIVE TOPICS

1. Canopy's document collection efforts and document production in connection with this Action.

2. Communications with any experts or consultants hired by Canopy or ERC to investigate any operational problems or obstacles encountered at the Facility, and any subsequent communication of those issues to Bridger.

3. Communication to Bridger regarding the SEPTA window and the granite pinnacle.

4. The value of any loan forgiven by Enbridge as a condition or term of the sale of the Facility to Canopy in 2018.

5. Any potential claims Canopy believed it had against Enbridge related to the Facility, its construction or operation.

6. Any communication with the Jamex Entities or James Ballengee, including the March 2016 meeting in Dallas, Texas.

7. Any conversations related to seeking or obtaining financial assurances from Bridger and/or Individual Defendants, including, but not limited to any letter of credit, surety bond, escrow accounts, casualty insurance or other type of financial assurances.

8. Any marketing of the Facility to Bridger from 2012 through the present, including any representations made to Bridger regarding the Facility's expected unloading and loading capabilities, rail access to the Facility, the Facility's daily transloading capacity, tank storage capacity at the Facility, and barge access to the Facility.

9. Your negotiations, the scope of the relationship, and division of labor and input with Enbridge with respect to the Facility and any related pipelines or other planned projects. This includes the MOU, the Joint Venture, and the Loan.

10. Any litigation threats, assessments, and pending lawsuits related to the Facility.

11. Any interest in purchasing Enbridge's share of the Joint Venture.

12. Any efforts to locate and secure customers for the Facility after JTS defaulted under the RSA.

13. Any diligence conducted by Canopy or ERC into the Facility's operational capabilities and functionality

14. The development and construction of the Facility including, but not limited to, the budget and completion date.

15. The justification for the consideration Canopy gave Enbridge for its 75% interest in ERC.

16. The material facts alleged in the FAC including, but not limited to, the following:

    a. The alleged implied contract that Eddystone identifies in the FAC, including ERC's reliance on such contract, the terms of such contract, the termination of such contract, and the manner in which ERC became aware of the alleged implied contract;

    b. The basis for and meaning of ERC's allegations that Defendants caused BTS to allow an implied contract with Bridger Logistics to be abrogated without compensation;

    c. The basis for and meaning of ERC's allegations that Defendants treated and represented to others that BTS' assets were Bridger Logistics' and Ferrellgas' own assets, including the specific representations allegedly made;

    d. The basis for and meaning of ERC's allegations that Defendants improperly caused BTS to forgive accounts receivable;

    e. The basis for and meaning of ERC's allegations that the lien on BTS assets in 2015 and 2016 was in anyway improper.

    f. The basis for and meaning of ERC's allegations that Defendants owed and violated fiduciary duties of care and loyalty allegedly owed to BTS' creditors, including ERC, at any time from 2013 to the present.

17. The reasons ERC did not exercise its remedy under the RSA to cease accepting BTS' crude when the financial assurances requested from BTS were not forthcoming from 2013 through 2016.

18. Any representations made by the Defendants to Canopy related to Bridger, BTS, or the financial capability of any Bridger entity.

19. The October 19, 2017 Redemption and Asset Transfer Agreement by and among Canopy, ERC, the Canopy Principals, and Enbridge (U.S.) Inc., including the negotiation of the terms of the agreement.