# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

EDDYSTONE RAIL COMPANY,     :  NO. 2:17-CV-00495-RK
LLC,                        :
    Plaintiff/             :
    Counter-defendant,     :
                     :
      v.                     :
                     :
JULIO RIOS, JEREMY GAMBOA,  :
BRIDGER LOGISTICS, LLC,     :
FERRELLGAS PARTNERS, L.P.,  :
FERRELLGAS, L.P., et al.,   :
    Defendants,            :
                     :
BRIDGER LOGISTICS, LLC,     :
FERRELLGAS PARTNERS, L.P.,  :
and FERRELLGAS, L.P.,       :
    Defendant/             :
    Counterclaimants.      :

- - -

Wednesday, December 5, 2018

- - -

        Videotaped deposition of ERIK L. JOHNSON,
taken pursuant to notice, was held at the Law Offices
of Stradley Ronon Stevens & Young, LLP, 2005 Market
Street, Suite 2600, Philadelphia, Pennsylvania 19103,
commencing at 9:04 a.m., on the above date, before
Rhonda Watson, Professional Court Reporter and Notary
Public in and for the Commonwealth of Pennsylvania.

- - -

MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com



```
 1    APPEARANCES:
 2    STEPTOE & JOHNSON LLP
      BY: FILIBERTO AGUSTI, ESQUIRE
 3    1330 Connecticut Avenue, NW
      Washington, D.C. 20036
 4    (202) 429-3000
      fagusti@steptoe.com
 5    Representing the Plaintiff
 6
 7
 8
 9    BRYAN CAVE LEIGHTON PAISNER LLP
      BY: SARAH HARTLEY, ESQUIRE
10    1700 Lincoln Street
      Suite 4100
11    Denver, Colorado 80203
      (303) 866-0363
12    sarah.hartley@bclplaw.com
      Representing Defendants, Bridger Logistics, LLC,
13    Ferrellgas Partners, L.P., and Ferrellgas, L.P., et al.
14
15
16
17    BRYAN CAVE LEIGHTON PAISNER LLP
      BY: RACHEL A. BECK, ESQUIRE
18    1155 F Street, NW
      Washington, D.C. 20004
19    (202) 508-6087
      rachel.beck@bclplaw.com
20    Representing Defendants, Bridger Logistics, LLC,
      Ferrellgas Partners, L.P., and Ferrellgas, L.P., et al.
21
22
23
24
```



Page 3

```
 1   APPEARANCES (CONTINUED):
 2   LYNN PINKER COX & HURST
     BY: JONATHAN D. KELLEY, ESQUIRE
 3   BY: JEREMY FIELDING, ESQUIRE
     2100 Ross Avenue
 4   Suite 2700
     Dallas, Texas 75201
 5   (214) 981-3800
     jkelley@lynnllp.com
 6   jfielding@lynnllp.com
     Representing Defendants, Julio Rios and Jeremy Gamboa
 7
 8
 9
10
     STRADLEY RONON STEVENS & YOUNG, LLP
11   BY: ADRIEL J. GARCIA, ESQUIRE
     2005 Market Street
12   Suite 2600
     Philadelphia, Pennsylvania 19103
13   (215) 564-8022
     agarcia@stradley.com
14   Representing Canopy Prospecting, Inc.
15
16
17
18   ALSO PRESENT:
19   Ryan Licursi, Videographer
20
21
22                         -  -  -
23
24
```



Page 4

1                              -   -   -
                          I N D E X
2                              -   -   -
3      TESTIMONY OF ERIK L.  JOHNSON                    PAGE
4         By Ms.  Hartley                                10
5         By Mr.  Kelley                                273
6
7
8                              -   -   -
                        E X H I B I T S
9                              -   -   -
10     NO.                        DESCRIPTION           PAGE
11     Exhibit-100   Resume                              14
12     Exhibit-101   Witness Statement                   20
13     Exhibit-102   Eddystone Rail Transshipment, LLC    35
                     Summary
14
       Exhibit-103   Eddystone Rail Facilities            97
15                   Services Agreement
16     Exhibit-104   E-Mail Re: Public Statement         105
                     About ERC Change in Scope
17
       Exhibit-105   E-Mail Exchange                     117
18                   Re: Eddystone Dock
19     Exhibit-106   E-Mail Re: Dredging Progress        125
                     and Budget Meeting
20
       Exhibit-107   E-Mail Exchange Re: Eddystone       130
21                   Rock Coring Update
22     Exhibit-108   E-Mail Exchange Re: Other           143
                     Eddystone NS Service Q's
23
       Exhibit-109   E-Mail Re: Eddystone Rail Project   151
24



