# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------
:
EDDYSTONE RAIL COMPANY, LLC,            :       17cv1266
                                        :
      Petitioner,                     :       MEMORANDUM & ORDER
                                        :
      v.                              :
                                        :
JAMEX TRANSFER SERVICES, LLC,           :
                                        :
      Respondent.                     :
---------------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        Proposed intervenors Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P. ("Bridger") seek reconsideration of this Court's Opinion and Order denying their motion to intervene in this action. For the reasons that follow, Bridger's motion for reconsideration is denied.

## BACKGROUND

        This action arises from Eddystone Rail Company, LLC's ("Eddystone") petition to confirm a $139 million arbitration award ("Arbitration Award") against Jamex Transfer Services, LLC ("Jamex"). Bridger formerly owned Jamex. Eddystone alleges that Bridger sold Jamex knowing that Jamex would default on a rail facilities services agreement with Eddystone. Shortly after that sale, Jamex breached its agreement with Eddystone, thereby giving rise to a breach of contract arbitration. The Arbitration Award is the product of a settlement resolving Eddystone's claims against Jamex.

        Prior to filing this action, Eddystone sued various Bridger entities in the Eastern District of Pennsylvania alleging alter ego and fraudulent transfer liability (the "Pennsylvania Action"). Concerned that Eddystone would seek to enforce a confirmed Arbitration Award

1

against Bridger in the Pennsylvania Action, Bridger sought to intervene in this litigation.

In February 2018, this Court denied Bridger's motion to intervene ("February 2018 Order"). Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC, 289 F. Supp. 3d 582 (S.D.N.Y. 2018). As a general matter, this Court concluded that non-parties like Bridger do not have standing to challenge arbitration awards. Eddystone, 289 F. Supp. 3d at 588. More specifically, this Court rejected Bridger's contention that it was entitled to intervene because it possessed a "substantial interest" in the underlying arbitration. Based on Bridger's position that it sold Jamex—and did so prior to the contractual breach giving rise to Eddystone's claims—this Court concluded that Bridger "fail[ed] to demonstrate a substantial interest in the arbitration." Eddystone, 289 F. Supp. 3d at 590 (emphasis in original). Moreover, given that Eddystone had not yet established, among other things, that Bridger was an alter ego of Jamex in the Pennsylvania Action, this Court determined that any interest Bridger purported to have was "somewhat removed from the type of interest that the Second Circuit has recognized" for purposes of permitting non-parties to intervene. Eddystone, 289 F. Supp. 3d at 590 (citing Ass'n of Contracting Plumbers of N.Y.C., Inc. v. Local Union No. 2 United Ass'n of Journeymen of Plumbing & Pipefitting Indus., 841 F.2d 461 (2d Cir. 1988)).

Bridger now renews its motion to intervene through Federal Rules of Civil Procedure 59(e) and 60(b), asking this Court to reconsider the February 2018 Order on various grounds. In the alternative, Bridger seeks a stay of this proceeding until the final disposition of the Pennsylvania Action, or leave to file an amicus curiae brief in connection with this confirmation proceeding.

After Bridger filed its motion for reconsideration, the district judge in the Eastern District of Pennsylvania denied a motion to dismiss for lack of personal jurisdiction over the

"Additional Entity Defendants," who allegedly received fraudulent transfers from Bridger Transfer Services, LLC. Eddystone Rail Co., LLC v. Rios, 2018 WL 5920746 (E.D. Pa. Nov. 13, 2018). Because that decision only addressed personal jurisdiction over the Additional Entity Defendants, it does not bear directly on any issues relevant in this proceeding.

## DISCUSSION

I.  Standard

Local Rule 6.3 provides that a "notice of motion for reconsideration or reargument of a court order determining a motion . . . shall be served with . . . a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Thus, "to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." Dietrich v. Bauer, 198 F.R.D. 397, 399 (S.D.N.Y. 2001). Local Rule 6.3 is to be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Dietrich, 198 F.R.D. at 399.

"A denial of a leave to intervene of right is appealable as a final order." N.Y. Pub. Interest Research Grp., Inc. v. Regents of the Univ. of N.Y., 516 F.2d 350, 351 n.1 (2d Cir. 1975). Rule 59(e) may be used by a party seeking to alter or amend a judgment, while Rule 60(b) provides relief from a final order. Under either rule, the standard for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012). The Second Circuit has further instructed that a district court may grant reconsideration if the movant demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent

3

manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). The motion is not a vehicle for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998). Any decision to grant such a motion "is within the sound discretion of the district court." Robbins v. H.H. Brown Shoe Co., 2009 WL 2496024, at *1 (S.D.N.Y. July 22, 2009).

