

BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York  NY 10104 3300
T: +1 212 541 2000
F: +1 212 541 4630
www.bclplaw.com

Lawrence G. Scarborough
Partner
Direct:  (212) 541-1137
Fax:  (212) 541-4630
lgscarborough@bclplaw.com

October 9, 2019

The Honorable Robert F. Kelly
United States District Court – Eastern District of Pennsylvania
James A. Byrne United States Courthouse
601 Market Street, Room 11613
Philadelphia, PA 19106

Re:   Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al.
        Case No. 2:17-cv-00495-RK /USDC – Eastern District of Pennsylvania

Dear Judge Kelly:

On behalf of Defendants Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P. (the "BL/FG Defendants"), we write to respond to the October 8, 2019 submission by Plaintiff Eddystone Rail Company, LLC ("Eddystone") (Dkt. 335) concerning compliance with the Court's June 28, 2019 order compelling production of privileged communications pursuant to the crime-fraud exception (Dkt. 333) (the "June 28 Order").

At the outset, the BL/FG Defendants intend to comply fully with the June 28 Order now that their appeal has ended, and they have already produced all (or almost all) of the documents that fall within the scope of the June 28 Order.  Indeed, the June 28 Order requires the BL/FG Defendants to begin producing documents "within three weeks of the date of this Order," but it was stayed "pending a decision of the Appellate Court."  The Third Circuit terminated the BL/FG Defendants' appeal on Friday, September 27, and the BL/FG Defendants began to produce documents promptly on Thursday, October 3, followed by a second production on Tuesday, October 8.  Between September 27 and October 8, the BL/FG Defendants produced approximately 4,000 documents listed on their privilege log, comprising roughly 20,000 pages.  As explained below, the BL/FG Defendants plan to make a third and final production by October 18, which falls three weeks after the Third Circuit's order.

I.      *In Camera* Review Documents

At Eddystone's request, the first production on October 3 included materials from among the documents the Court reviewed *in camera*.  We do not understand the June 28 Order to require the disclosure of every document in the sample, as Eddystone now contends.  The Court's June 28 Memorandum Opinion states (at 13) that "the vast majority of the emails submitted for *in camera* review pertain to the furtherance of allegedly fraudulent transfers."  We thus conclude that the Court did not find that *all* of the documents submitted for *in camera* review are subject to the crime-fraud exception.

The Honorable Robert F. Kelly
October 9, 2019
Page 2



Rather, the June 28 Order provides that "the crime-fraud exception applies to extinguish the attorney-client privilege and work product privilege as to communications between BL/FG Defendants and their in-house and outside attorneys regarding the following subject matter areas:  the restructuring of BTS; the transferring or redirecting of BTS' assets or/and revenue streams; the sale of BTS to Jamex; and the cessation of the Monroe shipping arrangement."

Accordingly, the BL/FG Defendants reviewed the documents from the *in camera* review sample and produced those that fall within these enumerated categories.  In particular, on October 3, we produced 643 of the 841 document families submitted to the Court for *in camera* review (*i.e.*, the "vast majority" of documents in the sample).  Due to a clerical error, several documents were inadvertently omitted from this initial production, all of which are featured in Eddystone's October 8 submission (and/or listed in Eddystone's Exhibit A):

| Priv Log ID | Subject |
| --- | --- |
| 34359 | Re: Bridger / Jamex Documents |
| 38768 | Fwd: Rail Logistics Agreement |
| 38943 | Eddystone restructuring |
| 38945 | RE: Eddystone restructuring |
| 38953 | RE: Eddystone restructuring |
| 38955 | RE: Eddystone restructuring |
| 38956 | Re: Eddystone restructuring |
| 38957 | RE: Eddystone restructuring |
| 38958 | RE: Eddystone restructuring |
| 38959 | RE: Eddystone restructuring |
| 38960 | Re: Eddystone restructuring |
| 39010 | RE: Eddystone restructuring |
| 39011 | RE: Eddystone restructuring |
| 39012 | RE: Eddystone restructuring |
| 39013 | RE: Eddystone restructuring |
| 39014 | Re: Eddystone restructuring |
| 39015 | Re: Eddystone restructuring |
| 39016 | RE: Eddystone restructuring |
| 39017 | Re: Eddystone restructuring |
| 39018 | Re: Eddystone restructuring |
| 41011 | Re: Debt Matters & BTS Subsidiary Sale |
| 42641 | FW: Jamex/Bridger – Revised Draft of PSA |
| 43490 | Re: Bridger / Jamex Documents |
| 42642 | FW: Jamex/Bridger – Revised Draft of PSA |
| 45769 | RE: Debt Matters & BTS Subsidiary Sale |
| 45783 | RE: Debt Matters & BTS Subsidiary Sale |
| 45784 | RE: Debt Matters & BTS Subsidiary Sale |
| 45791 | RE: Debt Matters & BTS Subsidiary Sale |

