Filiberto Agusti
202 429 6428 direct
202 261 7512 fax
fagusti@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com



October 11, 2019

The Honorable Robert F. Kelly
U.S. District Court for the Eastern District of Pennsylvania
601 Market Street, Room 11613
Philadelphia, PA 19106

> Re:   No. 17-cv-495
>       *Eddystone Rail Co. LLC v. Bridger Logistics, LLC et al.*

Dear Judge Kelly,

While we are reluctant to write further on the production dispute, we feel that it is appropriate to respond to certain statements made in the BL/FG Defendants' letter dated October 9, 2019.

*First*, the BL/FG Defendants admit that 157 of the *in camera* document families have not been produced to Eddystone. (Oct. 9 Letter at 3.) They say, "We do not understand the June 28 Order to require the disclosure of every document in the sample . . . ." (Oct. 9 Letter at 1.) As this Court explained, however, the *in camera* sampling was "judicially crafted after thoroughly understanding the issues in this action and the arguments made by the parties." Sept. 19 Response by the Hon. Robert F. Kelly, at 2. *See also* Doc. 332 at 3 & n.2, 7.

Moreover, the "re" lines from the 157 withheld communications indicate that they are highly responsive to the Court's June 28 Order. Our October 8 letter contained a chart showing the "re" lines of the withheld *in camera* communications. (Doc. 335 at 2.) We produce below a revised chart to show the additional documents that the BL/FG Defendants produced in response to our letter (third column) and the many relevant communications still being withheld from us (fourth column).

| Subject Line | # of withheld docs from initial production | Defendant say produced on Oct. 8 | # of docs still being withheld |
|---|---|---|---|
| Eddystone Restructuring | 18 | 18 | 0 |
| Revised Bridger Contract | 13 | 0 | 13 |
| BTS | 11 | 0 | 11 |

| | | | |
|---|---|---|---|
| Jamex-Bridger –Revised Draft PSA | 7 | 2 | 5 |
| Bridger/Jamex/Monroe Documents | 2 | 2 | 0 |
| January Bakken Buy/Sell | 18 | 0 | 18 |
| ERC Amendment | 16 | 0 | 16 |
| Rail Logistics Agreement | 14 | 1 | 13 |
| Bridger Rail Loading Agreement (Sept 2015) | 16 | 0 | 16 |
| Amendment to COS and TLA | 1 | 0 | 1 |
| Debt Matters & BTS Subsidiary Sale | 16 | 12 | 4 |
| Contracts that need to be signed before Jan | 39 | 0 | 39 |
| BTS Banking Information | 8 | 0 | 8 |
| BTS Sale and Credit Arrangement Considerations | 2 | 0 | 2 |

As this revised chart shows, the BL/FG Defendants are still withholding communications relating to the restructuring and sale of BTS. In fact, some of the re lines specifically mention the BTS sale. Others appear highly relevant to the fraudulent scheme. For example, five of the withheld communications contain the re line "Revised Draft PSA." This PSA is the same agreement to which ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Another example is the sixteen withheld communications containing the re line "ERC Amendment." "ERC," of course, is "Eddystone Rail Company"—the creditor the Defendants were trying to evade. Since Eddystone was not involved in and did not receive notice of these negotiations, and there was no amendment of the contract with ERC proposed in January 2016, these communications relate to the restructuring of BTS to evade the contractual commitments to ERC/Eddystone by amending the agreements with Monroe and between Bridger entities and Jamex. In order to suspend deliveries to Eddystone, the BL/FG Defendants would need to amend or terminate the Eddystone agreement, or sell BTS to Jamex. It is therefore highly likely that any documents referencing the "ERC Amendment" during this period are responsive to the Court's June 28 Order. BL/FG Defendants should be ordered to produce all of the *in camera* documents forthwith.

*Second*, the BL/FG Defendants appear to be using their new "Relevant Periods" concept to conceal additional relevant documents. *See* Oct. 9 Letter at 3. The term "Relevant Periods" does not appear in the Court's June 28 Order, or in the underlying briefing. In fact, Eddystone's motion specifically sought to "compel full disclosure of *any* withheld documents relating to the

restructuring of BTS, the transferring or redirecting of its assets or revenue streams, the sale of BTS to Jamex, and the cessation of the Monroe shipping arrangement." Doc. 217 at 33 (emphasis added). Similarly, Eddystone's proposed order said that Defendant should produce "*all* documents" currently being withheld that relate to these subject areas." Doc. 217-2 (emphasis added).

