**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC, ) <br> ) <br> Plaintiff/Counter-Defendant, ) <br> ) <br> v. ) <br> ) <br> BRIDGER LOGISTICS, LLC, JULIO RIOS, ) <br> JEREMY GAMBOA, FERRELLGAS ) <br> PARTNERS, L.P., and FERRELLGAS L.P. *et al.* ) <br> ) <br> Defendants. ) <br> ) <br> BRIDGER LOGISTICS, LLC, FERRELLGAS ) <br> PARTNERS, L.P., and FERRELLGAS, L.P. ) <br> ) <br> Defendants/Counterclaimants ) <br> _____ ) | No. 17-cv-00495-RK |

**EDDYSTONE RAIL COMPANY'S
OPPOSITION TO MOTION TO DISMISS FOR LACK OF JURISDICTION**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1
BACKGROUND ................................................................................................................. 2
ARGUMENT ....................................................................................................................... 4
    I.      This Court has subject-matter jurisdiction over Eddystone's fiduciary duty claims. ................................................................................................................. 4
    II.     This Court's prior holding that Eddystone's fiduciary duty claims are valid is the law of the case. .......................................................................................... 8
    III.    Rios and Gamboa's argument fails even on its own terms. ............................... 9
CONCLUSION .................................................................................................................. 14

**INTRODUCTION**

Defendants Julio Rios and Jeremy Gamboa move to dismiss this case—now nearly three years old—for lack of federal subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Dkt. No. 343.  They argue that, as a matter of state law, plaintiff's breach of fiduciary claims should be brought in the form of a derivative lawsuit on behalf of the defunct entity Bridger Transfer Services, LLC (BTS), rather than as a direct action in Eddystone's own name.  *See* Dkt. 343-1.  This motion to dismiss—which attempts to relitigate long-settled matters—fails for at least three independently sufficient reasons.

*First*, the motion simply does not implicate the federal subject-matter jurisdiction.  It says that plaintiff Eddystone lacks Article III standing because it has not "sufficiently allege[d] an 'injury in fact.'"  Dkt. 343-1 at 7.  But Eddystone has squarely alleged that it lost many millions of dollars as a result of its dealings with BTS.  That is indisputably an Article III injury in fact.  The motion's argument concerns only the question whether, as a matter of state law, the proper procedure for seeking redress of that injury is a direct action or a derivative one.  Such questions of state-law procedure have nothing to do with "standing" in the sense relevant to the subject-matter jurisdiction of the federal courts (i.e., Article III standing).

*Second*, this Court has already rejected Rios and Gamboa's challenge to Eddystone's fiduciary duty claims on the merits, holding that "the Complaint clearly and adequately alleges claims against each Defendant for … Breach of Fiduciary Duties of Care and Loyalty to Creditors."  Dkt. No. 59 at 12.  Rios and Gamboa's are not entitled to yet another bite at the apple, and their attempt to relitigate the law of the case should be rejected.

*Third*, even if Rios and Gamboa's improper state-law argument were considered on its own terms, it would fail.  As this Court has found, when a corporate entity becomes insolvent, its

managers owe fiduciary duties not just to the entity but also—and separately—to its creditor, who is entitled to sue for any breach of those duties. This proposition is well established as a matter of Pennsylvania law, and Rios and Gamboa's argument to the contrary is based on citations to completely inapposite bankruptcy cases and cases governed by the laws of other states.

## BACKGROUND

This action charges defendants with a fraudulent scheme that stripped a subsidiary with significant assets in order to evade obligations to a substantial creditor, Eddystone. *See* FAC ¶¶ 8-11 (Dkt. 182). In 2013, Eddystone had entered into a maritime contract with Bridger Transfer Services, LLC ("BTS"), a logistics company. FAC ¶ 3. Pursuant to that contract, Eddystone built a $170 million dollar facility for transloading crude oil from railcars to barges on the Delaware River. *Id*. To induce Eddystone's investment in the facility, BTS guaranteed Eddystone that BTS would use the facility to transload a minimum volume of crude for five years. *Id.* But when the price of crude oil dropped, it became unprofitable for BTS to uphold its end of the bargain. FAC at ¶¶ 4, 7-8. In response, the parties that owned and controlled BTS—Ferrellgas, L.P., its subsidiary Bridger Logistics, and two former executives (Rios and Gamboa)—decided to evade Eddystone's claims against BTS's assets by transferring those assets to other Ferrellgas-owned entities. FAC ¶ 8. They stripped cash flows from BTS contracts and then transferred all of BTS's assets to other Ferrellgas subsidiaries—all for no consideration. FAC at ¶¶ 33-75. Finally, they sold the corporate shell of the BTS to a third, assetless company for $10 in order distance themselves from their own misconduct. FAC ¶ 8. Once judgment-proof, BTS defaulted on the contract with Eddystone. *Id.*

