**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| v. | § | No. 2:17-cv-00495-RK |
| | § | |
| | § | |
| JULIO RIOS, JEREMY GAMBOA, | § | |
| BRIDGER LOGISTICS, LLC, | § | |
| FERRELLGAS PARTNERS, L.P., | § | |
| FERRELLGAS, L.P., BRIDGER RAIL | § | |
| SHIPPING, LLC, BRIDGER REAL | § | |
| PROPERTY, LLC, BRIDGER STORAGE, | § | |
| LLC, BRIDGER SWAN RANCH, LLC, | § | |
| BRIDGER TERMINALS, LLC, | § | |
| BRIDGER TRANSPORTATION, LLC, | § | |
| J. J. ADDISON PARTNERS, LLC, J.J. | § | |
| LIBERTY, LLC, BRIDGER | § | |
| ADMINISTRATIVE SERVICES II, LLC, | § | |
| BRIDGER ENERGY, LLC, BRIDGER | § | |
| LAKE, LLC, BRIDGER LEASING, LLC, | § | |
| and BRIDGER MARINE, LLC, | § | |
| | § | |
| Defendants | § | |
| | § | |
| BRIDGER LOGISTICS, LLC, | § | |
| FERRELLGAS PARTNERS, L.P., and | § | |
| FERRELLGAS, L.P., | § | |
| | § | |
| Defendants/Counterclaimants. | § | |
| | § | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS
JULIO RIOS AND JEREMY GAMBOA'S MOTION TO DISMISS
PURSUANT TO RULE 12(B)(1) FOR LACK OF STANDING**

Eddystone's Response consists primarily of irrelevant assertions.  First, Eddystone asserts that as officers of Bridger Logistics, Defendants Julio Rios and Jeremy Gamboa (together, "Rios and Gamboa" or, the "Individual Defendants") owed a fiduciary duty to creditors of BTS.[1]  And second, Eddystone asserts that the Individual Defendants breached those duties—and injured Eddystone—by transferring assets away from BTS in a manner that "prevented Eddystone from collecting money" BTS owed Eddystone.[2]  But the central question underlying the Individual Defendants' Motion to Dismiss is not whether Rios and Gamboa owed a duty to creditors[3] or whether Eddystone has alleged an injury: it is whether Eddystone "has suffered an injury that is distinct from injuries that may have been suffered by the entire creditor body."[4]  And—on this score—Eddystone's claims are fatally flawed.

In its Amended Complaint, Eddystone pleads allegations of *general, corporate harm* "to BTS' creditors"—specifically, that Rios and Gamboa caused BTS to transfer assets that could have been used to satisfy debts owed to all "[BTS] creditors, including Eddystone."[5]  But to establish "standing to bring a direct claim against a director . . . it is not enough to establish that a recovery will yield a benefit to the [plaintiff] creditor."[6]  Instead, "a direct claim [for breach of fiduciary duty by a creditor] requires proof that the creditor's injury is unique and unrelated to any damage sustained by . . . other creditors."[7]  Because Eddystone has not—and cannot—plead that it suffered an injury

---

[1]  Opp. at 9.

[2]  *Id.* at 7.

[3]  For purposes of this Motion, Rios and Gamboa assume, *arguendo*, they owed a fiduciary duty to BTS despite being neither officers nor managers of BTS.  (*See* Mot. to Dismiss (Dkt. No. 343-1) at 1 n.1.)

[4]  *Artesanias Hacienda Real S.A. de C.V. v. N. Mill Capital LLC*, No. CV 18-5553, 2019 WL 3731546, at *10 (E.D. Pa. Aug. 8, 2019) (emphasis in original).

[5]  Am. Compl., ¶ 100.

[6]  *Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, No. CV 16-1343, 2016 WL 8256412, at *6 (E.D. Pa. Sept. 16, 2016).

[7]  *Id.*

"independent of any injury" suffered by creditors as a whole, it has no standing to assert the direct claim that it has.

