IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC,<br>    Plaintiff, | CIVIL ACTION |
| v. | |
| BRIDGER LOGISTICS, LLC,<br>JULIO RIOS,<br>JEREMY GAMBOA,<br>FERRELLGAS PARTNERS, L.P.,<br>FERRELLGAS, L.P.,<br>BRIDGER ADMINISTRATIVE<br>SERVICES II, LLC,<br>BRIDGER MARINE, LLC,<br>BRIDGER RAIL SHIPPING, LLC,<br>BRIDGER REAL PROPERTY, LLC,<br>BRIDGER STORAGE, LLC,<br>BRIDGER SWAN RANCH, LLC,<br>BRIDGER TERMINALS, LLC,<br>BRIDGER TRANSPORTATION, LLC,<br>BRIDGER ENERGY, LLC,<br>BRIDGER LEASING, LLC,<br>BRIDGER LAKE, LLC,<br>J.J. LIBERTY, LLC, and<br>J.J. ADDISON PARTNER, LLC,<br>    Defendants. | NO.  17-495 |

**DuBois, J.**                                                                                                                    **March 10, 2020**

**M E M O R A N D U M**

### I.   INTRODUCTION

This action arises out of a contractual dispute between plaintiff Eddystone Rail Company ("Eddystone") and non-party Bridger Transfer Services ("BTS") involving the construction of an oil transloading facility.  Plaintiff's central allegation is that the owners and controlling persons of BTS used the company as a sham entity to defraud plaintiff out of more than $140 million it is allegedly owed under the construction contract with BTS.  Presently before the Court is Defendants Julio Rios and Jeremy Gamboa's Motion to Dismiss Pursuant to Rule 12(b)(1) for

Lack of Standing.  For the reasons that follow, the Court denies the motion.

## II.     BACKGROUND

The background of this case is set forth in detail in the Court's Memorandum and Order dated July 19, 2017 (Document No. 59).  This Memorandum recites only the facts and procedural history relevant to the motion presently before the Court.

On February 13, 2013, plaintiff Eddystone and non-party BTS, an oil logistics company, entered into a Rail Facilities Services Agreement ("RSA").  First Am. Compl. ¶ 36.  Under the terms of the RSA, plaintiff agreed to build a $170 million facility to transload crude oil from railcars to barges on the Delaware River and grant BTS access to the facility.  *Id.* ¶¶ 3, 6, 37–39.  In exchange, BTS agreed that it would use the facility to transload a minimum volume of crude oil—and make deficiency payments for each barrel by which it fell short—for five years.  *Id.* ¶ 37.  Plaintiff alleges that defendants used their access to the Eddystone facility to secure a separate business opportunity: a contract to deliver North Dakota crude oil to a refinery operated by Monroe Energy LLC ("Monroe") in Trainer, Pennsylvania.  *Id.* ¶ 39.  Plaintiff completed construction of the transloading facility in April 2014 and transloaded every trainload of crude oil that BTS delivered through January 2016.  *Id.* ¶ 74.

Defendants in this case are the parent companies, affiliates, and former managers of BTS: BTS's parent company, Bridger Logistics, LLC; certain Bridger Logistics subsidiaries ("additional entity defendants");[1] Ferrellgas Partners, LP and Ferrellgas, LP (together, "Ferrellgas" and, with Bridger Logistics and the additional entity defendants, the "BL/FG defendants"); and two Bridger Logistics executives, Julio Rios and Jeremy Gamboa ("Rios and

---

[1] The additional entity defendants are Bridger Administrative Services, II, LLC; Bridger Marine, LLC; Bridger Rail Shipping, LLC; Bridger Real Property, LLC; Bridger Storage, LLC; Bridger Swan Ranch, LLC; Bridger Terminals, LLC; Bridger Transportation, LLC; Bridger Leasing, LLC; Bridger Energy, LLC; Bridger Lake, LLC; J.J. Liberty, LLC; and J.J. Addison Partners, LLC.

Gamboa" or "individual defendants").

