UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC,<br>　　　　Plaintiff/Counter-defendant,<br><br>　v.<br><br>BRIDGER LOGISTICS, LLC, *et al.*,<br>　　　　Defendants,<br><br>BRIDGER LOGISTICS, LLC, *et al.*,<br>　　　　Defendants/Counterclaimants. | :<br>:<br>:<br>:<br>:<br>:<br>: No. 2:17-cv-00495-JD<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**BL/FG DEFENDANTS'**
**CROSS-MOTION FOR SANCTIONS**

Defendants Bridger Logistics, LLC, Ferrellgas Partners, L.P., and Ferrellgas, L.P. (the "BL/FG Defendants" or "BL/FG") respectfully move for sanctions (1) precluding Plaintiff Eddystone Rail Company, LLC ("ERC" or "Eddystone") from introducing certain evidence; (2) requiring ERC to provide interrogatory responses in lieu of certain Rule 30(b)(6) deposition testimony; (3) requiring ERC to produce a witness for a second Rule 30(b)(6) deposition on Topic 3 of the BL/FG 30(b)(6) notice; and (4) requiring ERC to reimburse the BL/FG Defendants for their reasonable attorneys' fees incurred to prepare for and take the August 31, 2020 deposition of ERC's corporate representative, as well as the reasonable attorneys' fees incurred by the BL/FG Defendants to oppose ERC's Motion for a Protective Order. The grounds for this motion are briefly set forth below and detailed in the Memorandum in Opposition to Plaintiff's Motion for a Protective Order and Cross-Motion for Sanctions and supporting documents (the "Memorandum"). The Memorandum (Dkt. 404) is hereby incorporated herein by reference.

1

1. On January 4, 2019, the BL/FG Defendants served their notice to take the deposition of ERC's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). The 30(b)(6) notice included topics addressing ERC's claims against the BL/FG Defendants, including Topics 2, 3, and 4, as follows:

- BL/FG Topic 2: "Any alleged obligation of Bridger Logistics to provide financial support or reimbursement to BTS relating to Eddystone or the RSA."

- BL/FG Topic 3: "Eddystone's accounting procedures, general ledger, and balance sheets, including but not limited to, Eddystone's use of cost centers in its accounting, Eddystone's treatment of intercompany payables and receivables in its accounting, Eddystone's treatment of amounts receivable from BTS or its affiliates, the allocation of expenses and revenues among Eddystone and its affiliates, Eddystone's treatment of proceeds from the RSA, and any value assigned by Eddystone to the RSA or to its customer relationship with BTS or its affiliates in its accounting records."

- BL/FG Topic 4: "The material facts alleged in the FAC [First Amended Complaint] including but not limited to the following:

  a. The alleged implied contract that Eddystone identifies in the FAC, including Eddystone's reliance on such contract, the terms of such contract, the termination of such contract, and the manner in which Eddystone became aware of the alleged implied contract;

  b. The basis for and meaning of Eddystone's allegations that Defendants caused BTS to allow an implied contract with Bridger Logistics to be abrogated without compensation;

  c. The basis for and meaning of Eddystone's allegations that Defendants treated and represented to others that BTS' assets were Bridger Logistics' and Ferrellgas' own assets, including the specific representations allegedly made;

  d. The basis for and meaning of Eddystone's allegations that Defendants improperly caused BTS to forgive accounts receivable;

  e. The basis for and meaning of Eddystone's allegations that the lien on BTS assets in 2015 and 2016 was in anyway improper;

  f. The basis for and meaning of Eddystone's allegations that Defendants owed and violated fiduciary duties of care and loyalty allegedly owed to BTS' creditors, including Eddystone at any time from 2013 to the present;

  g. The basis for and meaning of Eddystone's allegations that Defendants Rios and Gamboa 'completely dominated BTS in all aspects of its business';

      h. The basis for and meaning of Eddystone's allegations that Rios and Gamboa 'were the officers and controlling persons of BTS as well as Bridger Logistics and FGP,' and that '[t]he value was transferred from BTS' was 'for the benefit of' Rios and Gamboa;

      i. Eddystone's knowledge and understanding of what benefit Rios and/or Gamboa received from the transfers alleged in the FAC, including the method and manner of calculating the value of the transfer and the benefit allegedly received; and

      j. The precise date Eddystone alleges that BTS became insolvent, and the factual basis for this allegation."[1]

3. Between January 2019 and August 2019, the parties engaged in a series of meet and confers during which they discussed 30(b)(6) depositions to be taken by both sides. During that period, ERC repeatedly rejected proposals to exchange interrogatory responses in lieu of 30(b)(6) testimony on contention topics.

4. By August 2019, over a year before the deposition of ERC's 30(b)(6) witness, both parties had committed to tender a witness to address contention topics in their respective 30(b)(6) notices, after ERC rejected repeated proposals to exchange interrogatory responses in lieu of live 30(b)(6) testimony.

5. On August 25, 2020, a week before the ERC 30(b)(6) deposition on September 1, ERC's counsel requested to meet and confer to confirm that its witness would not testify on behalf of ERC's parent entities. Defense counsel participated in a call the next day to resolve that issue, and ERC raised no other issues with the upcoming deposition.

