IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**EDDYSTONE RAIL COMPANY, LLC,**

    *Plaintiff*,

v.

**BRIDGER LOGISTICS, LLC,** *et al.*

    *Defendants*.

Case No. 2:17-cv-00495-JDW

### **MEMORANDUM**

As part of a settlement in this case, Julio Rios and Jeremy Gamboa have agreed to sit for interviews with counsel for Eddystone Rail Company, LLC. The parties have presented to the Court various disputes about those potential interviews, including whether they would violate confidentiality provisions into which Messrs. Rios and Gamboa have entered and whether they pose an unreasonable risk of the disclosure of privileged communications or attorney work product. For the reasons stated below, the Court concludes that the interviews can occur, notwithstanding the confidentiality provisions. However, the Court will impose some prophylactic measures to protect the confidentiality and privilege concerns that the BL/FG Defendants[1] have raised.

---

[1] The "BL/FG Defendants" are Defendants Ferrellgas Partners, L.P.; Ferrellgas, L.P.; Bridger Logistics, LLC; Bridger Administrative Services II, LLC; Bridger Marine, LLC; Bridger Rail Shipping, LLC; Bridger Real Property, LLC; Bridger Storage, LLC; Bridger Swan Ranch, LLC; Bridger Terminals, LLC; Bridger Transportation, LLC; Bridger Energy, LLC; Bridger Leasing, LLC; Bridger Lake, LLC; J.J. Liberty, LLC; and J.J. Addison Partners, LLC.

I. **RELEVANT BACKGROUND**

This case stems from a series of alleged fraudulent transfers that Eddystone contends Bridger Transfer Service ("BTS") made in an effort to avoid payment obligations to Eddystone. Mr. Rios is the former President and CEO of Bridger Logistics, LLC ("BL"), and Mr. Gamboa was BL's COO. BL is a wholly-owned subsidiary of Ferrellgas, LP. Messrs. Rios and Gamboa also became corporate officers of Ferrellgas, and each of them entered into employment and non-compete agreements with Ferrellgas that contained broad confidentiality provisions. They reaffirmed those obligations when they entered into settlement agreements with Ferrellgas in connection with an arbitration for unpaid severance pay.

During this case, Messrs. Rios, Gamboa entered into a Joint Defense Agreement (the "JDA") with the BL/FG Defendants. Pursuant to the JDA, those parties have collaborated on defense strategy and tactics throughout the litigation. As a result, the BL/FG Defendants contend that Messrs. Rios and Gamboa have been privy to a great deal of confidential and/or privileged communications.

In an Order dated June 28, 2019 (the "Crime-Fraud Order"), the Court determined that the crime-fraud exception to the attorney-client privilege applied to certain documents and ordered the BL/FG Defendants to produce certain documents because there was a reasonable basis to suspect that BL/FG Defendants committed or intended to commit a fraud with respect to certain

transactions. Specifically, the Court ordered the BL/FG Defendants to produce the documents on the following topics: 1) the restructuring of BTS; 2) the transfer or redirection of BTS' assets or/and revenue streams; 3) the sale of BTS to Jamex Marketing; and 4) the cessation of the Monroe Energy shipping arrangement. (ECF No. 333.) Messrs. Rios and Gamboa served as BL's corporate executives at the time the alleged fraudulent transactions took place.

Eddystone has reached a conditional settlement with Messrs. Rios and Gamboa. As part of that settlement, Messrs. Rios and Gamboa must make themselves available for private meetings with Eddystone's counsel to respond to inquiries about the facts of this case and provide Eddystone with follow-up documents. Eddystone's interview will focus only on the transactions that the Court's Crime-Fraud Order covers. (See ECF No. 461-1 at 5-6 ("Eddystone also does not seek privileged information or documents outside the scope of the June 2019 crime-fraud order.").) Before the Parties finalize the agreement, Eddystone has asked the Court to determine whether the confidentiality provisions in the employment, non-compete, and settlement agreements between Messrs. Rios and Gamboa and Ferrellgas prohibit them from speaking with Eddystone's counsel and providing additional information. The BL/FG Defendants contend that such communications are prohibited, and they ask the Court to enter a protective order to prevent them from occurring.

