# ERC-2131

```
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2

 3   EDDYSTONE RAIL COMPANY, LLC,        §
                                         §
 4       Plaintiff/Counter-Defendant,    §
                                         §
 5   v.                                  § NO. 2:17-CV-00495-JD
                                         §
 6   JULIO RIOS, JEREMY GAMBOA, BRIDGER  §
     LOGISTICS, LLC, FERRELLGAS PARTNERS,§
 7   L.P., FERRELLGAS, L.P., et al.,     §
                                         §
 8       Defendants,                     §
                                         §
 9   BRIDGER LOGISTICS, LLC, FERRELLGAS  §
     PARTNERS, L.P., and FERRELLGAS, L.P.,§
10                                       §
         Defendants/Counterclaimants.    §
11

12             ORAL VIDEOTAPED DEPOSITION

13                MR. DAVID G. OWNBY

14                  May 21, 2021

15       ORAL VIDEOTAPED DEPOSITION OF MR. DAVID G.

16   OWNBY, produced as a witness at the instance of the

17   Defendants and duly sworn, was taken in the

18   above-styled and numbered cause on the 21st day of

19   May, 2021, from 9:32 a.m. to 5:05 p.m., before

20   Michelle Hartman, Certified Shorthand Reporter in and

21   for the State of Texas and Registered Professional

22   Reporter, reported by computerized stenotype machine

23   via Zoom videoconference, pursuant to the Federal

24   Rules of Civil Procedure and the provisions stated on

25   the record or attached hereto.
```

```
 1                        APPEARANCES

 2


 3   FOR THE PLAINTIFF/COUNTER-DEFENDANT EDDYSTONE RAIL
     COMPANY, LLC:
 4
          Mr. Steven J. Barber
 5        STEPTOE & JOHNSON, LLC
          1330 Connecticut Avenue NW
 6        Washington, D.C. 20036
          Telephone: 202-429-3000
 7        E-mail: sbarber@steptoe.com

 8   FOR THE DEFENDANTS/COUNTER-CLAIMANTS BRIDGER LOGISTICS, LLC,
     FERRELLGAS PARTNERS, L.P., FERRELLGAS L.P., BRIDGER RAIL
 9   SHIPPING, LLC, BRIDGER REAL PROPERTY, LLC, BRIDGER STORAGE,
     LLC, BRIDGER SWAN RANCH, LLC, BRIDGER TERMINALS, LLC,
10   BRIDGER TRANSPORTATION, LLC, J.J. ADDISON PARTNERS, LLC, J.J.
     LIBERTY, LLC, BRIDGER ADMIN SERVICES II LLC, BRIDGER ENERGY,
11   LLC, BRIDGER LAKE, LLC, BRIDGER LEASING, LLC, BRIDGER
     MARINE, LLC:
12
          Mr. Jacob A. Kramer
13        Ms. Rachel A. Beck
          FAEGRE DRINKER
14        1050 K Street, Suite 400
          Washington, D.C. 20005
15        Telephone: 202-312-7400
          E-mail:  jake.kramer@faegredrinker.com
16                 rachel.beck@faegredrinker.com

17   FOR THE INDIVIDUAL DEFENDANTS JULIO RIOS AND JEREMY GAMBOA:

18        Mr. Chris Burkhalter
     and  Mr. Xavier Avery
19        KIRKLAND & ELLIS LLP
          1601 Elm Street
20        Dallas, Texas 75201
          Telephone: 214-972-1770
21        E-mail: chris.burkhalter@kirkland.com


22   ALSO PRESENT:

23        Mr. Ben Harwood, videographer


24


25
```

1  court reporter please swear in the witness, and we
2  may proceed.
3            THE COURT REPORTER:  Can I have an
4  agreement between Counsel, please, that the court
5  reporter can swear in the witness remotely?
6            MR. KRAMER:  Agreed.
7            MR. BARBER:  Agreed.
8            THE COURT REPORTER:  Please raise your
9  right hand.
10           THE WITNESS:  (Comlies).
11              MR. DAVID G. OWNBY,
12 having been first duly sworn, testified as follows:
13                    EXAMINATION
14           THE COURT REPORTER:  Thank you.  You may
15 put it down.
16           THE WITNESS:  (Complies).
17      Q.   (BY MR. KRAMER) Okay.  Mr. Ownby, good
18 morning.  My name is Jake Kramer.  I'm counsel for
19 FerrellGas and Bridger.
20           We've seen each other back and forth this
21 morning, but it is very nice to meet you.
22      A.   Nice to meet you.
23      Q.   Any reason we can't proceed at this
24 point?
25      A.   I'm ready to go.

1   intermediated by Carlyle."

2            Did I read that correctly?

3       A.   Correct.

4       Q.   Okay.  So the deal contemplated here

5   involves Carlyle intermediating only 40,000 of the

6   65,000 barrels per day purchased by JAMEX, right?

7       A.   That's what it says.

8       Q.   Okay.  And then two bullets down it says,

9   "JAMEX also receives open credit on 60 percent of the

10  crude supply.  They are currently only considering

11  intermediating the barrels that are priced in a

12  separate month to delivery causing a mismatch in

13  payment terms."

14           So we talked about open credit

15  previously, right?

16      A.   We have, yes.

17      Q.   And you described open credit as an

18  arrangement where a producer provides barrels on

19  credit and then it pays in arrears on the 20th day of

20  the following month, right?

21      A.   That's correct.

22      Q.   Okay.

23      A.   Typically that's -- that's correct.

24      Q.   All right.

25      A.   There's some differences in different

1  parts of the country, but that's typical.

2        Q.  All right.  But if we distill it down,
3  that means that JAMEX does not have to pay up front
4  for the barrels, right, it can pay later?

5        A.  Yeah, it says that they have a credit
6  facility in place.

7        Q.  Okay.  All right.  So to the extent JAMEX
8  is buying barrels on open credit, Carlyle doesn't
9  have any exposure, does it?

10       A.  You're going to have to -- you're going
11 to have to say that a different way.

12       Q.  Sure.

13       A.  What do you mean by "exposure"?

14       Q.  Sure.  The proposed deal --

15       A.  Exposure on what?

16       Q.  Okay.  The deal proposed here is for
17 Carlyle to intermediate only 40,000 of 65,000 barrels
18 per day, correct?

19       A.  That's correct.

20       Q.  All right.  And the remaining barrels
21 would be purchased on open credit, correct?

22       A.  That would be 25 a day -- or 25 a day,
23 yeah.

24       Q.  Okay.  You didn't factor that open credit
25 into your opinion, did you?