UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------- x
:
Eddystone Rail Company, LLC, :
:
                Plaintiff/Counter-
                Defendant, :
:
  v. : Case No. 17-cv-00495 (JDW)
:
Bridger Logistics, LLC, Julio Rios, Jeremy Gamboa, :
Ferrellgas Partners, L.P., and Ferrellgas L.P. *et al.*, :
:
                Defendants. :
:
Bridger Logistics, LLC, Ferrellgas Partners, L.P., and :
Ferrellgas, L.P. :
:
                Defendants/Counterclaimants. :
:
------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF EDDYSTONE RAIL COMPANY LLC'S MOTION TO
MODIFY THE JULY 31, 2017 PROTECTIVE ORDER**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I. As the BL/FG Defendants Requested, Eddystone Has Amended its Motion to Exclude Privileged Documents. ........................................................................................2

II. The BL/FG Defendants' Insistence that Eddystone Seeks Pre-Complaint Discovery and Must Issue a Subpoena Is Baseless Because Eddystone Already Has the Documents. ...................................................................................................3

III. All Relevant Pansy Factors Support Modifying the Existing Protective Order .........4

    A. Eddystone's Intended Use of Discovery from This Action in Another Litigation Is a Legitimate Purpose. ..........................................................5

    B. The New York Protective Order Protects Any Secrecy Interests. ...........................6

    C. Allowing the Use of Discovery from this Action in the Subsequent Transfer Litigation Promotes Fairness. ..................................................8

    D. Allowing the Use of Discovery from this Action in the Subsequent Transfer Litigation Promotes Judicial Economy. ................................9

    E. The BL/FG Defendants' Purported Reliance on the Existing Protective Order Does Not Justify Denying This Modification. ................9

IV. The BL/FG Defendants Misconstrue Pansy to Create a Nonexistent Document-By-Document Analysis to Modify a Protective Order. ................11

V. Referral to the Magistrate Judge Might be Appropriate. .........................................11

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Corp. v. Jim Walter Corp.*,
No. CIV. A. 86-3086, 1996 WL 346980 (E.D. Pa. June 17, 1996) ........................................ 5, 8

*Bobrick Washroom Equipment, Inc. v. Scranton Products, Inc.*,
No. 3:14-CV-00853, 2017 WL 928917 (M.D. Pa. Mar. 8, 2017) ............................................ 10

*Glenmede Trust Co. v. Thompson*,
56 F.3d 476 (3d Cir. 1995) .................................................................................................. 5, 8

*INVISTA N. Am. S.a.r.l. v. M&G USA Corp.*,
No. 11-1007-SLR-CJB, 2013 WL 1867345 (D. Del. Mar. 28, 2013) ..................................... 10

*Jon Feingersh Photog. Inc. v. Pearson Educ. Inc.*,
281 F.R.D. 234 (E.D. Pa. 2012) ................................................................................................ 8

*Klein v. Madison*,
17-civ-4507, 2018 WL 3535301 (E.D. Pa. July 20, 2018) ..................................................... 5, 8

*In re Linerboard Antitrust Litigation*,
333 F. Supp. 2d 333 (E.D. Pa. 2004) .............................................................................. 3, 4, 8, 9

*Pansy v. Borough of Stroudsberg*,
23 F.3d 772 (3d Cir. 1994) ............................................................................................. passim

*Sandoz Inc. v. Lannet Co. Inc.*,
No. 20-3538, 2021 WL 4744893 (E.D. Pa. Oct. 12, 2021) .......................................... 4, 8, 9, 10

*Wilk v. Am. Medical Ass'n*,
635 F.2d 1295 (7th Cir. 1980) ................................................................................................... 4

*In re Zostavax (Zoster Vaccine Live) Product Liability Litigation*,
No. 18-MD-2848, 2021 WL 3375941 (E.D. Pa. Aug. 3, 2021) ........................................ 4, 8, 9

Eddystone Rail Co., LLC respectfully submits this Reply Memorandum of Law and accompanying Reply Declaration of Marvin J. Lowenthal ("Reply Decl.") in response to the BL/FG Defendants' Opposition Brief ("Opp.") and in further support of its motion to modify the Existing Protective Order.[1]

## PRELIMINARY STATEMENT

Eddystone is voluntarily amending its requested relief so that this Court is being asked to take only one simple step: modify the Existing Protective Order to make clear that Eddystone can use in the Subsequent Transfer Litigation materials, other than those produced in response to the Crime Fraud Order,[2] that Eddystone already has.

