IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EDDYSTONE RAIL COMPANY, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**BRIDGER LOGISTICS, LLC,** *et al.*<br><br>*Defendants.* | Case No. 2:17-cv-00495-JDW |

## **MEMORANDUM**

In complex litigation, courts enter protective orders to facilitate discovery and further the ends of justice. Normally, those two goals align, but not always. The Court's Protective Order facilitated discovery in this case, but it is now impeding Eddystone Rail Company, LLC from using the facts in its possession to assert separate claims in the Southern District of New York. Eddystone has demonstrated a need for a limited modification of the Court's Protective Order so that it can use documents that the BL/FG Defendants[1] produced to amend its pleadings in New York. But it has not shown good cause for a blanket authorization to use in that case documents that it obtained in this case. To the extent Eddystone wants to do more than amend its pleading in New York, it will

---

[1] The "BL/FG Defendants" are Defendants Ferrellgas Partners, L.P.; Ferrellgas, L.P.; Bridger Logistics, LLC; Bridger Administrative Services II, LLC; Bridger Marine, LLC; Bridger Rail Shipping, LLC; Bridger Real Property, LLC; Bridger Storage, LLC; Bridger Swan Ranch, LLC; Bridger Terminals, LLC; Bridger Transportation, LLC; Bridger Energy, LLC; Bridger Leasing, LLC; Bridger Lake, LLC; J.J. Liberty, LLC; and J.J. Addison Partners, LLC.

have to obtain the documents it wants through discovery in its action there, subject to whatever protective orders that court chooses to enter.

## I. RELEVANT BACKGROUND

### A. The Present Litigation

On July 31, 2017, the Court entered a Stipulated Protective Order governing the production of confidential materials during discovery (the "Protective Order"). (ECF No. 63.) Under the terms of the Protective Order, the Parties may use discovery materials "solely for the purposes of this Litigation[,]" and the parties are prohibited from using such material "in any other legal … proceeding …." (Id. at ¶ 20.)

On June 28, 2019, the Court ordered the BL/FG Defendants to produce certain categories of documents because there was a reasonable basis to suspect that the BL/FG Defendants committed or intended to commit a fraud with respect to certain transactions (the "Crime-Fraud Order"). (ECF No. 333.) Nevertheless, those materials remain under seal until the BL/FG Defendants exhaust all avenues of appeal. The Court later granted Eddystone's motion to enforce the Crime-Fraud Order and directed the BL/FG Defendants to produce any additional documents it had not yet produced that were subject to the Crime-Fraud Order. The Court permitted the BL/FG Defendants to designate the documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and ordered that the documents could only be used for the purposes set forth in the Protective Order. (*See* ECF No. 371.)

### B. The SDNY Litigation

While this case was proceeding, Eddystone filed suit in New York state court against several financial institutions that lent funds to Ferrellgas, L.P. and Ferrellgas Partners, L.P. (together "Ferrellgas"). Eddystone has separate counsel in that case because its counsel in this case has a potential conflict. Eddystone alleged that Ferrellgas caused some of the BL/FG Defendants to use the alleged fraudulently-transferred assets to pay down Ferrellgas debts owed to Bank of America and other lenders (the "Lenders"). The defendants removed that matter to the United States District Court for the Southern District of New York (the "SDNY Litigation"). That court dismissed Eddystone's Complaint because its "allegations regarding subsequent transfers of [Bridger Transfer Services, LLC] assets or the proceeds therefrom are largely broad conclusory assertions, lacking factual support." *Eddystone Rail Co., LLC v. Bank of Am., N.A.*, No. 19-cv-9584, 2021 WL 4443371, at *5 (S.D.N.Y. Sept. 28, 2021). The court also concluded that Eddystone's bare assertion that some of the BL/FG Defendants were insolvent at the time of the alleged transfers was insufficient to state a claim for constructive fraudulent conveyance. *Id.* at *7. The court advised Eddystone that it could seek to amend.

### C. The Present Motion

Eddystone wants to try to cure the pleading deficiencies in the SDNY Litigation by using documents that it has obtained in discovery in this case. Before it can do that, however, Eddystone must contend with the Protective Order, which prohibits the Parties from using discovery materials in other legal

3

proceedings. Because Eddystone has adhered to the Protective Order, its counsel in the SDNY Litigation has not seen discovery material from this case. As a result, Eddystone asks the Court to modify the Protective Order, so that it may use discovery materials from this matter to pursue its claims in the SDNY Litigation. In its Reply, Eddystone limits its request to exclude any documents that the BL/FG Defendants produced in response to the Crime-Fraud Order. Nevertheless, the BL/FG Defendants oppose the motion, which is ripe for disposition.

## II.   LEGAL STANDARD

The Court "retains the power to modify or lift confidentiality orders that it has entered." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 784 (3d Cir. 1994). "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Id.* at 790. In addition to the reliance factor, the court may consider whether: 1) disclosure will violate any privacy interests; 2) the information is being sought for a legitimate purpose or for an improper purpose; 3) disclosure of the information will cause a party embarrassment; 4) confidentiality is being sought over information important to public health and safety; 5) the sharing of information among litigants will promote fairness and efficiency; 6) a party benefitting from the order of confidentiality is a public entity or official; and 7) the case involves issues important to the public. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,

924 F.3d 662, 671 (3d Cir. 2019) (citation omitted).

## III.   DISCUSSION

### A.   Third Party Documents

According to the BL/FG Defendants, numerous third parties produced documents in response to subpoenas in this matter, including Jamex, LLC, MJLF & Associates, Monroe Energy, LLC, Merrill Lynch Commodities, Inc., Shell Energy North America US, LP, Business First Bank, and The Independent BankersBank. In doing so, these third parties made use of the Protective Order and designated their documents as either "Confidential" or "Highly Confidential – Attorneys Eyes Only." But Eddystone did not serve any of them with its motion.[2] Because they did not have notice of or an opportunity to object to Eddystone's motion, the Court has no basis to disregard their confidentiality interests. Therefore, the Court will not modify the Protective Order to permit Eddystone to utilize any of these third parties' documents in the SDNY Litigation.

