IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EDDYSTONE RAIL COMPANY, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**BRIDGER LOGISTICS, LLC, et al.,**<br><br>*Defendants*. | **Case No. 2:17-cv-00495-JDW** |

### ORDER

**AND NOW**, this 23rd day of August, 2022, upon consideration of the Defendants' Motion To Exclude The Testimony Of Professor Jonathan Macey And Mr. David Baker (ECF No. 582), Plaintiff's Motion To Exclude Proposed Expert Testimony From Defendant's Expert Erica Bramer On Compensatory Damages (ECF No. 583), Plaintiff Eddystone Rail Company, LLC's Motion In Limine To Exclude In Part The Proposed Testimony From Defendants' Expert Jeffrey Mayer (ECF No. 584), Plaintiff Eddystone Rail Company, LLC's Motion In Limine To Exclude Opinion Testimony From Defendants' Expert Edward Rock (ECF No. 585), and Plaintiff Eddystone Rail Company, LLC's Motion To Strike Defendants' Affirmative Defenses (ECF No. 587), the Court notes as follows.

**A.      Motions to Exclude**

1.      District courts perform a gatekeeping function to ensure that expert testimony meets the requirements of Federal Rule of Evidence 702. *See Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579 (1993). A witness's knowledge, skill, experience, training, or education might qualify him as an expert. *See* Fed. R. Evid. 702. Expert testimony is admissible when "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Id.*

2. "As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591). The party offering expert testimony must establish each of the "trilogy of restrictions"—i.e., qualification, reliability and fit—by a preponderance of the evidence before the Court will admit the testimony *Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, No. CV 17-2206, 2020 WL 5095499, at *6 (E.D. Pa. Aug. 28, 2020). In the context of bench trials, "the judge who becomes the factfinder as well as the gatekeeper must be given great deference … [and] should not be required to waste judicial time." *In re Unisys*, 173 F.3d 145, 155-58 (3d Cir. 1999).

3. Professor Edward Rock's testimony contains inadmissible legal opinions. While Federal Rule of Evidence 704 allows experts to provide an opinion about the "ultimate issue" in a case, the Third Circuit has made clear that Rule 704 "prohibits experts from opining about the ultimate legal conclusion or about the law or legal standards." *Patrick v. Moorman*, 536 Fed. App'x 255, 258 (3d Cir. 2013). Many of Professor Rock's opinions appear to cross this line. For example, he opines that there is "no evidence that the corporate form was used to deceive." (ECF No. 585-1 at ¶ 107.) He opines about the substance of Louisiana law governing veil piercing. (*See id.* at ¶ 111.) He opines about the policies that the Court should apply in determining when to pierce the veil (*See id.* at ¶ 121.) And he opines about the scope of doctrines such as *respondeat superior*, vicarious liability, and master-servant liability. (*See id.* at ¶ 135.)

4. Although some of Professor Rock's opinions cross the line, the presence of some inadmissible material in his report does not justify the blanket rejection of his testimony. Some of Professor Rock's opinions might fall on the correct side of the line. For example, his opinions about industry practices and customs concerning informalities in groups of companies might provide relevant, admissible evidence (though the Court will have to hear more to make that determination for certain). (*E.g.*, *id.* at ¶ 151.)

5. Contrary to Eddystone's assertions in its Motion to Exclude, Professor Rock's testimony is not irrelevant. Though the Court has already identified the factors it will consider in deciding whether to pierce the corporate veil in the absence of fraud,

3

and ruled that Eddystone's alter ego claim may proceed to trial, it has not determined that Eddystone has established any factor. Professor Rock's testimony about inter-company transfers might help the Court determine whether the transfer of assets at issue constitute the type of "siphoning" that warrants piercing the corporate veil.

6. Eddystone offers the testimony of Professor Jonathan Macey to rebut Professor Rock. To the extent that Professor Rock's testimony is admissible, so too is Professor Macey's testimony. To be clear, some of Professor Macey's rebuttal testimony—like the conclusion "that the corporate form of BTS was abused" (ECF No. 582-2 at ¶ 139)—crosses the line. For the same reasons the Court will exclude Professor Rock's inadmissible legal opinions, so too will it reserve judgment and exclude those of Professor Macey.

7. Defendants are incorrect in arguing that Professor Macey impermissibly opines on party motive or intent. An "expert may testify about common behavior patterns in a profession or subculture." *United States v. Price*, 458 F.3d 202, 212 (3d Cir. 2006). And it is permissible to testify that facts and circumstances surrounding that behavior may be "indicative" of a certain intent. *See United States v. Farrish*, 297 F. App'x 162, 166 (3d Cir. 2008). Where Professor Macey relies on his expertise to offer opinions based on deviations from industry norms, the Court will permit his testimony. (*E.g.*, ECF No. 582-2 at ¶ 64.)

8. Each of the Defendants' arguments to exclude David Baker falls short. With 23 years as a Chief Restructuring Officer and a receiver, Mr. Baker is qualified to testify on issues of industry custom and practice. While his experience is not tied to a specific jurisdiction, such testimony is relevant to the custom and practice of fiduciaries that owe duties to creditors. And what Defendants assert crosses into impermissible legal or intent testimony is Mr. Baker's opinion based on his experience in his roles. (*See, e.g.*, ECF No. 582-4 at ¶ 17.)

