

Lawrence G. Scarborough
Partner
lawrence.scarborough@faegredrinker.com
212-248-3169 direct

Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York  10036
+1 212 248 3140 main
+1 212 248 3141 fax

faegredrinker.com

August 26, 2022

**E-FILED**

The Honorable Joshua D. Wolson
United States District Court – Eastern District of Pennsylvania
James A. Byrne United States Courthouse
601 Market Street, Courtroom 3-B
Philadelphia, Pennsylvania 19106

Re:    Eddystone Rail Company, LLC v. Bridger Logistics, LLC, et al.
       Case No. 2:17-cv-00495-JDW

Dear Judge Wolson:

On behalf of Defendants, we write in response to the letter submitted by Plaintiff Eddystone Rail
Company, LLC ("Eddystone") twice on August 23, 2022 (Dkts. 609, 611) ("Letter").

Before turning to Defendants' position on Eddystone's suggestions for streamlining the trial (many
of which Defendants support), we feel compelled to point out that, contrary to Eddystone's
statement that Defendants "have declined to join any of [Eddystone's] proposals," Eddystone filed
its Letter before Defendants had a chance to respond, and Defendants are actively and
substantively focused on streamlining procedures.  Defendants did not receive a proposal from
Eddystone until late afternoon on Friday, August 19, with a demand that Defendants respond by
noon (ET) on Tuesday, August 23.  On the morning of Monday, August 22, counsel for Defendants
responded that they would consider and respond to Eddystone's proposals.  Eddystone filed its
Letter the next day, before Defendants had an opportunity to respond.  Accordingly, Defendants
submit this response to Eddystone's Letter although, going forward, Defendants believe that it
would be more efficient and appropriate for the parties to confer regarding proposals to streamline
trial rather than submitting competing letters to the Court.

For ease of review, Defendants' letter presents Defendants' commentary in the same order as set
forth in Eddystone's Letters.

**Time Limits.**

Defendants respectfully ask the Court to decline to limit the parties to a 15-day trial (two of which
will be abbreviated) with an evenly split trial clock because it would unfairly prejudice Defendants.
That said, Defendants do not oppose the use of a trial clock and agree that it will provide structure

The Honorable Joshua D. Wolson
August 26, 2022
Page 2

and certainty for all involved.  However, given the breadth of issues in this case, the number of witnesses identified by each side who may testify live (28 by our count), and the scope of the record to be submitted to the Court, Defendants believe that 20 days of trial time (including the two shortened days) may be required and would provide Defendants appropriate, reasonable time to present its case-in-chief (and counterclaim).  Defendants note that Eddystone submitted its Letter before the Court denied Eddystone's motions to strike affirmative defenses and seeking to exclude testimony of various witnesses. (Dkt. 610.)  Given Eddystone's likely assumption that its motions would prevail, it is not surprising that Eddystone anticipated that it could present its case-in-chief in 45 hours.

As a threshold issue, Defendants will be as efficient as is possible, but it is still likely that Defendants may need more time than Eddystone to put on their case.  It appears that Eddystone will present its case using cherry-picked privileged documents and sound-bites from deposition testimony given, in substantial part, by lower-level (Bridger or Ferrellgas) employees with little to no personal knowledge of the events at issue.  Eddystone chose not to depose certain of Defendants' executives who were involved in the events at issue and who *do* have relevant personal knowledge.

In contrast, Defendants will present testimony from numerous witnesses, including several former key executives, including Ferrellgas' former CEO, CFO, and general counsel (Messrs. Wambold, Heitmann, and Hampton), none of whom Eddystone deposed, who will appear to explain the options they were presented, their thinking at the time, and their actions.  In addition, due to the importance of Bank of America's lien on pledged assets (which arose under contractual requirements related to a lending arrangement in place since 2009—years before Ferrellgas acquired Bridger Logistics), Ferrellgas's outside counsel will testify about the workings of that lending arrangement and the events in 2015-16 pertaining to Bank of America.  These aspects of the Ferrellgas case-in-chief will be discussed at the Pre-Trial Conference and will inform the discussion regarding appropriate time limits.

