**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDDYSTONE RAIL COMPANY, LLC,<br>    Plaintiff, | :<br>:<br>: | |
| v. | :<br>: | |
| BRIDGER LOGISTICS, LLC, *et al.*,<br>    Defendants. | :<br>:<br>: | No. 2:17-cv-00495-JDW |

**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT ITS
TRIAL EXHIBIT AND WITNESS LISTS AND
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF'S
<u>UNTIMELY SUPPLEMENTAL EXHIBITS</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. EDDYSTONE'S MOTION TO SUPPLEMENT ITS EXHIBIT LIST IS UNTIMELY AND PREJUDICIAL.................................................................................. 1

    A. Eddystone's Motion To Supplement Its Exhibit List Conflicts With The Court's May 10, 2022 Order And Fails To Meet Rule 16's "Good Cause" Standard. ........................................................................................................ 1

    B. Even Under The Five-Factor Test It Advances, Eddystone Should Not Be Permitted To Supplement Its Trial Exhibits. ........................................................... 4

        1. The Relief Eddystone Seeks Is Prejudicial To Defendants. ....................... 5

        2. Eddystone Cannot Cure The Prejudice Caused By Its Attempted Midtrial Addition Of Nearly 250 New Exhibits. ........................................ 6

        3. Allowing Eddystone To Supplement Its Exhibit List Would Disrupt The Order And Efficiency Of The Case. ..................................... 6

        4. Eddystone Concedes That It Willfully Failed To Comply With The Court's May 10, 2022 Pretrial Order. .......................................................... 7

        5. Eddystone's Presentation Does Not Overcome Its Unjustified Delay. ....................................................................................................... 8

II. EDDYSTONE'S MOTION TO SUPPLEMENT ITS WITNESS LIST IS UNTIMELY AND PREJUDICIAL................................................................................ 9

III. CONCLUSION............................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases:**   Page(s)

*Chancellor v. Pottsgrove School District*,
  501 F. Supp. 2d 695 (E.D. Pa. 2007) .......... 4

*D'Alessandro v. Bugler Tobacco Co.*,
  No. 05-5051, 2007 WL 130798 (D.N.J. Jan. 12, 2007) .......... 9

*DCK TTEC, LLC v. Postel Indus., Inc.*,
  602 F. App'x 895 (3d Cir. 2015) .......... 9, 10

*Fagnant v. Johnson*,
  2013 WL 3354580 (D.S.C. July 3, 2013) .......... 2

*Karahuta v. Boardwalk Regency Corp.*,
  Civil Action No. 06-4902, 2007 WL 2825722 (E.D. Pa. Sept. 27, 2007) .......... 2

*Konstantopoulos v. Westvaco Corp.*,
  112 F.3d 710 (3d Cir. 1997) .......... 3

*Koplove v. Ford Motor Co.*,
  795 F.2d 15 (3d Cir. 1986) .......... 3

*Ling-Rong Chen v. City of Syracuse*,
  385 F. App'x 41 (2d Cir. 2010) .......... 9

*McGowan v. City of Phila.*,
  --- F. Supp. 3d ---, 2022 WL 155779 (E.D. Pa. May 17, 2022) .......... 3

*Nicholas v. Pa. State Univ.*,
  227 F.3d 133 (3d Cir. 2000) .......... 3

*Rosen v. Superintendent Mahanoy SCI*,
  972 F.3d 245 (3d Cir. 2020) .......... 9

*Sarantis v. ADP, Inc.*,
  No. CV-2153, 2008 WL 4057007 (D. Ariz. 2008) .......... 10

*Solotar v. Northland Hearing Ctrs., Inc.*,
  Civil Action No. 17-1919, 2017 WL 6520538 (E.D. Pa. Dec. 20, 2017) .......... 2, 10

