UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDYSTONE RAIL COMPANY, LLC,<br>　　　　Plaintiff,<br><br>　　v.<br><br>BRIDGER LOGISTICS, LLC, *et al.*,<br>　　　　Defendants. | :<br>:<br>:<br>:<br>:　No. 2:17-cv-00495-JDW<br>:<br>:<br>: |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY EXECUTION OF THE JUDGMENT PENDING APPEAL AND TO APPROVE SUPERSEDEAS BOND**

Defendants Ferrellgas Partners, L.P. ("Ferrellgas Partners"), Bridger Logistics, LLC ("Bridger Logistics"), Bridger Transportation, LLC ("Bridger Transportation"), and Bridger Energy, LLC ("Bridger Energy") respectfully submit this reply brief in support of their Motion to Stay Execution of the Judgment Pending Appeal and to Approve a Supersedeas Bond (Dkt. 762) (the "Motion"), and to respond to the arguments made by Plaintiff Eddystone Rail Company, LLC ("Eddystone") in its July 5, 2024, opposition brief (Dkt. 763) (the "Opposition").

Putting aside the unwarranted vitriol throughout Eddystone's Opposition, the *only* issue before the Court at this point is whether the Rule 62(b) stay should include Bridger Logistics. Defendants are free to appeal the result, with or without posting a bond, and all four have filed a notice of appeal. Having initiated an appeal, they also are entitled to an automatic stay of execution upon posting a bond. Indeed, Rule 62(b) provides that, "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b).

As to the bond, there is no dispute that the $190 million amount is sufficient to provide security for the Judgment, in the full amount. Nor is there a dispute about the form of the bond, except that Eddystone seems to want Bridger Logistics to be a bond principal. Consequently, at

the outset, it is axiomatic to state that all of Ferrellgas Partners, Bridger Energy, and Bridger Transportation are entitled to the automatic stay of execution under Rule 62(b).[1]

With respect to whether the stay ought to extend to Bridger Logistics as well—the only real dispute raised by Eddystone's Opposition—the Court plainly has the discretion to deny Defendants' request.  The only reason given by Eddystone for denying a stay as to Bridger Logistics, however, is the hypothetical possibility that the judgment against Bridger Logistics—but not Ferrellgas Partners—might be affirmed on appeal.  Notably, Eddystone does not explain how such an outcome might occur, and it seems highly unlikely—perhaps even foreclosed—as a result of the Court's combined treatment of Ferrellgas and Bridger Logistics when holding them liable for fraudulent transfers based on the same RSA-oriented methodology.  (Dkt. 752, Opinion ¶¶ 355-59 ("The evidence presented at trial demonstrates that the Ferrellgas Defendants and Bridger Logistics caused BTS to make the alleged transfers to benefit Bridger Logistics and Ferrellgas Partners.").)  Accordingly, Defendants respectfully submit that the "other security" provided by the bond is sufficient.  If the Court is disinclined to approve this approach to a fully secured judgment, then the solution is simple—approve the bond and enter a stay as to Ferrellgas Partners, Bridger Transportation, and Bridger Energy, but not as to Bridger Logistics.

As shown below, there is no basis or binding precedent for Eddystone's argument that the Court can withhold approval of the bond based on anything related to Bridger Logistics.  Not only is there no legal underpinning offered for that result, but everyone involved in this case is aware

---

[1] Eddystone accuses Defendants of making a "false" statement when they assert in their opening brief (at 9) that "[t]here is no impediment to entering a stay of all collection proceedings under Rule 62(b), including as to Bridger Logistics, because the proposed bond provides assurances that, if affirmed, the judgment entered against Ferrellgas Partners and Bridger Logistics will be paid in full, including post-judgment interest and costs."  But it is the Eddystone accusation that is false, as it is undeniably true that the bond provides complete security if "the judgment against Ferrellgas Partners and Bridger Logistics" is affirmed.

2

that Bridger Logistics has long been a dormant entity, since Ferrellgas exited the mid-stream logistics business in 2018. (*See* Trial Ex. 2419, Sept. 27, 2018 10-K (describing sale of certain Bridger assets and stating that, "as a result of these dispositions, we no longer will report a Midstream operations segment as of July 31, 2018.")