Page 5

```
 1                          -  -  -
                    E X H I B I T S (CONTINUED)
 2                          -  -  -
 3    NO.                   DESCRIPTION                 PAGE
 4    Exhibit-110    E-Mail Attaching Conrail            160
                     Presentation Slides
 5
      Exhibit-111    E-Mail Re: ERC/Bridger              176
 6                   Agreement - CT Meters
 7    Exhibit-112    E-Mail Exchange Re:                 185
                     Bridger/Ferrallgas Letter of
 8                   Credit
 9    Exhibit-113    E-Mail Attaching Eddystone          196
                     Management Committee Meeting
10                   Minutes
11    Exhibit-114    Attorney's Eyes Only Document       N/A
                     (See Separate AEO Transcript)
12
      Exhibit-115    E-Mail Exchange Re: Potential       218
13                   ERC Business
14    Exhibit-116    E-Mail Exchange Re: Delta Update    226
15    Exhibit-117    Reuters Article Titled              231
                     Philadelphia Area Crude Rail
16                   Terminal Reawakened by Discounted
                     Crude
17
      Exhibit-118    E-Mail Exchange Re: Eddystone       238
18                   Information from Canopy
                     Prospecting
19
      Exhibit-119    Attorney's Eyes Only Document       N/A
20                   (See Separate AEO Transcript)
21    Exhibit-120    Redemption and Asset Transfer       245
                     Agreement
22
      Exhibit-121    E-Mail Re: Canopy/Enbridge          257
23                   Resolution of ERC Matter
                     Correspondence Attachment
24
```



Page 6

1                          – – –

                    E X H I B I T S (CONTINUED)

2                          – – –

3   NO.                    DESCRIPTION                    PAGE

4   Exhibit-122    Attorney's Eyes Only Document          N/A
                   (See Separate AEO Transcript)

5

    Exhibit-123    E-Mail Attaching Correspondence        275
6                  from Stradley Ronon to
                   Christopher Pennington, Proskauer
7                  Rose

8   Exhibit-124    E-Mail with Attachment                 317
                   Re: Canopy Communication

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                         – – –



Page 7

```
 1                          -   -   -

 2              DEPOSITION SUPPORT INDEX

 3                          -   -   -

 4

 5    Direction to Witness Not to Answer

 6    Page  Line  Page  Line  Page  Line

 7    230    2    252    5

 8

 9    Request for Production of Documents

10    Page  Line  Page  Line  Page  Line

11    None

12

13    Stipulations

14    Page  Line  Page  Line  Page  Line

15    None

16

17    Question Marked

18    Page  Line  Page  Line  Page  Line

19    None

20

21

22

23

24
```



1              - - -

2              THE VIDEOGRAPHER:  Good morning.

3      We are now on the record.  This begins

4      Video No. 1 in the video deposition of

5      Erik Johnson in the matter of Eddystone

6      Rail Company, LLC v. Julio Rios, et al.

7      The date today is December 5, 2018, and

8      the time on the video monitor is

9      approximately 9:04.

10             My name is Ryan Licursi.  I'm the

11     videographer from Magna Legal Services.

12     The court reporter is Rhonda Watson also

13     of Magna Legal Services.

14             Will counsel present please

15     identify themselves and the parties they

16     represent?