II. Analysis

    A. Reconsideration of February 2018 Order

Bridger cites "Eddystone's recent assertion" of an affirmative defense in the Pennsylvania Action—based on this Court's Opinion and Order—as "new evidence that significantly alters the factual and procedural record that the Court had before it in deciding" the underlying motion to intervene. (Bridger's Memo. of Law in Supp. of Motion ("Mot."), ECF No. 62, at 5.) Bridger argues that approximately two weeks after this Court entered the February 2018 Order, Eddystone "sought to preclude [Bridger] from asserting any counterclaims 'addressed' in 'the arbitration proceeding,'" thus "crystalliz[ing] the harm [Bridger] suffer[s] as a result of being denied the opportunity to challenge the Arbitration Award." (Mot. at 6.)

As an initial matter, Bridger has "not discovered any new evidence." Nash v. Bd. of Educ. of N.Y.C., 2018 WL 2316337, at *5 (S.D.N.Y. May 8, 2018). The "'defenses' [it] has recently discovered are legal theories[,] not evidence." Nash, 2018 WL 2316337, at *5. More importantly, Eddystone's assertion of a preclusion-based defense does not alter this Court's decision to deny intervention. This Court already considered the possibility—and the likelihood—that Eddystone would exploit the developments of this action for its benefit in the Pennsylvania Action. Whether Eddystone seeks to preclude Bridger from asserting defenses or

4

impede Bridger from advancing counterclaims on preclusion grounds is a matter for the Pennsylvania court.

The court—and each of the parties—in the Pennsylvania Action will have an opportunity to consider the merits of Eddystone's affirmative defense, including its effect on Bridger's counterclaims. If this Court confirms the Arbitration Award—thereby converting it into a judgment against Jamex—Bridger will not be automatically foreclosed from prosecuting its counterclaims against Eddystone. Rather, the Pennsylvania court must independently engage in a preclusion analysis, under which it may review whether Bridger had "a full and fair opportunity to litigate the merits" of its defenses or counterclaims. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 485 (1982).

Bridger further contends that reconsideration is warranted because the Arbitration Award does not reflect—but rather contradicts—the terms of Eddystone and Jamex's settlement agreement, particularly as to the issue of liability. Bridger argues that those inconsistencies are further proof that the Arbitration Award is pretextual and was obtained solely to impair Bridger's claims and defenses in the Pennsylvania Action. At its core, this argument refashions Bridger's first point—that the Arbitration Award would, among other things, preclude Bridger from advancing its counterclaims in the Pennsylvania Action. Reconsideration is not a device to retool arguments previously considered by the Court. See Tiffany & Co. v. Costco Wholesale Corp., 2019 WL 120765, at *2 (S.D.N.Y. Jan. 7, 2019); Gramercy Advisors, LLC v. Coe, 2014 WL 5847442, at *1 (S.D.N.Y. Nov. 12, 2014).

Finally, Bridger contends that this Court overlooked "the effect that a judgment confirming the Arbitration Award could have on the other claims Eddystone asserts in the Pennsylvania Action," namely Bridger's "ability to defend against fraudulent transfer claims."

5

(Mot. at 10.) But this Court considered the existence of Eddystone's various claims in the Pennsylvania Action, and analyzed the effect that any judgment here would have on the disposition of the Pennsylvania Action. See Eddystone, 298 F. Supp. 3d at 594.

Bridger's current motion also cites Grace v. Bank Leumi Trust Co., 443 F.3d 180 (2006), in support of a new argument that "a non-party does have standing to challenge a judgment that could give rise to fraudulent transfer liability." (Mot. at 10.) However, Bridger was not foreclosed from making this argument in its initial motion. The parties were aware that Eddystone was pursuing a fraudulent transfer claim in the Pennsylvania Action, and any persuasive force Bridger attaches to Grace would have applied equally in its initial motion as it does now. Bridger "merely cites new case law and advances new arguments that it failed to cite or advance in its" original motion. Grabin v. Marymount Manhattan Coll., 2014 WL 3639136, at *2 (S.D.N.Y. July 22, 2004); Wiesner v. 321 W. 16th St. Assocs., 2000 WL 1585680, at *4 (S.D.N.Y. Oct. 25, 2000) ("Plaintiffs' motion for reconsideration is denied because the Plaintiffs raise new arguments and cite to case law not previously put before the Court.").