The Honorable Robert F. Kelly
October 9, 2019
Page 3



| 45794 | RE: Debt Matters & BTS Subsidiary Sale |
| 45795 | RE: Debt Matters & BTS Subsidiary Sale |
| 45796 | Re: Debt Matters & BTS Subsidiary Sale |
| 45797 | Re: Debt Matters & BTS Subsidiary Sale |
| 46042 | RE: Debt Matters & BTS Subsidiary Sale |
| 46122 | RE: Debt Matters & BTS Subsidiary Sale |
| 46252 | RE: Debt Matters & BTS Subsidiary Sale |

The BL/FG Defendants produced these documents to Eddystone yesterday, as part of their second production pursuant to the June 28 Order.[1]  After yesterday's production, only 157 of the 841 document families from the sample have not been produced.

The BL/FG Defendants do not believe that the remaining documents on the list attached to Eddystone's letter fall within the categories enumerated in the June 28 Order.  Eddystone complains that the BL/FG Defendants applied their "subjective view" to identify documents that fall within such categories.  But Eddystone's original motion to compel did not identify the documents it sought, and the Court did not identify the documents from the *in camera* sample that it found were subject to the crime-fraud exception.  As a result, the BL/FG Defendants complied with the June 28 Order by reviewing the documents in the sample and producing those that fall within the enumerated categories.

## II.    The Relevant Periods

The BL/FG Defendants understood Eddystone's motion to compel to seek documents during the two time periods featured prominently in the parties' briefs:  (1) May to July 2015 and (2) December 2015 to February 2016 (the "Relevant Periods").  Yesterday, as part of their ongoing efforts to comply with the June 28 Order, the BL/FG Defendants produced all of the documents on their privilege log that fall within both the Relevant Periods and the categories enumerated in the June 28 Order.

Eddystone complains in its October 8 submission that the BL/FG Defendants have "unilaterally imposed temporal limitations on this Court's June 28 Order."  But these are the very same time periods Eddystone identified and targeted in its motion to compel:

- May to July 2015

    o  "**Beginning June 2015**, the Defendants steered [BTS revenue] to other subsidiaries of Bridger Logistics. . . ."  (Dkt. 217, Eddystone Brief at 1 (emphasis added).)

    o  "**Between May and July 2015**, in-house counsel helped create a fictitious new legal structure. . . ."  (*Id.* at 2 (emphasis added).)

---

[1]      Eddystone did not identify the documents it believed were missing from the initial production of *in camera* review documents before submitting its letter to the Court.

The Honorable Robert F. Kelly
October 9, 2019
Page 4



- o "**On June 24, 2015**, Ferrellgas acquired . . . Bridger Logistics. . . ."  (*Id.* at 5 (emphasis added).)

- o "**Immediately upon the acquisition**, Ferrellgas also stripped BTS of the majority of its assets and income streams.  (*Id.* at 7 (emphasis added).)

- o **Upon acquiring Bridger Logistics,** Ferrellgas promptly caused BTS and its affiliates to eliminate all of their intercompany accounts payable. . . ." (*Id.* )

- December 2015 to February 2016

  - o "**By December 2015**, Ferrellgas concluded that it was convenient for it to stop shipping crude. . . ."  (Dkt. 217, Eddystone Brief at 1 (emphasis added).)

  - o "[O]utside counsel assisted Ferrellgas in its stripping of BTS's remaining assets **in January 2016**."  (Dkt. 271, Eddystone Reply at 25 (emphasis added).)

  - o "Ferrellgas employed the services of counsel in furtherance of its fraud **in January 2016.**"  (*Id.* at 25 (emphasis added).)

  - o "Ferrellgas also used in-house counsel in furtherance of its **January 2016** fraudulent transfers."  (*Id.* (emphasis added).)

  - o **"On January 31, 2016,** Ferrellgas completed the transfer of BTS's remaining assets. . . ."  (Dkt. 217, Eddystone Brief at 9 (*Id.* at 25 (emphasis added).).)

  - o "**On February 1, 2016**, the last BTS train left Eddystone."  (Dkt. 217, Eddystone Brief at 10 (emphasis added).)