The BL/FG Defendants protest that "there are few, if any documents that might fall within the scope of the June 28 Order from outside the Relevant Periods." (Oct. 9 Letter at 5.) But this contention is refuted by their own privilege log entries. Take just August 2015 as an example—one of the several months outside of what they describe as the "Relevant Periods." The privilege log entries show communications regarding "Eddystone Recap," "Eddystone Amendment," "Eddystone," "Eddystone—Vinson & Elkins," "Bridger-Jamex Sale," and "Bridger LLC Restructuring Steps Memo." *See, e.g.*, PRV 32543, PRV 33035, PRV 33062, PRV 33087, PRV 33088, PRV 32452. These communications are clearly responsive but, according to our records, are being withheld based on their "Relevant Time Period" exclusion. In fact, our September 27 letter identified by privilege log entry number about 700 apparently responsive communications that are outside of the "Relevant Periods," so the Defendants' suggestion that there may not be any relevant documents outside the "Relevant Periods" is most odd. *See* Ex. A hereto (listing communications that are outside of the "Relevant Periods" and that appear based on the re lines to fall within the Court's Order).

The BL/FG Defendants attempt to justify these unsubstantiated limitations by citing to snippets from the crime-fraud briefing where the parties referred to dates as part of telling the chronological story. (Oct. 9 Letter, at 3-4.) They assert that "the crime-fraud exception does not apply to privileged communications exchanged after an alleged fraud." (Oct. 9 Letter, at 4.) Here, however, the fraud was ongoing through early 2016. (Doc. 332 at 7.) With the assistance of counsel, Defendants transferred many millions of dollars of BTS assets in order to defraud BTS's only creditor—Eddystone—and then sold the corporate shell of the subsidiary to a third party for $10 to distance themselves from their own misconduct. It is too late at this stage for the BL/FG Defendants to seek to impose a temporal limitation. After affording the parties a full opportunity to present their arguments and to the Third Circuit, this Court's June 28 Order should be honored, and that order does not contain a temporal limitation.

*Third*, the BL/FG Defendants represent that they have produced to Eddystone all of the responsive communications *within* what they describe as the "Relevant Periods." However, the privilege log shows some 300 potentially responsive communications in the "Relevant Periods" that are still being withheld from Eddystone. *See* Ex. B (attached hereto). For example, the privilege log lists the "re" lines of these communications as "Org Chart," "Bridger Org Chart," "Bridger Entities," "Bridger Restructuring," "Updated Org Chart," "Bridger Logistics Legal Entities – Accounting 2.pptx," "Updated Org Chart/FGP," "Amendment to COSA and TLA," "Bridger/Monroe/Jamex: Letter Agreements," and "Real Estate" (Privilege Description: "Confidential email communication providing legal advice regarding Bridger Transfer Services asset transfer"), among others. *See, e.g.,* PRV 21397, PRV 23921, PRV 28182, PRV 28747, PRV 30936, PRV 39765, PRV 40288, PRV 40358, PRV 41913, PRV 44057. Our records indicate that the BL/FG Defendants have not produced the documents relating to these privilege log entries.

*Finally*, the BL/FG Defendants are unwilling to provide sufficient detail of the withheld communications, referring to Eddystone's request for an adequate privilege log as "significantly burdensome and seemingly unnecessary" on account of Defendants' purported "good faith effort" to comply with the June 28 Order. (Doc. 336 at 5.) Of course, we are before this Court for the very reason that we have encountered significant problems obtaining the documents under the June 28 Order. Moreover, it remains impossible to verify this "good faith effort" without a sufficiently detailed privilege log against which to measure their assurances. Eddystone highlighted BL/FG Defendants' intransigence a year ago in the motion to compel, asserting that the "Court should treat Ferrellgas's failure to properly support its claims of privilege as a waiver." Doc. 217 at 28. The BL/FG Defendants have supplemented their log entries but only those in the so-called "Relevant Period" and the period September 1, 2014 through April 30, 2015. Eddystone demanded supplementation of all other log entries but the BL/FG Defendants refused. These remaining entries remain woefully insufficient, particularly for the period August 2015 through November 2015.[1]

Under these circumstances, the Court should find that the BL/FG Defendants have waived their right to claim privilege over any logged documents from April 1, 2015 to May 31, 2016. *See Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n.*, 914 F. Supp. 1172, 1179 (E.D. Pa. 1996) ("failure to assert a privilege properly may amount to waiver of that privilege."); *McGrath v. Cosco, Inc.*, No. 98–CV–1502, 1999 WL 269920, at *2 (E.D. Pa Apr. 21, 1999) (finding a waiver of privilege where Defendant has not "described the nature of the withheld information, and thus has precluded the Court from assessing the validity of the claim").

Respectfully submitted,

/s   Filiberto Agusti

cc: Henry E. Hockeimer, Jr.,
    Counsel for Defendants

---

[1] *See, e.g.*, PRV 32424-25, 32755-56, 32792-93 (no subject line and conclusory statement that the communications are confidential and discuss legal advice); *see also* PRV 32270-90, 32315, 32317, 32335, 32347-51, 62, 32379 (conclusory statement that the communications are confidential and discuss legal advice).