In February 2017, Eddystone filed this lawsuit against the owners and principals of BTS. Dkt. 1.  Defendants Rios and Gamboa are individuals who controlled BTS as its limited liability company managers.  FAC ¶ 46.  Eddystone alleged that Rios and Gamboa had breached fiduciary duties that they owed to Eddystone as a creditor of the insolvent BTS.  FAC ¶ 11. Specifically, they stripped BTS' assets and thereby prevented BTS from paying Eddystone money owed under the agreement.  FAC ¶¶ 100-03.

Since February 2017, the Court has expended substantial time, effort, and resources to move the case closer to trial.  As the Court explained, "[t]here has been extensive motion practice in this case since its inception."  Dkt. 308 at 5.  The Court has ruled on all pending motions and the litigation has progressed significantly, as evidenced by the 30-page docket sheet containing over 345 entries.  For example, the Court has already denied one Rule 12(b)(1) motion to dismiss for lack of jurisdiction (Dkt. 283), two Rule 12(b)(6) motions to dismiss for failure to state a cause of action (Dkts. 35-36, 275), and two Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction (Dkts. 275, 269).

The case proceeded into discovery over two years ago.  As the Court observed, the discovery in this case has been a "massive endeavor."  Dkt. 308 at 5.  Completion of discovery was delayed, however, pending resolution of Eddystone's motion invoking the crime-fraud exception to compel production of documents withheld on the basis of the attorney-client privilege.  Dkt. 217.  After extensive briefing and argument, as well as an *in camera* review of a sampling of the privileged documents, this Court granted Eddystone's motion to compel based on the crime-fraud exception to the attorney-client privilege.  *See* Dkts. 330, 332-33.  Defendants Ferrellgas and Bridger Logistics filed a mandamus petition in the Third Circuit, arguing that the

district court lacked subject matter jurisdiction and also erred in ordering the release of the privileged documents. The Third Circuit denied the mandamus petition on September 27, 2019.

Now—nearly three years into the litigation and after Eddystone has begun receiving documents showing their involvement in the fraudulent scheme—Defendants Rios and Gamboa file a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). Dkt. 343. Their theory is not new. In fact, they have already asked this Court to dismiss Eddystone's fiduciary duty claims against them on at least two prior occasions. *See* Dkt. 34-1 at 16; Dkt. 207. The Court rejected both of those motions. *See* Dkts. 59, 275. They now repeat their request for a third time. Dkt. 343-1. This latest motion differs from those earlier ones in that it is framed as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) rather than for failure to state a claim under Rule 12(b)(6). *See* Dkt. 343-1 at 5.

**ARGUMENT**

**I.  This Court has subject-matter jurisdiction over Eddystone's fiduciary duty claims.**

Rios and Gamboa assert just a single ground for dismissing the fiduciary duty claims: that this Court lacks federal subject-matter jurisdiction over the claims because Eddystone suffered no "injury in fact" as a result of the alleged breaches of fiduciary duty and therefore lacks standing under Article III of the U.S. Constitution. Dkt. 343-1 at 7. The argument is mistaken. Eddystone alleges that BTS owed it millions of dollars, which it became unable to pay as a result of Rios and Gamboa's breaches of their fiduciary duties. Losing millions of dollars is inarguably an injury in fact sufficient to confer Article III standing for a claim to remedy the loss. The Rios/Gamboa motion does not and cannot say otherwise. Rather, it focuses on assertions about the proper procedure for remedying that injury under Pennsylvania law. But those theories have nothing to do with "injury in fact" standing in the Article III sense; the

existence of federal subject-matter jurisdiction is a question of federal law, and it does not turn on the niceties of state procedure. On this basis alone, the new Rios/Gamboa Rule 12(b)(1) motion should be denied.