To avoid this outcome, Eddystone claims in its Response—contrary to its pleadings—that it was BTS's only creditor at the time of the alleged breach.  But Eddystone cannot save the fatal defects in its pleaded claims by making contravening (and factually inaccurate) claims in a response brief. Moreover, Eddystone's claim that BTS had no other creditors at the time of the breach—even if true—is irrelevant.  As Eddystone's own live complaint repeatedly acknowledges, it is undisputed that BTS has other creditors *today*, with an equal claim on any assets "returned" to the insolvent entity. By asserting a direct claim, Eddystone is attempting to "commandeer [any recovery] for the exclusive benefit of [itself]"—an act Pennsylvania law specifically forbids.[8]

Nor does Eddystone's law of the case argument offer salvation.  Rios and Gamboa have not previously challenged Eddystone's standing to assert its breach of fiduciary claims.  And, in any event, the law of the case doctrine does not apply to questions of standing.

This Court should thus grant Rios and Gamboa's Motion and dismiss Eddystone's breach of fiduciary duty claims against the Individual Defendants.

## I.    ARGUMENT

### A.    Standing to Assert a Direct Claim Against a Director Exists "Only if" the "Creditor Injury is Unique and Unrelated to Damages Sustained . . . by Other Creditors"

Eddystone concedes Article III standing is a constitutional prerequisite to suit and that Article III requires it to allege an "injury in fact."[9]  And Eddystone concedes Article III's "injury in fact" is a special type of injury, one that "is both (a) concrete and *particularized*, and (b) actual or imminent,

---

[8]    *In re Bane,* 426 B.R. 152, 158 (Bankr. W.D. Pa. 2010).

[9]    *See* Opp. at 5 (citing *Department of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

not conjectural or hypothetical."[10]  "For an injury to be 'particularized,' it 'must affect the plaintiff in

a personal and individual way.'"[11]

This injury requirement has special force in the context of fiduciary duty claims brought by

creditors.  Under Pennsylvania law, corporate directors owe fiduciary duties to the corporation and its

shareholders.[12]  When the corporation is insolvent, the directors also owe fiduciary duties to the

corporation's creditors.[13]  In the event of a breach of these fiduciary duties, the right to enforce is

directed by statute.  And pursuant to Section 1717 of the Pennsylvania Business Corporation Law, "a

shareholder, creditor, *or any other person or group* is prohibited from bringing a direct action

against the directors for a breach of their fiduciary duties."[14]

"In this framework, *standing* to bring a direct claim against a director exists only if the

[creditor] sustained a personal injury which is independent of any injury suffered by the corporation."[15]

In contrast, a creditor must bring an action derivatively if the creditor "seeks to recover assets for the

corporation or to prevent dissipation of its assets."[16]  In short, "it is not enough to [plead] that a

recovery will yield a benefit to the creditor; rather, a direct claim requires proof that the creditor's

---

[10]   *See* Opp. at 5 (citing *Lujan*, 504 U.S. at 560) (emphasis added).

[11]   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (internal citations omitted) (cited by Eddystone, Opp. at 5).

[12]   15 Pa.C.S.A. §§ 512(a).

[13]   *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

[14]   *In re Bruno*, 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016) (emphasis added).

[15]   *Impala,* 2016 WL 8256412, at *6 (emphasis added).  In its Response, Eddystone seems to suggest that *Impala* supports its arguments.  It does not.  To the contrary, Impala's holding directly contradicts Eddystone's arguments.  There - unlike here - Impala pleaded a direct and particularized injury that was unique to it as a creditor.  Specifically, Impala alleged that Defendants' breach of fiduciary duty rendered A-1 (the debtor) unable to satisfy an arbitral judgment of over $200 million Impala previously obtained against it.  In short, Impala's pleadings demonstrated that its "injury [was] unique and unrelated to any damage sustained by the corporation or other creditors," and the Court properly allowed Impala to bring a direct action.  *Id.* at *6.  These pleaded facts exist in sharp contrast to Eddystone's claims, which seek "to recover assets for the corporation or to prevent dissipation of assets," which is precisely the type of claim the *Impala* Court held must to be brought derivatively.  *Id.* ("The action is derivative if the gravamen of the complaint is . . . to recover asserts for the corporation or to prevent dissipation of its assets[.]").