Plaintiff claims that global changes in the oil market in late 2014 rendered delivery of North Dakota crude to Trainer unprofitable for Monroe and BTS, and that, as a result, defendants began to pursue ways to withdraw from the RSA. *Id.* ¶¶ 7–8. Specifically, plaintiff asserts that after the RSA became increasingly unprofitable, defendants stripped BTS of its assets in an effort to render themselves judgment-proof for BTS's eventual breach of the RSA. *Id.* ¶ 8. In their capacity as Bridger Logistics executives, Rios and Gamboa allegedly executed some of these transactions. *Id.* ¶ 50.

Plaintiff filed its Complaint on February 2, 2017 (Document No. 1) and First Amended Complaint on September 7, 2018 (Document No. 182). In the First Amended Complaint, plaintiff asserts four claims against defendants: alter-ego liability against Ferrellgas, Bridger Logistics, Bridger Rail Shipping, and Rios and Gamboa (Count I); intentional fraudulent transfer in violation of 12 Pa. Cons. Stat. § 5104(a) against all defendants (Count II); constructive fraudulent transfer in violation of 12 Pa. Cons. Stat. § 5105 against all defendants (Count III); and breach of fiduciary duties of care and loyalty to creditors against Ferrellgas, Bridger Logistics, and Rios and Gamboa (Count IV). With respect to the fiduciary duty claim, plaintiff specifically alleges, *inter alia*, that once BTS entered the "zone of insolvency," defendants "improperly caused BTS to transfer its assets . . . knowing that such transfer was for inadequate consideration . . . and would harm BTS' creditors, or they negligently failed to determine the circumstances surrounding the transfer." First Am. Compl. ¶ 101. On December 4, 2018, Rios and Gamboa filed their Answer to Plaintiff's First Amended Complaint (Document No. 278).

Prior to filing the pending motion, Rios and Gamboa filed two motions to dismiss for, *inter alia*, failure to state a claim in this action (Document Nos. 34 and 207, filed March 16, 2017

and October 5, 2018), both of which were denied.  Most recently, on September 27, 2019, the United States Court of Appeals for the Third Circuit denied a mandamus petition filed by all defendants in which they challenged the subject-matter jurisdiction of the Court and an order addressing a discovery dispute between the parties.  *See In re: Bridger Logistics LLC, et al*, No. 19-2678 (3d Cir. 2019).

Defendants Rios and Gamboa filed the pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on October 25, 2019 (Document No. 343).  Shortly thereafter, on November 6, 2019, this case was reassigned from the calendar of Judge Robert F. Kelly to this Court.  The motion is fully briefed and ripe for decision.

## III. LEGAL STANDARD

A motion to dismiss for lack of Article III standing is properly brought under Federal Rule of Civil Procedure 12(b)(1) because such standing is necessary for a court's subject-matter jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (holding that "standing is a jurisdictional matter").  Article III standing requires that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Plaintiff in this case has asserted a direct claim for breach of fiduciary duty against Rios and Gamboa.  First Am. Compl. ¶¶ 99–103.  In response, Rios and Gamboa contend that plaintiff lacks "standing" on two grounds: because (1) Pennsylvania corporate law prohibits direct fiduciary duty claims by creditors and requires that such breach of fiduciary duty claims be asserted derivatively, *see* 15 Pa. Cons. Stat. § 1717; and (2) even if such direct claims were permissible, plaintiff failed to allege that it suffered "a direct, personal, and independent injury."

4

Individual Defs.' Mot. Dismiss 2.

Federal courts distinguish between a plaintiff's Article III standing and so-called "statutory standing."[2]  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1378 n.4 (2014).  While Article III standing involves the Court's constitutional authority to decide a case, statutory standing "goes to whether [the legislature] has accorded a particular plaintiff the right to sue under a statute" and "does not limit the power of the court to adjudicate the case." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015).  *See also Lexmark Int'l*, 134 S. Ct. at 1378 n.4 ("[T]he absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.") (internal citation and quotation marks omitted).  As a result, the Third Circuit has held that a "dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim," and such an argument should be asserted under Rule 12(b)(6).  *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73–74 (3d Cir. 2011).  In this case, the issue of whether a plaintiff properly asserts a fiduciary duty claim derivatively or directly raises a question of statutory standing.  The Court therefore determines that Rios and Gamboa's motion to dismiss for lack of standing was improperly filed under Rule 12(b)(1); it should have been filed under Rule 12(b)(6).  Accordingly, the motion is construed as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See Leyse*, 804 F.3d at 320 (applying the Rule 12(b)(6) standard to a motion to dismiss for lack of statutory standing originally filed under Rule 12(b)(1)).