6. On August 31, 2020, the day before the September 1 deposition, ERC continued to backpedal and renege on its agreements, stating in a series of email exchanges that ERC "will not produce a witness tomorrow to address Topics 2, 3, or 4 of BLFG's notice or Topics 1 or 2 of [Defendants] Rios and Gamboa's cross-notice."

---

[1] This subtopic is no longer at issue, as the parties agreed that it may be addressed by experts.

7. On September 1, 2020, the BL/FG Defendants deposed ERC's corporate representative, Bryan Boaz. ERC's counsel improperly instructed Boaz not to answer questions about BL/FG Topics 2, 3, and 4. ERC's counsel also interfered with questioning on BL/FG Topics 7 and 11, making improper objections and repeatedly instructing Boaz not to answer.

8. On September 8, 2020, ERC filed a belated motion for a protective order, asking the Court to order that contention topics be converted to interrogatories.

9. BL/FG Topics 2 and 4 seek factual information concerning the "alleged obligation of Bridger Logistics to provide financial support or reimbursement to BTS relating to Eddystone or the RSA" (Topic 2), as well as material facts underlying various ERC allegations concerning the Defendants and BTS (Topic 4). BL/FG Topics 2 and 4 are similar to ERC's own Topic 5, which sought "material facts alleged in and relating to Defendants' Amended Counterclaims," with wide-ranging subtopics targeting such allegations.

10. BL/FG Topic 3 addresses the manner in which Eddystone maintains its accounting books and records, which is relevant to its alter ego claim, its allegations of an implied contract, and BL/FG Defendants' defenses against the same. It is also relevant to, among other things, Eddystone's valuation of its customer relationship with BTS or any of the BL/FG Defendants, its valuation of purported contractual rights against BL/FG Defendants, its valuation of the Rail Services Agreement ("RSA"), and its assertion of estoppel as an affirmative defense.

11. In sum, ERC proffered an unprepared witness who was not allowed to testify about areas for which ERC previously had committed to provide testimony, after refusing to accept repeated proposals to exchange interrogatory responses in lieu of 30(b)(6) testimony and putting the BL/FG Defendants to the burden of preparing their own witness to testify on contention topics. ERC then belatedly sought a protective order seeking forgiveness rather than

permission.

12. Pursuant to Fed. R. Civ. P. 37(a)(1), counsel for the BL/FG Defendants hereby certify that, on numerous occasions identified in the Memorandum, they conferred with counsel for Plaintiff ERC in a good faith attempt to avoid court action.

For all of the forgoing reasons and for the additional reasons set forth in the Memorandum, the BL/FG Defendants respectfully ask the Court to deny ERC's Motion for a Protective Order and sanction ERC for discovery misconduct.

Dated:  September 22, 2020                    Respectfully submitted,

By: */s/ Lawrence G. Scarborough*
Lawrence G. Scarborough (Admitted *Pro Hac Vice*)

Richard L. Scheff (I.D. No. 35213)
Michael C. Witsch (I.D. No. 313884)
ARMSTRONG TEASDALE LLP
One Commerce Square
2005 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone:  (267) 780-2000
Facsimile:  (215) 405-9070
rlscheff@atllp.com
mwitsch@atllp.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
Bieta Andemariam (Admitted *Pro Hac Vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 541-2000
Facsimile:  (212) 541-4630
lgscarborough@bclplaw.com
bieta.andemariam@bclplaw.com

        Jacob A. Kramer (Admitted *Pro Hac Vice*)
        Rachel A. Beck (Admitted *Pro Hac Vice*)
        BRYAN CAVE LEIGHTON PAISNER LLP
        1155 F Street, NW
        Washington, D.C. 20004
        Telephone: (202) 508-6000
        Facsimile: (202) 508-6200
        jake.kramer@bclplaw.com
        rachel.beck@bclplaw.com

        Brian C. Walsh (Admitted *Pro Hac Vice*)
        Alicia Ragsdale Olszeski (Admitted *Pro Hac Vice*)
        BRYAN CAVE LEIGHTON PAISNER LLP
        211 North Broadway, Suite 3600
        St. Louis, Missouri 63102
        Telephone: (314) 259-2000
        Facsimile: (314) 259-2020
        brian.walsh@bclplaw.com
        ali.olszeski@bclplaw.com

        Sarah L. Hartley (Admitted *Pro Hac Vice*)
        BRYAN CAVE LEIGHTON PAISNER LLP
        1700 Lincoln Street, Suite 4100
        Denver, Colorado 80203
        Telephone: (303) 861-7000
        Facsimile: (303) 866-0200
        sarah.hartley@bclplaw.com

        *Attorneys for Bridger Logistics, LLC, Ferrellgas Partners, L.P., Ferrellgas L.P., Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, J.J. Addison Partners, LLC, J.J. Liberty, LLC, Bridger Admin Services II LLC, Bridger Energy, LLC, Bridger Lake, LLC, Bridger Leasing, LLC, Bridger Marine, LLC*

## **CERTIFICATE OF SERVICE**

I, Alicia Ragsdale Olszeski, hereby certify that on September 22, 2020, a true and correct copy of the foregoing memorandum was filed electronically via the Court's ECF filing system. This document is available for viewing and downloading from the ECF system and electronic notification has been sent to all counsel of record.

>  /s/ *Alicia Ragsdale Olszeski*
>  Alicia Ragsdale Olszeski