## II. DISCUSSION

Even though formal discovery has closed in this matter, the Court remains authorized "to prohibit or remedy litigation practices which raise ethical concerns or may constitute ethical violations." *Univ. Pats., Inc. v. Kligman*, 737 F. Supp. 325, 329 (E.D. Pa. 1990). Because Eddystone's proposed interviews raise legal and ethical questions and impact the possibility of a settlement, the Court has the power to resolve the dispute.

### A. Motion To Interpret Nondisclosure Agreements

There is no dispute between the Parties that the confidentiality provisions in the employment, non-compete, and settlement agreements between Messrs. Rios and Gamboa and Ferrellgas apply to, and appear to prohibit, Eddystone's proposed interviews. Yet Eddystone contends that the confidentiality provisions do not apply in this instance because Eddystone is not a competitor seeking the BL/FG Defendants' trade secrets or confidential business information. Whether Eddystone is a competitor or seeks commercially valuable information is of no moment. Instead, what matters is whether the confidentiality provisions would operate to shield evidence of wrongdoing; if so, those provisions are unenforceable.[2]

---

[2] *See, e.g., Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853-54 (10th Cir. 1972) (public policy will intervene to prevent the enforcement of silence where disclosure would reveal tortious or criminal activity); *Signapori v. Jagaria*, 84 N.E.3d 369, 378 (Ill. App. Ct. 2017) ("[W]e will not enforce a contract that purports to bar a party … from reporting another party's alleged misconduct."); *Unami v. Roshan*, 659 S.E.2d 724, 727 (Ga. Ct. App. 2008) (confidentiality provision

4

The Court has already determined that there is a reasonable basis to suspect that BL/FG Defendants committed or intended to commit a fraud during the restructuring of BTS, the transferring or redirecting of BTS' assets or/and revenue streams, the sale of BTS to Jamex Marketing, and the cessation of the Monroe Energy shipping arrangement. Because enforcement of the various confidentiality provisions would shield information about the BL/FG Defendants' alleged misconduct, those provisions cannot prevent disclosure about those subjects. Thus, the Court will grant Eddystone's motion and permit Eddystone's counsel to interview Messrs. Rios and Gamboa about the four transactions identified in the Crime-Fraud Order. Of course, if either Mr. Rios or Mr. Gamboa discloses information beyond those limited transactions or otherwise breaches his remaining confidentiality obligations, the BL/FG Defendants are free to pursue any legal remedies they might have as a result of that breach, including disqualification of counsel. *See In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 911 F. Supp. 148, 154 (D.N.J. 1995).

---

was void as against public policy where silence would have constituted a breach of the parties' prior agreement to disclose any debts to their funder); *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1137 (N.D. Cal. 2002) (finding that it would violate public policy to enforce confidentiality agreements that would prevent former employees from assisting in securities fraud investigation); *Chambers v. Cap. Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y. 1995) ("[A]greements obtained by employers requiring former employees to remain silent about underlying events … concerning potentially illegal practices … can be harmful to the public's ability to rein in improper behavior[.]").

5

## B. Cross-Motion For Protective Order

The BL/FG Defendants have not demonstrated the need for a separate protective order. While the Court will deny their motion to prohibit the additional information-gathering from taking place, it will put some restrictions on those activities in order to address the BL/FG Defendant's concerns, which are understandable.

*First*, it is not clear that Pennsylvania Rule of Professional Conduct 4.2, on which the BL/FG Defendants rely, applies. That Rule governs an attorney's communications with persons represented by counsel and prohibits such communications unless the attorney has the other attorney's consent or a court order or law authorizes the communications. This Court has determined that Eddystone's counsel may question Messrs. Rios and Gamboa regarding the four alleged fraudulent transactions. In addition, the comments to the Rule explain that "[c]onsent of [an] organization's lawyer is not required for communication with a former constituent" like Mr. Rios or Mr. Gamboa. PA ST RPC Rule 4.2, Cmt. 7. On the other hand, the comment cautions that in speaking with an organization's former employee, an attorney "must not use methods of obtaining evidence that violate the legal rights of the organization." *Id.* Indeed, "[t]he Rules do not exhaust the moral and ethical considerations that should inform a lawyer[']s conduct.]" *Harris Davis Rebar, LLC v. Structural Iron Workers Loc. Union No. 1, Pension Tr. Fund*, No. 17-cv-6473, 2019 WL 447622, at *5 (N.D. Ill. Feb. 5, 2019). That is, a lawyer could still face disqualification or sanctions even if his conduct

does not run afoul of the black-letter rules. In this particular case, that risk provides a significant deterrent to Eddystone's counsel for any gamesmanship or questioning beyond the scope of permissible inquiry the Court has identified.