This requested relief falls well within what other courts in this District and Circuit have granted under the governing standards of *Pansy v. Borough of Stroudsberg*, 23 F.3d 772 (3d Cir. 1994). Courts have repeatedly modified protective orders so that materials from one litigation can be used, without formal discovery, in another existing or potential litigation.

Eddystone made good faith offers to resolve this motion by excluding the crime-fraud documents or by preparing an amended complaint in the Subsequent Transfer Litigation using only a small number of accounting records plus documents regarding one specific asset. The BL/FG Defendants rejected those offers and acknowledge that their persistence in demanding a subpoena caused an unresolvable impasse. Opp. 11. This insistence, which is the cornerstone of their opposition to Eddystone's motion, is entirely meritless because Eddystone already has the documents at issue, so it is not seeking discovery from anyone. All Eddystone seeks by this motion is clarification that there is no impediment to its use in the Subsequent Transfer Litigation of non-privileged documents that it already has.

---

[1] Terms defined in Eddystone's opening brief ("Br.") have the same meanings here.
[2] The BL/FG Defendants' primary objection, relating to privileged documents, is therefore moot.

# ARGUMENT

## I. As the BL/FG Defendants Requested, Eddystone Has Amended its Motion to Exclude Privileged Documents.

To resolve this motion more quickly, Eddystone is voluntarily agreeing to exclude privileged documents from its proposed modification of the Existing Protective Order. *See* Amended Proposed Order.

Eddystone made a good faith effort to resolve the motion along these lines, both prior to filing its motion and in response to a post-filing request from the BL/FG Defendants for a proposal, "crafted to avoid the disclosure or use of the privileged documents we produced in response to the EDPA's crime-fraud order." Reply Decl. Ex. 1 at 9. Eddystone provided the requested offer but, rather than accept, the BL/FG Defendants added unrelated conditions that Eddystone (1) serve a formal subpoena; (2) negotiate search terms limited to only two types of assets; and (3) agree not to seek (a) documents produced by third parties, (b) deposition transcripts, or (c) documents filed under seal. *Id.* at 6-7. These additional demands precluded a consensual resolution because, as Eddystone explained in its opening brief, "formal discovery may not be available in the Subsequent Transfer Litigation before Eddystone amends its complaint in that action with the benefit of" discovery from this Action. Br. 10. Eddystone nevertheless responded to the demands and also offered a narrower, alternative path to resolve this motion. Under that alternative, Eddystone would withdraw its motion if the BL/FG Defendants agreed that, prior to preparing an amended complaint, C&G could review from the discovery that Eddystone possesses only accounting records plus documents related to one specific asset that BTS transferred. The BL/FG Defendants ignored Eddystone's response on the Crime Fraud Order proposal and rejected the alternative proposal, insisting that Eddystone issue a subpoena. Reply Decl. Ex. 1 at 1-5. This insistence created an irresolvable impasse. Opp. 11.

**II.     The BL/FG Defendants' Insistence that Eddystone Seeks Pre-Complaint Discovery and Must Issue a Subpoena Is Baseless Because Eddystone Already Has the Documents.**

The BL/FG Defendants' main remaining contention is that Eddystone is supposedly seeking pre-complaint discovery for the Subsequent Transfer Litigation and "bypass[ing] the correct procedural mechanism for seeking documents from a non-party." Opp. 15. Both arguments miss the mark because Eddystone already has the documents it seeks to use and is not seeking discovery from anyone, party or non-party.