### B.   The BL/FG Defendants' Documents

Eddystone has demonstrated good cause to modify the Protective Order to permit it to use the documents that the BL/FG Defendants produced in this

---

[2]   Eddystone contends that it served a copy of its motion on Davis Polk partner, Lara Samet Buchwald, who represents defendants in the SDNY Litigation. It appears that Ms. Samet Buchwald represented third party Merrill Lynch at some point over the course of this litigation, but it is not clear to the Court that she still does or that Eddystone served her in her role as counsel for Merrill Lynch. Indeed, the correspondence between Eddystone's counsel and Ms. Samet Buchwald indicates that Ms. Samet Buchwald was acting in her capacity as counsel for defendants in the SDNY Litigation, not Merrill Lynch.

case—other than the documents subject to the Crime-Fraud Order—for the limited purpose of preparing an amended complaint in the SDNY Litigation. But it has not demonstrated good cause for any further use because, if its amended pleading can survive a motion to dismiss in New York, then the New York court can supervise discovery in that case, including by entering a protective order and managing any subpoenas that Eddystone may issue to the BL/FG Defendants. The Court reaches this conclusion based on its analysis of the factors that the Third Circuit set forth in *Pansy*.

*First*, two *Pansy* factors—whether the information is being sought for a legitimate or improper purpose and whether the sharing of the information will promote fairness and efficiency—weigh in favor of modification to permit Eddystone to prepare an amended complaint. Eddystone claims that it needs to use "only a small number of accounting records plus documents regarding one specific asset" in order to amend its complaint and attempt to proceed with the SDNY Litigation. (ECF No. 546 at 1.) Without this information, Eddystone cannot pursue its claims in that case. Indeed, as it stands right now, there is no active case in New York. Eddystone's desire to amend its complaint, continue its pursuit of its claims in the SDNY Litigation, and test whether the facts that it knows state a claim is a legitimate goal. Eddystone is not using the documents for competitive gain or to harass or embarrass anyone. It is trying to validate its legal rights. In addition, allowing Eddystone to use documents that are in its possession to draft a complaint is an efficient way to let it move forward, rather than forcing it to jump

through procedural hoops just to arrive at the same place. That outcome will help ensure the just determination of all of Eddystone's actions and proceedings. *See* Fed. R. Civ. P. 1.

*Second*, other *Pansy* factors suggest that there is no impediment to or imperative for the Court to modify the Protective Order. No one has shown that Eddystone's inclusion of discovery material in an amended complaint in the SDNY Litigation would cause embarrassment to the BL/FG Defendants. Nor has anyone shown a strong public interest in disclosure, either because public health and safety is at issue, a public official benefits from confidentiality, or the case involves issues important to the public.

*Third*, and finally, there is no merit to the BL/FG Defendants' suggestion that modification of the Protective Order would be unjust because it would amount to pre-complaint discovery in the SDNY Litigation. Eddystone is not asking to take discovery. It already has the information (though, admittedly, it got the information from the BL/FG Defendants through discovery). It wants to share the information with its counsel in the SDNY Litigation so that its counsel can use it. Certainly, the BL/FG Defendants have a privacy interest in these documents, and they relied on the Protective Order when they provided the documents to Eddystone in this case. But all that's true in every case in which someone seeks modification of a protective order. If those interests trumped other concerns, then courts would never modify protective orders. And the BL/FG Defendants knew

7

that Eddystone might seek modification of the Protective Order, so their certainty in it could not be 100%.

Weighing these interests, the Court will permit Eddystone's counsel in the SDNY Litigation to review materials that the BL/FG Defendants produced in this case for purposes of preparing an amended complaint in that case.

But the balance is different if Eddystone survives a motion to dismiss in the SDNY Litigation. At that point, there will be a live case in New York. This Court should not, will not, and does not want to supervise discovery or compliance with a protective order in the SDNY Litigation. Instead, if Eddystone survives a motion to dismiss in that case, then it can use traditional discovery tools, including subpoenas, to obtain documents that it wants from the BL/FG Defendants, and the BL/FG Defendants can take appropriate measures to protect their interests in that case. The alternative would leave the BL/FG Defendants with no notice of what is happening to their documents in the SDNY Litigation and potentially entangle this Court in the supervision of discovery in that case. The New York court should have discretion to supervise the case in front of it without interference from this Court.

## IV.     CONCLUSION

Eddystone has not satisfied its burden to demonstrate that good cause exists for the Court to modify the Protective Order and permit Eddystone to use all of the discovery from this matter in the SDNY Litigation, as an effective end-run around formal discovery. However, the interests of fairness and justice present

8

good cause to permit Eddystone to use the limited number of documents it contends it needs in order to amend its complaint in the SDNY Litigation and attempt to pursue its claims, something it cannot do without use of the documents. Thus, the Court will grant Eddystone's motion for that limited purpose. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 9, 2022