9. As with its other motions to exclude, Eddystone does not seek to exclude Jeffrey Mayer on the bases of qualification or reliability. Rather, it asserts Mr. Mayer's opinions are irrelevant because the Court already resolved Defendants' counterclaim for breach of the implied duty of good faith and fair dealing on summary judgment. But Eddystone has not identified which of Mr. Mayer's opinions it challenges, and his proposed testimony on intermediation financing might help the Court assess the reasonableness of Defendants' conduct, which is a component of Eddystone's breach of fiduciary claims.

10. It would be premature for the Court to exclude Erica Bramer's damages calculation testimony. The Court has not yet decided the law governing the damages that Eddystone can recover if it prevails. If the Court agrees with Eddystone that the take-or-pay clause bars any deductions from its damages calculation, then it will likely not rely on Ms. Bramer's testimony. But if the Court agrees with Defendants that some

deductions or discounting is appropriate, then the Court might credit Ms. Bramer's analysis.

### B. Motion To Strike Affirmative Defenses

11. On its own or upon motion, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such motions "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties or if the allegations confuse the issues." *Dann v. Lincoln Nat. Corp.*, 274 F.R.D. 139, 143 (E.D. Pa. 2011) (quoting *Wilson v. King*, No. 06–2608, 2010 WL 678102, at *2 (E.D. Pa. Feb. 24, 2010). When a party moves to strike a defense on insufficiency grounds, the motion should not be granted "unless the insufficiency of the defense is clearly apparent." *Nupro Indus. Corp. v. Lexington Ins. Co.*, No. 08–4809, 2010 WL 2553698, at *2 (E.D. Pa. June 21, 2010) (quotations omitted). Rather, a defendant's affirmative defense should be stricken "if the defendant could prove no set of facts in support of the affirmative defense that would defeat the complaint." *Tyco Fire Prod. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 897 (E.D. Pa. 2011) (citation omitted).

12. An affirmative defense asserting "failure to state a claim" is legally insufficient if the Court has already denied a motion to dismiss asserting the same. *Malibu Media, LLC v. Does 1*, No. CIV.A. 12-2078, 2013 WL 1702549, at *3 (E.D. Pa. Mar. 6, 2013); *Nupro Indus. Corp. v. Lexington Ins. Co.*, No. 08-4809, 2010 WL 2553698, at *2

(E.D. Pa. June 21, 2010). Similarly, an affirmative defense that "rest[s] on the same legal grounds as [dismissed] counterclaims" is also legally insufficient. *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 977 F. Supp. 2d 462, 474 (E.D. Pa. 2013). And agreement by the parties has provided the basis for a court to conclude it "clearly apparent" that an affirmative defense rests on such grounds. *Id.*

13. As a threshold matter, Eddystone's Motion to strike is not an *in limine* motion, so the Court's prohibition on reply briefs did not apply. The Court will therefore deny Defendants' Motion to strike Eddystone's reply.

14. Although there is substantial overlap between Defendants' now-dismissed counterclaims and their Seventeenth and Eighteenth Affirmative Defenses, Defendants have demonstrated that the counterclaims are not co-extensive with the affirmative defenses. To the extent there is overlap, the Court will take that into account at trial as it considers whether Defendants have proved those affirmative defenses.

15. Defendants' Twentieth Affirmative Defense, Unclean Hands, rests on legal grounds independent from each of their counterclaims. Under Pennsylvania law, "the doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue." *Savage, Sharkey, Reiser & Szulborski Eye Care Consultants, P.C. v. Tanner*, 848 A.2d 150, 157-58 (Pa. Super Ct. 2004). Eddystone errs in contending this defense is "redundant of [the defendants] legally insufficient counterclaims" for the breach of the implied duty of good faith and fair dealing,

7

fraudulent inducement, negligent misrepresentation, and tortious interference. (ECF No 587 at 3.) Each of those counterclaims requires carrying a unique burden, none of which duplicates what is required to establish unclean hands. Therefore, the defense's legal insufficiency is not "clearly apparent," and the Court will not strike it.

In light of the foregoing, it is **ORDERED** as follows:

1. Defendants' Motion To Exclude The Testimony Of Professor Jonathan Macey And Mr. David Baker (ECF No. 582) is **DENIED**;

2. Plaintiff's Motion To Exclude Proposed Expert Testimony From Defendant's Expert Erica Bramer On Compensatory Damages (ECF No. 583) is **DENIED**;

3. Plaintiff Eddystone Rail Company, LLC's Motion In Limine To Exclude In Part The Proposed Testimony From Defendants' Expert Jeffrey Mayer (ECF No. 584) is **DENIED**;

4. Plaintiff Eddystone Rail Company, LLC's Motion In Limine To Exclude Opinion Testimony From Defendant's Expert Edward Rock (ECF No. 585) is **DENIED**;

5. Plaintiff Eddystone Rail Company, LLC's Motion To Strike Defendants' Affirmative Defenses (ECF No. 587) is **DENIED**;

6. Defendants' Motion To Strike Plaintiff's Reply In Support Of Motion To Strike Affirmative Defenses (ECF No. 596) is **DENIED**; and

7. Plaintiff's Motion For Leave To File A Reply (ECF No. 598) is **GRANTED** as unopposed pursuant to L.R. 7.1(c).

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.