At the April 19 status conference, Defendants estimated that six weeks could be required for the presentation of evidence in this case.  In the parties' Proposed Pretrial Scheduling Order, Eddystone proposed at least 18 trial days, while Defendants requested at least 23 days. (Proposed Pretrial Scheduling Order (5/6/2022) at 1.)  The 90-hour, all-in schedule currently proposed by Eddystone is a significant reduction from either of those proposals (applying Eddystone's 7-hour trial day assumption, Eddystone's 18-day proposal would result in 126 hours of trial time, while Defendants' 23-day proposal would result in 161 hours of trial time).  From Defendants' perspective, the issue is whether to reserve, in early 2023, no more than five additional trial days beyond the 15 already scheduled.

Defendants agree that the Court has discretion to control the trial presentation and impose time constraints for the presentation of evidence.  *E.g.*, *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 611 (3d Cir. 1995) (cited and relied on by Eddystone).  Defendants add, however, that The Third Circuit has stated that such time restraints must be "reasonable" and should not be imposed "as a matter of course." *Duquesne Light*, 66 F.3d at 609–10 ("[B]ecause

The Honorable Joshua D. Wolson
August 26, 2022
Page 3

by their very nature such procedures can result in courts dispensing with the general practice to evaluate each piece of offered evidence individually, district courts should not exercise this discretion as a matter of course."). Thus, in the Third Circuit, "a district court should impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered testimony, as well as their estimates of trial time." *Id.* at 610 (acknowledging problems with the district court's midtrial change to time limits but declining to reverse because plaintiff-appellant did not show prejudice); *see also In re Baldwin*, 700 F.3d 122, 129, n.5 (3d Cir. 2012) (warning that the time limit imposed by the district court "may ultimately be too little time for [defendants] to adequately present their case") (also relied upon by Eddystone).

Despite citing *Duquesne Light* and *Baldwin*, Eddystone pushes the Court to impose a trial limit that hinders and prejudices Defendants' ability to present its defense. Eddystone's desire to cap the parties' presentations at 15 days, and its proposal of an evenly split trial clock, do not account for the fact that Defendants intend to present far more live testimony than Eddystone. To present an adequate defense to Eddystone's claims (and pursue their remaining counterclaim), Defendants may call on the order of 10 live fact witnesses in its case-in-chief (in addition to conducting examinations of the 5 witnesses Eddystone will call in its case-in-chief). In contrast, Eddystone has listed only 6 potential live fact witnesses. In addition, Defendants may need to present as many as 8 experts (Defendants propose a streamlined examination, detailed below), while Eddystone estimates that it will call only 4 experts to testify. In short, Defendants have more witnesses than Eddystone, which will require additional time in the defense case—likely by both sides.

Eddystone makes much of the Court's familiarity with the record following summary judgment briefing and the submission of related *Daubert* motions, but much additional evidence remains to be presented. This includes new testimony from witnesses who have not been deposed and did not submit declarations at the summary judgment stage, as indicated above. Moreover, Eddystone's only authority on this point is a case where the court dismissed half the claims at summary judgment and limited trial to 7 hours per side on negligence-related claims arising from a car accident. *Ross v. Parrot's Landing, Inc.*, Case No. 1:18-cv-725, 2021 WL 5767142, at *7 (W.D. Mich. Oct. 28, 2021). To state the obvious, that is not this case.

Eddystone also overstates the degree to which the Court's summary judgment order (Dkt.557) has narrowed the scope of the case. Defendants' estimates of trial length already account for the issues that remain to be resolved by the Court. Although the order resolved some legal issues, numerous fact disputes remain that will be decided based almost entirely on testimony from Defendants' witnesses. Such issues include, but are not limited to: (1) whether Defendants' "internal emails and witness testimony" establish that they were the alter egos of BTS, including whether the internal emails establish that Defendants improperly "siphoned funds" or whether the "innocuous ways to view" such evidence are accurate (Dkt. 557 ¶¶ 8-10, 14; (2) whether Defendants had an "intent" to "hinder, delay, or defraud" creditors in making asset transfers or otherwise conducting their business, determined through "fact specific" analysis of several "badges of fraud" and percipient witness testimony (*id.* ¶¶ 15-17); (3) whether the Bank of America lien was valid or "created to defraud a third party" (*id.* ¶¶ 19-21, 23); and (4) whether certain Defendants

The Honorable Joshua D. Wolson
August 26, 2022
Page 4

"dominated the affairs" of BTS to such an extent that they can be considered "control persons" (*id.* ¶ 28). Many of these issues, particularly the ones that relate to Defendants' intent, require the Court, as the trier of fact, to assess credibility. Defendants should be permitted to present their former employees as witnesses who can speak to Defendants' intent (and actions). To foreclose, or severely limit, Defendants' ability to call the witnesses necessary to its defense would significantly prejudice Defendants.