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) .......... 3, 4

| Rules: | Page(s) |
|---|---|
| Fed. R. Civ. P. 16 | 1, 2, 3, 4 |
| Fed. R. Civ. P. 16(b)(3) | 2, 10 |
| Fed. R. Civ. P. 26 | 1, 2, 3, 4 |
| Fed. R. Civ. P. 26(a)(3) | 10 |
| Fed. R. Civ. P. 26(a)(3)(B) | 1 |
| Fed. R. Civ. P. 37 | 3 |
| Fed. R. Civ. P. 37(c) | 4 |
| Fed. R. Civ. P. 42(b) | 5 |

Eddystone concedes that it blatantly disregarded the Court's May 10, 2022 Order, and the relief it seeks ignores Defendants' months-long efforts to complete pretrial disclosures in a timely and orderly fashion. Because Eddystone cannot meet Rule 16's "good cause" standard to modify the Court's May 10, 2022 Order, it asks the Court to use Rule 26's less stringent standard to evaluate Eddystone's dilatory conduct. But Eddystone fails this test as well. Defendants would suffer incurable prejudice if Eddystone is permitted—in the middle of trial—to supplement its exhibit and witness lists with hundreds of new exhibits and three new witnesses. As a result, Defendants respectfully ask the Court to deny Eddystone's Motion for Leave (Dkt. 650 & Dkt. 652, as amended) and grant Defendants' Motion to Preclude Plaintiff's Untimely Supplemental Exhibits (Dkt. 647).

**I.      EDDYSTONE'S MOTION TO SUPPLEMENT ITS EXHIBIT LIST IS UNTIMELY AND PREJUDICIAL.**

**A.      Eddystone's Motion To Supplement Its Exhibit List Conflicts With The Court's May 10, 2022 Order And Fails To Meet Rule 16's "Good Cause" Standard.**

Eddystone cannot distance itself from the more exacting "good cause" standard of Rule 16 by arguing that it "complied with all applicable scheduling order deadlines" and now simply "request[s] to *supplement* its timely disclosures." (Dkt. 650-1 at 6.) The deadline for supplementing trial exhibit lists under the "applicable scheduling order" passed nearly three months ago, on August 9, 2022. (*See* Dkt. 577.) By Eddystone's logic, it retains the ability to supplement whenever it wants under the guise of Rule 26's standard for pretrial disclosures, so long as it identified a single exhibit before the deadlines in the May 10, 2022 Order.

Whether Rule 26 permits supplemental pretrial disclosures generally is irrelevant in this case specifically. Rule 26 expressly defers to scheduling orders issued in individual cases, like the May 10, 2022 Order here. *See* Fed. R. Civ. P. 26(a)(3)(B) ("***Unless the court orders otherwise***,

these disclosures must be made at least 30 days before trial." (emphasis added)). "Under Rule 16, the district judge must issue a scheduling order, the contents of which may modify the timing of disclosures under Rule 26(a). Fed R. Civ. P. 16(b)(3). ***Once the schedule is set, it may only be modified for 'good cause and with the judges consent.*'** Fed. R. Civ. P. 16(b)(4)." *Solotar v. Northland Hearing Ctrs., Inc.*, Civil Action No. 17-1919, 2017 WL 6520538, at *4 (E.D. Pa. Dec. 20, 2017) (emphasis added).

The cases Eddystone cites bring into plain view the distinction between ongoing discovery disclosures under Rule 26, on the one hand, and compliance with a Rule 16 order in the run up to trial, on the other hand. For example, *Fagnant v. Johnson*, 2013 WL 3354580, at *9 (D.S.C. July 3, 2013), dealt with supplemental disclosure of an expert opinion after the discovery deadline passed. The Court held that Rule 16's good cause standard did not apply because the scheduling order at issue was "plainly applicable to discovery generally." *Id*. That holding is irrelevant to this case because (1) the May 10, 2022 Order did not set a single discovery deadline, it set pretrial deadlines for the parties to disclose documents they intend to use at trial; and (2) the May 10, 2022 Order created deadlines for initial, supplemental, and final trial exhibit lists. (*See* Dkt. 577 ¶ 2.)