Yet, based on its unstated rationale forecasting a split result for Ferrellgas Partners and Bridger Logistics, Eddystone threatens to conduct wide-ranging discovery, impugning Defendants' motives with speculation that they will "strip" assets from Bridger Logistics to evade the Judgment. (Opposition at 1-2.) At this point, however, there is no dispute presently before the Court concerning the scope of post-judgment discovery, because such discovery has not yet issued, and federal courts do not provide advisory opinions. If it will allay Eddystone's concerns and result in a stay that includes Bridger Logistics, Defendants are prepared to stipulate that no assets will be transferred into or out of Bridger Logistics during the pendency of appeal proceedings. This is not a difficult promise to make, given Bridger Logistics' dormancy. The proper scope of discovery may need to be resolved in the future, by this Court or some other appropriate court, if the Court declines to enter a stay as to Bridger Logistics. Today, however, the only question before the Court is whether to enter a stay that does or does not include Bridger Logistics.

**ARGUMENT**

**I.      THE BOND PRINCIPALS ARE ENTITLED TO A STAY AS OF RIGHT.**

As the overwhelming weight of authority makes clear, Ferrellgas Partners, Bridger Transportation, and Bridger Energy are each entitled to an automatic stay "as a matter of right" because a "supersedeas bond [has been] obtained" as to all three of those entities, and there is no objection from Eddystone as to the amount of the bond or its form, including with respect to those entities. *Tunis Bros. Co. v. Ford Motor Co.*, Civ. A. No. 82-5557, 1991 WL 8890, at *1 (E.D. Pa. Jan. 24, 1991)*, cert. denied*, 505 U.S. 1221 (1992). Under Rule 62(b), "an appellant in all cases

3

may obtain a stay as a matter of right by filing a supersedeas bond," but that "does not prohibit the district court from exercising a sound discretion to authorize unsecured stays in cases it considers appropriate." *Federal Prescription Serv., Inc. v. Am. Pharma. Ass'n*, 636 F.2d 755, 757-58 (D.C. Cir. 1980) (denying motion to set aside stay pending appeal); *see also Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount*, 87 S. Ct. 1, 3 (1966) ("With respect to a case arising in the federal system it seems to be accepted that a party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond. . . ."); *In re Trans World Airlines, Inc.*, 18 F.3d 208, 212 (3d Cir. 1994) ("[A] party appealing a money judgment is entitled to an automatic stay pending appeal upon posting a supersedeas bond."); *Arban v. West Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (Rule 62 "entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right."); *MacNaughton v. Harmelech*, 2016 WL 7045712, at *1 (D.N.J. Dec. 1, 2016) (Rule 62 "permits an appellant, as a matter of right, to obtain a stay by posting a supersedeas bond.").

By its express terms, Rule 62(b) imposes an automatic stay of execution on a money judgment as soon as the bond is approved: "At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). Because there is no objection to the amount or form of the bond, at least as it pertains to Ferrellgas Partners, Bridger Transportation, and Bridger Energy, there is no impediment to approving the bond and entering a stay of execution as to those entities.

Eddystone, however, appears to argue that the Court may require Bridger Logistics to post a bond in order to enter a stay against Ferrellgas Partners, Bridger Energy, and Bridger Transportation. But Eddystone offers no Third Circuit authority to justify its request, which

4

contravenes the plain text of Rule 62 and the authority in this Circuit holding that a stay is automatic upon posting a bond approved as to form and amount (which are not in dispute here).

To be sure, none of the cases Eddystone cites requires all judgment debtors to join in a bond as a condition precedent to a stay of execution as to the judgment debtors posting a bond. To the contrary, in *Silver v. Mendel*, Civ. A. No. 86-7104, 1992 WL 163285, at *1 (E.D. Pa. July 8, 1992), this Court exercised its discretion to grant an unsecured stay of execution as to all defendants. And in *McClusky v. Century Bank*, 2014 WL 12748232, at *1-2 (S.D. Ohio Apr. 25, 2014), the court simply entered a stay of execution after the judgment debtor posted a bond in a sufficient amount.

In addition to the inapposite authorities just discussed, Eddystone relies on three cases involving Rule 7 of the Federal Rules of Appellate Procedure, which allows a court to require an appellant to post a bond to secure *costs on appeal* (not the underlying judgment) where the Court believes that the appeal will be frivolous. *Adsani v. Miller*, 139 F.3d 67, 71-79 (2d Cir.), *cert. denied*, 525 U.S. 875 (1998) (considering scope and constitutionality of Rule 7 in appeal from order requiring appellant to post a bond to cover appellee's costs on appeal); *In re Initial Pub. Offering Secs. Litig.*, 728 F. Supp. 2d 289, 292-95 (S.D.N.Y. 2010) (applying Rule 7 to require appeal bond to cover taxable costs from minority of class members who objected to a class settlement and were found to be "serial objectors" potentially acting in "bad faith"); *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 695 F. Supp. 2d 157, 161 (E.D. Pa. 2010) (declining to require appeal bond under Rule 7 from objectors to class settlement). To state the obvious, Rule 7 is not at issue here, as Defendants proceed under Rule 62(b).