17             MR. AGUSTI:  I'm Fil Agusti.  I

18     represent the Plaintiff, Eddystone Rail

19     Company.

20             - - -

21             (Mr. Fielding and Mr. Kelley, Lynn

22     Pinker Cox Hurst, joined the proceedings.)

23             - - -

24             MR. GARCIA:  Adriel Garcia,



Page 9

1    Stradley Ronon, representing Canopy.

2            MS. BECK:  Rachel Beck, Bryan Cave

3    Leighton Paisner, on behalf of Defendants.

4            MS. HARTLEY:  Sarah Hartley, also

5    from Bryan Cave Leighton Paisner, for the

6    Corporate Defendants.

7            THE VIDEOGRAPHER:  Off the record

8    at 9:05.

9                -   -   -

10           (A brief recess was taken.)

11               -   -   -

12           THE VIDEOGRAPHER:  We're back on

13   the record at 9:07.

14           MR. FIELDING:  Can we make our

15   appearance?

16           MR. KELLEY:  Jon Kelley and Jeremy

17   Fielding on behalf of Defendants, Julio

18   Rios and Jeremy Gamboa.

19           THE VIDEOGRAPHER:  Will the court

20   reporter please swear in the witness?  And

21   we can proceed.

22               -   -   -

23           ERIK JOHNSON, after having been

24   first duly sworn, was examined and



                                                    Page 10

1              testified as follows:

2                      -  -  -

3                    EXAMINATION

4                      -  -  -

5     BY MS. HARTLEY:

6          Q.        Good morning, Mr. Johnson.   Can

7     you give your full name and address for the

8     record, please?

9          A.        Erik Lafayette Johnson.   My

10    business address is 4975 West Chester Pike, Suite

11    200, Edgmont, Pennsylvania.

12         Q.        Now, have you been deposed before?

13         A.        I don't believe so.

14         Q.        All right.   Then I'm just going to

15    go over a couple of ground rules that hopefully

16    will make this be a little bit smoother today.

17                   First, let's try not to talk over

18    each other.   I'll ask my question.   If you could

19    wait until I'm done before giving your answer,

20    that will be great.   And I'll try similarly to

21    wait until you're done with your answer before

22    asking my next question.

23                   And for the court reporter as

24    well, if you could provide verbal answers, that



Page 62

```
 1      deal and that they had railcars, and that they

 2      were very interested in getting into the

 3      Philadelphia area.

 4             Q.        Did you make any representations

 5      about when you thought the project would be up

 6      and running and in service?

 7             A.        No.

 8             Q.        Did you make any representation --

 9             A.        Not that I recall.  I mean, there

10      might have been some broad strokes, but I don't

11      recall that.

12             Q.        Do you recall making any

13      representations about the facility being state of

14      the art?

15             A.        I don't recall that.  And quite

16      frankly, our plans at that time were for a -- a

17      budget facility, functional, but no frills.  So I

18      don't think that I would make that statement.

19             Q.        Did you make any statements

20      regarding the expected capacity for transloading

21      at the facility?

22             A.        I probably said something.  Well,

23      now I'm speculating.  I don't recall that.

24             Q.        Now, do you recall what Mr. Rios'
```



Page 72

```
 1      there talking with the railroads as well.

 2      Numerous meetings with them up to the vice

 3      president of chemicals, Rios was involved in some

 4      of those meetings as well.  And then we went on

 5      a -- NS had a business train with their chairman

 6      on it, if I recall correctly, Wick Moorman, that

 7      went from Altoona to Harrisburg.  And they had a

 8      lot of operations people on there.  We got to

 9      talk with them.  And Rios was on that train as

10      well.

11             Q.      Anything else?

12             A.      Not that I recall.

13             Q.      Okay.

14             A.      It was -- again, there was a lot

15      going on, so it was a busy time.  So this is not

16      an exhaustive list.

17             Q.      You have no current recollection

18      of any other diligence that ERC or Canopy

19      performed on rail access to the Eddystone

20      facility before contracting with Bridger Transfer

21      Services?

22             A.      No.  Just a lot of -- just what

23      I've said.

24             Q.      Okay.  Now, as you were getting
```



Page 139

1    recollection.