At bottom, Bridger, as a non-party here, lacked a substantial interest in the underlying arbitration. The Arbitration Award was entered against Jamex, and if confirmed, would constitute a judgment against Jamex. While the Pennsylvania Action threatens Bridger with a potential liability equal to the Arbitration Award, such liability will only materialize against Bridger if Eddystone convinces the Pennsylvania court that its alter ego, fraudulent transfer, and any other claims have merit. Without satisfying that contingency, Bridger stands a degree removed from this case. With Bridger facing this risk, all the arguments it has made in this proceeding are better suited for consideration by the Pennsylvania court.

B. <u>Alternative Relief</u>

As an alternative to reconsideration, Bridger seeks a stay of this proceeding pending the Pennsylvania Action, or leave to file an <u>amicus curiae</u> brief to aid this Court in determining whether confirmation of the Arbitration Award is appropriate. As an initial matter, an <u>amicus</u> brief is entirely unnecessary in a confirmation proceeding. The scope of this proceeding is exceedingly narrow. <u>Folkways Music Publishers, Inc. v. Weiss</u>, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). A confirmation proceeding is not so much an exercise in analyzing the legal merits of a case—or the underlying arbitration decision—as it is to simply ascertain whether there is "barely [a] colorable justification for the outcome reached by the arbitrators." <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 110 (2d Cir. 2006). Put another way, it is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 176 (2d Cir. 1984).

The "rationale for amicus cur[i]ae submissions is that they are of aid to the court and offer insights not available from the parties." <u>Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.</u>, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011). But all that is needed here, where Jamex does not object to confirmation of the Arbitration Award, is to treat Eddystone's petition as "akin to a motion for summary judgment, in that regardless of whether the respondent appears, the court reviews the motion in the context of a record—usually consisting of the agreement to arbitrate and the arbitration award decision." <u>N.Y.C. Dist. Council of Carpenters v. Am. Flooring Concepts Inc.</u>, 2018 WL 4863651, at *2 (E.D.N.Y. Sept. 7, 2018).

Bridger's request for a stay of this proceeding pending the Pennsylvania court's

7

determination on certain threshold issues that would link Jamex's exposure to Bridger is more intriguing.  Bridger has not yet demonstrated a substantial interest in the arbitration.  But as a practical matter, it is troubling to this Court that an Arbitration Award obtained through a settlement between Eddystone and Jamex—an entity with no assets—could summarily be converted into a $139 million judgment.  And even more concerning is that this judgment could then be used against a party that never had an opportunity to challenge the process by which the Arbitration Award was obtained.

It is well-settled that a district court has discretionary power to stay proceedings pursuant to its inherent power to control its docket.  See Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936).  Moreover, this power may be exercised sua sponte in the interests of justice.  See Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc., 2017 WL 3309724, at *1 (S.D.N.Y. Aug. 2, 2017); City of N.Y. v. Gutlove & Shirvint, Inc., 2008 WL 4862697, at *1 (E.D.N.Y. Nov. 10, 2008); Javier H. v. Garcia-Botello, 218 F.R.D. 72, 74 (W.D.N.Y. 2003) ("[B]ecause a federal district court has the inherent power, in the exercise of its discretion, to stay an action, it may deny a motion to intervene, or decline to address the merits of such a motion, and nevertheless enter an order staying civil discovery.").

"A stay is not a matter of right, even if irreparable injury might otherwise result.  It is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case."  Nken v. Holder, 556 U.S. 418, 433 (2009) (quotation marks and citations omitted) (alteration in original).  Courts in this circuit consider the following factors when determining whether to grant a discretionary stay:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public

8

interest.

Albert v. Blue Diamond Growers, 232 F. Supp. 3d 509, 512 (S.D.N.Y. 2017) (quoting Kappel v. Comfort, 914 F. Supp. 1056, 1059 (S.D.N.Y. 1996)).

With respect to the first two factors, given that Eddystone is "suing an entity[, Jamex,] that ha[s] no assets," (ECF No. 24 at 9:6–13), the prejudice caused to the parties by a delay would be minimal—Eddystone essentially cannot do anything with the judgment unless and until Bridger is found to be Jamex's alter ego in the Pennsylvania Action. In other words, the parties to this action have nothing to gain or lose with a stay. On the other hand, Bridger has a substantial interest in staying the action, given that it could have a $139 million arbitral award enforced against it without having had an opportunity to be heard on the merits of that arbitration. The public's interest in expeditious litigation does not outweigh this concern. Accordingly, this Court stays this action pending the Eastern District of Pennsylvania's determination with respect to alter ego liability.

## CONCLUSION

For the foregoing reasons, Bridger's motion for reconsideration is denied. However, this action is stayed pending determination of Bridger's alter ego status in the Pennsylvania Action. The Clerk of Court is directed to terminate the motion pending at ECF No. 60.

Dated: January 11, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

9