Consequently, these were the periods addressed in BL/FG Defendants' responsive briefs. (Dkt. 266 Opposition at 37-38 & 42; Dkt. 277 at 22-23.)

In fact, Eddystone's reply brief describes the periods from May to July 2015 and December 2015 to February 2016 (i.e., the Relevant Periods) as "**the time periods Eddystone identified as relevant to its fraudulent transfer claims**." (Dkt. 271 at 27 (emphasis added).)

Moreover, as Eddystone's own arguments make clear, the two sets of allegedly fraudulent transfers concluded by July 2015 and February 2016, respectively.  According to the Third Circuit and the Supreme Court, the crime-fraud exception does not apply to privileged communications exchanged *after* an alleged fraud.  *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) (the "seal is broken" only "when the lawyer's communication is meant to facilitate future wrongdoing by the client," *i.e.*, giving "advice that is illicit because it gives direction for the commission of future fraud or crime"); *see also United States v. Zolin*, 491 U.S. 554, 562-63 (1989) (confining crime-fraud exception to advice furthering "future wrongdoing").

The Honorable Robert F. Kelly
October 9, 2019
Page 5



Nevertheless, Eddystone now argues that its "motion to compel sought documents from 'April 1, 2015 – May 31, 2016,'" which it labels as the "Subject Timeframe." Eddystone took this position for the first time on September 27, 2019, in a letter sent the same day the Third Circuit terminated the BL/FG Defendants' appeal. Also for the first time, Eddystone provided a list of privilege log entries that it believes are subject to the crime-fraud exception. Although Eddystone had never before provided such information to the BL/FG Defendants, it demanded that the BL/FG Defendants produce all documents (and update their privilege log to explain why any documents on the list were not produced) by October 11 (*i.e.*, in two weeks).

In response, the BL/FG Defendants explained their understanding of the scope of Eddystone's motion and the June 28 Order. On October 3, after further communications, the BL/FG Defendants informed Eddystone that they intend to review the documents on the list attached to Eddystone's September 27 letter and produce any such communications from outside the Relevant Periods that fall within the categories enumerated in the Court's June 28 Order. (Dkt. 335, Ex. E.) The BL/FG Defendants further stated that they aim to produce such documents, if any, by October 18. (*Id.*) Accordingly, the BL/FG Defendants do not understand why Eddystone opted to engage the Court on this issue at this point in time.

## III.    Privilege Log

Finally, Eddystone complains that the BL/FG Defendants have not agreed to "produce an amended privilege log that would identify the basis for concluding that the withheld documents are outside of the Court's June 28 Order." The June 28 Order does not require the BL/FG Defendants to supplement their privilege log.

Nevertheless, the BL/FG Defendants informed Eddystone on Monday that "[w]e are assessing our ability to update our privilege log as you request, as well as the corresponding burden," and we offered to follow up later this week. (Dkt. 335, Ex. F.) As a practical matter, Eddystone has asked the BL/FG Defendants to disclose the substance of privileged communications that are not subject to the June 28 Order, which is a difficult task to accomplish while at the same time respecting the protections afforded by the attorney-client privilege (as to documents that do not fall within the scope of the crime-fraud exception). Moreover, as explained above, Eddystone seeks to expand the Relevant Periods to encompass eight additional months of privilege log entries. Because there are few, if any, documents that fall within the scope of the June 28 Order from outside the Relevant Periods, Eddystone's demand that the BL/FG Defendants update their privilege log during the expanded period is significantly burdensome and seemingly unnecessary.

Beyond those practical issues, the BL/FG Defendants have worked hard to comply with the June 28 Order since their appeal concluded on September 27. The BL/FG Defendants produced responsive documents from the *in camera* review sample on October 3, produced the remainder of the responsive documents from the Relevant Periods on October 8, and agreed to review and produce any additional responsive documents on Eddystone's list (from outside the Relevant Periods) by October 18. In light of these good faith efforts, which belie Eddystone's allegations of "recalcitrance," there is no need for the BL/FG Defendants to at the same time

The Honorable Robert F. Kelly
October 9, 2019
Page 6



undertake the makework exercise of updating hundreds or thousands of privilege log entries, nor is there a need for the Court to intervene on Eddystone's behalf.

As always, we welcome any questions from the Court and are available at the Court's convenience to discuss any of the foregoing issues.

Sincerely,

Lawrence G. Scarborough

cc:      All Counsel of Record