**A.** The parties agree on the following basic points. *See* Dkt. 343-1 at 7. First, Rule 12(b)(1) permits a defendant to seek dismissal of a claim on the ground that the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Second, one of the prerequisites to federal subject-matter jurisdiction is that the plaintiff have "Article III standing." *Department of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019). Third, to have Article III standing, the plaintiff must have suffered an "injury in fact"—that is, an injury to "a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Rios and Gamboa challenge the Court's subject-matter jurisdiction only on the ground that Eddystone has supposedly failed to allege that the breaches of fiduciary duty caused it any injury in fact. Dkt. 343-1 at 7. But Eddystone has clearly pleaded an injury in fact. It alleges that Eddystone and BTS were parties to a contract, and that BTS breached that contract and ended up owing Eddystone millions of dollars. *E.g.*, FAC ¶¶ 1, 3, 74-75. It alleges that Defendants improperly used their control of BTS to strip it of its resources, rendering it insolvent and unable to pay Eddystone. *E.g.*, FAC ¶¶ 8, 10, 55, 65-69. And it alleges that Rios and Gamboa breached their fiduciary duties to Eddystone as BTS' creditor when they did so. FAC ¶¶ 11, 99-103.

It goes without saying that, "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017);

*see also, e.g.*, *McGowan v. Maryland*, 366 U.S. 420, 430-31 (1961) (fine of $5 plus costs sufficient to confer standing). It follows a fortiori that Eddystone's enormous financial loss was an injury in fact for purposes of establishing federal subject-matter jurisdiction.

**B.** Rios and Gamboa do not directly dispute any of this. Instead, they argue that, as a matter of state law, the claim for breach of fiduciary duty properly belonged to BTS, and that Eddystone should have pursued it by means of a derivative action on behalf of BTS rather than a direct action in its own name. Dkt. 343-1 at 1-11.

This state-law argument has nothing to do with federal subject-matter jurisdiction. A derivative action is simply a procedure created by state law to enable persons injured by a breach of fiduciary duty (usually corporate shareholders) to seek a remedy for that injury. A shareholder brings a derivative action precisely because it *has* suffered an Article III injury in fact, in the form of the financial loss it incurred when the fiduciary breach caused the value of its shares to fall. *Felzen v. Andreas*, 134 F.3d 873, 876 (7th Cir. 1998) ("Standing means injury in fact, and a reduction in the market price of one's stock is injury."). The very premise of the action is that the plaintiff has been injured.

Rios and Gamboa themselves acknowledge that the question of whether an action should be brought directly or derivatively is a "purely procedural matter[]" governed by state law. Dkt. 343-1 at 8 n.4. And it is settled that the answer to the question of whether a suit should be brought directly or derivatively has nothing to do with whether the plaintiff has suffered an injury in fact—a question of federal constitutional law as to which state law is irrelevant. *See e.g.*, *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996) (explaining that the state-law question of whether a suit should be pursued derivatively or directly does not implicate Article III standing).

Indeed, if a creditor of an insolvent entity suffered no Article III injury in fact from the entity's failure to pay its debts to the creditor, then that creditor would lack Article III standing to seek a remedy for that failure in federal court *regardless* of the procedural form prescribed by state law. That plainly is not the case, as even Rios and Gamboa recognize—they say that the Court should dismiss the claims "[b]ecause [Eddystone] failed to bring [them] derivatively," not that the Court would lack jurisdiction even if Eddystone had pursued the claims derivatively. Dkt. 343-1 at 5.

**C.** Rios and Gamboa's confusion appears to result from the fact that courts often use the term "standing" when discussing whether the law confers a cause of action upon the plaintiff. *See, e.g.*, Dkt. 343-1 at 8 (describing a case as "holding that creditor lacked standing to bring a direct action"). That is one definition of "standing." But it is not standing *in the Article III sense*; it is a distinct sense of the term, connected to substantive law (here, state substantive law) rather than federal subject-matter jurisdiction. *See, e.g.*, *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-28 (2014) (explaining the distinction between Article III standing and the question whether a particular plaintiff has the right to sue under a particular law). It is well established that "the absence of a valid ... cause of action does not implicate subject-matter jurisdiction." *Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635, 642-43 (2002). Regardless of whether Eddystone has a cause of action to sue for breach of fiduciary duty in its own name, it assuredly has suffered an Article III injury in fact.