[16]   *Id.*

injury is unique and unrelated to any damage sustained by . . . other creditors."[17]  The "mere fact that a successful outcome may increase the amount available for distribution to creditors does not transform a claim that otherwise belongs to the corporation into one that can be separately maintained by each creditor."[18]

Thus, "*to overcome a standing challenge*, [a] creditor must demonstrate that it has suffered an injury that is *distinct from injuries that may have been suffered by the entire creditor body* [of the debtor] after it became insolvent, [and] that its injuries are *distinct from an injury to [the debtor's] corporate assets*."[19]  Courts require this because, "after a corporation becomes insolvent, all a creditor really does is to step into the shoes of such corporation's shareholders (whose shares are then worthless) regarding rights respecting the value of such corporation."[20]  This conclusion makes perfect sense; as one court in this Circuit aptly noted, it would be "frankly preposterous" if "a creditor of an insolvent corporation would have greater rights than would a shareholder of the same corporation when such corporation was solvent."[21]

And there is good reason for this rule.[22]  Where an injury is to the corporation and its creditors, the recovery "must remain available for [the company] and its entire creditor constituency."[23]  Payment of the entire recovery to a single creditor or corporate stakeholder would deny remaining creditors

---

[17]   *Id.*

[18]   *Artesania*s, 2019 WL 3731546, at *10; *see also Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997) (recognizing the "unremarkable rule" that a creditor steps into the shoes of a shareholder upon insolvency but holding that claims asserted must be brought by a trustee on behalf of all creditors seeking relief from harm to debtor).

[19]   *Artesanias,* 2019 WL 3731546, at *10 (emphasis in original).

[20]   *In re Bane,* 426 B.R. 152, 158 (Bankr. W.D. Pa. 2010).

[21]   *Id.*

[22]   In its Response, Eddystone argues that the holdings in *Artensanias* and *Bruno* are inapplicable here because they involved bankruptcy proceedings.  But Eddystone offers no explanation—let alone any legal authority—as to why a standing analysis in a bankruptcy proceeding is any different than a standing analysis in a district court.  Indeed, *Impala*, a non-bankruptcy case, applied the same Pennsylvania case law standing analysis as *Artensanias* and *Bruno*.

[23]   *Id.*

and stakeholders their own right to claim a share of such proceeds.  In this way, the requirement that such claims be brought derivatively ensures that a recovery cannot be "commandeered for the exclusive benefit of only the most vociferous creditor."[24]  Instead, recovered sums obtained via a derivative action would be paid back into the company and distributed to all creditors and stakeholders in a legal, fair, and equal fashion.

## B.    Eddystone Does Not Allege a "Unique and Distinct" Injury

Eddystone does not allege that it suffered an injury "distinct from injuries that may have been suffered by the entire creditor body" of BTS.[25]  To the contrary, Eddystone alleges that it was merely *one* of the creditors who was injured (along with the rest of BTS's creditors) when Rios and Gamboa's alleged breach of their fiduciary "duties to creditors" left BTS "unable to pay its creditors." Specifically, Eddystone alleges that:

- Rios and Gamboa owed fiduciary duties "to BTS' creditors, including Eddystone."[26]

- Rios and Gamboa breached these "duties to BTS creditors"[27] by failing to "manage BTS in a manner calculated to maximize creditors' recovery."[28]

- Specifically, Rios and Gamboa "improperly caus[ed] BTS to transfer its assets," leaving BTS "unable to pay its creditors," generally.[29]

- These alleged asset transfers "harmed BTS' creditors" by "driving BTS into insolvency."[30]

---

[24]   *Id.*

[25]   *Artesanias*, 2019 WL 3731546, at *10.