---

[2] In *Lexmark*, the Supreme Court held that the label "statutory standing" is "misleading" and a "misnomer" because it does not actually raise a standing issue. 134 S. Ct. at 1386, 1387, n.4.  In light of this decision, the Third Circuit and other courts have "retreated from this characterization." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 n.3; *see, e.g.*, *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).  The Court will nevertheless use the phrase "statutory standing" because its use and meaning are the focus of the parties' legal arguments.

"The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Twombly*, 550 U.S. at 557, 564. Such conclusory allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### IV.  DISCUSSION

As discussed *supra*, defendants Rios and Gamboa argue that Eddystone lacks statutory standing to assert a direct fiduciary duty claim against Rios and Gamboa. Specifically, the individual defendants' central argument is that Pennsylvania law requires that plaintiff, a creditor, bring this claim derivatively on behalf of non-party BTS. Construing the pending motion as filed under Rule 12(b)(6), the Court rejects this argument and denies the motion.

The Court notes that this basic argument has already been raised—and rejected—on a

previous occasion.  In their motion to dismiss the original Complaint (Document No. 35, filed March 16, 2017), the BL/FG defendants argued, *inter alia*, that (1) Louisiana law governed the fiduciary duty claim; (2) plaintiff failed to state a claim because the only "appropriate vehicle for an LLC to recover from a fiduciary that allegedly breached its duties would be a *derivative* action"; and (3) plaintiff lacked statutory standing to assert a derivative claim.  BL/FG Defs.' Mot. Dismiss 33–34.  Rios and Gamboa also filed a motion to dismiss under Rules 12(b)(2) and 12(b)(6) (Document No. 34), in which they incorporated these arguments by reference.  In its Memorandum dated July 19, 2017, the Court denied the motions, rejecting the "standing" argument and holding that the Complaint "clearly and adequately alleges claims against each Defendant . . . for Breach of Fiduciary Duties of Care and Loyalty to Creditors."  July 19, 2017 Ct. Mem. 12.  After plaintiff filed its First Amended Complaint, Rios and Gamboa filed a second motion to dismiss the fiduciary duty claim under Rule 12(b)(6) (Document No. 207), arguing again that plaintiff failed to state a claim under Louisiana law.  The Court ruled that Pennsylvania law governed the fiduciary duty claim and denied the motion on that basis.  *See* November 20, 2018 Ct. Order (Document No. 275).

Consistent with Judge Kelly's July 19, 2017 Memorandum, the Court concludes that plaintiff has stated a claim for breach of fiduciary duty.  Under Pennsylvania law, corporate directors and officers owe a fiduciary duty to the corporation.  *See* 15 Pa. Cons. Stat. §§ 512(a), 1712(a); *Main, Inc. v. Blatstein*, No. CIV. A. 98-5947, 1999 WL 424296, at *14 (E.D. Pa. June 23, 1999).  This duty "generally is owed solely to the corporation and may be enforced directly by the corporation or indirectly by a shareholder in a shareholder derivative action brought under the right of the corporation."  *In re Forman Enterprises, Inc.*, 281 B.R. 600, 610 (Bankr. W.D. Pa. 2002).  This duty "may not be enforced directly by a shareholder or by another person or

7

group."  15 Pa. Cons. Stat. § 1717.

Nevertheless, courts applying Pennsylvania law have recognized exceptions to this general rule.  Importantly, when a corporation is insolvent, corporate directors and officers owe a fiduciary duty to the creditors of the corporation.  *See Brown v. Presbyterian Ministers Fund*, 484 F.2d 998, 1005 (3d Cir. 1973); *In re Bruno*, 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016).  This fiduciary relationship with creditors applies in the context of insolvent limited liability companies, such as BTS, as well.  *See Hipple v. Hipple*, No. CV 12-1256, 2016 WL 320216, at *12 (E.D. Pa. Jan. 27, 2016).