*Second*, there is not a substantial risk that Messrs. Rios and Gamboa will disclose privileged information during the course of their interviews. Neither the attorney-client privilege nor the attorney work product privilege applies to any communications or documents pertaining to the four transactions to which Eddystone's inquiry is limited. And Eddystone's counsel is confined to questioning Messrs. Rios and Gamboa about these discrete events—all of which occurred before these two individuals entered into the JDA with the BL/FG Defendants—so there is little risk that questions pertaining to the limited transactions will lead to disclosure of privileged material relating to the Defendants' joint defense efforts in this matter. As a further measure, Messrs. Rios's and Gamboa's counsel will attend each interview. He is well-aware of both his and his clients' obligations under the JDA, and he has sworn to "ensure that neither Rios nor Gamboa discuss or otherwise disclosure any information that might be protected by privilege or prevents from disclosure pursuant to any court orders and/or any agreement among or between the parties."   (ECF No. at 474-5 at ¶ 12.) Given these representations, made under oath by an officer of the Court, as well as the focused scope of inquiry, there is little risk that Messrs. Rios and Gamboa will disclose any privileged material during their post-settlement interviews.

7

Nevertheless, the Court appreciates the BL/FG Defendants' hesitation to rely on the word of their adversaries and their counsel. To help alleviate these concerns, the Court will require Eddystone's counsel and Messrs. Rios's and Gamboa's counsel to file certifications on the record after each interview with Messrs. Rios and Gamboa, certifying that the interviews were limited to discussing the four transactions identified in the Crime-Fraud Order. In addition, counsel for Messrs. Rios and Gamboa shall certify that his clients did not reveal any privileged information during the course of those discussions.

The Court also appreciates the BL/FG Defendants' concern that documents that Mr. Rios or Mr. Gamboa produce to Eddystone could be privileged. Thus, the Court will require Messrs. Rios and Gamboa to provide copies of any documents to the BL/FG Defendants before making the documents available to Eddystone, so that the BL/FG Defendants have an opportunity to raise a claim of privilege, if necessary.

*Third*, the proposed interview process and possible follow-up document production is routine trial preparation, rather than a surreptitious end-run around formal discovery procedures. Indeed, pre-trial interviews with witnesses is common, and "the right to conduct such interviews is taken for granted as a matter of federal procedure." *Patton v. Novartis Consumer Health, Inc.*, No. 02-cv-47, 2005 WL 1799509, at *3 (S.D. Ind. July 25, 2005). Certainly, the "Federal Rules of Civil Procedure ... have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness

8

who is willing to speak." *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983); *see also FTC v. AMG Servs.*, Inc., No. 12-cv-536, 2013 WL 12320929, at *3 (D. Nev. Aug. 20, 2013). Likewise, the fact that the proposed settlement contemplates follow-up requests for documents is not an attempt to extend or reopen discovery. Instead, that provision is included on the off chance that Messrs. Rios or Gamboa has any remaining documents that have not already been produced. By Eddystone's own admission, this is not a situation where Eddystone intends to serve lengthy, subpoena-like document requests. Thus, the Court is not convinced that Eddystone is attempting to extend or reopen discovery or otherwise gain an unfair advantage by interviewing Messrs. Rios and Gamboa as part of their settlement efforts.

### III.   CONCLUSION

In order to effectuate a partial settlement of this dispute, Eddystone may question Messrs. Rios and Gamboa consistent with the Court's Crime-Fraud Order and the Defendants' respective confidentiality obligations. However, the Court will put procedures in place to help assuage the BL/FG Defendants' legitimate privilege concerns. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 20, 2021