The BL/FG Defendants make no effort to explain how Eddystone's request to use documents it already possesses could possibly constitute pre-complaint discovery. Instead, they repeatedly mischaracterize proceedings before Magistrate Judge Gorenstein in the Subsequent Transfer Litigation to suggest a "tension" between the discussion at that conference and Eddystone's request here, *id.* at 14; *see also id.* at 9, 16, and to proclaim that Eddystone "is acting without authorization from the SDNY," *id.* at 14. In fact, Judge Gorenstein expressly advised that Eddystone make this motion: "My big picture on this is plaintiff goes to Pennsylvania and gets whatever order . . . it can that allows it to use things that are already in its attorney's possession or its possession." Reply Decl. Ex. 2 ("Gorenstein Tr.") at 11:5-9; *id.* at 22:8-10 ("If the Pennsylvania court says you may use [documents] in the Southern District litigation, then that's what the Pennsylvania court says."). That should be the final word on the pre-complaint discovery argument because it is up to the SDNY, not this Court, to determine the rules governing the Subsequent Transfer Litigation. Opp. 16 (acknowledging that such determinations "must be left to the SDNY"). *See also In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333, 342 (E.D. Pa. 2004) (recognizing distinction between participating in discovery and "seek[ing] access to discovery already completed").

3

The BL/FG Defendants' insistence that Eddystone serve them with a subpoena runs aground for the same reason. As the BL/FG Defendants acknowledge, a Rule 45 subpoena is a "procedural mechanism for seeking documents from a non-party." Opp. 15. But Eddystone is not seeking any documents from anyone. It already has them. And, recognizing the wastefulness of duplicative discovery, courts applying *Pansy* have repeatedly permitted parties to use – and even intervenors to obtain – documents without formal discovery. *In re Linerboard*, 333 F. Supp. 2d at 340 (intervenors); *Sandoz Inc. v. Lannet Co. Inc.*, No. 20-3538, 2021 WL 4744893, at *2 (E.D. Pa. Oct. 12, 2021) (party); *In re Zostavax (Zoster Vaccine Live) Product Liability Litigation*, No. 18-MD-2848, 2021 WL 3375941, at *2-3 (E.D. Pa. Aug. 3, 2021) (intervenors). Moreover, all the Rule 45 procedural safeguards that the BL/FG Defendants describe, Opp. 15-16, protect non-parties from production costs and burdens, which are non-existent here because Eddystone seeks only to use documents it already possesses. The BL/FG Defendants' insistence on a subpoena is not based on law or logic but is instead a transparent attempt to thwart the process that Judge Daniels and Judge Gorenstein set in motion to allow Eddystone to use the documents from this Action to amend its complaint in the Subsequent Transfer Litigation. In similar circumstances, courts see "no reason to erect gratuitous roadblocks in the path of a litigant who finds a trail blazed by another," much less by itself. *Wilk v. Am. Medical Ass'n*, 635 F.2d 1295, 1301 (7th Cir. 1980), quoted in *In re Linerboard*, 333 F. Supp. 2d at 342.

## III. All Relevant Pansy Factors Support Modifying the Existing Protective Order

Applying *Pansy*'s governing standards, Eddystone demonstrated a legitimate purpose for modifying the Existing Protective Order and, in light of the New York Protective Order, the relevant factors strongly support modification. The BL/FG Defendants do not dispute that where a protective order minimizes harm to secrecy interests, the motion "should be granted even if the

4

need for the protected materials is minimal." *Pansy*, 23 F.3d at 790. Indeed, if this Court had jurisdiction over the Lenders, Eddystone could have simply amended its complaint in this Action to add subsequent transfer claims without any modification of the Existing Protective Order.

### A. Eddystone's Intended Use of Discovery from This Action in Another Litigation Is a Legitimate Purpose.

The BL/FG Defendants do not dispute that using documents from one litigation for another litigation is a legitimate basis for modifying a protective order. Instead, they argue that Eddystone cites no case finding "pre-complaint discovery" a legitimate purpose. Opp. 18.[3] But Eddystone is not seeking pre-complaint discovery. *See* Section II *supra*. And even if it were, courts, including the Third Circuit, have explained that using documents from one action for "potential claims" in another is a legitimate purpose. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 485 (3d Cir.1995) (cited at Br. 9-10) ("Federal courts should not provide a shield to *potential claims* by entering broad protective orders . . . The sharing of information among current and *potential litigants* is furthered by open proceedings.") (emphasis added); *Allied Corp. v. Jim Walter Corp.*, No. CIV. A. 86-3086, 1996 WL 346980, at *6 (E.D. Pa. June 17, 1996) (cited at Br. 10) (explaining that "sharing of information among current and potential litigants is furthered by open proceedings"); *Klein v. Madison*, 17-civ-4507, 2018 WL 3535301, at *3 (E.D. Pa. July 20, 2018) ("The purposes for which Plaintiff seeks to utilize the discovery materials is legitimate, both for use in this litigation or for use in subsequent other litigation.").