Eddystone argues that courts have imposed tighter time limits in trials involving more witnesses and historical evidence. But the only Third Circuit case they cite is *Baldwin*, 700 F.3d at 129, in which the court denied a writ of mandamus, stating as follows:

> In denying mandamus relief, we emphasize that we are not ruling on the propriety of the time-limit order. We appreciate that this is a complex case, that the Committee has sued sixteen individual defendants, and that many of the defendants may need to testify to present their own defenses, even if some of their testimony is duplicative. Because 7.5 hours may ultimately be too little time for the Lemington Defendants to adequately present their case, we do not conclude that the time-limit order is permissible or valid. We hold only that a post judgment appeal is adequate to assure meaningful review of the propriety of the time-limit order.

In a footnote, the Third Circuit cautioned the trial court against imposing unreasonably restrictive time limits:

> It is also difficult to understand the District Court's rationale in allocating to the entire defense side of the case 7.5 hours of evidence presentation time given the fact that there may be different liability rules and defenses applicable to defendants who were members of the board of directors versus defendants who were officers of the non-profit entity. . . . We therefore urge the District Court to re-examine the time-limit order to avoid the necessity of a re-trial. We trust that if, at any time, the District Court is persuaded that any time limits it has set are not sufficient to allow for a fair presentation of the case, the Court will take appropriate steps to see that due process is satisfied.

*Id.* at 129 n.5. The remaining cases Eddystone cites involve class actions and patent cases, which are very different from a complex commercial case involving questions about nuanced accounting issues and intent in connection with fraudulent transfer claims, allegations of alter ego liability, and a breach of fiduciary duty claim requiring the Court to assess Defendants' conduct.

Defendants are very aware of the value of the Court's time and have no intention to consume more than is absolutely necessary to disprove Eddystone's claims. Defendants have carefully considered the fact and expert witnesses they will need to present at trial and believe that reserving an additional week would constitute a more appropriate duration within which to present evidence from both sides, including any rebuttal evidence, in the event limits are to be imposed now.

The Honorable Joshua D. Wolson
August 26, 2022
Page 5

Accordingly, given the issues remaining in the case, and the evidence necessary for Defendants to adequately present their defenses and counterclaim, Defendants respectfully ask the Court to decline to impose the arbitrary restriction of a 15-day trial with an evenly split trial clock, which would unfairly prejudice Defendants.

**Examination of Experts.**

Defendants understand that the submission of expert reports in lieu of direct testimony would shorten the examination time for expert witnesses.  If this approach is adopted, at least two precautions should be taken to ensure that the process is fair and the opinions to be offered are clear.

First, Defendants propose that the parties work together to appropriately redact expert reports such that they consist of only those portions that would be admissible if the expert were testifying live. When the experts drafted their reports, they were not intended to be submitted in lieu of direct testimony.  Accordingly, the reports include information that is not appropriate for submission as evidence from an expert.  For example, expert reports include substantial and argumentative background information, much of which is not necessary for their opinions.  The Federal Rules of Evidence do not permit such information to be admitted as evidence through an expert.  *See, e.g.*, Fed. Rs. Evid. 602, 702, 802; *see also Kia v. Imaging Sci. Int'l, Inc.*, Civil Action No. 08–5611, 2010 WL 3431745, at *5 (E.D. Pa. Aug. 30, 2010) (quoting *Reedy v. CSX Transp., Inc.*, Civil Action No. 06-758, 2007 WL 1469047, at *3 (W.D. Pa. 2007)) (explaining that "a party may not 'filter fact evidence and testimony through [his] expert merely to lend credence to the same' nor may expert testimony 'be used merely to repeat or summarize what the jury independently has the ability to understand'") (citations omitted).

Similarly, certain of Eddystone's expert opinions have been voluntarily limited or withdrawn and should be redacted.  (*See* Dkt. 561, Order on Defendants' Motion to Exclude the Testimony of Neil K. Earnest at ¶ 5 ("The Court adopts the limits on Mr. Earnest's testimony that Eddystone concedes in its Opposition."); Dkt. 508, Eddystone's Opposition to Defendants' Motion to Exclude The Testimony of Marc B. Sherman at 13 ("Eddystone will not call Mr. Sherman to testify on balance sheet insolvency as of June 2015."); Dkt. 610, Order at ¶¶ 3-6 (stating that the Court will exclude inadmissible legal opinions from Professor Rock and Professor Macey).)