Fact discovery in this case ended almost two years ago (*see* Dkt. 420), and expert discovery ended more than eight months ago (*see* Dkt. 545). This matter is not simply on the proverbial "eve of trial"—trial is presently underway. The purpose of the Court's May 10, 2022 Order was not to maximize the discovery of relevant evidence, it was to fairly choreograph the final months leading into trial. *See Karahuta v. Boardwalk Regency Corp.*, Civil Action No. 06-4902, 2007 WL 2825722, at *3 (E.D. Pa. Sept. 27, 2007) ("The purpose of Rule 16 is to maximize the efficiency of the court system by insisting that attorneys and clients cooperate with the court and abandon practices which unreasonably interfere with the expeditious management of cases."). This critical

circumstance is not present in any of the cases Eddystone relies on in its Motion for Leave. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297-98 (3d Cir. 2012) (addressing plaintiff's failure to modify its damages calculation **before the discovery deadline**); *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (affirming discovery sanctions in an employment case because plaintiff failed to disclose certain facts about his job **during discovery** and did not amend his discovery responses under Rule 26(e)); *McCowan v. City of Phila.*, --- F. Supp. 3d ---, 2022 WL 155779, at *9-10 (E.D. Pa. May 17, 2022) (addressing whether defendant could call a witness who was listed only in plaintiff's **initial disclosures under Rule 26(a)**).

The one case Eddystone cites that is somewhat factually analogous to the present situation, *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719-20 (3d Cir. 1997), cuts **against** granting the relief Eddystone seeks. There, the Third Circuit upheld a trial court's decision to exclude certain testimony because of counsel's failure to adhere to pretrial deadlines. Instead of assessing the exclusion of the witness under the "five-factor test" for which Eddystone advocates, the Third Circuit upheld the district court's decision because counsel "flagrant[ly] disregard[ed] the pretrial order" and "Westvaco was prejudiced." *Id.* at 719. Though not couched in terms of Rule 16, Rule 26, or Rule 37, the panel was unbothered by the fact that "[t]he district court did not make findings with respect to several of the other factors." *Id.* at 720.

Eddystone's effort to supplement its trial exhibits requires the Court to modify its May 10, 2022 Order. To obtain such relief, Eddystone must demonstrate good cause for modifying the Order. "To require less is to deprive trial judges of the ability to effectively manage the cases on their overcrowded dockets." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986). For the reasons articulated herein and in Defendants' Motion to Preclude Plaintiff's Untimely Supplemental Exhibits (Dkt. 647), Eddystone has not satisfied its "obligation to provide the court

3

with a record which affirmatively demonstrates, with specificity, diligent efforts" to comply with the May 10, 2022 Order.  Accordingly, the Motion for Leave should be denied.

      **B.    Even Under The Five-Factor Test It Advances, Eddystone Should Not Be Permitted To Supplement Its Trial Exhibits.**

Eddystone argues that the Court should evaluate its Motion for Leave by applying the "five factors" used to determine whether evidence can be excluded as a discovery sanction:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified or the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which allowing such witnesses or evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) any bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the excluded evidence.

*ZF Meritor, LLC*, 696 F.3d at 298.  For the reasons stated above, to the extent that the Court decides to consider these factors, it should do so under Rule 16's good cause standard.  But, even under the more forgiving standard for supplementing Rule 26 disclosures, the new exhibits should not be permitted because Eddystone's failure to disclose the exhibits in a timely fashion is neither "substantially justified [n]or . . . harmless."  *See* Fed. R. Civ. P. 37(c).[1]

Eddystone divides the supplemental exhibits into four categories:  (1) exhibits that will be used to rebut Defendants' affirmative defenses regarding operations of the Eddystone Facility; (2) summary exhibits designed to accomplish the same; (3) exhibits for use with "additional" defense witnesses; and (4) exhibits relating to Marc Sherman, one of Eddystone's experts.  (Dkt. 650-1 at 8-11.)  Each of the five factors cuts against permitting Eddystone to supplement its exhibit list.