Eddystone also repeatedly cites (at 8, 10) to *R.B. ex rel. Parent v. Mastery Charter Sch.*, Civ. No. 10-cv-6722, 2011 WL121901, at *4 (E.D. Pa. Jan. 1, 2011). But that case involves a

request to stay an injunction under Rule 62(c), not a request for a stay of a money judgment.

None of the cases Eddystone cites begins to address its extraordinary request that the Court require Defendants to add Bridger Logistics as a bond principal to obtain a stay. To the contrary, in *Am Inv'rs Life*, which Eddystone cites throughout its Opposition (at 8, 10, 11), this Court makes clear that it cannot require Bridger Logistics to post a bond: *"Nothing in [Rule 62] indicates that an appellee may move the court for imposition of a supersedeas bond."* *Am Inv'rs Life*, 695 F. Supp. 2d 157 at 161-62 (emphasis added).

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO ENTER A STAY AS TO BRIDGER LOGISTICS AS WELL.

There is no merit to Eddystone's extraordinary argument that "the Court must condition any stay on full security for the judgment against Bridger Logistics." (Opposition at 10-11.) In fact, the Court plainly has discretion to enter a stay as to Bridger Logistics, even though it is not a principal on the bond. Under Rule 62, the "district judge can act within his own discretion to grant a stay without a bond[.]" *Hurley v. Atlantic City Police Dept.*, 944 F. Supp. 371, 374 (D.N.J. 1996) (collecting authorities and granting unsecured stay of execution on judgment). Specifically, Rule 62 allows for a stay of execution if a judgment debtor provides "other security," so long as such security offers "assurances that the judgment will be paid in full." *State Auto Prop. & Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc.*, 586 F. Supp. 3d 328, 330-31 (E.D. Pa. 2022).

As stated in Defendants' opening brief, the bond provides "other security" during the pendency of appeal, even without Bridger Logistics as a principal. Fed. R. Civ. P. 62(b). And Eddystone itself has suggested no scenario whereby Ferrellgas Partners prevails on appeal but Bridger Logistics does not, particularly given the Court's decision to render them liable based on the same rationale. Defendants cited cases in which courts have granted stays based on "other security" to ensure that judgments would be paid in full. *See Hurley*, 944 F. Supp. 371 at 374

(exercising discretion to grant unsecured stay of execution on judgment); *Praxis Energy Agents Pte. Ltd. v. M/V Pebble Beach*, 2021 WL 7209493, at *2-3 (D. Del. Dec. 6, 2021) (same); *Gillispie v. Cty. of Miami Twp.*, 2024 WL 897592, at *5 (S.D. Ohio Mar. 1, 2024) (same); *Goodloe v. Royal Caribbean Cruises, Ltd.*, 2019 WL 12520072, at *1 (S.D. Fla. May 23, 2019) (same). Eddystone attempts to distinguish these cases on their facts (at 8), but they all have one thing in common with this case—the "other security" offered by the judgment debtors was deemed sufficient to justify a stay of execution. The same is undoubtedly true here if the judgment against both Bridger Logistics and Ferrellgas Partners is affirmed.[2]

As stated above, Eddystone's one problem with the bond is that Bridger Logistics may be held liable on appeal while Ferrellgas Partners is exonerated. In its Opinion, however, the Court held both Bridger Logistics and Ferrellgas Partners liable on the same "beneficiary" theory, *i.e.*, by concluding that both were beneficiaries of transfers made by BTS:

> 355.   By its plain terms, PUFTA permits the imposition of liability on entities other than the initial recipient of the transferred asset. . . .
>
> 356.   The evidence presented at trial demonstrates that the Ferrellgas Defendants and Bridger Logistics caused BTS to make the alleged transfers to benefit Bridger Logistics and Ferrellgas Partners. . . .
>
> 357.   In the end, Bridger Logistics and the Ferrellgas Defendants (which Ferrellgas managed) agreed to strip BTS of all of its assets, give those assets to their wholly-owned subsidiaries, leave BTS with the liability of the RSA, and then rid themselves of the "Eddystone issue" by selling BTS to Jamex Transfer Holdings. The benefit to Bridger Logistics and Ferrellgas Partners was twofold: (a) they rid themselves of the RSA, which had become economically undesirable; and (b) they retained BTS's money-making assets. Thus, Eddystone can hold Bridger Logistics and Ferrellgas Partners liable for the fraudulent transfers under Section 5108(b)(1).