2        Q.        So you said, sailing on the tide

3    was acceptable to him.  But did he give an

4    indication that that would be the only time at

5    which the petrochem producer could be fully

6    loading, given the continued existence of the

7    granite pinnacle in the channel?

8        A.        I'd have to read the report.

9        Q.        So whatever the report says on

10   that point, did -- did ERC ever share the report

11   with Bridger Transfer Services?

12       A.        I don't -- I didn't share it with

13   Bridger Transfer Services.  It might have been

14   shared -- I don't know if it was in the data run

15   that was given to Enbridge later.

16       Q.        But you have no personal knowledge

17   of whether at the time it was received as the

18   facility was getting ready for operations,

19   whether anyone from ERC shared that report with

20   Bridger Transfer Services?

21       A.        I have no recollection of that.

22       Q.        Okay.  Now, do you recall when ERC

23   disclosed the existence of the granite pinnacle

24   to Bridger Transfer Services?



Page 142

```
 1          Q.      All right.  So do you have any
 2      knowledge of the specific information that BTS
 3      was given, if any, regarding the granite pinnacle
 4      prior to that February 2014 tour that I just
 5      mentioned?
 6          A.      I mean, that --
 7              MR. AGUSTI:  Objection, asked and
 8          answered.
 9              THE WITNESS:  That was Turnbull's
10          department, really.
11      BY MS. HARTLEY:
12          Q.      Okay.  All right.  So let's --
13      let's now --
14          A.      It was part of the complex vetting
15      procedure.  I would add that as well.
16          Q.      I'm sorry.  The complex vetting
17      procedure?
18          A.      Barge vetting procedure.
19          Q.      Barge vetting procedure, okay.
20      All right.  Now, let's talk about the rail access
21      to the facility, in particular the -- the SEPTA
22      window.
23          A.      Yep.
24          Q.      Generally, what is your
```



Page 288

```
 1                      What did you mean by that?
 2          A.      I don't recall.
 3          Q.      You just mentioned fiduciary
 4  responsibilities, and you don't remember why?
 5                  MR. AGUSTI:  Objection, lack of
 6          foundation.
 7                  THE WITNESS:  The letter was sent
 8          over a year and a half ago.  You know,
 9          this is -- this is old news, and I'm doing
10          my best to forget about it, quite frankly,
11          you know.  This is a prior life, so I'd
12          have to go through, I'd have to review it,
13          and I'd have to remember the context.
14  BY MR. KELLEY:
23          A.      Uh-huh.
24          Q.      Okay.  -- to insulate the
```



Page 326

```
 1        this matter.
 2                    So Canopy viewed it as a major
 3        concession; is that --
 4                    MR. AGUSTI:  Lack --
 5        BY MR. KELLEY:
 6             Q.       -- fair to say?
 7                    MR. AGUSTI:  Lack of foundation, I
 8               object.
 9                    THE WITNESS:  I don't recall.
10        BY MR. KELLEY:
11             Q.       But you viewed the claims as
12        substantive and legitimate, right?
13                    MR. AGUSTI:  Objection, asked and
14               answered.
15                    THE WITNESS:  You know, I -- I'll
16               refer you back to what I've said before.
17               You know, we -- we felt that it was a
18               valid position, particularly at the time
19               and now that we're out of the fire, so to
20               speak.  You know, as I said, the maddening
21               thing was, you know, these Canadians, they
22               have their own way of doing things.
23               They're a bunch of -- you know, a bunch of
24               guys from Canada and Texas.  They do
```



Page 351

1                        CERTIFICATE

2

3

4              I HEREBY CERTIFY that the witness

5      was duly sworn by me and that the deposition is a

6      true record of the testimony given by the

7      witness.

8

9

10

11      _Rhonda Watson_

12

                  Rhonda Watson

13              Professional Court Reporter

                Dated: December 10, 2018

14

15

16

17

18

19              (The foregoing certification of

20      this transcript does not apply to any

21      reproduction of the same by any means, unless

22      under the direct control and/or supervision of

23      the certifying reporter.)

24