*   *   *

To sum up: BTS owes Eddystone millions of dollars under their contract. Rios and Gamboa's breaches of fiduciary duty—transferring away all of BTS' assets to evade Eddystone—have prevented Eddystone from collecting that money. Regardless of the

procedures prescribed by state law, there can be no doubt that federal law recognizes an injury in fact when a plaintiff loses millions of dollars. Eddystone therefore has Article III standing to invoke the subject-matter jurisdiction of the federal courts. That disposes of Rios and Gamboa's motion, which they filed under Rule 12(b)(1) and which is limited to challenging the Court's jurisdiction. *See* Fed. R. Civ. P. 12(b)(1) (authorizing motions to dismiss for "lack of subject-matter jurisdiction").

## II. This Court's prior holding that Eddystone's fiduciary duty claims are valid is the law of the case.

Moreover, this Court has already considered and rejected Rios and Gamboa's argument that Eddystone must pursue its fiduciary duty claims by means of a derivative action. That decision is the law of the case.

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The doctrine thus "directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." *Public Interest Research Group v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (internal quotation marks omitted). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Bosley v. The Chubb Inst.*, 516 F. Supp. 2d 479, 484 (E.D. Pa. 2007) (internal quotation marks omitted).

The law-of-the-case doctrine forecloses Rios and Gamboa's arguments. In their motion to dismiss Eddystone's Complaint, Rios and Gamboa incorporated by reference "the Bridger Defendants' Motion to Dismiss" with respect to "breach of fiduciary duties of care and loyalty." Dkt. 34-1 at 16. And the Bridger Defendants' motion argued that "the appropriate vehicle for an

8

LLC to recover from a fiduciary that allegedly breached its duties would be a <u>derivative</u> action." Dkt. 35-1 at 33.  But Eddystone explained that "Defendants owed duties directly to Eddystone as a creditor, not just to BTS," and so "Eddystone has valid direct fiduciary duty claims … under Pennsylvania law."  Dkt. 53 at 17 & n.12 (Eddystone's surreply); *see also* Dkt. 39 at 45-46 (Eddystone's opposition brief).  "After considering all of the arguments," this Court squarely rejected Defendants' position and agreed with Eddystone's, holding that "the Complaint clearly and adequately alleges claims against each Defendant for … Breach of Fiduciary Duties of Care and Loyalty to Creditors."  Dkt. 59 at 12.

Only "extraordinary circumstances . . . warrant reconsideration of an issue that was previously decided by the Court in an earlier stage of the litigation.  Those circumstances include 'situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.'"  *Bosley*, 516 F. Supp. 2d at 484 (quoting *Magnesium Elektron*, 123 F.3d at 117). Rios and Gamboa do not suggest that any of these extraordinary circumstances is present here. Their motion returns to matters already argued and decided.  The motion should be denied.

**III. Rios and Gamboa's argument fails even on its own terms.**

Though there is no need to address it further, Rios and Gamboa's state-law argument remains as meritless as ever.  Courts have allowed creditors of an insolvent corporation to bring a breach of fiduciary action on their own behalf because the creditor—not the corporation—is the beneficiary of the fiduciary duty.  As this Court explained recently, the managers "of an insolvent corporation owe fiduciary duties to the corporation's creditors."  *Impala Platinum Holdings Ltd. v. A-1 Specialized Services & Supplies, Inc.*, 2016 WL 8256412, at *7 (E.D. Pa. Sept. 16, 2016).  It is undisputed that the same rules apply in the LLC context, and that

9

Eddystone may pursue any claim that a creditor of a Pennsylvania corporation could pursue. *See* Dkt. 343-1 at 8 n.3, 9 n.5 (conceding these points). Eddystone was BTS' creditor and asserts its fiduciary duty claim based on breaches committed by Rios and Gamboa (in conjunction with other Defendants) when BTS was in the "zone of insolvency" or actually insolvent. FAC ¶¶ 100-03.