[26]   Am. Compl. ¶ 100 ("From the time BTS was in the zone of insolvency, [Rios and Gamboa] owed fiduciary duties of care and loyalty *to BTS' creditors, including Eddystone*.") (emphasis added).

[27]   *Id.* ¶¶ 11, 101.

[28]   *Id.* ¶ 11 ("[An insolvent] company must be managed so as to maximize return to *creditors*."); ¶ 100 ("In the zone of insolvency, BTS' controlling persons owed *creditors* a duty to manage BTS in a manner calculated to maximize *creditors* recovery or BTS' debt to *creditors*.") (emphasis added).

[29]   Am. Compl. ¶ 11 ("By using their management and controlling powers over BTS to render BTS unable to pay its *creditors* Defendants violated their fiduciary duties of care. . . .") (emphasis added).

[30]   Am. Compl. ¶ 101.

Importantly, Eddystone does not allege that its injury is "unique and unrelated to any damage sustained by . . . other creditors." Nor could it since its claim is predicated on an alleged duty owed to *all* "BTS creditors" and an alleged injury—that BTS was left "unable to pay its creditors"—also shared by *all* BTS creditors.

Under well-settled Pennsylvania law, this reality is fatal to Eddystone's claims.[31] *In re Bruno*[32] is instructive in this respect. There, like here, a creditor brought a claim against the director of an allegedly insolvent company for causing that insolvency.[33] And there, like here, the Court was tasked with determining "who holds the right to pursue" that claim—the creditor individually, or the company, derivatively.[34] Finding that, as here, the creditor had failed to allege "an injury unique and unrelated to any damages sustained by . . . other creditors," the Court concluded that the claim "belongs to the corporation" and could not be "separately maintained by each creditor."[35] The Court reasoned:

> To the extent the directors may have caused an insolvent Certified [the company] to incur excessive debt and fraudulently induced suppliers to continue extending credit, *the injury belongs to Certified*. Certified is the entity that was damaged if the debt on its balance sheet was artificially inflated beyond any reasonable parameters. And it

---

[31] *In re Bruno*, 553 B.R. at 286; *Artesania*s, 2019 WL 3731546, at *10; *Impala,* 2016 WL 8256412, at *6; *see also Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970) (where "the alleged injury to the shareholder is the indirect harm which consists in the diminution of value of his corporate shares resulting from the impairment of corporate assets[,] . . . it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experience[ed] no direct harm . . . ."); *see also White v. First Nat'l Bank of Pittsburgh*, 97 A. 403, 405 (Pa. 1916) ("But the plaintiff has averred no injury to himself, except the indirect one [relating to the destruction of the value of his stock] . . . [T]he difficulty with the plaintiff's case is that he has failed to show any injury to himself apart from the injury to the corporation, in which he is a stockholder."); *Winer Family Trust v. Queen*, 503 F.3d 319, 338 (3d Cir. 2007) (shareholders claim for breach of fiduciary duty against an entity that engaged in self-dealing at the direct expense of the company, which ultimately resulted in a diminution in value of the company's stock alleged an injury that belongs to the company, not its shareholders).

[32] 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016).

[33] In that case, the creditor had asserted a claim for "deepening insolvency" under Pennsylvania law. But the court "considered fiduciary duty claims to be a suitable substitute for the purpose of examining who holds the right to pursue a deepening insolvency claim." *In re Bruno*, 553 B.R. at 286.