Central to Rios and Gamboa's argument is the distinction between direct and derivative claims.  In addressing this issue, courts analyze the nature of the complaint and the type of relief requested.  *See Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, No. CV 16-1343, 2016 WL 8256412, at *6 (E.D. Pa. Sept. 16, 2016).  "[Statutory] standing to bring a direct claim against a director exists only if the claimant sustained a personal injury which is independent of any injury suffered by the corporation.  If the creditor's alleged injuries cannot be readily distinguished from those of the corporation, it does not give rise to a separate cause of action."  *Id.* (citations omitted).  "It is not enough to establish that a recovery will yield a benefit to the creditor.  To the contrary, a direct claim requires proof that the creditor's injury is unique and unrelated to any damage sustained by the corporation or other creditors."  *In re Bruno*, 553 B.R. at 286.  In contrast, an action is derivative (in the corporate shareholder context) when "the gravamen of the complaint is injury to the corporation . . . or if it seeks to recover assets for the corporation or to prevent dissipation of its assets."  *Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. Ct. 2014).  "If damages to a shareholder result indirectly, as the result of injury to the corporation, and not directly, the shareholder cannot sue as an individual."  *Id*; *see* ALI Principles of

Corporate Governance § 7.01(a) ("An action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action.").

In this case, plaintiff, a creditor of an insolvent LLC, BTS, asserts a direct breach of fiduciary duty claim against Rios and Gamboa. Multiple Pennsylvania federal and state courts have permitted creditors of insolvent corporations to assert fiduciary duty claims directly under Pennsylvania law. In *Impala Platinum Holdings*, the Court accepted plaintiff creditor's argument that "it has [statutory] standing to pursue a direct claim against Defendants as directors [of the insolvent corporation]" "based on duties it was owed as a creditor of an insolvent corporation." 2016 WL 8256412, at *6–7. Similarly, in *Travelers Casualty & Surety Co. v. Irex Corp.*, the Court held that a fiduciary relationship existed between the plaintiff—a creditor of an insolvent corporation—and defendant, the sole shareholder of the corporation. *Travelers Cas. & Sur. Co. v. Irex Corp.*, No. 02-CV-2142, 2002 WL 32351176, at *3 (E.D. Pa. May 31, 2002). In part on this basis, the *Travelers* court permitted plaintiff's direct breach of fiduciary duty claim to proceed. *Id.*, at *4; *see Sugartown Worldwide LLC v. Shanks*, No. CIV.A. 14-5063, 2015 WL 1312572, at *12 (E.D. Pa. Mar. 24, 2015) (holding that the creditor successfully stated a direct fiduciary duty claim against the owners and board members of an insolvent corporation despite failing to allege that the corporation was insolvent); *Robar Dev. Corp. v. Minutello*, 408 A.2d 851, 853 (Pa. Super. Ct. 1979) (recognizing a fiduciary duty owed directly to creditors of an insolvent corporation by the corporation's primary stockholders and officers where, at the officers' direction, the corporation first paid the debts of the officers rather than the creditors); *Heaney v. Riddle*, 23 A.2d 456, 458 (Pa. 1942).

Therefore, the only remaining question is whether plaintiff has adequately pled a direct injury suffered as a result of a breach of fiduciary duty by Rios and Gamboa. In this case, the

central allegation of the First Amended Complaint is that fraudulent transfers of BTS assets facilitated BTS's breach of the RSA, which resulted in direct financial harm to plaintiff. The Court therefore concludes—as it did in its July 19, 2017 Memorandum—that plaintiff has pled sufficient facts to state a claim for breach of fiduciary duty. *See, e.g.*, *ASD Specialty Healthcare Inc. v. New Life Home Care Inc.*, No. 3:11-CV-068, 2011 WL 5984024, at *5 (M.D. Pa. Nov. 29, 2011).

## V.    CONCLUSION

For the foregoing reasons, Defendants Rios and Gamboa's Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Standing, treated as a motion to dismiss pursuant to Rule 12(b)(6), is denied. An appropriate order follows.