---

[3] Playing on a prior misunderstanding, the BL/FG Defendants pretend that Eddystone reported its purpose only as seeking "documents to 'prove' various allegations in the New York Litigation." Opp. 18 (citing Br. 7-8). In fact, Eddystone repeatedly explained in its opening brief that it seeks to use documents in its possession "*to allege* and ultimately prove" its case in the Subsequent Transfer Litigation. Br. 8 (emphasis added); *id.* at 1 (seeking "documents that may be essential to pleading and proving its case"); *id.* at 4 ("Judge Daniels authorized Eddystone to seek [use of the documents] for its proposed amended complaint"); *id.* at 11 (referring to "[p]leading and proving an initial fraudulent transfer").

5

### B. The New York Protective Order Protects Any Secrecy Interests.

The BL/FG Defendants do not dispute that any potential harm to secrecy interests is eliminated if the documents will be used in a litigation with a suitable protective order. Br. 8. To avoid this recognized principle, they selectively quote a law review note cited in *Pansy* to claim that, "where legitimate secrecy interests exist – such as those here – 'the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted.'" Opp. 19 (citing *Pansy*, 23 F.3d at 790). In fact, the law review note actually explains that where "access to protected [material] can be granted without harm to legitimate secrecy interests, *or* if no such interests exist, continued judicial protection cannot be justified." Note, *Nonparty Access to Discovery Materials in the Federal Courts*, 94 Harv. L. Rev. 1085, 1092 (1981) (emphasis added), quoted in *Pansy*, 23 F.3d at 790. Only "when that is not the case," i.e. where *neither* of those conditions exist, does the note suggest that the party seeking modification show a diminution of the required protection. *Id.*[4]

Proceeding from their incorrect standard, the BL/FG Defendants next object that they will have no opportunity to "police the use of their documents" in the Subsequent Transfer Litigation through a process of pre-filing coordination that the parties are using in this Action. Opp. 20. This is demonstrably wrong. Paragraph 15 of the New York Protective Order requires that all designated materials be filed under seal and mandates prior consultation with the producing party unless impractical or inappropriate. Lowenthal Decl. Ex. B, ¶¶ 15, 15.a.

The BL/FG Defendants then claim the New York Protective Order "does nothing to ensure the rights and privacy interests of those third parties who produced documents in this

---

[4] The BL/FG Defendants also omit the next sentence: "Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns." *Id.*

6

litigation remain protected." Opp. 21.[5] Not only do the BL/FG Defendants lack standing to object on behalf of third parties, but half of the third-party letters that the BL/FG Defendants attach as exhibits were signed by Davis Polk partner Lara Samet Buchwald. Opp. Exs. D-G. Ms. Buchwald, who represents many of the defendants in the Subsequent Transfer Litigation, was served with Eddystone's motion papers, but none of her clients have opposed this motion. In any event, third parties' documents would be protected in the Subsequent Transfer Litigation just the same as in this Action, with the same confidentiality designations and the same procedure of being filed initially under seal absent prior agreement otherwise.

Finally, the BL/FG Defendants suggest that their privacy interests cannot be adequately protected because the bank defendants in the Subsequent Transfer Litigation may be required to provide documents to regulators without disclosure to producing parties. Opp. 20-21. But as Judge Gorenstein repeatedly noted, this situation would be "pretty rare," Gorenstein Tr. 28:21-23, 29:24-25, and it is likely that a subpoena would not reach the documents because the bank's counsel, not the bank, would have them, *id.* at 26:19-27:4 ("[Court:] It seems to me these documents . . . aren't they really in your possession . . . . [Ms. Buchwald:] Oftentimes, yes, counsel has the information."). If credited, the BL/FG Defendants' half-hearted suggestion that this rare event precludes modification of the Existing Protective Order would logically lead to the absurd conclusion that litigants could refuse to produce documents in any litigation where a

---

[5] The BL/FG Defendants falsely contend that Eddystone "seeks to import" hundreds of thousands of documents into the Subsequent Transfer Litigation. Opp. 1, 16. In fact, other than the few documents Eddystone would use to amend its complaint, the defendants in the Subsequent Transfer Litigation will not have access to documents from this Action unless they later seek discovery of them. The original producing party will receive notice of any request and an opportunity to object.