Disputes regarding the redaction of expert reports may be raised with the Court prior to the expert's testimony.

Second, and assuming appropriate redactions to expert reports, Defendants propose a limited, 1-hour or less, direct examination of each expert witness (with that amount to be counted against any trial clock) and submission of the redacted expert report to the Court to complete the direct examination.  Not only will this help orient the Court and the parties before cross examination, it will also clarify which of the expert's opinions are primarily being offered by the party. Each expert report contains a variety of opinions and sub-opinions.  A short direct of the expert by the party offering the expert's opinions will likely make cross-examination more focused and

The Honorable Joshua D. Wolson
August 26, 2022
Page 6

understandable. Here, for example, between the initial report and his deposition, Plaintiff's damages expert offered ten different damages calculations (technically, twenty different damages when a 6% and a 9% prejudgment interest is applied to each calculation).  A short direct examination by Plaintiff will help clarify Plaintiff's position on damages, and the reason for that position, allowing for a more focused cross-examination.

**Examination of Fact Witnesses.**

As Eddystone points out, there are five witnesses that both sides have identified on their respective witness lists.  Defendants agree that these witnesses should be called only once. For any witnesses called in Eddystone's case-in-chief, Defendants agree that they will conduct both a direct and cross-examination, without limiting the scope of the examination to the scope of the direct examination by Eddystone.  Eddystone would then have the opportunity to conduct a cross-examination/redirect, limited to the scope of Defendants' direct/cross, followed by redirect from Defendants, limited to the scope of Eddystone's cross/redirect.

**Preadmission of Exhibits and Evidentiary Objections to Exhibits.**

The parties have been actively conferring on exhibits and evidentiary objections to exhibits over the course of the pre-trial process.  During that process, the parties exchanged exhibit lists and objections, have worked towards deduplicating the exhibits, and are conferring to attempt to resolve exhibit objections.

Defendants agree that the parties should continue to meet and confer regarding outstanding objections to exhibits and that resolution of all outstanding objections at the Pre-Trial Conference is not warranted and would not be efficient.  The Court's August 23, 2022 ruling on pre-trial motions (Dkt. 610) will impact the ongoing meet and confer process—indeed, since the parties received that order, Eddystone has indicated that it may withdraw certain objections.

Defendants do not agree that pre-admitting all exhibits for which no objection has been lodged is efficient or warranted in this case.

First, as Eddystone notes, the parties have collectively identified more than 4,500 exhibits. Defendants do not believe that all of those exhibits (or even a substantial portion) ultimately will be offered into evidence or become part of the record.  Accordingly, it would be most efficient for the Court to address objections only for exhibits that are offered into evidence.

Second, because a variety of objections cannot be asserted in the abstract and may depend on the witness sponsoring the exhibit (*e.g.*, foundation and hearsay), resolution of all objections is not feasible until the exhibit is offered into evidence, and it would be inefficient to address objections to an exhibit twice—once prior to trial and once when the exhibit is offered into evidence.

The Honorable Joshua D. Wolson
August 26, 2022
Page 7

Defendants propose that, in connection with ongoing meet-and-confer efforts, the parties identify a subset of exhibits that could jointly be offered into evidence at the start of trial.  Defendants anticipate such documents would include the contracts, accounting records, and records certified in accordance with Fed. Rs. Evid. 902(11) and (12).  Defendants anticipate that evidentiary objections to email communications will not be resolved prior to trial, as such objections will turn on a party's use of those communications during trial.  For all exhibits other than the preadmitted subset, Defendants believe that objections are best resolved when the exhibit is offered into evidence.

With respect to Eddystone's proposal that the parties provide the other side with exhibits prior to a witness's direct testimony, Defendants agree that such a procedure may assist in streamlining the trial, if appropriately structured and adhered to by the parties.  Eddystone's proposal that the parties exchange exhibit lists and objections to that list during a two-hour span the night before a witness takes the stand is unworkable.  Instead, Defendants propose that the party offering a witness on direct examination identify the exhibits reasonably anticipated to be used in that direct by 8:00 pm (ET) two days prior to the date the witness takes the stand (which comports with the parties' existing obligation to identify witnesses 48 hours in advance of their testimony).  The other party may then have until 8:00 pm (ET) the following day to withdraw or confirm any objections (excluding those that require context to assert such as hearsay and foundation).  The parties could then address objections to all exhibits as they are offered into evidence during the direct testimony or before the witness takes the stand, whichever the Court prefers.