---

[1] Eddystone's Motion for Leave implies that it can freely disregard the Court's schedule if doing so stops short of irreparably harming Defendants.  This misunderstanding of the law harkens to the analysis in *Chancellor v. Pottsgrove School District*, 501 F. Supp. 2d 695, 700-01 (E.D. Pa. 2007), which clarified that "once a scheduling order has been entered," any modifications are subject to the "stricter standard specified in [Rule 16]," as compared to the standard for amending a pleading under Rule 15, which should be "freely give[n] . . . when justice so requires."

4

### 1.  The Relief Eddystone Seeks Is Prejudicial To Defendants.

As an initial matter, Eddystone attempts to justify its request because, it says, this matter is "bifurcated (now trifurcated)." (Dkt. 650-1 at 3.) To the contrary, the parties and the Court all have operated under the single pretrial schedule contained in the May 10, 2022 Order. (*See* Dkt. 577 at 4 (referencing the September and December trial dates).) This case is neither bifurcated nor trifurcated. Rule 42(b) permits separate trials of "issues, claims, crossclaims, counterclaims, or third-party claims." While each part of a bifurcated proceeding may have separate case management orders, there is one case management order in this case that controls the single proceeding during which all issues, claims, and counterclaims are being tried. This makes sense as there has been no motion to bifurcate the trial, let alone a ruling granting one. Simply put, the fact that this bench trial is proceeding over various weeks does not provide Eddystone with the opportunity to reevaluate and amend its pretrial submissions throughout the trial.

Eddystone's argument that Defendants cannot be prejudiced because the proposed new exhibits were "made known . . . in discovery" also fails. (Dkt. 650-1 at 8.) The availability of these documents during discovery is precisely the reason Eddystone was expected to identify (and could have identified) them as trial exhibits within the deadlines the Court established. (*See* Dkt. 577.) In addition, there were more than 1,070,000 documents "made known . . . in discovery," of which just over 5,500 were identified by the parties as potential trial exhibits. It is no consolation at all to say that, in the course of preparing for trial, Defendants should have prepared to contend with more than 1,000,000 additional documents "made known in discovery" in the event Eddystone decided to violate the Court's Order and add exhibits out of time. Both the Court and Defendants should be able to rely on Eddystone's pretrial disclosures. Finally, the addition of these exhibits, long after the deadline, is prejudicial because many of them concern witnesses like Julio Rios and James Ballengee, ***who have already testified, have been excused, and will not***

*return*.  For example, more than half of the "Marc Sherman Exhibits" relate to the assignment of contracts about which James Ballengee and Julio Rios would have the most knowledge.

    **2. Eddystone Cannot Cure The Prejudice Caused By Its Attempted Midtrial Addition Of Nearly 250 New Exhibits.**

The incurable nature of the harm to Defendants is clear from the fact that Eddystone's only response to the prejudice Defendants articulated in their Motion to Preclude (Dkt. 647) is that some of the "documents that purportedly 'concerned' Mr. Rios were nothing more than invoices," and for "two such documents concerning facility operations . . . Mr. Rios is merely copied" (Dkt. 650-1 at 9).  Defendants have the right to determine how these putative trial exhibits factor into their case and how they would respond to them if the exhibits had been identified prior to the start of the trial.  Defendants could also have elicited testimony from Messrs. Rios and Ballengee about the putative trial exhibits or the factual issues to which they relate.  At this point, Defendants have no such opportunity, because multiple witnesses—who are not within the subpoena power of the Court—have testified in and have been excused from the case.  Eddystone suggests no way around that incurable prejudice.