---

[2] Erecting a strawman, Eddystone relies on cases cited to show that the *bond amount* appropriately includes post-judgment interest to argue that there must be "security for all." (Opposition at 8 (citing *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 201*4 WL 1261007 (W.D. Pa. Apr. 21, 2014), and *RCC Fabricators, Inc. v. Umoja Erectors, LLC*, Civ. No. 17-5304, 2021 WL 3471162 (E.D. Pa. Aug. 6, 2021).) With the amount of the bond agreed, however, these cases do not address the issue presently before the Court.

Eddystone rates any reversal on appeal as "unlikely." (Opposition at 6.) Because the Court applied the same reasoning to both Ferrellgas Partners and Bridger Logistics, it seems beyond cavil that the Third Circuit would reverse as to Ferrellgas Partners but not Bridger Logistics, and Eddystone has not even attempted to explain or handicap how that might happen.

Under the circumstances, Defendants respectfully submit that the "other security" posted by Ferrellgas Partners is sufficient to secure the judgment and justify a stay as to Bridger Logistics as well. If the Court disagrees, however, the solution is to enter a stay as to Ferrellgas Partners, Bridger Energy, and Bridger Transportation, but not as to Bridger Logistics.

This is consistent with the result in the other cases upon which Eddystone relies. For example, the unpublished bankruptcy court opinion in *In re Fox*, 2000 WL 33287982, at *1-2 (Bankr. D. Kan. Aug. 4, 2000), deals with a situation in which the corporate defendant posted a bond and obtained a stay, but the individual defendant failed to offer a bond and was denied a stay. ("[T]he District Court denied Debtor and Midland's motion for a stay of further proceedings, and found that a waiver of the bond requirement set forth in D. Kan. R. 62.2 was not warranted. In December 1997, Midland posted a supersedeas bond in the amount of $953,000, and the District Court entered an Order Approving Supersedeas Bond and Granting Stay with regard to Midland. Debtor did not post a supersedeas bond to stay enforcement of the judgment against him individually."). *Id.* at *1. The Court did not require the individual debtor to post a bond before entering a stay in favor of the corporate defendant, as Eddystone apparently seeks to do here.

And in *Myogenix II*, the court started its analysis with the axiom that "Federal Rule of Civil Procedure 62(d) states that a judgment debtor is entitled as a matter of right to a stay of the execution of a money judgment pending appeal upon the posting of a supersedeas bond." *ThermoLife Int'l, LLC v. Myogenix Corp.*, 2018 WL 1001095, at *1 (S.D. Cal. Feb. 21, 2018)

8

(citation omitted). The court went on to state that "[a] district court may either waive the bond requirement or allow the judgment debtor to use some alternative type of security." *Id.* Because neither defendant posted a bond, however, the court declined to enter a stay.

In contrast to this case, the defendants (Thermolife and Stanford University) were not members of the same corporate family, but rather were independent entities held jointly and severally liable. Here, Ferrellgas Partners stands behind the bond, and Bridger Logistics is a downstream subsidiary of Ferrellgas Partners. Moreover, an unpublished opinion from a district court in California is not binding on this Court, and it certainly does not justify departing from Rule 62(b) and clear Third Circuit authority to deny the matter-of-right stay to Ferrellgas Partners, Bridger Energy, and Bridger Transportation. The only issue is whether the stay extends to Bridger Logistics as well. For the reasons stated and based on the authorities offered, it should.

### III. THE HYPOTHETICAL SCOPE OF POST-JUDGMENT DISCOVERY AGAINST BRIDGER LOGISTICS IS NOT BEFORE THE COURT.

If the Court decides not to extend the stay to Bridger Logistics, Eddystone has forecast that it will initiate wide-ranging and burdensome post-judgment discovery, making much of allegedly "furtive conduct" by Defendants and speculating that they will transfer assets away from Bridger Logistics during the pendency of appeal. As stated above, if it will result in a complete stay, Defendants are prepared to stipulate that no assets will be transferred into or out of Bridger Logistics during the pendency of appeal proceedings. As also stated earlier, the promise is not difficult to make, because Bridger Logistics has been dormant for years.