That means that Eddystone is entitled to seek relief against Rios and Gamboa as it seeks to do in this Court, without going through the state-law procedures for asserting a derivative claim. Numerous courts applying Pennsylvania law have reached the same conclusion: "Because [the creditor] sufficiently alleges that [the corporation] was insolvent at the time of [the managers'] alleged breaches, [the creditor] has standing for its breach of fiduciary duty claim." *Impala Platinum*, 2016 WL 8256412, at *7; *see also, e.g.*, *id.* ("Impala has standing to bring claims for breach of fiduciary duty against the directors and officers of A-1 because Impala is bringing [the] claims based on duties it was owed as a creditor of an insolvent corporation."); *Donaldson v. Bernstein*, 104 F.3d 547, 554 n.2 (3d Cir. 1997) (acknowledging the finding of the court below that "under Pennsylvania law, creditors of an insolvent corporation have standing to sue the directors"); *Travelers Casualty & Surety Co. v. Irex Corp.*, 2002 WL 32351176, at *4 (E.D. Pa. May 31, 2002) (denying dismissal of creditor's fiduciary duty claim against entity that controlled insolvent corporation).

These decisions make good sense, because "Pennsylvania common law imposes a fiduciary duty upon corporate officers *in favor of creditors, as well as to the corporation*, when the corporation is insolvent." *Vital Pharmaceuticals v. USA Sports, LLC*, 2012 WL 760561, at *9 (M.D. Pa. Mar. 8, 2012) (emphasis added); *see also, e.g.*, *Hipple v. Hipple*, 2016 WL 320216, at *12 (E.D. Pa. Jan. 27, 2016) ("Under Pennsylvania law, corporate officers and directors have a

fiduciary duty to creditors when a corporation … is insolvent."). Eddystone is pursuing relief for substantial harm to its own financial interests, and Pennsylvania law entitles Eddystone to do so directly.

Not surprisingly, the Third Circuit and the federal district courts in Pennsylvania have allowed creditors to sue corporate officers directly for breach of fiduciary duties when the corporation is in the zone of insolvency or actually insolvent. *See Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 217 & n.25 (3d Cir. 1990) (permitting creditor's suit that claimed corporate officers breached a fiduciary duty owed to the creditors when they participated in the fraudulent conveyance of the company's assets for less than full consideration) (applying Pennsylvania law);[1] *ASD Specialty HealthCare Inc. v. New Life Home Care Inc.,* No. 3:11-CV-068, 2011 WL 5984024, at *5 (M.D. Pa. Nov. 29, 2011) (denying the corporate director's motion to dismiss the breach of fiduciary duty claim because "ASD alleges in its complaint that New Life was insolvent and that ASD was its creditor" and because directors of a corporation owe a fiduciary duty to corporate creditors) (applying Pennsylvania law); *Engle v. Matrix Golf & Hospitality Philadelphia, LLC*, No. 08-5831, 2009 WL 880680, at *6 (E.D. Pa. 2009) ("[t]he Complaint alleges that the [managers] acted to transfer property and assets from Matrix Philadelphia with the intent to leave the entity without sufficient funds to make payment on Engle's loans. For all intents and purposes, [the creditor] is alleging that the transfers left Matrix Philadelphia insolvent. This is enough at this stage of the proceedings to allow [the creditor] to proceed with the claim. The Motion to Dismiss is, therefore, denied") (applying New Jersey law).

---

[1] In *Voest-Alpine*, the defendant corporation filed a Chapter 11 bankruptcy petition while the case was pending before the district court but the bankruptcy court granted relief from the stay provisions, thus allowing the district court action to proceed to a bench trial. *See* 919 F.2d at 208.

Requiring that Eddystone make its claim through state-law derivative action procedures would be an especially pointless exercise in this case, because Eddystone is BTS' only creditor and thus the only entity harmed by Rios and Gamboa's fiduciary breaches. *See* Decl. of Andrew Sloniewsky at ¶ 6 (attached hereto as Exhibit A). Where the sole creditor of an insolvent company files suit against its managers for breach of fiduciary duty, nothing is to be gained by placing control of that suit in the hands of the company. There are no other creditors to share the recovery. And where only one creditor of an insolvent company files suit against its managers, there is no risk that the officers will be subjected to multiple lawsuits imposing conflicting obligations—the rationale for the derivative procedure. Accordingly, there is no justification under such circumstances for insisting on the burdensome procedures (such as the "demand" requirement) established by state law for derivative actions, which were crafted in part to protect public corporations from "strike suits" brought by one or a few of their many shareholders. The Court indubitably has authority here to reject Defendants' latest attempt to further delay the resolution of this action. *See also, e.g.*, *Impala Platinum*, 2016 WL 8256412, at *7; *Vital Pharmaceuticals*, 2012 WL 760561, at *9; *Donaldson*, 104 F.3d at 554 n.2; *Travelers*, 2002 WL 32351176, at *4.