[34] *Id.*

[35] *Id.*

was Certified's inability to service this debt which caused the concomitant and indirect injury to BSAI and its fellow creditors who remained unpaid.[36]

The same holding applies here. BTS's alleged inability to pay sums due "to creditors, including Eddystone" is what "caused the concomitant and indirect injury to [Eddystone] and its fellow creditors who remained unpaid."[37] Accordingly, like *Bruno*, Eddystone's claimed injury "represents a generalized injury."[38] And any recovery "must remain available for [BTS] and its entire creditor constituency."[39] It cannot be "commandeered [by Eddystone] for the exclusive benefit of only the most vociferous creditor."[40]

### C.   Eddystone Cannot Cure its Lack of Standing by Introducing New Factual Allegations in it Response Brief, Especially Allegations Contrary to Those Asserted in its Complaint

In an effort to resurrect its standing to bring this claim directly against Rios and Gamboa, Eddystone claims in its response brief that "Eddystone is BTS' only creditor."[41] Accordingly, it argues—without citing to any authority—that there "is nothing to be gained by placing control of that suit in the hands of the company."[42] This argument fails both legally and factually.

First, this factual assertion is contrary to Eddystone's own pleaded allegations, which repeatedly allege that BTS had multiple "creditors, including Eddystone."[43] And because the

---

[36]   *Id.*

[37]   *Id.* at 287.

[38]   *Id.*

[39]   *Id.*

[40]   *Id.*

[41]   Opp. at p. 12.

[42]   *Id.*

[43]   Am. Compl. ¶ 100 ("From the time BTS was in the zone of insolvency, [Rios and Gamboa] owed fiduciary duties of care and loyalty **to BTS' creditors, including Eddystone**.") (emphasis added); *see also Id.* ¶ 8 (Defendants "improperly us[ed] their control of BTS to render it insolvent and unable to pay its **creditors**"); ¶ 11 ("By using their management and controlling powers over BTS to render BTS unable to pay its **creditors** Defendants violated their fiduciary duties of care. . . ."); ¶ 100 ("In the zone of insolvency, BTS' controlling persons owed **creditors** a duty to manage BTS in a manner calculated to maximize **creditors'** recovery of BTS' debts to **creditors**."); ¶ 101 (Rios and Gamboa knew alleged transfers "would harm BTS' **creditors**" or negligently failed to consider "their duties to BTS'

Individual Defendants raise a facial, not factual, attack on the sufficiency of Eddystone's jurisdictional allegations, "the court must *only* consider the allegations of the complaint and documents referenced therein and attached thereto." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014); *see also Smith v. Allegheny Valley Sch. Dist.*, CV 17-686, 2017 WL 6279345, at *6 (W.D. Pa. Dec. 8, 2017) (noting that because defendant did not attach evidence in support of its 12(b)(1) motion, the motion is a facial attack that concerns only the sufficiency of the pleadings) (emphasis added). Eddystone cannot save this fatal admission in its pleadings with controverting allegations in its response to a motion to dismiss.[44]

Second, Eddystone pleaded that BTS had more than one creditor for good reason—it did, and still does. These creditors include Defendant Ferrellgas, who filed suit in this case against BTS and Jamex (BTS's post-sale corporate parent) seeking millions of dollars in damages for contribution and breach of an indemnification agreement.[45] As explained in that pleading, when (post-sale to Jamex) BTS stopped making monthly payments under the RSA—leading to this suit—Ferrellgas immediately became one of BTS's largest creditors. Today this money is still owed, and Ferrellgas remains a

---

*creditors*"); ¶ 103 (Defendants Bridger Logistics, FGP, Rios, and Gamboa breached their fiduciary duties of care and/or loyalty to BTS' *creditors* on an ongoing basis from April 2014 through present.") (emphasis added).