7

regulated entity is a party. It certainly does not outweigh Eddystone's substantial interest in using the documents.

### C. Allowing the Use of Discovery from this Action in the Subsequent Transfer Litigation Promotes Fairness.

The BL/FG Defendants do not dispute that the interests of fairness and equity are furthered when a protective order is modified to allow a litigant in another action to use documents covered by the order. Instead, they raise two meritless arguments.

*First*, they attempt to distinguish *In re Zostavax*, 2021 WL 3375941, on the ground that the intervenors in that case had "live claims." Opp. 22. This argument ignores that *Glenmede* and its progeny ensure access for "potential" as well as current litigants. *See Glenmede*, 56 F.3d at 485; *Klein*, 2018 WL 353501, at *3; *Allied Corp.*, 1996 WL 346980, at *6 ("This information would appear to be useful to the plaintiffs who have already sued Allied as well as to persons who have not yet sued Allied"); *Jon Feingersh Photog. Inc. v. Pearson Educ. Inc.*, 281 F.R.D. 234, 236-37 (E.D. Pa. 2012) ("[D]isclosure of this information will enable other photography licensors to determine whether Pearson has infringed their copyrights.").

*Second*, they argue that Eddystone has not cited any decisions modifying a protective order to permit use of documents against *different* defendants. Opp. 22-23.[6] They offer no explanation for why the interests of fairness vary if the same plaintiff is suing different defendants rather than different plaintiffs suing the same defendant. In either scenario, allowing access to discovery materials "would promote fairness and efficiency." *Allied Corp.*, 1996 WL 346980, at *6; *accord In re Zostavax*, 2021 WL 3375941, at *2. In any event, their assertion is

---

[6] At one point, the BL/FG Defendants also add "in a different court" to their purported distinction. Opp. 22. However, *In re Linerboard*, 333 F. Supp. 2d at 340, the only case they cite, modified a protective order to allow intervenors to use materials in Canadian litigation. *Accord Sandoz*, 2021 WL 4744893, at *2 (permitting use in an arbitration).

8

wrong because, as they describe in their own Opposition, this court in *In re Zostavax* modified a protective order to permit intervenors to obtain documents for their claim against a different defendant. Opp. 18 (discussing *In re Zostavax*, 2021 WL 3375941); *accord Sandoz*, 2021 WL 4744893, at *2 (modifying protective order to allow use of depositions in arbitration against third party).

### D. Allowing the Use of Discovery from this Action in the Subsequent Transfer Litigation Promotes Judicial Economy.

The BL/FG Defendants did not include judicial economy in their list of relevant factors, Opp. 17, or in an independent argument. Instead, they reference it only in their argument on fairness and equity, Opp. 22-23, because they cannot refute that the same principles identified in *In re Linerboard*, 333 F. Supp. 2d at 342 – "speed[ing] up what may otherwise be a lengthy process" in a second litigation by avoiding the "wastefulness" of "duplicat[ing] discovery already made" – favor modification here. This factor is also a compelling reason not to require a subpoena, followed by search terms, objections, and inevitable motion practice. Judicial economy would be disserved by unnecessary relevance fights over documents that Eddystone already possesses.

### E. The BL/FG Defendants' Purported Reliance on the Existing Protective Order Does Not Justify Denying This Modification.

The BL/FG Defendants do not dispute that the Third Circuit has explained that "[r]eliance will be less with a blanket order, because it is by nature overinclusive," and that it is not outcome-determinative because parties rely on confidentiality orders "with knowledge that under some circumstances such orders may be modified by the court." *Pansy*, 23 F.3d at 790. This is particularly true here, where the Existing Protective Order expressly provides that a party may "at any time apply to the Court for [its] modification." Existing Protective Order, ¶ 29; *see In re Zostavax*, 2021 WL 3375941 at *2 (modifying protective order with similar provision).

9

The BL/FG Defendants nevertheless argue that they relied on the Existing Protective Order (1) because it was negotiated to permit disclosure only in certain other actions and (2) with the expectation that there would be no disclosure "in any other action." Opp. 23-24. Their self-contradictory arguments are meritless.