Defendants agree that, after the close of all evidence, the parties will jointly provide the Court with a final admitted exhibit list and a hard drive with only the admitted exhibits.

**Evidentiary Objections to Deposition Testimony and Admission.**

Defendants agree that the parties should be afforded additional time to meet and confer regarding deposition designation testimony, and that resolution of the objections to such testimony at the Pre-Trial Conference is not warranted and would not be efficient.

Defendants agree that no depositions shall be played or read in open court.  Defendants propose that each side submit its designated testimony at the conclusion of its case-in-chief, at which point the Court may resolve all outstanding objections to that testimony.  Defendants expect that Eddystone will not rest its case-in-chief during the September trial week.  As a result, the parties will work together to resolve objections while trial is in recess through the Fall, prior to Eddystone's submission of its deposition designations to the Court in December.  This process will also allow Defendants the opportunity to further limit the deposition testimony they offer to the content necessary to rebut Eddystone's case-in-chief.

In accordance with the Court's May 10 Order (Dkt. 577), the parties shall submit to the Court deposition transcripts showing only the designated testimony and highlighting the lines on which there is an unresolved objection.  Once objections are resolved, the parties will revise the deposition designations in accordance with the rulings, submit a new transcript containing only

The Honorable Joshua D. Wolson
August 26, 2022
Page 8

remining designated testimony, and submit edited deposition videos to show only the remaining designated testimony.

**Post-Trial Briefs.**

While Defendants defer to the Court as to the format it would find most useful, Defendants expect that submitting post-trial findings of facts and conclusions of law in numbered paragraphs will help to marshal the significant evidentiary record in this case and ensure that the parties provide the Court with all findings, subordinate findings, and conclusions the Court needs to comply with Federal Rule of Civil Procedure 52.

Federal Rule of Civil Procedure 52 provides: "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." "The requirement of Rule 52(a) is not satisfied 'by the statement of the ultimate fact without the subordinate factual foundations for it which also must be the subject of specific findings.'" *H. Prang Trucking Co., Inc. v. Loc. Union No. 469*, 613 F.2d 1235, 1238 (3d Cir. 1980) (quoting *O'Neill v. United States*, 411 F.2d 139 (3d Cir. 1969)).  Subordinate facts "may not be left unarticulated"—"[i]f they actually were reached in the process of arriving at the ultimate factual conclusion, they must be stated; [i]f they did not enter into the process by which the ultimate factual finding was made, then it was without any supporting foundation." *Id.*  On appeal, an appellate court "may vacate the judgment and remand the case for findings if the trial court has failed to make findings when they are required or if the findings it has made are not sufficient for a clear understanding of the basis of the decision." *Id.* (remanding for further findings of fact).

Indeed, the Third Circuit recently held:

> Instead of presenting his findings in accord with Rule 52, the trial judge here elected to "set forth in narrative fashion [his] findings of fact ... and conclusions of law." Unfortunately, what followed leaves us unable to discern what were his intended factual findings. Moreover, in arriving at his particular legal conclusions, the trial judge held back making many of the factual findings that would support those conclusions, in effect going from first base to third across the pitcher's mound. While we do not endorse or require a panoply of extraneous factual findings, the overall dearth of clear factual findings, much less those pertaining to the heart of this matter[, . . .] falls below what is required by Rule 52.

> Because we cannot derive a full understanding of the core facts from the District Court's opinion, this was a violation of Rule 52 and itself a basis for remand.

*In re Frescati Ship. Co., Ltd.*, 718 F.3d 184, 196–97 (3d Cir. 2013), *aff'd sub nom. CITGO Asphalt Ref. Co. v. Frescati Ship. Co., Ltd,* 140 S. Ct. 1081 (2020).

The Honorable Joshua D. Wolson
August 26, 2022
Page 9

Defendants will continue to think about ways to streamline the trial and look forward to discussing these issues with the Court and Eddystone at the August 31 Pre-Trial Conference.

Respectfully Submitted,

Lawrence G. Scarborough

cc:      All Counsel of Record