    **3. Allowing Eddystone To Supplement Its Exhibit List Would Disrupt The Order And Efficiency Of The Case.**

At multiple points in its brief, Eddystone attempts to assuage the impact of its late disclosure by stating that "Defendants will have nearly six weeks to prepare their witnesses" on the supplemental exhibits. (Dkt. 650-1 at 9-10.)  This superficial analysis does not hold water.  First, Defendants efforts' during the "six week" period have been devoted, in part, to filing and responding to motions related to Plaintiff's late disclosures instead of trial preparation.  Second, if the exhibits had been disclosed in accordance with the Court's May 10, 2022 Order like they should have been, Defendants would have had the advantage of six weeks before the September trial dates and another ten weeks between the September and December trial dates, to analyze

6

exhibits. Indeed, that is the time Eddystone has had with Defendants' exhibits, because Defendants complied with the Court's May 10, 2022 Order. Third, the idea that this purported "six week" period eliminates any prejudice at all ignores completely that many of the supplemental trial exhibits pertain to witnesses Defendants have already met with and prepared in the past month, who would need to be prepared anew if Eddystone's request is granted. Again, Eddystone suggests no means to cure such prejudice in its brief.

### 4. Eddystone Concedes That It Willfully Failed To Comply With The Court's May 10, 2022 Pretrial Order.

There are two explanations for the timing of Eddystone's Motion to Leave. At best, Eddystone waited to seek leave to supplement its exhibit list until it became convenient for Eddystone (and inconvenient for Defendants). At worst, Eddystone acted tactically, in the spirit of the "trial-by-ambush" derided by Eddystone in its papers.

As to the "operations of the facility" and related "summary exhibits" categories, Eddystone says it knew in mid-July that Defendants planned to rely on their affirmative defenses at trial. (Dkt. 650-1 at 3.) In response, Eddystone filed a motion to strike those affirmative defenses, but it was not fully briefed until August 4, 2022. (Dkt. 647-2 at 2.) Rather than identify the documents it may use to rebut those defenses and disclose them on August 9, 2022—as the May 10, 2022 Order required—Eddystone decided to wait for a ruling on its motion to strike. (*Id*.) Eddystone did not inform the Court or Defendants that it made this choice. And even if it were reasonable for Eddystone to wait until the Court ruled on its motion to strike (which it is not), the Court denied Eddystone's motion on August 23, 2022. (*See* Dkt. 610.) During the two months between the denial of Eddystone's motion and its disclosure of additional trial exhibits, the parties engaged in numerous meet-and-confer discussions, attended two pretrial conferences, made numerous written submissions, and even stepped through a week of trial; yet Eddystone failed to mention to the

Court or to Defendants that it intended to supplement its exhibit list, and it provides no plausible justification for its delay in providing such notice or identifying the additional exhibits.

As to the "Defendants' witnesses" category, Eddystone suggests it needs to add the untimely exhibits because it "could not have known which witnesses Defendants would select" because the "submission of Eddystone's initial exhibit list." (Dkt. 652-1 at 12.) That is not true, because the witnesses were identified in Defendants' initial disclosures. But, more importantly, Defendants identified their witnesses on July 29, 2022, per the Court's June 30, 2022 Order. (Dkt. 581.) Eddystone then had 11 days until supplemental trial exhibit lists were due on August 9, 2022 to determine whether any additional trial exhibits were necessary to its case beyond those it initially disclosed. It did not add these exhibits. Eddystone then had another 22 days before the parties submitted the final exhibits to the Court on August 31, 2022. It did not seek to add these exhibits during that period, either. Moreover, at no point during this process did Eddystone say a single word about the possibility that it would need to add exhibits out of time.

As to the "Marc Sherman" category, Eddystone offers no explanation for its noncompliance. (Dkt. 652-1 at 11-12.) That is because it cannot. In fact, Eddystone concedes the additional exhibits "were all listed in his expert report." (*Id.* at 11.) Thus, Eddystone knew about these exhibits long before the exhibit lists were due and inexplicably failed to disclose them.