Regardless, there is no live dispute about the scope of post-judgment discovery presently before the Court. Such discovery has not yet issued, and federal courts "do not render advisory opinions" about hypothetical discovery disputes. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *Thomas v. Keystone Real Estate Grp. LP*, 2015 WL 1471273, at *7 n.2 (M.D. Pa. Mar. 31, 2015)

9

("Defense counsel requested the Court to rule on potential discovery disputes not yet arisen. Because no actual disputes exist to these issues at this juncture and they are not ripe issues before the Court, the Court neither can nor should issue an advisory opinion on this issue and declines to do so."); *Wright v. Old Gringo, Inc.*, 2020 WL 9173088, at *2 (S.D. Cal. Mar. 30, 2020) ("The Court is not prepared to begin resolving potential discovery disputes. As this Court has done previously in this case, it now refuses Defendants' request to render an advisory opinion on an issue that is not ripe for review."); *Slagowski v. Cent. Washington Asphalt*, 2014 WL 3001951, at *6 (D. Nev. July 1, 2014) ("First, the relief Zemke seeks is an advisory opinion concerning a dispute that is not ripe for review. He argues that a protective order should be entered because Central Washington defendants 'will attempt improper supplementation.' This is an improper request for relief.") (citing U.S. Const. Art. III, § 2).

The proper scope of discovery may need to be resolved in the future, by this Court or some other appropriate court, if there is no stay as to Bridger Logistics. But today is not the day. Again, the only question before the Court today is whether to enter a stay that does or does not include Bridger Logistics, based on its review of its decision and the controlling authorities.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to approve the form and amount of the bond already submitted and to enter an order staying any collection proceedings until Defendants have exhausted all avenues of appeal. At a minimum, Defendants respectfully ask the Court to approve the bond and enter such a stay as to Ferrellgas Partners, Bridger Transportation, and Bridger Energy, a stay to which they are entitled as a matter of law.

Dated: July 7, 2024  Respectfully submitted,

By: */s/ Lawrence G. Scarborough*

Richard E. Coe (I.D. No. 94539)
Elizabeth M. Casey (I.D. No. 325696)
Henry M. Grabbe (I.D. No. 328928)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
richard.coe@faegredrinker.com
elizabeth.casey@faegredrinker.com
henry.grabbe@faegredrinker.com

Lawrence G. Scarborough (Admitted *Pro Hac Vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
Telephone: (212) 248-3140
Facsimile: (212) 248-3141
lawrence.scarborough@faegredrinker.com

Jacob A. Kramer (Admitted *Pro Hac Vice*)
Jessica R. Maziarz (Admitted *Pro Hac Vice*)
Rachel A. Beck (Admitted *Pro Hac Vice*)
Kathryn E. Bettini (Admitted *Pro Hac Vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, D.C. 20004
Telephone: (202) 230-5289
jake.kramer@faegredrinker.com
jessica.maziarz@faegredrinker.com
rachel.beck@faegredrinker.com
kathryn.bettini@faegredrinker.com

Desmonne A. Bennett (Admitted *Pro Hac Vice*)
Jesse L. Marks (Admitted *Pro Hac Vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
desmonne.bennett@faegredrinker.com
jesse.marks@faegredrinker.com

>Josh Peterson (Admitted *Pro Hac Vice*)
>FAEGRE DRINKER BIDDLE & REATH LLP
>2200 Wells Fargo Center, 90 South 7th Street
>Minneapolis, Minnesota 55402
>Telephone: (612) 766-7000
>Facsimile: (612) 766-1600
>josh.peterson@faegredrinker.com
>
>Maria S. Downham (Admitted *Pro Hac Vice*)
>FAEGRE DRINKER BIDDLE & REATH LLP
>300 North Meridian Street, Suite 2500
>Indianapolis, Indiana 46204
>Telephone: (317) 237-0300
>Facsimile: (317) 237-1000
>maria.downham@faegredrinker.com
>
>*Attorneys for Bridger Logistics, LLC, Ferrellgas Partners, L.P., Bridger Transportation, LLC, and Bridger Energy, LLC*

**CERTIFICATE OF SERVICE**

I, Lawrence G. Scarborough, hereby certify that, on July 7, 2024, a true and correct copy of the foregoing Reply in Support of Defendants' Motion to Stay Execution of the Judgment Pending Appeal and to Approve Supersedeas Bond was filed electronically via the Court's ECF filing system. This document is available for viewing and downloading from the ECF system and electronic notification has been sent to all counsel of record.

>*/s/ Lawrence G. Scarborough*