Rios and Gamboa rely heavily on *Artesanias Hacienda* (Dkt. 343-1 at 5, 7-8, 11), but that decision has absolutely nothing to do with whether a creditor must bring a fiduciary duty claim derivatively and does not even address that question. 2019 WL 3731546 (E.D. Pa. 2019) (appeal pending). Instead, in *Artesanias Hacienda,* a bankruptcy case, the court addressed the distinct issue whether an individual creditor or the bankruptcy trustee—acting on behalf of all unsecured creditors—had *standing in bankruptcy* to bring the fiduciary duty claim. In a factual context where there were many creditor beneficiaries of the claim, the Court ruled that the trustee had

standing and the individual creditor did not under Bankruptcy Code § 544(b). *Artesanias* simply has nothing to do with whether, outside of bankruptcy, a fiduciary duty claim must be brought derivatively. And even if *Artesanias* were somehow applicable, BTS has just a single unpaid unsecured creditor rather than the many in *Artesanias*. *See* 2019 WL 3731546, at *5 ("the damages AHR seeks would belong to the estate, and therefore increase the pool of assets available to satisfy the outstanding liabilities owed to all creditors"). Finally, the very language that Rios and Gamboa quote as supposedly setting forth "well-settled Pennsylvania law" (*see* Dkt. 343-1 at 5) actually was drawn from another *bankruptcy* decision that "look[ed] to *Delaware* law" and is thus doubly inapposite in this action under Pennsylvania law (*Artesanias Hacienda*, 2019 WL 3731546, at *11 (emphasis added)). *See also* Dkt. 343-1 at 9-10 (further relying on Delaware law, despite this Court's clear holding Pennsylvania law governs (Dkt. 275 at 2 n.2)).[2]

Rios and Gamboa's other citations are also inapposite. They concern the rights of the shareholders of a corporation (or, analogously, the members of an LLC), not the rights of creditors of insolvent entities. *See, e.g.*, Dkt. 343-1 at 8-9. *Impala Platinum* addressed this very point, explaining that "[t]he cases cited by Defendants do not persuade the Court" because "[t]hose cases stand for the general proposition that shareholders of corporations bring derivative claims" and "do not provide a bar against claims of breach of fiduciary duty brought by creditors of insolvent corporations." 2016 WL 8256412, at *7.

---

[2] It is true that, under *Delaware* law, the creditor of an insolvent entity generally should pursue fiduciary duty claims derivatively. *See, e.g.*, *N.A. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101-03 (Del. 2007). But this case is governed by *Pennsylvania* law (Dkt. 275 at 2 n.2). As the cases cited above make clear, Pennsylvania does not follow Delaware on this point.

13

## CONCLUSION

The motion to dismiss should be denied.

Dated:  November 8, 2019                    Respectfully submitted,


                                /s/ Filiberto Agusti
                                Henry E. Hockeimer, Jr. (I.D. No. 86768)
                                BALLARD SPAHR LLP
                                1735 Market Street, 51st Floor
                                Philadelphia, PA 19103-7599
                                Telephone: (215) 665-8500
                                Facsimile: (215) 864-8999
                                hockeimerh@ballardspahr.com
                                grugant@ballardspahr.com

                                Filiberto Agusti (*pro hac vice*)
                                Steven Barber (pro hac vice)
                                Andrew J. Sloniewsky (*pro hac vice*)
                                STEPTOE & JOHNSON LLP
                                1330 Connecticut Avenue, NW
                                Washington, DC 20036
                                Telephone: (202) 429-3000
                                Facsimile: (202) 429-3902
                                fagusti@steptoe.com


                                *Counsel for Eddystone Rail Company, LLC*


## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via the Court's ECF system on November 8, 2019, thereby serving all counsel of record.

                                /s/ Filiberto Agusti
                                Filiberto Agusti