[44]   Even if the Court were to consider the email Eddystone attaches to its Response as Exhibit A, this "evidence" is wholly irrelevant. Through its attached email, Eddystone purports to demonstrate that BTS had only a single creditor at the time of BTS's sale to Jamex, but this misses the point: the relevant inquiry is that BTS has more than one creditor *now and at the time the lawsuit was filed*, not whether it had a single creditor almost four years ago, long before Eddystone brought its suit. Thus, the evidence proffered by Eddystone is wholly irrelevant to whether it has standing to bring this direct claim, leaving Eddystone with nothing but conclusory allegations that contravene its own Complaint. *Bd. of Trustees v. Allure Metal Works, Inc.*, 16CV1303JFBGRB, 2017 WL 372051, at *4 (E.D.N.Y. Jan. 25, 2017) (declining to consider conclusory allegation raised in opposition to 12(b)(1) motion that plaintiff independently alleged an ERISA violation against defendant where the facts set forth in the complaint did not allege a plausible independent ERISA violation); *Werekoh v. Comm'r of Soc. Sec.*, No. 12–CV–6954, 2013 WL 4407063, at *3 (S.D.N.Y. Aug. 19, 2013) (explaining that, in considering a motion to dismiss for lack of subject matter jurisdiction, the court "may not rely on conclusory or hearsay statements") (internal citations omitted). The fact remains that BTS has more than one creditor, and Eddystone's proffered "evidence" does nothing to change that.

[45]   *See* Dkt. No. 70, Third-Party Complaint (seeking indemnification for breaches alleged in this suit).

*Reply Brief in Support of Defendants Julio Rios and Jeremy Gamboa's Motion to Dismiss*
*Pursuant to Rule 12(B)(1) for Lack of Standing -*                                            *Page 9*

creditor of BTS with at least as significant a claim against BTS as Eddystone.[46]  Thus, Eddystone's attempt to bring a direct claim against Rios and Gamboa constitutes exactly the kind of "commandeering for the exclusive benefit of only the most vociferous creditor" forbidden by the Court in *Bruno*.[47]

Finally, even if Eddystone was BTS's only creditor, Eddystone still fails to allege direct, individual injury.  While decisions applying this standing rule may discuss the problems associated with an individual creditor or shareholder asserting claims that would dilute other creditors' equally viable claims, the dispositive legal test is whether the claim is asserted to redress corporate or independent harm.[48]  And to determine whether an alleged injury to a creditor is "independent" for purposes of standing to assert a direct claim, a court examines whether "the injuries are distinct from an injury to [the debtor corporation's] corporate assets."[49]  Again, the Amended Complaint brings claims stemming from Rios and Gamboa's alleged duty to BTS and alleges only indirect harm resulting from harm to BTS—a harm that Eddystone's complaint concedes is necessarily shared among "BTS's creditors, including Ferrellgas."[50]

### D.      Eddystone's Law of the Case Argument Fails

Plaintiff argues this Court is barred from considering these threshold jurisdictional requirements because the Court's prior holding on Co-Defendants' 12(b)(6) Motion is "law of the case."  This argument fails for two independent reasons: (1) "Law of the case only extends to issues

---

[46]   Ferrellgas dismissed its claim for indemnification against Jamex without prejudice on June 27, 2018.  Accordingly, Ferrellgas has not waived or otherwise relinquished its ability to claim these amounts owed against BTS.

[47]   *Id.*

[48]   *Hill*, 2014 Pa. Super. 17, 85 A.3d at 549; *Artesanias*, at *11.

[49]   *Artesanias*, at *10.

[50]   Am. Compl. ¶ 100 ("From the time BTS was in the zone of insolvency, [Rios and Gamboa] owed fiduciary duties of care and loyalty **to BTS' creditors, including Eddystone**.") (emphasis added).

that were actually decided in prior proceedings;"[51] and (2) even if the issue of Article III was already "actually decided" (it was not), the law of the case doctrine does not apply to the issue of Article III standing. *Pub. Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) (holding the law of the case doctrine does not apply to to Article III standing challenges because standing is a threshold jurisdictional requirement so it is exactly that type of "extraordinary circumstance" that warrants reconsideration).