First, the BL/FG Defendants suggest that the Existing Protective Order cannot be modified because it was negotiated. Opp. 23-24. But paragraph 29 of the Existing Protective Order expressly permits modification requests, and the only case they cite, *Bobrick Washroom Equipment, Inc. v. Scranton Products, Inc.*, No. 3:14-CV-00853, 2017 WL 928917, at *2 (M.D. Pa. Mar. 8, 2017), is inapt. In *Bobrick*, the court rejected a party's third attempt to allow its CEO to see a commercial competitor's "attorney's eyes only" documents, finding a real potential for prejudice through "unconscious, but improper use of technical information." *Id.* at *3. These concerns are irrelevant in the context of allowing discovery to be used in a different action, which courts permit even where the original protective order was negotiated. *See, e.g., Sandoz*, 2021 WL 4744893, at *1 (modifying stipulated protective order); *INVISTA N. Am. S.a.r.l. v. M&G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 1867345, at *1 (D. Del. Mar. 28, 2013), report and recommendation adopted sub nom. *INVISTA N. Am. S.A.R.I. v. M7G USA Corp.*, 2013 WL 2456252 (D. Del. June 5, 2013) (modifying stipulated protective order to allow use of materials in foreign actions).

Then, the BL/FG Defendants shamelessly argue that they conducted the entire discovery process "with the expectation that their confidential and privileged materials produced would not be disclosed in any other action." Opp. 24 (emphasis added). This assertion is refuted by the immediately preceding paragraph in their brief, which acknowledges that the Existing Protective Order allows parties to use those materials in other litigation. *Id.*

In short, no reliance interest overcomes Eddystone's interests in using non-privileged documents in the Subsequent Transfer Litigation.

### IV. The BL/FG Defendants Misconstrue *Pansy* to Create a Nonexistent Document-By-Document Analysis to Modify a Protective Order.

The BL/FG Defendants claim that a footnote in *Pansy* requires a document-by-document analysis before modification of a blanket protective order. Opp. 25. In fact, the footnote merely recognized that it may be more efficient in complex cases for a court to enter a "broad umbrella protective order" and, with the burden remaining on the party asserting confidentiality, review on a document-by-document basis only documents in dispute. *Pansy*, 23 F.3d at 787 n.17. Placing the burden of a document-by-document analysis on the party seeking modification of the protective order would reverse both the evidentiary burden and the efficiency benefits of issuing an umbrella order. No court has ever endorsed this backward reading of *Pansy*.

### V. Referral to the Magistrate Judge Might be Appropriate.

As described above, and as the BL/FG Defendants acknowledge, Opp. 11, the BL/FG Defendants' persistence in demanding a subpoena before Eddystone can use documents that it already possesses is the reason this motion remains on the Court's docket. But it need not remain on Your Honor's docket. To the extent this motion might languish behind other matters, Eddystone respectfully requests that Your Honor refer the motion to a Magistrate Judge for a speedier resolution.

## CONCLUSION

Eddystone respectfully requests that the Court amend the Existing Protective Order so that Eddystone may use non-privileged documents it received in discovery in this Action in connection with the Subsequent Transfer Litigation.

Dated: January 25, 2022

Respectfully submitted,

**COHEN & GRESSER LLP**

_____
Melissa H. Maxman
PA Bar #58009
Daniel H. Tabak (admitted *pro hac vice*)

*Special Counsel for Eddystone Rail Company, LLC*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of 3,500 pursuant to Rule II.B.3 of the Honorable Joshua D. Wolson's Policies and Procedures because, excluding the caption, tables, and signature block, this document contains 3,496 words. For the purposes of this certification, I have relied upon the word count of the word-processing system used to prepare this document.

Dated: New York, New York
January 25, 2022

/s/ Daniel H. Tabak<br>
Daniel H. Tabak

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via the Court's ECF system on January 25, 2022, thereby serving all counsel of record in this action, and that I e-mailed this filing to counsel of record in *Eddystone Rail Company, LLC v. Bank of America, N.A. et al.*, Case No. 1:19-cv-09584 (GBD) (S.D.N.Y.).

Dated:   January 25, 2022

/s/ Marvin J. Lowenthal
Marvin J. Lowenthal