### 5. Eddystone's Presentation Does Not Overcome Its Unjustified Delay.

Eddystone provided the Court with a summary description of a handful of the nearly 250 supplemental exhibits it proposes but does nothing to overcome its unjustified delay sufficient to offset the corresponding prejudice to Defendants. (*See* Dkt. 650-1 at 12-13.) In fact, regarding the "Marc Sherman Exhibits," Eddystone concedes their unimportance, admitting that it "does not intend to introduce these exhibits into evidence." (*Id.* at 11.) Eddystone therefore fails to provide any compelling justification for leave to supplement rooted in its need to use the new exhibits

8

during the remainder of trial. Thus, even under Eddystone's proposed standard, Eddystone should not be permitted to supplement its exhibit list at this juncture, which would lead to incurable prejudice to Defendants.[2]

## II.  EDDYSTONE'S MOTION TO SUPPLEMENT ITS WITNESS LIST IS UNTIMELY AND PREJUDICIAL.

The Court may, in its discretion, "admit the ***impeachment testimony*** of rebuttal witnesses who have not previously been identified" as trial witnesses. *DCK TTEC, LLC v. Postel Indus., Inc.*, 602 F. App'x 895, 898 (3d Cir. 2015) (emphasis added); *see Ling-Rong Chen v. City of Syracuse*, 385 F. App'x 41, 42 (2d Cir. 2010) (stating that the pretrial disclosure requirements of Rule 26(a)(3) "do[] not apply to evidence offered 'solely for impeachment.'").

To state the obvious, not all evidence offered by a "rebuttal witness" is impeachment evidence. "Impeachment evidence is not offered to prove the truth of the matter asserted, but rather is offered to impugn the credibility of the person testifying." *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 259 (3d Cir. 2020). To the extent that Eddystone wishes to call two experts (William Rennicke and John Dudley) and one fact witness (David Johnson) for the exclusive purpose of impugning the credibility of forthcoming defense witnesses, Defendants reserve their right to object to the scope and propriety of such testimony at that point.

Eddystone admits, however, that its newly disclosed witnesses will be called to give substantive testimony, which Eddystone says is intended to "rebut Defendants' testimony relating to alleged facility defects and Defendants' affirmative defenses." (Dkt. 650-1 at 15.) Accordingly, Eddystone's "rebuttal witnesses" should have been disclosed pretrial pursuant to the Court's June 30, 2022 Order (Dkt. 581), which set July 29, 2022, as the deadline for the parties to exchange

---

[2]  Consistent with Third Circuit law, Eddystone cannot remedy these deficiencies in its reply brief. *See, e.g.*, *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007).

9

witness lists. *See Sarantis v. ADP, Inc.*, No. CV-2153, 2008 WL 4057007, at *5 (D. Ariz. 2008) ("Unlike case-in-chief and rebuttal witnesses, impeachment witnesses need not be revealed in pretrial disclosures."). As with its request for leave to supplement its exhibit list, Eddystone's motion for leave to supplement its witness list—more than three months after the Court-ordered deadline and in the midst of a trial—should be denied, absent a showing of "good cause." *Solotar*, 2017 WL 6520538, at *4 ("Under Rule 16, the district judge must issue a scheduling order, the contents of which may modify the timing of disclosures under Rule 26(a). Fed R. Civ. P. 16(b)(3). ***Once the schedule is set, it may only be modified for 'good cause and with the judges consent.***' Fed. R. Civ. P. 16(b)(4)." (emphasis added)).

Beyond the Court's June 30, 2022 Order, Rule 26(a)(3) required Eddystone to provide the name of each witness it intends to call at trial "at least 30 days before trial." Eddystone now moves to supplement its exhibit list ***during*** trial, and the Court may exclude the newly named witnesses. *See DCK TTEC, LLC*, 602 F. App'x at 897 (citing Fed. R. Civ. P. 37(c)(1)).