First, this Court has not decided whether Plaintiff alleges an "injury in fact" sufficient to satisfy Article III. Quite simply, this is the first 12(b)(1) motion before the Court—the Court determined Plaintiff met 12(b)(6)'s standard, not 12(b)(1)'s. *See Slater v. Marshall*, 906 F. Supp. 256, 259 (E.D. Pa. 1995) (holding action was not foreclosed by the law of the case doctrine where the pending motion raised different issues than those previously decided). Nothing in its prior ruling on the motion to dismiss indicates that the Court heard, considered, or resolved the standing question raised by this Motion. To the contrary, the Court's ruling on Rios and Gamboa's prior motion to dismiss simply found—without any elaboration or explanation—that Eddystone's Complaint "clearly and adequately alleges claims against each Defendant."[52]

Second, as Plaintiff acknowledges, even if the law of the case applied here, the doctrine will not foreclose reconsideration in particular "extraordinary circumstances."[53] Article III standing is one such extraordinary circumstance. *See Pub. Interest Research Group of New Jersey, Inc.,* 123 F.3d at 117.

## II.      CONCLUSION

Eddystone's Amended Complaint alleges Rios and Gamboa breached their fiduciary duties when they transferred BTS's assets away from the company, which had the effect of making these

---

[51]   *Farina v. Nokia Inc.*, 625 F.3d 97, 117 (3d Cir. 2010).

[52]   Dkt. 59 at 12.

[53]   Opp. at 9.

assets unavailable for recovery by BTS's creditors, including Eddystone.  Because this claim is only "indirectly injurious" to Eddystone, and because Eddystone brings its fiduciary duty claim on behalf of itself and not derivatively, Eddystone fails to allege a particularized injury in fact.  Rios and Gamboa's Motion should be granted.

DATE:  November 22, 2019

Respectfully submitted:

/s/ Jeremy A. Fielding
Jeremy A. Fielding, PC (*pro hac vice*)
jeremy.fielding@kirkland.com
Jonathan D. Kelley (*pro hac vice*)
jon.kelley@kirkland.com
**KIRKLAND & ELLIS LLP**
901 Main Street, 54th Floor
Dallas, Texas 75202
Telephone:  (214) 972-1755
Facsimile: (214) 972-1771

Julie Negovan,
jnegovan@griesinglaw.com
GRIESING LAW, LLC
1717 Arch Street, Suite 3630
Philadelphia, Pennsylvania 19103

**ATTORNEYS FOR DEFENDANTS
JULIO RIOS AND JEREMY GAMBOA**

## CERTIFICATE OF SERVICE

I, Jonathan Kelley, hereby certify that I served the foregoing on all counsel of record *via electronic mail* on November 22, 2019 as follows:

| | |
|---|---|
| Filiberto Agusti | Lawrence Scarborough |
| fagusti@steptoe.com | lgscarborough@bcplaw.com |
| Jeffrey M. Theodore | Brian C. Walsh |
| jtheodore@steptoe.com | brian.walsh@bclplaw.com |
| Nicholas Petts | Sarah Hartley |
| npetts@steptoe.com | Sarah.hartley@bclplaw.com |
| Timothy Work | Alicia Ragsdale Olszeski |
| twork@steptoe.com | ali.olszeski@bclplaw.com |
| STEPTOE & JOHNSON LLP | Jacob A. Kramer |
| 1330 Connecticut Avenue NW | jake.kramer@bclplaw.com |
| Washington, D.C. 20036 | BRYAN CAVE LEIGHTON PAISNER LLP |

Henry Hockeimer, Jr.
hockeimerh@ballardspahr.com
Terence Grugan
grugant@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia Pennsylvania 19103

*Attorneys for Defendants*
*Bridger Logistics, LLC; Ferrellgas Partners, L.P.;*
*and Ferrellgas L.P.*

*Attorneys for Plaintiff*
*Eddystone Rail Company, LLC*

/s/ Jeremy A. Fielding
Jeremy A. Fielding