The Third Circuit has articulated a four-factor test to evaluate whether witness testimony is properly excluded from trial, including:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which the waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*Id.* at 897-98. For many of the same reasons that Eddystone cannot satisfy the test it promotes regarding its new trial exhibits, Eddystone should not be granted leave to supplement its witness list under this similar standard. The prejudice inherent in Eddystone's identification of additional substantive witnesses after trial has begun cannot be cured at this stage.

Perhaps the most striking aspect of Eddystone's November 4, 2022 Motion for Leave to Supplement Its Witness List is the fact that Eddystone has known since mid-July that it would

need to rebut Defendants' trial evidence regarding operational problems at the facility. (*See* Dkt. 650-1 at 3.) Again, even if it were appropriate for Eddystone to assume that the Court would grant its motion to strike any evidence relating to Defendants' affirmative defenses, it knew as of the August 23, 2022 Order (Dkt. 610) that evidence of facility defects would be part of the trial. Indeed, Eddystone took on facility defects in its case-in-chief without giving the Court or Defendants notice they would seek to amend the trial exhibit and witness lists. Eddystone's inexplicable delay in seeking to add witnesses to its July 29, 2022 disclosure and then waiting for months to announce its intention to supplement its witness list should not be permitted.

## III.   CONCLUSION

For the reasons stated, Defendants respectfully ask the Court to deny Eddystone's Motion for Leave to Supplement its Trial Exhibit and Witness Lists and grant Defendants' Motion to Preclude Untimely Supplemental Exhibits.

Dated:  November 11, 2022           Respectfully submitted,

By: */s/ Lawrence G. Scarborough*

Richard E. Coe (I.D. No. 94539)
William L. Carr (I.D. No. 200274)
Elizabeth M. Casey (I.D. No. 325696)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
richard.coe@faegredrinker.com
william.carr@faegredrinker.com
elizabeth.casey@faegredrinker.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
Telephone: (212) 248-3140
Facsimile: (212) 248-3141
lawrence.scarborough@faegredrinker.com

Jacob A. Kramer (Admitted *Pro Hac Vice*)
Jessica R. Maziarz (Admitted *Pro Hac Vice*)
Rachel A. Beck (Admitted *Pro Hac Vice*)
Kathryn E. Bettini (Admitted *Pro Hac Vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1050 K Street NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 312-7400
Facsimile: (202) 312-7461
jake.kramer@faegredrinker.com
jessica.maziarz@faegredrinker.com
rachel.beck@faegredrinker.com
kathryn.bettini@faegredrinker.com

Desmonne A. Bennett (Admitted *Pro Hac Vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone:  (303) 607-3500
Facsimile:  (303) 607-3600
desmonne.bennett@faegredrinker.com

Jane E. Maschka (Admitted *Pro Hac Vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center, 90 South 7th Street
Minneapolis, Minnesota 55402
Telephone:  (612) 766-7000
Facsimile:  (612) 766-1600
jane.maschka@faegredrinker.com

*Attorneys for Bridger Logistics, LLC, Ferrellgas Partners, L.P., Ferrellgas L.P., Bridger Rail Shipping, LLC, Bridger Real Property, LLC, Bridger Storage, LLC, Bridger Swan Ranch, LLC, Bridger Terminals, LLC, Bridger Transportation, LLC, J.J. Addison Partners, LLC, J.J. Liberty, LLC, Bridger Admin Services II LLC, Bridger Energy, LLC, Bridger Lake, LLC, Bridger Leasing, LLC, and Bridger Marine, LLC*

## CERTIFICATE OF SERVICE

I, Lawrence G. Scarborough, hereby certify that, on November 11, 2022, a true and correct copy of the foregoing Opposition to Plaintiff's Motion for Leave to Supplement Its Trial Exhibit and Witness Lists and Reply in Support of Defendants' Motion to Preclude Plaintiff's Untimely Supplemental Exhibits was filed electronically via the Court's ECF filing system. This document is available for viewing and downloading from the ECF system and electronic notification has been sent to all counsel of record.

*/s/ Lawrence G. Scarborough*